# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA
# CIVIL DIVISION

| | | |
|---|---|---|
| ANTHONY W. PERRY | : | |
| 5907 Croom Station Rd. | : | |
| Upper Marlboro, MD  20772 | : | |
| (301) 928-2305 | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No: 17-cv-1932 (TSC) |
| v. | : | |
| | : | |
| WILBUR ROSS, SECRETARY | : | Request Trial by Jury |
| UNITED STATES DEPARTMENTOF COMMERCE | : | |
| 1401 Constitution Ave., N.W. | | |
| Washington, D.C.  20230 | | |

and

UNITED STATES OF AMERICA

and

MERIT SYSTEMS PROTECTION BOARD
1615 M Street,  N.W.
Washington, D.C.  20419                    *Amended Complaint*

and

**And Serve each of the following in their Professional and Individual Capacities:**

BRIAN DIGIACOMO, LEGAL OFFICE
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C.  20230

and

**RECEIVED**

NOV 1 3 2017

Clerk, U.S. District and
Bankruptcy Courts

1

JOHN GUENTHER, LEGAL OFFICE
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

BARBARA FREDERICKS, LEGAL OFFICE
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

RONDA J. BROWN, LEGAL OFFICE
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

ADAM CHANDLER, LEGAL OFFICE
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

DAVID J. SPENCE, LEGAL OFFICE
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

DEBORAH MIRON, CHIEF ADMINISTRATIVE JUDGE
MERIT SYSTEMS PROTECTION BOARD
1615 M Street, N.W.
Washington D.C. 20419

and

2

DANIEL TURBITT, ADMINISTRATIVE JUDGE
MERIT SYSTEMS PROTECTION BOARD
1615 M Street, N.W.
Washington, D.C. 20419

and

ROBERT M. GROVES, FORMER DIRECTOR BOC
GEORGETOWN UNIVERSITY
Washington, D.C.

and

THOMAS MESENBOURG DEPUTY DIRECTOR(ret),
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

BRIAN E. MCGRATH,MANAGEMENT OFFICIAL
DEPARTMENT OF JUSTICE PROGAMS
Washington, D.C. 20001

and

TERRYNE F. MURPHY,DECIDING OFFICIAL
DEPARTMENT OF JUSTICE
Washington, D.C. 20001

and

THOMAS MEERHOLZ, FORMER CHIEF LTSO,
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

DARREN GUTSCHOW,
UNITED STATES DEPARTMENT OF COMMERCE

1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

ROY CASTRO, CIVIL RIGHTS OFFICE
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230
and

TYRA DENT SMITH CENSUS, HUMAN RESOURCES
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

JOHN CUNNINGHAM,HUMAN RESOURCES
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

TED JOHNSON CENSUS, HUMAN RESOURCES
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

BENJAMIN FELDER, HUMAN RESOURCES
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

and

STACY CHALMERS, HUMAN RESOURCES
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C. 20230

4

and

JOHNNY ZUAGAR, AFGE PRESIDENT
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C.  20230

and

DALE R. REED, SUPERVISOR LTSO
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C.  20230

and

PATRICIA MUSSELMAN, DIVISION CHIEF LTSO
UNITED STATES DEPARTMENT OF COMMERCE
1401 Constitution Ave., N.W.
Washington, D.C.  20230

DEFENDANTS

## **INTRODUCTION**

This case is a distinguishable case for many reasons and this Honorable Court should

examine the deep dark depths of the government's discriminatory and retaliatory behavior

against some federal employees. Not only does it reveal the darkest and deepest depth and

methods of discriminatory, retaliatory, intentionally and maliciously negligent behavior by

some employees who act with immunity from consequences of these most egregious acts. And

so, the government pays if Plaintiff prevails. This case is so consequential and impacts so many

federal employees, that the Supreme Court of the United States requested an Amicus to argue

5

the applicable statutory, administrative, and constitutional requirements for this pro se complaint and decided in accordance with the Plaintiff's interpretation of the CSRA of 1978.

Plaintiff respectfully asserts that this case is not difficult. The MSPB denied Plaintiff's supervisors as witness. Supervisor's take personnel actions against their employees not somebody "off the block" like a contracted "hit man". Knowing the Department's failure to respond to Senator Grassley's request for its progress for eliminating the use of nondisclosure agreements and Office of Special Counsel investigation and report of findings on the unlawful use of nondisclosure agreements, is it plausible that Plaintiff was subjected to the instant nondisclosure agreement to coerce and extort Plaintiff into a government desired position? With a list of seven or so pending EEOC claims against the Department, is it plausible that the agency wanted those pending cases dissolved. This case is not difficult. It only needed MSPB to grant the testimony of Supervisor Dale Reed and review the list of date stamped emails and accept the explanation provided by Plaintiff that he was working in accordance with a schedule approved by his supervisor that afforded Plaintiff an accommodation for his disability. That should have been the end of it.

Many, many federal employees are impacted by the MSPB's intentional faulty reading of the Civil Service Reform Act of 1978 favoring agencies and selective ruling in accordance with other statutes while in the instant case the U.S. Supreme Court called the government's argument a "contrivance" in Kloeckner and newly discovered in Perry. In Kloeckner, the MSPB argued exactly Plaintiff's position but chose to argue the opposite position against Plaintiff. The federal administrative process is a crap shoot for a federal employee. Because of that, many

6

walk away, careers ended, lives destroyed, dreams crushed, suffering forever from unlawful

personnel actions.  This case also reveals that the "deference" that is granted to MSPB

Administrative Judges in the administrative process is ill-deserved.  A single example out of

many in the instant case is the denial of Plaintiff's supervisor as a witness for Plaintiff in a

personnel action that supervisors take against employees. (See further U.S. Court of Appeals

for D.C. Circuit #14-1155, Perry v. MSPB, Opening Brief of Court-Appointed Amicus Curiae

Supporting Petitioner)

## AMENDED COMPLAINT

This amended complaint contains a: 1) "mixed case" complaint pursuant to CSRA 1978

sec. 1101 and de novo review of all referenced EEO cases/claims; 2) complaint for damages for

violations of Title VII of the Civil Rights Act, harassment and hostile work environment;  3)

complaint for damages for violations of 42 U.S.C 1981 and 42 U.S.C 1983 of the Civil Rights Act;

4) complaint for damages for injury caused by MSPB for violations of statutory, administrative

and constitutional law particularly due process and equal protection;  5) complaint for torts in

common law;6) Federal Tort Claims Act (FTCA) complaint;  7) whistleblower complaints for

adverse personnel actions taken against Plaintiff and secured on the basis of prohibited

personnel practices (5 U.S.C 2302(b);  and  8) Privacy Act violations.

Plaintiff files this "mixed case" complaint which alleges that a basis for the adverse

employment  action appealable to the Merit Systems Protection Board was discrimination

prohibited by section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), section 6(d) of the

Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)), section 501 of the Rehabilitation Act of

1973 (29 U.S.C. 791) amended, sections 12 and 15 of the Age Discrimination in Employment Act

of 1967 (29 U.S.C. 631, 633a) or an rule, regulation, or policy directive prescribed under any

provision of the prior stated clauses. (Majority opinion in United States Supreme Court Case #

16-399 Perry v. MSPB and the United States Court of Appeals for the District of Columbia Circuit

#14-1155 Opening Brief of Court Appointed Amicus Curiae Supporting Petitioner, Anthony W.

Perry v. MSPB and Joint Appendix (JA) is an electronic and bound copy of evidentiary

documents submitted by Plaintiff to the MSPB). Case evidence reference is noted as "JA"

followed by page numbers and case exhibits are identified as Exhibit A through Z.

Plaintiff demands a jury trial and request the Court provide de novo review of EEOC

claims pursuant to the CSRA against Defendant Department of Commerce (DOC) under the

enforcement provisions of the Rehabilitation act of 1973 (29 U.S.C. sec. 791), Title VII of the

Civil Rights Act of 1964 sect 717 (42 U.S.C. 2000e-16c), SECTION 15(c) the Age Discrimination in

Employment Act of 1967(29 U.S.C. sec 621 and 633a), or section 16(b) of the Fair Labor

Standards Act. Plaintiff requests de novo review of all EEOC actions noted in the Joint Appendix

of U.S. Court of Appeals for D.C. Circuit # 14-1155 in Perry v. MSPB the Joint AppendixJA14-15;

JA162-78; JA195-206; JA222-234 and this 2016claim attached. (Exhibit D. Agency #63-2016-

00083/Appeal #0120161632).

Plaintiff brings claims against the DOC for discrimination prohibited by Title VII section

717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), section 6(d) of the Fair Labor Standards

Act of 1938 (29 U.S.C. 206(d)), section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791)

amended, sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C.

631, 633a), harassment, creation and maintaining hostile work environment or an rule, regulation, or policy directive prescribed under any provision of the prior stated clauses.

Plaintiff brings claims against all Defendants in their official and personal capacities pursuant to 42 USC 1981 and 42 U.S.C 1983 for racial discrimination in all aspects of Plaintiff's employment.

Plaintiff's 42 U.S.C 1983 claims are against named Defendants in their personal capacities for the deprivation of Plaintiff's rights and privileges of employment guaranteed by the constitution, statute and laws of the United States.

Plaintiff brings claims and an appeal against the MSPB of subsequent statutory law, administrative law and constitutional errors by Defendant Merit Systems Protection Board (MSPB) upon its administrative review including allowing the government to violate Merit Systems Principles statutory, administrative, and constitutional law 5 U.S.C 2302 b(8), b(9), b(12) and b(13) to prevail in its use of prohibited personnel practices in the imposition of an involuntary nondisclosure agreement, failure to review all evidence including evidence contrary to opposition, failure to provide the appropriate judicial review and the guaranteed minimal due process and equal protection under the Constitution and laws of the United States of America.

Plaintiff has been injured and seeks all allowable damages against the Merit Systems Protection Board for failure to provide the appropriate judicial review, violation of Civil Service Reform Act 5 CFR 1251, statutory and administrative law allowing the agency to prevail in

adverse personnel actions taken with the use of prohibited personnel practices, constitutional violations of due process, violation of Plaintiff's property rights, equal protection of the law, failure to review Plaintiff's appeal of adverse personnel actions and consideration of all evidence in the docket, intentional delay in resolution of the matter since its initial decision in July 2012 denying jurisdiction in accordance with the Civil Service Reform Act, 5 CFR 1251 which include unresolved claims under the Rehabilitation Act of 1973, 29 U.S.C sect 794 per 5 U.S.C . sect7702, Title VII claims of racial discrimination, the Age Discrimination in Employment Act and retaliation under the anti-retaliation provisions under each statute. (See Kloeckner v. Solis, 133 S. Ct. 596, 601 (2012) and Perry v. MSPB (U.S. Supreme Court #16-399), Title VII sect 717, the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), and 5 U.S.C. 2302(b))

Plaintiff files common law tort complaints against named Defendants in their personal capacities for fraud, conspiracy, extortion, conspiracy to commit extortion, conspiracy to commit fraud, negligence, defamation, negligent hiring and supervision, and negligent and intentional infliction of emotional distress by causing unrecoverable damages to my daughter and family as a result of Plaintiff's loss of employment.

Plaintiff files a Federal Tort Claims Act (FTCA) complaint against the United States of America and seeks damages for injuries to Plaintiff and Plaintiff's family and especially child for negligence, omissions, intentional infliction of emotional distress and the injuries are current and ongoing.

Plaintiff files a complaint for the agency coerced withdrawal of two Whistleblower complaints and an appeal of whistleblower complaints filed with the Office of Special Counsel

against Defendant Department of Commerce for use of prohibited personnel practices in violation of 5 U.S.C. 2302 (b) imposing a nondisclosure agreement on Plaintiff and other prohibited personnel actions including the illegal change and removal of Plaintiff's supervisory classification. JA529.

