IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

_____

| | |
|---|---|
| ANTHONY W. PERRY, Pro se | : |
| 5907 Croom Station Rd. | : |
| Upper Marlboro, MD  20772 | : |
| (301) 928-2305 | : |
| | : |
| Plaintiff, | : |
| | :Civil Action No: 17-cv-1932 (TSC) |
| v. | : |
| | : |
| WILBUR ROSS, SECRETARY | : |
| U.S. DEPARTMENT OF COMMERCE | : |
| 1401 Constitution Ave., N.W. | : |
| Washington, D.C.  20230, | : |
| | : |
| et al. | : |
| | : |
| Defendants. | : |

_____


**PLAINTIFF ANTHONY W. PERRY'S STATEMENT OF FACTS IN SUPPORT OF**

**A RULE 56 MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7, I, Plaintiff

Anthony W. Perry respectfully file this Statement of Facts in support of my Motion

for Summary Judgment pursuant to the Court's October 23, 2018 Order to refile my

motion for summary judgment and supporting documents with corrected citations.

Respectfully submitted,



Anthony W. Perry

## STATEMENT OF FACTS

1.   Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin," 42 U. S. C. §2000e–2(a), and its anti-retaliation provision forbids "discriminat[ion] against" an employee or job applicant who, *inter alia,* has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation, §2000e–3(a).  (Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006).

2.   In 2007 I had engaged in protected activity filing EEOC case file 07-63-00080 and 07-63-00145.   (Exhibit 1 pgs. JA195-199).

3.   I am a Black Male born in Bethesda, MD. on January 29, 1956.

4.   The following EEOC cases were pending at the EEOC and I was engaged in efforts to settle these cases prior to the Agency's notice to remove me from the federal service:  EEOC Case No. 531-210-00351X/Agency Complaint Nos. 09-63-01027, 10-63-00197 & 11-63-00080; EEOC Docket No, 0120111784/07-63-00080 & 07-63-00145; EEOC Docket No. 01-20111034/Agency Complaint No 10-63-02671. (Exhibit 1 pg. JA5; Exhibit 1 pgs. JA162-178; Exhibit 1 pgs. JA182-192; Exhibit 1 pgs. JA195-206; Exhibit 1 pgs. JA222-234).

5.   The participation clause protects participating "in any manner in an investigation, proceeding or hearing" under the statute.  (42 U.S.C 2000e-3(a); (Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006); (Exhibit 4:  pg. 1 at I.; Exhibit 4 pg. 3 at B.; Exhibit 4 pg. 5 at IV.).

6.   The agency stipulates that the August 22, 2011 nondisclosure gag/agreement (NDA) served on me contains a nondisclosure clause (gag clause).  (Exhibit 1 pg. 18 at 6);  (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC_120486B1_8_07_13-3.MP3 at 8:00-8:21).

7.   The agency stipulates that the NDA does not provide any right to appeal. (Exhibit 1 pgs. 14-20); (Anthony W. Perry v. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 45:20-46:24).

8.   There are four audio files currently in the MSPB record annotated for the date I made a request for access to the files.  (Anthony W. Perry v. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filenames  MSPBHearingAudioFiles/ :

"DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3" (1:02:15),

"DC120486B1_2018-09-19_DC_120486B1_8_07_13-2.MP3" (19:47),

"DC120486B1_2018-09-19_DC_120486B1_8_07_13-3.MP3" (1:33:26),

"DC120486B1_2018-09-19_DC_120486B1_8_07_13-4.MP3" (4:12)).

9.   The Administrative Judge announced the order of the witnesses as: Chalmers, McGrath, Murphy, Felder, Zuagar, Brown, Perry.  (Anthony W. Perry v. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 13:15-14:32).

10. The testimony of Deciding Official, Terryne F. Murphy, has been removed from the current MSPB record.

11. At the MSPB hearing on the issue of misrepresentation, the Deciding Official Terryne Murphy testified that she assisted with the drafting of the NDA. (Exhibit 1 Pg. JA506 at E).

