IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

_____

ANTHONY W. PERRY, Pro se         :
5907 Croom Station Rd.         :
Upper Marlboro, MD  20772       :
(301) 928-2305                :
                                     :
           Plaintiff,          :
                                    :Civil Action No: 17-cv-1932 (TSC)
      v.                        :
                                    :
WILBUR ROSS, SECRETARY      :
U.S. DEPARTMENT OF COMMERCE   :
1401 Constitution Ave., N.W.       :
Washington, D.C.  20230,         :
                                    :
           et al.             :
                                    :
           Defendants.      :

_____


**Brief In Support Of Plaintiff's Motion For Summary Judgment**

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7a, I, Plaintiff Anthony W. Perry respectfully move this Court for a ruling and an Order for partial summary judgment for Plaintiff of this complaint.  The Court order states it will not entertain argument of the "underlying discrimination" at this juncture and therefore argument for Count II violation of Rehabilitation Act of 1973, Count III violation of Title VII race and gender discrimination, and Count V violation of Age Discrimination in Employment Act and each statutes anti-retaliation provisions is not sought in this motion for summary judgment.

Plaintiff files a separate Statement of Facts and electronic submission in support of this motion for summary judgment.   The entire submission is also submitted by flash drive.

I wish to note to the Court that Plaintiff's Amended Complaint contains "JA" citations.   A "JA15" citation in the Amended Complaint is a reference to "Exhibit 1 pg. JA15", respectively.  Also note for efficiency duplicate and non-material pages were removed from Exhibit 1.

For reasons provided in this brief, the statement of facts, statute and law, Plaintiff is entitled to judgment as a matter of law for the summary judgments below and requests the Court proceed to de novo review of the underlying discrimination claims.

Respectfully submitted,

Anthony W. Perry

TABLE OF CONTENTS

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

TABLE OF AUTHORITIES AND CASES

I.      INTRODUCTION

II.     BACKGROUND

III.    ISSUE DEFINED BY COURT ORDER

IV.     SUMMARY JUDGEMENT STANDARD OF REVIEW

V.      SUMMARY OF ARGUMENT

VI.     ARGUMENT

   A.  Mixed-Cases Dismissed Before MSPB On Jurisdiction Receive Judicial
       Review On the Merits In The District Court

   B.  The Board Erroneously Denied A Hearing On My Allegation The Settlement
       Agreement Was Coerced And Erroneously Decided Issue Of Misrepresentation

   C.  The Agency Engaged In Misrepresentation, Fraud And Extortion

   D.  Agency Maintained A Retaliatory And Hostile Work Environment And Used
       Prohibited Personnel Practices

VII.   SUMMARY JUDGMENTS

   1.  Count I.      Involuntary Suspension and Retirement Due to Coercion,
       Duress and Unlawful Acts

   2.  Count IV.     5 U.S.C §§ 1981 and 1983

   3.  Count VI.     Bias, Statutory, Administrative and Constitutional Violations by
       MSPB

4. Count VII.    Fraud

5. Count VIII.  Conspiracy to Commit Fraud

6. Count IX.    Extortion

7. Count X.     Conspiracy to Commit Extortion

8. Count XI.    Defamation

9. Count XII.   Negligent Training and Supervision

10. Count XIV.  Violation of Whistleblower Protections of WPA and WPEA of
    2012

11. Intentional Infliction of Emotional Distress

12. Privacy Act Violation

VIII.   CONCLUSION

## TABLE OF AUTHORITIES

**CASES**

*Barnes v. Small,*
   840 F.2d 972 (D.C. Cir. 1988)...........................................................15

*Bell v. Hood,*
   327 U.S. 678 (1946)........................................................................18

*Boyd v. Dep't of Transp.,*
   21 Fed. App'x 906 (Fed. Cir. 2001).................................................24

*Burlington No. & Santa Fe. Railway Co. v. White,*
   548 U.S. 53  (2006)....................................................13, 26, 31, 32

*Burns v. Dir., Office of Workers' Comp. Programs,*
   41 F.3d 1555 (D.C. Cir. 1994).. ...................................................19

*Covington v. Dep't of Health & Human Servs.,*
   750 F.2d 937 (Fed. Cir. 1984).........................................................22

*Crane v. Dep't of the Air Force,*
   240 Fed. App'x 415 (Fed. Cir. 2007)...............................................28

*El Rio Santa Cruz Neighborhood Health Ctr. v.*
   *U.S. Dep't of Health & Human Servs.,*
   396 F.3d 1265 (D.C. Cir. 2005)......................................................25

*Fassett v. U.S. Postal Serv.,*
   85 M.S.P.R. 677 (MSPB 2000).................................................16, 20, 24

*Garcia v. Dep't of Homeland Sec.,*
   437 F.3d 1322 (Fed. Cir. 2006).................................................22, 24

*Kloeckner v. Solis,*
   133 S.Ct. 596 (2012)............................................................ 9, 15, 16

Meritor Savings Bank, FSB v Vinson,
   477 U.S. 57 (1986).........................................................................32

*Middleton v. Dep't of Defense,*
   185 F.3d 1374 (Fed. Cir. 1999).................................................. 22, 25

*Morall v. Drug Enforcement Admin.,*
      412 F.3d 165 (D.C. Cir. 2005)…………………………………………18, 25

*National Railroad Passenger Corp. v. Morgan,*
      536 U.S. 101 (2002)……………………………………………..13, 26, 32

*\*Perry v. MSPB.,*
      582 U.S. ___ (2017)…..…………………………..………3, 9, 15, 18, 24

*Powell v. Dep't of Defense,*
      158 F.3d 597 (D.C. Cir. 1998)………………………………………… .9, 24

*\*Schultz v. U.S. Navy,*
      810 F.2d 1133 (Fed. Cir. 1987)……………………………………16, 22, 24

*Shoaf v. Dep't of Agric.,*
      260 F.3d 1336 (Fed. Cir. 2001)…………………………………… 18, 19, 24

*Vance v. Ball State University et al.,*
      570 U.S. ___ (2013)…………………………………………………………12

*Whitmore v. Dep't of Labor,*
      No. 11-3084 (Fed. Cir (2012)………………………………….………30

**Statutes and Rules**

5 U.S.C. § 7512…………………………………………………………16, 17, 19

5 U.S.C. § 7513…………………………………………………17, 19, 22, 26, 29

5 U.S.C. § 7702…………...…………………………………………3, 9, 14, 16, 29

5 U.S.C. § 7703 ……………………………………………………………………3

EEOC Notice 915.002 http://www.eeoc.gov/policy/docs/waiver.html……………12, 34

## I.   Introduction

Plaintiff seeks review of the Decisions and Orders of the Merit Systems Protection Board, issued June 12, 2013, and August 6, 2014, in docket numbers MSPB-DC-0752-12-0486-I-1, MSPB-DC-0752-12-0487-I-1, MSPB-DC-0752-12-0486-B-1, and MSPB-DC-0752-12-0487-B-1.  *See* Exhibit 1 pgs. JA296-305; Exhibit 1 pgs. JA584-593.