Plaintiff files a complaint for violations of the Privacy Act of 1974, U.S.C. section 522a as several employees of the Dept. of Commerce who were not nor had ever been Plaintiff's supervisor or administrator was given personally identifiable information upon which he drafted a discriminatory and retaliatory personnel action proposing Plaintiff's removal from federal service and served on Plaintiff.

Plaintiff demands a jury trial for all claims under CSRA, race discrimination under Title VII, Rehabilitation Act, ADEA, race discrimination claims under 42 U.S.C. 1981 and 42 U.S.C. 1983 for violation of Plaintiff's due process, equal protection rights, and property rights; and for claims against the MSPB, claims of torts in common law, retaliation, harassment, hostile work environment, WPA and WPEA claims, and Privacy Act violations.

The Court retains adjudicatory authority over claims pursued under the Federal Tort Claims Act (FTCA) per statute.

## JURISDICTION AND VENUE

1.      Jurisdiction is proper in U.S. Federal District Court for claims pursuant to the Civil Service Reform Act of 1978, 5 U.S.C. 7703(b)(2), and as ordered by U.S. Supreme Court File No. 16-399, Perry v. MSPB (...of Certiorari to D.C. Circuit Court of Appeals No 14-1155 ). The CSRA

grants this Court the authority to adjudicate both civil service claims and discrimination claims in the instant matter. Plaintiff requests de novo review of all claims of discrimination and the ant-retaliation provisions of each statute or law Plaintiff claims was violated.

2.    This Court has appellate jurisdiction over cases of discrimination subject to provisions of section 7702 of the CSRA and are to be filed under the enforcement provisions of Title VII section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), Title VII of the Civil Rights Act of 1964 and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 2mixed-case complaints involving agency actions appealable to the MSPB). JA162-78; JA195-206; JA222-234 and EEOC/ Exhibit E. OFO # 63-2016-00083/0120161632.

3.    This Court has jurisdiction over claims of racial discrimination and retaliation pursuant to 42 U.S.C 1981(amended) and 42 U.S.C 1983 for adverse employment actions taken against Plaintiff on the basis of racial discrimination and retaliation subjecting Plaintiff to repetitive non-selections, repetitive failure to promote, repetitive denial of training and repetitive unfair performance evaluations starting in January of 2000 and continuing until 2016.

4.    This Court has original jurisdiction of violation of the Federal Tort Claims Act for the torts of negligence, and acts or omissions, negligent infliction of emotional distress, intentional infliction of emotional distress with wanton, willful and reckless disregard for Plaintiff's family's well-being. The cause of action is defined by provisions of the FTCA, 28 USC 1346(b), 1402(b), 2401(b), and 2671-2680.

## PARTIES

12

Case 1:17-cv-01932-TSC   Document 7   Filed 11/13/17   Page 13 of 67

5.    Plaintiff Anthony W. Perry was previously employed for 29 years and 6 months by Defendant the U.S. Government, Department of Commerce, U.S. Census Bureau.

6.    Defendant United States of America is the employer of named employees and is being sued on account of acts of employees in their official capacities for negligence, with malice and reckless disregard, acts and omissions and intentional and negligent infliction of emotional distress.

7.    SERVE Hon. Jeffrey B. Sessions, the Attorney General of the United States and head of the United States Department of Justice.

8.    SERVE Wilbur Ross, Secretary of Commerce in his official capacity only.

9.    SERVE Robert M. Groves, former Director of U.S. Census Bureau, in his official and individual capacity as Mr. Groves was sent an email from Plaintiff on June 6, 2011 disclosing continued management abuses by Agency management and on the following day, June 7, 2011,Plaintiff received a proposal to remove him from the Federal Service, and

10.    SERVE Thomas Mesenbourg, in his official and individual capacity was Deputy Director and Chief Operating Officer of the U.S. Census Bureau and signatory to the official personnel action per SF-50 approving the constructive actions codified in the illegal nondisclosure/gag agreement without substantiated evidence and maintaining that Plaintiff voluntarily accepted the constructive actions.

11.    SERVE Brian E. McGrath, U.S. Census Bureau Chief Information Officer in his official and individual capacity as the Management Official initiating and orchestrating the proposed constructive suspension, constructive retirement, and the other constructive personnel actions codified in the illegal nondisclosure/gag agreement, and signatory to illegal

nondisclosure/gag agreement, and orchestrator of the fraud, conspiracy to commit fraud, extortion, conspiracy to commit extortion of Plaintiff, and defamation of Plaintiff's character.

12. SERVE Terryne F. Murphy, Deciding Official in her official and individual capacity for orchestrating the proposed constructive suspension, constructive retirement, and the other constructive personnel actions codified in the illegal nondisclosure/gag agreement, and signatory to illegal nondisclosure/gag agreement, and orchestrator of the fraud, conspiracy to commit fraud, extortion, conspiracy to commit extortion of Plaintiff, and defamation of Plaintiff's character and sustaining charges of misconduct without evidence, assisted drafting nondisclosure/gag constructive suspension and discharge document and assisted with the coercion of Plaintiff's acceptance and signature of the illegal agreement, and withdrawal of pending Office of Special Counsel whistleblower complaints for prohibited personnel practices.

13. SERVE Brian DiGiacomo, Branch Chief Employment and Labor Law Division, in his official and individual capacity signatory to the nondisclosure/gag constructive discharge and suspension document, and knowingly bringing to bear the full legal power of the U.S. of America upon Plaintiff with reckless disregard for Plaintiff and his family by way of an illegal gag agreement and prohibited personnel practice.

14. SERVE Barbara Fredericks, Associate Counsel and supervisor of Brian DiGiacomo ·in her official and individual capacity for negligent failure to act and omissions providing approval of signing of the illegal nondisclosure/gag agreement by Branch Chief Employment and Labor Law Division Brian DiGiacomo and providing the full set of legal power of law for enforcement of nondisclosure constructive discharge document giving weight of the Defendant U.S. of America behind the constructive suspension, discharge, forfeiture of prior pending EEOC

claims awaiting an EEOC AJ decision on Plaintiff's objection to Defendant's motion for summary judgment without evidence of misconduct and a very senior level executive and officer of the court she negligently failed to act and committed grossly negligent omissions and participated in the planning and conspiracy to commit fraud and extortion against Plaintiff, and

15.     SERVE Ronda J. Brown, Agency Representative Attorney in her official and individual capacity as draftee and signatory to the nondisclosure/gag agreement constructive discharge document, and

16.     SERVE Adam Chandler, Agency Representative Attorney in his official and individual capacity knowing that there was no evidence of misconduct and that the use of a nondisclosure/gag agreement to hide the illegal use of building recording clock for time and attendance and disciplinary action to charge Plaintiff with misconduct was a violation of law, and,

17.     SERVE Darren Gutschow, Assistant Division Chief Telecommunications Division in his official and individual capacity who was NOT Plaintiffs supervisor of record but authored and served Plaintiff the document proposing removal of Plaintiff for unsubstantiated charges of misconduct, and

18.     SERVE Roy Castro, Chief Equal Employment Opportunity Office in his official and individual capacity and signatory to the nondisclosure/gag document was aware of prior pending and current EEOC/EEO activity of Plaintiff, and that it is illegal to use building badge scan recording clocks as the record of time and attendance to propose disciplinary action against Plaintiff, and

15

19.     SERVE John Cunningham, Human Resources Division Chief in his official and individual capacity for approval of Human Resource July 26, 2011 email by Benjamin Felder dictating Plaintiff's terms and condition of employment and the implementation and enforcement signatory for Ted Johnson of the nondisclosure/gag agreement, and negligently allowing the use of building badge scan recording clock as the official record of time and attendance to support proposal of disciplinary action against Plaintiff instead of asking Plaintiff's supervisor, and for his involvement in the conspiracy to commit fraud and conspiracy to commit extortion into an illegal agreement against Plaintiff, and

20.     SERVE Ted Johnson, Chief Human Resources in his official and individual capacity approved agreement and signatory to nondisclosure/gag agreement in his individual and official capacity, and negligently allowing the use of building badge scan recording clock as the official record of time and attendance and to propose disciplinary action against Plaintiff instead of consulting with Plaintiff's supervisor.

21.     SERVE Benjamin Felder, in his official and individual capacity as author of July 26, 2011 email dictating constructive suspension and constructive retirement and other personnel actions against Plaintiff for unsubstantiated charges of misconduct executed as part of the nondisclosure/gag agreement, and for his role in the conspiracy to commit fraud and conspiracy to commit extortion against Plaintiff, and

22.     SERVE Employee and AFGE LOCAL President Johnny Zuagar in his official and individual capacities, where Mr. Zuagar failed to inform Plaintiff of the existence of the July 26, 2011 email which dictated the terms and conditions of Plaintiff's employment without Defendant U.S. of America ever presenting any evidence of the cause for action and stating in

16

hearing before the MSPB that he hadn't told Plaintiff about the memo and never would have. As an employee of the DOC, Mr. Zuagar was compromised and failed to represent employee against knowingly illegal personnel actions, and

23.     SERVE Stacy Chalmers, in her official and individual capacity assisting Terryne Murphy with the implementation of the constructive retirement and suspension codified in the illegal nondisclosure agreement and as an employee of Human Resources Division was well aware it is illegal to use building badge scans recording clock as official time and attendance or grounds for initiating disciplinary action against Plaintiff.

## FACTUAL BACKGROUND

24.     For the 1990 Census, Plaintiff was a senior Engineering and Research Division employee and wrote critical system software using the internet to transfer respondent data from seven national data capture centers to Suitland Maryland.  Prior Decennial Census used magnetic tape to record same data and tapes shipped to Suitland by courier services.

25.     In 1991, Plaintiff was granted a leave of absence to attend graduate school. Plaintiff received a Master of Business Administration in Dec, 1993 and returned to DOC.

26.     In 1994, Plaintiff was classified as and promoted to GS-14 Supervisory Computer Scientist.

27.     In 1997, Plaintiff was assigned the Project Manager for the technical development of the multi-million dollar 2000 Decennial Census Data Capture System.

28.     August 7, 2001, in the first of what became a series of discriminatory and prohibited personnel practices targeting Plaintiff, his Position Title of SUPVY COMPR SCNTST was changed to a non-supervisory CMPR SPECLST (SYS ANALS). JA529.

17

29.     From 2000 to 2010, Census Bureau repeatedly failed to promote Plaintiff, denial of training, unfair performance evaluations and subjected Plaintiff to repeated non-selections on the basis of race and age. JA315-350.  Plaintiff continued to apply for promotional opportunities until served a proposal to remove from the federal service.

30.     In June of 2011, Plaintiff had performed 28.5 years of superior federal service via prior employment at the U.S. Department of Agriculture (BARC) and then current employment with the U.S. Census Bureau.

31.     Plaintiff had been the recipient of two Bronze Medals for performance and special accomplishments. JA221.

32.     After 2005 graduation from UMUC Master of Science in Information Technology and the General Services Administration CIO University program, Plaintiff attended CIO University seminars during work hours with supervisor knowledge and approval.

33.     In 2006 Plaintiff was deemed qualified for vacancy Department of Commerce Deputy Chief Information Officer. JA333-335.

34.     In 2009, Plaintiff graduated from the Department of Commerce's Executive Leadership Development Program (ELDP), a program for high performing employees, and selected to give class remarks by fellow program classmates. JA330; JA352-356.

35.  ·  After 2009 graduation from DOC ELDP Program, Plaintiff attended leadership seminars during work hours with supervisor knowledge and approval.