## Actions Occurring at the Agency

12. I have been acknowledged and awarded for my superior federal service. (Exhibit 1 pgs. JA220-221).

13. My additional significant qualifications are identified here. (Exhibit 1 pg. JA223 at "My Academic Qualifications; Am. Cmpl. ¶¶ 31, 32, 33, 34, 35).

14. Out of the 30 Department-wide employees selected for the 2009 18-month Executive Leadership Development class (ELDP), I was voted by my peers the honor to represent the class with a speech at the graduation ceremony in the Commerce Auditorium. (Exhibit 1 pg. JA352 at ¶ 4).

15. Before any settlement negotiations ever took place, the Census Bureau was notified in my response to the Proposal to Remove me from the federal service that I was working in accordance to a schedule approved by my supervisor. (Exhibit 1 pg. JA65 at I); (Am. Cmpl. ¶¶ 83, 84, 85):

> • *31 of the hours Perry was charged with not working were attributable to his supervisor's policy to have one-hour lunches, and therefore constituted "legally allowable break-time every employee receives." Exhibit 1 pgs. JA33-34 at 14, 15; see Exhibit 1 pg. JA125 (email from supervisor noting that lunch break is "one hour"); cf. Exhibit 1 pg. JA43 at "Background" (proposed removal noting that agency believed Perry's schedule included "a 30-minute non-paid lunch period mid-day").*

*• Perry did substantial work from home outside normal working hours. See Exhibit 1 pg. JA126 (email referring to "at least 40 hours working on" a project "at home"); Exhibit 1 pgs. JA128-160 (emails showing Perry working after normal office hours). Indeed, Perry calculated "more than 158 hours worked outside of the official 7:30 am to 5:00 pm schedule," Exhibit 1 pg. JA274-275 at l., which alone would surpass the 133 hours and 35 minutes the agency claimed he did not work, Exhibit 1 pg. JA53 at "Considerations".*

16. All Federal employees are allowed two 15-minute daily breaks and are legally allowed "rest period" every employee receives." (OPM Federal Personnel Manual; Census Bureau Employee Handbook).

17. Since approximately 2007, I had worked under a disability accommodation provided by my supervisor Dale Reed.  That schedule allowed me to make up missed time or complete outstanding projects after hours. (Exhibit 1 pg. JA33 at 14, 15; Exhibit 1 pg. JA34 at 17, 18; Exhibit 1 pg. JA35 at 20; Exhibit 1 pg. JA75-123).

18. My time and attendance was certified by my supervisor Dale Reed, 2nd line supervisor Patricia Musselman or other Agency designated personnel. (Exhibit 1 pgs. JA530-544; Exhibit 1 pg. JA574 at 1).

19. The charges for pay for work not performed does not account for the time I exited the building on days I worked after 5:00 pm. (Exhibit 1 pgs. JA43-54).

20. "The Congress finds that the use of flexible and compressed work schedules has the potential to improve productivity in the Federal Government and provide greater service to the public." (5 U.S.C. §§ 6106, 6120).

21. There is no testimony or documents in the entire record that Agency Officials objected to my supervisor approved work schedule prior to June 7, 2011. (Exhibit 1 pgs. JA1-593).

22. Actions "approved in advance" by a federal employee's "supervisor" cannot be "relied upon by the agency in its decision to remove" an employee.  (Hite v. U.S. Postal Serv., 168 F. App'x 436, 437 (Fed. Cir. 2006)).

23. Census Bureau smokers and joggers smoke and run outside of the facility. (Census Bureau Human Resources Smoking and Fitness Center Policy; Exhibit 1 pg. JA365 ¶ 7).