This Court has appellate jurisdiction over mixed-case complaints dismissed by the MSPB for lack of jurisdiction.  Perry v. MSPB, 582 U.S. 17 (2017).  This is a case of discrimination involving agency actions appealable to the MSPB which include unresolved discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964; Rehabilitation Act of 1973, 29 U.S.C. 794; the Age Discrimination in Employment Act of 1967, 29 U.S.C. 631, 633a, pursuant to 5 U.S.C §§ 7702(a)(1)(a), 7702(a)(1)(B)(i), 7702(a)(1)(B)(iii), 7702(a)(1)(B)(iv), 7703 (c)(1)(C); prohibited personnel practices in violations of 5 U.S.C 2302(b); other adverse actions not covered by Title VII; hostile work environment and harassment; negligence; statutory and constitutional violations by MSPB, U.S. Dep't of Commerce and agency employees in their personal capacity; and other intentional torts.  CSRA of 1978; Kloekner v. Solis, 133 S. Ct. 596, 601 (2012); Perry v. MSPB, 582 U.S. 9-17 (2017).

Plaintiff incorporates his submitted Statement of Facts in support of this brief for partial summary judgment.    There are four audio files currently in this MSPB file.  At 12:20 to 14:35 on the MSPB hearing audio file, electronic submission

of filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3, Administrative Law Judge announces the witness testimony order as Chalmers, McGrath, Murphy, Felder, Zuagar, Brown and myself.  (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 12:20-14:35.)   I asked Terryne Murphy, the Deciding Official, if she participated in the drafting of the agency nondisclosure agreement (NDA).  Ms. Murphy responded "yes".  On June 30, 2011 I responded to the Agency charges of misconduct.  On August 16, 2011 I was served a NDA.  On August 22, 2011 Ronda Brown faxed the NDA to EEOC stating the Agency and I had reached a settlement on pending cases.  On August 26, 2011 Terryne Murphy issued her decision letter.  Ms. Murphy testimony has been intentionally removed from the MSPB record.  The first audio file, Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC120486B1_8_07_13-1.MP3 ends with Brian McGrath testifying at 1:02:15. The second, electronic submission filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC120486B1_8_07_13-2.MP3, audio file starts and ends with Benjamin Felder testifying at 19:47 and continues into audio file filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC120486B1_8_07_13-3.MP3 followed by Ronda Brown. The last file is electronic submission filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC120486B1_8_07_13-4.MP3

4

of the agency lawyer considering whether to call me as a witness, which it did not. These audio files have been annotated with the date of my request for access.

## II.    Background

[I],  Anthony W. Perry, was hired by the U.S. Census Bureau in 1986, and worked for the federal government for nearly 30 years, rising to the level of a GS-14 Supervisory Information Technology Specialist.  (Exhibit 1 pgs. JA31; Exhibit 1 pg. JA72); Perry v. MSPB, 829 F.3d 760, 762 (CADC 2016).  I exercised supervisory responsibility including the project manager of the development and deployment several Census Bureau Information Technology systems.  (Exhibit 1 pgs. JA220-21). In the mid-2000s, I developed osteoarthritis and began to suffer persistent groin, buttock, and hip pain.  To manage the pain, my supervisor allowed me to take frequent breaks during normal working hours and to make up missed time or complete outstanding projects after hours.  (Exhibit 1 pgs. JA34-35).  In 2007, I filed the first of a series of complaints with the Census Bureau's Equal Employment Opportunity (EEO) Office, and later before an Administrative Judge of the Equal Employment Opportunity Commission (EEOC), alleging discrimination based on race and age, and (later) reprisals and gender discrimination for filing discrimination claims after which the agency continued to take numerous actions detrimental to my career.  (Exhibit 1 pgs. JA162-178; Exhibit 1 pgs. JA195-206; Exhibit 1 pgs. JA222-234).  I alleged that I had been passed over for promotions, denied training, received unwarranted performance evaluations as a result of discrimination, retaliation, disparate treatment and other adverse personnel

actions.  (Exhibit 1 pg. JA5 at 1; Exhibit 1 pgs. JA162-178; Exhibit 1 pgs. JA195-196; Exhibit 1 pg. JA341 at III.).

In April of 2011, my supervisor Dale Reed began requiring his staff to sign in and out of work using an attendance log.  I sought an explanation of that new procedure/policy because, in addition, no other supervisory GS-14 was being subjected to the new manual sign-in procedure.  The manual sign-in was discontinued in May 2011.  It was not placed in the documentary record.  Mr. Reed refused to provide an explanation of the reason for the new procedure.  (Exhibit 1 pg. JA66 at E.).   In May of 2011, I received an explanation for the new sign-in procedure and began to use the attendance log.  (Exhibit 1 pg. JA66 at E.).

Simultaneously, I was actively pursuing settlement discussion of pending claims before the Equal Employment Opportunity Commission (EEOC).  (Exhibit 1 pgs. JA162-178 Exhibit 1 pgs. JA182-191; Exhibit 1 pgs. JA227-234).  I was also working under a supervisor approved schedule which included an accommodation allowing frequent breaks to manage my disability.  I also had used over 300 hours of sick leave for my disability between 2009 through my departure with no impact on my performance.

On June 7, 2011 I received a Notice of Proposed Removal from, Darren Gutschow, a Census Bureau employee who was not my direct supervisor.  (Exhibit 1 pgs. JA43-55).  The Notice proposed to terminate my employment, alleging that I had been absent during regular working hours and thus had been paid for hours I had not worked.  The Notice also relied on my "failure to follow [a] supervisory

directive" requiring daily completion of an attendance record log on 15 occasions between April 18, 2011 and May 20, 2011.  (Exhibit 1 pgs. JA52-53 at 2).   I responded stating that I was working in accordance to my supervisor approved schedule.

Prior to the Deciding Official's decision to my response of the misconduct charges, I was served a nondisclosure settlement agreement (NDA) that required me to serve a suspension for thirty calendar days, retire no later than September 4, 2012, and to "waive, release and forever discharge the Agency" from any claims raised in each of my prior pending discrimination actions, as well as any claims related to actions taken pursuant to the Settlement".  (Exhibit 1 pgs. JA15-20; Exhibit 1 pgs. JA30-34).

Within days and still prior to the Deciding Official's decision to my response to the charges of misconduct, Ronda Brown informed the EEOC by facsimile that the Commerce Department and Complainant had reached agreement regarding settlement of my prior pending EEOC actions.  (Exhibit 1 pg. JA14).  Terryne Murphy then issued a decision to sustain charges but impose 30-day suspension only.  (Exhibit 1 pg. JA72-73 ¶¶ 3, 5).    In November 2011, the Census Bureau formally approved my request for disability accommodation and I continued to work under that accommodation until retirement.  I attempted to rescind my retirement explaining to the Deciding Official that I needed and wanted to stay several more years.  (Exhibit 1 pg. JA69).

I served the 30-day suspension and after my early retirement took effect, I filed a *pro se* appeal with the MSPB. (Exhibit 1 pgs. JA1-20). I filed an online appeal specifying my claims as "Involuntary Retirement" and "Suspension for more than 14 days". In an attachment, I claimed that I had been improperly suspended and coerced into retirement. (Exhibit 1 pgs. JA1-20). I argued that the Census Bureau's proposed removal notice was the product of race, age, and disability discrimination as well as retaliation for my prior discrimination complaints; that the agency could not substantiate the charges against me; and that the agency had misrepresented the charges against me and denied me due process and the proper appeal and/or judicial review rights. As a result, I claimed that the agency had improperly coerced me into the settlement agreement in which I released those claims. (Exhibit 1 pg. JA3-5; Exhibit 1 pgs. JA7-12).

On appeal to the MSPB, the AJ ordered me to show cause why the challenge should not be dismissed for lack of jurisdiction. I submitted almost two hundred pages of evidence to support my claims. (Exhibit 1 pg. JA30-37, Exhibit 1).