36.     In 2009, Plaintiff Supervisor Dale Reed gave Plaintiff another unfair performance evaluation and in doing so failed to consult the developmental and action learning assignment leader for the final aspect of the leadership development program. JA347-356.

37.    In June 2011, Plaintiff had an 11 year-old daughter in private school and undergoing extensive orthodontic reconstruction. Plaintiff has had to secure personal loans to pay middle school and high school tuition and at any time since Plaintiff's constructive discharge, his daughter might not be able to return due to the financial impact of the Agency's tort actions against Plaintiff forcing loss of nearly half of his salary.

38.    From 2006 through 2012, supervisor Dale Reed and management was aware Plaintiff was nursing degenerative osteoarthritis in hips, lower back and in other joints as well, making it difficult to sit, stand, or lie down for long periods of time and sometimes requiring a cane to walk. Supervisor of record, Dale Reed, provided informal accommodations with no impact on Plaintiff's work performance. JA75-123.

39.    March 31, 2011 email communication from Agency Management Representative Ronda J. Brown that she had communicated Plaintiff's settlement proposal for pending consolidated EEOC actions before the EEOC AJ to the Management Official Brian E. McGrath, Associate Director for Information Technology and Chief Information Officer who is the same Management Official who in collusion with former Census Bureau Director Robert M. Groves, authorized and initiated the constructive removal and constructive suspension and other prohibited personnel actions codified in the illegal nondisclosure/gag agreement, which also coerced the forfeiture and waiver of the EEOC claims that were pending before the EEOC AJ at the Baltimore Field Office. As Director of the U.S. Census Bureau, Dr. Groves was equally directly responsible as Chief Information Officer Brian E. McGrath for negligent acts and omissions causing injury and loss to Plaintiff. JA227-231.

19

40.     April 5, 2011 Appellant sent certified letter to the EEOC "Preparation for Settlement Discussion" for EEOC claims.

41.     On May 19, 2011 Appellant certified letter to EEOC "Motion in objection to agency motion to dismiss" pending EEOC claims disputing and documenting every material fact when these instant adverse actions described in the proposal to remove document and the Aug. 22, 2011 nondisclosure/gag agreement served on Appellant (Exhibit G).Note that while attempting to negotiate a settlement in those pending EEOC claims, in bad faith the Agency submitted a Motion for Summary Judgment hence Plaintiff's opposition document.

42.     On July 6, 2011, in a continuing dialogue with the Census Bureau Director, Robert M. Groves, Plaintiff sent an email to the Director complaining about continuing race and age discrimination against Appellant and other African American employees, and the exclusive use of non-competitive promotions and reassignments exclusively for Caucasian employees in the Information Technology. JA62. Dr. Groves had an enhanced duty at that time to protect Plaintiff from any acts by other employees that put Plaintiff at unacceptable risk of injury owed to employees by employer.

43.     On the very next day, July 7, 2011 Darren Gutschow, an Agency employee who was NOT and had never been Plaintiff's supervisor of record on June 7, 2011 served a proposal to remove Plaintiff from the federal service. He was totally and completely unaware of or was directed to disregard informal disability accommodations that had been made by past and current supervisors and Plaintiff's obvious disability. JA43-55.

44.     June 9, 2011/June 13, 2011 submission of formal disability accommodation and medical records dating back to 2007 up to 2011 submitted to Agency Disability Program Office. Total hip replacement February 27, 2012. JA75-123.

45.     June 21, 2011 Dale Reed was notified by Disability Program Office that an employee, in his group, submitted a formal reasonable accommodations request (JA122).

46.     June 26, 2001 email from HR employee Ben Felder to AFGE Union Rep. Johnny Zuagar dictating Appellant's nonnegotiable retirement, suspension, reassignment, forfeiture of pending EEOC claims, and forbid to work at Commerce. JA466; JA575. At the MSPB hearing Johnny Zuagar testified that Plaintiff had never seen the email nor would he have ever shared the explicit constructive email with Plaintiff although he was supposed to be representing Plaintiff before the Agency. He also testified that the Agency was going to terminate Plaintiff if he did not retire or resign or filed a complaint with EEO Office.

47.     Medical Records and formal Request for a Reasonable Accommodation and approval on file with the Disability Program Office before Appellant received the Agency drafted nondisclosure settlement document or the Deciding Official's decision. JA75-122.

48.     Plaintiff stated in his response to the Deciding Official that my supervisor of record Dale Reed stated that he did not know what a Formal Reasonable Accommodation was and the Agency did not dispute this fact in the record.

49.     On July 22, 2011, Plaintiff responded to the Deciding Official prior to Appellant being able to collect evidence and investigate the charges fully due to time constraints imposed on Appellant and the threat of termination and therefore applied the reasonable person standard and relied on Agency statements in reference to this matter.

50.     On August 11, 2011 while waiting for the Deciding Official's reply to Appellant's response as defined by the June 7, 2011 Proposed Removal without substantiation of misconduct and only charges, the Agency served on Plaintiff what it called an EEOC Settlement Agreement dated August 22, 2011 which explicitly dictated the terms and conditions of the Appellant's continued employment with the Agency and required a 30-day suspension, retirement no later than Sept. 4, 2012, reassignment into a Non-Supervisory IT Specialist position, forbade to ever work for the Department of Commerce, and the forfeiture of prior pending EEOC claims before an EEOC AJ in the Baltimore EEOC Field Office prior to the Deciding Official's decision and in direct contradiction to the procedure stated in the Proposed Removal and therefore committed a harmful procedural error. It contained no information on MSPB right of appeal the adverse actions. JA14-20.

51.     At some time prior to August 11, 2011, Union Official Johnny Zuagar told Plaintiff the Agency told him that Plaintiff would be terminated immediately if he did not agree to retire or resign and if he filed a complaint with the EEOC Office.

52.     On August 26, 2011, the Deciding Official issued a decision upholding the charges without ever producing and making available evidence and substantiating charges of misconduct and imposedthe terms of the nondisclosure/gag agreement on Plaintiff.

53.     Plaintiff became aware of an email from Benjamin Felder to Terryne Murphy and Union Representative Johnny Zuagar in 2013 when the Defendant U.S. of America inconspicuously submitted the email dictating Plaintiff's terms of employment into the MSPB Remand record of Plaintiff's disability records that were on file in the Census Bureau Disability Program Office.

54. During the administrative hearing at the MSPB, Union Representative Johnny Zuagar was asked why he had never discussed the memo with Plaintiff. Mr. Zuagar's response recorded in the MSPB hearing record was that he would have never have shared that email with Plaintiff. That was a startling response as Mr. Zuagar was supposed to defend Plaintiff against the charges of misconduct, discrimination, suspension, constructive discharge and other prohibited personnel actions. Mr. Zuagar was revealed to be colluding with management to effect Plaintiff's termination. As a result, Mr. Zuagar is a defendant in this civil action in his personal and official capacities as he colluded with Agency officials to coerce and extort Plaintiff into the illegal nondisclosure agreement which is also a prohibited personnel practice.

55. No consideration at all was received by Plaintiff in return for the so called settlement agreement. Plaintiff did not voluntarily enter this so-called settlement and settlement violates basic contract law of voluntariness and of offer and voluntary acceptance. (EEOC Guidance Document 915.002). Pending claims actively before the EEOC were dissolved, waived and forfeited by coercion, duress, discrimination and retaliation pending threat of termination without a sustainable and substantiated cause.

56. The SF-50 personnel actions show that the suspension and retirement were constructive actions carried out by Agency management and are not voluntary as claimed by Agency.JA515-523.

57. Appellant was coerced into a non-Disclosure/gag agreement dictating a constructive suspension, constructive retirement/discharge and other constructive personnel actions.

23

58.     The Office of Special Counsel confirmed in Report of Prohibited Personnel Practices OSC File Nos. MA-12-4640 and MA-13-1126 that a threatened action by an agency is "purely coercive" if an employee can show that the agency knew or should have known that the reason for the threatened action could not be substantiated. See Bowie v. US Postal Service and Schultz v. United States Navy). Plaintiff repeatedly stated that his supervisor had provided him a flexible work schedule as an accommodation for his documented disability.

59.     -In *Shultz v. U.S. Navy*, "if an employee can show that the Agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the Agency is purely coercive. JA69. Cosby v. United States, 189 Ct.Cl. 528, 417 F.2d 1345, 1355 (1969); Autera v. United States, 182 Ct.Cl. 495, 389 F.2d 815, 817 (1968); Rich v. Mitchell, 273 F.2d 78, 79 (D.C.Cir.1959), cert. denied, 368 U.S. 854 , 82 S.Ct. 91, 7 L.Ed.2d 52 (1961)".

60.     -*In Scharf v. U.S. Air Force*, "with freedom of choice as the guiding principle, it has been held that the element of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action, see, e.g., McGucken v. United States, 407 F.2d 1349, 1351, 187 Ct.Cl. 284 (Ct.Cl.), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); (2) an employee unsuccessfully tries to withdraw his resignation before its effective date, see Cunningham v. United States, 423 F.2d 1379, 1384-85, 191 Ct.Cl. 471 (Ct.Cl.1970); (3) an employee submits a resignation under time pressure, see Perlman, 490 F.2d at 932-33; or (4) an · employee fails to understand the situation due to mental incompetence, see Manzi v. United States, 198 Ct.Cl. 489, 492 (1972). See Taylor v. United States, 591 F.2d 688, 692, 219 Ct.Cl. 86 (Ct.Cl.1979); Christie v. United States, 518 F.2d 584, 588, 207 Ct.Cl. 333 (Ct.Cl.1975).

61.     *-In Perlman v. United States*, "whether an action is voluntary or involuntary is determined not by the form of the action, but by the circumstances that produced it. [Federal Personnel Manual Supp. 752-1, subchapter S1-2a(1).] See Ainsworth v. United States, 180 Ct.Cl. 166, 172 (1967), and the recent decision in Manzi v. United States, 198 Ct.Cl. 489, 495 (1972)."

62.     *-In McGucken v. United States*, supra, in determining whether an employee's resignation was submitted under duress, the three elements necessary to show duress are (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party.

63.     A "facially voluntary action by the employee may actually be involuntary," if coerced by the agency. Garcia, 437 F.3d at 1324. ("For example, although a resignation is ostensibly a voluntary separation from employment, it is possible that an employee can be coerced into resigning by actions of the employing agency."); Shoaf v. Dep't of Agric., 260 F.3d1336, 1340-41 (Fed Cir. 2001).

64.     *-In Fruehauf*, "duress involves a step beyond mere illegality and implies that a person has been unlawfully constrained or compelled by another to perform an act under circumstances which prevent the exercise of free will (Fruehauf Southwest Garment Co v. United States).     .                                         .

65.     The EEOC's Retaliation and Coercion regulation provides that, "It is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise of enjoyment of, or because that individual aided or encouraged any other individual in the

exercise of any right granted or protected by [the enumerated anti-discrimination laws]."Plaintiff has been subjected to retaliation.

66.     Plaintiff has suffered harassment by employer DOC employees Dale Reed, Thomas Meerholz, Patricia Musselman, Robert Groves, and Brian McGrath.

67.     Plaintiff has been subjected to a long-term hostile work environment created and maintained by Dale Reed, Patricia Musselman, and Brian McGrath who is the Management Official orchestrating Plaintiff's adverse employment actions.

68.     At all times Defendants Robert M. Groves, Census Director, and Census Deputy Director Thomas Messenbourg knew Plaintiff was working in a hostile work environment and failed to take corrective action.

69.     Evidence in the Joint Appendix reveals Plaintiff repeatedly requested to be reassigned from under supervisor Dale Reed and Patricia Musselman who both were non-competitively placed in supervisory positions over Plaintiff.