**Important Time Line Events**

24. On Jun 6, 2011, I sent an email to the Director of the U.S. Census Bureau Robert Groves and the Chief Information Officer and Management Official initiating and executing the removal action informing them about me being subjected to ongoing race and age discrimination with regards to the terms and conditions of my employment with the Census Bureau.  (Exhibit 1 pg. JA62; Exhibit 1 pg. JA365 ¶ 9).

25. On June 7, 2011 Darren Gutschow, an employee who was not my supervisor, served me with a proposal to remove me from the federal service that included the threat of immediate termination.  (Exhibit 1 pgs. JA43-56; Exhibit 1 pg. JA503 at d).

26. On August 11, 2011 the NDA was signed by the Acting Director of Human Resources Ted Johnson, prior to Terryne Murphy's decision on my response to the charges of misconduct.  (Exhibit 1 pg. JA20).

27. On August 16, 2011 the NDA was served on me prior to Terryne Murphy's decision on my response to the charges of misconduct.  (Exhibit 1 pg. JA19 at 11).

28. On August 22, 2011 Ronda Brown faxed a copy of the NDA document to Chief ALJ Mary Palmer in the Baltimore EEOC Field Office stating I and the agency had reached a voluntary agreement disposing of my pending EEOC claims.  (Exhibit 1 pgs. JA14-20).

29. On August 26, 2011, Deciding Official Terryne Murphy rendered a decision on my response to misconduct charges deciding to sustain charges but to impose only a 30 day suspension.  (Exhibit 1 pgs. JA72-73).

30. If the individual requests a reasonable accommodation related to a disability that they assert is necessary in order to permit them to attain acceptable performance, the agency must assess the appropriateness of the request and provide reasonable accommodation as required by law.  This would apply to any state of the process prior to final action being taken, including if a PIP has already been issued.   (Exhibit 2 pg. 7 at Other Considerations).

31. Critical Element: Efficiency of the Service – Agency must prove that the personnel action will promote the efficiency of the service.  (Exhibit 2 pg. 9).

32. June 21, 2011 the Disability Program Office notified my 1st-line supervisor Dale Reed that it had received my request for formal accommodation on 6/13/2011.  (Exhibit 1 pg. JA122).

33. On July 26, 2011, nearly one month before a decision by the Deciding Official, the Agency Human Resources Division had prepared to take adverse personnel actions against me.  (Exhibit 1 pg. JA466).

> *From:*   *Benjamin T Felder/HRD/HQ/BOC*
> *To:*      *Ronda J Brown/POL/HQ/BOC@BOC*

*Cc:        Terryne F Murphy/ISSRO/HQ/BOC@BOC, Stacy Chalmers/HRD/HQ/BOC@BOC*

*Date:      Tuesday, July 26, 2011 07:37AM*
*Subject:   AP Settlement*

*FYI - I presented the proposed terms for settlement to Johnny Zuagar yesterday. He advised that he would talk to AP and get back to me. Hopefully, I will know something or have a counter-offer by the end of this week. I will let you know as soon as I have something. These were the terms offered:*

*1. Agree to retire/resign by NLT May 30, 2011. (nonnegotiable)*
*2. Agree not to apply for or accept any future positions with the BOC. (nonnegotiable)*
*3. Agree not to engage in any further misconduct. (nonnegotiable)*
*4. Accept a 60-day suspension.*
*5. Accept a reassignment to an already identified area.*
*6. Accept a demotion to a non-supervisory GS-13 position.*
*7. Withdraw all pending complaints/cases against the Agency. (nonnegotiable)*
*8. Agree not to file a claim against the Agency concerning this matter. (nonnegotiable)*

34. The Notice of Removal stated that "as soon as possible after Ms. Murphy receives your reply, or after the ten (10) day limit if you do not reply, you will receive a written decision from her." (Exhibit 1 pg. JA55 at bottom).

35. On June 30, 2011, I responded to Darren Gutschow's charges of misconduct. (Exhibit 1 pgs. JA64-68).

36. Johnny Zuagar testified that he told me the agency was going to terminate me immediately if I contested the charges or went to the EEOC. (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-3.MP3 at 44:20-46:00).