After reviewing the evidence but without holding a hearing on the issue of coercion, the AJ dismissed the appeal for lack of jurisdiction. (Exhibit 1 pgs. 259-266). In particular, the AJ decided that both the 30-day suspension and retirement were voluntary because they resulted from a valid settlement agreement. The Board granted a petition for review to hear only the issue of misrepresentation, and remanded the case to the AJ for further proceedings.

On remand, the AJ held a hearing and concluded that I "failed to prove that I was coerced or detrimentally relied on misinformation when I agreed to settle his appeals." S. Ct. Dkt. 16-399, Pet. App. 33a. The AJ again dismissed the appeal for lack of jurisdiction. I again petitioned the Board for review. This time the Board affirmed the AJ.

I filed a petition for review in the Court of Appeals for the D.C. Circuit. The court ordered me to "show cause why this petition should not be dismissed for lack of jurisdiction or transferred to the United States Court of Appeals for the Federal Circuit." Anthony W. Perry v. MSPB, S. Ct. Dkt. 16-399, Pet. App. 18a. The D.C. Circuit directed the parties to "address in their briefs (1) whether this court has jurisdiction to hear this case under 5 U.S.C. § 7703(b)(1)(B); and (2) if not, whether this case should be transferred to the Federal Circuit or a district court pursuant to 5 U.S.C. § 7703(b)(1)(A) or (2)," and appointed counsel as *amicus curiae* "to present arguments in favor of petitioner's position."

The D.C. Circuit held that it was constrained to transfer the case to the Federal Circuit. *See* S. Ct. Dkt. 16-399, Pet. App. 2-3a, 15a. (citing *Powell v. Department of Defense*, 158 F.3d 597 (D.C. Cir. 1998)).

The Federal Circuit docketed the appeal, but granted [my] unopposed motion to hold the briefing in abeyance pending the filing and disposition of a petition for certiorari, which the Court granted on January 13, 2017. *See* Order [Dkt. 21], *Perry v. MSPB*, No. 2016-2377 (Fed. Cir. Aug. 31, 2016). Here, as in Kloeckner, the CSRA answers "in crystalline fashion," 133 S.Ct. 604: cases involving both civil-

service claims and discrimination claims are subject to review in district court to preserve federal employees' statutory "right" to "trial de novo" of their discrimination claims.  5 U.S.C. §§ 7702(a)(1); 7702(e)(3); 7703(b), (c).

On June 23, 2017, the Supreme Court ruled that "the proper review forum when the MSPB dismisses a mixed case on jurisdictional grounds is district court". Perry v. MSPB, 582 U.S. at 17 (2017).

## III.   Issue Defined By The Court Order

The Court orders the parties to brief the issue of whether the Merit Systems Protection Board's ("MSPB") decision dismissing Plaintiff's appeal for lack of jurisdiction should be affirmed by this Court.  The Order further states that "at this juncture, the court will not entertain arguments on the underlying discrimination claim(s).  Therefore, **Count II** claims of violation of the Rehabilitation Act of 1973 and anti-retaliation provisions, **Count III** claims of violation of Title VII and anti-retaliation provisions, and **Count V** violation of the Age Discrimination in Employment Act and anti-retaliation provisions in the instant motion will not be addressed at this juncture pursuant to the Court's Order.  Each is claimed to be underlying discrimination of the materially adverse actions by the Agency.  By this Order, Plaintiff believes the Court has not prevented plaintiff from addressing those "active" discrimination claims I was pursuing at the time the Agency proposed my termination.

10

## IV.   Summary Judgment Standard Of Review

The Court shall grant summary judgment where there is no disputed genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Celotext Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The mere existence of a factual dispute does not preclude summary judgment; "the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. 242, 247-48 (1986). The movant must rely on record materials to demonstrate the absence of any genuinely disputed issues of material fact.  Fed R. Civ. P. 56(a).  Celotex Corp., 477 U.S. 324.  The nonmoving party's response must present his own evidence beyond the pleadings to demonstrate specific facts showing that there is a genuine issue for trial.  Celotex Corp., 477 U.S. 324.  A fact is material if, under applicable law, it could affect the outcome of the case.  Anderson, 477  U.S. 247-48.  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Doe v. Dep't of Treasury, 706 F. Supp. 2d 1,5 (D.D.C. 2009); Anderson, 477 U.S. 247-48.

To avoid summary judgment, the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his position.  Anderson, 477 U.S. at 252.  The non-moving party must "designate specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.  The nonmoving party's opposition "may not rest upon mere allegation or denials of his pleading but must

present affirmative evidence showing a genuine issue for trial." Laningham v. U.S. Navy, 813 F.2d 1236, 1241-42 (D.C. Cir. 1987).

## V.     Summary Of The Argument

Judicial review of mixed cases the MSPB dismisses for lack of jurisdiction receives judicial review in the district court where Plaintiff can request a decision on both the issue of the civil-service violations and violations of anti-discrimination laws.  Once in district court, a mixed case should be decided on the merits.

I was working in accordance to a supervisor approved schedule since 2007. That schedule allowed me to take frequent breaks and to make-up time outside of my regular 7:30a – 5:00p schedule.  (Am. Cmpl. ¶¶ 80, 83, 85).  It also allowed me to attend full-day and part-day GSA CIO-University and Commerce Executive Leadership Development Program seminars.  (Am. Cmpl. ¶¶ 32, 35).   I was also actively pursuing settlement of prior pending EEOC claims of race and age discrimination and retaliation claims against the U.S. Census Bureau.

June 7, 2011, I was served a notice of removal by, Darren Gutschow, Assistant Div. Chief Information Systems Resource Office, an employee who was not my supervisor charging me with misconduct for receiving pay for time not worked and for failure to follow sign-in and sign-out procedure started in April 2017 and discontinued in May 2017.   Both Gutschow and Reed were empowered by the agency to take tangible employment actions against me.  (Vance v. Ball State University et al., 570 U.S. Pp. 9-30 (2013)).  This is a retaliatory and discriminatory personnel action under Title VII, 5 U.S.C. 2302 (a)(2)(A) and a prohibited personnel

12

action pursuant to 5 U.S.C. 2302(b)(9)(A)(ii).   I responded to the charges explaining I worked in accordance to a supervisor approved schedule and accommodation and absent my supervisor providing contrary evidence that should have been the end of it.  The Notice's threat of termination based on unsubstantiated charges of misconduct was used to coerce me into the NDA I was served requiring forfeiture of pending EEOC cases, suspension without pay, resignation and other adverse personnel actions.  The NDA is a prohibited personnel practice and violates 5 U.S.C. 2302(b)(13).  Further, this NDA violates EEOC Guidance 915.002 on unwaivable rights.  (Exhibit 4 pg. 1-7; or see MSPB Docket No. DC-0752-12-0486-B-1, Tab4 Vol. 1, EEOC Guidance Document pg. 1-7).  This agreement violates basic contract law as it wasn't voluntary and knowing and no consideration was received by me that I was not otherwise entitled to enter the NDA.  The misconduct charges were a knowingly misrepresentation of the charges, fraud and extortion because the agency knew it could not sustain charges and that there was no basis for the charges in the first instance.  The Deciding Official also directed me to withdraw any other pending actions I might be pursuing.  (Exhibit 5 pgs. 3)  I subsequently withdrew Office of Special Counsel complaint MA-11-2619 and communicated the withdrawal to the Union Official, Johnny Zuagar.  (Exhibit 5 pg. 4).