70.     Plaintiff has been subjected to repeated unfair and intentionally false performance evaluations which are a prohibited personnel action by Dale Reed. In all instances, second line supervisor Patricia Musselman and Brian McGrath, who is final approver of personnel evaluations were fully aware and approved the evaluations. Neither Musselman nor McGrath took appropriate corrective actions.

71.     Plaintiff's minor child's injury and loss is long-term as is the injury to Plaintiff and Plaintiff's wife due to the malice and reckless disregard rendered Plaintiff unable to place child in academic and athletic development programs and further prevented Plaintiff from sending his only child to Drexel University, the college of her choice, accepted into the Physician's

Assistant 5 year program bachelor/graduate degree thus will have a long-term and life altering impact on her college career and eventual earning capacity.  Injury and loss is ongoing and has devastated her and our family.

## Count I– Involuntary Retirement, Coercion, Duress and Imposition of an Unlawful

### Nondisclosure Agreement

72.     Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

73.     Darren Gutschow, author of proposed removal who was not nor had ever been Plaintiff's supervisor or in chain of command had no statutory or administrative authority to execute a personnel action against Plaintiff and disregarded the supervisory accommodation provided to Plaintiff.

74.     Agency had no basis for the charge of receiving pay for time not worked because Plaintiff was working in accordance to a schedule approved by his supervisor which was based on an accommodation for Plaintiff's disability.  JA31-37.  Evidence of having worked on an approved flexible schedule and Plaintiff's response to the Deciding Official made the Agency aware that the charges of misconduct "could not be substantiated" and the settlement agreement must be set aside (Fassett v U.S. Postal Srv., 85 M.S.P.R. 677, 680 (MSPB 2000) (setting aside settlement where the "agency should have known that the appellant's removal based on this charge could not be substantiated") as here.  JA31-37.

75.     Schultz v. U.S. Navy, 810 F.2d at 1133, 1136, Plaintiff repeatedly alleged that "the Agency knew the reason for the threatened removal [which led to the nondisclosure settlement agreement which is also a prohibited personnel practice (Exhibit A, B, and C)] could not be

substantiated" and that, as a result, the threatened termination by the agency was "purely

coercive". The rule applies with equal force to personnel actions taken pursuant to a

settlement agreement. Thus, the Board will consider a settlement involuntary if the agency

"knew or should have known" that the proposed personnel action precipitating the settlement

"could not be substantiated." Fassett v. U.S. Postal Srv., 85 M.S.P.R 677, 680 (MSPB 2000)

(setting aside settlement where the "agency should have known "that the proposed personnel

action precipitating the settlement "could not be substantiated."

76.     Plaintiff's suspension and resignation were involuntary.  By law and statute "all

relevant non-frivolous allegations, including background facts, . . .must be viewed as a whole"

Middleton v. Dept of Defense, 185 F.3d 1374, 1380 (Fed. Cir. 1999). (See Amicus curiae Initial

Brief D.C. Circuit Court of Appeals No. 14-1155 Perry v. MSPB and Joint Appendix for 14-

1155(JA)).

77.     The agency coerced Plaintiff into a settlement agreement by pursuing an

employment action the agency knew it could not substantiate. JA301-02.

78.     Agency coercive tactics were discriminatory and retaliatory actions due to

pending prior EEOC race and age discrimination claims before the EEOC (see forfeited claims

identified in the Dept of Commerce Nondisclosure Agreement which Plaintiff requests de novo

·review of each) that the Agency refused to negotiate in good faith and wanted disposed.

Imposition of a nondisclosure agreement is an illegal prohibited personnel practice for which

two Dept. of Commerce Deputy Inspector Generals were terminated (John Does (1-4) v Dept. of

Commerce IG and violate 5 U.S.C. 2302 b(8), b(9), b(12), and b(13).(See Exhibit A, B, and C). It

cannot be that OSC determines John Does (1-4) were subjected to an unlawful coercive

nondisclosure agreement and the same imposed on Plaintiff is somehow voluntary. The agency actions were intentional done with malice and reckless disregard for Plaintiff and Plaintiff's family. Equal protection of the law and due process required the same administrative standard applied to Plaintiff. (OSC Investigative Report John Does (1-4) v. Dept. of Commerce) Exhibit B.

79.     Further Plaintiff made a request of needing to continue to work (JA69) to which Terryne F. Murphy responded that the retirement and suspension was final and could not be rescinded which further indicates Plaintiff's retirement was not voluntary.

80.     Plaintiff had been provided an informal accommodation by his supervisor and the Agency failed to inform Plaintiff that the accommodation that had been provided since 2007 by his supervisors would no longer be available to plaintiff. Plaintiff would have sought a formal disability accommodation as was eventually done but would have sought the accommodation prior to any adverse action. The granting of the formal accommodation and Plaintiff's February 2012 hip replacement surgery proves Plaintiff's claimed disability. (JA123).

81.     As a 2005 MSIT/CIO certificate graduate of the General Services Administration CIO University and 2009 graduate of Dept. of Commerce Executive Leadership Program, supervisors were aware of approved Plaintiff's attendance at full-day and part-day seminars which Plaintiff attended until June 7, 2011 notice of proposed removal. No special time and attendance accounting was ever done to attend. I notified supervisor in advance or day of and left for seminars.

82.     In reviewing the Board's decisions, a court must "set aside any agency action, findings, or conclusions found to be . . . (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. sect 7703(c) also sect 706. The right to a hearing on non-frivolous allegations of jurisdiction is a

29

"procedure required by law". Garcia, 437 F.3d at 1345; see also Covington v. Dept of Health & Human Servs., 750 F.2d 937, 943 (Fed Cir. 1984).

83.     The Board abused its discretion where throughout the proceeding at the MSPB, it disregarded Plaintiff's documentary evidence while Plaintiff maintained that the Census Bureau knew it could not substantiate its allegations that Plaintiff had received pay for time not worked. See JA32-34; JA271-78. Evidence submitted included:

> a.  31 of the hours charged attributable to supervisor policy to have one-
> hour lunches constituting "legally allowable break-time every employee receives."
> JA33-34; JA125 (email from supervisor noting that lunch break is "one hour"); cf.
> JA43 (proposed removal noting that agency believed Perry's schedule included "a 30
> minute non-paid lunch period mid-day")
>
> b.  Perry did substantial work from home outside normal working hours See
> JA126 (email referring to "at least 40 hours working on" a project "at home"); JA128-
> 60 (emails showing Perry working after normal office hours) calculated at minimum
> more than 158 hours because building exit times not made available worked outside
> of the scheduled 7:30 am to 5:00 pm schedule, JA275, which alone surpass the 133
> hours and 35 minutes the agency claimed Plaintiff did not work and was the basis of
> the charge of misconduct, JA53. The total number of hours worked by Plaintiff
> outside of 7:30am – 5:00 pm grossly exceeds the agency calculated 133 hours and
> 35 minutes and the Plaintiff's calculated 158 hours worked outside of 7:30am –
> 5:00pm because the time Plaintiff exited the buildings on each of the days was not

available. The charge of misconduct was an overt act of discrimination and retaliation in itself.

84.    Plaintiff attended all-day and partial-day supervisor approved GSA CIO University seminars since 2005 and ELDP Leadership seminars since 2009 during working hours.

85.    Plaintiff's supervisors were fully aware and until June 7, 2011 [the date of the proposed removal] ... provided an informal accommodation for Plaintiff's disability," JA31, which included "permission to work outside of my [Plaintiff's] 7:30 to 5:00 formal work hours," JA32. Since the Census Bureau had long been aware of and sanctioned Plaintiff's work schedule, it could NOT seek Plaintiff's removal on the same basis. Precedent requires notice to an employee when previously condoned activity is no longer condoned. Crane v. Dept of Air Force, 240 Fed. App'x 415, 418 (Fed. Cir. 2007); see e.g. Rabago v. Dept of Army, 25 MSPR 530, 532-33 (MSPB 1985).The Agency failed to notify Plaintiff that the supervisor's prior accommodations were no longer going to be provided, and along with the other allegations and law therefore demonstrates that the proposed removal was knowingly unjustified and the resulting Settlement Agreement coerced. Shultz 810 F.2d at 1134-35.

86.    Plaintiff was actively pursuing promotion to GS-15 and preparing for Senior Executive Service. A discriminatory element at Commerce and Census through pattern and practices blocks merit promotions of black employees preferring non-competitive promotions of young Caucasian employees over senior highly qualified black employees. (JA162-178).

87.    Like Shultz, Plaintiff has cited evidence that he was authorized to work a flexible schedule and Plaintiff made the agency aware of those arrangements in the response to the

proposed removal. JA65-67. Therefore, like Shultz, the "agency knew or should have known" that it's "charge . . . was no longer a viable basis" for the adverse action. 810 F.2d at 1137.

88.     As a direct and proximate cause of Plaintiff's injury, Plaintiff seeks all allowable relief for injuries but not limited to back pay; liquidated damages; front pay; interest; employment benefits; equitable relief, injunctive relief; and all allowable compensatory and punitive damages for malice and reckless disregard to employee federally protected rights.

## Count II – Violation of the Rehabilitation Act and Anti-Retaliation Provision

89.     Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

90.     Defendant Dept. of Commerce (DOC) and U.S. Census Bureau (BOC) are agencies as defined under the Rehabilitation Act, as amended.

91.     Plaintiff's employment constitutes a program or activity of a federal agency covered under the 1973 Act.

92.     Section 501 of the Rehabilitation Act of 1973, as amended by the Rehabilitation Act Amendments of 1992, imposes on federal agencies a duty to take affirmative steps to insure that qualified individuals with disabilities have equal access to employment opportunities in the federal government.  29 U.S.C Section 791.

93.     No person shall be subject to unlawful retaliation for opposing any practice made unlawful by Title VII of the Civil Rights Act of 1964, the Rehabilitation Act, and the Age Discrimination in Employment Act or for participating in any stage of administrative or judicial

32

proceedings under the statute. 29 C.F.R. Section 1614. (Smith v. Navy, 659 F.2d 1113 (D.C. Cir 1981).

94. Defendant DOC and its constituent agency BOC are obligated not to exclude any person, solely by the reason of their disability, from participating in or receiving the benefit of any program or activity conducted by an Executive agency.

95. Plaintiff has a physical impairment which substantially limits multiple major life activities, and has made the record of such disabilities available, and is regarded as having a disability and whereas the Plaintiff has a record of exceeding the job performance requirements. With an informal and reasonable supervisor provided accommodation, Plaintiff met the responsibilities of the job for approximately 3.5 years without undue hardship on employer prior to the proposal to remove. (JA75-JA123). In fact Plaintiff exceeded what would be considered his obligation to the accommodation provided by his supervisor.

96. Plaintiff cited evidence that he was authorized to work on a flexible schedule which Plaintiff made agency aware in his response to the proposed removal. (JA65-67).

97. Plaintiff at all times exceeded the standards of performance.

98. Plaintiff was actively pursuing discriminatory violations of Title VII and Age Discrimination in Employment (ADEA) discrimination claims before the EEOC. (JA162-178).

99. The adverse actions taken against Plaintiff were in part as retaliation for Plaintiff's active EEOC claims already undergoing negotiation seeking settlement.

100. The Rehabilitation Act requires Executive agencies to participate in an interactive process to include an analysis of the particular job to determine its purpose and essential functions; consulting with the employee to determine his or her job-related limitations and how

they may be overcome with an accommodation; identifying possible accommodations and their effectiveness; consideration of the employees preferences and selection of an accommodation that is appropriate for both employee and employer; and the overall needs of the Office. None of these things occurred.

101.    The adverse actions were intentional and done with malice and reckless disregard for Plaintiff and his family. To execute the adverse actions the agency had to resort to an employee who was not Plaintiff's supervisor to propose the adverse action and an illegal prohibited personnel practice imposing a non-disclosure agreement for unsubstantiated charges.