37. August 26, 2011 the Deciding Official decided to sustain the charges in the Notice but recommend a 30-day suspension only.  (Exhibit 1 pg. JA72-73).

38. The procedure imposed on me by the NDA gag/agreement is not in accordance to procedure stated in the Notice of Removal.  (Exhibit 1 pgs. JA43-55).

39. The Removal Notice, the July 26, 2011 HR email, the nondisclosure gag document and personnel action within it, and the Deciding Official's decision document are materially adverse personnel actions.  (Exhibit 1 pgs. JA43-55, JA72-73; Exhibit 1 pgs. JA515-519 Box 45; 5 U.S.C. §§ 7512 & 7513(d)).

40. The NDA included the clause 2(b), " … in the event Complainant has not retired by the close of business, September 4, 2012, Complaint will do this by completing Part E of the Standard Form 52 attached to this agreement and submitting this completed form to the Agency at the same time that he submits this Agreement with his signatures.  Complainant agrees that the reason given for his resignation will not be adverse or hostile to the Agency", thus imposing my resignation or retirement based on still unsubstantiated charges of misconduct and prior to a decision to my response of charges of misconduct.  (Exhibit 1 pgs. JA15-16; Exhibit 3 pgs. 21-24 at 3a, b., c.).

41. The NDA clause 3(e) states that [Agency] ". . . failure to comply with this subparagraph due to ignorance of the Agreement and its terms by any Agency employee does not give rise to a claim of breach of contract by Complainant." (Exhibit 1 pg. JA18 at e).

42. At all times after the proposed removal, I worked under the threat of immediate termination pursuant to clause 2(d), stating " … If the Agency determines in its sole discretion that Complainant has engaged in any acts of misconduct during the time period established in this paragraph, Complainant will be subject to immediate removal without any right to reply. …" .  (Exhibit 1 pg. JA16 at d).

## Other Agency Personnel Actions

43. Tyra D. Smith approved a unilateral change to my supervisory status creating a change in the terms and conditions of my employment.  (5 U.S.C. 2302 (b); Exhibit 1 pgs. JA527-529 Box 7, 15, 45).

44. This instant complaint is also a complaint of prohibited personnel practices including "taking or failing to take any other personnel action that would violate any law, rule, or regulation implementing or directly concerning merit system principles."  (5 U.S.C §§ 2302 (b)(1) (A),(B),(C),(D); 5 U.S.C. 2302 (b)(8), (b)(9)(A)(i) and (ii), (b)(12), (b)(13); Exhibit 1 pg. JA12; Exhibit 3 pgs. 24-28 at D, E); (Whitmore v. Dep't of Labor, Fed. Cir. 2011-3084 (2012).

45. Each item here in 5 U.S.C. §§ 2302(a)(A)(iii), iv, ix, xi, xii is a personnel action.  (5 U.S.C § 2302).

46. I repeatedly requested the management official Brian McGrath to reassign me into another work area.  (Exhibit 1 pgs. JA208-214).

47. As part of the NDA, I was "reassigned to the position of Information Technology Specialist, GS-14, with no supervisory status, title or duties", as a

punitive act, under the Deciding Official Terryne Murphy.  (Exhibit 1 pg. JA17 at 3.c).

48. Thomas Meerholz repeatedly engaged in discriminatory, hostile and retaliatory actions against me that were pending on June 7, 2011.  (Exhibit 1 pgs. JA162-178, JA195-204).

49. The Agency unilaterally rejected an agreement reached during the Alternative Dispute Resolution Process stating only that it disagreed with the agreement that was reached during the negotiations.  (Exhibit 1 pg. JA192).

50. Courts have consistently recognized that individuals possess a non-waivable right to file charges with the EEOC.  (Exhibit 4 pgs. 3-4).