The Notice, the NDA and the personnel actions within including the forfeiture of prior pending EEOC claims are materially adverse personnel actions and violate Title VII anti-discrimination and anti-retaliation provisions, other discrimination statutes, violate my due process rights, equal protection, property

13

rights, statutory and other constitutional rights, is a prior restraint, per se discrimination, per se retaliation, may be separate charges of discrimination and retaliation itself and was intended to prevent me from filing an action with the EEOC while I was still employed.   (Exhibit 3 pgs. 18-28 starting at III.); (Exhibit 4 pg. 3 ¶ 2); Burlington No. & Santa Fe Rlwy. Co v. White, 548 U.S. 53 (2006). (National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002)).

This Court should vitiate the unlawful agreement in its entirety, return me to status quo ante immediately upon a favorable ruling on the merits and render summary judgment on all the prior pending EEOC cases in [part] due to the coerced and involuntary forfeiture of all pending claims and the Agency failure to timely adjudicate prior EEO/EEOC complaints and the documented persistent bad faith Agency negotiations.  The Court should then proceed to adjudicate the "underlying discrimination" claims in the instant case.

The Agency violated administrative procedures and law, anti-discrimination law and their anti-retaliation provisions, Plaintiff's statutory and constitutional right to due process, equal protection, property rights, prior restraint and committed fraud, extortion and other torts and violated procedures required by law. The MSPB violated administrative procedures required by law, made rulings not in accordance with law and lacking substantial evidence and exhibited bias, violated my constitutional rights of due process and equal protection.

## VI.   Argument

### A.   Mixed-Cases Dismissed Before MSPB On Jurisdiction Receive Judicial Review On the Merits In The District Court

I incorporate the Statement of Facts submitted in support of this brief for Partial Summary Judgment of claims in the Amended Complaint.  As an initial matter, the MSPB ALJ denied my supervisor of record, my 2nd line supervisor and the author of the proposed removal as witnesses and denied material evidence. (Exhibit 1 pg. JA506 at E.; Exhibit 1 pgs. JA471-472; Exhibit 1 pg. JA576 ¶ 1; Exhibit 1 pg. JA590 ¶ 9).

I have statutory and constitutional rights to challenge the MSPB's final order.   Civil Service Reform Act provide for judicial review of MSPB decisions of a mixed-case in district court.   A non-frivolous allegation of jurisdiction generally suffices to establish jurisdiction upon initiation of a case.   See Jerome B. Grubart, Inc., 513 U. S., at 537.   Cases of discrimination subject to the provisions of 5 U.S.C. § 7702 should be filed in district court, pursuant to the enforcement provisions of the various applicable antidiscrimination statutes.   5 U.S.C. § 7703(b)(2). Kloeckner v. Solis, 133 S. Ct. at 602, 607.   The Board's regulations are the same. C.F.R. § 1201.157.   "Federal employees, . . . , have a right to pursue claims of discrimination in violation of federal law in federal district court.  . . .  See § 7703(c) (preserving "right to have the facts subject to trial de novo by the reviewing court" in any "case of discrimination" brought under § 7703(b)(2).  (Perry v. MSPB, 582 U.S. 8 (2017)).   In the district court, I can seek review of the Board's decision and

pursue the "underlying" discrimination claims. (Barnes v. Small,, F.2d, 978-79 (D.C. Cir. 1988) (describing district court review in mixed cases appealed from the Board).

The Board's analysis of its own jurisdiction often overlaps with the merits of the employee's claim that a personnel action was coerced by discrimination or otherwise involuntary. (Boyd v, Dep't of Transportation, 21 21 Fed. App'x 906, 909 (Fed. Cir. 2001) (reviewing Board jurisdictional decision that turned on whether allegations of hostile work environment were non-frivolous). "The MSPB exercised jurisdiction over the instant case twice and rendered two decisions." (Anthony W. Perry v. Department of Commerce, Dkt. No. MSPB-DC- 0752-12-0486-B-1). That the MSPB rejected [my] claim of involuntariness on the merits "did not retroactively divest the MSPB of jurisdiction to render that decision." Perry vs. MSPB, S. Ct. Dkt. 16-399 Pet. Br. at 21. It "is not what the MSPB determined about appealability; it is instead the nature of an employee's claim that [I] had been "affected by an action [appealable] to the [MSPB]" (here, suspension for more than 14 days and involuntary removal, see §7512(1), (2)). Perry vs. MSPB, 582 U.S. 9-17 (2017).

If "an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive." *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987). That rule applies with equal force to personnel actions taken pursuant to a settlement agreement. Thus, the Board will consider a settlement involuntary if

the agency "knew or should have known" that the proposed personnel action precipitating the settlement "could not be substantiated." *Fassett v. U.S. Postal Serv.*, 85 M.S.P.R. 677, 680 (MSPB 2000) (setting aside settlement where the "agency should have known that the appellant's removal based on this charge could not be substantiated"). With the coerced settlement set aside, the Board could have exercised jurisdiction over the relevant employment action.

MSPB's jurisdiction and the merits of an alleged involuntary separation are "inextricably intertwined." Schultz v. United States Navy, 810 F.2d 133, 1136 (Fed. Cir. 1987). If it is established that a resignation or retirement is involuntary, the MSPB not only has jurisdiction, "but also the employee wins on the merits and is entitled to reinstatement." Schultz, 810 F.2d at 1136. "Because the MSPB indisputably had and exercised jurisdiction over the instant case, the suggestion that this is not a case that [I] could "appeal to the [MSPB]," was rejected by *Kloeckner*. 5 U.S.C. § 7702(a)(1)(A)  *See* 133 S. Ct. at 604;  Perry v. MSPB, S. Ct. Dkt. 16-399, Pet. Br. at 20-21.

I made a non-frivolous allegation that I was coerced into an unlawful nondisclosure gag/agreement requiring a 30-day suspension and early retirement. due in part to disability discrimination, race and age discrimination, retaliation, and later gender discrimination. I also charge that the Census Bureau engaged in misrepresentation of the charges, engaged in fraud and extortion, conspiracy, subjected me to a hostile work environment and other intentional torts against me in order to justify its adverse actions and imposition of the nondisclosure

17

gag/agreement.   I also claim the Agency's use of an NDA to hide its inability to prove the charges of misconduct while executing constructive personnel actions denied me statutory rights, due process and is retaliation continuing a hostile work environment; and the MSPB violated administrative law in failing to hold a hearing on the issue of coercion, exhibited bias in failing to consider the totality of the evidence, violated administrative and constitutional law of due process and equal protection.   5 U.S.C. §§ 7512(1),(2) and 7513(d).

Since 2007, I worked in accordance to a supervisor approved schedule and accommodation to which no one objected.  (Am. Cmpl. ¶¶ 74, 80-81, 83-84 ).   I explained that to the Agency and to the MSPB in my response to the Notice of Removal and my appeal.  (Exhibit 1 pgs. JA5-6;  Exhibit 1 pgs. JA65 at 1).   Here, the agency knew or should have known the basis for the removal was unsubstantiated and therefore my 30-day suspension and early retirement was the result of improper actions by the agency.

"A party [may] establish jurisdiction at the outset of a case by means of a non-frivolous assertion of jurisdictional elements,'" Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U. S. 527, 537 (1995).  See Anthony W. Perry v. MSPB, S. Ct. Dkt. 16-399 Pet Br. for Cert at 21–22.  See also Bell v. Hood, 327 U. S. 678, 682–683 (1946) (To invoke federal-question jurisdiction, allegations in a complaint must simply be more than "insubstantial or frivolous," and "[i]f the court does later exercise its jurisdiction to determine that the allegations in the complaint

do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.").  Perry v. MSPB, 582 U.S. at 10 (2017).