102.    As a direct and proximate cause of the violation of the 1973 Rehabilitation Act and the Civil Service Reform Act section 7703 b(2), Plaintiff has suffered damages and seeks relief including but not limited to, actual pecuniary damages and actual non-pecuniary damages in the form of direct and indirect injury, back-pay, liquidated damage, front-pay, all benefits to include annual and sick leave, promotions, depleted savings, personal loans, and tax and credit degradation and requests maximum punitive damages for intentional discriminatory violation of the act with reckless disregard for the well-being of Plaintiff and his family. Plaintiff suffered damage to reputation, embarrassment, humiliation, abnormal heart and chest palpitations, physical and emotional upset, mental anguish, physical pain and suffering, and irreparable damage to career and professional reputation. Plaintiff's damages are ongoing and continuing.

## Count III – Violation of Title VII and Anti-Retaliation Provisions

103.    Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

104.    Plaintiff is an African American/Black male.

105.    Plaintiff was qualified for the positions, promotions, leadership acting assignments, and training requests that were denied. Performance evaluations and corrected evaluations show superior performance.

106.    Employer took a materially adverse action against Plaintiff serving upon Plaintiff a proposal to remove and a non-disclosure settlement document.

107.    Employee was constructively suspended and terminated under threat of termination for unsubstantiated charges per the settlement document for asserting his protected rights to be free from repetitive employment discriminatory actions and while Plaintiff had been provided and working under an informal accommodation provider by his supervisor.

108.    Plaintiff had pending race discrimination claims before the Agency and the EEOC.

109.    The instant adverse actions violated the anti-retaliation provision of the Title VII race discrimination protections.

110.    Younger Caucasian employees similarly situated received the promotions, positions, acting assignments in preparation for promotion and training. As Plaintiff had completed significant training including two Master degrees and CIO Certification, two Bachelor degrees, and numerous Information Technology programming and skill seminars, none of this mattered. The benefits of employment were driven by racially discriminatory considerations.

111.    Defendant's conduct continues to cause Plaintiff and Plaintiff's family severe emotional distress including at times unbearable stress, depression, humiliation, embarrassment, anxiety, emotional upset, physical upset, mental anguish, physical pain and suffering, excessive heart

35

palpitations, and ongoing withdrawal from family and community involvement due to that stated and the nearly unbearable realization of the damage to career and professional reputation and future prospects for continuing career. Dependent minor child expresses her disappointment and emotional distress each time she is told we are not able to enroll her in academic or athletic development activity also asking why she can't participate in activities that her classmates and friends attend and asking why Plaintiff had to retire. It is nearly unbearable and ongoing and continuing. Plaintiff will need additional professional/medical care to address the emotional harm suffered in the near future. As a direct and proximate cause of the violation Title VII of the Civil Rights Act of 1964 and the Civil Service Reform Act 1978, Plaintiff has suffered damages and seeks relief including but not limited to, actual pecuniary damages and actual non-pecuniary damages in the form of direct and indirect injury, back-pay, liquidated damage, front-pay, all benefits to include annual and sick leave, promotions, depleted savings, personal loans, and tax and credit degradation and requests maximum punitive damages for intentional discriminatory violation of the act with reckless disregard for the well-being of Plaintiff and his family. Plaintiff suffered damage to reputation, embarrassment, humiliation, abnormal heart and chest palpitations, physical and emotional upset, mental anguish, physical pain and suffering, and irreparable damage to career and professional reputation. Plaintiff's damages are ongoing and continuing. .

## Count IV - Violations of 42 U.S.C. 1981 and 42 U.S.C. 1983

112.    Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

113. This claim is for racial discriminatory actions taken against Plaintiff not covered or excluded by Title VII statutory administrative constraints and limitations.

114. Plaintiff has been subjected to repeated adverse actions based on racial discrimination the impact of which is visible in statistics from discovery in the active forfeited EEOC cases. JA170-173. Repeated qualified but not selected, repeated failure to promote Plaintiff from 2000 through 2010 , denial of training, denial of occupying temporary leadership vacancies, and unfair performance evaluations are shown to be discriminatory on the basis of race. In each instance, a Caucasian employee most times younger than Plaintiff with less experience, knowledge was selected instead. In 2006, even though plaintiff was deemed qualified for the Deputy CIO vacancy at DOC, Plaintiff continued to be subjected to racial discrimination in all employment matters. JA315-335; JA335-359; JA529.

115. Plaintiff has been denied of due process on the basis of race, denial of property rights, denial of equal protection of the 5th and 14th Amendments, for creation of a long-term racially discriminatory and hostile work environment, racial harassment, disparate treatment on the basis of race, intentional race discrimination in failing to promote and other personnel actions starting in 2000 and continuing to 2012, racial discrimination in non-selection for training and disparate performance awards based on race, repeated unfair performance evaluations based on racial discrimination causing current and ongoing damages to Plaintiff, his wife and daughter.

116. As a direct and proximate cause of the violation of the 42 U.S.C. 1981 amended and 42 U.S.C. 1983, Plaintiff has suffered damages and seeks maximum allowable relief for injuries to Plaintiff and Plaintiff's family. Plaintiff and family have suffered depleted savings, personal loans, and tax and credit degradation and requests maximum punitive damages for

intentional discriminatory violation of the law with reckless disregard for the well-being of Plaintiff and his family. Plaintiff suffered damage to reputation, embarrassment, humiliation, abnormal heart and chest palpitations, physical and emotional upset, mental anguish, physical pain and suffering, and irreparable damage to career and professional reputation. Plaintiff's damages are ongoing and continuing.

117.    Plaintiff seeks all allowable damages in this claim as there is no statute of limitations on 42 U.S.C 1981 and 42 U.S.C. 1983 claims of racial discrimination and deprivation of civil rights guaranteed by the Constitution, statute, and the law.

### Count V –Violation of the ADEA and Anti-Retaliation Provisions

118.    Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

119.    Plaintiff is Black/African-American and was over 40 years of age and had prior pending and subsequent age discrimination and Title VII claims against Defendant Department of Commerce. JA162-178.

120.    Adverse personnel actions taken and others codified in an illegal non-disclosure agreement include failure to promote (JA315-JA335); denial of promotion and promotion of younger Caucasian employees (JA341-359); reassignment (JA466); change position title and supervisor code in 2001(JA529); harassment; mandatory retirement; mandatory suspension were taken against Plaintiff.

121.    Plaintiff performance exceeded the qualifications and the standards of the position at issue.

122. As incorporated here, the nondisclosure agreement was coerced and thus involuntary; no exchange for "valid consideration" because the agreement was involuntary; no advice to consult an attorney prior to signature; is a prohibited personnel practice and considered per se retaliation and discrimination.

123. The ADEA has its own criteria for adjudication of violations of the ADEA which are non-waivable rights (EEOC Guidance 915.002 on Non-waivable rights). Constructive suspensions and terminations of employees over the age of 40 years old with already pending age discrimination claims is itself a discriminatory employment action in violation of ADEA anti-discrimination statute.

124. While vacancies for GS-15 Division Chief and Assistant Division Chief Positions were being posted, Plaintiff was removed from the position of Special Assistant to the Division Chief to eliminate Plaintiff from fairly competing for pending vacancies. (JA162-178). Younger Caucasian employees with less experience were placed in each vacancy. (JA169)

125. This instant adverse personnel action taken with pending EEOC claims including age discrimination is also an act of age discrimination. Due to pending claims before the EEOC, the proposal to terminate and the coerced retirement and suspension also violate the ADEA.

126. Plaintiff seeks all allowable damages including but not limited to back pay, front pay, liquidated damages for reckless and willful violations done with malice, reinstatement and retroactive promotion to GS-15 Step 10, injunctive relief, pre-judgment interest; and attorney fees and costs expended contesting these patterns and practices.

**Count VI – Bias, Statutory, Administrative, and Constitutional Violations by MSPB**

127.    Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

128.    Plaintiff was constructively suspended and removed from employment for unsubstantiated charges of misconduct, coercion and imposition of a nondisclosure agreement in violation of 5 U.S.C 2302, under duress caused by the agency.

129.    Imposition of a non-disclosure agreement violates 5 U.S.C 2302 b(8), b(9), b(12) and b(13). (Exhibit A, B, C).

130.    Non-disclosure agreements are per se retaliation and discrimination.

131.    Non-disclosure agreements violate EEOC Guidance Document 915.002, Guidance on Non-waivable rights (April 10, 1997), available at http://www.eeoc..gov/policy/docs/waiver.html.

132.    Plaintiff appealed his unlawful constructive suspension and removal from employment to the MSPB and appealed both Administrative Judge's (AJ) ruling and the Board's affirmation of the AJ ruling.

133.    5 C.F.R. section 1201.56(b) requires MSPB is to overturn the action of the agency if the appellant shows harmful error in the application of the agency's procedures in arriving at decision; the decision was based on any prohibited personnel practice described in 5 U.S.C. 2302(b); or the decision was not in accordance with law. The agency decision was both a violation of 5 U.S.C. 2302(b) and not in accordance with the law.

134.    MSPB was also aware of John Does(1-4) v. Dept. of Commerce Inspector General Stay at MSPB and investigation of the use and imposition of a non-disclosure agreement on

employees on the basis of false performance evaluations. Exhibit A, B, C. Two Deputy IGs fired and the Inspector General fired by the President of the United States.

135. A non-disclosure agreement is retaliation and violates the anti-retaliation provisions of the anti-discrimination statutes. Plaintiff already had race and age discriminations claims being actively pursued before the EEOC and in settlement discussions. JA182-186;

136. Plaintiff had been subjected to multiple unfair performance evaluations which remained contested.

137. MSPB should have vitiated the non-disclosure agreement on this basis alone.

138. The MSPB Administrative Judge denied material and relevant witnesses who were aware of the flexible schedule Plaintiff was allowed to work since 2007.

139. MSPB ignoring and failing to consider nearly 200 pages of evidence submitted by Plaintiff and failing to inform Plaintiff of his proper rights for judicial review. JA30; JA36.

140. The MSPB failed to consider or address many of the allegations or documentary evidence Plaintiff presented to the MSPB Administrative Law Judge. JA300-01. Based on that omission alone, the Board's decision cannot withstand judicial review. (U.S. Court of Appeals for D.C. Circuit 14-1155, Opening Brief Perry v. MSPB pg. 48-50. MSPB knowingly violated administrative law by failing to consider all evidence submitted by plaintiff and intentionally disregarded contrary evidence.

141. MSPB violated statutory, administrative, and constitutional law denying Plaintiff's right to due process and equal protection under law.

142. The CSRA 5 U.S.C. 7703(a)(1) provides judicial review for any employee adversely affected or aggrieved by a final order or decision by MSPB. Plaintiff is adversely affected,

aggrieved and injured because the Board declined to review this appeal of adverse personnel actions and can be challenged in this court. See TC Ravenswood, LLC v. FERC, 7056 F.3d 474, 476-77 (D.C. Cir. 2013).

143.     The Merit System Protection Board could have provided the correct judicial review in 2012 and mitigated Plaintiff and Plaintiff's family's injury and loss. The statutory law codified in the 1978 CSRA (5 U.S.C 7703 b(2)) directs cases like this one to Federal District Court for judicial review. The U.S. Supreme Court defines the government's position in the matter a "contrivance" or newly created.

144.     Further, the MSPB must reject any adverse agency action or agreement secured by a prohibited personnel action. (Exhibit A, B. and C).

145.     MSPB's failure to rule in accordance with law and statute and Plaintiff being over 40 years of age, MSPB also discriminated on the basis of Plaintiff's age pursuant to the ADEA.