51. The Management Official initiating my removal and Deciding Official were hired by the Bureau in May of 2009.

52. The Management Official Brian McGrath testified that he received a number of emails from me at all times of the day and night.  (Anthony W. Perry v. Dep't of Commerce, MSPB Dkt. DC-0752-12-0486-B-1, electronic submission filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 57:20 – 1:02:15).

53. A voluntary retirement can be withdrawn at any time before its effective date.   (Anthony W. Perry v. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1 electronic submission filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-2.MP3 at 7:55 – 8:20).

54. I attempted to withdraw my retirement before the effective date which was rejected by Terryne Murphy.  (Exhibit 1 pg. JA69).

**MSPB Actions**

55. My appeal to the Board sought to challenge an involuntary "suspension for more than 14 days" and an "involuntary retirement," both of which are Board-appealable personnel actions under the Civil Service Reform Act.  (5 U.S.C. § § 7702 and 7703).

56. The MSPB Administrative Law Judge (ALJ) denied material witnesses: Darren Gutschow, the author of the proposed removal who was not nor had ever been my supervisor or in my chain of command; my first-line Supervisor, Dale Reed; and my second-line supervisor, Patricia Musselman.  (Exhibit 1 pgs. JA471-472; Exhibit 1 pg. JA576; Exhibit 1 pg. JA590 ¶ 9).

57. MSPB ALJ denied the Deciding Officials notes and communications with respect to my notice of removal.  (Exhibit 1 pg. JA590 ¶ 9);  (Anthony W. Perry v. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 6:20 – 6:46).

58. The ALJ identifies the issue before it at the administrative hearing. (Anthony W. Perry v. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 6:50 – 7:34).

59. Union Representative Johnny Zuagar testified before the MSPB on the remand issue of misrepresentation that the he told me the Agency was going to terminate me if I did not agree to the terms of the NDA. (Anthony W. Perry v. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-3.MP3 at 44:30 - 46:05).

60. The ALJ denied at the hearing my prior request for discovery of the Deciding Official notes. (Exhibit 1 pg. JA590 ¶ 9).

61. The MSPB rendered two decisions in the administrative appeal. Perry v. MSPB, S. Ct. Dkt.16-399, Pet. App. for Cert. pgs. 59-70a (first decision); Perry v. MSPB, S. Ct. Dkt.16-399, Pet. App. for Cert. 20-31a (second decision).

62. An employee need not take a mixed case to the MSPB at all. 5 U.S.C. 7702 itself allows plaintiff to take a mixed case directly to district court. (5 U.S.C. 7702(a)(2); see also 29 C.F.R. 1614.302(d)(1)(i), 1614.310(a), (g)).

63. 5 U.S.C. 7701(c)(2)(C) states that "the agency's decision may not be sustained … if the employee … - (C) shows that the decision was not in accordance with law."

64. A constructive suspension or removal for "the efficiency of the service" is a violation of due process if the adverse actions taken are not compliant with 5 U.S.C. 7513(d) and the Agency cannot prove the efficiencies for which the action was taken. (Anthony W. Perry v. MSPB, D.C. Cir. Dkt. 14-1155 Resp. Oral Arg., electronic submission filename DCCircuitAppealOralArgument/DCCircuit_PERRYvMSPB14-1155 at 29:35 - 31:48); 5 U.S.C. § 7513(d)).

65. The Deciding Officials decision does not provide the specific efficiencies for which the constructive actions were taken. (Exhibit 1 pgs. JA72-73; 5 U.S.C § 7513(d).)

66. I responded to proposed removal June 30, 2011 explaining that my supervisor Dale Reed provided an accommodation for my health needs.  (Exhibit 1 pgs. JA64-68; Exhibit 1 pgs. JA75-124).