"Whether a complainant's allegations succeed or fail on the merits has nothing to do with the adjudicator's jurisdiction over those allegations."  Perry v. MSPB, S. Ct. Dkt. 16-399 Pet. Br. at 24; *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *Bell v. Hood*, 327 U.S. 678, 682 (1946).  Perry v. MSPB, 582 U.S. 17 (2017).

"[I]n determining whether an alleged act of coercion caused an employee's involuntary retirement, a court need not limit itself to any particular timeframe." (Terban v. Dep't of Energy, 216 F.3d 1021, 1024 (Fed. Cir. 2000) (emphasis added). ("the most probative evidence of involuntariness "will usually be evidence in which there is a relatively short period of time between the employer's alleged coercive act[s] and the employee's retirement."  Id.  But, failure of the MSPB to consider the totality of the evidence in the instant case is an abuse of discretion.     See Terban v. Dept of Energy, 216 F.3d 1021, 1024 (Fed.Cir. 2000).   Morall v. Drug Enforcement Admin., ("Because the [AJ] failed to consider the totality of the circumstances surrounding  Shoaf's resignation, we vacate and remand.")    Shoaf v. Dep't of Agriculture, 260 F.3d 1336 (Fed. Cir 2001).

An agency may take an action covered by 5 U.S.C. 7513(a) against an employee only for such cause as will promote the efficiency of the service.  It must explain the efficiencies for which the actions were taken.  Failure to do so is a violation of due process.  (Electronic Submission Audio file,

19

DCCircuit_PERRYvMSPB14-1155 at 29:35-31:46).   In an abuse of discretion, the MSPB decided the issue of involuntariness due to coercion without a hearing and wrongfully decided the issue of misrepresentation.   An appeal and a hearing on adverse personnel actions defined by 5 U.S.C. 7512(1), (2) is a procedure required by law and failure to provide for such is a violation of my constitutional right to due process.   5 U.S.C. 7513(d).   In its decision to impose a 30-day suspension, the Agency decision document failed to provide the proper administrative or judicial review rights for the imposed adverse actions.   (Exhibit 1 pgs. JA72-73).   The agency avoided the legal requirements for the constructive suspension, termination and the remaining adverse actions through the imposition of an illegal nondisclosure gag/agreement.   (5 U.S.C § 7513(d); 5 U.S.C. §2302(b)(13)).

Both the Board's June 12, 2013 remand order and its August 6, 2014 will be before the Court.   (Burns v. Dir. Office of Worker's Comp. Programs, 41 F.3d 1555, 1561-62 (D.C. Cir. 1994)).   If MSPB's decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence", this court cannot affirm the MSPB dismissal for lack of jurisdiction.   (Shoaf v. Dep't of Agriculture, 260F.3d 1336 (Fed. Cir. 2001).

**B. The Board Erroneously Denied A Hearing On My Allegation  The Settlement Agreement Was Coerced And Erroneously Decided Issue Of Misrepresentation**

The imposition, then, of the nondisclosure "settlement agreement requiring a 30-day suspension, early retirement and other personnel actions was coerced, and thus involuntary," because "the agency threatened to take a future disciplinary action that it knew or should have known could not be substantiated." Schultz, 810 F.2d at 1136; Fassett v. U.S. Postal Serv., 85 M.S.P.R 677, 680 (MSPB 2000). Non-frivolous claims of coercion entitle an employee to a jurisdictional hearing. The right to a hearing arises after an employee makes a nonfrivolous allegation of the involuntariness of a retirement or resignation. See Gratehouse v. United States, 512 F.2d 1104, 1108 (Ct. Cl. 1975).

The Agency did not contest my claims or submit contradictory evidence at any time contradicting my assertion and evidence that I was working in accordance to a flexible schedule approved by my supervisor Dale Reed, primarily to accommodate my disability. *See,* evidence in Exhibit 1 to support that allegation, including documents and claims indicating the following:

- 31 of the hours Plaintiff was charged with not working were attributable to his supervisor's policy to have one-hour lunches, and therefore constituted "legally allowable break-time every employee receives." Exhibit 1 pgs. JA33-34; *see* Exhibit 1 pg. JA125 (email from supervisor noting that lunch break is "one hour"); *cf.* Exhibit 1 pg. JA43 at "Background" (proposed removal noting that agency believed Plaintiff's schedule included "a 30-minute non-paid lunch period mid-day").

- Plaintiff did substantial work from home outside normal working hours. *See* Exhibit 1 pg. JA126 (email referring to "at least 40 hours working on" a project "at home"); Exhibit 1 pgs. JA128-60 (emails showing Plaintiff working after normal office hours). Indeed, Plaintiff calculated "more than 158 hours worked outside of the official 7:30 am to 5:00 pm schedule,"

21

Exhibit 1 pg. JA370 at 40, which alone would surpass the 133 hours and 35 minutes the agency claimed he did not work. Exhibit 1 pg. JA53.

Additionally, two 15-minute daily legally allowable "rest-breaks" every federal employee receives are not accounted. As an initial cursory review, approximately 60 or so hours out of 133 hours charged for receiving pay for time not worked are accounted for by supervisor/legally allowed break-time. More than 40 hours spent at home working on a project directly for the Management Official, Brian McGrath. (Exhibit 1 pg. JA126; Exhibit 1 pgs. JA133-134). Mr. McGrath testifies that he received emails from me at all times of the day and night. That was because I was working and updating him on assignments of which he had a status interest. (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 45.300 46:20). So Brian McGrath, the Management Official initiating my removal from the federal government, knew I was working outside of the 7:30a – 5:00p schedule and could have asked my supervisor Dale Reed as to why or he could have asked me if he did not know. Within months of my 2009 graduation from the Commerce Executive Leadership Program and completing the Information Technology Change Management Project for Brian McGrath, the agency was retrieving my building security access control logs. (Exhibit 1 pgs. JA139-148; Exhibit 1 pgs. JA352-56). Accounting for actual hours worked outside of 7:30a to 5:00p, and attendance at professional development seminars, my disability accommodation, the agency knew or should have known from the start I was operating under a supervisory approved

schedule.  Below, additional evidence show the constructive suspension and removal was an egregious retaliatory act for having made EEOC complaints that I was attempting to negotiate a settlement that the agency was clearly resisting to settle. Brian McGrath was the Management Official.   (Exhibit 1 pg. JA182-193, JA233).

Like *Schultz*, the "agency knew or should have known" that its "charge . . . was no longer a viable basis" for the adverse action.  (Schultz v. United States Navy, 810 F.2d at 1137).   My supervisor was notified of the application for an accommodation from the Disability Program Office June 13, 2011, prior to any agreement. (Exhibit 1 pg. JA122). I was subsequently approved for a formal disability accommodation. (Exhibit 1 pg. JA123).

In 2005 my supervisor Reed authorized me to attend GSA CIO-University seminars during work hours.  (Am. Cmpl. § 32).  Starting in 2009 I attended ELDP leadership seminars during work hours with supervisor's knowledge and approval. (Am. Cmpl. ¶ 35).   Before any settlement discussions, negotiations or agreement ever took place, the Agency knew or should have known that its Notice of Proposed Removal was unsubstantiated and thus unjustified. (Exhibit 1 pg. JA5 at 5-13). As a result, the Settlement Agreement imposed materially adverse personnel actions which were coerced and appealable to the Board.