146.     As a direct and proximate cause of the error by Defendant MSPB, the Plaintiff has suffered damages from an unnecessary extended loss of agency employment which MSPB should have been reinstated Plaintiff no later than August or September of 2012 upon application of the proper legal administrative, statutory, and constitutional standards. Plaintiff's damages are ongoing and continuing. As stated by Amicus, Plaintiff has been injured by the MSPB failure to follow law and its decision. This Court should reverse the MSPB decision and order reinstatement of Plaintiff with all allowable damages including but not limited to injunctive relief, equitable relief, punitive damages for failure to follow administrative, statutory and Constitutional law, back pay, liquidated damages, front pay, benefits, punitive damages, legal fees, training funds, credit repair, personal loans, student loan, and other

damages allowed. Plaintiff's daughter was unable to attend the University and program of her choice because of Plaintiff's removal and subsequent minimum wage positions.

147.    For these injuries caused by the MSPB that are current and ongoing. Plaintiff requests all allowable damages.

## Count VII – Fraud

148.    Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

149.    Plaintiff claims(1)that the defendant Parties/employees of Commerce made a false statement to the Plaintiff that he was being terminated from federal service for misconduct, (2) that its falsity was either known to the defendant or that the statement was made with reckless indifference as to its truth, (3)that the statement was made for the purpose of defrauding the Plaintiff, (4) that the Plaintiff relied on the statement and had the right to rely on it, and (5) that the Plaintiff and his family suffered compensable injury resulting from the fraudulent statement. *Nails v. S & R*, 334 Md. 398, 415-416 (1994); *see also Everett v. Baltimore Gas & Elec.*, 307 Md. 286, 300 (1986); *Martens Chevrolet v. Seney*, 292 Md. 328, 333 (1982).

150.    In the proposal to remove, defendant Darren Gutschow made a fraudulent statement to the Plaintiff that he was guilty of misconduct which included threat of immediate termination and, Attorney Ronda Brown fraudulently stated in cover letter to Administrative Judge Mary Palmer for dismissal of pending EEOC claims that the Agency drafted EEOC Settlement Agreement, which is an illegal nondisclosure/gag agreement and a prohibited personnel practice violation of 5 USC 2302(b), was a voluntary settlement all the time knowing of the July 26, 2011 Human Resources email from Benjamin Felder and approved by John

43

Cunningham which Plaintiff was not made aware of by his Union Representative Johnny Zuagar and subsequently became aware of subject email in 2013 when Defendant U.S. Census Bureau submitted subject email in a pleading before the Merit System Protection Board. JA466.

151. The charges of misconduct were known to be false by all named current and former Defendant Parties/employees of U.S. Dept. of Commerce and that the statement was made with reckless indifference as to its truth that Plaintiff was guilty of misconduct, and

152. That the fraudulent statement was made to Plaintiff for the purpose of defrauding the Plaintiff out of his federal government employment and

153. That the Plaintiff relied on the fraudulent statement, and

154. The fraud is the direct and proximate cause of Plaintiff's injury and loss, including but not limited to actual pecuniary damages and actual non-pecuniary damages in the form of direct and indirect injury to Plaintiff from loss of employment, destruction of career, long-term economic earning capacity, interruption of continued education and pursuit of college professorship, reputation, embarrassment, humiliation, anxiety, extraordinary stress, post traumatic stress, depression, mental anguish, physical pain and suffering, credit standing, inability to refinance mortgage and other debt, other economic losses including injury and losses to minor child due to Plaintiff's inability to provide for academic and athletic development programs in preparation for high school and soon to be college education, and the inability of Plaintiff to pay for college education. *Nails v. S & R*, 334 Md. 398, 415-416 (1994); *see also Everett v.Baltimore Gas & Elec.*, 307 Md. 286, 300 (1986); *Martens Chevrolet v. Seney*, 292 Md. 328, 333 (1982).

## Count VIII – Conspiracy to Commit Fraud

155. Plaintiff repeats each and every allegation contained in all preceding paragraphs, specifically the elements of fraud and incorporates them here.

156. Plaintiff claims that Defendant Parties/employees of U.S. of America, Dept. of Commerce indulged in communication between the Parties/employees for the purposes of communicating the fraud executed against Plaintiff and therefore the elements of fraud are incorporated here. See attached July 26, 2011 email from Human Resources employee Benjamin Felder to Terryne Murphy, Ronda Brown and others with the approval of John Cunningham, Supervisor Human Resources Division and directed and orchestrated by former Census Bureau Director Robert M. Groves and Chief Information Officer Brian E. McGrath.

157. Communication about the fraud occurred between Brian McGrath, Terryne F. Murphy, supervisor of employee who proposed Plaintiff's removal from federal service, Darren Gutschow who is the author of a proposed removal of Plaintiff and each named Party/employee of Commerce (current and former employee) to include managers in the legal office responsible for constructing settlement agreements John Guenther, Deputy Chief Counsel Employment and Labor Law; Barbara Fredericks, Assistant General Counsel for Administration; Brian DiGiacomo, Branch Chief Labor and Employment Law and signatories to the illegal nondisclosure/gag agreement and email from Human Resources employee Benjamin Felder, with approval of supervisor John Cunningham, and the remaining named Parties conspired to impose upon Plaintiff the unlawful constructive suspension and termination/retirement, reassignment and other personnel actions, and

158. By a concerted effort to illegally extract and use building badge scans in violation of 5 USC 6106 and other prohibited personnel practices and arbitrarily implement a manual sign in procedure for approximately 30 days and telling supervisor of record Dale Richard Reed to "not tell anyone" why a sign in procedure was being implemented when there was no policy directive provided nor a condition of employment to affected employees about this change in procedure and use to charge Plaintiff with misconduct and require a 30 day suspension, a constructive discharge under threat of immediate termination imposed by the subject illegal nondisclosure/gag agreement which is also an illegal and prohibited personnel practice in violation of 5 USC 2302 upon Plaintiff,

159. Which Defendants intended that its actions would lead to Plaintiff's constructive suspension, retirement/termination and other constructive personnel actions codified in the illegal gag agreement, appellant's injury from suspension occurred in 2011 and is ongoing and injury from retirement occurred on April 3, 2012 and is ongoing,

160. Resulting in damages to Plaintiff including but not limited to actual pecuniary damages and non-pecuniary damages in the form of direct and indirect injury to Plaintiff's reputation, long-term economic earning capacity from continued professional development and eventual college professorship, reputation, embarrassment, humiliation, anxiety, extraordinary stress, depression, mental anguish, physical pain and suffering, damages to minor child and other economic losses.

## Count IX - Extortion

161. Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

162.    The use of a threat in order to illegally obtain money or anything of value constitutes the crime of extortion. Intent is also regarded as an element of extortion. Extortion is a specific intent crime. Generally, a demand or a request for a specific sum of money is not considered a prerequisite to a conviction of extortion. (It was observed in *People v. Fort*, 138 Mich. App. 322 (Mich. Ct. App. 1984) , that the elements of extortion are: Communication; threatening accusation of any crime or offense or any injury to the person or property or mother, father, husband, wife, or child of another, with intent to extort money or pecuniary advantage as to compel the person so threatened to do or refrain from doing an act against his/her will.

163.    Plaintiff claims that named Parties/employees communicated amongst themselves of the desire and intent to terminate Plaintiff, and

164.    The named employees listed as Parties in the instant complaint are current and former employees of the U.S. Department of Commerce in the complaint forced Plaintiff to retire illegally under threat of termination for unsubstantiated charges of misconduct illegally using building recording clock data in violation of 5 USC 6106 and the Federal Personnel Manual that states that termination from the federal service is for cause only and other prohibited personnel practices under threat of termination for unsubstantiated charges of misconduct,

165.    By way of employee Darren Gutschow's July 7, 2011 proposal to remove Plaintiff from federal employment in violation of 5 USC 6106 forbidding the use of recording clock information for time and attendance and threatening termination as a result of easily explainable discrepancy's due to a flexible work schedule accommodation provided by supervisor of record and readily available medical documentation, the recently uncovered July

47

26, 2011 email from Human Resources employee Benjamin Felder dictating Plaintiff's non-negotiable terms and conditions of employment knowingly on the basis of building recording clock data in violation of 5 USC 6106, and

166.    Plaintiff unwillingly consented to this constructive suspension, constructive retirement, and other constructive personnel actions because of the threat of immediate termination for unproven and unsubstantiated evidence of misconduct and conduct that was neither terms nor conditions of Plaintiffs employment. In fact, the use of building controlled entry badge scans for time and attendance or discipline is a violation of 5 USC 6106 (prohibition against the use of recording clock) and the Federal Personnel Manual.    The Defendant employees Robert M. Groves, Thomas Messenbourg, Brian McGrath, Ted Johnson, Terryne Murphy, Ronda J. Brown, Benjamin Felder, Roy Castro, and John Cunningham documented in a July 26, 2011 email extorted Plaintiff's suspension, retirement, and other constructive personnel actions.

167.    Recording clock data is not used as a proxy for official time and attendance for Parties/employees of Employment and Labor Law Division responsible for draft and construction of the subject illegal non-disclosure gag agreement.  By placing these constructive acts in a nondisclosure agreement, Defendant intended Plaintiff would not be able to contest these illegal acts.

168.    The fear was induced by the wrongful use of a threatened termination and causing fear in Plaintiff of unemployment and unemployable, without health care for self and family with a potentially permanent disability, daughter undergoing extensive orthodontic reconstruction and inability to care for wife, daughter and outright surviving and living.  The

named Defendant Parties/employees and signatories of the gag agreement intended that Plaintiff be eliminated from federal employment by my own action or theirs.

169.    The constructive personnel actions were proposed under color of official right.

170.    These acts are the direct and proximate cause of injury, damage, and loss to Plaintiff.

171.    Plaintiff has suffered damages, including but not limited to actual pecuniary damages and non-pecuniary damages in the form of direct and indirect injury to Plaintiff's reputation, unemployment, severely diminished long-term economic earning capacity from continued professional development and eventual college professorship, reputation, embarrassment, humiliation, anxiety, extraordinary stress, depression, mental anguish, physical pain and suffering, other economic losses.

## Count X - Conspiracy to Commit Extortion

172.    Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here and especially the elements of extortion.

173.    Conspiracy requires that two or more persons plan and carry out the act that injures Plaintiff.  Each of the named Defendant Parties/employees and signatories to the nondisclosure/gag agreement, especially Office of General Counsel employees John Guenther, Deputy Chief Counsel, Associate Counsel Barbara Fredericks, Branch Chief Brian DiGiacomo, Adam Chandler, David J. Spence and Attorney Ronda J. Brown conspired with other named Parties/employees, Robert M. Groves, Brian McGrath, Terryne Murphy, Ted Johnson, John Cunningham, and Darren Gutschow to extort Plaintiff out of the items identified in the August 2011 nondisclosure/gag agreement which unlawfully constrained Plaintiff from contesting

while employed else face further adverse acts potentially causing further injury to Plaintiff. Federal law codified in the Federal Personnel Manual dictates termination from federal employment is for cause only of failure to perform and/or misconduct that must be substantiated or able to be substantiated. Each of these Defendants knew that use of recording clock information is a violation of law (5 USC 6106). Each knew of Plaintiff's long-term disability.    Each knew of Plaintiff's superior record of performance.    Each knew Plaintiff employment record was devoid of any prior misconduct.

174.    These acts are the direct and proximate cause of injury, damage, and loss to Plaintiff.

175.    Plaintiff has suffered damages, including but not limited to actual pecuniary damages and non-pecuniary damages in the form of direct and indirect injury to Plaintiff's reputation, unemployment, severely diminished long-term economic earning capacity from continued professional development and eventual college professorship, reputation, embarrassment, humiliation, anxiety, extraordinary stress, depression, mental anguish, physical pain and suffering, other economic losses.