67. It is a prohibited personnel practice to take or threaten to take a personnel action against any employee or applicant for employment because of (1) the filing of an appeal, complaint, or grievance right granted by law, rule, or regulation; (2) testifying for or otherwise lawfully assisting any individual in filing an appeal, complaint, or grievance right granted by law, rule, or regulation; or cooperating with or disclosing information to the Inspector General of an agency or the Special Counsel.  (1978 CSRA; 5 U.S.C. §§ 2302(b)(8), (b)(9)(A)(ii); Exhibit 3 pg. 18-24 at III.).

68. Prior to my proposed removal, I had filed at least one complaint with the Office of Special Counsel, O.S.C. Complaint MA-11-2619.  (Exhibit 5 pg. 1 ¶ 2).

69. I withdrew the Office of Special Counsel File MA-11-2619 on Sept. 8, 2011 after meeting with Deciding Official Terryne Murphy and reported it to the Union Representative Johnny Zuagar.   (Exhibit 5 pgs. 3-4).

70. This NDA violates basic contract law and is a prohibited personnel practice. (Am. Cmpl. ¶ 55); (5 U.S.C. § 2302(b)(9)(A)(ii) and (b)(12) and (b)(13)).

71. I filed the with the Office of Special Counsel the following whistleblower complaints: OSC File Nos. MA-11-2619, MA-13-2356, MA-14-4479, and DI-14-4483. (Exhibit 5).

72. Separation agreements' non-disparagement provisions (gag clauses) constitute a personnel action under 5 U.S.C. 2302(a)(2)(A).  (Exhibit 1 pg. 15 ¶ 2b.); (Exhibit 3 pg. 22 at b).

73. Agreements that attempt to bar individuals from filing a charge or assisting in a Commission investigation run afoul of the anti-retaliation provisions because they impose a penalty upon those who are entitled to engage in protected activity under one or more of the statutes enforced by the Commission.  (Exhibit 3 pg. 23 at c); (Exhibit 4 pg. 2 ¶ 4; Exhibit 4 pg. 3 at B).

74. No consideration was received by me above and beyond what I was entitled for the purposes of entering into the Agency NDA.  (Exhibit 1 pgs. JA14-20)

75. I had completed over 29 years of government service with an honorable and "clean disciplinary record".  (Exhibit 1 pg. JA68 at V. 1, 2; Exhibit 1 pgs. JA220-221).

76. SF-50 shows an adverse personnel action defined in 5 U.S.C. 7512(2) in box 5 and 45.  (Exhibit 1 pgs. JA515; Exhibit 1 pg. JA517; Exhibit 1 pg. JA519).

77. On February 27, 2012, I underwent a total left hip replacement surgery for the disability I suffered at the time I received the Notice of Removal. (Exhibit 1 pgs. 120-121).

78. In footnote 3 of the Agency's Response To Jurisdictional Order, Attorney Adam Chandler threatens the below personnel action "that if the Agreement was somehow vitiated, Appellant would still be facing a removal from the Federal service upon return to duty. This is a threatened personnel action and a prohibited personnel practice. (Exhibit 1 pg. JA245 footnote 3); 5 U.S.C. 2302(b) (8), (9)(A)(ii)).

79. "Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority – implement or enforce any nondisclosure policy, form, or agreement, if such policy … does not contain the following statement: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, … are incorporated into this agreement and are controlling."' 5 U.S.C. 2302(b)(13).

CERTFICATE OF SERVICE


I certify that a copy of this Motion for Summary Judgment, Statement of Facts and

Brief in Support of Plaintiff's Motion for Summary Judgment will be filed by, (1)

paper copy accompanied with a CD of MSPB Hearing audio files and the DC Circuit

Court of Appeals oral argument, and (2) a flash drive containing the entire

summary judgment submission (including exhibits and audio files) by November 19,

2018.

Matthew Evan Kahn
Assistant United States Attorney
Civil Division
United States Attorney's Office
555 4th Street N.W.
Washington, D.C.  20530



Respectfully submitted,



Anthony W. Perry, Plaintiff
5907 Croom Station Rd.
Upper Marlboro, MD.  20772
(301) 928-4780