The Board denied my right to a hearing without addressing documentary evidence and the primary allegation that supervisor authorized an alternative work schedule.  Garcia, 437 F.3d at 1345; Covington v. Dep't of Health & Human Servs., 750 F.2d 937, 943 (Fed. Cir. 1984); 5 U.S.C 7513(d).  The Board's failure to hold a hearing is an abuse of discretion.  See Middleton, 185 F.3d at 1380.

On July 26, 2011, before a decision by the Deciding Official pursuant to the procedure in the notice of removal, in particular reference to my response to the removal proposal, Agency HR employee Benjamin Felder delivered the below email dictating the terms and conditions of my continued employment with the Census Bureau and which appears to have formed the foundation of the August 22, 2011 NDA. (Exhibit 1 pg. JA466).

> *From:*     *Benjamin T Felder/HRD/HQ/BOC*
> *To:*        *Ronda J Brown/POL/HQ/BOC@BOC*
> *Cc:*        *Terryne F Murphy/ISSRO/HQ/BOC@BOC, Stacy Chalmers/HRD/HQ/BOC@BOC*
>
> *Date:*      *Tuesday, July 26, 2011 07:37AM*
> *Subject:*   *AP Settlement*
>
> *FYI - I presented the proposed terms for settlement to Johnny Zuagar yesterday. He advised that he would talk to AP and get back to me. Hopefully, I will know something or have a counter-offer by the end of this week. I will let you know as soon as I have something. These were the terms offered:*
>
> *1. Agree to retire/resign by NLT May 30, 2011.* **(nonnegotiable)**
> *2. Agree not to apply for or accept any future positions with the BOC.* **(nonnegotiable)**
> *3. Agree not to engage in any further misconduct.* **(nonnegotiable)**
> *4. Accept a 60-day suspension.*
> *5. Accept a reassignment to an already identified area.*
> *6. Accept a demotion to a non-supervisory GS-13 position.*
> *7. Withdraw all pending complaints/cases against the Agency.* **(nonnegotiable)**
> *8. Agree not to file a claim against the Agency concerning this matter.* **(nonnegotiable)**

This email is coercive and a prohibited personnel practice. At this point, there had been no decision by the Deciding Official to my response to the charges. The law here on voluntariness is clear. By showing that the agency threatened to

take a future disciplinary action that it knew or should have known could not be substantiated, then a resulting settlement agreement is coerced and thus involuntary.  (Schultz v. U.S. Navy, 810 F2.d at 1136; Fassett v. U.S. Postal Serv., 85 M.S.P.R. 677, 680 (MSPN 2000)).   I therefore had a right to a hearing on the merits.  Garcia v. Dep't of Homeland Sec., 437 F.3d at 1344.  The Board's analysis of its own jurisdiction  often overlaps with the merits of a claim that a personnel action was coerced by discrimination or otherwise involuntary.   see Boyd v. Dep't of Transp., 21 Fed Appx 906, 909 (Fed Cir. 2001) (reviewing Board jurisdictional decision that turned on whether allegations of hostile work environment were non-frivolous);  Powell v. Dep't of Defense, 158 F.3d at 599 (noting that "evidence of voluntariness or constructive termination [may be] more closely 'related to the merits of a discrimination claim.  (Perry v. MSPB, Dkt. 14-1155 D.C. Cir (2015), Pet. Opening Br. at 34-35).

A "facially voluntary action by the employee may actually be involuntary", if coerced by the agency.  Garcia, 437 F.3d at 1324.  ("For example, although a resignation is ostensibly a voluntary separation from employment, it is possible that an employee can be coerced into resigning by actions of the employing agency.") Shoaf v. Dep't of Agric., 260 F.3d 1336, 1340-41 (Fed. Circ. 2001).

The Board failed to consider my allegations and evidence about the basis for the threatened removal or the documentary evidence and allegations of a supervisor authorized work schedule.  (Exhibit 1 pgs. JA300-01).   See Shoaf v. Dep't of Agric., 260 F.3d at 1342-43 (Board "abused its discretion" by failing to consider "the totality

of the circumstances in determining whether [petitioner's] resignation was involuntary"); Middleton v. Dep't of Defense, 185 F.3d 1374, 1380 (Fed. Cir. 1999) (Board must "view[] as a whole" "[a]ll relevant non-frivolous allegations" in determining whether a jurisdictional hearing is warranted), and failure to do so is a clear violation of administrative law.

## C. Agency Knowingly Engaged In Misrepresentation, Fraud and Extortion

Coercion can take on a number of forms.  Before any agreement, I explained in the response to the proposed removal that I was working in accordance to a supervisor approved schedule without objection or intervention from management.

It is also settled law that actions "approved in advance" by a federal employee's "supervisor" cannot be "relied upon by the agency in its decision to remove" an employee.  Hite v. U.S. Postal Serv., 168 F. App'x 436, 437 (Fed. Cir. 2006);  See Morall v. Drug Enforcement Admin., 412 F.3d 165, 167 (D.C. Cir. 2005) (agency "decision cannot withstand review, because it fails to consider contradictory record evidence where such evidence is precisely on point").  El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs., 396 F.3d 1265, 1278 (D.C. Cir. 2005)  (finding agency action arbitrary and capricious in failing to address relevant evidence before it).

This short timeline excerpt emphasizes the fraud and the extortion.  The proposal to remove by an employee who was not my supervisor issued June 2007;  June 30 2011 I responded to the charges of misconduct;   July 26, 2011 Human Resources email dictating the terms, conditions and privileges of my employment;

August 16, 2011 I was presented a NDA with similar terms in email above;   August 22, 2011 Ronda Brown faxed the NDA and a statement professing an agreement between me and the Agency to EEOC;   August 26, 2011 Deciding Official Terryne Murphy rendered her decision of 30-day suspension only without appeal rights and requirements of 5 U.S.C. 7513.  This violates the procedure identified in the notice of removal and is retaliatory, a continuation of the hostile work environment to which I was subjected, fraud, intended to extort me into an agency desired position and conspiracy to coerce me into the same.   August 16, 2011 NDA and the personnel actions therein, and the delay in the Deciding Official's decision until after imposition of a NDA are egregious coercive acts, extortion and "materially" adverse personnel employment actions that violate my due process, continues the hostile work environment and retaliation for my prior complaints.   Burlington Northern & Santa Fe Railway v. White, 583, 53 (2006); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

In Shultz, the petitioner submitted to the agency a bona fide request for an accommodation due to illness. 810 F.2d at 1134-35.  The agency denied her request, threatened her with "disciplinary action up to removal" in light of her "unauthorized absence status," and forced her to choose between returning to work immediately or voluntarily resigning. *Id.* at 1135.  The petitioner resigned. *Id.* She appealed to the Board, but the Board held that it lacked jurisdiction over her "voluntary" resignation.  *Id.*

The Court of Appeals reversed.  In light of the supporting documentation the petitioner had provided, the court found that "the agency acted coercively in denying her leave request and forcing a retroactive resignation." *Id.* at 1136.  "That the agency official may not have been "personally aware" of the full details of petitioner's situation and request at the time did not matter, since the agency's position became untenable once petitioner provided the necessary supporting documentation." *Id.* In short, the "agency knew or should have known" that its "charge . . . was no longer a viable basis" for the adverse action. *Id.* at 1137.