## XI - Defamation

176.    Plaintiff incorporates each and every allegation contained in all preceding paragraphs and incorporates them here.

177.    Plaintiff claims that "(1) that the defendants made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the Plaintiff thereby suffered harm. A defamatory statement is one 'which tends to expose a person to public scorn, hatred, contempt or ridicule,

50

thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" Offen v. Brenner, 402 Md. 191, 935 A.2d 719 (2007), quoting Smith v. Danielczyk, 400 Md. 98, 115, 928 A.2d 795, 805 (2007). The defamatory statement that the Plaintiff had committed misconduct was done with malice and reckless disregard for Plaintiff and Plaintiff's family.

178.    Employee Darren Gutschow published a defamatory communication in his proposal to remove Plaintiff from the federal service for misconduct and delivered to the Department of Commerce Senior level employees including Robert Groves, Thomas Mesenbourg, John Guenther, Barbara Fredericks, Brian DiGiacomo, Benjamin Felder, John Cunningham and the other named Parties/employee signatories to the illegal nondisclosure/gag agreement imposed on Plaintiff by coercion, fear and threat of termination on the basis of defamed statements in the June 7, 2011 proposal to remove.

179.    Plaintiff responded to Deciding Official stating that Plaintiff was working under an informal agreement provided by his supervisor. Mr. Gutschow and Ms. Terryne Murphy could have consulted with Plaintiff's supervisor prior to the proposed removal but surely after Plaintiffs response.   Plaintiff's supervisor was not consulted because Mr. Gutschow, Mr. McGrath, Ms. Murphy, and Mr. Robert Groves acted with malice

180.    Illegal nondisclosure/gag agreement restating Plaintiff was entering a settlement for charges of misconduct codified from the proposed removal document and delivered to EEOC Administrative Judge Mary Palmer by Ronda J. Brown with the intent to have prior pending EEOC claims "disposed" without the requisite adjudication of Title VII claims without

51

providing evidence of the misconduct and never having substantiated such charges of misconduct, and

181.    Named Defendant employees have not and are unable to place in the record any terms and conditions of employment violated by Plaintiff nor has it sustained any evidence of misconduct charges against Plaintiff, and as a result

182.    Plaintiff and Plaintiff's family has suffered damages, including but not limited to actual pecuniary damages and non-pecuniary damages in the form of direct and indirect injury to Plaintiff's reputation, long-term economic earning capacity from continued professional development and eventual college professorship, embarrassment, humiliation, anxiety, extraordinary stress, depression, mental anguish, physical pain and suffering, withdrawal from fraternal and community service activities, and other economic losses. See, e.g., Shapiro v. Massengill, 105 Md. App. 743, 772, 661 A.2d 202,216-17, cert. denied, 341 Md. 28, 668 A.2d 36 (1995).

183.    Damages are current and ongoing, possibly permanent.

## Count XII –Negligent Training and Supervision

184.    Plaintiff incorporates each and every allegation contained in all preceding paragraphs and incorporates them here.

185.    Plaintiff claims that the employer of the individual who committed the allegedly tortuous act owed a duty to the plaintiff, that the employer breached that duty, that there was a causal relationship between the harm suffered and the breach of the employer's duty, and that the plaintiff suffered damages. See Cramer v. Housing Opportunities Com., 304 Md.705, 712-713 (Md. 1985).

186.   Plaintiff and named Parties/employees were employed by Commerce Department, (current and former employees) Robert M. Groves, Brian E. McGrath, Terryne F. Murphy, and Darren Gutschow were entrusted with supervisory duties including the ability to hire and terminate employees for cause, and

187.   John Guenther and Barbara Fredericks were entrusted with supervisory responsibility of Brian DiGiacomo and Mr. DiGiacomo is responsible for supervisory duties of the Employment and Labor Law Branch with the ability to take legal actions that affects all employees of Commerce, as is the case with the illegal nondisclosure/gag agreement imposed on Plaintiff. Mr. DiGiacomo signed the illegal nondisclosure/gag agreement, which is also a prohibited personnel practice violation of 5 USC 2302 (b)(13), without any substantiated evidence of misconduct with the intent that the nondisclosure document would prevent Plaintiff exercising legal right to appeal this egregious and illegal administrative act.

188.   That termination for cause is only for failure to perform and substantiated misconduct,

189.   It was foreseeable that the named employees entrusted with specific supervisory duties and authority be properly trained and that the failure of Barbara Fredericks and Brian DiGiacomo as wielding the full power and legal force of employment and labor related actions of Commerce caused injury and loss to Plaintiff, and failure of Robert Groves to have all subordinate employees adequately trained and supervised, specifically to supervise and have Brian McGrath adequately trained, failure of Brian McGrath to supervise and have Terryne Murphy adequately trained, and the failure of Terryne Murphy to supervise and have Darren Gutschow adequately trained.

190.    Causing Plaintiff to suffer constructive discharge from the federal service and other adverse actions without cause of action. The employer U.S. Department of Commerce and U.S. Census Bureau failed to properly hire, train, or supervise the named Parties/employees in this case and any employees who are signatories to the illegal nondisclosure/gag agreement, breaches its duty to Plaintiff and others of a safe and hostile free workplace.

191.    These acts are the direct and proximate cause of injury and loss suffered by Plaintiff.

192.    Plaintiff and Plaintiff's family has suffered damages, in the form of direct and indirect injury to Plaintiff's reputation including but not limited to actual pecuniary damages and non-pecuniary damages to Plaintiff's career, long-term economic earning capacity from inability to continue professional development and eventual college professorship, embarrassment, humiliation, anxiety, extraordinary stress, depression, mental anguish, physical pain and suffering, withdrawal from fraternal and community service activities, and other economic losses.

## Count XIII – Federal Tort Claims Act

193.    Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

194.    An administrative claim was properly presented to the Department of Commerce, Employment and Labor Law Division Chief and his superior Barbara Fredericks on February 12, 2014 in accordance with 28 U.S.C 2401. Subsequently, Plaintiff submitted an amended complaint on March 1, 2014.Plaintiff now amends this complaint for damages for minor child.

195. By return receipt the Agency acknowledged receipt of the administrative claim.

196. By return receipt the Agency sent certified letter denial of administrative claim dated March 12, 2014per administrative requirement imposed by FTCA.

197. Therefore venue is proper in this District Court under 28 U.S.C. 1346(b), 1402(b), 2401(b), and 2671-2680 because a substantial portion of the events giving rise to this cause of action took place at Department of Commerce Headquarters in Washington, D.C. and there is a diversity of citizenship issue in this case as Defendants live in various states in the country.

## Negligent Acts and Omissions

198. Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

199. Defendant U.S. of America owed a duty of care to the Plaintiff because of an employer – employee relationship, and due to this relationship, the Defendant breached its duty of care to Plaintiff to provide equitable, safe and hostile free work environment where supervisory employees in charge abide by rule and law in addressing personnel issues, and Defendant's breach of its duty to Plaintiff actually caused the constructive discharge of Plaintiff, and is the direct and proximate cause of injury to Plaintiff and injury to Plaintiff's minor dependent child. "But for" the defendant's negligent acts and omissions leading to the constructive discharge/retirement, and other constructive personnel actions against Plaintiff, no injury would have occurred.

200. Plaintiff was an employee of the U.S. of America and thus existed and employer – employee relationship between Plaintiff and Defendant U.S. of America.

201.    Defendant U.S. of America was under a duty to protect the Plaintiff and
Plaintiff's family from injury by the above named Parties/employees from risk and harm on the
job.

202.    Defendant U.S. of America breached that duty by allowing its employee to
charge Plaintiff with misconduct that was not Plaintiff's supervisor and had no standing to take
a personnel action against Plaintiff, nor did employee Gutschow have knowledge of prior
accommodations made by supervisor(s) of record, nor did Mr. Gutschow produce substantiated
evidence of misconduct. The Defendant intended that the illegal nondisclosure/gag agreement,
which is also a prohibited personnel practice violation of 5 USC 2302 (b)(13), would conceal
these negligent acts and omissions and prevent Plaintiff from recovering for his injuries caused
by Defendant U.S. of America done with reckless disregard.

203.    As a direct and proximate cause of Defendant's breach of duty, Plaintiff,
Plaintiff's family and especially daughter has suffered damages, including but not limited to
long-term economic earning capacity, interruption of continued education and pursuit of
college professorship, reputation, embarrassment, humiliation, anxiety, extraordinary stress,
post traumatic stress, depression, mental anguish, physical pain and suffering, credit standing,
inability to refinance mortgage and other debt, other economic losses including injury and
losses to minor child due to Plaintiff's inability to provide for academic and athletic
development programs in preparation for high school and soon to be college education, and
the inability of Plaintiff to pay for college education. ( *Rhaney v. Univ. of Md. E. Shore*, 388 Md.
585, 597 (2005); *see also Muthukumarana v. Montgomery County*, *370 Md. 447, 486 (2002);
Brown v. Dermer, 357 Md. 344, 356, 744 A.2d 47, 54 (2000).).*

204. Plaintiff's daughter was admitted to Drexel University 5 year Physician's Assistant Graduate Degree Program which was her first choice. She was not able to attend because Plaintiff's employment was ended by the adverse actions in this complaint. Consequently, Plaintiff's daughter was injured and the injury is ongoing.

**Intentional and Negligent Infliction of Emotional Distress with Malice**

205. Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here. FTCA statute applies here.

206. Plaintiff claims (1) the Defendant U.S. of America acted intentionally and recklessly; (2) the Defendant's conduct was extreme and outrageous with reckless disregard for the emotional well being of Plaintiff and Plaintiff's family; and (3) the conduct is the cause (4) of Plaintiff and family's current and ongoing severe emotional distress. Hyatt, 943 S.W.2d at 297.

207. Defendant U.S. of America's constructive suspension, constructive discharge, reassignment and other constructive personnel actions codified in the illegal Aug 2011 nondisclosure/gag agreement, also a prohibited personnel practice violation of 5 USC 2302(b),imposed by Defendant U.S. of America by illegally using building recording clock data (badge scans) in violation of 5 USC 6106, which Defendant U.S. of America does not use for employees at its Department of Commerce Headquarters, attempting to conceal such information in the illegal gag agreement to prevent Plaintiff from contesting its use acted intentionally, recklessly and with malice and reckless disregard for the emotional impact on Plaintiff of such act in the charging Plaintiff with misconduct using building badge scans, in violation of 5 USC 6106, the legal purpose for which is security and safety and by an employee

who was not supervisor of Plaintiff and further the failure to support charges of misconduct with evidence only threat of termination if agreement was not accepted in the agency administrative proceedings. Union President Johnny Zuagar stated in testimony before the MSPB that the Defendant U.S. of America was going to terminate Plaintiff if he did not sign to Defendant's settlement document. The Defendant did not state that if Plaintiff could not demonstrate that he was working in accordance to an accommodation provided by his supervisor an adverse action would be taken. The Union Official communicated to Plaintiff in exact terms that if Plaintiff did not sign the agreement Plaintiff would be terminated.

208.    The Defendant's conduct was intentional, with reckless disregard and malice, and was extreme and outrageous, as Plaintiff had received and was working in accordance to an informal accommodation for his disability since 2007 and prior to any adverse action taken against Plaintiff, health records were provided to the Disability Program Office officially validating Plaintiff's disability and request for formal accommodation also prior to any adverse action against Plaintiff.

209.    Plaintiff feared being terminated without cause and left without healthcare and disabled sometimes requiring a can to walk and daughter undergoing extensive orthodontic reconstruction.