I was working in accordance with a supervisor approved disability accommodation.  On June 13, 2011 the agency was notified of my application for a formal disability accommodation.  After my June 30, 2011 response to the charges, Union Representatives communicates that the Agency will terminate me immediately if I take the matter to the EEO Office or refuse to sign.  Subsequently, I was served an NDA requiring resignation, suspension and other adverse actions. (Am. Cmpl. ¶ 51;  Exhibit 1 pg. JA504 at h.;  Electronic Submission of MSPB Audio File filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-3.MP3 at 44:20-46:00).   After the Agency secured my signature, the Deciding Official decided on 30 day suspension only but sustains the charges. (Exhibit 1 pg. JA72 ¶ 3).  My request to rescind retirement was denied. (Exhibit 1 pg. JA69).  The Agency action and the MSPB failure to provide a hearing cannot stand.

At all times after June 7, 2011, I remained under the threat of termination and threat of immediate termination pursuant to the NDA.   (Exhibit 1 pg. JA43;

Exhibit 1 pg. JA16 at d.).  By using Mr. Gutschow, an employee who was not my supervisor, to propose my removal, the Agency's action does not have a solid or substantial basis in personnel practice or principle and is a violation of my statutory and constitutional due process, equal protection and property rights.  (M. Roskos v United States, 549 F.2d 1386 (Fed Cir. 1977).

Documentary evidence shows my work schedule was supervisor approved and work products superior, which included after-hours work for missed time.  (Exhibit 1 pgs. JA30-34; Exhibit 1 pg. JA65); see Exhibit 1 pg. JA125 (email from supervisor noting lunch break is "one-hour"); Exhibit 1 pg. JA127; cf. Exhibit 1 pg. JA43 (proposed removal noting that the agency believed my schedule included a "30-minute non-paid lunch period).  The Notice also shows the agency knew or should have known it charged me with misconduct for at least 60 hours of "legally allowable break-time and a minimum of 40 hours working on a project for the Management Official months before the misconduct charges were file."  Dated emails to the Management Official, my supervisors and his testimony before the MSPB, reveals that he received email messages from me "all times of the day and night".  That was because of status updates I provided on projects he assigned to me. (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC120486B1_2018_8_07_13-1.MP3 at 57:20-1:02:10).

In Crane v. Dep't of the Air Force, 240 F. App'x 415, 418 (Fed. Cir. 2007) ("Precedent generally requires notice to an employee when previously condoned

activity is no longer condoned, giving the employee the opportunity to conform to any new rules."

See also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins., 463 U.S. 29, 43 (1983) (agency's decision is arbitrary and capricious when it "entirely failed to consider an important aspect of the problem," and a "reviewing court should not attempt itself to make up for such deficiencies").   The failure of the Board to consider all relevant evidence and then to deny a hearing on my non-frivolous claim that the agency knew its adverse personnel actions were unjustified and that the Settlement Agreement was therefore coerced is an abuse of discretion, violation of administrative law; constitutional law of due process, property rights, equal protection; and federal employment law.    5 U.S.C. 7513(d); 5 U.S.C. 7702(b)(2).

As an initial matter with the issue below, the implementation of a sign-in procedure in April 2011 and ended in May 2011 was done with an improper motive to "run up" misconduct specifications.   I repeatedly asked supervisor Reed the reason for the new sign-in procedure.   Exhibit 1 pg. JA32 at 10.    Once my supervisor provided an explanation for the new procedure, I started to use the sign-in procedure until discontinued the following month.   The explanation Dale Reed gave was, "it was to get you".   Improper motive to further antagonize considering I had filed the prior pending EEOC actions is relevant in determining whether an agency's action is of improper motive, unwarranted and arbitrary, capricious, and an abuse of discretion.   It is all three and further hostility.   Further, the Agency is

required by 7513(d) to explain how an adverse action taken for not using a sign-in log that was not an organization-wide requirement, policy or procedure and which ended one month or so later while awaiting an explanation promotes the efficiency of the service. No explanation exists.  It was to target me and this is racially disparate and retaliatory treatment.

In Whitmore, past antagonistic actions are relevant to the instant personnel actions no matter how far in the past.  (Whitmore v. Dep't of Labor, No. 11-3084 (Fed. Cir (2012)).

### D. Agency Maintained A Retaliatory And Hostile Work Environment And Used Prohibited Personnel Practices

Agency employees created and maintained a discriminatory and hostile work environment persistently depriving me of opportunities provided to other Caucasian employees.  Agency denied my constitutional right to equal protection, due process, property rights, engaged in prior restraint and  took adverse actions acting under the color of right. 43 U.S.C. § 1983.  I filed a series of complaints for non-selection, non-competitive promotions for Caucasian employees denying me equal opportunity for promotions and unfair performance evaluations.  (Anthony W. Perry v. MSPB, MSPB Docket No. DC-0752-12-0486-B-1, Tab13 Vol.1 Jul 8, 2013).  The agency then used a nondisclosure gag/agreement to conceal its adverse actions it could not sustain and communicated its intent to terminate me if I didn't sign the agreement or made a report to the EEOC.  (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename

MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-3.MP3 at 44:20-46:00).  The Title VII anti-retaliation provision covers only those employer actions that would have been materially adverse to a reasonable employee or applicant.  Burlington No. & Santa Fe Rlwy v. White, 548 U.S. 53, 15-18 (2006).  A retaliation plaintiff must show that the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (*Rochon* v. *Gonzales*, 438 F. 3d 1211, 1219).

Of significant importance is my unilateral supervisory code change in 2001, subsequent non-promotions to GS-15 and removal from the position of Special Assistant to the Division Chief by Chief of LTSO Thomas Meerholz in 2006, a position I earned in a competitive application process.  (Exhibit 1 pgs. JA527-529); Exhibit 1 pgs. JA195-96); (Exhibit 1 pgs. JA182-92; Exhibit 1 pg. JA357).

Starting in 2001, I was repeatedly denied promotion to GS-15.  In 2006, Thomas Meerholz unilaterally removed me from the position of Special Assistant to the Division Chief to give advantage to Patricia Musselman and Jason Schaufle for promotion to GS-15.  (Exhibit 1 pg. JA162; Exhibit 1 pg. JA196 at III 1.)   The action paved way for the subsequent appointment of Patricia Musselman to Assistant Division Chief and subsequently noncompetitive placement as Division Chief of LTSO.   Another prohibited personnel action 5 U.S.C 2302 (b)(6), (b)(9). Mr. Meerholz, Patricia Musselman and Dale Reed repeatedly denied me training and the opportunity to "act" or temporarily occupy temporary GS-15 vacancies and then used "recent supervisory experience" to justify promotion of Mr. Schaufle and

Ms. Musselman as having more recent supervisory experience for two of three GS-15 vacancies.  Mr. Meerholz and Patricia Musselman also approved unfair performance evaluations by Dale Reed and denied me training.  Mr. Meerholz also admitted to the destruction of interview and rating documents in EEO complaint 08-63-00072.  (Exhibit 1 pg. JA232).  (Burlington Northern and Santa Fe Railway v. White).  (Where "the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace".) (". . . the anti-retaliation provision's purpose of "[m]aintaining unfettered access to statutory remedial mechanisms,"")  *Robinson* v. *Shell Oil Co.,* 519 U. S. 337, 346. Thomas Meerholz, Patricia Musselman, Dale Reed and Management Official Brian McGrath created a hostile work environment to deny me promotion to GS-15 and training opportunities.  (Exhibit 1 pg. JA171).   In those instances, the agency would have benefited from my contribution and expertise.   (National Railroad Passenger Corp. v. Morgan, 536  U.S. 101 (2002)).  (where "a charge alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period …"); Meritor Savings Bank, FSB v Vinson 477 U.S. 57 64-65 (1986).