210.    Plaintiff having to suffer the consequences of this egregious scheme, reportedly during the worst economic conditions since the Great Depression, a superior federal employment record and contribution to the U.S. of America's mission, goals and objectives notably the 1990 and 2000 Decennial Census, and other mission support activities contributed to Plaintiff's severe emotional distress and is ongoing while Plaintiff is unable to comprehend

the degree of hatred, malice and egregiousness required to commit such unwarranted acts and the actors bold actions and belief that this could be done with impunity,

211. As removal from federal employment is for cause only for failure/inability to perform and misconduct, the Defendant's conduct continues to cause Plaintiff and Plaintiff's family severe emotional distress including at times unbearable stress, depression, humiliation, embarrassment, anxiety, emotional upset, physical upset, mental anguish, physical pain and suffering, excessive heart palpitations, and ongoing withdrawal from family and community involvement due to that stated and the nearly unbearable realization of the damage to career and professional reputation and future prospects for continuing career. Dependent minor child expresses her disappointment and emotional distress each time she is told we are not able to enroll her in academic or athletic development activity also asking why she can't participate in activities that her classmates and friends attend and asking why Plaintiff had to retire. It is nearly unbearable and ongoing and continuing. Plaintiff will need additional professional/medical care to address the emotional harm suffered in the near future.

212. As a direct and proximate cause of Defendant's intentional infliction of emotional distress and negligent infliction of emotional distress, Plaintiff, Plaintiff's family and especially daughter has suffered damages, including but not limited to long-term economic earning capacity, interruption of continued education and pursuit of college professorship, reputation, embarrassment, humiliation, anxiety, extraordinary stress, post traumatic stress, depression, mental anguish, physical pain and suffering, credit standing, inability to refinance mortgage and other debt, other economic losses including injury and losses to minor child due to Plaintiff's inability to provide for academic and athletic development programs in

preparation for high school and soon to be college education, and the inability of Plaintiff to pay for college education. Plaintiff's daughter was unable to enter the Drexel University Physician's Assistant 5 year Bachelor/Master degree program because of the acts of Defendant United States of America.

213.    As such conduct by Defendant U.S. of America is the direct and/or proximate cause of Plaintiff and Plaintiff's family's ongoing and severe emotional distress. (Hyatt, 943 S.W.2d at 297. ). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery...." Restatement (Second) of Torts section 46 cmt. h (1965). The court must determine whether an average member of the community upon learning of the facts alleged by Plaintiff would exclaim "outrageous!" *(Harris v. Jones 281 Md 560, 380 A.2d 611(1977*); *Reagan v. Rider, 70 Md. App. 503, 521 A.2d 1246 (1987); Hamilton v. Ford Motor Credit Co., 66 Md. App. 46, 502 A.2d 1057, cert. denied 306 Md. 118, 507 A.2d 631 (1986)).*

214.    Plaintiff is nearly 61 years old now and has been unable to find comparable employment. Plaintiff had a dependent child in high school nearing college age and a member of the Junior Varsity Volleyball Team (Now at Freshman at Maryland). Plaintiff is unable to enroll daughter into academic and athletic development programs that will impact and limit her college choices and opportunities. Plaintiff was suffering from severe osteoarthritis requiring total hip replacement but still suffers from arthritic pain in lower lumbar region of the back. Plaintiff has visited his primary care physician and his cardiologist for stress and irregular heart beat especially soon after these egregious acts were perpetuated against Plaintiff and continues to seek preventive care and counseling from primary care physician and cardiologist. Plaintiff is

unable to afford psychiatric care at this time and therefore talks with long-term friends for emotional support. Plaintiff and Plaintiff's family remains in shock to this day of the extent of such an illegal and abominable scheme and the extent of the scheme perpetuated by Defendant U.S. of America.

215.     This Federal Tort Claims Act action (FTCA) seeks money damages in the amount of $11,530,000.00 against Defendant United States Government which includes $5,000, 000.00 for injury and damages to both Plaintiff's wife and dependent minor child who was 12 years old at the time of Plaintiff's constructive discharge and other constructive actions taken against Plaintiff. Plaintiff's constructive retirement was effective April 3, 2012 and reflected in official government documentation (SF-50). The Defendant U.S. of America negligently and unlawfully used a non-disclosure agreement which is also a prohibited personnel practice which also constrained Plaintiff from making earlier complaint while Plaintiff remained employed under threat of immediate.

## Count XIV - Violation of Whistleblower Protections of WPA and WPEA of 2012

216.     Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

217.     Plaintiff was subjected to violations of the Whistleblower Protection Act and the Whistleblower Protection Enhancement Act of 2012 laws by Department of Commerce employees and Defendants Brian E. McGrath, Brian DiGiacomo, Ronda J. Brown, Roy Castro, and Ted Johnson, who signed and imposed the nondisclosure agreement on Plaintiff.

218.     Complaint Defendants employed by the DOC legal office, Barbara Fredericks and John Guenther approved employee DiGiacomo signature onto a prohibited personnel practice and violation of 5 U.S.C 2302(b). Plaintiff also alleges that legal office employees Ronda J. Brown, Adam Chandler and David J. Spence are officers of the court, knowingly argued and submitted agency documentation in support of sustaining actions secured by a nondisclosure agreement and threat of termination using unsubstantiated charges of misconduct which each also knew or should have known is prohibited personnel practice. In all cases officers of the court have a legal obligation to argue lawfully and execute actions in the legal environment in accordance with the law.

## Privacy Act Violation

219.     Plaintiff repeats each and every allegation contained in all preceding paragraphs and incorporates them here.

220.     Defendant Department of Commerce committed violations of the Privacy Act of 1974, U.S.C. section 522a as several employees of the Dept. of Commerce who were not nor had ever been Plaintiff's supervisor or administrator was given personally identifiable information upon which he drafted a discriminatory and retaliatory personnel action proposing Plaintiff's removal from federal service and served on Plaintiff.

221.     Defendant's Darren Gutschow and Terryne Murphy had no need to know Plaintiff's personal information as neither Gutschow nor Murphy was Plaintiff's supervisor or acting in that capacity.

222.    Defendant's used Plaintiff's personal information to extract building badge scans
to charge Plaintiff with misconduct even though Plaintiff's supervisor and management knew
Plaintiff was working in accordance with an informal accommodation provided to employee for
his disability.

223.    Plaintiff was granted a formal accommodation when requested.

## PRAYER FOR RELIEF

### CSRA Damages

Plaintiff seeks all allowable damages for injury to Plaintiff and his family for intentional
violations of Plaintiff's statutory, administrative, and constitutional rights to include violations
of the CSRA, Rehabilitation Act of 1973, racial discrimination provisions of Title VII, the ADEA,
retaliation, harassment, and hostile work environment.  Plaintiff seeks immediate
reinstatement, back-pay, liquidated damages, front-pay, lost benefits, punitive damages,
damages for retaliation under the anti-retaliation provision of each statute, performance
awards, damages for credit destruction, student loan principal and interest debt, personal
loans, pain and suffering, embarrassment, and personal property loss.

Plaintiff and his family are further injured by this dastardly scheme intended to deny
Plaintiff's civil and constitutional rights.

### Damages for Title VII and Retaliation Violations

Defendant Department of Commerce failed to timely adjudicate claims of discrimination, the
first filed in 2007, allowing the claims to accumulate while repeatedly engaging in the
discriminatory behavior.  Since compensatory damages are capped at $300,000, Plaintiff
requests separate compensatory damages award for each EEOC and Agency unique case files

under each statutory violation by Defendant Department of Commerce and each violation of the anti-retaliation provision of each statute instead of a single compensatory award. It is Defendant Department of Commerce intent to accumulate and bundle charges to minimize its damages liability. Plaintiff demands all allowable damages for intentional discriminatory actions including but not limited to retroactive promotion to GS-15 Step 10 retroactive to Jan1, 2003, all awards, benefits, punitive damages, pecuniary and non-pecuniary damages, equitable relief, injunctive relief, and pain and suffering.

**Damages Against MSPB for Violations of Statutory, Administrative and Constitutional Law**

Plaintiff requests all allowable damages including but not limited to injunctive relief, equitable relief, compensatory damages, punitive damages from the Merit Systems Protection Board for failure to follow statutory, administrative, and constitutional law during the administrative hearing. (D.C. Cir 2016 #14-1155, Perry v. MSPB, Opening Brief of Court-Appointed Amicus Curiae, pg. 21) stating "Perry is "adversely affected or aggrieved" because the Board declined to review his appeal of adverse personnel actions. Because the Board's orders therefore inflict an injury on Perry that can be redressed by [D.C. Circuit], he has standing to challenge them [there]".

**Damages for Harassment**

Plaintiff requests all allowable damages including punitive damages for repeated adverse actions against Plaintiff including denial of promotions, unfair performance evaluation, denial of training, proposed removal, and imposition of an unlawful nondisclosure agreement which is a prohibited personnel practice, change of Plaintiff's supervisory classification, failure to reassign Plaintiff when requested ,and other prohibited personnel practices. These actions were

64

motivated by protected factors of Plaintiff and sufficiently severed and pervasive to alter the conditions of Plaintiff's employment and created an abusive and hostile working environment which it did.

**Damages for Hostile Working Environment**

Plaintiff was subjected to a hostile work environment on the basis of Plaintiff's disability, race, age, and gender. Plaintiff requests all allowable damages including but not limited to compensatory and punitive damages for the creation and maintenance of a hostile work environment from the time Plaintiff was removed from the position of Special Assistant to the Division Chief, a position plaintiff competed for and won on merit in 2002.

**Damages for Violation of WPA and WPEA**

Plaintiff requests all allowable damages for

**Damages for Torts in Common Law**

Plaintiff Anthony W. Perry demands a trial by jury on all issues in common law torts under the laws and Constitution of the United States that are not covered by the Civil Service Reform Act of 1978. Plaintiff seeks all allowable damages against all named Defendants is their personal capacities for fraud, extortion, conspiracy, conspiracy to commit fraud, conspiracy to commit extortion, defamation and negligence for injury to Plaintiff, Plaintiff's wife and Plaintiff's daughter.

**FTCA Damages**

Appellant seeks $11,530,000, of which this amendment for $5,000,000.00 for damages to each of Plaintiff's wife and minor child for damages to include all allowable damages from direct and indirect injury.  Damages to Plaintiff's child are also current and ongoing as Plaintiff was unavailable to pay for middle school and high school academic and athletic programs that would have prepared child to better compete for college admittance and varsity athletic competition at the highest level of her capability.  Plaintiff's daughter is unable to attend the University of her choice because Plaintiff suffered intentional negligent acts and omissions with malice, wanton and reckless disregard by Defendant United States of America.  Plaintiff cannot afford the tuition for his daughter to attend the Drexel University 5 year Graduate Degree Physician's Assistant Program to which she was admitted.  Her injury is permanent in this matter as she matriculated at the University of Maryland instead which did not have the program she had aspired and worked towards since middle school and where Plaintiff is barely able to afford the less expensive tuition and fees of the in-state University.  Our family is devastated and will never recover from the egregious acts and malice and wanton disregard with which these actions were taken against Plaintiff.

Plaintiff requests that in the unfortunate event that Plaintiff dies or experiences a debilitating injury that prevents Plaintiff to personally pursue this matter to the judicial end, that this Court appoint the estate of Anthony W. Perry as the Plaintiff and award any and all damages to the Estate of Anthony William Perry and assign as Executor Plaintiff's wife, Pamela U. Brown.  In the case that Pamela is unable to act in the capacity of Executor, Plaintiff requests

this Court to appoint Plaintiff's daughter, Kamryn A. Perry as Executor and beneficiary of all

damages awarded.


Respectfully,

Anthony W. Perry