The terms, conditions and privileges of supervisory code 2 classification are substantially significant compared to code 4 supervisory classification.  It is the difference of code 2 having a staff and authority to perform ratings and performance evaluations and code 4 not.   H.R. Director Tyra Smith approved my supervisory classification code change from code 2 to code 4 without notifying me and without

cause.  (Exhibit 1 pgs. JA-527-29; see box 7, 15, 45).   This was a significant change in the terms and condition of my employment with the Census Bureau and is also a adverse and prohibited personnel action.   (5 U.S.C. 2302(b)(9);  (Exhibit 1 pg. JA529).   I made repeated attempts to get these documents voluntarily.  I finally obtained them via a FOIA request as part of the MSPB appeal of the instant action. (Exhibit 1 pg. JA529).

The named Defendants denied my first, fifth, and fourteenth amendment rights imposing  a NDA gag/agreement (a prohibited personnel practice and violation of 5 U.S.C. 2302(b13)) with unsubstantiated charges of misconduct, unjustified denials of critical training requests, specifically PMI Project Management Certification and the Harvard University or George Washington University advanced leadership training, failure to follow 5 U.S.C. 2302 (Merit Systems Principles) in personnel practices and decisions.

 Brian McGrath and Human Resources denied repeated requests to be reassigned from under Dale Reed and Patricia Musselman but reassigned me as a term and condition of my employment.   (Exhibit 1 pgs. JA208-210); Exhibit 1 pg. JA16 at f.).   The intent was to place me into the coercive situation requiring my retirement and forfeiture of pending EEOC claims as discussed above.

All EEO cases go to the Office of Civil Rights for investigation.  Susan Aramaki, Department of Commerce Chief of the Office of Civil Rights failed to take any action to protect me from repeated discriminatory and hostile actions by the agency.  Her office failed to appropriately respond to my repeated complaints of

34

violation of my statutory and constitutional rights and her office acted in bad faith in my attorney's attempts to settle prior pending disputes. (Am. Cmpl. ¶¶ 112-117); Exhibit 1 pgs. JA357-59)   She approved faulty Reports of Investigations and allowed settlement negotiations to proceed in bad faith which my previous attorney noted in EEO No. 08-63-00072.  (Exhibit 1 pgs. JA232-34).

The Office of Special Counsel has ruled nondisclosure  gag/agreements (NDA) requiring the waiver of rights and not containing specific language is a prohibited personnel practice and as a general matter NDAs have been ruled as coercive, prior restraint, per se retaliation, per se discrimination, per se retaliation and violates EEOC Guidance on non-waivable rights  915.002 (1978).   (Exhibit Exhibit 1 pgs. JA508-511); (Exhibit 3 pgs. 18-28 start at III.); (Exhibit 4  pg. 3 at B., pg.5 at IV).  In the instant case, the NDA contains a "gag clause" which was intended to hide that the agency was unable to substantiate its charged misconduct. (Exhibit 1 pg. JA60 at 6).  The charges are coercive and denied my due process and impeded my ability to contest the validity of the charges against me or file a complaint while still employed.  This NDA and the adverse actions imposed violates 5 U.S.C. §§ 2302 (b)(9), (b)(12), and (b)(13).

Below, I filed these unresolved prohibited personnel practices complaint and whistleblower complaints with the Office of Special Counsel: MA-11-2619, MA-12-4640, MA-13-1126, MA-14-4479, and DI-14-4483.  After the imposition of the nondisclosure gag/agreement and in early September, the Deciding Official Terryne Murphy told me that she expected that I would withdraw any other complaints I

might have pending.   5 U.S.C. § 2302(b)(9).    I provided this confirmation email to Johnny Zuagar confirming I had withdrawn my pending Office of Special Counsel whistleblower complaint.  (Exhibit 5 pgs. 3-4).   I did so under the NDA's threat of immediate termination at the agency's discretion just as I did not file an EEOC action while still employed.   (Exhibit 1 pg. JA16 at d.).   At all times after June 7, 2011, I worked under the threat of termination and subsequent to the NDA I risked immediate termination at the discretion of the agency.

## VII.   Summary Judgments

This Court should also make the following rulings on the remaining claims in the Amended Complaint.

### 1.  Count I.       Involuntary Suspension and Retirement Due to Coercion, Duress and Unlawful Acts

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count I.  (See Am. Cmpl. ¶¶ 72-88); Exhibit 1 pgs. JA579-581).   I request immediate reinstatement and return to status quo ante.

### 2.  Count IV.     42 U.S.C § 1983 only (withdraw § 1981 claims)

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Partial Summary Judgment as to Count IV § 1983 for deprivation of my rights and hostile work environment against Defendants in personal and official capacities.   (Am. Cmpl. ¶¶ 112-117 and ¶¶ 24-111).  [see Errata]

3.  **Count VI.     Bias, Statutory, Administrative and Constitutional Violations by MSPB**

For the reasons stated in the evidentiary record, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count VI.   (AM. Cmpl. ¶¶ 127-147).

4.  **Count VII.   Fraud**

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count VII against named Defendants in their personal and official capacities except, Tyra D. Smith.   (Am. Cmpl.  ¶¶ 31-35, ¶¶ 148-154 ).

5.  **Count VIII.  Conspiracy to Commit Fraud**

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count VIII against named Defendants in their personal and official capacities, except Tyra D. Smith.    (Exhibit 1 pg. JA466; See Am. Cmpl. ¶¶ 148-160).

6.  **Count IX.     Extortion**

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count IX against all named Defendants in their personal and official capacities, except for Tyra D. Smith.   (Am. Cmpl. ¶¶ 161-171).

7.  **Count X.      Conspiracy to Commit Extortion**

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count X against all named Defendants in their personal capacities except Tyra D. Smith.   (Am. Cmpl. ¶¶ 161-175).

### 8. Count XI.    Defamation

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count XI.  (Am. Cmpl. ¶¶ 176-183).

### 9. Count XII.   Negligent Training and Supervision

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count XII.   (Am. Cmpl. ¶¶ 184-191).

### 10. Count XIII.  Federal Tort Claims

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count XIII violations of FTCA for negligence with malice and reckless disregard and negligent infliction of emotional distress.  (Am. Cmpl. ¶¶ 193-204 and ¶¶ 24-192).

### 11. XIV.   Violation of Whistleblower Protections of WPA and WPEA of 2012

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Count XIV.   (Am. Cmpl. ¶¶ 216-218); (Exhibit 1 pg. JA5 at 21).

### 12. Intentional Infliction of Emotional Distress

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to claim of intentional infliction of emotional distress.   (Am. Cmpl.¶¶ 205-215 and ¶¶ 24-204).

13. **Privacy Act Violation**

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to Privacy Act Violations.  (Am. Cmpl.  ¶¶ 72-221).

14. **Hostile Work Environment and Harassment**

For the reasons stated, the Court should grant Plaintiff Anthony W. Perry's Motion for Summary Judgment as to hostile work environment and harassment violations.   (Am. Cmpl. ¶¶ 72-221).

## VIII.   CONCLUSION

For the foregoing reasons and pursuant to the Court's Order regarding "underlying discrimination claim", this Court should grant Summary Judgment for all claims, **except** Counts II, III, and V (the underlying discrimination claims), in favor of Plaintiff Anthony W. Perry and order immediate reinstatement and deliver judgment in favor of Plaintiff for all prior pending EEOC cases/claims.   The Court should then proceed with de novo review of the underlying discrimination claim(s) in the instant case.

Respectfully submitted,

Anthony W. Perry