**1**

## INDEX TO EXHIBIT 1

Initial Appeal Form (4/25/12) ...................................................................JA1

Order on Jurisdiction (5/7/12) ...............................................................JA21

Petitioner Response to Order on Jurisdiction (5/17/12) ............................JA30

Agency Response to Jurisdictional Order (5/29/12)................................JA235

Petitioner Response to Agency's File (6/1/12) .........................................JA247

Agency Response to Motions (6/15/12) ...................................................JA251

ALJ 2012 Initial Decision (7/30/12).........................................................JA259

2012 Petition for Review (9/6/12) ...........................................................JA267

Agency Response to Petition for Review (9/20/12)...................................JA283

MSPB Remand Order (6/12/13)...............................................................JA296

Petitioner Discovery Request (7/3/13)......................................................JA306

Petitioner Exhibits (7/8/13) .....................................................................JA311

Petitioner List of Facts and Issues (7/29/13) ...........................................JA361

Agency Prehearing Submission (8/1/13) ..................................................JA382

Petitioner Witness List (8/3/13) ...............................................................JA468

ALJ Order and Summary of Prehearing Conference (8/6/13)...................JA474

ALJ 2013 Initial Decision (12/23/13)........................................................JA478

2014 Petition for Review (1/26/14) ..........................................................JA499

Agency Opposition to Petition for Review (2/21/14) ................................JA550

Petitioner's Response to Agency Opposition to PFR (3/1/14)...................JA570

MSPB Final Order (8/6/14).......................................................................JA584



# MERIT SYSTEMS PROTECTION BOARD FORM 185-1

## Appeal Form--Appellant and Agency Information

*Please type or print legibly.*

OMB No.   3124-0009

| | |
|---|---|
| 1. | Name (last, first, middle initial) |

Perry, Anthony, W.

2. Present Address (number and street, city, state, and zip code)

Address:   5907 Croom Station Road

City, State, Zip Code:   Upper Marlboro, Maryland, 20772, United States of America

3. Telephone numbers (include area code) and E-Mail Address
   You must notify the Board in writing of any change in your telephone number(s) or e-mail address while your appeal is pending.

Home: (301) 780-7653                                      Work:

Fax:                                                      Other: (301) 928-2305

E-mail Address: tonywpy@aol.com                          Other Phone Type: Business

4. Do you wish to designate an individual or organization to represent you in this proceeding before the Board? (You may designate a representative at any time. However, the processing of your appeal will not normally be delayed because of any difficulty you may have in obtaining a representative.)

☐ Yes                                                    ☑ No

5. Name and address of the agency that made the decisions or took the action you are appealing (include bureau or division, street

Agency Name:   Department of Commerce
Bureau:        Bureau of the Census
Address:       4600 Silver Hill Road

City, State, Zip code:   Washington, District of Columbia, 20233, United States of America

6. Your Federal employment status at the time of the decision or action you are appealing:

☐ Temporary   ☑ Permanent   ☐ Applicant

☐ Term        ☐ Retired     ☐ Seasonal

☐ None

7. Type of appointment (if applicable):

☑ Competitive   ☐ SES      ☐ Excepted

☐ Postal Service   ☐ Other

8. Your occupational series, position title, grade, and duty station at the time of the decision or action you are appealing (if applicable):

Occupational Series: 2210        Position Title: Supervisory Information

Grade:   GS-14 step 8           Duty Station: Suitland, MD

9. Are you entitled to veteran's preference? See 5 U.S.C. 2108.

☐ Yes      ☑ No

10. Length of Government Service (if applicable):

28 Years   9 Months

11. Were you serving a probationary or trial period at the time of the decision or action you are appealing?

☐ Yes      ☑ No



# MERIT SYSTEMS PROTECTION BOARD FORM 185-1

## Appeal Form--Appellant and Agency Information

*Please type or print legibly.*

**HEARING: You may have a right to a hearing before an administrative judge. If you choose to have a hearing, the Board will notify you when and where it is to be held. If you do not want a hearing, the Board will make its decision on the basis of the submission of the parties.**

12. Do you want a hearing?     ☑ Yes     ☐ No

**E-Filing: Registration as an E-Filer enables you to file any or all of your pleadings with the Board in electronic form. Registration also means you consent to accept service of all pleadings filed by other registered E-Filers and all documents issued by the Board in electronic form. You will receive these as PDF documents at the e-mail address you provided the Board. If registered as an E-Filer, you may file any pleading, or portion of a pleading, by non-electronic means. You can withdraw your registration as an e-filer at any time.**

13. Do you wish to register as an E-Filer in this appeal?

     ☑ I elect to E-File          ☐ I decline to E-File

14. **I certify that all of the statements made in this form and all attached forms are true, complete, and correct to the best of my knowledge and belief.**

**Anthony W. Perry, Appellant**                                    Date:



# MERIT SYSTEMS PROTECTION BOARD FORM 185-2

## Appeal of Agency Personnel Action or Decision (Non-retirement)

Complete this form and attach it to MSPB Form 185-1 if you are appealing an agency personnel action or decision (other than a decision or action affecting your retirement rights or benefits) that is appealable to the Board under a law, rule, or regulation. If the personnel See 5 CFR 1201.3(a) for a list of appealable personnel actions and action or decision is appealable to the Board, you should have received a final decision letter from the agency that informs you of your right to file an appeal with the Board.

*Please type or print legibly.*                                                                                          OMB No.  3124-0009

**Please submit only the attachments requested in this form at this time.** You will be afforded the opportunity to submit detailed evidence in support of your appeal later in the proceeding.

**Name** *(last, first, middle initial)*  Perry, Anthony, W.

---

1. Check the box that best describes the personnel action or decision taken by the agency you named in MSPB Form 185-1 that you are appealing. (If you are appealing more than one action or decision, check each box applies.) Attach a copy of the decision letter (if any). If an SF-50 or its equivalent was issued and is available, attach it now; however, DO NOT delay filing your appeal because you do not have an SF-50.  You may submit the SF-50 when it becomes available.

   **Termination of Employment**      (You may select only one of the following four personnel actions.)

   ☐ Removal (Termination after probationary or initial service period)          ☐ Involuntary Resignation
   ☐ Termination during probationary or initial service period                        ☑ Involuntary Retirement

   ☐ Reduction in grade or pay          ☑ Suspension for more than 14 days
   ☐ Separation, demotion, or furlough for more than 30 days by reduction in force (RIF)        ☐ Furlough of 30 days or less
   ☐ Denial of within-grade increase          ☐ Failure to restore/reemploy/reinstate or improper restoration/reemployment/reinstatement
   ☐ Negative suitability determination
   ☑ Other action        Describe other action      Supervisory status stripped; barred from

---

| 2. Date you received the agency's proposal letter (if any) (month, day, year) | 3. Date you received the agency's final decision letter (if any) (month, day, year) (Attach a copy) | 4. Effective date (if any) of the agency action or decision (month, day, year) |
|---|---|---|
| 06/07/2011 | 08/22/2011 | 04/03/2012 |

---

5. Prior to filing this appeal, did you and the agency mutually agree in writing to try to resolve the matter through an alternative dispute resolution (ADR) process?

   ☐ Yes                    ☑ No

---

6. Explain briefly why you think the agency was wrong in taking this action or making this decision.

   See Continuation Sheet for Response.

---

7. What action would you like the Board to take in this case (i.e., what remedy are you asking for)?

   See Continuation Sheet for Response.

---

# MERIT SYSTEMS PROTECTION BOARD FORM 185-2

## Appeal of Agency Personnel Action or Decision (Non-retirement)

*Please type or print legibly.*

8. With respect to the agency personnel action or decision you are appealing, have you, or has anyone on your behalf, filed a grievance under a negotiated grievance procedure provided by a collective bargaining agreement?

☐ Yes                    ☑ No

9. If your answer to question 8 is "Yes," on what date was the grievance filed (month, day, year)?

NOT APPLICABLE

10. If your answer to question 8 was "Yes," has a decision on the grievance been issued?

NOT APPLICABLE

11. Select all the additional claims you would like to file with this appeal.

☐ No Additional Claims

☑ File a claim for harmful procedural error       ☐ File a claim for not in accordance with law

☑ File a claim of prohibited discrimination       ☑ File a claim of prohibited personnel practices

☐ File a Whistleblower claim                       ☐ Request a whistleblower stay

☐ File a USERRA claim                              ☐ File a veteran's preference claim

Appeal Number: **201201588**

Submission Date: **4/25/2012 2:53:16 PM**

Confirmation Number: **34193**

MSPB Form 185-2, Page 2 (6/1/2002)
5 CFR Parts 1201, 1208, and 1209

EXHIBIT 1 Pg. JA5

## Merit Systems Protection Board Form 185-2
### Appeal of Agency Personnel Action or Decision (Non-retirement)

## Continuation Sheet

6. Explain briefly why you think the agency was wrong in taking this action or making this decision.

1. I notified the Management Official in 2009 of my complaints of past discrimination, prior pending complaints (EEOC Case No. 531-2010-00351X (Agency Complaint Nos. 09-63-01027, 10-63-00197 & 11-63-00080; EEOC Docket No. 01201117784 (Agency Complaint Nos. 07-63-00080 & 07-63-00145; and EEOC Docket No 0120111034 (Agency Complaint No 10-63-02671)), and my desire to compete for promotional opportunities and move forward.
2. On May 19, 2011, I submitted "Opposition To Agency Summary Judgment to Dismiss" my claims of discrimination and prohibited personnel actions.
3. On June 6, 2011 I sent an email to the Census Bureau Director expressing my discontent about the continued discrimination against me and denial of opportunities given to younger Caucasian employees.
4. On June 7, 2011, I received a Proposed Removal from Darren J. Gutschow who was not my supervisor.
5. The Proposed Removal did not account for 30 minutes of legal break-time.
6. The Proposed Removal included overextended time taken during the lunch break when the practice condoned at the Census Bureau is one-hour for lunch breaks. My supervisor approved of a one-hour lunch break for all Branch employees.
7. The Proposed Removal did not consider my disability and the informal accommodations that had been provided by my supervisor since 2007. I was told by Dale Reed to "do what you have to do" to relieve and manage my pain from sitting to long or standing to long.
8. The Proposed Removal did not consider that I was allowed by my supervisor and Division Chief to work or make up time during the evening in the office, at home in the evening, and on my day off as needed without pay. There are at least two sets of emails regarding assignments I was working on to my supervisor, Division Chief and the management official after normal working hours.
9. Smokers are given unlimited time away from their desks for smoke breaks.
10. Employees using the fitness center are not tracked for the time away from their desks.
11. I attended all the meetings I was physically and emotionally able to attend.
12. My supervisor was always informed and aware of when I was going to be out of the office and the reason. There is no record of AWOL. Leave not recorded was unintentional.
13. My supervisor and my Division Chief approved and certified all of my Time and Attendance records.
14. The Proposed Removal indicated that the Deciding Official would provide me with a written decision. The Proposed Removal did not include an EEOC Settlement Agreement.
15. Over 300 hours of sick leave were used from 2009 through 2011 getting care for my disability and the remaining 50 or so hours for my daughter's healthcare needs with no impact on performance as I worked off the clock and my supervisors knew.
16. On February 27, 2012, I underwent a Total Left Hip Replacement of the disabled joint from which I had been suffering for years and more extensively over the last three years.
17. My first line supervisor, Dale Richard Reed and Division Chief, Patricia Musselman had both been named prior Responsible Management Officials.
18. A formal Reasonable Accommodations request was made June 13, 2011 (before the personnel actions and decisions being appealed were made.
19. A Reasonable Accommodations for my disability was granted on November 9, 2011.
20. The agency discriminated against me on the basis of race, age, and my disability and subjected me to retaliation and reprisal for prior EEOC activity. I was coerced to sign the EEOC Settlement Agreement forcing me to involuntary retire on September 4, 2012 (04/03/2012 because of continued surveillance and the agency statement it could terminate me at its discretion) and a 30-day suspension without a hearing on the basis of retaliation, prior EEO, and discrimination and in violation of the Douglass Factors and without just cause and due process.
21. I withdrew the Office of Special Counsel File # MA-11-2619 on Sept. 8,

# Merit Systems Protection Board Form 185-2
## Appeal of Agency Personnel Action or Decision (Non-retirement)

## Continuation Sheet

7. What action would you like the Board to take in this case (i.e., what remedy are you asking for)?

1. Reinstatement, reimbursement for 30-day suspension, back-pay, front-pay, benefits, all other allowable damages and relief. Agency officials punished who orchestrated this adverse action.
2. MSPB or EEOC hearing on the agency's intentional discrimination, prohibited personnel actions and retaliation charges. I am requesting all allowable damages to include actual and non-pecuniary compensatory, attorney fees and other equitable relief, retroactive promotion to GS-15, back-pay, front-pay, training that has been denied.

# MERIT SYSTEMS PROTECTION BOARD FORM 185-4A

## Claims of Mistakes in Procedures or Violations of Law

**Complete this form and attach it to MSPB Form 185-1 if you are raising a claim—in connection with an appeal of an agency action or decision for which you have completed MSPB Form 185-2 or MSPB Form 185-3—that the agency made mistakes in applying required procedures (harmful error) or that the agency violated a law in taking the action or making the decision that you are appealing.**

**DO NOT use this form for claims of a violation of law for which another form is provided; instead, use the appropriate form for that claim (i.e, MSPB Form 185-4B for a discrimination claim, MSPB Form 185-4C for a prohibited personnel practices claim, MSPB Form 185-5 for a whistleblower claim, MSPB Form 185-7 for a USERRA claim, or MSPB Form 185-8 for a veterans' preference claim).**

*Please type or print legibly.*                                                                 OMB No.   3124-0009

**Name** *(last, first, middle initial)*   Perry, Anthony, W.

**Harmful Procedural Error -**

Harmful error is defined in the Board's regulations as: "Error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error."  See 5 C.F.R.

1.   If you believe that the agency made a error(or error) in applying required procedures in connection with the action or decision you

    See Continuation Sheet for Response.

2.   Explain how  the error you in response to question 1 above caused the agency to reach a conclusion different from the one it would have

    See Continuation Sheet for Response.

**Not in Accordance with Law -**

An appealable action will be reversed as being "not in accordance with the law" if the agency's action is unlawful in its entirety, i.e., if there is no legal authority for action.

3.   If you believe that the agency action or decision you are appealing, was "not in accordance with law," please explain.

NOT APPLICABLE

4.   If you believe a specific law was violated, please identify the law and describe how the law you identified was violated.

NOT APPLICABLE

Appeal Number:  **201201588**
Submission Date:  **4/25/2012 2:53:16 PM**
Confirmation Number:  **34193**

MSPB Form 185-4A (6/1/2002)
5 CFR Parts 1201

| | **Merit Systems Protection Board Form 185-4A**<br>**Claims of Mistakes in Procedures or Violations of Law** |
| --- | --- |

## Continuation Sheet

1. If you believe that the agency made a error(or error) in applying required procedures in connection with the action or decision you described in MSPB Form 185-2 or MSPB Form 185-3, identify the procedure(s) and describe the error(s).

The proposal letter is authored by an employee that is not my supervisor nor in my chain of command. It states that I would receive a written decision from the Deciding Official. Before the Deciding Official issued her decision, the Agency Management Official, Human Resources Official, and Management Representative produced an EEOC Settlement Agreement and forced me to sign it to avoid termination which included suspension, forced retirement, removal from supervisory position, barred from future Commerce Employment and removal at Agency discretion. Douglass Factors and disability not considered if misconduct is conceded. My time and attendance were approved and certified by supervisor and division chief. The motive of the charges brought in the Proposal was punitive. The Deciding Official released her decision four days later deciding not to terminate but suspend for 30 days without a hearing.

# Merit Systems Protection Board Form 185-4A
## Claims of Mistakes in Procedures or Violations of Law

## Continuation Sheet

2. Explain how the error you in response to question 1 above caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.

There was no misconduct on my part in any of my behavior and therefore no charge should have been filed. Informal accomodations had been made by my supervisor since 2007-2008 not accounted for in the proposal. The agency did not consider or give adequate consideration to the factual evidence provided. The Deciding Official decided on a 30-day suspension only. The Agency's motive was to get my pending EEOC action claiming race and age discrimination off of the table without settleing fairly and remove me for past EEO claims.



# MERIT SYSTEMS PROTECTION BOARD FORM 185-4B

## Claims of Prohibited Discrimination

Complete this form and attach it to MSPB Form 185-1 if you are raising a claim—in connection with an appeal of an agency action or decision for which you have completed MSPB Form 185-2 or MSPB Form 185-3—that the agency action or decision was the result of prohibited discrimination.

If you have previously filed a discrimination complaint with the agency under the procedures of the Equal Employment Opportunity Commission (29 CFR Part 1614), you may file an appeal with the Board after you have received the agency's final decision on your complaint or, if the agency has not issued a final decision on your discrimination complaint within 120 calendar days after the date you filed it, at any time after the end of the 120-day period. See 5 CFR 1201.154.

*Please type or print legibly.*                                                    OMB NO. 3124-0009

**Name** *(last, first, middle initial)*   Perry, Anthony, W.

Discrimination - An allegation of discrimination is not an independent source of Board jurisdiction.  The underlying action must first be within the Board's jurisdiction before an allegation of discrimination may be considered by the Board. See 5 CFR 1201.151.

1. Check the appropriate box (or boxes) below to indicate the basis (or bases) of your claim that you are discriminated against by the agency in connection with the action or decision you described in MSPB Form 185-2 or MSPB Form 185-3.

   ☐ Discrimination based on marital status or political affiliation     ☑ Race          ☐ Color          ☐ Religion
   ☐ Sex(Title VII of the Civil Rights Act of 1964)     ☐ National Origin     ☑ Disability     ☑ Age
   ☐ Sex(sexual harassment under Title VII of the Civil rights Act of 1964)

2. If you believe you were discriminated against by the agency, in connection with the matter appealed, because of your race, color, religion, sex, national origin, disability, or age, explain why you believe it to be true.

   See Continuation Sheet for Response.

3. Have you filed a formal discrimination complaint with your agency concerning the action you are appealing?

   ☐ Yes          ☑ No

4. If your answer to question 3 is "Yes", enter the place where the complaint was filed if different from your answer to question 5 on MSPB Form 185-1:

   NOT APPLICABLE

5. Date filed (month, day, year):

   NOT APPLICABLE

6. Has a decision been issued?

   NOT APPLICABLE

### REQUEST FOR COMPENSATORY DAMAGES

7. Are you requesting an award of compensatory damages in connection with your discrimination claim?  See 5 CFR 1201.202(c).

   ☑ Yes          ☐ No

# Merit Systems Protection Board Form 185-4B
## Claims of Prohibited Discrimination

## Continuation Sheet

2. If you believe you were discriminated against by the agency, in connection with the matter appealed, because of your race, color, religion, sex, national origin, disability, or age, explain why you believe it to be true.

The charging document failed to reasonably account for my disability and the near total reason for the behavior the agency is charging. Prior accommodations had been made by my supervisor. I was retaliated against for my past EEO actions claiming race and age discrimination. This matter is retaliation and was orchestrated by the management official and the human resources official. I was applying/requesting to be promoted and complained that younger Caucasians with less skill, credentials, and record of past performance were being promoted above me. To keep from promoting me or addressing prior and ongoing discrimination the agency coerced me to sign the EEOC Settlement or be terminated.



# MERIT SYSTEMS PROTECTION BOARD FORM 185-4C

## Claims of Prohibited Personnel Practices

Complete this form and attach it to MSPB Form 185-1 if you are raising a claim—in connection with an appeal of an agency action or decision for which you have completed MSPB Form 185-2 or MSPB Form 185-3—that the agency action or decision was the result of one or more of the statutory prohibited personnel practices. See 5 U.S.C. 2302 b .

**DO NOT use this form for any of the following prohibited personnel practice claims:**

- A claim that the action or decision was the result of discrimination based on race, color, religion, sex, national origin, disability, or age, 5 U.S.C. 2302(b)(1); complete MSPB Form 185-4B instead.

- A claim that the action or decision was based on whistleblowing, 5 U.S.C. 2302(b)(8); complete MSPB Form 185-5 instead.

- A claim that the action or decision violated a veterans' preference requirement, 5 U.S.C. 2302(b)(11); complete MSPB Form 185-8 instead.

---

*Please type or print legibly.*                                    OMB No. 3124-0009

**Name** *(last, first, middle initial)*  Perry, Anthony, W.

Prohibited Personnel Practices - The statutory prohibited personnel practices are set forth at 5 U.S.C. 2302(b)(1)-(b)(12). An allegation of a prohibited personnel practice is not an independent source of Board jurisdiction. The underlying action must first be within the Board's jurisdiction before an allegation of a prohibited personnel practice may be considered by the Board. See 5 CFR 1201.56(b)(2).

Section 2302 of title 5, U.S. Code, does not apply to all personnel actions or to all Federal employees. Please review the definitions of "personnel action," "covered position," and "agency" at 5 U.S.C. 2302(a) to be sure that both you and the action or decision you are appealing are covered by those definitions before you complete and submit this form.

1. Check the appropriate box (or boxes) below to indicate the basis (or bases) of your claim that the agency committed a prohibited personnel practice in connection with the action or decision you described in MSPB Form 185-2 or MSPB Form 185-3.

☐ Discrimination based on political affiliation          ☐ Discrimination based on marital status

☐ Coercing the political activity of any person          ☐ Nepotism (favoring relatives)

☐ Soliciting or considering employment recommendations not based on the individual's work performance, ability, aptitude, general qualifications, suitability, character, or loyalty

☑ Taking or failing to take a personnel action as a reprisal for the exercise of any appeal, complaint or grievance right; for assisting anyone else in exercising such a right; for cooperating with or disclosing information to the Special Counsel or the Inspector General of an agency; or for refusing to violate a law

☑ Deceiving or willfully obstructing a person's right to compete for employment

☐ Influencing any person to withdraw from competition for any position, whether to help or hurt anyone else's employment prospects

☑ Giving unauthorized preferential treatment to any employee or applicant

☑ Discriminating on the basis of personal conduct which does not adversely affect the performance of the employee or applicant or the performance of others, except in case of criminal conviction for the conduct

☐ Taking or failing to take any other personnel action that would violate any law, rule, or regulation implementing or directly concerning the merit system principles

Appeal Number: **201201588**                    MSPB Form 185-4C (6/1/2002)
Submission Date: **4/25/2012 2:53:16 PM**                    5 CFR Parts 1201
Confirmation Number: **34193**

# e-Appeal Attachment Transmittal

**Appeal Number:**        201201588
**Appellant Name:**       Mr. Anthony W. Perry
**Agency Name:**          Department of Commerce

Please check the box for each document included with this transmittal.

| | Name of Attachment | Attachment Processing Status | File Name/Delivery Method |
|---|---|---|---|
| ☐ | Agency Decision Letter | Upload with e-Appeal | coercedsign0001.pdf |
| ☐ | SF-50, Notification of Personnel Action | Document not available or not applicable | N/A |

2 copies must be submitted of all documents submitted in hardcopy.
Send documents to be submitted in paper form to:
Washington DC Regional Office
1800 Diagonal Road Suite 205
Alexandria, Virginia 22314-2840
United States of America

Phone: (703) 756-6250
Fax: (703) 756-7112

**UNITED STATES DEPARTMENT OF COMMERCE**
Office of the General Counsel
Washington, D.C. 20230

August 22, 2011

*via Facsimile*

Administrative Judge Mary E. Palmer
U.S. Equal Employment Opportunity Commission
Baltimore Field Office
10 S. Howard Street, 3rd Floor
Baltimore, MD 21201
Tel: 410/209-2237
Facsimile: 410/962-4270

Re:   Anthony W. Perry v. Department of Commerce
      EEOC Case No. 531-2010-00351X; EEOC Docket Nos. 0120111784 and 0120111034
      Agency Complaint Nos. 09-63-01027, 10-63-00197, 11-63-00080, 07-63-00080,
      07-63-00145 and 10-63-02671
      *Settlement Agreement*

Dear Judge Palmer:

The U.S. Department of Commerce and Complainant reached agreement regarding settlement in the above-captioned cases.

As our office is still experiencing delays with our mail delivered through the U.S. Postal Service, I would respectfully request that any orders and correspondence in regard to this dismissal be sent via facsimile to (301) 763-6238.

Please feel free to contact me if you have any questions, or if there is any additional information which I may provide. Thank you for your time and consideration in this case.

Sincerely,

Ronda J. Brown
Agency Representative

Enclosure

cc:   Anthony W. Perry
      Johnny T. Zuagar

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

| | | |
|---|---|---|
| ANTHONY W. PERRY, | ) | EEOC Case No. 531-2010-00351X |
| | ) | Agency Complaint Nos. 09-63-01027, |
| Complainant, | ) | 10-63-00197 & 11-63-00080 |
| | ) | |
| v. | ) | EEOC Docket No. 0120111784 |
| | ) | Agency Complaint Nos. 07-63-00080 |
| GARY LOCKE, SECRETARY, | ) | & 07-63-00145 |
| U.S. DEPARTMENT OF COMMERCE, | ) | |
| | ) | EEOC Docket No. 0120111034 |
| Agency. | ) | Agency Complaint No. 10-63-02671 |

## SETTLEMENT AGREEMENT

1.    **PARTIES.**  The parties, Anthony W. Perry (Complainant) and the U.S. Department of Commerce (Agency), through the undersigned, voluntarily enter into this Settlement Agreement (Agreement), to resolve all existing matters concerning Complainant's employment with the Agency, including the issues raised in EEOC Case No. 531-2010-00351X / Agency Complaint Nos. 09-63-01027, 10-63-00197 & 11-63-00080 and any outstanding appeal rights stemming from EEOC Docket No. 0120111784 / Agency Complaint Nos. 07-63-00080 & 07-63-00145 and EEOC Docket No. 0120111034 / Agency Complaint No. 10-63-02671.  By this Agreement, the parties resolve all disputes between them concerning Complainant's employment with the Agency, regardless of the forum, in existence on the effective date of this Agreement.

2.    **COMPLAINANT.**  In consideration of the Agency taking the actions described in Paragraph 3 below, Complainant agrees to:

    a.  Retire voluntarily effective no later than September 4, 2012.  Complainant acknowledges that by entering into this Agreement his decision to retire is both voluntary and irrevocable.

    b.  Voluntarily resign from his employment with the Agency, effective September 4, 2012, in the event Complainant has not retired by the close of business, September 4, 2012.  Complainant will do this by completing Part E of the Standard Form 52 attached to this Agreement and submitting this completed form to the Agency at the

Initials:

_(signature)_ Complainant                           _(signature)_ Management Official

_(signature)_ Complainant's Representative          _(signature)_ Management's Representative

same time that he submits this Agreement with his signature.  Complainant agrees that the reason given for his resignation will not be adverse or hostile to the Agency.

c.   Except as set forth in this Agreement, not apply for or accept any positions with the Agency at any time in the future from the effective date of this Agreement.  If Complainant applies for employment in violation of the Agreement and the Agency hires him, the Agency, at its discretion, may remove him immediately.  Complainant further agrees to voluntarily waive all appeal rights he has and not to litigate in any forum, judicial or administrative, any claims arising from a removal pursuant to this paragraph.

d.   Refrain from engaging in any acts of misconduct from the effective date of this Agreement until his retirement or resignation, which will be no later than September 4, 2012.  If the Agency determines in its sole discretion that Complainant has engaged in any acts of misconduct during the time period established in this paragraph, Complainant will be subject to immediate removal without any right to reply.  The waiver of rights contained in Paragraph 2.h. below applies to any removal implemented pursuant to this paragraph.

e.   Serve a suspension for thirty (30) calendar days in lieu of the removal proposed on June 7, 2011, for receipt of pay for time not worked and failure to follow supervisory directive.  The suspension will be served nine (9) consecutive calendar days per pay period between Saturday of the preceding week and Sunday of the following week, beginning Saturday, August 27, 2011.

f.   Accept, at the Agency's sole discretion, a reassignment from the effective date of this Agreement until his retirement or resignation, which will be no later than September 4, 2012.  Complainant agrees and understands that he will be reassigned to the position of Information Technology Specialist, GS-14, with no supervisory title, status or duties.  There will be no change to Complainant's salary and/or benefits as a result of this reassignment.  The Agency retains the right to change Complainant's supervisor or work unit at its sole discretion.

g.   **WITHDRAWAL.**  Withdraw EEOC Case No. 531-2010-00351X / Agency Complaint Nos. 09-63-01027, 10-63-00197 & 11-63-00080, EEOC Docket No. 0120111784 / Agency Complaint Nos. 07-63-00080 & 07-63-00145, and EEOC Docket No. 0120111034 / Agency Case No. 10-63-02671 with no right to raise these issues again, except as provided in Paragraph 7, below.  These withdrawals will take effect on the effective date of this Agreement.

Initials:

_____ Complainant                              _____ Management Official

_____ Complainant's Representative             _____ Management's Representative

h. **WAIVER.** Waive, release, and forever discharge the Agency, its officers, agents, employees, and representatives (in their official and/or personal capacities) from any claims, demands, or causes of action, which Complainant has or may have, arising from his employment, including issues raised in EEOC Case No. 531-2010-00351X / Agency Complaint Nos. 09-63-01027, 10-63-00197 & 11-63-00080, EEOC Docket No. 0120111784 / Agency Nos. 07-63-00080 & 07-63-00145, and EEOC Docket No. 0120111034 / Agency Case No. 10-63-02671. Complainant specifically waives any and all rights and claims arising out of the issues raised in the above-cited formal complaints of discrimination and/or related to any action taken pursuant to any provision of Paragraph 2, above, and Paragraph 3, below. Complainant waives any and all rights and claims arising from Complainant's employment under the Age Discrimination in Employment Act, 29 U.S.C. § 633a et seq., as amended by the Older Workers' Benefit Protection Act, the Rehabilitation Act, 29 U.S.C. § 791 et seq., as amended, and/or Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., as amended, as applicable. This release includes but is not limited to a release of any right to administrative, judicial, or congressional relief, or any other type of relief, or of any claim to back pay, attorneys' fees and costs, or other type of compensation, except what is specifically set forth in paragraph 3, below. However, by entering into this Agreement, Complainant does not waive rights or claims that may arise after the effective date of the Agreement.

3. **AGENCY.** In consideration of Complainant taking the actions described in Paragraph 2, above, the Agency agrees to:

a. Not remove Complainant from his position or from the Federal service based upon the charges outlined in the June 7, 2011, proposal to remove letter.

b. Issue a decision on the proposal to remove letter issued on June 7, 2011, suspending Complainant for thirty (30) days. The suspension will be served nine (9) consecutive calendar days per pay period between Saturday of the preceding week and Sunday of the following week, beginning Saturday, August 27, 2011. Complainant understands that the wording of the letter suspending him is within the sole and exclusive discretion of the Agency.

c. At the Agency's sole discretion, reassign Complainant from the effective date of this Agreement until his retirement or resignation, which will be no later than September 4, 2012. Complainant agrees and understands that he will be reassigned to the position of Information Technology Specialist, GS-14, with no supervisory title, status or duties. There will be no change to Complainant's salary and/or benefits as a result of this reassignment. The Agency retains the right to change Complainant's supervisor or work unit at its sole discretion.

Initials:

_____ Complainant                    _____ Management Official

_____ Complainant's Representative         _____ Management's Representative

Page 3 of 6

    d.   Process Complainant's voluntary resignation effective September 4, 2012, in the event Complainant has not retired by the close of business, September 4, 2012.

    e.   Expunge Complainant's Official Personnel Folder of all records of disciplinary action taken pursuant to Paragraph 3.b. above if as of the date of his retirement or resignation, which will be no later than September 4, 2012, Complainant has not engaged in any further acts of misconduct, in accordance with Paragraph 2.d. above. Pursuant to this subparagraph, the Agency agrees to provide any prospective employer with a reference consisting of the dates of Complainant's employment with the Agency; the title, grade, series, and salary of the position held by Complainant at the time of his retirement or resignation; and that Complainant retired or resigned voluntarily from his position with the Agency. However, failure to comply with this subparagraph due to ignorance of the Agreement and its terms by any Agency employee does not give rise to a claim of breach of contract by Complainant.

**4.**    **NON-ADMISSION.**  This Agreement does not constitute an admission by the Agency of any wrongdoing on its part, and the Agency expressly denies that it, its officers, agents, employees, or representatives, violated any law, regulation, contract, or employment practice with regard to the treatment of Complainant, or that it discriminated, harassed and/or retaliated against Complainant in any way. Similarly, this Agreement does not mean that Complainant's allegations are without merit. Rather, the Agreement reflects the parties' interest in reaching an agreement to the satisfaction of both parties.

**5.**    **NOT PRECEDENTIAL.**  The parties agree that this Agreement has no precedential effect. Neither the Agreement, nor any term(s) herein may be used as a basis, by any person(s), to justify similar terms in any subsequent matter. This Agreement shall not be used, cited, or relied upon by any party in connection with any other judicial or administrative procedure.

**6.**    **NON-DISCLOSURE.**  The parties agree to keep the nature and terms of this Agreement confidential. The terms of the Agreement may not be disclosed to any person or entity beyond the persons signing below, except to Complainant's spouse as applicable, as required by law, as necessary to implement the terms of the Agreement, or as ordered by a court or administrative body of competent jurisdiction.

**7.**    **BREACH OF AGREEMENT.**  If either party believes that the other party has failed to comply with the terms of the Agreement, the party shall notify Roy Castro, EEO Officer, U.S. Department of Commerce, or Suzan J. Aramaki, Director, Office of Civil Rights, U.S. Department of Commerce, in writing, of the alleged noncompliance within thirty (30) days of when the party knew or should have known of the alleged noncompliance. Pursuant to 29 C.F.R.

Initials:

_____ Complainant               _____ Management Official

_____ Complainant's Representative        _____ Management's Representative

§ 1614.504(c), allegations that subsequent acts of harassment, discrimination and/or retaliation violate this Agreement shall be processed as separate complaints.

In accordance with 29 C.F.R. § 1614.504(a), in the event of failure by the Agency to carry out the terms of this Agreement for any reason other than for noncompliance or waiver of this Agreement by Complainant, Complainant may request:

      a.      Implementation of the terms of the Agreement; or

      b.      Reinstatement of the formal complaint(s) for further processing.

**8.**    **EFFECT OF SIGNATURE.**  By signing this Agreement, Complainant agrees that Complainant has read and understands the entire Agreement, the effect(s) of each provision, especially the provisions relating to the withdrawal of the formal complaint(s), thereby foreclosing further litigation on the matters raised in the formal complaint(s), and the waiver set forth in Paragraph 2, above, and that Complainant has signed this Agreement voluntarily and was in no way coerced.  Complainant shall have twenty-one (21) days from the date of receipt of this Agreement to consider its terms.  Should Complainant sign this Agreement before the twenty-one (21) day time period has expired, Complainant attests that Complainant's decision to accept such a shortening of this period is knowing and voluntary, and was not induced by the Agency through fraud, misrepresentation, and/or threat to withdraw or alter the terms of the Agreement.

**9.**    **TOTALITY OF AGREEMENT.**  This Agreement constitutes a fair, full, and final resolution of all aspects of Complainant's allegations, and contains all terms and conditions of the Agreement between the parties.  No other conditions or assurances, expressed or implied, are included.

**10.**    **JOINT PRODUCT.**  This Agreement is a joint product and will not be construed against any party on the grounds of sole authorship.

**11.**    **EFFECTIVE DATE.**  This Agreement becomes effective when fully executed by the signatories designated below to include all concurrences.

_____  08/16/2011       _____ 08/16/16
ANTHONY W. PERRY    Date         BRIAN E. MCGRATH    Date
Complainant                      Management Official

Initials:

_____ Complainant               _____ Management Official

_____ Complainant's Representative     _____ Management's Representative

EXHIBIT 1 Pg. JA20

Case 1:17-cv-01932-TSC Document 30-48 Filed 11/19/18 Page 22 of 424
08/22/11 11:00 FAX 301 457 2875 LEGAL OFFICE @007
USCA Case #14-1155 Document #1537564 Filed: 02/13/2015 Page 22 of 596

JOHNNY T. ZUAGAR 08/16/2011 Date
Complainant's Representative

RONDA J. BROWN 8/22/11 Date
Management's Representative

CONCURRENCES:

ROY CASTRO 8/22/11 Date
Equal Employment Opportunity Officer

TED A. JOHNSON 8/11/11 Date
Acting Chief, Human Resources Division

BRIAN D. DiGIACOMO 8-22-11 Date
Chief, Employment and Labor Law Division

Initials:
_____ Complainant
_____ Complainant's Representative

_____ Management Official
_____ Management's Representative

Page 6 of 6

EXHIBIT 1 Pg. JA30

Case 1:17-cv-01932-TSC   Document 30-48   Filed 11/19/18   Page 23 of 424
USCA Case #14-1155      Document #1537564         Filed: 02/13/2015      Page 32 of 596

Anthony W. Perry

        Appellant

    v.

Department of Commerce

       Agency

MSPB Docket Number:    DC-0752-12-0487-I-1
                          DC-0752-12-0486-I-1

                              May 17, 2012

## COMPLAINANT RESPONSE TO ORDER ON JURISDICTION OF BOARD IN THIS MATTER

1.This brief contains the information that supports the allegation that I was forced into involuntary retirement, suspended for 30-days without due process or a hearing, and stripped of my supervisory status and forbid from working at any Commerce Agency from the effective date of the Agency drafted EEOC settlement document dated August 22, 2011 as I was coerced to accept the terms and conditions dictated to me and involuntarily signed to prevent termination from federal service (stated in the Proposed Removal and the settlement document) and forfeit 10 years of discrimination and prohibited personnel action claims on the basis of disability discrimination and failure to provide a reasonable accommodation, retaliation and reprisal for past EEO actions and in total disregard and misrepresentation of the facts of the case; disregard for the legal guiding principles of the Douglass Factors if misconduct occurred; continuing discrimination on the basis of race, age, a hostile work environment, denial of training, failure to promote, retaliation and reprisal for past EEO actions and prohibited personnel practices. The threat of termination at the Agency's sole discretion (Tab 2 pg. 14) forced me to withdraw a pending Office of Special Counsel action on the alleged prohibited personnel practices as I feared the agency would concoct another misconduct charge to terminate my employment. Even after the settlement was unlawfully secured by the Agency, I continued to be under surveillance and followed by employees with notepads. See Perelman v. United States (1974). The Agency EEOC Settlement Document was drafted by the Agency and the Agency alone. I was forced to sign it under the threat of termination as the agency used misinformation, misrepresentation of the information, coercion, and the threat of termination to secure my signature involuntarily.

2.My forced retirement is an adverse action taken against me and is therefore in the board's jurisdiction, just as is the 30-day suspension without a hearing and thus committing a procedural error because I was not informed that all suspensions greater than 14-days are appealable as an adverse action and that I had appeal rights. Additional justifications for board jurisdiction are throughout the brief. See Cruz v. Department of Navy, 934 F.2d 1240 (Fed. Cir. 1991); Christie v. United States, 518 F.22d at 584; Barthel v. Department of the Army, 38 M.S.P.R.245 (1988). See also Braun v.

Department of Veterans Affairs, 50 F.3d 1005 (Fed. Cir. 1995); Jones v. Department of the Navy, 66 M.S.P.R 421 (1995).

3. The August 22, 2011 EEOC document states with clarity in Tab 1 pg. 15, paragraphs 2 and 3 that the retirement and termination are dependent actions imposed on me. No other choices are available. Reconsideration of the terms imposed on me by the Agency is explicitly excluded as an option for me (Tab 1 pg. 14-20).

4. At the time of this action, I was a GS-14 Supervisory Information Technology Specialist, 55 years old, the father of an eleven year-old daughter that was undergoing extensive orthodontic care, myself suffering from osteoarthritis in the hip and lower lumbar and including hard to manage groin and buttock pain as described in the medical records provided to the Disability Office in June of 2011 (Tab 4 pg. 1-49) and in my request for Reasonable Accommodation on June 13, 2011. My supervisor of record, Dale Richard Reed and Division Chief, Patricia Musselman, were fully aware and until June 7, 2011 (or sometime before without notifying me) provided an informal accommodation for my disability (Tab 4 pg. 48-49). I also carry a $75,000.00 Guaranteed Student Loan Debt. My signing of the EEOC settlement document when the Proposed Removal stated that Ms. Murphy would decide the action based on my response to the removal document was done under extreme duress, coercion, and misrepresentation of the data and disregard for the facts that the agency knew it could not sustain. This was a harmful procedural error and was imposed on me without choice. The Agency Officials sent message by the Union Steward representing me initially that if I went to the EEO Office on this action, I would be terminated immediately. I had gone to EEO for prior claims and wanted to file a No Fear action for retaliation, disability discrimination, and continuing discriminatory actions already stated and documented.

5. I had 28 years and 9 months of superior federal service (2 Bronze Medals; Tab 8 pg. 1) potentially eliminated because of the appealed adverse actions in the proposal to remove and the EEOC August 2011 settlement document to eliminate pending age and race discrimination complaints that had begun settlement discussions (see EEOC Settlement Proposal) and was awaiting a decision on my motion "Opposition to Summary Judgment to Dismiss Without a Hearing" (see Tab 6 pg.1) and remove me from federal service because of my past EEO actions and continuing complaints about being discriminated and prevented from promotional opportunities being provided to younger, less experienced and credentialed Caucasian employees (Tab 1 pg. 22; Tab 8 pg. 1-2, and 4).

6. I was denied a reasonable accommodation and discriminated against on the basis of my disability in total disregard for the Douglass Factors and on the basis of race, age, forced to work in a hostile working environment (Tab 7 pg. 1-10) and coerced to sign the EEOC Settlement agreement which included my forced and involuntary retirement, 30-day suspension, removal from my supervisory coded position, and forbid to work at a Commerce Agency or "be terminated" as stated in the Proposed Removal served on me by Daren J. Gustschow (an employee that was **NOT** my supervisor of record at anytime during my employment at the U.S. Census Bureau) Tab 1 pg. 1.

7. The agency committed harmful procedural error and revealed the motive for the conduct charges when in contradiction to the "Proposed Removal", it drafted an EEOC

2

settlement document which it coerced me to sign in exchange for termination before the
Deciding Official provided her written response to me. I never proposed retirement. The
Agency made retirement and forfeiture of the pending EEOC cases the option over
termination in a matter they knew it would be unable to sustain. My supervisor knew and
had given me permission to work outside of my 7:30 to 5:00 formal work hours.
Communications with my supervisor, the division chief, and the management official
were acknowledged and responded to with instruction and clarification of my
assignments after working hours (Tab 5 pg. 2-36).

8. Every term and condition of my involuntary retirement and involuntary suspension is
dictated with clarity in the EEOC Settlement document dated August 22, 2011 paragraph
2 and 3. As part of terms and conditions dictated by the Agency EEOC document, it
explicitly eliminated any possibility of reconsidering or renegotiating the involuntary
retirement. I was coerced to sign Part E of the Standard Form 52 and dated it August 16,
2011 so that the Agency could submit my resignation in case I did not retire on
September 4, 2012. Application of the reasonable person standard would suggest a
decision is involuntary if the person cannot reconsider the decision thereafter without
threat of adverse action as the opposing condition. There was nothing voluntary about
signing the Agency's August 22, 2011 EEOC document my retirement or 30-day
suspension. The Agency knowingly misrepresented the charges against me forcing me
into the decision to retire, forfeit the pending EEOC consolidated action or be terminated
(Tab 5 pg. 1-36); Heining v. General Services Administration.

9. To the contrary, I offered a reasonable and voluntary settlement for any negligence on
my part in not recording **approved** leave or verifying the accuracy of time and attendance
records in "My Response to the June 7, 2011 Proposal to Remove" (Tab 2 pg. 1). I was
**not** charged with AWOL, as my supervisor knew I was at the workplace during the
7:30am-5:00pm time, but for being "away from my desk" when I was primarily not at my
desk to manage the constant pain especially from sitting.

10. The charge of failing to follow supervisory order was orchestrated by Agency
Officials as my supervisor of record, Dale R. Reed, told me "they told me not to tell you"
after I received the proposed removal letter when I repeatedly asked him before I
received the Proposed Removal letter why after four years of being my supervisor was he
requiring me, a GS-14 Supervisory IT Specialist to sign-in when no other GS-14 or GS-
15 Supervisory IT Specialist was being required to sign-in. I continued to ask my
supervisor why he was starting a sign-in procedure and he refused to tell me. I never
refused to sign-in. While I was waiting for an answer every day from him, I received the
Proposed Removal. This is overtly disparate and retaliatory treatment and was initiated
for the sole purpose of creating the condition to secure a conduct charge to force
forfeiture of the pending EEOC matter and secure my termination, resignation, or
retirement destroying my career, my reputation, and 28 years and 9 months of superior
federal service and threatening to put me on the street without a job and an 11 year-old
child to take care of. The Agency cannot produce a prior disciplinary action against me
or sustain a defense against the actions it took against me. The working conditions since
December 2006 when I was removed from the position of Special Assistant to the
Division Chief, LTSO, I position I applied for and won on merit in competition with
other applicants in 2001, were nothing short of tortuous and continued until my

3

involuntary retirement, suspension, and other punitive measures were secured by the Agency in its EEOC settlement document of August 2011.

11. An email to the Deciding Official (Tab 2 pg. 6) indicates I requested a meeting to discuss the forced and involuntary retirement stating that I needed to stay past September. In the meeting Ms. Murphy told me that the retirement issue was settled and would not be reconsidered. If the decision to retire was voluntary, I should have been able to reconsider the decision as employees who truly decide to retire voluntarily are able to do.

12. There was never any misconduct on my part as Time and Attendance records were approved and certified by supervisor of record Dale R. Reed and the Division Chief, Patricia Musselman. Email communications from me to my supervisor, Dale Reed; division chief Patricia Musselman; and the Management Official, Brian E. McGrath show that they were aware and hence approved of my working hours which included evenings in the office and at home, weekends, and on my day off (Tab 5 pg. 2-36) and not necessarily to make up for the time I spent away from my desk managing the constant and severe hip and back pain each of them was aware of and my supervisor of record accommodated for years without requesting I get a formal reasonable accommodations approval. My disability was so obvious that I did not need to tell anyone who saw me walk. I occasionally had to use a cane.

13. I made repeated requests to be transferred out of the LTSO Division I was working in and those requests were repeatedly ignored or given comment without action (Tab 7 pg. 1-10). I was stuck in an overtly hostile environment with a non-competitively placed Division Chief and non-competitively placed Branch Chief who withheld work assignments, denied or delayed acting on training requests and repeatedly gave me unfair performance evaluations. Both Ms. Musselman and Mr. Reed had been named Responsible Management Officials in prior EEO actions. The EEOC settlement document included a transfer out from under Mr. Reed and Ms. Musselman. The Agency didn't see fit to move me out of this hostile environment in 2009 when I first requested ( Tab7 pg. 1-10) but it did reassign me as part of its EEOC settlement document.

14. In the specifications charged against me, there are 31 hours of legally allowable break-time every employee receives that is charged against me as misconduct, an intentional misrepresentation of the facts and information the Agency used against me to force my retirement and the forfeiture of my pending EEOC claims which were awaiting a decision by the Administrative Judge on my May 19, 2011 opposition to the Agency's motion for summary judgment (Tab 6 pg. 1). The EEOC agreement was secured by misinformation, misrepresentation and coercion using the threat of termination, and other elements that make the agreement invalid (Tab 1 pg. 1-18). Note that the document at Tab 1 pg. 21 from the management official orchestrating the entire conduct setup admits his pleasure of the disposition of the cases, primarily my pending EEOC actions although those actions were in its own settlement discussions with a proposed settlement agreement from me supposedly being considered. This was a bad faith act as was prior one noted in Tab 8 pg. 13 and Tab 6 pg. 27).

15. My supervisor approved one hour for lunch for all branch employees. See email that after I was charged with misconduct and requested leave for time around the lunch break,

4

my supervisor stated that I took too much leave because we get one hour for lunch (Tab 5 pg. 1). As a result, the specifications against me are overstated by an additional 31 hours. The remaining time I was managing the severe and constant pain my supervisors knew I was struggling with and Dale Reed accommodated or on approved sick leave for which I or the timekeeper may have unintentionally missed recording. Between 2009 and 2011, the agency has my time and attendance records that show I used more than 300 hours of sick leave managing my disability primarily and other injury including a workplace fall in 2006. At the same time and with management's approval, I worked outside of my normal 7:30 am-5:00 pm schedule to complete my work assignments on time and not necessarily to make up for time away from desk for which I was never paid (Tab 5 pg. 1-36).

16. Only two of the twelve Douglass Factors were given even a cursory consideration in the Proposed Removal or the EEOC document (length of service although misstated at 25 when I had 28 years and 9 months of federal service at the time of the charge) and, significantly, there are **no prior** disciplinary actions against me. Even if there was misconduct which the agency cannot sustain, the action imposed on me by the Agency's EEOC document was punitive, retaliatory, fraudulent with known misrepresentation of facts, discriminatory as it did not consider the near total impact my disability had on me being away from my desk.

17. No time was accounted for the disability accommodations provided by my supervisor of record in the proposed removal. It should be noted with emphasis that an employee that was not my supervisor and who had no knowledge of prior accommodations that had been made for my disability condition drafted, signed and submitted the June 7, 2011 Proposed Removal.

18. As my supervisor had made accommodations for me to manage my disability and to work after hours, the Agency should have given me notice that previously condoned activity is no longer condoned, giving me the opportunity to conform to any new rules. In this case, my supervisor should have directed me to the Disability Office. However, in my "Response to the June 7, 2011 Proposal to Remove, my supervisor of record told me he did not know anything about a reasonable accommodation. My supervisor should have also told me my work hours would no longer be flexible. He had told me around 2007-2008 that as long as I got the work done the deviations in my work schedule were no problem. The email communications to him outside of my 7:30 am-5:00 pm formal work time is evident he was aware and did not object.

19. The Agency committed a harmful procedural error by which the proposed removal would be decided by the Deciding Official but without prior and written notice the Agency presented its EEOC Settlement Document dated August 22, 2011 which it forced me to sign to prevent termination for charges it would not be able to sustain as presented in "My Response to the Proposed Removal" before the Deciding Official issued her decision in accordance with the statement under "Rights" in the Proposed Removal document that "As soon as possible after Ms. Murphy receives your reply, or after the ten (day) limit if you do not reply, you will receive a written decision from her".

20. My supervisor of record, Dale R. Reed knew of my lower back and hip osteoarthritis and related groin and buttock pain disability as indicated in the medical documents dated from 2006 submitted to the Disability Office in June 2011 and the June 13, 2011 "Request for Reasonable Accommodations" prior to the decision of the Deciding Official and the Agency EEOC Settlement document. The Reasonable Accommodation was **Approved** by the Disability Office after the Deciding Official's decision and the EEO Settlement document. The management and human resources official were aware that I had a pending request for reasonable accommodations pending.

21. In this matter, the reasonable person standard must be applied throughout and the totality of the conditions I faced until I was involuntarily retired must be considered.

22. Further, the conduct charged, without there being any supervisory intervention, notice, reprimand, letter of counseling, or other intermediate supervisor step to correct what were acceptable working arrangements albeit informal and having no prior discipline issue and informal accommodations made since 2007, should have also been considered in any action contemplated by the Agency.

**ORDER ON JUSRISDICTION OVER MIXED CASES**

23. I have not filed an appeal of the actions taken against me as a result of the Proposed Removal or the forced signing of the Agency EEOC settlement document  dated August 22, 2011 which included involuntary retirement, 30-day suspension and other adverse actions as I was told by the initial Union Representative that I would be terminated immediately had I taken this adverse action to the EEO Office, as I had done in the past (Tab 6 pg. 34-45). The agency committed disability discrimination in imposing an adverse action against me, forcing an involuntary retirement and the 30-day suspension without a hearing or providing me with the options guaranteed by due process. The claim of disability discrimination is intertwined with the adverse actions. The Agency has known of my disability since 2007 and my supervisor had made prior accommodations for me as stated above. The Proposed Removal, written by an employer that was not my first, second, or third line supervisor did not consider my disability in the time it charged me with being away from desk per my doctor's guidance nor did the Agency's EEOC settlement document. My doctor's direction for accommodation of 15 minute walking and stretching hourly was approved by the Disability Office. Both documents referred to my absence away from my desk as misconduct when the evidence I submit with this brief does not support the charges nor the penalty imposed, nor the forfeiture of the former pending EEOC consolidated claims the Agency included in its EEOC settlement document I was forced to sign or be terminated.

24. The Agency actions taken against me are continuing discriminatory actions taken against me and documented in the EEOC claims I was forced to forfeit as a result of the forced signing of the agreement or be terminated. It was known by management that I was suffering from a disability and that I had been seeing doctors for years. The doctor asked that I be accommodated for my disability and the request was approved prior to any decision related to the matters being appealed. Race, retaliation and age discrimination are factors in the actions taken against me as I complained, most recently,

in an email to the Director, U.S. Census Bureau in a June 6, 2011 email that young, less accomplished Caucasians have been repeatedly promoted past me and that I continue to be denied the opportunities provided to them(Tab 1 pg. 22). On June 7, 2011, I received the Proposed Removal letter (Tab 1 pg.1) .

## ORDER ON JURISDICTION OVER MATTERS PREVIOUSLY COVERED BY A SETTLEMENT AGREEMENT

25. Appealable adverse actions was taken against me forcing and involuntary retirement and a 30-day suspension without a hearing committing harmful procedural errors as I should have been informed that the involuntary retirement and the 30-day suspension was appealable to the MSPB. The agreement was secured by the Agency while I was under extreme duress, coercion, intentional fraud, misinformation and misrepresentation of the facts. The Agency dictated the terms and conditions of the Settlement Document under the threat of terminating me immediately or at any time in the future at its sole discretion if it determined that "additional misconduct" had been done, and secured the agreement using misinformation and knowingly misrepresented the facts of the charged conduct knowing it could not sustain the charges in the judiciary. The specifications of time away from desk are overstated by 62 hours minimally, 31 hours in two 15 minute breaks per day for every employee legally provided by law and supervisor provide 1 hour daily for lunch (Tab 5 pg. 1) and many other hours I worked with management's knowledge and approval **for which I received no pay** (Tab 5 pg. 1-36) .

26. This is a mixed action complaint and as the adverse action intertwined with disability discrimination is appealable to the board, the board has jurisdiction over this complaint to review (Caple v. United States Postal Service) as the signed EEOC Settlement document was secured by misinformation, coercion, duress, and misrepresentation of the facts knowing they could not be sustained at the judiciary. This was capricious and egregious retaliation and reprisal act against me for complaining about the race, age, retaliation, and hostility that I faced everyday primarily because I dared to compete for promotional positions I qualified for. A review of Tab 6 pg. 34-44 shows some of the discrimination complaints I have made, all with merit but blocked from adjudication by bad faith negotiations by the agency (Tab 6 pg. 27, Tab 8 pg. 13) just as the prior pending EEOC actions were blocked by the Agency produced EEOC Settlement document while in negotiation for those pending EEOC claims.

27. The statements in this document are true as I know them to be. Also true is the fact that the Agency was attempting to terminate me and put me on the street with an eleven year-old child without ever telling me or otherwise notifying me by any means that the accommodations that my supervisor of record, Dale R. Reed, had provided for me knowing about my disability as included in the attachments. I had not spoken of retirement to anyone at the Agency as an eleven year-old child is typically is the 7th or 8th grade and requires care that an fired and unemployed 56 year-old man is hardly able to provide. After 28 years and 9 months of untarnished and uncompromised service with repetitive superior performance until December 2006 when I was removed from the position of Special Assistant to the Division Chief, LTSO and unknowingly for many

years that my supervisor code of 2 was changed to a code 8 and then to a code of 4 which made me not similarly situated as the younger Caucasians I complained about in the email to the Director (Tab 1 pg. 22). This was one of the charges in the withdrawn OSC claim (see supporting documentation) because I feared the Agency would use it or anything it chose to terminate me for standing up against the discrimination targeted at me. I plan to re-file the OSC claim as it was being considered to be placed in the investigative unit before I withdrew it.

28. This EEOC Settlement Agreement of August 22, 2012 should be deemed invalid by the board. The management official for the pending and subsequently forfeited EEOC claims with the authority to settle or make a counterproposal and allow me to continue with my career just as he is continuing with his, admitting in his response to my thanks for letting me stay until September 2012 (before I worked through the trauma of what happened to me) as opposed to immediate termination as dictated in the EEOC agreement that "...I hope that the outcome will bring to close a very painful period" (Tab 1 pg. 21). Although the Deciding Official decided not to terminate, the Management Official at all times had the authority over the outcome of the termination action. The attachments will show I asked to participate in the organization and compete fairly for the same opportunities on merit that were given to others on other than merit as I believed in the Equal Opportunity Employer statement that is pinned on corkboards. See Tab 6 pg. 1-17 and prior electronic submission titled EEOC Document Re: Settlement Discussion.

Anthony W. Perry

Appellant

8

UNITED STATES DEPARTMENT OF COMMERCE
**U.S. Census Bureau**
Washington, DC 20233-0001

JUN 0 7 2011

**MEMORANDUM FOR**          Anthony W. Perry
                          Information Technology Specialist
                          Business Planning Staff
                          Lan Technology Support Office

**From:**                  Daren J. Gutschow
                          Assistant Division Chief
                          Telecommunications Office

**Subject:**               Proposed Removal

I propose to remove you from your position as an Information Technology (IT) Specialist, GS-2210-14/08, with the Business Planning Staff, Lan Technology Support Office (LTSO), of the U.S. Census Bureau (Census Bureau), and from the Federal service, no earlier than thirty (30) calendar days from the date you receive this notice for *Receipt of Pay For Time Not Worked* and *Failure to Follow Supervisory Directive*. I am proposing this action pursuant to Title 5, Code of Federal Regulations, Part 752, to promote the efficiency of the service.

**Background**

Your tour of duty is a 5-4/9 Alternative Work Schedule (AWS), Monday through Thursday, 9 hours and 30 minutes a day, 7:30am to 5:00pm, which includes a 30-minute non-paid lunch period mid-day, and therefore, you are to work for a total of 9 hours, unless you are on approved leave; and Friday, 7:30am to 11:30am, 4 hours a day, without a lunch period, and therefore, you are to work for a total of 4 hours, unless you are on approved leave. Under the 5-4/9 AWS, hours of work must fall between 7:00am and 6:30pm. You may deviate up to 30 minutes from your selected starting time without prior supervisory approval; however, such deviations should not be frequent. As an example, your tour of duty on a deviation day could be from 8:00am to 5:30pm. Your lunch period must fall between the hours of 11:00am and 2:00pm. The minimum increment for requesting and taking leave is 15 minutes. You are not authorized to telework and, therefore, would not be performing work from an alternate location.

**Reason(s) and Specification(s)**

**Reason 1: *Receipt of Pay for Time Not Worked***

Your failure to be present, located in the office on workdays, and missing mandatory meetings, created uncertainty regarding your time and attendance. Upon examination of your time and attendance records, and the Agency's badge trace monitor reports, for the period October 5, 2010, through April 21, 2011, it was revealed that you have received

pay for time that you did not work. In the following instances, you received pay for time not worked for more than 30 minutes:

*Specification 1:*   You attested to and received 6 hours of regular base pay for **Thursday, April 21, 2011**. On that date, you entered the facility at 7:51am, exited the facility at 11:51am, returned to the facility at 1:10pm, and departed at 1:43pm. Taking your lunch period and additional absence into account, your total work hours only amounted to 4 hours and 33 minutes. Therefore, you received approximately 1 hour and 27 minutes of pay for time that you did not work.

*Specification 2:*   You attested to and received 9 hours of regular base pay for **Wednesday, April 20, 2011**. On that date, you entered the facility at 8:04am, exited the facility at 11:37am, returned to the facility at 12:36pm, and departed at 4:42pm. Taking your lunch period into account, your total work hours only amounted to 7 hours and 39 minutes. Therefore, you received approximately 1 hour and 21 minutes of pay for time that you did not work.

*Specification 3:*   You attested to and received 9 hours of regular base pay for **Tuesday, April 19, 2011**. On that date, you entered the facility at 7:47am, exited the facility at 11:34am, returned to the facility at 1:15pm, and departed at 3:52pm. Taking your lunch period into account, your total work hours only amounted to 6 hours and 24 minutes. Therefore, you received approximately 2 hours and 36 minutes of pay for time that you did not work.

*Specification 4:*   You attested to and received 4 hours of regular base pay for **Friday, April 15, 2011**. On that date, you entered the facility at 8:29am and departed at 11:42am. Your total work hours only amounted to 3 hours and 13 minutes. Therefore, you received approximately 47 minutes of pay for time that you did not work.

*Specification 5:*   You received 4 hours of regular base pay for **Thursday, April 14, 2011**. On that date, you never reported for duty or entered the facility. Therefore, you received 4 hours of pay for time that you did not work.

*Specification 6:*   You attested to and received 8 hours of regular base pay for **Thursday, March 31, 2011**. On that date, you entered the facility at 8:29am and departed at 3:57pm. Taking your lunch period into account, your total work hours only amounted to 6 hours and 58 minutes. Therefore, you received approximately 1 hour and 2 minutes of pay for time that you did not work.

*Specification 7:*   You attested to and received 9 hours of regular base pay for **Wednesday, March 30, 2011**. On that date, you entered the facility at 8:29am, exited the facility at 12:34pm, returned to the facility at 2:15pm, and departed at 5:21pm. Taking your lunch period into account, your total work hours only amounted to 7 hours and 11 minutes. Therefore, you received approximately 1 hour and 49 minutes of pay for time that you did not work.

***Specification 8:***  You attested to and received 4 hours and thirty minutes of regular base pay for **Monday, March 28, 2011**. On that date, you entered the facility at 7:43am and departed at 11:41am. Your total work hours only amounted to 3 hours and 58 minutes. Therefore, you received approximately 32 minutes of pay for time that you did not work.

***Specification 9:***  You attested to and received 4 hours of regular base pay for **Friday, March 25, 2011**. On that date, you entered the facility at 8:09am and departed at 10:07am. Your total work hours only amounted to 1 hour and 58 minutes. Therefore, you received approximately 2 hours and 2 minutes of pay for time that you did not work.

***Specification 10:***  You attested to and received 5 hours of regular base pay and 4 hours of administrative pay for **Thursday, March 24, 2011**. On that date, you never reported for duty or entered the facility, and you never requested and received approval for administrative paid leave. Therefore, you received 9 hours of pay for time that you did not work.

***Specification 11:***  You attested to and received 9 hours of regular base pay for **Wednesday, March 23, 2011**. On that date, you entered the facility at 7:59am and departed at 4:54pm. Taking your lunch period into account, your total work hours only amounted to 8 hours and 25 minutes. Therefore, you received approximately 35 minutes of pay for time that you did not work.

***Specification 12:***  You attested to and received 4 hours of regular base pay for **Friday, March 18, 2011**. On that date, you entered the facility at 9:17am and departed the facility at 12:46pm. Your total work hours only amounted to 3 hours and 29 minutes. Therefore, you received approximately 31 minutes of pay for time that you did not work.

***Specification 13:***  You attested to and received 6 hours of regular base pay for **Tuesday, March 15, 2011**. On that date, you entered the facility at 8:29am, exited the facility at 11:26am, returned to the facility at 12:59pm, and departed at 2:35pm. Taking your lunch period into account, your total work hours only amounted to 4 hours and 33 minutes. Therefore, you received approximately 1 hour and 27 minutes of pay for time that you did not work.

***Specification 14:***  You attested to and received 9 hours of regular base pay for **Monday, March 14, 2011.** On that date, you entered the facility at 8:34am and departed at 11:29am. Taking your lunch period into account, your total work hours only amounted to 2 hours and 55 minutes. Therefore, you received approximately 6 hours and 5 minutes of pay for time that you did not work.

***Specification 15:***  You attested to and received 4 hours and 30 minutes of regular base pay for **Wednesday, March 9, 2011**. On that date, you entered the facility at 9:26am, exited the facility at 11:49am, returned to the facility at 1:11pm, exited the facility at 2:31pm, returned to the facility at 6:22pm and departed at 6:33 pm.

Taking your lunch period into account, your total work hours only amounted to 3 hours and 54 minutes. Therefore, you received approximately 36 minutes of pay for time that you did not work.

***Specification 16:*** You attested to and received 7 hours and 30 minutes of regular base pay for **Thursday, March 3, 2011.** On that date, you entered the facility at 1:29pm and departed at 5:12pm. Your total work hours only amounted to 3 hours and 43 minutes. Therefore, you received approximately 3 hours and 47 minutes of pay for time that you did not work.

***Specification 17:*** You received 4 hours of regular base pay for **Wednesday, February 23, 2011.** On that date, you entered the facility at 12:34pm, exited the facility at 1:12pm, entered the facility at 2:25pm, and departed at 5:16pm. Your total work hours only amounted to 3 hours and 29 minutes. Therefore, you received approximately 31 minutes of pay for time that you did not work.

***Specification 18:*** You received 9 hours of regular base pay for **Monday, February 14, 2011.** On that date, you entered the facility at 8:13am and departed at 5:07pm. Taking your lunch period into account, your total work hours only amounted to 8 hours and 24 minutes. Therefore, you received approximately 36 minutes of pay for time that you did not work.

***Specification 19:*** You received 4 hours of regular base pay for **Thursday, February 10, 2011.** On that date, you entered the facility at 12:04pm and departed at 3:22pm. Your total work hours only amounted to 3 hours and 18 minutes. Therefore, you received approximately 42 minutes of pay for time that you did not work.

***Specification 20:*** You received 4 hours of regular base pay for **Monday, February 7, 2011.** On that date, you entered the facility at 8:58am and departed at 12:10pm. Your total work hours only amounted to 3 hours and 12 minutes. Therefore, you received approximately 48 minutes of pay for time that you did not work.

***Specification 21:*** You received 4 hours of regular base pay for **Friday, February 4, 2011**. On that date, you never reported for duty or entered the facility. Therefore, you received 4 hours of pay for time that you did not work.

***Specification 22:*** You attested to and received 4 hours of regular base pay for **Wednesday, February 2, 2011.** On that date, you entered the facility at 8:32am and departed at 11:25am. Your total work hours only amounted to 2 hours and 53 minutes. Therefore, you received approximately 1 hour and 7 minutes of pay for time that you did not work.

***Specification 23:*** You attested to and received 4 hours of regular base pay for **Friday, January 21, 2011.** On that date, you entered the facility at 8:28am and departed at 11:20am. Your total work hours only amounted to 2 hours and 52

minutes. Therefore, you received approximately 1 hour and 8 minutes of pay for time that you did not work.

***Specification 24:*** You attested to and received 7 hours of regular base pay for **Tuesday, January 18, 2011.** On that date, you entered the facility at 12:46pm and departed at 6:11pm. Taking your lunch period into account, your total work hours only amounted to 4 hours and 55 minutes. Therefore, you received approximately 2 hours and 5 minutes of pay for time that you did not work.

***Specification 25:*** You received 9 hours of regular base pay for **Monday, January 10, 2011.** On that date, you entered the facility at 8:34am and departed at 12:41pm. Your total work hours only amounted to 4 hours and 7 minutes. Therefore, you received approximately 3 hours and 53 minutes of pay for time that you did not work.

***Specification 26:*** You attested to and received 4 hours of regular base pay for **Tuesday, January 4, 2011.** On that date, you entered the facility at 8:52am and departed at 11:45am. Your total work hours only amounted to 2 hours and 53 minutes. Therefore, you received approximately 1 hour and 7 minutes of pay for time that you did not work.

***Specification 27:*** You attested to and received 6 hours of regular base pay for **Monday, January 3, 2011.** On that date, you entered the facility at 8:07am, and departed at 1:30pm. Your total work hours only amounted to 5 hours and 23 minutes. Therefore, you received approximately 37 minutes of pay for time that you did not work.

***Specification 28:*** You received 2 hours of regular base pay for **Thursday, December 23, 2010**. On that date, you never reported for duty or entered the facility. Therefore, you received 2 hours of pay for time that you did not work.

***Specification 29:*** You attested to and received 4 hours of regular base pay for **Monday, December 20, 2010.** On that date, you entered the facility at 7:56am and departed at 11:17am. Your total work hours only amounted to 3 hours and 21 minutes. Therefore, you received approximately 39 minutes of pay for time that you did not work.

***Specification 30:*** You attested to and received 4 hours and 30 minutes of regular base pay for **Thursday, December 16, 2010**. On that date, you entered the facility at 8:43am and departed at 12:13pm. Your total work hours only amounted to 3 hours and 30 minutes. Therefore, you received approximately 1 hour of pay for time that you did not work.

***Specification 31:*** You attested to and received 9 hours of regular base pay for **Wednesday, December 15, 2010**. On that date, you never reported for duty or entered the facility. Therefore, you received 9 hours of pay for time that you did not work.

*Specification 32:*   You attested to and received 9 hours of regular base pay for **Monday, December 13, 2010.** On that date, you entered the facility at 8:05am and departed at 8:13am. Your total work hours only amounted to 8 minutes. Therefore, you received approximately 8 hours and 52 minutes of pay for time that you did not work.

*Specification 33:*   You attested to and received 7 hours of regular base pay for **Thursday, December 9, 2010.** On that date, you entered the facility at 9:12am, exited the facility at 12:34pm, returned to the facility at 2:08pm, and departed at 4:52pm. Taking your lunch period into account, your total work hours only amounted to 6 hours and 6 minutes. Therefore, you received approximately 54 minutes of pay for time that you did not work.

*Specification 34:*   You attested to and received 4 hours of regular base pay for **Wednesday, December 8, 2010**. On that date, you entered the facility at 8:21am and departed at 11:12am. Your total work hours only amounted to 2 hours and 51 minutes. Therefore, you received approximately 1 hour and 9 minutes of pay for time that you did not work.

*Specification 35:*   You attested to and received 4 hours of regular base pay for **Tuesday, December 7, 2010**. On that date, you entered the facility at 8:14am and departed at 11:19am. Your total work hours only amounted to 3 hours and 5 minutes. Therefore, you received approximately 55 minutes of pay for time that you did not work.

*Specification 36:*   You attested to and received 9 hours of regular base pay for **Monday, December 6, 2010.** On that date, you entered the facility at 7:49am, exited the facility at 11:58am, returned to the facility at 1:58pm, and departed at 5:06pm. Taking your lunch period into account, your total work hours only amounted to 7 hours and 17 minutes. Therefore, you received approximately 1 hour and 43 minutes of pay for time that you did not work.

*Specification 37:*   You received 9 hours of regular base pay for **Thursday, December 2, 2010.** On that date, you entered the facility at 7:58am, exited the facility at 11:28am, returned to the facility at 1:56pm, and departed at 5:35pm. Taking your lunch period into account, your total work hours only amounted to 7 hours and 9 minutes. Therefore, you received approximately 1 hour and 51 minutes of pay for time that you did not work.

*Specification 38:*   You received 9 hours of regular base pay for **Wednesday, December 1, 2010.** On that date, you entered the facility at 7:58am, exited the facility at 12:04pm, returned to the facility at 1:52pm, and departed at 4:57pm. Taking your lunch period into account, your total work hours only amounted to 7 hours and 11 minutes. Therefore, you received approximately 1 hour and 49 minutes of pay for time that you did not work.

***Specification 39:***   You attested to and received 9 hours of regular base pay for Tuesday, November 30, 2010. On that date, you entered the facility at 8:18am, exited the facility at 11:27am, returned to the facility at 1:23pm, and departed at 4:53pm. Taking your lunch period into account, your total work hours only amounted to 6 hours and 39 minutes. Therefore, you received approximately 2 hours and 21 minutes of pay for time that you did not work.

***Specification 40:***   You attested to and received 9 hours of regular base pay for Monday, November 29, 2010. On that date, you entered the facility at 7:59am, exited the facility at 11:47am, returned to the facility at 1:23pm, and departed at 5:00pm. Taking your lunch period into account, your total work hours only amounted to 7 hours and 25 minutes. Therefore, you received approximately 1 hour and 35 minutes of pay for time that you did not work.

***Specification 41:***   You attested to and received 5 hours of regular base pay for Thursday, November 18, 2010. On that date, you entered the facility at 8:12am, and departed at 11:48am. You returned after work hours at 8:04pm, and departed at 8:17pm, which was not authorized hours of work. Your total work hours only amounted to 3 hours and 36 minutes. Therefore, you received approximately 1 hour and 24 minutes of pay for time that you did not work.

***Specification 42:***   You attested to and received 9 hours of regular base pay for Tuesday, November 16, 2010. On that date, you entered the facility at 8:20am and departed at 4:41pm. Taking your lunch period into account, your total work hours only amounted to 7 hours and 51 minutes. Therefore, you received approximately 1 hour and 9 minutes of pay for time that you did not work.

***Specification 43:***   You attested to and received 5 hours of regular base pay for Friday, November 12, 2010. On that date, you entered the facility at 8:18am, exited the facility at 11:50am, returned to the facility at 12:39pm, and departed at 12:48pm. Taking your lunch period into account, your total work hours only amounted to 3 hours and 41 minutes. Therefore, you received approximately 1 hour and 19 minutes of pay for time that you did not work.

***Specification 44:***   You attested to and received 9 hours of regular base pay for Wednesday, November 10, 2010. On that date, you entered the facility at 7:57am, exited the facility at 11:37am, returned to the facility at 1:54pm, and departed at 4:28pm. Taking your lunch period into account, your total work hours only amounted to 6 hours and 14 minutes. Therefore, you received approximately 1 hour and 46 minutes of pay for time that you did not work.

***Specification 45:***   You attested to and received 9 hours of regular base pay for Tuesday, November 9, 2010. On that date, you entered the facility at 7:48am and departed at 4:41pm. Taking your lunch period into account, your total work hours only amounted to 8 hours and 23 minutes. Therefore, you received approximately 36 minutes of pay for time that you did not work.

*Specification 46:*  You attested to and received 9 hours of regular base pay for Monday, November 8, 2010.  On that date, you entered the facility at 7:42am, exited the facility at 1:03pm, returned to the facility at 2:46pm, and departed at 4:25pm.  Taking your lunch period into account, your total work hours only amounted to 7 hours.  Therefore, you received approximately 2 hours of pay for time that you did not work.

*Specification 47:*  You attested received 3 hours of regular base pay for **Friday, November 5, 2010.**  On that date, you entered the facility at 8:32am and departed at 10:44am.  Your total work hours only amounted to 2 hours and 12 minutes.  Therefore, you received approximately 48 minutes of pay for time that you did not work.

*Specification 48:*  You attested to and received 9 hours of regular base pay for **Thursday, November 4, 2010.**  On that date, you entered the facility at 8:06am and departed at 5:02pm.  Taking your lunch period into account, your total work hours only amounted to 8 hours and 26 minutes. Therefore, you received approximately 34 minutes of pay for time that you did not work.

*Specification 49:*  You attested to and received 9 hours of regular base pay for **Wednesday, November 3, 2010.**  On that date, you entered the facility at 8:14am and departed at 4:50pm.  Taking your lunch period into account, your total work hours only amounted to 8 hours and 6 minutes. Therefore, you received approximately 54 minutes of pay for time that you did not work.

*Specification 50:*  You attested to and received 9 hours of regular base pay for **Tuesday, November 2, 2010.**  On that date, you entered the facility at 8:46am, exited the facility at 11:49am, returned to the facility at 1:40pm, and departed at 4:03pm.  Taking your lunch period into account, your total work hours only amounted to 5 hours and 26 minutes. Therefore, you received approximately 3 hours and 34 minutes of pay for time that you did not work.

*Specification 51:*  You attested to and received 9 hours of regular base pay for **Thursday, October 28, 2010.**  On that date, you entered the facility at 8:14am, exited the facility at 11:09am, returned to the facility at 2:40pm, exited the facility at 3:05pm, returned to the facility at 4:16pm, and departed at 5:07pm. Taking your lunch period into account, your total work hours only amounted to 4 hours and 11 minutes.  Therefore, you received approximately 4 hours and 49 minutes of pay for time that you did not work.

*Specification 52:*  You attested to and received 9 hours of regular base pay for **Wednesday, October 27, 2010**.  On that date, you entered the facility at 8:04am, exited the facility at 11:31am, returned to the facility at 1:10pm, and departed at 5:07pm. Taking your lunch period into account, your total work hours only amounted to 7 hours and 24 minutes. Therefore, you received approximately 1 hour and 36 minutes of pay for time that you did not work.

*Specification 53:*   You attested to and received 9 hours of regular base pay for Tuesday, October 26, 2010. On that date, you entered the facility at 8:17am, exited the facility at 11:41am, returned to the facility at 12:51pm, and departed at 5:32 pm. Taking your lunch period into account, your total work hours only amounted to 8 hours and 5 minutes. Therefore, you received approximately 55 minutes of pay for time that you did not work.

*Specification 54:*   You attested to and received 4 hours and 30 minutes of regular base pay for **Monday, October 25, 2010.** On that date, you entered the facility at 7:44am, exited the facility at 10:09am, returned to the facility at 10:53am (absence of 44 minutes), and departed at 11:34am. Your total work hours only amounted to 3 hours and 6 minutes. Therefore, you received approximately 1 hour and 24 minutes of pay for time that you did not work.

*Specification 55:*   You attested to and received 9 hours of regular base pay for **Thursday, October 21, 2010.** On that date, you entered the facility at 7:46am, exited the facility at 8:33am, returned to the facility at 12:41pm, and departed the facility at 4:38pm. Taking your lunch period into account, your total work hours only amounted to 4 hours and 44 minutes. Therefore, you received approximately 4 hours and 16 minutes of pay for time that you did not work.

*Specification 56:*   You received 9 of regular base pay for **Wednesday, October 20, 2010**. On that date, you entered the facility at 7:53am, exited the facility at 12:06pm, returned to the facility at 1:46pm, and departed at 4:34 pm. Taking your lunch period into account, your total work hours only amounted to 7 hours and 1 minute. Therefore, you received approximately 1 hour and 59 minutes of pay for time that you did not work.

*Specification 57:*   You attested to and received 9 hours of regular base pay for **Tuesday, October 19, 2010**. On that date, you entered the facility at 8:14am and departed at 4:49pm. Taking your lunch period into account, your total work hours only amounted to 8 hours and 5 minutes. Therefore, you received approximately 55 minutes of pay for time that you did not work.

*Specification 58:*   You attested to and received 4 hours of regular base pay for **Friday, October 15, 2010.** On that date, you entered the facility at 8:23am and departed at 11:36am. Your total work hours only amounted to 3 hours and 13 minutes. Therefore, you received approximately 47 minutes of pay for time that you did not work.

*Specification 59:*   You attested to and received 9 of regular base pay for **Thursday, October 14, 2010**. On that date, you entered the facility at 7:31am, exited the facility at 12:52pm, returned to the facility at 1:34pm, and departed at 4:18pm. Taking your lunch period into account, your total work hours only amounted to 8 hours and 5 minutes. Therefore, you received approximately 55 minutes of pay for time that you did not work.

_**Specification 60:**_   You attested to and received 9 of regular base pay for **Wednesday, October 13, 2010**. On that date, you entered the facility at 8:07am, exited the facility at 10:07am, returned to the facility at 10:50am (absence of 43 minutes), exited the facility at 11:26am, returned to the facility at 1:20pm, and departed at 4:26pm. Taking your lunch period into account, your total work hours only amounted to 5 hours and 42 minutes. Therefore, you received approximately 3 hours and 18 minutes of pay for time that you did not work.

_**Specification 61:**_   You attested to and received 9 of regular base pay for **Tuesday, October 12, 2010**. On that date, you entered the facility at 7:52am, exited the facility at 11:23am, returned to the facility at 2:59pm, and departed at 4:35pm. Taking your lunch period into account, your total work hours only amounted to 5 hours and 7 minutes. Therefore, you received approximately 3 hours and 53 minutes of pay for time that you did not work.

_**Specification 62:**_   You attested to and received 9 of regular base pay for **Tuesday, October 5, 2010**. On that date, you entered the facility at 8:17am, exited the facility at 12:21pm, returned to the facility at 1:52pm, and departed at 3:33pm. Taking your lunch period into account, your total work hours only amounted to 5 hours and 45 minutes. Therefore, you received approximately 3 hours and 15 minutes of pay for time that you did not work.

**Reason 2:** _**Failure to Follow Supervisory Directive**_

On April 13, 2011, Dale R. Reed, Chief, Business Planning (BP) Staff, sent an email to the entire BP staff entitled "AWS attendance log." This email directed all BP staff to begin using the 'Alternative Work Schedule Attendance Log' on Monday, April 18, 2011, and provided a location of the sign-in/out attendance log. The email further stated that while AWS is an alternative work schedule, completing the sign-in/out attendance log was not an alternative, and specifically stated "…it's mandatory." During the period of April 18, 2011, through May 12, 2011, you failed to follow Mr. Reed's directive as follows:

_**Specification 1:**_   On April 18, 2011, you failed to sign-in and out on the attendance log, as directed.

_**Specification 2:**_   On April 19, 2011, you failed to sign-in and out on the attendance log, as directed.

_**Specification 3:**_   On April 20, 2011, you failed to sign-in and out on the attendance log, as directed.

_**Specification 4:**_   On April 21, 2011, you failed to sign-in and out on the attendance log, as directed.

On April 26, 2011, Mr. Reed again informed you of his directive regarding the requirement to sign-in/out on the attendance log.

_10_

*Specification 5:* On April 26, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 6:* On April 28, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 7:* On April 29, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 8:* On May 4, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 9:* On May 5, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 10:* On May 6, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 11:* On May 9, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 12:* On May 12, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 13:* On May 13, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 14:* On May 19, 2011, you failed to sign-in and out on the attendance log, as directed.

*Specification 15:* On May 20, 2011, you failed to sign-in and out on the attendance log, as directed.

## Considerations

Employees must only receive pay for time that they actually work. I find that you received pay for time that you did not work in each of the specifications outlined above for a total of approximately 133 hours and 35 minutes. At your hourly rate of pay, $62.17, this amounts to you receiving roughly $8,965 dollars in pay for time that you did not work. Further, you failed to follow supervisory directives on numerous occasions, despite the fact that your supervisor reiterated the directive again when it was clear that you were failing to comply initially. Your misconduct has adversely impacted the Agency and will not be tolerated. Repeatedly accepting payment for time not worked, misrepresenting your work hour commitments and failing to follow supervisory directives raises questions about your integrity and reliability.

This kind of impropriety is detrimental to the image of the Census Bureau. Providing erroneous information, failing to properly request and modify your time and attendance information and failing to follow reasonable supervisory directives is unacceptable behavior for any Census Bureau employee and violates the core value of our mission. In fact, even one false representation regarding data of any kind is grounds for immediate removal from the Census Bureau. Your time and attendance practices, including your failure to follow your Branch Chief's directives to sign-in/out, call in to serious question your trustworthiness and judgment. You have been an employee since December 16, 1984, and you know, or should have known, that the Census Bureau does not tolerate such misconduct.

The Census Bureau must maintain a workforce of employees who possess unusually high standards of trust, confidentiality, integrity, and conduct. This will, in turn, affirm the confidence and trust of the citizens of the United States and promote the public release of information to us that is vital to our activities.

In proposing this action, I have considered your twenty-six (26) years of service with the Census Bureau, that you have had no previous disciplinary actions, and that your performance has been satisfactory. However, due to the egregiousness and repetitive nature of your conduct, your reliability and professionalism is now in question. Your misconduct has caused a loss of trust in you and your ability to reliably perform the high-level duties of your position. As a GS-14, your actions should be beyond reproach. The nature of your misconduct is so serious that I find that there is no alternative that would be adequate and effective under the circumstances but to propose your removal from your position as an IT Specialist and from the Federal service. Therefore, I am proposing to remove you from your position and Federal service to promote the efficiency of the service.

## Rights

You have the following rights in connection with the proposed action:

1. To Reply:

    You may reply to this proposed notice of removal orally, in writing, or both. You should make any written reply to Terryne Murphy, Chief, Information Systems Support and Review Office, at the following address:

    U.S. Census Bureau
    Information Systems Support and Review Office
    4600 Silver Hill Road, 3J436
    Washington, DC 20233-1400

    Should you wish to make an oral reply, you may arrange an appointment by calling Ms. Murphy at (301) 763-6845.

You also may submit affidavits and other documentary evidence in support of your reply. You will be allowed ten (10) working days from the date you receive this notice to submit your written reply or to make an oral reply. If you need an extension of the time limit to reply, you may submit a written request with the reasons for it to Ms. Murphy.

If you have a medical condition that you wish the Agency to consider before reaching a decision in this case, you may raise it in connection with your reply. However, any such claim must be supported by medical documentation that shows a causal connection between a medical condition and the above described misconduct.

Ms. Murphy will give full consideration to any reply that you submit.

2. To Be Represented:

You are entitled to be represented by an attorney or other representative in this matter. Both you and your representative must complete and sign the enclosed statement and return it to Ms. Murphy at the address given above.

3. To Review Material:

You and/or your representative may review all of the material relied on to support the reasons contained in this notice. You may arrange to do so by contacting Stacy J. Chalmers, Chief, Employee Relations Branch, Human Resources Division, at (301) 763-1463.

4. To Use Official Time:

If you are in duty status, you may use a reasonable amount of official time to review the supporting material, secure affidavits or other evidence, and to reply to this proposal. However, you will not be reimbursed for any mileage or other expenses you incur. Arrangements for the use of official time should be made through Ms. Murphy.

As soon as possible after Ms. Murphy receives your reply, or after the ten (10) day limit if you do not reply, you will receive a written decision from her.

If you have any questions about the contents of this proposal notice or your rights in connection with it, you may call Ms. Chalmers at (301) 763-1463.

Enclosure

**From:**   Anthony W Perry/LTSO/HQ/BOC
**To:**   Robert M Groves/DIR/HQ/BOC@BOC
**Cc:**   Anthony W Perry/LTSO/HQ/BOC

**Date:**   Monday, June 06, 2011 10:45AM
**Subject:**

History:   " This message has been forwarded.

---

Dr. Groves,

as I have communicated with you in the past about the years of discriminatory management practices in the IT Directorate under Rick Swartz, Tom Meerholz and others in that circle, I continue to suffer from those discriminatory actions as young Caucasian employees barely 40 and with more or less entry level qualifications have been promoted to Assistant Division Chief and Division Chief in the LTSO Directorate. I was explicitly denied the opportunities given them and used to justify their promotions.

I and others who are reluctant to speak out remain tremendously injured by the discriminatory behavior and the remnants of what they left in place using noncompetitive promotions and reassignments to maintain the subordination of senior college educated, two master degrees in my case, African American employees in much of the IT Directorate. In recent IT announcements I have noticed that education is de-valued in the selection criteria for promotions to the GS-14 and GS-15. When African Americans are denied the opportunity for detail assignments or participation on high profile teams, we will continue to not be promoted to senior leadership positions.

In my case, I was targeted by Tom Meerholz in collaboration with HRD to keep vacant positions that were planned to be competed in 2002. Those positions were ultimately filled in 2008 by barely 40 year old employees and 4 months later the division chief position was non-competitively filled via a reassignment.   Opportunities given to them were repeatedly denied me for two reasons and two reasons only. Race and age discrimination.    And the agency allowed this to happen all the while I was asking HRD for help in having the situation addressed.

I have told you before, but I don't want you or anyone else to forget about this. Me and my family, as has happened to others before me, have been injured irreversibly because of bigotry and the other isms some with power impose on those without it.

Tony Perry

Executive Leadership Development Program Graduate
DCS 2000 Project Manager and other accomplishments since 2002 deemed not good enough for an opportunity to work at the next level.

FAX Attach 12 - P1

22

Appeal Number 201   EXHIBIT K Pg. JA64

To:     Terryne Murphy, Chief ISSRO

From:   Anthony W. Perry, IT Specialist

CC:     Johnny Zuagar, President AFGE Local

Date:   6/30/2011

Re:     Response to the June 7, 2011 Proposal to Remove

Ms. Murphy,

Attached is my response to the June 7, 2011 Proposal to Remove me from Federal Service. Also
included are confidential medical documents and reference materials that might be of assistance to
you as you consider your decision.

Sincerely,

Anthony W. Perry

EXHIBIT 1 Pg. JA65

Appeal Number 2012

Anthony Perry

**Response to June 7, 2011 Proposal to Remove**

I.      **Response to Specifications**

A. Receipt of Pay for Time Not Worked: Specifications 1-4, 6-9, 11-15, 17-20, 22-27, 29-30, 33-62 are due to my walking, stretching, and exercise outside of the building to manage my osteoarthritic left hip and hip joint, degenerative osteoarthritis in my lower left back (L1 and L2), and my left knee and joint. The disability prevents me from prolonged sitting. My supervisor has been aware of my health issues since 2007 and told me to "do what I needed to do" when I told him I needed to walk and stretch for relief of my knee and then later my hip and back several years ago. I believed that to be an informal accommodation for my problem. I was never told that the informal accommodation had changed.

My supervisor and I passed each other on numerous occasions and many times entering and exiting the building, him to smoke and me to walk or otherwise stretch my hip, groin and back. No conditions or constraints or guidelines were placed on me by my supervisor on what I could or could not do at the workplace to manage my disability.

I did not know nor was I told that I could request a reasonable accommodation from the Disability Program Office which would have provided the guidelines for how to manage my injuries. After receipt of the "proposal to remove", I asked my supervisor about the accommodations program. He told me he was unaware of the Reasonable Accommodations Program. I have applied for the accommodation since receipt of the proposal.

I was not told that walking outside of the building creates a different accountability than walking inside otherwise I would have complied with those guidelines or walked inside the building. Exhibit A is part of my medical records and show my disabilities and measures advised to manage the pain and discomfort. The specifications show about 50 hours of walking and stretching outside of the building over the period from October 2010 through April 2011. The Disability Program Office has additional medical documentation.

B. Specifications 1-3, 13, 36-40, 42, 46, 50-51, 52, 56, 60, and 62 are due to a combination of walking and extended lunch periods. The walking time is discussed in the specifications above. When going out for lunch, sometimes I took an hour for lunch. The specifications show about 20 hours of extended lunchtime over the period from October 2010 through April 2011. General Bureau accepted practice is one hour for lunch and two 15 minute breaks per day. This time was not accounted for in the specifications.

Some of the extended time taken outside of the building was also to deal with the emotional and physical stress of at least six years of EEO struggles with the agency. I attempted to represent myself and I would work on aspects of those actions in my car.

C. Specifications 3, 5, 9-10, 14, 16, 21, 24-25, 28, 31, 34, 41, 51, and 55, is the remaining general category. My supervisor was aware when I was out of the office on leave or leaving the workplace for the hours stated in these specifications. Some of these hours were spent reclining in my car to help relieve back and hip pain. In a recent conversation with my supervisor he said and I agreed that these times when leave was not recorded are due to failed communications between me and my supervisor in the leave request process, change in work schedule (worked

1  2

on days leave was taken and on leave days I worked), not remembering to complete request afterwards, or not remembering to correct time and attendance for leave taken. No personal gain was ever intended.   Approximately 50 hours of time are accounted for in these specifications.

D. Missed Meetings

I attended all meetings that I was physically and emotionally able to attend.  I was not emotionally or physically prepared to resume attendance when re-invited as I had been frequently out of the office sick during some of that time. My supervisor never objected or took any action against me for not attending and I believe modified expectations accordingly.

E. Reason 2: Failure to Sign-in

After the initial request to sign-in, I requested an explanation from my supervisor regarding the change in procedure from the prior three years when no sign-in was required. My supervisor refused to provide any feedback nor did he pursue this matter in any manner with me until after I received the "proposal to remove". I inquired of my supervisor again and at that time he stated a purpose for the changed procedure after which I started to sign the log provided.

**II.        Douglas Factors**

Eight of the twelve Douglas Factors are included for reference. They provide considerations that should be taken into account when deciding whether any action should be taken and the determination of what is the appropriate penalty.  The factors that I believe are most relevant are:

- The employee's past disciplinary record;

- The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

- The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties

- Consistency of penalty with those imposed upon other employees for  the same or similar offenses;

- The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

- Potential for employee's rehabilitation;

- Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems; mental impairment; harassment; or bad faith, malice or provocation on the part of others involved in the matter;

2   3

Case 1:17-cv-01932-TSC Document 30-4 Filed 11/19/18 Page 48 of 424
USCA Case #14-1156 Document #1537564 Filed: 02/13/2015 Page 69 of 596

**EXHIBIT 1 Pg. JA67**

- The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

### III. Mitigating Circumstances and General Considerations

A. I have a total of **29 plus years of exemplary service. Not a single performance or conduct issue prior** to this action. I have received an individual and group bronze medal award, and was the project manager for the 2000 Census Data Capture System. However, for the last 6 years I have been involved in an intense EEO struggle with the Census Bureau IT Management staff as well as facing serious health issues. These two situations have had a tremendous impact on my finances, family, overall quality of life, and normal tour of duty expectations at work.

B. The charged conduct is near totally due to my disability and the management of the continuous pain and discomfort. As a result of my disability (degenerative osteoarthritis) and emotional health issues, I walk daily at work and home and there were times when I was and am physically unable to come to work. My supervisor was aware of this and made informal accommodations. **My medical condition was not taken into account when arriving at the penalty proposed and should have been entitled to *"considerable weight as a mitigating factor"*** (See Exhibit B. Request for Reasonable Accommodations; additional medical records are available in the Disability Program Office).

During the time in question in this proposal, **my supervisor certified my time and attendance records and did not raise with me that there was a discrepancy.** There was never an attempt by me for personal gain from any of these incidents.

C. Long periods during the day outside of the lunch hour or part of it were doctor appointments or trying to relieve pain. I did not leave the worksite for reasons other than lunch and approved leave (verbal or written) and doctor appointments for me or my child. The leave request process was flexible. That is why on occasion some specifications show me returning. I wouldn't have returned if personal gain was being sought. **My supervisor was notified when I left the workplace during working hours or when I was not able to come to work.**

D. The intention of punishment is to correct behavior.

E. The Agency failed to notify me that my supervisor's prior accommodations for me were no longer going to be provided. Had I known, I would have pursued the accommodations provided by the Disability Office.

F. It is an established and accepted practice of granting employees one hour for lunch and two 15 minute breaks per day. I was charged with overextended lunch without a warning that the previously condoned activity of taking an hour for lunch is no longer condoned never giving me an opportunity to conform to the new rule.

G. There was no clarity of notice provided to me that I was violating any rules or no corrective action had been taken against me about any conduct in the proposal.

3  4

Case 1:17-cv-01932-TSC   Document 30-4-8   Filed 11/19/18   Page 49 of 424
USCA Case #14-1155   Document #1537564   Filed: 02/13/2015   Page 70 of 596

**EXHIBIT 1  Pg. JA68**

An environment has been created in which I am suspicious and hypersensitive to any of my supervisor's action directed at me or purported to be to my benefit because of my years of EEO struggles.

**V.    Summary**

In light of this response to the "proposal to remove", I believe an alternative corrective punishment is appropriate and repayment for time the agency deems is warranted . I have tried to present with clarity that my disability or other related illness, which I didn't talk about or make a big deal about because of the personal nature of the matter, is the reason for nearly all of the time I am charged with being away from my desk. The other time is attributable to extra time taken around the lunch hour during the period of October 2010 and April 2011.

Since 2007 my supervisor has been aware of my degenerative disability and the impact it had and has on my performance and attendance. Additionally, my supervisor never once brought to my attention or took an intermediate or corrective disciplinary action against me in relation to any of the specifications and therefore I was never given a chance to correct my behavior.

Considering the above and the following considerations:

1. my 29 plus years of exemplary service
2. clean disciplinary record prior to this event
3. this incident will have a minimal impact on my ability to perform going forward
4. the lack of any corrective supervisory action against me communicating that I was committing any offense
5. I have been signing in as my supervisor explained the reason for it after I received the proposal and I have continued to work on the storage consolidation team
6. I have since been reassigned work tasks that I am willing to work through with my supervisor
7. Unusual job tensions caused by years of EEO struggle.
8. The Agency proposed sanctions is excessive.

**VI.    Settlement Offer**

I would like to propose a settlement with the agency that would allow me a clean start to focus on my work, my health and my family. I would like to propose:

1. The Agency withdraw the proposed dismissal

2. Employee will agree to the following:

   a. Accept a 14-day suspension without pay
   b. Repay the portion of hours the Agency deems warranted for not being at my desk
   c. Follow the Reasonable Accommodations guidelines when approved

**From:** anthony.w.perry <anthony.w.perry@census.gov>
  **Bcc:** tonywpy@aol.com
**Subject:** Fw: Re: Early Out
  **Date:** Mon, Apr 2, 2012 2:14 pm

-----Forwarded by Anthony W Perry/ISSRO/HQ/BOC on 04/02/2012 09:18AM -----

To: Terryne F Murphy/ISSRO/HQ/BOC@BOC
From: Anthony W Perry/ISSRO/HQ/BOC
Date: 03/28/2012 02:31PM
Subject: Re: Early Out

Terryne, honestly I need and want to stay several years past September. I want to include in the discussion Fiday.

-----Terryne F Murphy/ISSRO/HQ/BOC wrote: -----

To: Anthony W Perry/ISSRO/HQ/BOC@BOC
From: Terryne F Murphy/ISSRO/HQ/BOC
Date: 03/28/2012 12:31PM
Cc: Michael Torres/ISSRO/HQ/BOC@BOC
Subject: Re: Early Out

Okay.  How about Friday?


Warm regards,
Terryne

------------------------------------
Terryne F. Murphy
Chief, ISSRO
U.S. Census Bureau
301.763.6845 (Office)


-----Anthony W Perry/ISSRO/HQ/BOC wrote: -----

To: Terryne F Murphy/ISSRO/HQ/BOC@BOC
From: Anthony W Perry/ISSRO/HQ/BOC
Date: 03/28/2012 12:29PM
Cc: Michael Torres/ISSRO/HQ/BOC@BOC
Subject: Re: Early Out

Hi Terryne,

I would like to discuss.

TP

-----Terryne F Murphy/ISSRO/HQ/BOC wrote: -----

To: Anthony W Perry/ISSRO/HQ/BOC@BOC

From: Terryne F Murphy/ISSRO/HQ/BOC
Date: 03/28/2012 12:23PM
Cc: Michael Torres/ISSRO/HQ/BOC@BOC
Subject: Re: Early Out

If you'd like to discuss, please feel free.  No worries, if not.

Warm regards,
Terryne

----------------------------------

Terryne F. Murphy
Chief, ISSRO
U.S. Census Bureau
301.763.6845 (Office)


-----Anthony W Perry/ISSRO/HQ/BOC wrote: -----

To: Terryne F Murphy/ISSRO/HQ/BOC@BOC, Michael Torres/ISSRO/HQ/BOC@BOC
From: Anthony W Perry/ISSRO/HQ/BOC
Date: 03/28/2012 11:55AM
Subject: Early Out

Hi everyone,

I just called HRD to see if I can retire under the early out.

Tony

UNITED STATES DEPARTMENT OF COMMERCE
Economics and Statistics Administration
U.S. Census Bureau
Washington, DC 20233-0001

August 26, 2011

**MEMORANDUM FOR**    Anthony W. Perry
Information Technology Specialist
Business Planning Staff
Lan Technology Support Office

**From:**    Terryne F. Murphy
Chief, Information Systems Support and Review Office

**Subject:**    Proposed Removal Decision

By letter dated June 7, 2011, Daren J. Gutschow, Assistant Division Chief,
Telecommunications Office, U.S. Census Bureau, informed you that he proposed to
remove you from your position as an Information Technology (IT) Specialist, GS-2210-
14/08, with the Business Planning Staff, Lan Technology Support Office, and from the
Federal service, no earlier than 30 calendar days after your receipt of the proposal notice,
for inappropriate conduct.

In the proposal notice dated June 7, 2011, you were informed of your right to reply to the
proposal notice orally, in writing, or both. You requested an extension to the reply period,
which was granted until close of business July 1, 2011. On June 15, 2011, you stopped by
my office for an impromptu meeting. On June 16, 2011, a formal meeting was held with
you and your former designated representative, Franklin D. Silberstein, during which you
provided an oral response. On June 30, 2011, I received a written reply from you and your
newly designated representative, Johnny T. Zuagar.

After full consideration of the information available to me, including your oral and
written responses, I find that the reason for the proposed removal is fully supported by
the evidence. However, I have determined that a lesser penalty will deter such
misconduct in the future and should be imposed. Accordingly, I have decided to suspend
you for a period of thirty (30) calendar days from your position and the Federal service.

Specifically, you will serve your suspension intermittently to lessen the burden that
this suspension would have on you financially. Your suspension will be served:

- effective Saturday, August 27, 2011, not to exceed Sunday, September 4,
2011, and you will return to you regular duty status on Monday, September
5, 2011.

- effective Saturday, September 10, 2011, not to exceed Sunday, September
18, 2011, and you will return to you regular duty status on Monday,
September 19, 2011.

- effective Saturday, September 24, 2011, not to exceed Wednesday, October 5, 2011, and you will return to you regular duty status on Thursday, October 6, 2011.

This action is being taken pursuant to Title 5, Code of Federal Regulations, Part 752, to promote the efficiency of the service.

If you have any questions about the contents of this decision notice, or your rights in connection with it, you may contact Stacy J. Chalmers, Chief, Employee Relations Branch on (301) 763-1463.

```
SPORTS PRO PH...
9440 PENNSYLVANIA AVE... SUITE 215
UPPER MARLBORO, MD 20772
(301) 599-8899
FED TAX ID# 56-2301337


   ANDREW CLARKE PT


                                    STATEMENT DATE: 06/22/2011
                                     PATIENT: ANTHONY W. PERRY
         ANTHONY W. PERRY              INJURED: 01/01/2006
         5907 CROOM STATION RD.      PHYSICIAN: BONAVENTE, ARNULFO
         UPPER MARLBORO    MD 20772

                                     EMPLOYER:


ACCT 302855 5  B  AC DIAGNOSIS: OSTEOARTHROSIS, LOCALIZED, PRIMARY, INVOLVING PELVIC REGION
                              DEGENERATION OF LUMBAR OR LUMBOSACRAL INTERVERTEBRAL DISC
```

| DATE | RVS/CPT | DESCRIPTION | CHARGES | PAID | ADJUSTS | BALANCE |
|------|---------|-------------|---------|------|---------|---------|
| | | BALANCE FORWARD | | | | 0.00 |
| 10/17/07 | 97001 | PHYSICAL THERAPY EVALUAT | 185.00 | 54.81 | -130.19 | |
| 10/17/07 | 97110 | THERAPEUTIC EXERCISE  EA | 130.00 | 42.00 | -88.00 | |
| 10/17/07 | PYMT VISA / MASTER PD.$15.00 FOR 10/17-10/17/7 | | | | | |
| 10/18/07 | CAREFIRST NC ebilled   315.00 for 10/17-10/17/7 | | | | | |
| 10/19/07 | 97140 | MANUAL THERAPY EA 15 MIN | 100.00 | 39.02 | -60.98 | |
| 10/19/07 | 97110 | THERAPEUTIC EXERCISE  EA | 65.00 | 21.00 | -44.00 | |
| 10/19/07 | 97014 | ELECTRICAL STIM UNATTENDE | 45.00 | 12.35 | -32.65 | |
| 10/19/07 | PYMT CASH PATIENT PD.$15.00 FOR 10/19-10/19/7 | | | | | |
| 10/23/07 | 97140 | MANUAL THERAPY EA 15 MIN | 100.00 | 39.02 | -60.98 | |
| 10/23/07 | 97110 | THERAPEUTIC EXERCISE  EA | 65.00 | 21.00 | -44.00 | |
| 10/23/07 | 97014 | ELECTRICAL STIM UNATTENDE | 45.00 | 12.35 | -32.65 | |
| 10/23/07 | PYMT PATIENT CHECK PD.$15.00 FOR 10/23-10/23/7 | | | | | |
| 10/25/07 | CAREFIRST NC ebilled   420.00 for 10/19-10/23/7 | | | | | |
| 10/25/07 | 97140 | MANUAL THERAPY | 150.00 | 58.53 | -91.47 | |
| 10/25/07 | 97014 | ELECTRICAL STIM UNATTENDE | 45.00 | 12.35 | -32.65 | |
| 10/25/07 | PYMT PATIENT CHECK PD.$15.00 FOR 10/25-10/25/7 | | | | | |
| 10/25/07 | PYMT BCBS DC       pd.$81.81 FOR 10/17-10/17/7 | | | | | |
| 10/25/07 | Insurance Writeoff cr.$218.19 FOR 10/17-10/17/7 | | | | | |
| 10/31/07 | 97140 | MANUAL THERAPY | 150.00 | 58.53 | -91.47 | |
| 10/31/07 | 97014 | ELECTRICAL STIM UNATTENDE | 45.00 | 12.35 | -32.65 | |
| 11/01/07 | CAREFIRST NC ebilled   390.00 for 10/25-10/31/7 | | | | | |
| 11/01/07 | PYMT PATIENT CHECK PD.$15.00 FOR 10/31-10/31/7 | | | | | |
| 11/09/07 | 97110 | THERAPEUTIC EXERCISE  EA | 130.00 | 27.00 | -103.00 | |
| 11/09/07 | 97140 | MANUAL THERAPY EA 15 MIN | 100.00 | 39.02 | -60.98 | |
| 11/09/07 | 97014 | ELECTRICAL STIM UNATTENDE | 45.00 | 12.35 | -32.65 | |
| 11/09/07 | PYMT BCBS DC       pd.$114.74 FOR 10/19-10/23/7 | | | | | |
| 11/09/07 | Insurance Writeoff cr.$275.26 FOR 10/19-10/23/7 | | | | | |
| 11/13/07 | 97110 | THERAPEUTIC EXERCISE  EA | 130.00 | 42.00 | -88.00 | |
| 11/13/07 | 97140 | MANUAL THERAPY EA 15 MIN | 100.00 | 39.02 | -60.98 | |

CONTINUED ON NEXT PAGE



SPORTS PRO PHYSICAL THERAPY
9440 PENNSYLVANIA AVE., SUITE 215
UPPER MARLBORO, MD 120772
(301) 599-8899
FED TAX ID# 56-2301337

D. ANDREW CLARKE PT

STATEMENT DATE: 06/22/2011
PATIENT: ANTHONY W. PERRY
INJURED: 01/01/2006
PHYSICIAN: BONAVENTE, ARNULFO

EMPLOYER:

ANTHONY W. PERRY
5907 CROOM STATION RD.
UPPER MARLBORO      MD 20772

CCT 302855 5  B  AC DIAGNOSIS: OSTEOARTHROSIS, LOCALIZED, PRIMARY, INVOLVING PELVIC REGION
                              DEGENERATION OF LUMBAR OR LUMBOSACRAL INTERVERTEBRAL DISC

| DATE | RVS/CPT | DESCRIPTION | CHARGES | PAID | ADJUSTS | BALANCE |
|------|---------|-------------|---------|------|---------|---------|
| | | BALANCE FORWARD | | | | 0.00 |
| 1/13/07 | 97014 | ELECTRICAL STIM UNATTENDE | 45.00 | 12.35 | -32.65 | |
| 1/14/07 | | PYMT PATIENT CHECK PD.$15.00 FOR 11/13-11/13/7 | | | | |
| 1/15/07 | | CAREFIRST NC ebilled   550.00 for 11/09-11/13/7 | | | | |
| 1/15/07 | | CAREFIRST NC ebilled   550.00 for 11/09-11/13/7 | | | | |
| 1/20/07 | | ANTHONY W. PER Billed    0.00 for 10/17-10/31/ | | | | |
| 1/29/07 | | PYMT BCBS DC        pd.$111.76 FOR 10/25-10/31/7 | | | | |
| 1/29/07 | | PYMT BCBS DC        pd.$156.74 FOR 11/09-11/13/7 | | | | |
| 1/29/07 | | Insurance Writeoff cr.$378.26 FOR 11/09-11/13/7 | | | | |
| 9/30/09 | | CAREFIRST NC ebilled   185.00 for 10/17-10/17/7 | | | | |
| 2/03/10 | | ANTHONY W. P billed   185.00 for 10/17-10/17/7 | | | | |
| 7/14/10 | | ANTHONY W. PER Billed    0.00 for 10/17-02/03/ | | | | |
| 9/14/10 | | ANTHONY W. PER Billed    0.00 for 10/17-07/13/ | | | | |
| 1/10/11 | | ANTHONY W. PER Billed    0.00 for 10/17-09/14/ | | | | |
| 6/14/11 | | ANTHONY W. PER Billed    0.00 for 06/14-06/14/ | | | | |
| 6/14/11 | | ANTHONY W. PER Billed    0.00 for 02/03-02/03/ | | | | |
| 6/14/11 | | ANTHONY W. PER Billed    0.00 for 10/17-10/17/ | | | | |
| 6/14/11 | | ANTHONY W. PER Billed    0.00 for 06/14-06/14/ | | | | |
| 6/14/11 | | ANTHONY W. PER Billed    0.00 for 02/03-02/03/ | | | | |

TOTALS      1675.00   555.05  -1119.95
PATIENTS BALANCE DUE          0.00

| CURRENT | OVER 30 | OVER 60 | OVER 90 | OVER 120 |
|---------|---------|---------|---------|----------|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

THIS AMOUNT IS DEDUCTIBLE AND / OR COPAY
FOR YOUR CONVENIENCE WE ACCEPT VISA AND MASTERCARD
PLEASE CONTACT AL WHITLOCK IN OUR BILLING DEPARTMENT WITH
ANY QUESTIONS AT (301) 805-5006.  PAYMENT DUE UPON RECE

2

SPORTS PRO PHYSICAL THERAPY
9440 PENNSYLVANIA AVE., SUITE 215
UPPER MARLBORO, MD 20772
(301) 599-8899
FED TAX ID# 56-2301337

D. ANDREW CLARKE PT

STATEMENT DATE: 06/22/2011
PATIENT: ANTHONY PERRY
INJURED: 10/14/2009
PHYSICIAN: JOLY, J. MICHAEL

ANTHONY PERRY
5907 CROOM STATION RD
UPPER MARLBORO      MD 20772

EMPLOYER: CENSUS BUREAU
4700 SIVER HILL RD
SUITLAND           MD 2074

ACCT 400959 4  B  AC DIAGNOSIS: PAIN IN JOINT INVOLVING LOWER LEG

| DATE | RVS/CPT | DESCRIPTION | CHARGES | PAID | ADJUSTS | BALANCE |
|------|---------|-------------|---------|------|---------|---------|
|  |  | BALANCE FORWARD |  |  |  | 0.00 |
| 10/27/09 | 97001 | PHYSICAL THERAPY EVALUAT | 185.00 | 54.81 | -130.19 |  |
| 10/27/09 | 97110 | THERAPEUTIC EXERCISE  EA | 130.00 | 42.00 | -88.00 |  |
| 10/28/09 | CAREFIRST NC billed   315.00 for 10/27-10/27/9 |  |  |  |  |  |
| 10/28/09 | CAREFIRST NC billed   315.00 for 10/27-10/27/9 |  |  |  |  |  |
| 10/29/09 | PYMT VISA / MASTER PD.$20.00 FOR 10/27-10/27/9 |  |  |  |  |  |
| 11/03/09 | 97110 | THERAPEUTIC EXERCISE  EA | 130.00 | 42.00 | -88.00 |  |
| 11/03/09 | 97112 | NEUROMUSCULAR RE-ED 15 MI | 65.00 | 20.00 | -45.00 |  |
| 11/03/09 | 97140 | MANUAL THERAPY EA 15 MIN | 50.00 | 19.51 | -30.49 |  |
| 11/04/09 | CAREFIRST NC ebilled   245.00 for 11/03-11/03/9 |  |  |  |  |  |
| 11/04/09 | 97110 | THERAPEUTIC EXERCISE  EA | 130.00 | 42.00 | -88.00 |  |
| 11/04/09 | 97112 | NEUROMUSCULAR RE-ED 15 MI | 65.00 | 20.00 | -45.00 |  |
| 11/04/09 | 97140 | MANUAL THERAPY EA 15 MIN | 50.00 | 19.51 | -30.49 |  |
| 11/04/09 | 97032 | ELETRICAL STIM MANUAL | 45.00 | 11.37 | -33.63 |  |
| 11/05/09 | PYMT VISA / MASTER PD.$15.00 FOR 11/04-11/04/9 |  |  |  |  |  |
| 11/05/09 | PYMT VISA / MASTER PD.$20.00 FOR 11/03-11/03/9 |  |  |  |  |  |
| 11/05/09 | PYMT VISA / MASTER PD.$5.00 FOR 11/04-11/04/9 |  |  |  |  |  |
| 11/06/09 | 97110 | THERAPEUTIC EXERCISE  EA | 130.00 | 42.00 | -88.00 |  |
| 11/06/09 | 97112 | NEUROMUSCULAR RE-ED 15 MI | 65.00 | 20.00 | -45.00 |  |
| 11/06/09 | 97140 | MANUAL THERAPY EA 15 MIN | 50.00 | 19.51 | -30.49 |  |
| 11/06/09 | 97032 | ELETRICAL STIM MANUAL | 45.00 | 11.37 | -33.63 |  |
| 11/09/09 | PYMT VISA / MASTER PD.$20.00 FOR 11/06-11/06/9 |  |  |  |  |  |
| 11/11/09 | CAREFIRST NC ebilled   580.00 for 11/04-11/06/9 |  |  |  |  |  |
| 11/16/09 | 97110 | THERAPEUTIC EXERCISE  EA | 195.00 | 63.00 | -132.00 |  |
| 11/16/09 | 97112 | NEUROMUSCULAR RE-ED 15 MI | 65.00 | 20.00 | -45.00 |  |
| 11/16/09 | 97140 | MANUAL THERAPY EA 15 MIN | 50.00 | 19.51 | -30.49 |  |
| 11/16/09 | 97032 | ELETRICAL STIM MANUAL | 45.00 | 11.37 | -33.63 |  |
| 11/17/09 | PYMT VISA / MASTER PD.$20.00 FOR 11/16-11/16/9 |  |  |  |  |  |
| 11/18/09 | 97110 | THERAPEUTIC EXERCISE  EA | 195.00 | 63.00 | -132.00 |  |
| 11/18/09 | 97112 | NEUROMUSCULAR RE-ED 15 MI | 65.00 | 20.00 | -45.00 |  |

CONTINUED ON NEXT PAGE

3

SPORTS PRO P...
9440 PENNSYLVANIA AVE   SUITE 215
UPPER MARLBORO   MD 20772
(301) 599-8899
FED TAX ID# 56-2301337

D. ANDREW CLARKE PT

STATEMENT DATE: 06/22/2011
PATIENT: ANTHONY PERRY
INJURED: 10/14/2009
PHYSICIAN: JOLY, J. MICHAEL

ANTHONY PERRY
5907 CROOM STATION RD
UPPER MARLBORO   MD 20772

EMPLOYER: CENSUS BUREAU
4700 SIVER HILL RD
SUITLAND   MD 2074

ACCT 400959 4  B  AC DIAGNOSIS: PAIN IN JOINT INVOLVING LOWER LEG

| DATE | RVS/CPT | DESCRIPTION | CHARGES | PAID | ADJUSTS | BALANCE |
|------|---------|-------------|---------|------|---------|---------|
| | | BALANCE FORWARD | | | | 0.00 |
| 1/18/09 | 97140 | MANUAL THERAPY EA 15 MIN | 50.00 | 19.51 | -30.49 | |
| 1/18/09 | 97032 | ELETRICAL STIM MANUAL | 45.00 | 11.37 | -33.63 | |
| 1/19/09 | CAREFIRST NC ebilled | 710.00 for 11/16-11/18/9 | | | | |
| 1/19/09 | PYMT BCBS DC | pd.$61.51 FOR 11/03-11/03/9 | | | | |
| 1/19/09 | Insurance Writeoff cr.$163.49 FOR 11/03-11/03/9 | | | | | |
| 1/19/09 | PYMT BCBS DC | pd.$76.81 FOR 10/27-10/27/9 | | | | |
| 1/19/09 | Insurance Writeoff cr.$218.19 FOR 10/27-10/27/9 | | | | | |
| 1/19/09 | PYMT VISA / MASTER PD.$20.00 FOR 11/18-11/18/9 | | | | | |
| 1/20/09 | 97110 | THERAPEUTIC EXERCISE  EA | 195.00 | 63.00 | -132.00 | |
| 1/20/09 | 97112 | NEUROMUSCULAR RE-ED 15 MI | 65.00 | 20.00 | -45.00 | |
| 1/20/09 | 97140 | MANUAL THERAPY EA 15 MIN | 50.00 | 19.51 | -30.49 | |
| 1/20/09 | 97032 | ELETRICAL STIM MANUAL | 45.00 | 11.37 | -33.63 | |
| 1/23/09 | PYMT BCBS DC | pd.$72.88 FOR 11/06-11/06/9 | | | | |
| 1/23/09 | Insurance Writeoff cr.$197.12 FOR 11/06-11/06/9 | | | | | |
| 1/23/09 | PYMT BCBS DC | pd.$72.88 FOR 11/04-11/04/9 | | | | |
| 1/23/09 | Insurance Writeoff cr.$197.12 FOR 11/04-11/04/9 | | | | | |
| 1/23/09 | PYMT VISA / MASTER PD.$20.00 FOR 11/20-11/20/9 | | | | | |
| 1/30/09 | CAREFIRST NC ebilled   355.00 for 11/20-11/20/9 | | | | | |
| 1/30/09 | 97110 | THERAPEUTIC EXERCISE  EA | 65.00 | 41.00 | -24.00 | |
| 1/30/09 | 97032 | ELETRICAL STIM MANUAL | 45.00 | 11.37 | -33.63 | |
| 1/30/09 | 97002 | PHYSICAL THERAPY RE-EVAL | 80.00 | 8.42 | -71.58 | |
| 2/02/09 | ANTHONY PERRY Billed   20.00 for 10/27-11/30/9 | | | | | |
| 2/02/09 | 97110 | THERAPEUTIC EXERCISE  EA | 195.00 | 63.00 | -132.00 | |
| 2/02/09 | 97032 | ELETRICAL STIM MANUAL | 45.00 | 11.37 | -33.63 | |
| 2/02/09 | PYMT VISA / MASTER PD.$20.00 FOR 11/30-11/30/9 | | | | | |
| 2/03/09 | PYMT VISA / MASTER PD.$20.00 FOR 12/02-12/02/9 | | | | | |
| 2/03/09 | PYMT BCBS DC | pd.$93.88 FOR 11/18-11/18/9 | | | | |
| 2/03/09 | Insurance Writeoff cr.$241.12 FOR 11/18-11/18/9 | | | | | |
| 2/03/09 | PYMT BCBS DC | pd.$93.88 FOR 11/16-11/16/9 | | | | |

CONTINUED ON NEXT PAGE

4

SPORTS PRO PH...
9440 PENNSYLVANIA AVE   SUITE 215
UPPER MARLBORO, MD 20772
(301) 599-8899
FED TAX ID# 56-2301337

D. ANDREW CLARKE PT

STATEMENT DATE: 06/22/2011
PATIENT: ANTHONY PERRY
INJURED: 10/14/2009
PHYSICIAN: JOLY, J. MICHAEL

ANTHONY PERRY
5907 CROOM STATION RD
UPPER MARLBORO     MD 20772

EMPLOYER: CENSUS BUREAU
4700 SIVER HILL RD
SUITLAND          MD 207...

ACCT 400959 4  B  AC DIAGNOSIS: PAIN IN JOINT INVOLVING LOWER LEG

| DATE | RVS/CPT | DESCRIPTION | CHARGES | PAID | ADJUSTS | BALANCE |
|------|---------|-------------|---------|------|---------|---------|
| | | BALANCE FORWARD | | | | 0.00 |
| 12/03/09 | Insurance Writeoff cr.$241.12 FOR 11/16-11/16/9 | | | | | |
| 12/04/09 | ANTHONY PERRY Billed    0.00 for 10/27-12/03/9 | | | | | |
| 12/04/09 | 97110 | THERAPEUTIC EXERCISE  EA | 195.00 | 63.00 | -132.00 | |
| 12/07/09 | PYMT PATIENT CHECK PD.$20.00 FOR 12/04-12/04/9 | | | | | |
| 12/08/09 | CAREFIRST NC ebilled   625.00 for 11/30-12/04/9 | | | | | |
| 12/14/09 | PYMT BCBS DC     pd.$93.88 FOR 11/20-11/20/9 | | | | | |
| 12/14/09 | Insurance Writeoff cr.$241.12 FOR 11/20-11/20/9 | | | | | |
| .2/28/09 | PYMT BCBS DC     pd.$138.16 FOR 11/30-12/04/9 | | | | | |
| .2/28/09 | Insurance Writeoff cr.$426.84 FOR 11/30-12/04/9 | | | | | |
| 03/01/10 | 97001 | PHYSICAL THERAPY EVALUAT | 185.00 | 54.81 | -130.19 | |
| 03/../10 | 97140 | MANUAL THERAPY EA 15 MIN | 100.00 | 39.02 | -60.98 | |
| 03/../10 | 97110 | THERAPEUTIC EXERCISE  EA | 65.00 | 21.00 | -44.00 | |
| 03/03/10 | 97112 | NEUROMUSCULAR RE-ED 15 MI | 130.00 | 59.02 | -70.98 | |
| 03/03/10 | 97140 | MANUAL THERAPY EA 15 MIN | 100.00 | 20.00 | -80.00 | |
| 03/03/10 | PYMT VISA / MASTER PD.$20.00 FOR 03/01-03/01/0 | | | | | |
| 03/04/10 | PYMT VISA / MASTER PD.$20.00 FOR 03/03-03/03/0 | | | | | |
| 03/04/10 | 97140 | MANUAL THERAPY EA 15 MIN | 100.00 | 39.02 | -60.98 | |
| 03/08/10 | 97110 | THERAPEUTIC EXERCISE  EA | 65.00 | 21.00 | -44.00 | |
| 03/10/10 | CAREFIRST NC ebilled   745.00 for 03/01-03/08/0 | | | | | |
| 03/10/10 | 97140 | MANUAL THERAPY EA 15 MIN | 100.00 | 39.02 | -60.98 | |
| 03/10/10 | 97110 | THERAPEUTIC EXERCISE  EA | 65.00 | 21.00 | -44.00 | |
| 03/10/10 | PYMT VISA / MASTER PD.$20.00 FOR 03/08-03/08/0 | | | | | |
| 03/11/10 | PYMT VISA / MASTER PD.$20.00 FOR 03/10-03/10/0 | | | | | |
| 03/15/10 | ANTHONY PERRY Billed    40.00 for 03/01-03/10/0 | | | | | |
| 03/15/10 | 97110 | THERAPEUTIC EXERCISE  EA | 130.00 | 42.00 | -88.00 | |
| 03/15/10 | 97140 | MANUAL THERAPY EA 15 MIN | 100.00 | 39.02 | -60.98 | |
| 03/18/10 | CAREFIRST NC ebilled   395.00 for 03/10-03/15/0 | | | | | |
| 03/19/10 | PYMT VISA / MASTER PD.$20.00 FOR 03/15-03/15/0 | | | | | |
| 03/22/10 | PYMT BCBS DC     pd.$40.02 FOR 03/08-03/08/0 | | | | | |

CONTINUED ON NEXT PAGE

5

SPORTS PRO PHYSICAL THERAPY
9440 PENNSYLVANIA AVE.  SUITE 215
UPPER MARLBORO, MD 20772
(301) 599-8899
FED TAX ID# 56-2301337

D. ANDREW CLARKE PT

```
                                    STATEMENT DATE: 06/22/2011
                                    PATIENT: ANTHONY PERRY
        ANTHONY PERRY              INJURED: 10/14/2009
        5907 CROOM STATION RD    PHYSICIAN: JOLY, J. MICHAEL
        UPPER MARLBORO    MD 20772
                                    EMPLOYER: CENSUS BUREAU
                                             4700 SIVER HILL RD
                                             SUITLAND        MD 2074
```

ACCT 400959 4  B  AC DIAGNOSIS: PAIN IN JOINT INVOLVING LOWER LEG

| DATE | RVS/CPT | DESCRIPTION | CHARGES | PAID | ADJUSTS | BALANCE |
|------|---------|-------------|---------|------|---------|---------|
|      |         | BALANCE FORWARD |     |      |         | 0.00 |
| 3/22/10 | Insurance Writeoff cr.$104.98 FOR 03/08-03/08/0 | | | | | |
| 3/22/10 | PYMT BCBS DC      pd.$153.85 FOR 03/01-03/03/0 | | | | | |
| 3/22/10 | Insurance Writeoff cr.$386.15 FOR 03/01-03/03/0 | | | | | |
| 3/29/10 | PYMT BCBS DC      pd.$101.04 FOR 03/10-03/15/0 | | | | | |
| 3/29/10 | Insurance Writeoff cr.$253.96 FOR 03/10-03/15/0 | | | | | |
| 7/13/10 | ANTHONY PERRY Billed    0.00 for 10/27-03/29/0 | | | | | |
| 9/14/10 | ANTHONY PERRY Billed    0.00 for 10/27-07/13/0 | | | | | |
| 1/10/11 | ANTHONY PERRY Billed    0.00 for 10/27-09/14/0 | | | | | |

```
                                   TOTALS   3970.00  1298.79  -2671.21
CURRENT    OVER 30    OVER 60    OVER 90    OVER 120      PATIENTS BALANCE DUE        0.00
  0.00       0.00       0.00       0.00       0.00
```

        THIS AMOUNT IS DEDUCTIBLE AND / OR COPAY
        FOR YOUR CONVENIENCE WE ACCEPT VISA AND MASTERCARD
        PLEASE CONTACT AL WHITLOCK IN OUR BILLING DEPARTMENT WITH
        ANY QUESTIONS AT (301) 805-5006.  PAYMENT DUE UPON RECE

6

**EXHIBIT 1, Pg. JA81**

Physical Therapy **Discharge Summary**

Patient: **PERRY, ANTHONY**                              Date: **Monday, March 22, 2010**
MR #: **400959**                                         Provider:
PT:                                                      Provider #:

## Patient Information

Address: 5907 CROOM STATION RD          Birth Date: 1/29/1956
UPPER MARLBORO   , MD 20772             Physician: J. MICHAEL JOLY M.D.

Occupation: COMPUTER SPECIALIST         Physician Num: E27292
Gender: Male
Contact Person:                         Medicare #:
                                        Claim #:

Comments: Added by PTOS Update  10/28/2009 6:42:09 AM
Onset Date of Medical  10/14/2009    Osteoarthritis - Pelvis & Hip - Localized  715.15
Diagnosis with ICD-9:                Pain - Pelvis & Thigh - Joint  719.45

Preferred Practice  Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized
Pattern: inflammation

Physical Therapy
Diagnosis:

### Reasons for Discharge

Goals met: ☑                                Patient refuses further treatment: ☐
Hospitalization: ☐          Maximum Level Reached: ☑          Patient expired: ☐

Patient/Care Giver was given proper and timely notification of Discharge:        ⊙ Yes    ○ No

No further physical therapy intervention is indicated at this time in this setting.  Patient's physician     ○ Yes    ⊙ No
has been notified that this patient has been discharged from physical therapist's care.

Additional Discharge Information:

### Functional Measures

Impairment Goals; Short Term:        Increased hip ROM 10 deg in abduction
                                     Increased hip Flexon strength 1/2 grade in 3 weeks.
                                     Increased hip ROM 10 deg in flexion

Functional Goals; Long Term:         Pt will sit for 1-2 hour without pain to perform work duties in 6-8 weeks
                                     Pt will ascend and descend steps with reciprocal gait without pain in 6-8 weeks.

### Physical Findings

Pain

Site #1:   Joint Pain - Hip - Left; At Rest 3/10; With Activity  7/10; Dull; Localized
           Exacerbating Factors: Prolonged sitting & Transitioning from sitting to standing position
           Relieving Factors:    Avoid activity & Modified activity

Sensation: intact
Myotomal Testing: intact
Reflexes: intact

### Special Orthopedic Tests of Extremities

Hip- Hip scouring or quadrant test- Indicates hip joint pathology          POSITIVE
Hip- Thomas test- Indicates tightness in the iliopsoas and rectus femoris  POSITIVE

## Additional Comments on Physical Findings:

Additonal Comments on Physical Findings: Palpation: TTPover groin, lateral hip and  IT

## Assessment:

Assessment: Pt will be DC at this time. Pt is to coninutes with his Home Exercise program to maintain his strenght and flexibility.  It is
recommended that pt walks for exercise on a regular basis and that he sits no longer than 60 min to minimize hip pain and stiffness.

PT Discharge Summary

Physical Therapy                          Discharge Summary                          Page 2

---

Patient: **PERRY, ANTHONY**                    Date: **Monday, March 22, 2010**

---

### Interventions (CPT Code)

Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110
Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112
Manual Therapy Techniques - 1+ Regions  97140

---

**Final Instructions to**
**Patient / Caregiver:** Continue HEP as prescribed

---

3/22/10
Date

State Lic #:  18-08d

Software Reg #: LPU1W-X2XWW-A30SL-PM97Z

| Patient: **PERRY, ANTHONY** | | Date: **Monday, March 15, 2010** |
|---|---|---|
| MR #: **400959** | AC# | Provider #: |
| PT: | | Provider: |

| **Onset Date of Medical Diagnosis with ICD-9:** | 10/14/2009 | Osteoarthritis - Pelvis & Hip - Localized  715.15 |
| | | Pain - Pelvis & Thigh - Joint  719.45 |

**Preferred Practice Pattern:** Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation

**Physical Therapy Diagnosis:**

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 25 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | 0 | |
| Manual Therapy Techniques - 1+ Regions  97140 | 25 | 2 |

**Interventions Comments:** Joint mob gr 3-4, PA, AP, Inf to hip distraction, STM to groin, left hip flexor

| **Progressive Exercises:** | Lbs / Time | Reps/Sets |
|---|---|---|
| Bike | 10 | |
| Hip abd in sidelying | | 3x10 |

**Specific Impairments Observations:**

Impairment Comments: Pt was treated and completed his ther ex program as per outline.  Continued pain with manual work.  Perform distraction to L hip in ER/45deg abd.  Cont PT POC

**Current Plan:**   2-3 times per week

Patient's progress toward established goals:   GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:        NO

**Additional Comments:**

Pt reports of no new complaints.

| March 15 16 | Drattner, PA |
|---|---|
| **Date** | State Lic #:  A3399 |

Software Licensed to Sports Pro Physical Therapy

9

Physical Therapy          Progress Treatment Note                    Page 1

| | |
|---|---|
| Patient: **PERRY, ANTHONY** | Date: **Wednesday, March 10, 2010** |
| MR #: 400959            AC# | Provider #: |
| PT: | Provider: |

| | |
|---|---|
| **Onset Date of Medical Diagnosis with ICD-9:** | 10/14/2009   Osteoarthritis - Pelvis & Hip - Localized  715.15<br>Pain - Pelvis & Thigh - Joint  719.45 |
| **Preferred Practice Pattern:** | Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation |
| **Physical Therapy Diagnosis:** | |

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 15 | 1 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | 0 | |
| Manual Therapy Techniques - 1+ Regions  97140 | 25 | 2 |

Interventions Comments: Joint mob gr 3-4, PA, AP, Inf to hip distraction, STM to groin, left hip flexor

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Bike | 10 | |
| Hip abd in sidelying | | 3x10 |

**Specific Impairments Observations:**

Impairment Comments: Pt was treated and completed his ther ex program as per outline. Continued pain with manual work. Cont PT POC

**Current Plan:**    2-3 times per week

Patient's progress toward established goals:    GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:          NO

**Additional Comments:**

Pt continues to report of pain in hip and groin.

| |
|---|
| March 10, 10    _J metomer, PT_ |
| Date |
| State Lic #:  A3399 |

Software Licensed to Sports Pro Physical Therapy

Physical Therapy — Progress / Treatment Note — Page 1

Patient: **PERRY, ANTHONY**                     Date: **Monday, March 08, 2010**

MR #: **400959**        AC#:            Provider #:

PT:                                      Provider:

**Onset Date of Medical Diagnosis with ICD-9:** 10/14/2009    Osteoarthritis - Pelvis & Hip - Localized 715.15
Pain - Pelvis & Thigh - Joint 719.45

**Preferred Practice Pattern:** Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation

**Physical Therapy Diagnosis:**

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 15 | 1 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | 0 | |
| Manual Therapy Techniques - 1+ Regions 97140 | 25 | 2 |

**Interventions Comments:** ,Joint mob gr 3-4 , PA, AP, Inf to hip hip distraction, STM to groin, left hip flexor,

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Bike | 10 | |
| Hip abd in sidelying | | 3x10 |

**Specific Impairments Observations:**

Impairment Comments: Pt reports decrease pain in hip after last session. Pt noted that taping helped a great deal with his pain.

**Current Plan:** 2-3 times per week

Patient's progress toward established goals:    GOOD        Patient's response to the PT Interventions: GOOD
Discharge Planning was Discussed with Patient/Caregiver:    NO

MAR 0 8 2010

Date

State Lic #:

Software Licensed to Sports Pro Physical Therapy

Physical Therapy   Progress / Treatment Note   Page 1

| Patient: PERRY, ANTHONY | | Date: **Wednesday, March 03, 2010** |
|---|---|---|
| MR #: 400959 | AC#: | Provider #: |
| PT: | | Provider: |

| Onset Date of Medical Diagnosis with ICD-9: | 10/14/2009 | Osteoarthritis - Pelvis & Hip - Localized  715.15 |
|---|---|---|
| | | Pain - Pelvis & Thigh - Joint  719.45 |

Preferred Practice Pattern: Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation

Physical Therapy Diagnosis:

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 0 | |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | 25 | 2 |
| Manual Therapy Techniques - 1+ Regions 97140 | 25 | 2 |

**Interventions Comments:** ,Joint mob gr 3-4 , PA, AP, Inf to hip hip distraction,  STM to groin, left hip flexor, Inhibited L  adducturs with KT, inh left Glut med, Space correction of inguanal area.

| | Lbs / Time | Reps/Sets |
|---|---|---|

**Specific Impairments Observations:**

Impairment Comments: Pt ambulated into clinic with severe antalgic gait . Pt had significant improvement with gait after session. Pt was able to initiate quick step backwards which he was not able to do prior to session.

**Current Plan:**   2-3 times per week

Patient's progress toward established goals:   GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:          NO

MAR 0 3 2010

Date

Meryl Andrew Clarke, PT   18693

State Lic #:

Software Licensed to Sports Pro Physical Therapy

/2

Patient: PERRY, ANTHONY                              Date: Monday, March 01, 2010

MR #: 400959                                         Provider:

PT:                                                  Provider #:

## Patient Information

Address: 5907 CROOM STATION RD                Birth Date: 1/29/1956
UPPER MARLBORO  , MD  20772                   Physician: J. MICHAEL JOLY M.D.

Occupation: COMPUTER SPECIALIST               Physician Num: E27292
Gender: Male
Contact Person:                                      Medicare #:
                                                     Claim #:

Comments: Added by PTOS Update  10/28/2009 6:42:09 AM

## Rehabilitation Information / History

Onset Date of  10/14/2009       Osteoarthritis - Pelvis & Hip - Localized 715.15
Medical Diagnosis               Pain - Pelvis & Thigh - Joint 719.45
with  ICD9:

Preferred Practice Pattern: Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation

Physical Therapy Diagnosis:

Recent Physical Therapy: None within the last sixty days

Prior Functional Status: Independent with no pain or limitation in ambulation, IADL's, work or recreation

Required Equipment: None

Weight Bearing Status: No restrictions

Safety Measures: Adhere to orthopedic precautions/restrictions

Rehab Prognosis: Excellent rehab potential to reach and maintain prior level of function

Mental Status: Alert and oriented in all spheres- cooperative and motivated

Concerns that led to PT: Decreased functional ability

Systems Review, History: Pt reports that he has increased pain in hip over 1.5 years. Pt reports that he has most pain after sitting for > 1 hour. Walking decreases pain. Pt has difficulty due to limited hip mobility that make tying his shoes and transfers difficult.
Studies: none recently
Work: desk work

Patient has a history of behavioral health risks:     NO

Patient / Caregiver concur with established goals:     YES

Patient is aware of and understands his/her diagnosis and prognosis:     YES

## Functional Measures

Impairment Goals; Short Term: Increased hip ROM 10 deg in abduction
Increased hip Flexon strength 1/2 grade in 3 weeks.
Increased hip ROM 10 deg in flexion

Functional Goals; Long Term: Pt will sit for 1-2 hour without pain to perform work duties in 6-8 weeks
Pt will ascend and descend steps with reciprocal gait without pain in 6-8 weeks.

Patient: **PERRY, ANTHONY**                                      Date: **Monday, March 01, 2010**

## Physical Findings

### Pain

Site #1:    Joint Pain - Hip - Left; At Rest 3/10; With Activity 7/10; Dull; Localized
            Exacerbating Factors: Prolonged sitting & Transitioning from sitting to standing position
            Relieving Factors:    Avoid activity & Modified activity

| | |
|---|---|
| **Sensation:** | intact |
| **Myotomal Testing:** | intact |
| **Reflexes:** | intact |

### Special Orthopedic Tests of Extremities

| | |
|---|---|
| Hip- Hip scouring or quadrant test- Indicates hip joint pathology | POSITIVE |
| Hip- Thomas test- Indicates tightness in the iliopsoas and rectus femoris | POSITIVE |

### Additional Comments on Physical Findings:
Palpation: TTP over groin, lateral hip and IT

### Assessment:
Pt with severe hip OA c/p pain in left hip that limits his functional rehabilitation. Pt was found to have limited ROM, weakness, pain and tenderness on palpation that limites his daily activities. Pt will benefit from PT to address the above issues.

## Interventions (CPT Code)

Physical Therapy Initial Evaluation / Examination 97001
Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas 97113
Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110
Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112
Manual Therapy Techniques - 1+ Regions 97140

**Frequency of PT:** 2-3 times per week

**Duration of PT:** 6 weeks

MAR 0 1 2010                     ~~Beryl Andrew Clarke, PT   19099~~

Date                             State Lic #:

Software Reg #: I2KQS-2QWX2-2D7HQ-A8ZMQ

**Progress / Treatment Note**

| | |
|---|---|
| Patient: **PERRY, ANTHONY** | Date: **Monday, March 01, 2010** |
| MR #: **400959**    AC#: | Provider #: |
| PT: | Provider: |

| | |
|---|---|
| **Onset Date of Medical Diagnosis with ICD-9:** 10/14/2009 | Osteoarthritis - Pelvis & Hip - Localized  715.15<br>Pain - Pelvis & Thigh - Joint  719.45 |
| **Preferred Practice Pattern:** | Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation |
| **Physical Therapy Diagnosis:** | |

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Physical Therapy Initial Evaluation / Examination  97001 | 30 | 1 |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 16 | 1 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | | |
| Manual Therapy Techniques - 1+ Regions  97140 | 25 | 2 |

**Interventions Comments:** Eval, Joint mob gr 3-4 , PA, AP, Inf to hip hip distraction, instruction on HEP.

| | Lbs / Time | Reps/Sets |
|---|---|---|

**Specific Impairments Observations:**

Impairment Comments: Pt with severe hip OA c/p pain in left hip that limits his functional rehabilitation. Pt was found to have limited ROM, weakness, pain and tenderness on palpation that limites his daily activities. Pt will benefit from PT to address the above issues. Pt reports decreased stiffness in hip

**Current Plan:**    2-3 times per week

Patient's progress toward established goals:    GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:    NO

MAR 0 1 2010

Date

_Beryl Andrew Clarke, PT_  18699

State Lic #:

Software Licensed to Sports Pro Physical Therapy

15

**EXHIBIT 1 Pg. JA90**

Physical Therapy — Discharge Summary

Patient: **PERRY, ANTHONY**                           Date: **Thursday, December 10, 2009**

MR #: 400959                                          Provider:

PT:                                                   Provider #:

## Patient Information

Address: 5907 CROOM STATION RD                 Birth Date: 1/29/1956
UPPER MARLBORO    , MD  20772                  Physician: J. MICHAEL JOLY M.D.

Occupation: COMPUTER SPECIALIST                Physician Num: E27292
Gender: Male

Contact Person:                                Medicare #:
                                               Claim #:

Comments: Added by PTOS Update  10/28/2009 6:42:09 AM

Onset Date of Medical  10/14/2009    Knee - Pain 719.46
Diagnosis with ICD-9:

Preferred Practice  Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or
Pattern:  soft tissue surgical procedures

Physical Therapy
Diagnosis:

---

Goals met: ☑            **Reasons for Discharge**            Patient refuses further treatment: ☐

Hospitalization: ☐        Maximum Level Reached: ☑            Patient expired: ☐

Patient/Care Giver was given proper and timely notification of Discharge:            ◉ Yes    ○ No

No further physical therapy intervention is indicated at this time in this setting.  Patient's physician
has been notified that this patient has been discharged from physical therapist's care.            ○ Yes    ◉ No

## Additional Discharge Information:

### Functional Measures

Impairment Goals; Short Term:       Decreased end range pain 2-3 points in 3 weeks
                                    Increase strength of quad 1/2 grade in 3 weeks
                                    Increased knee flexion 10 deg in 2 weeks

Functional Goals; Long Term:        Pt will ambulate without pain limitation in 8 weeks
                                    Pt will ascend and descend steps with reciprocal gait without pain in involved knee in 6-8 weeks

### Physical Findings

#### Pain

Site #1:    Joint Pain - Knee - Left; At Rest 2/10; With Activity 5/10; Dull; Localized
            Exacerbating Factors: Prolonged ambulation & Weight Bearing activities
            Relieving Factors:   rest & Modified activity

Sensation: intact
Myotomal Testing: intact
Reflexes: intact

#### Girth

Location: 2 in above patella
Affected Side: 39.0 cm                          Unaffected Side: 40 cm

Location: Mid patella
Affected Side: 38.2 cm                          Unaffected Side: 38.5cm

Location: 2 in below Patella
Affected Side: 36.1 cm                          Unaffected Side: 35.4 cm

---

PT Discharge Summary

16

Patient: **PERRY, ANTHONY**                                   Date: **Thursday, December 10, 2009**

## Specific Joints

(Note: Blank indicates Strength / Range of Motion are within functional limits or not tested)

### Initial Eval Level

| Knee | | Strength Right | Strength Left | Active ROM Right | Active ROM Left | Passive ROM Right | Passive ROM Left |
|---|---|---|---|---|---|---|---|
| | Flexion | 5 | 4- | 122° | 112° | | |
| | Extension | 5 | 3+ | 0° | 0° | | |

### Final Level

| Knee | | Strength Right | Strength Left | Active ROM Right | Active ROM Left | Passive ROM Right | Passive ROM Left |
|---|---|---|---|---|---|---|---|
| | Flexion | 5 | 4- | 122° | 129° | | |
| | Extension | 5 | 4- | 0° | 0° | | |

Comments on Knee: Pt had pain with end range

### Additional Comments on Physical Findings:

Additonal Comments on Physical Findings: Palpation: TTP over infrapatella area, tibial tuberosity

### Assessment:

Assessment: Pt reports decreased pain in knee. Pt will conintue strenghing on his own. DC PT.

## Interventions (CPT Code)

Re-evaluation - Physical Therapy  97002

Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas  97113

Therapeutic Exercises – Therapeutic Procedure - 1+ Areas  97110

Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112

Manual Therapy Techniques - 1+ Regions  97140

Electrical Stimulation (Unattended) - Modality to 1+ Areas  97014

**Final Instructions to**
**Patient / Caregiver:**  Continue HEP as prescribed

12|10|09
Date

Beryl Andrew Clarke, PT   12099

State Lic #:

Software Reg #: I2KQS-2QWX2-2D7HQ-A8ZMQ

PT Discharge Summary

17

Patient: **PERRY, ANTHONY**                    Date: **Friday, December 04, 2009**

MR #: 400959                    AC#                    Provider #:

PT:                    Provider:

**Onset Date of Medical Diagnosis with ICD-9:**   10/14/2009   Knee - Pain  719.46

**Preferred Practice Pattern:**   Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or soft tissue surgical procedures

**Physical Therapy Diagnosis:**

---

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Re-evaluation - Physical Therapy  97002 | 0 | 0 |
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas  97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 45 | 3 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | 0 | |
| Manual Therapy Techniques - 1+ Regions  97140 | 0 | |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas  97014 | 0 | 0 |

**Interventions Comments:**  therex

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L 7 | 3x10 |
| Leg extension machine | 30 lbs/40% | 3x10 |
| seated knee flexion | 40 lbs/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | | |
| Steamboats | 2 mins | yellow |
| Step ups 4 in laterally | | 2x10 |
| Step ups 4" forward | | 2x10 |
| Theraband - hip abduction | yellow | 2x10 |
| Theraband hip extension | yellow | 2x10 |
| Wobble Board-balance | | |

**Current Plan:**   2-3 times per week

Patient's progress toward established goals:   GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:          NO

**Additional Comments:**

Pt stated that he has begun taking his pain meds for his hip and is feeling much better.  Pt was able to complete his ther ex program as per outline without any difficulties.  Pt will follow up with this office to in the next few weeks to begin treatment for his L hip bursitis.

12/4/09   _JmHMa. PT_

Date

State Lic #:  _A3349_

Software Licensed to Sports Pro Physical Therapy

18

Patient: **PERRY, ANTHONY**                     Date: **Wednesday, December 02, 2009**

MR #: **400959**            AC#            Provider #:

PT:                                              Provider:

**Onset Date of Medical**  10/14/2009       Knee - Pain  719.46
**Diagnosis with ICD-9:**

**Preferred Practice**  Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or
**Pattern:**  soft tissue surgical procedures

**Physical Therapy**
**Diagnosis:**

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Re-evaluation - Physical Therapy  97002 | 0 | 0 |
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas  97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 45 | 3 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | 0 | |
| Manual Therapy Techniques - 1+ Regions  97140 | 0 | |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas  97014 | 10 | 1 |

**Interventions Comments:** therex, ice and IFC e-stim to L knee with heat to L hip and LS in supine

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L 7 | 3x10 |
| Leg extension machine | 30 lbs/40% | 3x10 |
| seated knee flexion | 40 lbs/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | | |
| Steamboats | 2 mins | yellow |
| Step ups 4 in laterally | | 2x10 |
| Step ups 4" forward | | 2x10 |
| Theraband - hip abduction | yellow | 2x10 |
| Theraband hip extension | yellow | 2x10 |
| Wobble Board-balance | | |

**Current Plan:**  2-3 times per week

Patient's progress toward established goals:      GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:      NO

**Additional Comments:**

Pt stated that he has plans to see his Dr. on the 10th of this month so that he may add on treatment for his hip and continue to progress with his knee.  Pt was treated as per outline.  Will cont to progress as able.

12/2/09        Ju Somer. PT

**Date**

**State Lic #:**

Software Licensed to Sports Pro Physical Therapy

19

| Patient: PERRY, ANTHONY | Date: **Monday, November 30, 2009** |
|---|---|
| MR #: 400959   AC# | Provider #: |
| PT: | Provider: |

**Onset Date of Medical Diagnosis with ICD-9:** 10/14/2009   Knee - Pain 719.46

**Preferred Practice Pattern:** Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or soft tissue surgical procedures

**Physical Therapy Diagnosis:**

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Re-evaluation - Physical Therapy 97002 | 15 | 1 |
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas 97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 15 | 1 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | 0 | |
| Manual Therapy Techniques - 1+ Regions 97140 | 0 | |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas 97014 | 15 | 1 |

**Interventions Comments:** re-eval, therex, ice and IFC e-stim to L knee with heat to L hip and LS in supine

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L 7 | 3x10 |
| Leg extension machine | 30 lbs/40% | 3x10 |
| seated knee flexion | 40 lbs/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | | |
| Steamboats | 2 mins | yellow |
| Step ups 4 in laterally | | 2x10 |
| Step ups 4" forward | | 2x10 |
| Theraband - hip abduction | yellow | 2x10 |
| Theraband hip extension | yellow | 2x10 |
| Wobble Board-balance | | |

**Specific Impairments Observations:**

Impairment Comments: The pt has demonstrated improvement in quadriceps strength, improvement in active knee flexion ROM, and reduction in pain at rest and with activity in knee. The pt is able to amb longer distances and sit for longer periods of time with less pain and discomfort. He continues to experience L hip and lumbar spine pain. This pain has also reduced with knee treatment but continues to bother him on a daily basis. The pt has met 2/3 STG and 0/2 LTG for physical therapy. Continue skilled physical therapy for 2-3 more weeks for quadriceps and hamstrings strengthening, pain management, and proprioceptive training.

pt arrived 35 minutes late for treatment. Treatment was adjusted accordingly.

**EXHIBIT 1 Pg. JA95**

Physical Therapy                    Progress/Treatment Note                    Page 2

| | |
|---|---|
| Patient: **PERRY, ANTHONY** | Date: **Monday, November 30, 2009** |
| MR #: **400959**        AC# | Provider #: |
| PT: | Provider: |

**Current Plan:**    2-3 times per week

Patient's progress toward established goals:    GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:    NO

_11/30/09_          _Qriana P. Roberts, PT, DPT_
Date

State Lic #: _22686_

Software Licensed to Sports Pro Physical Therapy

2 i

**EXHIBIT 1 Pg. JA96**

Physical Therapy                Re-Evaluation / Re-Examination                Page 1

Patient: **PERRY, ANTHONY**                          Date: **Monday, November 30, 2009**

MR #: **400959**                                     Provider:

PT:                                                  Provider #:

## Patient Information

Address: 5907 CROOM STATION RD              Birth Date: 1/29/1956
UPPER MARLBORO    , MD 20772                Physician: J. MICHAEL JOLY M.D.

Occupation: COMPUTER SPECIALIST             Physician Num: E27292
Gender: Male

Contact Person:                              Medicare #:
                                             Claim #:

Comments: Added by PTOS Update  10/28/2009 6:42:09 AM

## General Information

Onset Date of    10/14/2009    Knee - Pain 719.46
Medical Diagnosis
with ICD9:

Preferred Practice   Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or soft
Pattern:   tissue surgical procedures

Physical Therapy
Diagnosis:

| | | |
|---|---|---|
| There has been a change in Diagnosis: | ○ Yes | ● No |
| There has been a change in Support System: | ○ Yes | ● No |
| Patient is making steady progress toward established goals: | ● Yes | ○ No |
| There has been adequate communication with all health care staff involved in the implementation of the Plan of Care: | ● Yes | ○ No |
| Patient continues to concur with proposed TX plan: | ● Yes | ○ No |

Level of Patient/Caregiver's satisfaction with therapy:   ○ V High   ● High   ○ Moderate   ○ Low   ○ V Low

## Functional Measures

Impairment Goals; Short Term:   Decreased end range pain 2-3 points in 3 weeks
Increase strength of quad 1/2 grade in 3 weeks
Increased knee flexion 10 deg in 2 weeks

Functional Goals; Long Term:   Pt will ambulate without pain limitation in 8 weeks
Pt will ascend and descend steps with reciprocal gait without pain in involved knee in 6-8 weeks

## Physical Findings

### Pain

Site #1:   Joint Pain - Knee - Left; At Rest 2/10; With Activity 5/10; Dull; Localized
Exacerbating Factors: Prolonged ambulation & Weight Bearing activities
Relieving Factors:   rest & Modified activity

Sensation: intact
Myotomal Testing: intact
Reflexes: intact                          12/1/09

PT Re-Evaluation

22

Patient: **PERRY, ANTHONY**                          Date: **Monday, November 30, 2009**

## Girth

| | | | |
|---|---|---|---|
| **Location:** | 2 in above patella | | |
| **Affected Side:** | 39.0 cm | **Unaffected Side:** | 40 cm |
| **Location:** | Mid patella | | |
| **Affected Side:** | 38.2 cm | **Unaffected Side:** | 38.5cm |
| **Location:** | 2 in below Patella | | |
| **Affected Side:** | 36.1 cm | **Unaffected Side:** | 35.4 cm |

### Specific Joints

(Note: Blank indicates Strength / Range of Motion are within functional limits or not tested)

| Knee | | Initial Eval Level | | | | | Knee | | Current Level | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Strength | | Active ROM | | Passive ROM | | | Strength | | Active ROM | | Passive ROM |
| | | Right | Left | Right | Left | Right Left | | | Right | Left | Right | Left | Right Left |
| | Flexion | 5 | 4- | 122° | 112° | | | Flexion | 5 | 4- | 122° | 129° | |
| | Extension | 5 | 3+ | 0° | 0° | | | Extension | 5 | 4- | 0° | 0° | |

Comments on Knee: Pt had pain with end range

### Additional Comments on Physical Findings:

Additonal Comments on Physical Findings: Palpation: TTP over infrapatella area, tibial tuberosity

### Assessment:

Assessment: The pt has demonstrated improvement in quadriceps strength, improvement in active knee flexion ROM, and reduction in pain at rest and with activity in knee. The pt is able to amb longer distances and sit for longer periods of time with less pain and discomfort. He continues to experience L hip and lumbar spine pain. This pain has also reduced with knee treatment but continues to bother him on a daily basis. The pt has met 2/3 STG and 0/2 LTG for physical therapy. Continue skilled physical therapy for 2-3 more weeks for quadriceps and hamstrings strengthening, pain management, and proprioceptive training.

### Interventions (CPT Code)

Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas 97113

Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110

Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112

Manual Therapy Techniques - 1+ Regions 97140

Electrical Stimulation (Unattended) - Modality to 1+ Areas 97014

**Frequency of PT:** 2-3 times per week

**Duration of PT:** 4 weeks

11/30/09                          Ariana P. Roberts, PT,ST
**Date**

State Lic #: 22686

Software Reg #: 12KQS-2QWX2-2D7HQ-A8ZMQ

PT Re-Evaluation

23

**Physical Therapy**        **Progress / Treatment Note**        Page 1

| | |
|---|---|
| Patient: PERRY, ANTHONY | Date: Friday, November 20, 2009 |
| MR #: 400959      AC# | Provider #: |
| PT: | Provider: |

**Onset Date of Medical Diagnosis with ICD-9:**    10/14/2009     Knee - Pain  719.46

**Preferred Practice Pattern:** Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or soft tissue surgical procedures

**Physical Therapy Diagnosis:**

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Aquatic Therapy w/exercises – Therapeutic Procedure - 1+ Areas  97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 45 | 3 |
| Neuromuscular Reeducation – Therapeutic Procedure – 1+ Areas  97112 | 15 | 1 |
| Manual Therapy Techniques - 1+ Regions  97140 | 15 | 1 |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas  97014 | 10 | 1 |

**Interventions Comments:** MHP to knee, manual stretching of quads, hams, ITB,  therex, ice and IFC e-stim to L knee in supine

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L 7 | 3x10 |
| Leg extension machine | 30 lbs/40% | 3x10 |
| seated knee flexion | 40 lbs/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | | |
| Steamboats | 2 mins | yellow |
| Step ups 4 in laterally | | 2x10 |
| Step ups 4" forward | | 2x10 |
| Theraband - hip abduction | yellow | 2x10 |
| Theraband hip extension | yellow | 2x10 |
| Wobble Board-balance | | |

**Current Plan:**    2-3 times per week

Patient's progress toward established goals:    GOOD        Patient's response to the PT Interventions: GOOD

Discharge Planning was Discussed with Patient/Caregiver:    NO

**Additional Comments:**

Pt stated that he plans to have a consult with his Dr. in regards to his hip pain, feels as if it is hindering his progress. Pt was treated and completed his therex program as per outline.  Cont to progress as able.

11/20/09      _Fuxtomes, PTA_
Date

State Lic #: A3399

Software Licensed to Sports Pro Physical Therapy

24

**Physical Therapy** **EXHIBIT 1 Pg. JA99** Page 1
**Progress / Treatment Note**

Patient: **PERRY, ANTHONY**  Date: **Wednesday, November 18, 2009**

MR #: **400959**  AC#  Provider #:

PT:  Provider:

Onset Date of Medical  10/14/2009  Knee - Pain 719.46
Diagnosis with ICD-9:

Preferred Practice  Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or
Pattern:  soft tissue surgical procedures

Physical Therapy
Diagnosis:

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas 97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 45 | 3 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | 15 | 1 |
| Manual Therapy Techniques - 1+ Regions 97140 | 15 | 1 |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas 97014 | 10 | 1 |

Interventions Comments: MHP to knee, manual stretching of quads, hams, ITB, therex, ice and IFC e-stim to L knee in supine

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L 7 | 3x10 |
| Leg extension machine | 30 lbs/40% | 3x10 |
| seated knee flexion | 40 lbs/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | | |
| Steamboats | 2 mins | yellow |
| Step ups 4 in laterally | | 2x10 |
| Step ups 4" forward | | 2x10 |
| Theraband - hip abduction | yellow | 2x10 |
| Theraband hip extension | yellow | 2x10 |
| Wobble Board- balance | | |

Current Plan:  2-3 times per week

Patient's progress toward established goals:  GOOD  Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:  NO

Additional Comments:

Pt stated that he still struggles with pain on steps and he is not sure if he is regressing. Pt was treated as per outline. Added wobble board to pt program. Tolerated session fairly well.. Cont PT.

11/18/09  _Aul/omer, PTA_

Date  State Lic #: A3399

Software Licensed to Sports Pro Physical Therapy

2 5

**Physical Therapy**      **Progress / Treatment Note**      Page 1

| | |
|---|---|
| Patient: **PERRY, ANTHONY** | Date: **Monday, November 16, 2009** |
| MR #: **400959**     AC# | Provider #: |
| PT: | Provider: |

**Onset Date of Medical Diagnosis with ICD-9:**   10/14/2009     Knee - Pain 719.46

**Preferred Practice Pattern:** Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or soft tissue surgical procedures

**Physical Therapy Diagnosis:**

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas 97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 45 | 3 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | 15 | 1 |
| Manual Therapy Techniques - 1+ Regions 97140 | 15 | 1 |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas 97014 | 10 | 1 |

**Interventions Comments:** MHP to knee, manual stretching of quads, hams, ITB, therex, ice and IFC e-stim to L knee in supine

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L 7 | 3x10 |
| Leg extension machine | 30 lbs/40% | 3x10 |
| seated knee flexion | 40 lbs/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | | |
| Steamboats | 2 mins | yellow |
| Step ups 4 in laterally | | 2x10 |
| Step ups 4" forward | | 2x10 |
| Theraband - hip abduction | yellow | 2x10 |
| Theraband hip extension | yellow | 2x10 |
| Wobble Board-balance | | |

**Current Plan:**   2-3 times per week

Patient's progress toward established goals:    GOOD       Patient's response to the PT Interventions: GOOD

Discharge Planning was Discussed with Patient/Caregiver:     NO

**Additional Comments:**

Pt reports that he had a laspse in therapy due to having the flu. Pt also stated that his pain level at rest is a 2-3/10 and a 5-6 when going up stairs. Less when going down stairs 3-4. More pain in hip lately, old busitis problem. Pt was treated as per outline. Added yellow theraband hip abd/ext to program 2x10, needed cues for technique for step ups, pt subsituting secondary to L hip pain. Instructed pt on hip abd/ext ex's to perform at home. Pt had a good understanding. Add balance activites next visit. Cont PT.

11/16/09        _Anthonio, PH_
Date

State Lic #:   A3399

Software Licensed to Sports Pro Physical Therapy

26

Physical Therapy Progress / Treatment Note                                                                    Page 1

| Patient: PERRY, ANTHONY | | Date: Monday, November 16, 2009 |
| MR #: 400959 | AC# | Provider #: |
| PT: | | Provider: |

**Onset Date of Medical Diagnosis with ICD-9:** 10/14/2009    Knee - Pain  719.46

**Preferred Practice Pattern:** Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or soft tissue surgical procedures

**Physical Therapy Diagnosis:**

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas  97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 30 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | 15 | 1 |
| Manual Therapy Techniques - 1+ Regions  97140 | 15 | 1 |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas  97014 | 10 | 1 |

**Interventions Comments:** MHP to knee, manual stretching of quads, hams, ITB, therex, ice and IFC e-stim to L knee in supine

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L 7 | 3x10 |
| Leg extension machine | 30 lbs/40% | 3x10 |
| seated knee flexion | 40 lbs/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | | |
| Steamboats | 2 mins | yellow |
| Step ups 4 in laterally | | 2x10 |
| Step ups 4" forward | | 2x10 |
| Theraband - hip abduction | yellow | 2x10 |
| Theraband hip extension | yellow | 2x10 |
| Wobble Board-balance | | |

**Current Plan:**    2-3 times per week

Patient's progress toward established goals:    GOOD         Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:    NO

**Additional Comments:**

Pt reports that he had a laspse in therapy due to having the flu. Pt also stated that his pain level at rest is a 2-3/10 and a 5-6 when going up stairs. Less when going down stairs 3-4. More pain in hip lately, old busitis problem. Pt was treated as per outline. Added yellow theraband hip abd/ext to program 2x10, needed cues for technique for step ups, pt subsituting secondary to L hip pain. Instructed pt on hip abd/ext ex's to perform at home. Pt had a good understanding. Add balance activites next visit. Cont PT.

11/16/09                        _____, PTA
Date

                          State Lic #: A3399

Software Licensed to Sports Pro Physical Therapy

27.

Physical Therapy Progress/Treatment Note                                                    Page 1

| Patient: PERRY, ANTHONY | Date: Friday, November 06, 2009 |
|---|---|
| MR #: 400959        AC# | Provider #: |
| PT: | Provider: |

**Onset Date of Medical**  10/14/2009        Knee - Pain  719.46
**Diagnosis with ICD-9:**

**Preferred Practice**  Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or
**Pattern:** soft tissue surgical procedures

**Physical Therapy**
**Diagnosis:**

---

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas 97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 25 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | 15 | 1 |
| Manual Therapy Techniques - 1+ Regions 97140 | 10 | 1 |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas 97014 | 10 | 1 |

**Interventions Comments:** MHP to knee, manual stretching of quads and hams,  therex, ice and IFC e-stim to L knee in supine

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L 7 | 3x10 |
| Leg extension machine | 30 lbs/40% | 3x10 |
| seated knee flexion | 40 lbs/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | | |
| Steamboats | 2 mins | |
| Step ups 6" forward | | 2x10 |

**Current Plan:**    2-3 times per week

Patient's progress toward established goals:    GOOD         Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:    NO

**Additional Comments:**

Pt reports that he has begun massaging the scar on his knee.  Pt was treated and completed his ther ex program without difficulty and no
increase in sx.  Cont PT and progress as able.

11/6/09                Burtmer, Pir

**Date**

                              State Lic #:  A3349

Software Licensed to Sports Pro Physical Therapy

28

**EXHIBIT 1 Pg. JA103**

**Physical Therapy**         **Progress Treatment Note**      Page 1

| | | |
|---|---|---|
| Patient: **PERRY, ANTHONY** | | Date: **Wednesday, November 04, 2009** |
| MR #: **400959** | AC# | Provider #: |
| PT: | | Provider: |

**Onset Date of Medical Diagnosis with ICD-9:** 10/14/2009    Knee - Pain 719.46

**Preferred Practice Pattern:** Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or soft tissue surgical procedures

**Physical Therapy Diagnosis:**

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas 97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 25 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | 15 | 1 |
| Manual Therapy Techniques - 1+ Regions 97140 | 10 | 1 |
| Electrical Stimulation (Unattended) - Modality to 1+ Areas 97014 | 10 | 1 |

**Interventions Comments:** MHP to knee, manual stretching of quads and hams, therex, ice and IFC e-stim to L knee in supine

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L 7 | 3x10 |
| Leg extension machine | 30 lbs/40% | 3x10 |
| seated knee flexion | 40 lbs/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | | |
| Steamboats | 2 mins | |
| Step ups 6" forward | | 2x10 |

**Specific Impairments Observations:**

Impairment Comments: pt's abrasions over distal anterior tibia has scabbed but is not completely healed. He performed all therex with good effort without pain. Pt demonstrated muscle fatigue during quadriceps and hamstrings strengthening. He will benefit from continued progression of strengthening and ROM activity.

**Current Plan:** 2-3 times per week

Patient's progress toward established goals:    GOOD      Patient's response to the PT Interventions: GOOD

Discharge Planning was Discussed with Patient/Caregiver:    NO

**Additional Comments:**

pt reported no increase in pain following yesterday's session. He feels like he is bending his knee much further since his surgery.

     11/4/09      *Arriana P. Roberts, PT, DPT*

**Date**

State Lic #: 22686

Software Licensed to Sports Pro Physical Therapy

*29*

Physical Therapy                    Progress/Treatment Note                    Page 1

| | |
|---|---|
| Patient: **PERRY, ANTHONY** | Date: **Tuesday, November 03, 2009** |
| MR #: 400959    AC#: | Provider #: |
| PT: | Provider: |

**Onset Date of Medical Diagnosis with ICD-9:**  10/14/2009    Knee - Pain 719.46

**Preferred Practice Pattern:** Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or soft tissue surgical procedures

**Physical Therapy Diagnosis:**

### PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas 97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 25 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | 15 | 1 |
| Manual Therapy Techniques - 1+ Regions 97140 | 15 | 1 |

**Interventions Comments:** MHP to knee, manual stretching of quads and hams,  ther ex

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Total gym - Full Squats | L5 | 3x10 |
| Leg extension machine | 20/ 40% | 3x10 |
| seated knee flexion | 20/ 40% | 3x10 |
| Tetter board - 2in - 2 dimensional | 3/3 | |

**Specific Impairments Observations:**

Impairment Comments: Pt with much improved ROM, near full.  Pt with significant weakness of quads.  Pt had small open abrasions. Aquatic therapy on hold until sites are full closed.

**Current Plan:**    2-3 times per week

Patient's progress toward established goals:    GOOD        Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:    NO

11/3/09
**Date**

Daryl Andrew Clarke, PT   16950

**State Lic #:**

Software Licensed to Sports Pro Physical Therapy

30

Patient: **PERRY, ANTHONY**                          Date: **Tuesday, October 27, 2009**

MR #: 400959                                         Provider:

PT:                                                  Provider #:

## Patient Information

Address:                         Birth Date: 10/14/2009
                                 Physician: J. MICHAEL JOLY M.D.

Occupation:                      Physician Num: E27292
Gender:
Contact Person:                  Medicare #:
                                 Claim #:

Comments: Added by PTOS Update  10/28/2009 6:42:09 AM

## Rehabilitation Information / History

Onset Date of  10/14/2009    Knee - Pain  719.46
Medical Diagnosis
with ICD9:

Preferred Practice Pattern:  Musculoskeletal I: Impaired joint mobility, motor function, muscle performance, and ROM associated w/ bony or soft tissue surgical procedures

Physical Therapy Diagnosis:

Recent Physical Therapy:  None within the last sixty days

Prior Functional Status:  Independent with no pain or limitation in ambulation, IADL's, work or recreation

Required Equipment:  None

Weight Bearing Status:  No restrictions

Safety Measures:  Adhere to orthopedic precautions/restrictions

Rehab Prognosis:  Excellent rehab potential to reach and maintain prior level of function

Mental Status:  Alert and oriented in all spheres- cooperative and motivated

Concerns that led to PT:  Decreased functional ability

Systems Review, History:  Pt reports having fallen 2 years ago , hitting his left tib tuberosity. Pt s/p, as described by the patient, Left tib tuberosity resection/ debridement  10/14/09.  Pt reports that he has pain with ambulation and limited knee bending that limited his daily activates. Pt reports that he had limited ability to stair climb, kneel bend knee or squat.
PMH: Hip OA

Patient has a history of behavioral health risks:    NO

Patient / Caregiver concur with established goals:    YES

Patient is aware of and under stands his/her diagnosis and prognosis:    YES

## Functional Measures

Impairment Goals; Short Term:  Decreased end range pain 2-3 points in 3 weeks
Increase strength of quad 1/2 grade in 3 weeks
Increased knee flexion 10 deg in 2 weeks

Functional Goals; Long Term:  Pt will ambulate without pain limitation in 8 weeks
Pt will ascend and descend steps with reciprocal gait without pain in involved knee in 6-8 weeks

10/29/09

Physical Therapy          Initial Evaluation / Examination          Page 2

| Patient: **PERRY, ANTHONY** | Date: Tuesday, October 27, 2009 |
|---|---|

## Physical Findings

### Pain

| | |
|---|---|
| Site #1: | Joint Pain - Knee - Left; At Rest 7/10; With Activity 8/10; Dull; Localized |
| | Exacerbating Factors: Knee flexion & Weight Bearing activities |
| | Relieving Factors:    Avoid activity & Modified activity |

| | |
|---|---|
| **Sensation:** | intact |
| **Myotomal Testing:** | intact |
| **Reflexes:** | intact |

### Girth

| | |
|---|---|
| **Location:** 2 in above patella | |
| Affected Side: 39 cm left | **Unaffected Side:** 40 cm |
| **Location:** Mid patella | |
| Affected Side: 38.3 cm | **Unaffected Side:** 38.5cm |
| **Location:** 2 in above patella | |
| Affected Side: 36.3 cm | **Unaffected Side:** 35.4 cm |

### Specific Joints

**(Note: Blank indicates Strength / Range of Motion are within functional limits or not tested)**

| | | Initial Eval Level | | | | | | | | Goal | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Knee** | | Strength | | Active ROM | | Passive ROM | | **Knee** | | Strength | | Active ROM | | Passive ROM | |
| | | Right | Left | Right | Left | Right | Left | | | Right | Left | Right | Left | Right | Left |
| | Flexion | 5 | 4- | 122° | 112° | | | | Flexion | | 5 | | 125° | | |
| | Extension | 5 | 3+ | 0° | 0° | | | | Extension | | 5 | | | | |

Comments on Knee: Pt had pain with end range

## Additional Comments on Physical Findings:

Palaption: TTP over infrapatella area

## Assessment:

Pt s/p what he describes as tib tuberosity resection/ debridement. Pt was found to have decreased ROM, weakness and pain with end range motions that limited his daily activates. Pt will benefit from PT to address the above issues.

## Interventions (CPT Code)

Physical Therapy Initial Evaluation / Examination  97001
Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas  97113
Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110
Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112
Manual Therapy Techniques - 1+ Regions  97140

**Frequency of PT:** 2-3 times per week

**Duration of PT:** 4 weeks

| | |
|---|---|
| Date | Daryl Andrew Clarke, PT  18959 |
| | State Lic #: |

Software Reg #: I2KQS-2QWX2-2D7HQ-A8ZMQ

PT Initial Evaluation

32

Physical Therapy                                                                    Page 1

---

Patient: **PERRY, ANTHONY**                          Date: **Tuesday, October 27, 2009**

MR #: **400959**           AC#:              Provider #:

PT:                                          Provider:

---

**Onset Date of Medical**  10/01/2009      Knee - Pain  719.46
**Diagnosis with ICD-9:**

    **Physical Therapy**
    **Diagnosis:**

---

## PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Physical Therapy Initial Evaluation / Examination  97001 | 25 | 2 |
| Aquatic Therapy w/exercises - Therapeutic Procedure - 1+ Areas  97113 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 25 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | | |
| Manual Therapy Techniques - 1+ Regions  97140 | | |

**Interventions Comments:** Eval, Pt had good understanding of HEP.

---

| | Lbs / Time | Reps/Sets |
|---|---|---|

**Specific Impairments Observations:**

Impairment Comments: Pt had good understanding of HEP.

**Current Plan:**    2-3 times per week

Patient's progress toward established goals:    GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:    NO

---

Date

_Daryl Andrew Clarke, PT_  10939

State Lic #:

Software Licensed to Sports Pro Physical Therapy

33

| Physical Therapy | Discharge Summary | Page 1 |
|---|---|---|

Patient: PERRY, ANTHONY W.       Date: Tuesday, November 20, 2007
MR #: 302855       Provider:
PT:       Provider #:

## Patient Information

Address: 5907 CROOM STATION RD.       Birth Date: 01/29/56
UPPER MARLBORO   , MD 20772       Physician: ARNULFO BONAVENTE MD

Occupation:       Physician Num: F96804
Gender: Male
Contact Person:       Medicare #:
     Claim #:

Comments: Added by PTOS Update 10/10/07 10:07:19 AM

Onset Date of Medical   01/01/2006   Osteoarthritis - Pelvis & Hip - Localized 715.15
Diagnosis with ICD-9:       Degeneration - Disc - Lumbar or Lumbosacral Intervertebral 722.52

Preferred Practice   Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized
Pattern: inflammation

Physical Therapy
Diagnosis:

---

Goals met: ☐       **Reasons for Discharge**       Patient refuses further treatment: ☐

Hospitalization: ☐       Maximum Level Reached: ☑       Patient expired: ☐

Patient/Care Giver was given proper and timely notification of Discharge:       ◉ Yes   ○ No

No further physical therapy intervention is indicated at this time in this setting. Patient's
physician has been notified that this patient has been discharged from physical therapist's care.       ○ Yes   ◉ No

Additional Discharge Information:

## Functional Measures

### Tolerance to IADLs

Initial Level: Moderate - Severe pain and limitation during and/or after a specific IADL affecting performance

Goal: No pain nor limitation during and/or after a specific IADL affecting performance

Final Level: Moderate - Severe pain and limitation during and/or after a specific IADL affecting performance

### Tolerance to Work Activities

Initial Level: Moderate - Severe pain and limitation in a specific work activity affecting performance

Goal: No pain during and/or after a specific work activity

Final Level: Moderate - Severe pain and limitation in a specific work activity affecting performance

### Tolerance to Recreation Activities

Initial Level: Moderate - Severe pain during and/or after a specific recreational activity affecting performance

Goal: No pain nor limitation in a specific recreational activity affecting performance

Final Level: Moderate - Severe pain during and/or after a specific recreational activity affecting performance

Impairment Goals; Short Term:       Independant with HEP
Decrease pain 1-2 points in 2 weeks
Increase hip strength in flexion, extension, abduction, adduction, IR and ER by one grade in 2-4 weeks

Functional Goals; Long Term:       ADL performance in related activities is improved to prior level of function
IADL performance in related activities is improved to prior level of function
Perform all work related tasks without limitation or pain for 6-8 hour period
Pt will be independant with all functional activites with out pain or limitation.

*34*

Physical Therapy <span>Discharge Summary</span> Page 2

| Patient: PERRY, ANTHONY W. | Date: Tuesday, November 20, 2007 |



## Physical Findings

Pain

Site #1: Left hip; At Rest 4/10; With Activity 5/10; Sharp
Exacerbating Factors: Sitting at work station > 1 hour without break. & Bending
Relieving Factors:   pain meds & REST

Sensation: intact

Myotomal Testing: S1 difficulty with standing on toes
L4-L5 difficulty with heel walks

Reflexes: intact

## Specific Joints

(Note: Blank indicates Strength / Range of Motion are within functional limits or not tested)

### Initial Eval Level

| Hip | Strength Right | Strength Left | Active ROM Right | Active ROM Left | Passive ROM Right | Passive ROM Left |
|---|---|---|---|---|---|---|
| Flexion | 4+ | 4- | 85° | 55° | | |
| Extension | | | | | | |
| Abduction | 4+ | 4- | 72° | 25° | | |
| Adduction | 4+ | 4- | 60° | 10° | | |
| Internal Rotation | | | 25° | 21° | | |
| External Rotation | | | 35° | 10° | | |

### Final Level

| Hip | Strength Right | Strength Left | Active ROM Right | Active ROM Left | Passive ROM Right | Passive ROM Left |
|---|---|---|---|---|---|---|
| Flexion | 4+ | 4- | 85° | 55° | | |
| Extension | | | | | | |
| Abduction | 4+ | 4- | 72° | 25° | | |
| Adduction | 4+ | 4- | 60° | 10° | | |
| Internal Rotation | | | 25° | 21° | | |
| External Rotation | | | 35° | 10° | | |

### Initial Eval Level

| Knee | Strength Right | Strength Left | Active ROM Right | Active ROM Left | Passive ROM Right | Passive ROM Left |
|---|---|---|---|---|---|---|
| Flexion | 4+ | 4 | | | | |
| Extension | 4+ | 4 | | | | |

### Final Level

| Knee | Strength Right | Strength Left | Active ROM Right | Active ROM Left | Passive ROM Right | Passive ROM Left |
|---|---|---|---|---|---|---|
| Flexion | 4+ | 4 | | | | |
| Extension | 4+ | 4 | | | | |

### Initial Eval Level

| Ankle | Strength Right | Strength Left | Active ROM Right | Active ROM Left | Passive ROM Right | Passive ROM Left |
|---|---|---|---|---|---|---|
| Dorsiflexion | 4+ | 3+ | | | | |
| Plantar Flexion | 4+ | 3+ | | | | |
| Inversion | | | | | | |
| Eversion | | | | | | |

### Final Level

| Ankle | Strength Right | Strength Left | Active ROM Right | Active ROM Left | Passive ROM Right | Passive ROM Left |
|---|---|---|---|---|---|---|
| Dorsiflexion | 4+ | 3+ | | | | |
| Plantar Flexion | 4+ | 3+ | | | | |
| Inversion | | | | | | |
| Eversion | | | | | | |

### Initial Eval Level

| Lumbar Spine | Strength | ROM |
|---|---|---|
| Flexion | 4 | 100° |
| Extension | 4 | 100° |

| | Right | Left | Right | Left |
|---|---|---|---|---|
| Lateral Flexion | | | | 100° |
| Lateral Rotation | | | | 100° |

### Final Level

| Lumbar Spine | Strength | ROM |
|---|---|---|
| Flexion | 4 | 100° |
| Extension | 4 | 100° |

| | Right | Left | Right | Left |
|---|---|---|---|---|
| Lateral Flexion | | | | 100° |
| Lateral Rotation | | | | 100° |

Comments on Spine: Pt. experienced pain with lateral flexion and flexion.

| Physical Therapy | Discharge Summary | Page 3 |
|---|---|---|

Patient: PERRY, ANTHONY W.                    Date: Tuesday, November 20, 2007

Spine: Loss of Range and Motion

| | |
|---|---|
| Flexion: W N L | Extension: W N L |
| Right Side Gliding: | Left Side Gliding: W N L |
| Right Lateral Flexion: Minimal | Left Lateral Flexion: |
| Rotation to the Right: | Rotation to the Left: |

**Assessment:**

Assessment: Pt with decreased pain in hip. Still limited in function. Pt did not make future appts. Will f/u with his MD. DC PT at this time.

### Interventions (CPT Code)

Physical Therapy Initial Evaluation / Examination  97001
Traction - Mechanical Modality to 1+ Areas  97012
Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110
Manual Therapy Techniques - 1+ Regions  97140
Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112
Electrical Stimulation (Manual) - Modality to 1+ Areas  97032

**Final Instructions to**
Patient / Caregiver:  Continue with home exercise program

| Date | State Lic #: |
|---|---|

Software Reg #: BXEWP-XWPZS-S49RH-X1XQ1

PT Discharge Summary

3C

**Physical Therapy**                    *Progress / Treatment Note*                    Page 1

| | |
|---|---|
| Patient: PERRY, ANTHONY W. | Date: Tuesday, November 13, 2007 |
| MR #: 302855          AC# | Provider #: |
| PT: | Provider: |

**Onset Date of Medical** 01/01/2006    Osteoarthritis - Pelvis & Hip - Localized 715.15
**Diagnosis with ICD-9:**               Degeneration - Disc - Lumbar or Lumbosacral Intervertebral 722.52

**Preferred Practice** Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized
**Pattern:** inflammation

**Physical Therapy**
**Diagnosis:**

---

### PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Physical Therapy Initial Evaluation / Examination 97001 | 0 | 0 |
| Traction - Mechanical Modality to 1+ Areas 97012 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 25 | 2 |
| Manual Therapy Techniques - 1+ Regions 97140 | 30 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | | |
| Electrical Stimulation (Manual) - Modality to 1+ Areas 97032 | 15 | 1 |

**Interventions Comments:** MHP with e-stim to L hip, manual stretching of ITB, illiopsoas, quads, abd, strain counter strain technique to
adductors/pectinus, L hip mobilizations INF gr 3-4, distraction with ER, STM (strumming) to adductors, ther-ex

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Bridging | | 3x10 |
| Thera Ball - Wall Squats | | 3x10 |
| Lumbar Rotation | | 3x10 |
| Hamstring curls w/ machine | 20 | 3x10 |
| nee flexion machine | 20 | 3x10 |
| Abdominal bracing | 1 | |
| Total gym 1/2 squats | | 3x10 |
| Step Downs- 6 inch | | 3x10 |
| Step Ups - 6 inch | | 3x10 |

**Specific Impairments Observations:**

Impairment Comments: Pt.pain is decreasing in hip and adductors and is beginning to centralize piriformis muscle and ischial tuberosity. Pt.
responded welll to treatment with manual techniques and reported decrease in pain after session. Continue with treatment as tolerated to
decrease pain and increase strength.

**Current Plan:**    2-3 times weekly

Patient's progress toward established goals:    GOOD        Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:    NO

**Date**

D. Andrew Clarke, PT, Clinic #4

Software Licensed to Sports Pro Physical Therapy

*37*

**Physical Therapy**

## Progress / Treatment Note

Page 1

Patient: PERRY, ANTHONY W.                           Date: **Friday, November 09, 2007**

MR #: 302855          AC#                    Provider #:

PT:                                          Provider:

| | |
|---|---|
| Onset Date of Medical Diagnosis with ICD-9: | 01/01/2006   Osteoarthritis - Pelvis & Hip - Localized 715.15 |
| | Degeneration - Disc - Lumbar or Lumbosacral Intervertebral 722.52 |
| Preferred Practice Pattern: | Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation |
| Physical Therapy Diagnosis: | |

### PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Physical Therapy Initial Evaluation / Examination 97001 | 0 | 0 |
| Traction - Mechanical Modality to 1+ Areas 97012 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110 | 25 | 2 |
| Manual Therapy Techniques - 1+ Regions 97140 | 30 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | | |
| Electrical Stimulation (Manual) - Modality to 1+ Areas 97032 | 15 | 1 |

**Interventions Comments:** MHP with e-stim to L hip, manual stretching of ITB, illiopsoas, quads, abd, strain counter strain technique to adductors/pectinus, L hip mobilizations INF gr 3-4, distraction with ER, STM (strumming) to adductors, ther-ex

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Bridging | | 3x10 |
| Thera Ball - Wall Squats | | 3x10 |
| Lumbar Rotation | | 3x10 |
| Hamstring curls w/ machine | 20 | 3x10 |
| Knee flexion machine | 20 | 3x10 |
| Abdominal bracing | 1 | |
| Total gym 1/2 squats | | 3x10 |
| Step Downs- 6 inch | | 3x10 |
| Step Ups - 6 inch | | 3x10 |

**Specific Impairments Observations:**

**Impairment Comments:** Pt. reported relief in hip and LS lasting 3-4 days after last treatment session. Continues to experience tightness in adductors and Hip. Pt, responded well to treatment with siginificant decrease in pain in hip after manual and ther-ex techniques. Continue with POC as tolerated.

**Current Plan:**   2-3 times weekly

Patient's progress toward established goals:   GOOD          Patient's response to the PT Interventions:   GOOD

Discharge Planning was Discussed with Patient/Caregiver:   NO

NOV 0 9 2007

Date: Alex Sekula, MPT   State Lic #   21787

Software Licensed to Sports Pro Physical Therapy

38

| Physical Therapy | Progress / Treatment Note | Page 1 |
|---|---|---|

**Patient: PERRY, ANTHONY W.**          Date: **Wednesday, October 31, 2007**

MR #: 302855          AC#          Provider #:

PT:          Provider:

---

**Onset Date of Medical Diagnosis with ICD-9:** 01/01/2006

Osteoarthritis - Pelvis & Hip - Localized  715.15

Degeneration - Disc - Lumbar or Lumbosacral Intervertebral  722.52

**Preferred Practice Pattern:** Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation

**Physical Therapy Diagnosis:**

---

| PT Interventions and CPT Codes Consisted of: | Minutes | Units |
|---|---|---|
| Physical Therapy Initial Evaluation / Examination  97001 | 0 | 0 |
| Traction - Mechanical Modality to 1+ Areas  97012 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 0 | 0 |
| Manual Therapy Techniques - 1+ Regions  97140 | 45 | 3 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | | |
| Electrical Stimulation (Manual) - Modality to 1+ Areas  97032 | 15 | 1 |

**Interventions Comments:** MHP with e-stim to L hip, manual stretching of ITB, illiopsoas, quads, abd, strain counter strain technique to adductors/pectinus, L hip mobilizations INF gr 3-4, distraction with ER, STM (strumming) to adductors

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Bridging | | |
| Thera Ball - Wall Squats | | |
| Lumbar Rotation | | |
| Total back alternating arm and leg | | |
| Total Back - Back extension | | |
| Abdominal bracing | 1 | |

**Specific Impairments Observations:**

Impairment Comments: Pt.reports decreased pain in hip and lateral thigh, however continues to display pain in inner thigh adductors. Pt. has relief in manaul treatment with decreased pain. Continue with strengthening ther-ex for functional recovery.

**Current Plan:**          2-3 times weekly

Patient's progress toward established goals:          GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:          NO

OCT 3 1 2007

Dr. Andrew Clarke, PT          18090

State Lic #:

Software Licensed to Sports Pro Physical Therapy

39

Physical Therapy                     **Progress / Treatment Note**                     Page 1

Patient: PERRY, ANTHONY W.                     Date: Thursday, October 25, 2007

MR #: 302855                 AC#                     Provider #:

PT:                                                  Provider:

| Onset Date of Medical Diagnosis with ICD-9: | 01/01/2006 | Osteoarthritis - Pelvis & Hip - Localized 715.15 |
| | | Degeneration - Disc - Lumbar or Lumbosacral Intervertebral 722.52 |

Preferred Practice Pattern: Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation

Physical Therapy Diagnosis:

---

### PT Interventions and CPT Codes Consisted of:

| | Minutes | Units |
|---|---|---|
| Physical Therapy Initial Evaluation / Examination  97001 | 0 | 0 |
| Traction - Mechanical Modality to 1+ Areas  97012 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 0 | 0 |
| Manual Therapy Techniques - 1+ Regions  97140 | 45 | 3 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | | |
| Electrical Stimulation (Manual) - Modality to 1+ Areas  97032 | 15 | 1 |

Interventions Comments: MHP with e-stim to L hip, manual stretching of ITB, illiopsoas, quads, abd, strain counter strain technique to adductors/pectinus, L hip mobilizations INF gr 3-4, distraction with ER, STM (strumming) to adductors

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Bridging | | |
| Thera Ball - Wall Squats | | |
| Lumbar Rotation | | |
| Total back alternating arm and leg | | |
| Total Back - Back extension | | |
| Abdominal bracing | | 1 |

Specific Impairments Observations:

Impairment Comments: Pt. reports continued relief with pain, however pain has localized to groin and buttock. Pt continues to show improvement in pain management with decreased pain after manual techniques. Continue with progression of strengthening ther-ex.

Current Plan:     2-3 times weekly

Patient's progress toward established goals:     GOOD          Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:     NO

OCT 2 5 2007
D. Andrew Clarke, PT                                          am18090 B, SPT
Date                          State Lic#:

Software Licensed to Sports Pro Physical Therapy

40

Physical Therapy　　　　　　　*Progress / Treatment Note*　　　　　　　Page 1

Patient: PERRY, ANTHONY W.　　　　　　　Date: Tuesday, October 23, 2007

MR #: 302855　　　　AC#　　　　　　Provider #:

PT:　　　　　　　　　　　　　　　Provider:

| Onset Date of Medical Diagnosis with ICD-9: | 01/01/2006 | Osteoarthritis - Pelvis & Hip - Localized  715.15 |
| | | Degeneration - Disc - Lumbar or Lumbosacral Intervertebral  722.52 |
| Preferred Practice Pattern: | | Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation |
| Physical Therapy Diagnosis: | | |

---

**PT Interventions and CPT Codes Consisted of:**

| | Minutes | Units |
|---|---|---|
| Physical Therapy Initial Evaluation / Examination - 97001 | 0 | 0 |
| Traction - Mechanical Modality to 1+ Areas  97012 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 20 | 1 |
| Manual Therapy Techniques - 1+ Regions  97140 | 30 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | | |
| Electrical Stimulation (Manual) - Modality to 1+ Areas  97032 | 15 | 1 |

Interventions Comments: MHP with e-stim to L hip, manual stretching of ITB, illiopsoas, quads, abd, strain counter strain technique toadductors/pectinus, L hip mobilizations INF, distraction with ER

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Bridging | | 2x15 |
| Thera Ball - Wall Squats | | 20 |
| Lumbar Rotation | 5 min | |
| Total back alternating arm and leg | | 2x15 |
| Total Back - Back extension | | 2x15 |
| Abdominal bracing | red theraball | 2x15 |

**Specific Impairments Observations:**

Impairment Comments: Pt. reported relief lasting 1.5 days since last treatment session. Today states today pain 7/10 in inner thigh and L hip joint. Pt. Showed imporvement with more control with eccentric bridging. Pt. Responded well to treament with decrease in pain after session.

**Current Plan:**　　2-3 times weekly

Patient's progress toward established goals:　　GOOD　　　　Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:　　NO

OCT 2 3 2007

D. Andrew Clarke, PT　　　Date　　State lic #:

Software Licensed to Sports Pro Physical Therapy

41

Physical Therapy               Progress / Treatment Note                    Page 1

Patient: PERRY, ANTHONY W.                    Date: Friday, October 19, 2007
MR #: 302855          AC#                    Provider #:
PT:                                          Provider:

Onset Date of Medical   01/01/2006   Osteoarthritis - Pelvis & Hip - Localized 715.15
Diagnosis with ICD-9:               Degeneration - Disc - Lumbar or Lumbosacral Intervertebral 722.52

Preferred Practice   Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized
        Pattern:   inflammation

Physical Therapy
        Diagnosis:

| PT Interventions and CPT Codes Consisted of: | Minutes | Units |
|---|---|---|
| Physical Therapy Initial Evaluation / Examination 97001 | 0 | 0 |
| Traction - Mechanical Modality to 1+ Areas 97012 | | |
| Therapeutic Exercises – Therapeutic Procedure - 1+ Areas 97110 | 20 | 1 |
| Manual Therapy Techniques - 1+ Regions 97140 | 30 | 2 |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112 | | |
| Electrical Stimulation (Manual) - Modality to 1+ Areas 97032 | 15 | 1 |

Interventions Comments: MHP with e-stim to L hip, manual stretching of ITB, illiopsoas, quads, abd, strain counter strain technique to L4, L5

| Progressive Exercises: | Lbs / Time | Reps/Sets |
|---|---|---|
| Bridging | | 20 |
| Thera Ball - Wall Squats | | 20 |
| Lumbar Rotation | 5 min | |

Specific Impairments Observations:

Impairment Comments: Pt. Reported pain 8/10 today before treatment. Pt. c/o pain with palpation to illiopsoas muscle, inner thigh muscles. Pt. Responded well to strain counter strain with significant decrease in pain to 4/10. Pt. Displayed weakness in hip flexors with slight difficulty performing eccentric bridging.

Current Plan:    2-3 times weekly

Patient's progress toward established goals:   GOOD        Patient's response to the PT Interventions: GOOD
Discharge Planning was Discussed with Patient/Caregiver:    NO .

OCT 1 9 2007
Date
Alex Sekirin, MPT        State Lic #: 21787

Software Licensed to Sports Pro Physical Therapy

42

| Physical Therapy | Progress / Treatment Note | Page 1 |
|---|---|---|

| Patient: PERRY, ANTHONY | Date: Wednesday, October 17, 2007 |
|---|---|
| MR #: 302855          AC# | Provider #: |
| PT: | Provider: |

| Onset Date of Medical<br>Diagnosis with ICD-9: | 01/01/2006 | Osteoarthritis - Pelvis & Hip - Localized  715.15<br>Degeneration - Disc - Lumbar or Lumbosacral Intervertebral  722.52 |
|---|---|---|
| Preferred Practice<br>Pattern: | Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized<br>inflammation | |
| Physical Therapy<br>Diagnosis: | | |

| PT Interventions and CPT Codes Consisted of: | Minutes | Units |
|---|---|---|
| Physical Therapy Initial Evaluation / Examination  97001 | 40 | 1 |
| Traction - Mechanical Modality to 1+ Areas  97012 | | |
| Therapeutic Exercises - Therapeutic Procedure - 1+ Areas  97110 | 25 | 2 |
| Manual Therapy Techniques - 1+ Regions  97140 | | |
| Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas  97112 | | |

Interventions Comments: HEP written and demonstrated with compliance of pt. MHP to L hip. See chart for ther-ex details.

| | Lbs / Time | Reps/Sets |
|---|---|---|

**Specific Impairments Observations:**

Impairment Comments: Pt.. Presents with low back, and hip pain secondary to osetoarthritis and DDD of lumbar spine and hip. C/O of radicular pain into groin and buttock area limiting ROM, functional activities, increasing pain, and decreasing strength. Pt. would benefit from PT to improve above issuses as indicated.

**Current Plan:**     2-3 times weekly

Patient's progress toward established goals:     GOOD                Patient's response to the PT Interventions:  GOOD

Discharge Planning was Discussed with Patient/Caregiver:     NO

OCT 1 7 2007
Date

D. Andrew Clarke, PT     18090   Lic #:

Software Licensed to Sports Pro Physical Therapy

43

Physical Therapy                    Initial Evaluation / Examination                    Page 1

Patient: PERRY, ANTHONY W.                         Date: Wednesday, October 17, 2007
MR #: 302855                                       Provider:
PT:                                                Provider #:

## Patient Information

Address: 5907 CROOM STATION RD.          Birth Date: 01/29/56
         UPPER MARLBORO   , MD 20772     Physician: ARNULFO BONAVENTE MD

Occupation:                              Physician Num: F96804
Gender: Male
Contact Person:                          Medicare #:
                                         Claim #:

Comments: Added by PTOS Update  10/10/07 10:07:19 AM

## Rehabilitation Information / History

| | |
|---|---|
| Onset Date of 01/01/2006 Medical Diagnosis with ICD9: | Osteoarthritis - Pelvis & Hip - Localized 715.15 <br> Degeneration - Disc - Lumbar or Lumbosacral Intervertebral 722.52 |
| Preferred Practice Pattern: | Musculoskeletal E: Impaired joint mobility, motor function, muscle performance, ROM associated w/ localized inflammation |
| Physical Therapy Diagnosis: | |
| Recent Physical Therapy: | None within the last sixty days |
| Prior Functional Status: | Independent with no pain or limitation in ambulation, IADL's, work or recreation |
| Required Equipment: | None |
| Weight Bearing Status: | No restrictions |
| Safety Measures: | Adhere to orthopedic precautions/restrictions |
| Rehab Prognosis: | Excellent rehab potential to reach and maintain prior level of function |
| Mental Status: | Alert and oriented in all spheres- cooperative and motivated |
| Concerns that led to PT: | Decreased functional ability |
| Systems Review, History: | Pt. reports pulled groin 1 year ago and has been experiencing hip, lower back, and buttock pain. Pt. reports radiating sharp pain in inner thigh and buttock with certain motions such as bending forward and sitting for long periods of interstates he has been experiencing some sciatic problems as well. Pt. reports currently seeing a chiropractor for about 6wks and receiving cortisone shots in the lower back and hip for pain relief. Pt. states he had PT for awhile for strengthening but not for pain relief. PMH includes borderline diabetic controlled by meds. Meds currently taking include pain, diuretic. Pt. reports having MRI and xrays taken in the past revealing arthritis in back and hip. Pt. goals are to strengthen area that are weak for faster recovery. |

Patient has a history of behavioral health risks:   NO

Patient / Caregiver concur with established goals:   YES          16/18/07

Patient is aware of and understands his/her diagnosis and prognosis:   YES   Arnulfo Bonavente, M.D

## Functional Measures

### Tolerance to IADLs

Current Level: Moderate - Severe pain and limitation during and/or after a specific IADL affecting performance

Goal: No pain nor limitation during and/or after a specific IADL affecting performance

PT Initial Evaluation

44

Physical Therapy    **Initial Evaluation / Examination**    Page 3

Patient: PERRY, ANTHONY    Date: Wednesday, October 17, 2007

| Initial Eval Level | | | | | Goal | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Lumbar Spine** | | Strength | ROM | | **Lumbar Spine** | | Strength | ROM | |
| | Flexion | 4 | 100° | | | Flexion | 5 | | |
| | Extension | 4 | 100° | | | Extension | 5 | | |
| | | Right Left | Right Left | | | | Right Left | Right Left | |
| Lateral Flexion | | | 100° | | Lateral Flexion | | | | |
| Lateral Rotation | | | 100° | | Lateral Rotation | | | | |

Comments on Spine: Pt. experienced pain with lateral flexion and flexion.

### Spine: Loss of Range and Motion

| | | |
|---|---|---|
| Flexion: W N L | | Extension: W N L |
| Right Side Gliding: | | Left Side Gliding: W N L |
| Right Lateral Flexion: Minimal | | Left Lateral Flexion: |
| Rotation to the Right: | | Rotation to the Left: |

### Assessment:

Pt.. Presents with low back, and hip pain due to osteoarthritis and DDD of lumbar spine and hip joint. C/O radicular pain into groin and buttock area resulting in increasing pain, decreasing strength, limiting ROM and functional activities. Pt. would benefit from PT to improve above issues as indicated.

### Interventions (CPT Code)

Physical Therapy Initial Evaluation / Examination 97001
Traction - Mechanical Modality to 1+ Areas 97012
Therapeutic Exercises - Therapeutic Procedure - 1+ Areas 97110
Manual Therapy Techniques - 1+ Regions 97140
Neuromuscular Reeducation - Therapeutic Procedure - 1+ Areas 97112

**Frequency of PT:** 2-3 times weekly

**Duration of PT:** 4-6 weeks

OCT 1 7 2007
Date

D. Andrew Clarke, PT    18096
State Lic #:

Software Reg #: BXEWP-XWPZS-S49RH-X1XQ1

PT Initial Evaluation

45

David Dorin, M.D.
Joseph T. Crowe, M.D.
J. Michael Joly, M.D.
Stephen D. Webber M.D.
Michael J. Magee M.D.
Leonid Selya, M.D.
CLINICAL OFFICES:
    Bowie: (301) 464-5575
    Clinton: (301) 599-9500
    Greenbelt: (301) 345-8636

*Board Certified Orthopaedic Surgeons*
"Over 45 Years Of Service"

Piscataway Towers
9135 Piscataway Road, Suite 300
Clinton, Maryland 20735

Phone: (301) 599-9500
Fax: (301) 599-0577

GENERAL ORTHOPAEDICS
ARTHROSCOPY
SPORTS MEDICINE
SPINE
HAND
SHOULDER & ELBOW
HIP & KNEE RECONSTRCTION
FOOT & ANKLE

Patient ID:    **443210A**
Patient Name: **ANTHONY  PERRY**
Date of Birth:  **01/29/1956**
Service Date:  **03/29/2012**

DISABILITY CERTIFICATE

To Whom It May Concern

I Hereby Certify that Anthony Perry

Has Been Under My Professional Care,

From:    02/27/12 Surgery

To:   04/09/12 return back to work

Remarks:  Patient was seen in our office on today, patient may return back to work on 04/09/12. Allow patient to have 15 minute breaks, Mr.Perry may need to stand and  stretch when needed.Follow up in 1 month.

Sincerely,

J. Michael Joly, M.D.

**EXHIBIT I, Pg. JA121**

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 100 of 424
USCA Case #14-1155       Document #1537564       Filed: 02/13/2015       Page 123 of 596

Capital Orthopedics Specialist, P.C.
9135 Piscataway Rd. Suite 300
Clinton, MD 20735
(301) 599-9500 Ex. 236

**Patient: Anthony Perry**

**Procedure: Left Hip Replacement**

**Date/Time**: Monday, February 27, @ 7:00 A.M

If required you must bring your x-rays and/ or films with you to the hospital the day of surgery, your
surgery will be rescheduled without your films.

**Location:**

    \_\_\_ SurgCenter of Greenbelt 7300 Hanover PKWY #102, Greenbelt, MD
       (240) 297-9858

   **_X_**\_ Doctor's Community Hospital 8118 Good luck Rd., Lanham, MD
       (301) 552-8118

    \_\_\_ Southern Maryland Hospital 7503 Surratt's Rd., Clinton, MD
       (301) 868-8000

    \_\_\_ Georgetown University Hospital 3800 Reservoir Rd., NW Washington, DC
       (202) 444-2000

- Your Pre-Admission tests should not be done earlier than 30 days
- Call your medical doctor or hospital where surgery will be done to have labs completed
- Please have all Pre-Admission test results faxed to Capital Orthopedics
- EKGs need not be repeated if done within 3 months
- **Blood work need not to be repeated if done within the 30 days**
- **You must stop all herbal teas, supplements, diet pills, and any aspirin products two weeks prior to surgery**
- **If you are on blood thinning products ( Plavix, Coumadin etc.), Please consult the Physician who prescribed this medication for instructions on stopping and restarting your medication**
- **Must stop ALL Vitamin E, fish oil, flaxseed 2 weeks prior to surgery**
- Please report to the hospital 2 hours prior to your surgery
- Please report to the ambulatory, Someone MUST pick you up
- Please have your Primary Care Physician complete a surgical referral if you have MDIPA, Optimum Choice, Care First Blue Choice, or an Aetna HMO insurance policy

**DO NOT EAT OR DRINK ANYTHING AFTER MID NIGHT THE NIGHT BEFORE
YIUR SURGERY-EXCEPT AS DIRECTED BY THE PRE-OP NURSE OR PHYSICIAN**

A certified surgical assistant may be required to assist during your surgery. If there are ANY
questions regarding your procedure, they must be directed to the surgeon and a Pre-Op
appointment should be made.

ALL OTHER QUESTIONS, PLEASE CALL TEQUILA (301) 599-9500 X 236

47

| **From:** | Randall G Murbach/HRD/HQ/BOC |
|---|---|
| **To:** | Dale Richard Reed/LTSO/HQ/BOC@BOC |
| **Cc:** | Anthony W Perry/LTSO/HQ/BOC@BOC, randall.g.murbach@census.gov |

| **Date:** | Tuesday, June 21, 2011 08:09AM |
|---|---|
| **Subject:** | *Confidential: Reasonable Accommodation (RA) Request Notification (A. Perry) |

Dear Mr. Dale Reed,

This email serves as official notice to let you know that an employee in your group (Anthony Perry) has submitted a reasonable accommodation (RA) request with DDPO on 6/13.

We will keep you posted on this case and will contact you when it comes time to discuss the accommodation options being proposed by Mr. A. Perry, if needed.

Thanks,

**Randy Murbach**
Reasonable Accommodations Coordinator
HRD - Disability and Diversity Program Office (DDPO)
U.S. Census Bureau

Office/VP: 301-830-6473
Fax: 301-763-9895
E-mail: randall.g.murbach@census.gov
www.census.gov
Intranet: http://cww.hrd.census.gov/hrd/emp/disability/ra.htm

*Connect with us:*

Appeal No.

Anthony W. Perry

UNITED STATES DEPARTMENT OF COMMERCE
Economics and Statistics Administration
U.S. Census Bureau
Washington, DC 20233-0001

## Notice of Approval of Request for Accommodation

November 10, 2011

Dear Mr. Anthony Perry/Requestor:

This letter is in response to your request for reasonable accommodation dated June 13, 2011, which has been approved.

Accommodation Requested:

1) New work schedule with a combination of AWS/alternate work schedule (5/4/9) and one 15 minutes break per hour as follows:

| Day / Week | Monday | Tuesday | Wednesday | Thursday | Friday |
|---|---|---|---|---|---|
| 1st | 9 | 9 | 9 | 9 | 4/AWS (1/2 day) |
| 2nd | 9 | 9 | 9 | 9 | 4/AWS (1.2 day) |
| Daily Breaks | 8:30am to 8:45am (1/L) 9:45am to 10am (2/E) 11am to 11:15am (3/E) 2:15pm to 2:30pm (3/L) 3:30pm to 3:45pm (5/E) | 8:30am to 8:45am (1/L) 9:45am to 10am (2/E) 11am to 11:15am (3/E) 2:15pm to 2:30pm (3/L) 3:30pm to 3:45pm (5/E) | 8:30am to 8:45am (1/L) 9:45am to 10am (2/E) 11am to 11:15am (3/E) 2:15pm to 2:30pm (3/L) 3:30pm to 3:45pm (5/E) | 8:30am to 8:45am (1/L) 9:45am to 10am (2/E) 11am to 11:15am (3/E) 2:15pm to 2:30pm (3/L) 3:30pm to 3:45pm (5/E) | 8:30am to 8:45am (1/L) 9:45am to 10am (2/E) 11am to 11:15am (3/E) |
| Hours | 7:30am to 5pm | 7:30am to 5pm | 7:30am to 5pm | 7:30am to 5pm | 7:30am to 12pm |

Note: L – Legal and E – Extra. Employee may chose to use less "breaks" each day and modify their departure time with consent from their manager.

2) The duration of this new work schedule will be for up to one year beginning on 11/07/2011 and ending in October 2012.

Deciding Official Name: Terryne F. Murphy

Deciding Official Title: Supervisory IT Specialist/Division Chief

Date Approved: 11/09/2011

Action Plan: New work schedule begins immediately.

If you have any further questions about this reasonable accommodation request approval, please contact me at 301-830-6473 or hrd.accommodations@census.gov .

Respectfully,

Randy Murbach
Reasonable Accommodations Coordinator (RAC)
Disability & Diversity Program Office (DDPO) - 2J234

For Attach 02 - 01

49

Page 1 of 1

**EXHIBIT 1 Pg. JA125**
Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 103 of 424
USCA Case #14-1155      Document #1537564      Filed: 02/13/2015      Page 127 of 596



Re: leave req...

| New | Reply | Reply To All | Forward | | Above |

### Re: leave request question for 7-11-11

Anthony W Perry

To:  Dale Richard Reed

Cc:  Anthony W Perry

I will take the extra time on another day.   Thanks.

-----Dale Richard Reed/LTSO/HQ/BOC wrote: -----

> To: Anthony W Perry/LTSO/HQ/BOC@BOC
> From: Dale Richard Reed/LTSO/HQ/BOC
> Date: 07/21/2011 11:28AM
> Cc: Dale Richard Reed/LTSO/HQ/BOC@BOC
> Subject: leave request question for 7-11-11

> Tony:

> I approved your request, but on 7-11 you entered two hours from 11
> to 1, but you did have lunch, correct. That means you should have
> only one hour for leave, not two.

> Dale

> Dale R. Reed
> Chief, Business Planning Staff
> LAN Technology Support Office (LTSO)
> (301) 763-5080 (p)
> (301) 763-4628 (f)

**Left sidebar:**

Anthony W Perry
IT012HQLNM/HQ/BOC

Inbox (16)
Drafts
Sent
Follow Up
All Documents
Junk
Trash

Views

Folders
  2007 Renewals
  2008 Assignments
  2008 Budget Guidanc
  2008 Personnel
  2011-2012 ITBP
  2011-Shared Directory
  2012 Project Prioritiza
  A-76 IT Contractor vs
  ABC
  accountaccess
  AcquIntegration
  Acquisitions-fy10
  Acquisitions05
  ActionLearning
  ACW2006
  ACW2007
  AJackson
  ALDP Mentor
  allmine
  AllSuccessionPlng
  Assignments2007
  BIG
  books24x7
  CAAMG
  CAAMG07
  CAAMG11
  CAAMGKincannon
  CapabilityMaturityMod

FAx Attach 11-p1

**From:**   Anthony W Perry/LTSO/HQ/BOC
**To:**     Terryne F Murphy/ISSRO/HQ/BOC@BOC

**Date:**    Tuesday, July 05, 2011 11:15AM
**Subject:** Indirectly Related Followup

Terryne,

I wanted to briefly state that in completing the Change Management presentation and matrix I was asked to do, I must have spent at least 40 hours working on them at home. I never expected to be paid for that time. Also, in general I have given the Bureau hundreds and hundreds of hours of unpaid time because I did what it took to complete my work even if it meant work from home. This is information that I hesitated putting in the response document because of the specificity of the charges. I am not though trying to avoid my responsibility in the matter.

Also I have wanted to be moved and asked to be removed from under Dale Reed for some time now.

Sincerely,

Tony

FAx Attach :8 - PI

2

Page 1 of 1

Case 1:17-cv-01932-TSC Document 30-4 Filed 11/19/18 Page 105 of 424
USCA Case #14-1155    Document #1537564    Filed: 02/13/2015    Page 129 of 596

**From:** Anthony W Perry/LTSO/HQ/BOC
**To:** "Dale Reed" <dale.richard.reed@census.gov>

**Date:** Friday, April 30, 2010 06:32PM
**Subject:** Fw: Information on IPCD

**From:** Willette Allen
**Sent:** 04/30/2010 12:21 PM EDT
**To:** Anthony Perry
**Cc:** Timothy Olson; Bettye Moohn
**Subject:** Information on IPCD

Tony,

Attached is the information on IPCD.  Call me if you have questions 301.832.4567.

Willette Allen
Partnership & Data Services Branch
Field Division
U.S. Census Bureau
301.763.2032

Attachments:

IPCD Fact Sheet 043010WA.doc

FAX Attach  21-Pl
Note: see time email forward to supervisor

3

**From:**   Anthony W Perry/LTSO/HQ/BOC
**To:**   Dale Richard Reed/LTSO/HQ/BOC@BOC, "Anthony Perry"
<anthony.w.perry@census.gov>

**Date:**   Wednesday, April 28, 2010 07:43PM
**Subject:**   Assignments Given

Dale,

Thanks for putting the cloud task in writing or forwarding tje relevant email.
I would appreciate you doing the same for recent assignments for several reasons, including your
benefit. Please include the deliverable or outcome expected.

Thanks,
TP

FAX Attach 22-P1

Note: See time email sent to supervisor

| From: | Anthony W Perry/LTSO/HQ/BOC |
|---|---|
| To: | Thomas W Gramlich/HRD/HQ/BOC@BOC, "Dale Reed" <dale.richard.reed@census.gov> |
| Cc: | "Anthony Perry" <anthony.w.perry@census.gov> |

| Date: | Tuesday, April 20, 2010 06:14PM |
|---|---|
| Subject: | Re: Additional Information about Everbridge Aware |

Thank you Tom. I am out of the office until Thursday and will look at it when I return.

Tony

Thomas W Gramlich

----- Original Message -----
  From: Thomas W Gramlich
  Sent: 04/20/2010 05:45 PM EDT
  To: Anthony Perry
  Subject: Fw: Additional Information about Everbridge Aware

The Census Bureau has contracted with Everbridge, Inc. to provide an employee notification system. This software as a service (SaaS) solution provides scalable services for implementing a mass notification system with the functionality for one person to communicate with tens, hundreds, or thousands of employees, customers and others anywhere, anytime, through a variety of communication means. A mass notification system is an integral component of an organization's emergency and routine communications capabilities. Using the SaaS solution enabled the Census Bureau to implement a solution that provides superior scalability, availability and security with lower implementation and maintenance costs. The Census Bureau has no hardware or software to purchase and support. We take advantage of a superior infrastructure with multiple data centers in an active-active configuration, ensuring that a large disaster will not disrupt the service. We can easily scale up to include the 2010 Census temporary workers and scale back down following the Census.

Census will use the Everbridge Aware System, a web-based application, to load contact information for all employees including all 2010 temporary hires. Contact information including 4 phones (home, work, government mobile and personal mobile), 3 emails (work, personal and other), two phones for primary and secondary emergency contacts and 3 TTY phone numbers will be uploaded on a weekly basis. All contact information for employees paid through the NFC system must be updated in the Census Human Resources Information System (CHRIS). Contact information for 2010 temporary hires will be captured from paper forms and keyed in the RCCs. The system does not include any contractors with Census.

Fifteen organizations including one for each region, HQ, NPC and a BOC Master have been setup in the system along with thousands of groups based on organization codes and residence

FAX Attach 23-Pl
Note: See time of reply with copy to supervisor        5-

Page 2 of 3

EXHIBIT 1 Pg. JA130
Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 108 of 424
USCA Case #14-1155     Document #1537564     Filed: 02/13/2015     Page 132 of 596

state/counties.  Each region will be able to manage the data for all of their employees and add more members if needed.

The system includes 4 types of notifications described in the attached handout and has an excellent reporting tool. The Everbridge system is actually located in a telephone company called Quest and is capable of sending at least 40,000 phone calls and 100,000 emails in the first hour of a broadcast.

The contract is for 3 years and costs include an annual membership fee for each record (starting at $1.61) and usage fees of 11 cents per voice connection for broadcasts.

The Acquisition process required the vendor to have a C&A in a federal agency. Everbridge did have a C&A with GSA that was verified by Tim Rulands staff prior to the contract being awarded.

Let me know if you need something else?

Tom

Tom Gramlich
Human Resources Division
U.S. Census Bureau
(301) 763-3736

----- Forwarded by Thomas W Gramlich/HRD/HQ/BOC on 04/20/2010 05:03 PM ------

| From: | Anthony W Perry/LTSO/HQ/BOC |
| To: | Thomas W Gramlich/HRD/HQ/BOC@BOC |
| Cc: | Anthony W Perry/LTSO/HQ/BOC@BOC |
| Date: | 04/16/2010 01:25 PM |
| Subject: | Fw: Additional Information about Everbridge Aware |

Tom, the CIO would like to have a short paragraph problem statement that the Everbridge solution solves and then information related to cost, duration of the contract, did you perform certification and accredidation or did you use another agency's C&A, what were the benefit/cost analysis results that led to the selection (time and cost savings, efficiencies, etc). Please let me know if you need additional information. Below is information we have captured already.

Thanks,

Tony

1)    Everbridge Aware SaaS

The Census Bureau has contracted with Everbridge, Inc. to provide an employee notification system.
This software as a service (SaaS) solution provides scalable services for implementing a mass
notification system with the functionality for one person to communicate with tens, hundreds, or
thousands of employees, customers and others anywhere, anytime, through a variety of
communication means. A mass notification system is an integral component of an organization's
emergency and routine communications capabilities. Using the SaaS solution enabled the Census
Bureau to implement a solution that provides superior scalability, availability and security with lower
implementation and maintenance costs. The Census Bureau has no hardware or software to
purchase and support. We take advantage of a superior infrastructure with multiple data centers in
an active-active configuration, ensuring that a large disaster will not disrupt the service. We can
easily scale up to include the 2010 Census temporary workers and scale back down following the
Census.
[attachment "CENSUS    Employee Notification System.doc" deleted by Anthony W
Perry/LTSO/HQ/BOC]

FAX Attach 23-P3

6 7

**From:**   Anthony W Perry/LTSO/HQ/BOC
**To:**   Joyce M Annan/DIR/HQ/BOC@BOC

**Date:**   Tuesday, April 06, 2010 06:49PM
**Subject:**   Re: Request for Meeting with Brian per Conversation

---

Thank you Joyce.

        Joyce M Annan

        ----- Original Message -----
          **From:** Joyce M Annan
          **Sent:** 04/06/2010 09:18 AM EDT
          **To:** Anthony Perry
          **Subject:** Re: Request for Meeting with Brian per Conversation
Hi Tony,

I set the meeting up on April 8 from 11:00 - 11:30. Your welcome.

Joyce

    Anthony W Perry---04/05/2010 03:27:32 PM---Joyce, Please set up a 1/2 hour meeting for me with
Brian to discuss the Change Management assignmen

                Anthony W Perry/LTSO/HQ/BOC

        From:
                Joyce M Annan/DIR/HQ/BOC@BOC

        To:

        Cc:     Anthony W Perry/LTSO/HQ/BOC@BOC

                04/05/2010 03:27 PM
        Date:
                Request for Meeting with Brian per Conversation
        Subject:

Joyce,

Please set up a 1/2 hour meeting for me with Brian to discuss the Change Management assignment. I
am available before 7:30 am or after 5:00 as alternatives to fitting me into his work schedule.

I plan to be out of the office tomorrow and Wednesday.

Thanks,

Tony

FAX Attach 29-P!

Note: see time of reply

| | |
|---|---|
| **From:** | Anthony W Perry/LTSO/HQ/BOC |
| **To:** | Brian E McGrath/DIR/HQ/BOC@BOC, "Anthony Perry" <anthony.w.perry@census.gov> |
| **Cc:** | Dale Richard Reed/LTSO/HQ/BOC@BOC, Patricia Trainor Musselman/LTSO/HQ/BOC@BOC |
| **Date:** | Friday, April 02, 2010 09:01PM |
| **Subject:** | Re: Draft Presentation of Change Management Assessment |

Brian,

I may have miscommunicated what I was thinking. First, the "as-is" was near completed before the powerpoint and at any time can be brought to the screen during a presentation or discussed using a printout of the MS Excel workbook I created from the questionnaire and each divisions's response.

Thinking out loud I was considering the difficulty creating slides from this workbook (resolution, density of data, etc). I'll put a link to the workbook in the presentation.

If you want to see the responses before I add the link to the powerpoint, see the .pdf in the referenced Wedneday email from me.

Regards,

TP

---

**From:** Brian E McGrath
**Sent:** 04/02/2010 08:39 AM EDT
**To:** Anthony Perry
**Cc:** Anthony Perry; Dale Reed; Patricia Musselman
**Subject:** Re: Draft Presentation of Change Management Assessment

Tony,

The "as is" or current state of action and maturity of change/configuration management in each division is critical to your presentation. That is the focus of this activity.

Brian

From      Anthony W Perry/LTSO/HQ/BOC

To        Brian E McGrath/DIR/HQ/BOC@BOC

Cc        Patricia Trainor Musselman/LTSO/HQ/BOC@BOC, Dale Richard Reed/LTSO/HQ/BOC@BOC, "Anthony Perry"
          <anthony.w.perry@census.gov>

Date      04/01/2010 07:37 PM

          Re: Draft Presentation of Change Management Assessment

FAX Attach 26~P1

Note: See time of email to management official, Supervisor and Div. Chief

Subject:

Brian,

I understand your request to include the "as-is" in the presentation. I have been thinking about how to include the answers to 49 questions for 6 divisions in the presentation from the start.

In an email I sent Wednesday with 2 attachments, one is a 16-page .pdf of each division's answers to the 49 questions of the questionnaire. Does that document answer your request, though it is not part of the power point presentation? The .pdf of the questions and answers could be projected just the same.

Alternatively I will attempt to create readable slides out of the 16 pages.

Tony

----- Original Message -----
   **From:** Brian E McGrath
   **Sent:** 03/31/2010 07:47 PM EDT
   **To:** Anthony Perry
   **Cc:** Patricia Musselman; Dale Reed
   **Subject:** Re: Draft Presentation of Change Management Assessment

Tony,

Could you add the "as is" element for each Division in the IT Directorate to your presentation? It would be helpful for you to include what each IT Division is doing to manage (document and approve) change to their existing systems.

Brian

| | |
|---|---|
| From: | Anthony W Perry/LTSO/HQ/BOC |
| To: | Brian E McGrath/DIR/HQ/BOC@BOC |
| Date: | 03/30/2010 07:21 AM |
| Subject: | Draft Presentation of Change Management Assessment |

Brian,

attached is my presentation. I will print copies for meeting. Please take a couple of minutes and run the slide show. I also will print and bring a consolidated workbook with the IT Division responses to the change management questionnaire. I provided Dale and Tish with a copy of the presentation.

*See Attach ...*

**From:** Anthony W Perry/LTSO/HQ/BOC
**To:** "Robert Groves" <robert.m.groves@census.gov>, "Anthony Perry" <anthony.w.perry@census.gov>

**Date:** Wednesday, March 03, 2010 07:38PM
**Subject:** More Evidence of Need for Org. Improvement

Dr. Groves, see email below.
In my humble opinion, I consider HRD's handling of my (and other) simple negotiated and legal agreement to revise my flawed evaluation based on information/rating from the ELDP developmental assignment subject matter expert I worked with objectionable. I shared her rating with you. Complainants are counseled to seek ADR before the formal EEO and this is the result. The agreement is to be between complainant and the source of the grievance. HRD approaches ADR as if it loses something by allowing an amicable (win/win) agreement. As I told you, in the recent pass this organization has allowed destruction of interview rating documents, a plethora of non-competitive promotions and laterals, waved qualifications for classification as an IT Specialist and who knows what else. Without the highest standards of ethics and quality, the average employee refusing to compromise ones integrety and ethics and/or unconnected to the inside power players are at the mercy of what appears to be corrupt practices. Maybe I am naïve about the workings of the inside, but this smells. If HRD is not fixed, the "middle management" problem will resurface with a vengeance the day you step out of the Census Bureau.

I am aware of another agency Director who recently requested statistics on all ADR attempts and has requested an explanation foe any that were not resolved using that process.

        DIR ADR Coordinator

----- Original Message -----
   **From:** DIR ADR Coordinator
   **Sent:** 03/03/2010 07:07 PM EST
   **To:** Anthony Perry; Patricia Musselman; Dale Reed
   **Cc:** Kardesha Bradley; Kathy Hopkins; Charles Dee
   **Subject:** Perry Mediation

## Census Alternative Dispute Resolution Program

### STATUS OF MEDIATION

Case Number: _10-010 (EEO #10-63-00197)_

Mediation Date: __December 17, 2009___

   **Party 1:**          **Party 2:**

_ Anthony Perry, IT Specialist, LTSO___   Patricia Musselman , Division Chief, LTSO _
____       Dale Reed, Branch Chief, BPS, LTSO_____

**Mediator:**

Inez Uhl

Mediation of the dispute between the above named parties resulted in the following:

_____ No Agreement

_____ Partial Agreement

___X_____ Full Agreement (not approved) *

_____ Withdrawn, state why:

*Mediation Agreement was not approved by HRD and there were no suggested changes. Management Official also indicated that there were no revisions or changes for this agreement. This case will now return to the EEO process.

Thank you for choosing Mediation(ADR) in an attempt to resolve your conflict. If you have any questions or concerns in reference to your experience in the ADR process, please call us at 1-800-872-6096 or 301-763-3591. Thank you.

Edith D. Robinson
ADR Program Coordinator
Census Alternative Dispute Resolution Program
Room 3K219
4600 Silver Hill Road
Washington, DC 20233
301-763-3591
202-240-603-3604(cell)
301-763-6512(fax)

| | |
|---|---|
| **From:** | Anthony W Perry/LTSO/HQ/BOC |
| **To:** | Brian E McGrath/DIR/HQ/BOC@BOC |
| **Date:** | Wednesday, March 03, 2010 07:07PM |
| **Subject:** | Re: Meeting Request |

Brian,
Thanks for offering to meet with me. I will send you the topics right away.
Tony

        Brian E McGrath


    ----- Original Message -----
       **From:** Brian E McGrath
       **Sent:** 03/02/2010 06:32 PM EST
       **To:** Anthony Perry
       **Subject:** Meeting Request
Tony,

In a previous email, you stated that you would like to meet with me, the subject of which I do not recall. As you are well aware, I cannot discuss any topics directly or indirectly related to the EEO and Civil matters that you have pending.  If there is another topic that you would like to discuss, please forward and I will be happy to meet with you.

Brian

| | |
|---|---|
| **From:** | Anthony W Perry/LTSO/HQ/BOC |
| **To:** | David Michael Koehler/CSVD/HQ/BOC@BOC |
| **Cc:** | Cyr Francis Linonis/CSVD/HQ/BOC@BOC, Dale Richard Reed/LTSO/HQ/BOC@BOC, Thomas J Berti/CSVD/HQ/BOC@BOC, Debra E B Young/CSVD/HQ/BOC@BOC |
| **Date:** | Tuesday, March 02, 2010 09:01PM |
| **Subject:** | Re: Submission Of Change Management Self-Assessment |

David, thanks for your original submission. It also looks like you took the questionnaire and integrated it into another document. I took your submission and copied the data I understood into a workbook and asked that it be reviewed for completeness per your submission.   As a comparative analysis may be done, it is impossible to do it comparing Word documents which is why the workbook was created.

Thanks again,

Tony

David Michael Koehler

----- Original Message -----
  **From:** David Michael Koehler
  **Sent:** 03/02/2010 04:47 PM EST
  **To:** Anthony Perry
  **Cc:** Cyr Linonis; Dale Reed; Thomas Berti; Debra Young
  **Subject:** Re: Submission Of Change Management Self-Assessment

[attachment "CSvD IT Change Management Survey.xlsx" deleted by Anthony W Perry/LTSO/HQ/BOC]

As I pointed out in other e-mails, I was never given the IT Management Survey, just the questionnaire, which
I filled out dutifully. Here is the survey you requested, filled out completely now too.

Regards,
David M. Koehler
Chief, Special Projects Branch
Computer Services Division, Bowie Computer Center
301-763-1625 (work)
301-512-0308 (cell)

David.Michael.Koehler@census.gov

  Debra E B Young---02/24/2010 06:41:20 PM---Hi Tony, David is on leave this week returning
on Monday. I will see if Cvr can review and prepare.

              Debra E B Young/CSVD/HQ/BOC

    From::

              Anthony W Perry/LTSO/HQ/BOC@BOC, Cyr Francis Linonis/CSVD/HQ/BOC@BOC

To:

Dale Richard Reed/LTSO/HQ/BOC@BOC, David Michael
Cc:     Koehler/CSVD/HQ/BOC@BOC, Thomas J Berti/CSVD/HQ/BOC@BOC
02/24/2010 06:41 PM

Date:

Re: Submission Of Change Management Self-Assessment

Subject:

Hi Tony,
David is on leave this week returning on Monday. I will see if Cyr can review and prepare.
Otherwise, David will be back on Monday.

Cyr,
Please take a look at the attached and let me know if you are able to determine what David was
working on. Thanks very much.

Debra

Anthony W Perry---02/24/2010 03:56:01 PM---David, Please review the four worksheets with
your answers in the attached workbook.   Each workshee

Anthony W Perry/LTSO/HQ/BOC

From:

David Michael Koehler/CSVD/HQ/BOC@BOC

To:

Dale Richard Reed/LTSO/HQ/BOC@BOC, Debra E B Young/CSVD/HQ/BOC@BOC,
Cc:     Thomas J Berti/CSVD/HQ/BOC@BOC
02/24/2010 03:56 PM

Date:

Re: Submission Of Change Management Self-Assessment

Subject:

David,

Please review the four worksheets with your answers in the attached workbook.   Each worksheet
refers to a set of the questions asked.   Please revise your answers as necessary. Please return
by weeks end.

If you have any questions, please call me at ext 35058.

Thanks,

Tony

[attachment "CSvD IT Change Management Survey.xlsx" deleted by Anthony W
Perry/LTSO/HQ/BOC]

*16*

David Michael Koehler---02/12/2010 04:59:38 PM---Per request: Format is:

From:
David Michael Koehler/CSVD/HQ/BOC

To:
Dale Richard Reed/LTSO/HQ/BOC@BOC

Cc:
Anthony W Perry/LTSO/HQ/BOC@BOC, Debra E B Young/CSVD/HQ/BOC@BOC,
Thomas J Berti/CSVD/HQ/BOC@BOC

Date:
02/12/2010 04:59 PM

Subject:
Submission Of Change Management Self-Assessment

Per request:
[attachment "Questionnaire for Change Management Assessment.docx" deleted by Anthony W
Perry/LTSO/HQ/BOC]

Format is:

Question from the original Questionnaire is in yellow.

Answers from CSvD are in *italics*, with the exception of when the answers also include Change
Management documentation.

Regards,
David M. Koehler
Chief, Special Projects Branch
Computer Services Division, Bowie Computer Center
301-763-1625 (work)
301-512-0308 (cell)

David.Michael.Koehler@census.gov


Dale Richard Reed---02/03/2010 03:55:23 PM---All: I gave an update this morning on who
had submitted and who had not. No new guidance was given.

From:
Dale Richard Reed/LTSO/HQ/BOC

To:
Anthony W Perry/LTSO/HQ/BOC@BOC

Cc:
Anthony W Perry/LTSO/HQ/BOC@BOC, David Michael
Koehler/CSVD/HQ/BOC@BOC, Debra E B Young/CSVD/HQ/BOC@BOC, Thomas J
Berti/CSVD/HQ/BOC@BOC

02/03/2010 03:55 PM

Date:

*17*

EXHIBIT 1 Pg. JA142

Subject    Re: Fw: Change Management Self-Assessment

All:

I gave an update this morning on who had submitted and who had not. No new guidance was
given. I should receive more information at my update tomorrow.

Dale R. Reed
Chief, Business Planning Staff
LAN Technology Support Office (LTSO)
(301) 763-5080 (p)
(301) 763-4628 (f)

Anthony W Perry---02/03/2010 03:11:35 PM---Dale, please provide Debra and I with any
additional deadline information Brian may have communicate

From:    Anthony W Perry/LTSO/HQ/BOC

To:      Debra E B Young/CSVD/HQ/BOC@BOC

Cc:      Dale Richard Reed/LTSO/HQ/BOC@BOC, David Michael
         Koehler/CSVD/HQ/BOC@BOC, Thomas J Berti/CSVD/HQ/BOC@BOC, Anthony W
         Perry/LTSO/HQ/BOC@BOC
         02/03/2010 03:11 PM

Date:

Subject:    Re: Fw: Change Management Self-Assessment

Dale,

please provide Debra and I with any additional deadline information Brian may have
communicated to you.

Thanks,

Tony

Debra E B Young---02/03/2010 01:42:47 PM---Hi Tony, Just a quick note to let you know that
CSVD is working on the "Change Management: Self-Asses

Debra E B Young/CSVD/HQ/BOC

From:

To:        Anthony W Perry/LTSO/HQ/BOC@BOC, David Michael
           Koehler/CSVD/HQ/BOC@BOC

Cc:        Dale Richard Reed/LTSO/HQ/BOC@BOC, Thomas J Berti/CSVD/HQ/BOC@BOC

           02/03/2010 02:42 PM

Date:

           Fw: Change Management Self-Assessment

Subject:

Hi Tony,
Just a quick note to let you know that CSvD is working on the "Change Management Self-
Assessment" and will provide feedback as soon as possible. I've asked David Koehler to lead the
effort to "gather the troops" to collaborate and fast-forward completion. While CSvD realizes the
due date has come and gone could you please let me know when is LTSO's absolute deadline so
we can manage workload?

Thanks Much Tony,

Debra

           Dale Richard Reed/LTSO/HQ/BOC

From:
           IT Division Chiefs List

To:
           01/25/2010 08:49 AM

Date:
           Change Management Self-Assessment

Subject:

All:

Here is an updated copy of the Self-Assessment for your use.

Dale

[attachment "Questionnaire for Change Management Assessment.docx" deleted by Anthony W
Perry/LTSO/HQ/BOC]


Dale R. Reed
Chief, Business Planning Staff
LAN Technology Support Office (LTSO)
(301) 763-5080 (p)
(301) 763-4628 (f)

| | |
|---|---|
| **From:** | Anthony W Perry/LTSO/HQ/BOC |
| **To:** | Debra E B Young/CSVD/HQ/BOC@BOC, Cyr Francis Linonis/CSVD/HQ/BOC@BOC |
| **Cc:** | Dale Richard Reed/LTSO/HQ/BOC@BOC, David Michael Koehler/CSVD/HQ/BOC@BOC, Thomas J Berti/CSVD/HQ/BOC@BOC |

| | |
|---|---|
| **Date:** | Wednesday, February 24, 2010 07:31PM |
| **Subject:** | Re: Submission Of Change Management Self-Assessment |

I will send David's submission to Cyr tomorrow. I took his answers that I understood and put in that workbook. I need Cyr to validate what is in the workbook .

Thanks

Debra E B Young

----- Original Message -----
From: Debra E B Young
Sent: 02/24/2010 06:41 PM EST
To: Anthony Perry; Cyr Linonis
Cc: Dale Reed; David Koehler; Thomas Berti
Subject: Re: Submission Of Change Management Self-Assessment
Hi Tony,
David is on leave this week returning on Monday. I will see if Cyr can review and prepare.
Otherwise, David will be back on Monday.

Cyr,
Please take a look at the attached and let me know if you are able to determine what David was working on. Thanks very much.

Debra

Anthony W Perry---02/24/2010 03:56:01 PM---David, Please review the four worksheets with your answers in the attached workbook.   Each workshee

| | |
|---|---|
| | Anthony W Perry/LTSO/HQ/BOC |
| **From:** | |
| | David Michael Koehler/CSVD/HQ/BOC@BOC |
| **To:** | |
| | Dale Richard Reed/LTSO/HQ/BOC@BOC, Debra E B Young/CSVD/HQ/BOC@BOC, |
| **Cc:** | Thomas J Berti/CSVD/HQ/BOC@BOC |
| | 02/24/2010 03:56 PM |
| **Date:** | |
| | Re: Submission Of Change Management Self-Assessment |
| **Subject:** | |

David,

20

Please review the four worksheets with your answers in the attached workbook.   Each worksheet refers to a set of the questions asked.   Please revise your answers as necessary. Please return by weeks end.

If you have any questions, please call me at ext 35058.

Thanks,

Tony

[attachment "CSvD IT Change Management Survey.xlsx" deleted by Anthony W Perry/LTSO/HQ/BOC]

David Michael Koehler---02/12/2010 04:59:38 PM---Per request: Format is:

| | |
|---|---|
| From: | David Michael Koehler/CSVD/HQ/BOC |
| To: | Dale Richard Reed/LTSO/HQ/BOC@BOC |
| Cc: | Anthony W Perry/LTSO/HQ/BOC@BOC, Debra E B Young/CSVD/HQ/BOC@BOC, Thomas J Berti/CSVD/HQ/BOC@BOC |
| Date: | 02/12/2010 04:59 PM |
| Subject: | Submission Of Change Management Self-Assessment |

Per request:
[attachment "Questionnaire for Change Management Assessment.docx" deleted by Anthony W Perry/LTSO/HQ/BOC]

Format is:

Question from the original Questionnaire is in yellow.

Answers from CSvD are in *italics*, with the exception of when the answers also include Change Management documentation.

Regards,
David M. Koehler
Chief, Special Projects Branch
Computer Services Division, Bowie Computer Center
301-763-1625 (work)
301-512-0308 (cell)

David.Michael.Koehler@census.gov

21

Dale Richard Reed---02/03/2010 03:55:23 PM---All: I gave an update this morning on who had submitted and who had not. No new guidance was given.

| | |
|---|---|
| From: | Dale Richard Reed/LTSO/HQ/BOC |
| To: | Anthony W Perry/LTSO/HQ/BOC@BOC |
| Cc: | Anthony W Perry/LTSO/HQ/BOC@BOC, David Michael Koehler/CSVD/HQ/BOC@BOC, Debra E B Young/CSVD/HQ/BOC@BOC, Thomas J Berti/CSVD/HQ/BOC@BOC |
| Date: | 02/03/2010 03:55 PM |
| Subject: | Re: Fw: Change Management Self-Assessment |

All:

I gave an update this morning on who had submitted and who had not. No new guidance was given. I should receive more information at my update tomorrow.

Dale R. Reed
Chief, Business Planning Staff
LAN Technology Support Office (LTSO)
(301) 763-5080 (p)
(301) 763-4628 (f)

Anthony W Perry---02/03/2010 03:11:35 PM---Dale, please provide Debra and I with any additional deadline information Brian may have communicate

| | |
|---|---|
| From: | Anthony W Perry/LTSO/HQ/BOC |
| To: | Debra E B Young/CSVD/HQ/BOC@BOC |
| Cc: | Dale Richard Reed/LTSO/HQ/BOC@BOC, David Michael Koehler/CSVD/HQ/BOC@BOC, Thomas J Berti/CSVD/HQ/BOC@BOC, Anthony W Perry/LTSO/HQ/BOC@BOC |
| Date: | 02/03/2010 03:11 PM |
| Subject: | Re: Fw: Change Management Self-Assessment |

Dale,

22

please provide Debra and I with any additional deadline information Brian may have
communicated to you.

Thanks,

Tony

Debra E B Young---02/03/2010 02:42:47 PM---Hi Tony, Just a quick note to let you know that
CSvD is working on the "Change Management Self-Asses

|  | |
|---|---|
| From: | Debra E B Young/CSVD/HQ/BOC |
| To: | Anthony W Perry/LTSO/HQ/BOC@BOC, David Michael Koehler/CSVD/HQ/BOC@BOC |
| Cc: | Dale Richard Reed/LTSO/HQ/BOC@BOC, Thomas J Berti/CSVD/HQ/BOC@BOC |
| Date: | 02/03/2010 02:42 PM |
| Subject: | Fw: Change Management Self-Assessment |

Hi Tony,
Just a quick note to let you know that CSvD is working on the "Change Management Self-
Assessment" and will provide feedback as soon as possible. I've asked David Koehler to lead the
effort to "gather the troops" to collaborate and fast-forward completion. While CSvD realizes the
due date has come and gone could you please let me know when is LTSO's absolute deadline so
we can manage workload?

Thanks Much Tony.

Debra

|  | |
|---|---|
| From: | Dale Richard Reed/LTSO/HQ/BOC |
| To: | IT Division Chiefs List |
| Date: | 01/25/2010 08:49 AM |
| Subject: | Change Management Self-Assessment |

All:

Here is an updated copy of the Self-Assessment for your use.

23

**EXHIBIT 1 Pg. JA148**

Dale

[attachment "Questionnaire for Change Management Assessment.docx" deleted by Anthony W Perry/LTSO/HQ/BOC]

Dale R. Reed
Chief, Business Planning Staff
LAN Technology Support Office (LTSO)
(301) 763-5080 (p)
(301) 763-4628 (f)

24

**From:** Anthony W Perry/LTSO/HQ/BOC
**To:** andrea.d.grant@census.gov

**Date:** Monday, September 28, 2009 09:47PM
**Subject:** Fw: *****SPAM***** (4.03/4) Update on Your Web 2.0 Summit Invitation Request

fyi

**From:** "Web 2.0 Summit" [web2summit@email.techwebevents-sf.com]
**Sent:** 09/28/2009 07:16 PM AST
**To:** Anthony Perry
**Subject:** *****SPAM***** (4.03/4) Update on Your Web 2.0 Summit Invitation   Request

View this email online if it does not display properly. Don't miss Web 2.0 Summit news and updates — please add
web2summit@email.techwebevents-sf.com to your contact list or address book.



Dear Anthony,

Thank you for requesting an invitation to Web
2.0 Summit 2009. We hope to be able to
accommodate you at the event. At this time,
however, we are processing outstanding
invitations made to our alumni from our
previous five events; giving them a chance to
register first.

We thank you for your patience during this
delay. We will let you know as soon as possible
about the status of your request.

Sincerely,

John Battelle, Tim O'Reilly and the Web 2.0
Summit team





COPRODUCED BY

O'REILLY   techweb

Web 2.0 Summit
October 20–22, 2009
The Westin Hotel Market Street
San Francisco, CA
www.web2summit.com

25



Co-produced by O'Reilly Media, Inc. and TechWeb.

© 2009 O'Reilly Media, Inc. 1005 Gravenstein Highway North, Sebastopol, CA 95473   (707) 827-7000 / (800) 998-9938

© 2009 TechWeb, a division of United Business Media LLC. All Rights Reserved. Web 2.0 Expo c/o TechWeb, 600 Harrison St., 6th Floor, San Francisco, CA 94107.

Web 2.0 Summit respects your privacy. This message is sent to qualified recipients who recently attended, or requested or downloaded information about either Web 2.0 Summit or a related United Business Media or O'Reilly event or publication or requested information about our events, publications and products. Please do not reply to this email as replies are not being read.

Web 2.0 Summit & Web 2.0 Expo Privacy Policy.

From:     Anthony W Perry/LTSO/HQ/BOC
To:       tonywpy@aol.com

Date:     Friday, September 25, 2009 06:04PM
Subject:  Fw: Thank you for your application

Glenda J Craney

----- Original Message -----
From: Glenda J Craney
Sent: 09/25/2009 12:58 PM EDT
To: Anthony Perry
Subject: Fw: Thank you for your application

Hi Anthony -

I totally understand your concerns. However, as HR staffing specialists, we are not privy to the interview scores nor how the managers perceived any deficiencies. I would suggest that you contact the managers who interviewed you to obtain their opinions. My apologies for not being more helpful, but HR cannot supply this type of information.

We appreciate the feedback and hope you get the info you need to move forward.

Thanks,

Glenda J. Craney
U.S. Census Bureau
Human Resources Division
Employment & Compensation Branch
301-763-6827
^v^v^v^v^v^v^v^v^v^v^v^v^v^v^v^v^

----- Forwarded by Lakeyia D Smith/HRD/HQ/BOC on 09/23/2009 11:48 AM -----

| | | |
|---|---|---|
| **Anthony W Perry/LTSO/HQ/BOC** | To | lakeyia.d.smith@census.gov |
| 09/22/2009 05:06 PM | cc | Anthony Perry <anthony.w.perry@census.gov> |
| | Subject | Re: Thank you for your application |

Hi,

when will someone be available to tell me how I scored on the interview and where deficiencies are perceived that I might address going forward.

Thanks,

Tony

Page 2 of 2

**EXHIBIT 1 Pg. JA152**
Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 129 of 424
USCA Case #14-1155   Document #1537564   Filed: 02/13/2015   Page 154 of 596

lakeyia.d.smith---09/22/2009 03:43:33 PM---Dear ANTHONY PERRY,

| **lakeyia.d.smith@census.gov** | To | |
| | | anthony.w.perry@census.gov |
| 09/22/2009 03:30 PM | cc | |
| | | lakeyia.d.smith@census.gov |
| | Subject | |
| | | Thank you for your application |

Dear ANTHONY PERRY,

Thank you for your application for the following vacancy:

Announcement Number: ISSRO-2009-0008
Position Title: Supervisory IT Specialist, GS-2210-15, CENSUS-M-GC
Series-Grade: 2210S-15

This is to advise you that the vacancy has been filled.

We appreciate your interest in employment and encourage you to apply for future vacancies for which you are qualified.

Sincerely,
Glenda Craney
Human Resources Specialist
U.S. Department of Commerce

28

**From:** Anthony W Perry/LTSO/HQ/BOC
**To:** tonywpy@aol.com

**Date:** Friday, September 04, 2009 06:59PM
**Subject:** Fw: Delegation of Authority

Dale Richard Reed

----- Original Message -----
  **From:** Dale Richard Reed
  **Sent:** 09/04/2009 03:01 PM EDT
  **To:** LTSO Branch Chiefs List
  **Cc:** LTSO Business Planning List
  **Subject:** Delegation of Authority
While I am on leave from Sept 7 until 11, Mr. Tony Perry will be acting Chief of BPS.

Dale R. Reed
Chief, Business Planning Staff
LAN Technology Support Office (LTSO)
(301) 763-5080 (p)
(301) 763-4628 (f)

**From:**   Anthony W Perry/LTSO/HQ/BOC
**To:**   Anthony W Perry/LTSO/HQ/BOC@BOC, Sylvia C Harmon/LTSO/HQ/BOC@BOC, Dale Richard Reed/LTSO/HQ/BOC@BOC

**Date:**   Tuesday, March 03, 2009 07:08PM
**Subject:**   Re: Leave

I have an orthopedic session tomorrow morning for my knee hirt when I fell on the stairwell.

Anthony W Perry

----- Original Message -----
**From:** Anthony W Perry
**Sent:** 03/03/2009 04:10 PM EST
**To:** Sylvia Harmon; Dale Reed
**Cc:** Anthony Perry
**Subject:** Leave

Sylvia, I'll put 3/4 hour leave on calendar. Daughter wants me to pick her up. She is not feeling well.

30

**From:**   Anthony W Perry/LTSO/HQ/BOC
**To:**     tonywpy@aol.com

**Date:**   Monday, February 23, 2009 08:09PM
**Subject:** Fw: Comments on the Report of Inquiry/Investigation By Ron Swank and More for Inclusion in My Grievance File

Anthony W Perry

----- Original Message -----
  **From:** Anthony W Perry
  **Sent:** 02/23/2009 10:05 AM EST
  **To:** Patricia Musselman; Tyra Smith
  **Cc:** Keith Quesnell; Anthony Perry
  **Subject:** Comments on the Report of Inquiry/Investigation By Ron Swank and More for Inclusion in My Grievance File
Mr. Quesnell:

Mr. Swank and I had several conversations about my 2008 performance and my deficient rating of 355 out of 500. I requested he include a couple of documents in my grievance file. I will include them. For reference, I note here that my rating for 2007 was 370 out of 500 and provided not a single point of guidance nor did it identify a single performance deficiency to correct for performance improvement going forward for the performance year 2008 which is the subject of this email. My 2007 rating is currently being contested in a different venue. An additional note is that the interim nor the final performance evaluation for 2008 identifed a performance deficiency that needed correction going into the 2009 performance year. I enter the rating year assuming that I started at level 5 not at level 1 working from the bottom up.

In the investigation report dated 2-12-2009, Mr. Swank mistates the facts. The facts as presented in my email message to Tyra Dent Smith datad 12-11-2008, Formal Grievance for Reconsideration of 2008 Performance Evaluation, should remain the same and different in some respects than those stated in the report submitted by Mr. Swank. In that email, the facts stated by Mr. Swank should have restated with clarity, the following:

   1. That I should receive an immediate Quality Step Increase;
   2. I should have received a level 5 rating on Critical Element 1, Customer Service;
   2. I should have received a level 4 rating on Critical Element 2, Project Management;
   3. I should have recevied a level 5 rating on Critical Element 3, Operational and Strategic Business Planning;
   4. I should have recevied a level 5 rating on Critical Element 4, Leadership (substituted for current element which no work has been given nor performed in                         two years).

I cannot afford to make light of faulty performance evaluations. They are used and being used to deny, justify and defend personnel actions taken against me and provide preference to some others circumventing competition on the merits as defined in official guidance documents. I endured repeated denials of requests to act in vacant leadership positions; continuing outright bypass of offers from division leadership now to act in current leadership vacancies; removal from position of Assistant to the Chief, LTSO without being provided an opportunity or option to occupy an equivalent position of authority and responsibility, a position I competed for and won on the merits; a rigged interview process for assistant division chief positions; and

31

noncompetitive promotion to Chief, LTSO denying me the opportunity to compete outright for a position in the division I have worked for more than twenty years and which I prepared for leadership positions. And person responsible remains behind the curtain pulling strings and orchestrating moves. At least five years from my career have been trashed by the former division chief and continue to be put in jeopardy by faulty or deficient performance evaluations. I have been told I need to prove myself, again, to the new division chief. Insane. No action taken or relief granted from this point forward will make me whole from this insult on my person and professional career. It is acceptable that former secretaries in IT can assend the leadership ladder in the Information Technology Directorate, leading teams of IT personnel but a black employee with superior past performances and successes and formal education in Information Technology and Business is unqualified to do same, while at least two other high school graduates in IT are branch chiefs.   It is a disgusting disgrace and forgetting is not an option less it be repeated again and again.

32

**From:** Anthony W Perry/LTSO/HQ/BOC
**To:** KaY Bills, aperry@mbda.gov

**Date:** Tuesday, December 02, 2008 10:03PM
**Subject:** Revised Report

The body of this message is encrypted and cannot be displayed by a browser. Secure(encrypted) mail needs to be enabled in the Configuration Settings for the server, or reopen this message with a Notes Client.

33

| From: | Anthony W Perry/LTSO/HQ/BOC |
|---|---|
| To: | sandra.t.duckett@census.gov |
| Cc: | anthony.w.perry@census.gov |

| Date: | Sunday, November 23, 2008 06:07PM |
|---|---|
| Subject: | Preservation of Documents for Class Action Discovery |

I gave my completed forms per the two class action suits to Cheryl Curtis this Saturday afternoon while at the office. She apparently is scheduled to be on leave. I am hopeful the docs. are turned in. Alternatively, I am concerned that I and other black supervisory employees did not receive that email from our management intentionally.

Tony

34

**From:** Anthony W Perry/LTSO/HQ/BOC
**To:** tonywpy@aol.com, thoma006@census.gov

**Date:** Monday, November 24, 2008 06:15PM
**Subject:** Fw: Class Action Lawsuit

---

Anthony W Perry

----- Original Message -----
**From:** Anthony W Perry
**Sent:** 11/24/2008 04:19 PM EST
**To:** Tyra Smith; Sandra Duckett
**Cc:** Anthony Perry
**Subject:** Fw: Class Action Lawsuit

[This message was encrypted by the sender]

35

From:      Anthony W Perry/LTSO/HQ/BOC
To:        Kbills@mbda.gov

Date:      Sunday, November 02, 2008 09:59PM
Subject:   At Census Until Noon

Kay, feel free tpo reach me at Census. I will be ther until noon. I need to complete online training and then will work on doc. Will be in Tuesday morning after voting.

T

36

Anthony W. Perry
5907 Croom Station Road
Upper Marlboro, MD 20772
Phone: (301) 780-7653
Email: tonywpy@aol.com

May 19, 2011

Mary E. Palmer, Administrative Judge
U.S. Equal Employment Opportunity Commission
Baltimore EEO Field Office - 531
10 South Howard Street, 3rd floor
Baltimore, Maryland 21201

> Re: **Perry v. Department of Commerce**
> **EEOC No. 531-2010-00351X, 531-2011-00017X**
> **Agency No. 09-63-01027, 10-63-00197, 11-63-00080**
>
> **Motion in Opposition For Summary Judgement without Hearing**

This motion is in opposition to the agency's motion for summary judgement without a hearing. I respectfully request all prior EEO actions, ROI 07-63-00080 and 07-63-00145/EEOC Docket # 0220111784, 08-63-00072/Civil Action 09-cv-02672-AW, and 09-63-01027 (pending EEOC appeal) be included in this file as reference to the claims made in this current file of discrimination to show continuing discriminatory actions having been taken against me and for the creation of a hostile work place intended to intimidate me from requesting opportunities for promotions and training on the basis of race, age, and retaliation and the intentional creation of a hostile work environment.

### Background

The agency's proffered reasons for its actions taken against me in this consolidated EEOC file should not be believed in light of agency management, Thomas Meerholz former Chief LTSO, admitting to the destruction of interview and rating documents (ROI 08-63-00072, pg 28-1 and Attachment A1 pg 1 ) and the subsequent recreation and reappearance of these documents placed in evidence for Civil Action 09-cv-02672-AW (Attachment A2 pg 3.). The selection

**EXHIBIT 1 Pg. JA163**
Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 139 of 424
USCA Case #14-1155   Document #1537564   Filed: 02/13/2015   Page 165 of 596

Page 2

criteria for the position contested in this action, the Assistant Division Chief, Customer Service is stated as recent supervisor experience and other legitimate qualification-related factors" (Attachment A2 pg. 7-8). This position was planned to be posted in August of 2002 by Ronald Swank before he was removed as Chief, Client Support Office, now LTSO (Attachment B2 - B5) before revised to 2004. Agency management denied me the opportunity provided to Mr. Markovic to temporarily occupy the vacancy, Assistant Division Chief, LTSO when it became vacant continuing to deny me opportunities for promotion as was done by agency management. In an attempted ADR agreement, Meerholz offered me a detail to Branch Chief Business Planning Branch, LTSO with the condition of "removal with or without cause" (Attachment B6 pg. 3). Agency management did assign me as the division safety representative (Attachment B1). No such conditional appointments were made for other IT or supervisory IT specialist in the LTSO. My supervisory code change from 2 (supervisory) remains the most disparate act having had the single largest impact on the opportunities denied me since (Attachment C2). I was treated differently than the other IT employees especially the younger Caucasians and continue to be treated differently because of my age and race (Attachment B6 pg. 3) as I rejected the conditional offer to be detailed but removed with or without cause.

This consolidated action brought against the agency are for claims of discrimination on the basis of age, race, retaliation for prior EEO actions, continuing violations and pattern of long-term discriminatory actions, and the creation of a hostile work environment for:

1. Not selected and/or not promoted to the Assistant Division Chief Customer Service, LTSO
2. Denied training to attend the Harvard Senior Executive Fellows Program
3. Received an unfair performance evaluation, unfair rating, and unfair performance award for 2009
4. Denied training to attend the George Washington University Senior Leadership Training, the African American Federal Executive Association Training Conference, and the Project Management Professional Training Bootcamp
5. Received an unfair performance evaluation and unfair performance award although I did not receive any assignments of significance during the first five (5) months of FY 2010

Case 1:17-cv-01932-TSC   Document 30-43   Filed 11/19/18   Page 140 of 424
USCA Case #14-1155   Document #1537564   Filed: 02/13/2015   Page 166 of 596

**EXHIBIT I Pg. JA164**

Page 3

Prior claims for continuing violations contributing to a discriminatory and hostile working
environment and disparate treatment are in ROI 07-63-00080 page pg. 2, ROI 07-63=00145
page 2-3; ROI 08-63-00072 page 2-3.

## Dispute of Material Facts

All of the agency defined material facts are disputed unless specifically stated in the
coordinated numbering of the agency

1.    There is no dispute of this fact by the agency.

2.    This material fact is in dispute.  As this complaint includes the claims of a continuing
      violations and pattern of discriminatory actions, the current claims in this consolidated
      action, and the creation of a hostile working environment, also relevant for the purpose
      of this complaint is my entire employment with the U.S. Census Bureau prior to and
      through the period of August 2001 when I was a Supervisory Computer Scientist and
      then a Supervisory Information Technologist before being reassigned as an Information
      Technology Specialist by the agency although I continued to perform work as part of the
      management team as indicated in my performance evaluations from 2002 through 2005
      (Attachment C1 - C5), my removal from the position of Special Assistant to the Division
      Chief, LTSO under the disguise of the reorganization, in which I participated as part of
      the management team in November 2006.  Therefore, at times relevant to this complaint
      my first level supervisor was Alan Berlinger, DCS2000 Program Manager; Ronald
      Swank, Chief CSO; Thomas Meerholz, Chief LTSO; Patricia Musselman, Acting Branch
      Chief Business Planning Branch, LTSO and Chief, LTSO; and Dale Reed, Chief
      Business Planning Branch.

3.    This fact is in dispute.  The agency footnote ignores the discovery document provided to
      the agency that shows I contacted Tyra Dent Smith, Chief Human Resources Division
      on or around February 2, 2009 about the reassignment of Mr. Markovic and the impact
      on qualified African American employees in the Information Technology Directorate to
      be able to compete for promotional opportunities and therefore was timely contact with
      an agency official who's work is related to the EEO process (Attachment A3).

Case 1:17-cv-01932-TSC   Document 30-48   Filed 11/19/18   Page 141 of 424
USCA Case #14-1155        Document #1537564        Filed: 02/13/2015        Page 167 of 596

EXHIBIT 1 Pg. JA165

Page 4

Additionally, my prior application for this position was deemed qualified when the position when it was posted for competition.  The management team that discussed and decided to lateral Mr. Markovic included Thomas Meerholz who is named as the Responsible Management Official for discrimination against me in three prior EEO actions (ROI 07-63-00080, 07-63-000145, and 08-63-00072/Civil Action 09-cv-02672-AW).  His participation in the selection infers continued discrimination and retaliation against me as the criteria used is the continued manipulation of the selection, promotion or reassignment criteria to prevent me from being promoted (AttachmentA2 pg. 8 and Attachment B1 pg 1).

4.   This fact is in dispute.  The request for training was resubmitted and was rejected. Alternatively, a more cost effective senior leadership training request was submitted and it was also denied. OPM, Commerce and Census and otherwise government paid training is provided to employees for operational needs and preparation for promotional opportunities (Exhibit D and Attachment D9 pg 24)  Budget and work assignments were never stated as the reason for denial of any training I requested and neither was I offered the detail in the vacant Assistant Division Chief, Customer Services when I was not in training or while in training though I have repeatedly communicated my desire to work at the next level in the IT Directorate .  The agency has repeatedly failed to promote me when vacancies for which I qualify are available, and denies me supervisory opportunities as a matter of practice (Exhibit E).  Therefore, I have requested training to prepare for future operational needs and promotional opportunities (Exhibit D).  Without training, I have otherwise been retired on the job by agency management while younger Caucasian employees are promoted to senior supervisory and leadership positions.  Black IT employees are 100 % intentionally excluded from senior Supervisory IT positions (GS-14 and GS-15) in the LTSO.

5.   This fact is in dispute.  An explanation was provided noting OPM, Commerce, and Census guidelines on training and how the training would help me help the agency and it was still denied (Attachment D3 p1).

6.   This fact is in dispute.  My date of birth is January 29, 1956.  The agency was notified of this mistake it made but continues to use 1959 as the year that I was born.  The agency

Case 1:17-cv-01932-TSC  Document 30-4  Filed 11/19/18  Page 142 of 424
**EXHIBIT L Pg. JA166**
USCA Case #14-1155     Document #1537564     Filed: 02/13/2015     Page 168 of 596

Page 5

fails to note that my prior application to this position was deemed qualified when the vacancy announcement was posted for competition and that I had filed prior EEO actions  Additionally, that selection criteria did not reference a requirement for Decennial project experience when it was originally posted for merit-based competition. I had obtained such experience thirteen years earlier (Attachment C1 and C3). This is a further example of the agency's manipulation of the selection, reassignment/lateral, and promotion criteria to prevent me from being promoted (Exhibit E and Attachment F16).

7.    This fact is in dispute. Employees are allowed to grieve ratings informally, formally, and through the EEO or civil court process as well as comment on and/or request reconsideration. (Exhibit G and H)

8.    This fact is in dispute.  120-day work details are rateable. Mr. Reed was informed by the Director of Human Resources. Further, Mr. Reed failed to give me meaningful work assignments when I returned to the office full-time in January - February 2009 though I made requests for assignments. I performed two (2) 120-day detail assignments for which I obtained supervisory evaluations and peer evaluations from the persons I worked with on those crucial assignments (ATTACHMENT H1 - H4). These performance evaluations of my work details were provided to Dale Reed, Chief Business Planning Branch per an agreement between me and agency management which then was breached by Census Bureau Human Resources Division in violation of good faith and the guidelines set forth for dispute resolution. My fulfilling of the agreement would have resulted in an upward revision in my rating. Further, Dale Reed arbitrarily picked rating values for  my performance evaluation instead of using evaluations from detail provided to him (ROI-10-63-00197 Exhibit 10 pg. 2-4 and Exhibit 11 pg. 2). Exhibit 10's message from the Director of Human Resources states details rateable. This has everything to do with the pattern of low ratings and their use  in selections and other personnel actions taken by the Census Bureau.

In EEO file 08-63-00072/Civil Action 09-cv-02672-AW, summary judgement was rendered against me using my 2007 performance evaluation that was being contested in that case file. Footnote 4 mentions provision of assignments as needed but none of the assignments prepare or are intended to prepare me for promotional opportunities that have been available in the LAN Technology Support Office and when vacancies are

5

Page 6

available the agency management repeatedly fails to promote me preferring to promote younger Caucasian employees. The vacant Assistant Division Chief, Customers Service was given to an employee that did not apply for it when posted for merit competition. The training requested has been part of my revised and management approved and signed Individual Development Plans since 2002 (Attachment D1 and D2)).

9.   This fact is in dispute. The date of birth continues to be misstated. The date of birth for all matters related to this action is January 29, 1956.

10.  This fact is in dispute. The request for the George Washington University Senior Leadership Training (GWUSLT) is an open enrollment alternate request to the competitive Harvard Senior Executive Forum in considering the cost for the training and the requirement to be out of the office only two days per week but in-line with the agency's advertisement for Leadership and Functional training opportunities for Census employees (Exhibit D))

11.  Mr. Reed, Chief Business Planning Branch failed to provide me with any assignments until mid-February when I was given an assignment that addressed the entire Information Technology Directorate by the Associate Director for Information Technology, and not an LTSO Division assignment. I should not have been penalized for LTSO Division management's misuse of personnel resources and failure to assign me meaningful work assignments (ROI WHERE I STATE NO ASSIGNMENTS GIVEN. This is intentional so that low ratings can falsely be given for performance (ATTACHMENT  99999) . Direction for the assignment was provided by the Associate Director for Information Technology and Chief Information Officer.

12.  This fact is in dispute. This a continuing pattern of discriminatory actions taken against me since 2003 when agency management replaced Ronald Swank, Chief Client Support Office with Thomas Meerholz and reassigned Mr. Swank to Chief Information Systems Support and Review Office. Younger Caucasian employees are given details and temporary supervisory assignments without conditions and continue to train. ROI 07-63-00145 and Interrogatory # 13).

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 144 of 424
USCA Case #14-1155   Document #1537564   Filed: 02/13/2015   Page 170 of 596

EXHIBIT 1  Pg. JA168

### Prima Facie Case For Age Discrimination

I am an African-American male age 55 (DOB January 29, 1956), I applied for the position of Assistant Division Chief, Customer Services; my application was deemed qualified; after Ms. Musselman was non-competitively promoted to Division Chief, LTSO, she filled the position temporarily and then non-competitively placed the same person in the position who had the same or less qualifications as I possessed at the time of the vacancy was posted; Ms. Musselman was aware of my age as she was the agency representative in EEO action 08-63-00072. The person the position was filled with is considerably younger.

### Agency Reasons are Pretext for Discrimination Based on Age

These vacancies were discussed openly in 2002 and approved for posting in 2004. In 2002, I was 46 years old, performing in the role of Supervisory Information Technology Specialist and Special Assistant to the Chief, LTSO with superior performance. These positions were held vacant until Ms. Musselman and Mr. Schaufele, reached age 40 in order to avoid a claim of age discrimination.

While the positions were held as open vacancies, I was removed from the position of Special Assistant to the Chief of LTSO, denied supervisory and leadership opportunities provided to GS-13 and other GS-14 Caucasian employees and dis-invited to the managerial meetings of supervisory staff that I had attended since 2001. The noncompetitive placement of Mr Markovic into the vacant position of Assistant Division Chief Customer Services although I had prior application to the position and was deemed qualified is a continuation of the discrimination against me on the basis of race and age. I have been discriminated against by agency management on the basis of age with respect to the terms and conditions and privilege of employment repeatedly since 2002. Specifically, I have been discriminated against with respect to promotion, compensation related to performance awards and special achievement awards, job assignments and training.

EXHIBIT 1 Pg. JA169
Case 1:17-cv-01932-TSC Document 30-4 Filed 11/19/18 Page 145 of 424
USCA Case #14-1155    Document #1537564    Filed: 02/13/2015    Page 171 of 596

Page 8

Age of current supervisory when positions planned for posting:

| Name | Age in 2002 (DOB) | Race |
|------|-------------------|------|
| Patricia Musselman | 37 (9/15/65) | White |
| Jason Schaufele | 35 (8/2/68) | White |
| Mark Markovic | 34 (1967) | White |
| Anthony Perry (complainant) | 46 (01/29/1956) | Black |
| Chrissy Milliken | | White |
| Theresa Toole | 35 (1968) | White |
| Dennis Drinkard | | White |

The agency's plan and actions prevented me from ever competing successfully for promotion opportunities to the GS-15 because of the ability of the selection official to arbitrarily manipulate the selection criteria to discriminate (ROI 08-63-00072 and Interrogatory #6). The agency changed my supervisor code from supervisor code 2 to 4.

The LTSO uses non-competitive promotions, reassignments, and laterals to fill senior supervisory information technology specialist positions to prevent me and qualified African Americans from competing for the positions. The organization's racial and age profile of its senior managers serve to make the point clearer. Below are younger Caucasian employees given opportunity for senior leadership without the conditions of "removal with or without cause" as was proposed to me in an ADR agreement I refused to sign (Attachment B2 pg. 1).

Current senior supervisory personnel (except Anthony Perry):

| Name | DOB | Race | LTSO Promotions/Details Assigned |
|------|-----|------|----------------------------------|
| Patricia Musselman | 9/15/65 | White | Division Chief; Several Acting/Detail Assignments |
| Jason Schaufele | 8/2/68 | White | Several Acting/Detail Branch Chief Assignments |
| Mark Markovic | 1968 | White | Detail; Assist. Div. Chief, Customer Services |
| Theresa Toole | 11/29/68 | White | Detail; Acting Branch Chief; Branch Chief |
| Chrissy Milliken | 196? | White | Branch Chief |
| Anthony Perry | 01/29/1956 | Black | Division Safety Representative (Attachment B1); Conditional offer of Detail (Attach B2 pg 2) |
| Dennis Drinkard | 196? | White | Detail; Acting Branch Chief; Branch Chief |

Also see (Attachment FAD 07-6300145 pg 4-5). The table shows I have been treated differently than younger Caucasian employees. Even making education a non-factor, my performance during the time the positions were to be posted (Attachment B), was rated primarily at level 4 and at times level 5 through the 2005 rating year. Thomas Meerholz, the new division chief then started to lower my ratings to justify what he did: select younger Caucasian employees for the vacancies that had been identified in 2002, signed off in 2004 (Attachment )

### Prima Facia Case For Race Discrimination

I am African American who had prior application for the job in question. My application was deemed qualified for the position of Assistant Division Chief, Customer Service. I was not hired into the position initially. When the position of Assistant Division Chief, Customer Service became vacant 4 months later, a younger Caucasian male was non-competitively placed into the position who had not made prior application for the position.

This continues the agency's exclusive use of non-competitive reassignments, promotions, and laterals for the benefit of Caucasian employees to the absolute and total disadvantage and exclusion of Black employees. Non-competitive promotions, reassignments, and laterals are never used for African American employees into permanent senior supervisory and leadership positions. The agency through LTSO either non-competitively promotes, reassigns, or laterals or manipulates the selection criteria to place younger Caucasian employees in vacant leadership positions.

### Agency Reasons are Pretext for Race Discrimination

The agency's proffered reason for the non-competitive reassignment of Mark Markovic as the Assistant Division Chief, Customer Services is not to be believed and should be viewed with suspicion based on the agency's hiring and promotion practices. The LTSO racial profile that

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 147 of 424
USCA Case #14/1155     Document #1537564     Filed: 02/13/2015     Page 173 of 596

EXHIBIT 1 Pg. JA171

Page 10

has been created as a result of these hiring and promotion practices appears in th table below

(ROI 10-63-01027, Exhibit 13):

LTSO racial profile:

| RACE | % of Org | GS-15 | GS-14 | GS-13 | GS-12 | GS-11 |
|---|---|---|---|---|---|---|
| Caucasian | 47.4% | 100% | 58% | 70.0% | 52.4% | 41.7% |
| African American | 39.0% | 0% | 8.3% | 15.0% | 33.3% | 41.7% |
| Asian | 9. 8% | 0% | 30.3% | 15 | 9.5 | 8.3 |
| Latino/Hispanic | 1.5% | 0% | 0% | 0 | 4.8 | 0 |
| AI/AN | .8% | 0% | 8.3% | 0 | 0 | 8.3 |
| Multi-Race | .8% | 0% | 0% | 0 | 0 | 0 |

Between 2007 and 2009, 100% of the LTSO GS-15 and GS-14 supervisory information

technology specialist promotions have been awarded to Caucasian employees, 100% of the

LTSO GS-15 reassignments have been awarded to Caucasian employees, and 80% of GS-14

reassignments have been awarded to Caucasian employees.   The agency ought be required to

certify that this information is accurate.  A discriminatory environment has been created in the

LTSO and remains today.   The use of non-competitive reassignments, promotions and laterals

has had a devastating and disparate impact on me and other senior African American

employees, basically retiring me and the other black employees on the job eliminating any

avenue for promotion through the merit process.

The agency's proffered reason that Mr. Markovic's decennial work was critical to the LTSO

mission is also pretext to prevent from promoting me.  The agency did not offer me the detail

opportunity after it non-competitively promoted Patricia Musselman to the position of Chief,

Appeal Number 2012 01583 EXHIBIT 1 Pg. JA172
Case 1:17-cv-01932-TSC    Document 30-4    Filed 11/19/18    Page 148 of 424
USCA Case #14-1155         Document #1537564         Filed: 02/13/2015    Page 174 of 596

Page 11

LTSO though I had applied for the position and my application determined qualified.

Further, the agency suggest the decision was a business decision. That to is pretext to place

young Caucasian employees in the Supervisory Information Technology positions in the LAN

Technology Support Office. The agency's response to interrogatory #6 and #7 on page 23

paragraphs 2 and 3 identifies Veronica LaGrande, Ronald Swank, Thomas Meerholz, Nora

Parker, Jason Schaufele and Mark Markovic as participating in the discussion to non-

competitively reassign Markovic into the Chief, Customer Service position.

Thomas Meerholz is named as the responsible management official in my prior EEO actions

and admitted to the destruction of interview documents and notes (ROI 08-63-00072 Exhibit 28

pg. 1). His participation in any discussion or decision that might impact my promotional

potential should be viewed as having a discriminatory animus toward me and a retaliatory

motive for my prior EEO activity.

Mr. Markovic had performed the Decennial position without having been the Assistant Division

Chief for Customer Services in LTSO. Ms. Musselman had been selected as the Assistant

Division Chief, Customer Services without performing the Decennial activities the agency now

states it was vital to have Markovic placed into the position of Assistant Division Chief,

Customer Services. This again is pretext for excluding me from the detail and promotion into

the position of Assistant Division Chief, Customer Services. It is this continuing change of

selection criteria for Supervisory Information Technology positions in LTSO that is used to deny

me promotion to the GS-15. In the prior competition for this particular position, the agency

used "the most recent supervisory experience", which it repeatedly and intentionally denied me.

My performance of the 2000 Decennial activities did not automatically provide for me a

reassignment into an LTSO Assistant Division Chief position or the position of Special Assistant

to the Chief, LTSO. I competed on merit for the promotion of Special Assistant to the Chief,

LTSO. "But for" agency management discriminatory practices I would be able to compete for promotions on merit.

The use against me of changing selection, promotion and reassignment criteria and the denial of supervisory information technology developmental opportunities and assignments without the threat of "removal with or without cause" (Exhibit 9999 ADR Propose agreement ) as the agency offered me when I requested the opportunity to temporarily occupy the vacant Chief, Business Planning Branch in 2007 has kept me unable to compete for promotional opportunities and has

**Unfair Performance Evaluation and Unfair Performance Awards**

My performance rating for 2007 was being contested in EEO case file 08-63-00072 at the time it was decided on summary judgement in favor of the agency.

The agency again gave me an unfair performance evaluation for fiscal year 2008 that I grieved informally and was revised upward to 380, level 4 performance (Attachment G2). In 2009, the agency failed to evaluate my performance appropriately. It agreed to revise my rating in accordance with the legal ADR agreement (Attachment H2 and H3). The agency unilaterally refused to honor the agreement without giving any reason. This was a willful and intentional discriminatory act and a continuation its discrimination against me.

Agency discovery documents state that the award amount for that level 4 performance should have been between 1.62 and 1.75 %. My award amount was 1.0% and is intentional discrimination on the same basis as claimed throughout this motion. The investigating management official independently stated the cause of concern for ratings that do not reflect true performance. (G2 pg 4 last paragraph). The low rating was given to give the perception that I was a non-performing employee and to prevent me from being able to compete for

promotions. As my rating was used as selection criteria (ROI 08-63-00072 and Attachment A2) in choosing Ms. Musselman and Mr. Schaufele over me for the two LTSO Division Chief positions. Any other reason for the repeated low performance evaluations is pretext. The real motive is to continue to exclude me from promotional opportunities and to use low ratings to justify my non-promotion and justify the selection of younger Caucasian employees over me. Union data of non-bargaining unit GS-14s and GS-15s show the average cash award as a percentage of salary for black GS-14 and GS-15 employees as 2.07% of salary while the same for white GS-14 and GS-15 employees is 2.14% (Exhibit I pg. 1-2). Discovery documents show that black employees have received lower average performance ratings and the average performance award given to blacks is less that given to white employees in the LTSO. This disparity is further revealed in the union provided data (Attachment I). It also show the discrepancy in performance ratings between the races. This disparity correlates with the union data and is statistically significant. Out of 582 total non-bargaining unit GS-14 and GS-15 employees, 48% of black GS-14s rate at level 4 while 53% of white GS-14 rate at level 4. 18% of black GS-15s rate at level 5 while 24% of white GS-15s rate at level 5. Caucasian GS-14 employees received 78% of the level 4 ratings while black GS-14s received 14% of the level 4 ratings. And, 12% of the level 5 ratings went to black employees while 79% of level 5 ratings went to white GS-15 employees for this group of 582 non-bargaining unit employees. I note here that in my revised rating of 2008 from level 3 to level 4, I was awarded 1.0% of my salary. Union data for non-bargaining unit GS-14 show the average award as a percentage of salary for black GS-14 is 2.07% while that for white GS-14 is 2.14% (Attachment I pg 1). My award percentage is grossly disparate and is motivated by discrimination. LTSO provided discovery data shows my award amount for a rating of 380 should have been between 1.62% - 1.75% if the spreadsheet data submitted by the agency is correct.

**EXHIBIT 1 Pg. JA175**
Case 1:17-cv-01932-TSC Document 30-4 Filed 11/19/18 Page 151 of 424
USCA Case #14-1155 Document #1537564 Filed: 02/13/2015 Page 177 of 596

Page 14

## Denial of Training

The agency continues to strategically deny me developmental and operational training as it knows I am pursuing promotional opportunities. It has denied training in 2009, 2010, and 2011. The requested training is to prepare for future opportunities and to maintain my current operational capabilities. The Clinger-Cohen competencies training recommends continuous training in the IT field primarily because of the rapid change in technology and its applications (AttachmentD8 and D9 pg 24). The denial of training is intended to make me unable to be promoted. I have been denied training since 2003 and continuing. The agency failed to respond to discovery requests related to training. That data would show that budget was never a reason for the training denials. The discovery response shows that while Mark Markovic was given a detail into the position of Assistant Division Chief, Customer Service at the same time I was requesting similar work assignments commensurate with my skills, abilities, and goals, my requests were ignored by agency management.

A 2003 request for the Project Management Institute Project Management Professional Bootcamp was denied which negatively impacted my competition for the position of Director of the Information Technology Program Office but filled as the Assistant Division Chief, Project Management (ROI 07-63-00145 and Attachment E9).

## Retaliation

The repeated denials of training and the failure to promote me are the direct evidence of the agency's retaliation for contesting its discriminatory behavior against me. The agency knew of my prior EEO filings and my participation in the EEO process and yet denied my 2010 and 2011 training requests anyway. Additionally, the agency was aware I engaged in the EEO process

Page 15

and filed for discrimination in reference to the promotion of Patricia Musselman into the position

of Assistant Division Chief, Customer Services.  After Mrs. Musselman was noncompetitively

promoted to Division Chief after occupying the Assistant Division Chief, her non-competitive

reassignment of Markovic into the Assistant Division Chief, Customer Service was retaliation for

my past EEO actions and for speaking out against the continued discriminatory conduct of the

LTSO management.

**Continuing Pattern**

Each of the discriminatory actions that I have charged in each of my prior EEO files and this

current EEO action are motivated by age-bias in order to provide a clear path for younger

Caucasian employees into the GS-14 and GS-15 Supervisory Information Technology

Specialist positions.  I was a senior African American Supervisory Information Technology

Specialist before the agency changed my supervisory code and then removed me from a

position I competed for on merit, Supervisory Information Technology Specialist as the Special

Assistant to the Division Chief, LTSO.  Since I have been strategically denied training for

operational and developmental needs, denied promotions in the LTSO  for which I am deemed

qualified (Exhibit E) and have been given four successive unfair ratings..

**Use of Ratings as Selection Criteria**

The agency used ratings as selection criteria against me in EEO file 08-63-00072 (A2 pg 7).  I

have contested two prior evaluations with my 2008 performance evaluation revised upward

(Exhibit G2).  Since the agency has taken an adverse action against me using ratings to justify

the its failure to promote me, this unfair performance evaluation should be viewed as having the

same effect.  Human Resources Division's rejection of a signed legal agreement to revise rating

is an adverse action, retaliatory and discriminatory on the basis of race and age (Attachment

Case 1:17-cv-01932-TSC    Document 30-4    Filed 11/19/18    Page 153 of 424
EXHIBIT 1 Pg. JA177
USCA Case #14-1156    Document #1537564    Filed: 02/13/2015    Page 179 of 596

Page 16

H2). Mr. Reed could have requested evaluations from the organizations where my details were performed prior to ratings or he could have consulted with other managers at Census who sent employees to the ELDP program on how they rated their employees on the respective elements. Requirements for the rating were met and were failed to be acknowledged by LTSO management because of its discriminatory animus toward me on the basis of race and age.

**Legal Basis for Pursuing Action**

The prima facie claims of discrimination are established and the agency's proffered reasons for the adverse actions it took against me are not to be believed as the agency has admitted to misconduct and possibly illegal conduct in the destruction of interview and rating documents in ROI 08-63-00072, Exhibit 28 pg. 1. Further, the agency has not provided legitimate non-discriminatory reasons for actions it took against me to prevail on summary judgement.

In prior EEO (ROI 07-63-00145) the selecting official stated a reorganization was the reason I was removed me from the merit competed position of Special Assistant to the Division Chief and not assigned a position of equivalent responsibility and authority. Those actions were used to justify my non-promotion. Individuals occupying the non-competed reassigned Division Chief, LTSO was 37 years old, the noncompetitive reassigned Assistant Division Chief, Customer Service was 35 years old, and the Assistant Division Chief, Systems was 34 years old when these positions were planned to be competed. I was 46 years old in 2002.

The evidence shows the agency's treatment of me has been disparate and has had a disparate impact on me in comparison to Caucasian employees competing for senior supervisory information technology positions. I ask the judge to use as background information and assess the impact the changing of my supervisory code and my removal from Special Assistant to the Chief, LTSO disadvantaged me in favor of younger Caucasians in competition for the position

in question in this consolidated action and others prior (ROI 07-63-00080, 07-63-00145, and 08-63-00072).

Conclusion

A. Summary judgement is not appropriate as there is dispute over all material facts presented by the agency except for material fact number one (1) which identifies the agency mission, goals, and objectives.

B. The agency has created an environment of discrimination in the LTSO Division.

C. There is a discrepancy in performance evaluations and performance awards attributable to race.

D. Prima facie cases for race, age, and retaliation have been made.

C. The agency's reasons for its actions have been demonstrated to be pretext for its discrimination against me.

I therefore respectfully ask the judge to deny the agency's motion for summary judgment.

Sincerely,

Anthony W. Perry
cc: Ronda J. Brown

Page 1 of 1

**EXHIBIT 1 Pg. JA179**
Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 155 of 424
USCA Case #14-1155      Document #1537564        Filed: 02/13/2015      Page 181 of 596

| From: | Anthony W Perry/LTSO/HQ/BOC |
|---|---|
| To: | Patricia Trainor Musselman/LTSO/HQ/BOC@BOC |
| Cc: | Dale Richard Reed/LTSO/HQ/BOC@BOC, Brian E McGrath/DIR/HQ/BOC@BOC, Anthony W Perry/LTSO/HQ/BOC@BOC |

| Date: | Monday, June 21, 2010 05:26PM |
|---|---|
| Subject: | Reconsideration of Denial of Training... |

Dale and I failed to come to an agreement on my request for the Senior Leader Training or the GS Graduate School Project Management Training Bootcamp.

I am requesting a meeting with you to discuss your reconsideration of this request.

Thanks in advance.

*FAX Attach 20-P/*

*Note: see time email sent*

18

| | |
|---|---|
| From: | Anthony W Perry/LTSO/HQ/BOC |
| To: | "Brian McGrath" <brian.e.mcgrath@census.gov>, anthony.w.perry |
| Cc: | "Patricia Musselman" <patricia.trainor.musselman@census.gov>, "Dale Reed" <dale.richard.reed@census.gov> |
| Date: | Monday, July 05, 2010 09:42PM |
| Subject: | Fw: Applications for Fall 2010 Leadership & Management Graduate Certificate Due by July 20, 2010 |

Brian,

Ms. Musselman concurs with Mr. Reed denying my request for the senior leadership training.

Attached is a promotional email for graduate certificate leadership and management training and yet my request for commensurate leadership training gets denied. Yet again a significant training request by me gets denied.

I am elevating my training request denials to you for reconsideration.
I would like to discuss the denial of the PMP Bootcamp, a skill obviously needed in the IT Directorate but denied to me several years ago; and the senior leader training, also skills the org. Is attempting to build competence in.

Tony

        BOC BROADCAST


    ----- Original Message -----
      From: BOC BROADCAST
      Sent: 07/01/2010 05:38 PM EDT
      To: ALLHQ
      Subject: Applications for Fall 2010 Leadership & Management Graduate
Certificate Due by July 20, 2010
From the Desk of Tyra Dent Smith, Chief, Human Resources Division....

### Applications for Fall 2010 Leadership & Management Graduate Certificate Due by July 20, 2010

Applications are now being accepted for the UMUC Fall 2010 certificate courses for the Census Corporate University (CCU) sponsored Leadership and Management (L&M) Graduate Certificate.

The certificate program requires completion of 4 courses (12 semester credit-hours). This graduate certificate program consists of competency-based courses designed to specifically build the leadership and management capabilities of Census employees. These competencies include innovation, maximizing performance, decision-making, planning and organization, teamwork/collaboration, communications, influencing/gaining commitment, building partnerships, and leading through vision/values.

*Each course satisfies 45 hours toward your mandatory annual requirements under the Management Development Program and Curriculum. Hours in excess of your annual requirement may carry over*

FAX Attach 17-P1

Note: see time email sent to management official 19

*for use in the next fiscal year only, up to the total number of hours required for your category.*

Students must complete each course and meet the minimum grade requirements. If a student does not pass with the minimum required grade, he or she would be required to reimburse the Census Bureau for the cost of that course.

For more information on the program, course descriptions, and the registration process, review these questions and links:

What is the curriculum for the Leadership and Management Graduate Certificate Program?

Review the Leadership and Management Graduate Certificate Program's description.

What courses are available this semester?

See the Fall 2010 L&M classes being offered.

What are the costs for each course?

There is limited central funding available. The cost for tuition for a graduate course (3 credits) at UMUC is $1374.00. The application fee for new students is $50.00. The average book cost is $200.00.  Should the central funding be exhausted, applicants will be notified and may request support from their divisions. If your division approves the class, CCU will assist you in applying to the university and registering for the classes.

When do I submit my request to take a class??

Now! CCU will accept requests through July 20, 2010. Complete the CCU Registration Form and fax it to CCU at 301-763-4406. Specific instructions will be provided on how to apply/register at UMUC. Classes start September 8, 2010 and end December 18, 2010 for this session.

New UMUC students must meet the university's graduate admissions requirements.

Where are the courses offered?

UMUC offers these certificate courses online, on the UMUC campus, and other locations.

When do I take the classes?

During non-duty hours. Please review the Bureau of the Census Internet Policy regarding use of the Internet and Census computer resources.

Whom do I contact?
For more information about this certificate program, please call or email Bobby Jovanovski in CCU at 301-763-8163 or via email at HRD.CCU@census.gov.

**From:** Ronda J Brown/POL/HQ/BOC
**To:** tonywpy@aol.com
**Cc:** anthony.w.perry@census.gov, tonywpy@aol.com

**Date:** Thursday, March 31, 2011 03:00PM
**Subject:** Re: PERSONAL AND CONFIDENTIAL

History:     ⊕ This message has been replied to.

---

That would probably be helpful for him. If it is information that you do not want communicated to me, no need to send me a copy, but if it is something that you want me to share with management for consideration, please send me a copy as well.

Thanks.

Ronda J. Brown, Attorney
Employment and Labor Law Division
Office of the General Counsel
U.S. Department of Commerce
301/763-2918 (telephone)
301/763-6238 (facsimile)

Confidentiality Notice: This e-mail message is intended only for the named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify us immediately that you have received this message in error, and delete the message.

From:     tonywpy@aol.com
To:     ronda.j.brown@census.gov, anthony.w.perry@census.gov, tonywpy@aol.com
Date:     03/31/2011 02:07 PM
Subject     Re: PERSONAL AND CONFIDENTIAL

---

Ms. Brown, I plan to put together a settlement package for judge Shubow so that he will be familiar with my position prior to the conference.
Sent from my Verizon Wireless BlackBerry
**From:** ronda.j.brown@census.gov
**Date:** Thu, 31 Mar 2011 10:32:40 -0400
**To:** <tonywpy@aol.com>
**Subject:** Re: PERSONAL AND CONFIDENTIAL

Good morning, Mr. Perry. I spoke to Judge Shubow this morning. He is available on April 12 at 10:00 a.m. for the settlement conference. If this time does not work for you, please provide me with some alternate times so

FAX Attach 15-p1

that I can contact him again. Otherwise, I will initiate the call on that date and at that time. Please provide me with the best telephone number to reach you.

Ronda J. Brown, Attorney
Employment and Labor Law Division
Office of the General Counsel
U.S. Department of Commerce
301/763-2918 (telephone)
301/763-6238 (facsimile)

Confidentiality Notice: This e-mail message is intended only for the named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify us immediately that you have received this message in error, and delete the message.

| From: | Ronda J Brown/POL/HQ/BOC |
| To: | tonywpy@aol.com |
| Date: | 03/24/2011 09:32 AM |
| Subject: | Re: PERSONAL AND CONFIDENTIAL |

Thank you for advising me. I will propose the April dates only to Judge Shubow.

Ronda J. Brown, Attorney
Employment and Labor Law Division
Office of the General Counsel
U.S. Department of Commerce
301/763-2918 (telephone)
301/763-6238 (facsimile)

Confidentiality Notice: This e-mail message is intended only for the named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify us immediately that you have received this message in error, and delete the message.

| From: | tonywpy@aol.com |
| To: | ronda.j.brown@census.gov |
| Date: | 03/24/2011 09:02 AM |
| Subject: | Re: PERSONAL AND CONFIDENTIAL |

Hi Ms Brown, please propose the April dates to Judge Shubow. The remaining
March dates won't work for me.Thanks
Sent from my Verizon Wireless BlackBerry
**From:** ronda.j.brown@census.gov
**Date:** Wed, 23 Mar 2011 09:10:28 -0400
**To:** <tonywpy@aol.com>
**Subject:** Re: PERSONAL AND CONFIDENTIAL

I will provide these dates to Judge Shubow.

Thanks.

Ronda J. Brown, Attorney
Employment and Labor Law Division
Office of the General Counsel
U.S. Department of Commerce
301/763-2918 (telephone)
301/763-6238 (facsimile)

Confidentiality Notice: This e-mail message is intended only for the named recipients. It contains information
that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under
applicable law. If you have received this message in error, are not a named recipient, or are not the employee
or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure,
use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please
notify us immediately that you have received this message in error, and delete the message.

| | |
|---|---|
| From: | tonywpy@aol.com |
| To: | ronda.j.brown@census.gov, tonywpy@aol.com |
| Date: | 03/22/2011 09:24 PM |
| Subject: | Re: PERSONAL AND CONFIDENTIAL |

Ms. Brown, my daughter's spring break is the first week in April and therefore we
will be out of town all or part of that week.The next potential dates are Tues,
Wed, Thur, or Friday during the 2nd week of April (12, 13, 14, 15).AP
Sent from my Verizon Wireless BlackBerry
**From:** ronda.j.brown@census.gov
**Date:** Tue, 22 Mar 2011 14:40:32 -0400
**To:** <tonywpy@aol.com>

FAX Attach 15-p3                                             23

**Subject:** Re: PERSONAL AND CONFIDENTIAL

Sorry for the delay in responding, Mr. Perry. I am unavailable on March 29 and March 30. Thus, please provide me with a few additional dates for the first week of April, and I will provide Judge Shubow with those dates as well as March 31 as potential options.

Thanks.

Ronda J. Brown, Attorney
Employment and Labor Law Division
Office of the General Counsel
U.S. Department of Commerce
301/763-2918 (telephone)
301/763-6238 (facsimile)

Confidentiality Notice: This e-mail message is intended only for the named recipients. It contains information that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under applicable law. If you have received this message in error, are not a named recipient, or are not the employee or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure, use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please notify us immediately that you have received this message in error, and delete the message.

| From: | tonywpy@aol.com |
|---|---|
| To: | ronda.j.brown@census.gov |
| Cc: | tonywpy@aol.com |
| Date: | 03/14/2011 10:56 AM |
| Subject: | Re: PERSONAL AND CONFIDENTIAL |

Hi Ms Brown,the best potential dates are in order: March 30, 31, and 29. There are opportunities during 1st week in April as well.A. Perry
Sent from my Verizon Wireless BlackBerry
**From:** ronda.j.brown@census.gov
**Date:** Mon, 14 Mar 2011 10:06:33 -0400
**To:** <tonywpy@aol.com>
**Subject:** Re: PERSONAL AND CONFIDENTIAL

Good morning, Mr. Perry. I am following up on the email exchange below. Please provide those dates to me as soon as possible so that I can contact Judge Shubow regarding potential dates for a settlement teleconference.

Thanks.

Ronda J. Brown, Attorney

24

Employment and Labor Law Division
Office of the General Counsel
U.S. Department of Commerce
301/763-2918 (telephone)
301/763-6238 (facsimile)

Confidentiality Notice: This e-mail message is intended only for the named recipients. It contains information
that may be confidential, privileged, attorney work product, or otherwise exempt from disclosure under
applicable law. If you have received this message in error, are not a named recipient, or are not the employee
or agent responsible for delivering this message to a named recipient, be advised that any review, disclosure,
use, dissemination, distribution, or reproduction of this message or its contents is strictly prohibited. Please
notify us immediately that you have received this message in error, and delete the message.

| From: | tonywpy@aol.com |
| To: | ronda.j.brown@census.gov, tonywpy@aol.com |
| Date | 03/08/2011 04:32 PM |
| Subject: | Re: PERSONAL AND CONFIDENTIAL |

Hi Ms. Brown,I did receive your letter and faxed a response to Judge Palmer and
to you this morning. I will provide some dates for a possible meeting to you
within the timeframe you suggest.TP
Sent from my Verizon Wireless BlackBerry
**From:** ronda.j.brown@census.gov
**Date:** Tue, 8 Mar 2011 10:51:58 -0500
**To:** <tonywpy@aol.com>
**Subject:** PERSONAL AND CONFIDENTIAL

Good morning, Mr. Perry. I received your voicemail message regarding your interest in the possible transfer,
subject to other terms. Thank you for your call. You should have received my letter to Judge Palmer requesting
a settlement judge to assist us in attempting to resolve this matter. Judge Shubow is available to assist us, so
as soon as possible, please provide me with available dates and times that work best for you during the next
week or so. I will then contact Judge Shubow to advise him of our availability, and he will schedule a date and
time to speak with us.

Thanks.

Ronda J. Brown, Attorney
Employment and Labor Law Division
Office of the General Counsel
U.S. Department of Commerce
301/763-2918 (telephone)
301/763-6238 (facsimile)

FAX Attach 15-P5

25

From:    Anthony W Perry/LTSO/HQ/BOC
To:      Benjamin T Felder/HRD/HQ/BOC@BOC
Cc:      John D Cunningham/HRD/HQ/BOC@BOC, Stacy Chalmers/HRD/HQ/BOC@BOC, Anthony
         W Perry/LTSO/HQ/BOC@BOC

Date:    Wednesday, February 17, 2010 02:04PM
Subject:  Re: Fw: Perry Agreement

History:         ⇘ This message has been forwarded.

---

Ben this is my last comment. The agreement went to HRD from ADR for review and
concurrence.   The agreement was in HRD for a week or so and then was passed back to ADR to
get signatures. This is unbelievable.

" Benjamin T Felder---02/17/2010 01:18:02 PM---You should have been advised that although
you may have reached an agreement during mediation, that

           Benjamin T Felder/HRD/HQ/BOC
     From:
           Anthony W Perry/LTSO/HQ/BOC@BOC
     To:
           "Anthony Perry" <anthony.w.perry@census.gov>, John D
     Cc:   Cunningham/HRD/HQ/BOC@BOC, Stacy Chalmers/HRD/HQ/BOC@BOC
           02/17/2010 01:18 PM
     Date:
           Re: Fw: Perry Agreement
     Subject:

---

You should have been advised that although you may have reached an agreement during
mediation, that agreement is subject to concurrence of all parties including HRD and OGC. In a
perfect world, the agreements should come to HRD in draft before they are signed by the parties
participating in the mediation. However, it is my understanding that the practice/procedure has
been to have the counselee/complainant and the management official sign the agreements prior
to routing for concurrence. We are working with OGC and ADR to try to make the process work
better in the future.

     Anthony W Perry---02/17/2010 12:58:04 PM---Ben, this is unbelievable. For the future, at
what point in the process should/must a proposed agree

           Anthony W Perry/LTSO/HQ/BOC
     From:
           Benjamin T Felder/HRD/HQ/BOC
     To:
           Stacy Chalmers/HRD/HQ/BOC@BOC, John D

FAx ntach 28-pl                                                                           27

Cc:   Cunningham/HRD/HQ/BOC@BOC, "Anthony Perry"
      <anthony.w.perry@census.gov>
      02/17/2010 12:58 PM

Date:

Re: Fw: Perry Agreement

Subject:

Ben, this is unbelievable. For the future, at what point in the process should/must a proposed
agreement go through HRD to avoid rejection after employee signs believing an agreement has
been reached?

      Benjamin T Felder

----- Original Message -----
   From: Benjamin T Felder
   Sent: 02/17/2010 12:17 PM EST
   To: Anthony Perry
   Cc: Stacy Chalmers; John Cunningham
   Subject: Re: Fw: Perry Agreement
Mr. Perry,

Without getting into a lot of detail, I can tell you that HRD reviewed the agreement and does not
concur with the terms. This has been discussed with OGC. Without HRD concurrence, the
agreement cannot be fully executed. As you know, you have the right to continue to pursue your
complaint through the EEO process.

Thanks,
Ben

  Anthony W Perry---02/17/2010 10:37:20 AM---Mr. Felder, after approval by Commerce legal,
the attached agreement was signed by me and waiting to

      Anthony W Perry/LTSO/HQ/BOC

   From:

      Benjamin T Felder/HRD/HQ/BOC@BOC, Anthony W Perry/LTSO/HQ/BOC@BOC

   To:

      02/17/2010 10:37 AM

   Date:

      Fw: Perry Agreement

   Subject:

Mr. Felder,
after approval by Commerce legal, the attached agreement was signed by me and waiting to be
signed by other parties. I was told this morning upon my asking that the agreement is on hold.

Please let me know why, after going through the ADR process, getting agreement and the Commerce legal review the signing by Census has been put on hold?

Thanks.

----- Forwarded by Anthony W Perry/LTSO/HQ/BOC on 02/17/2010 10:32 AM -----

| | |
|---|---|
| From: | Edith Devon Robinson/EEO/HQ/BOC |
| To: | Anthony W Perry/LTSO/HQ/BOC@BOC |
| Date: | 01/25/2010 10:14 AM |
| Subject: | Fw: Perry Agreement |

Here it is. If this is okay let me know and we can proceed with getting signatures. Thanks.

Edith D. Robinson
ADR Program Coordinator
Census Alternative Dispute Resolution Program (CADRP)
Room 3K219
4600 Silver Hill Road
Washington, DC 20233
301-763-3591
240-603-3604 (cell)
301-763-6512 (Fax)

----- Forwarded by Edith Devon Robinson/EEO/HQ/BOC on 01/25/2010 10:11 AM -----

| | |
|---|---|
| From: | Nicole Marie Morgan/POL/HQ/BOC |
| To: | Edith Devon Robinson/EEO/HQ/BOC@BOC |
| Date: | 01/25/2010 09:38 AM |
| Subject: | Perry Agreement |

Edith,

Attached is a slightly revised draft of the settlement agreement. Let me know if you have any questions.

[attachment "Perry Agreement 2 REVISED.docx" deleted by Benjamin T Felder/HRD/HQ/BOC]

29

FAX Attach 2.8-p-

Nicole M. Morgan, Attorney
Employment and Labor Law Division
Office of the General Counsel
U.S. Department of Commerce
Telephone: (301) 763-6237
Facsimile:  (301) 763-2918

30

| From: | DIR ADR Coordinator |
|---|---|
| | *Sent by: Edith Devon Robinson/EEO/HQ/BOC* |
| To: | Anthony W Perry/LTSO/HQ/BOC@BOC, Patricia Trainor Musselman/LTSO/HQ/BOC@BOC, Dale Richard Reed/LTSO/HQ/BOC@BOC |
| Cc: | Kardesha Nicole Bradley/POL/HQ/BOC@BOC, Kathy Hopkins/EEO/HQ/BOC@BOC, Charles L Dee/HRD/HQ/BOC@BOC |

| Date: | Wednesday, March 03, 2010 07:07PM |
|---|---|
| Subject: | Perry Mediation |

History:        This message has been replied to and forwarded.

# Census Alternative Dispute Resolution Program

## STATUS OF MEDIATION

Case Number:  10-010 (EEO #10-63-00197)

Mediation Date:  December 17, 2009

**Party 1:**          **Party 2:**

Anthony Perry, IT Specialist, LTSO          Patricia Musselman , Division Chief. LTSO
                    Dale Reed, Branch Chief, BPS, LTSO

**Mediator:**

Inez Uhl

Mediation of the dispute between the above named parties resulted in the following:

_____ No Agreement

_____ Partial Agreement

____X_____ Full Agreement (not approved) *

_____ Withdrawn, state why:

*Mediation Agreement was not approved by HRD and there were no suggested changes. Management Official also indicated that there were no revisions or changes for this agreement. This case will now return to the EEO process.

Thank you for choosing Mediation(ADR) in an attempt to resolve your conflict. If you have any questions or concerns in reference to your experience in the ADR process, please call us at 1-800-872-6096 or 301-763-3591. Thank you.

FAX Attach 29-P1

3/

Edith D. Robinson
ADR Program Coordinator
Census Alternative Dispute Resolution Program
Room 3K219
4600 Silver Hill Road
Washington, DC 20233
301-763-3591
202-240-603-3604(cell)
301-763-6512(fax)

32

From:   Anthony W Perry/LTSO/HQ/BOC
To:     dale.richard.reed@census.gov, "Patricia Musselman"
        <patricia.trainor.musselman@census.gov>, "Brian McGrath"
        <brian.e.mcgrath@census.gov>, "Anthony Perry" <anthony.w.perry@census.gov>

Date:   Tuesday, December 08, 2009 06:05PM
Subject:  Denial of Supervisory Recommendation for DOC SESCDP

History:      ⁃ This message has been forwarded.

Dale:

Your refusal to complete a supervisory recommendation for me in order that I can compete for a
position in the next SES CDP training is a defacto denial of training. The recommendation form
asks that a rating between 1 and 5 be provided for the five ECQs based on you having been
supervisor and my demonstrated potential for each ECQ and potential for successful participation
in the SES CDP. I have just successfully completed a near equally challenging program in the
ELDP. My position is that you have plenty of information to rate me appropriately on my
demonstrated potential for each ECQ and potential to fullfill the requirements of the program.

Please put your reason for refusing to provide a supervisory recommendation in writing and
consequently denying me the opportunity to compete for a position in the 2011 DOC SES CDP.

Thanks,

Tony

DFAX Attach 32-1st

33

U.S. DEPARTMENT OF COMMERCE
OFFICE OF THE SECRETARY
OFFICE OF CIVIL RIGHTS
WASHINGTON, D.C.  20230

REPORT OF INVESTIGATION

## I.   COMPLAINT IDENTIFICATION

Complainant's Name:
Anthony W. Perry

Job Title, Series and Grade:
Information Technology Specialist
GS-2210-14

Name of Organization Unit and Address:
U.S. Census Bureau
U.S. Department of Commerce

Complaint File Date
April 3, 2007

Complaint Number:
07-63-00080

## II.   DESCRIPTION OF INVESTIGATION

Investigator:
Kim Bey
Office of Civil Rights
U.S. Department of Commerce
Washington, D.C. 20230

Date of Assignment:
June 21, 2007

Place of Investigation:
Washington, DC

34

EXHIBIT 1 Pg. JA196

Case 1:17-cv-01932-TSC   Document 30-43   Filed 11/19/18   Page 171 of 424
USCA Case #14-1155      Document #1537564      Filed: 02/13/2015      Page 198 of 596

III.   NATURE OF ACTION, DECISION OR CONDITION GIVING RISE TO THIS
       COMPLAINT

Complainant, an Information Technology Specialist, GS-2210-14, in the LAN
Technology Support Office, U.S. Census Bureau alleges that because of his
race (Black/African American) and age (DOB:  January 29, 1956):

1.     Effective November 12, 2006, he was removed from the position of
       Special Assistant and reassigned as an Information Technology Specialist
       on the Business Planning Staff, unlike similarly situated white employees
       who were reassigned to Branch Chief positions, thereby denying him an
       opportunity to assume a position of leadership and resulting in him
       reporting to an employee of his same grade level.
2.     On December 1, 2006, Meerholz, Chief, LAN Technology Support Office
       (formerly Client Support Office) denied his request to attend a Project
       Management Institute one (1) week training course.


IV.    REQUESTED RELIEF

1.  Assigned as the Branch Chief of the Business Planning Branch/Staff
immediately or assigned to a position of equivalent authority and responsibility
that would provide the most benefit to the organization but not have a disparate
impact on him or his ability to be productive for the organization and compete
equitably for advancement opportunities that are commensurate with his most
relevant competencies, experience, skill, and formal and informal training
documented in his official personnel and performance record.  Alternatively since
the reorganization created two new and vacant Assistant Division Chief positions
and as of this filing, the Chief, LTSO position is vacant, based on merit systems
criteria, prior experience, skill, academic and non-formal training, motivation and
desire to contribute to the mission of the bureau, assign him to the position of
Assistant Division Chief for Systems or secondly to the position of Assistant
Division Chief for Customer Support or thirdly to the position of Chief, LAN
Technology and Support Office.

2.  $260,000 compensatory damages for emotional pain and suffering, mental
anguish, negative impact on his professional reputation, destruction of career
and loss of organizational standing amongst Bureau-wide senior management
officials, and peers, rank-and-file employees; humiliation, loss of self-esteem,
and depression.

35

3. Included in the rotation or "detail" of Acting Chief in either of the two vacant LTSO Assistant Division Chief positions or the LTSO Division Chief position. This would allow a fair opportunity for all supervisory GS-14s to gain experience and visibility in the leading, managing, and performance of the organization's work at the senior management level and cease the disparate treatment of him.

4. Continued and timely training in the totality of the Clinger-Cohen competencies for IT and IT management, including Project Management Institute approved Project Management training, and Project Portfolio Management.

5. Follow-on advanced training in the ITIL Service Management and Service Delivery curriculum.

## V.    DESCRIPTION OF EXHIBITS

### Administrative File Documents

Exhibit 1     Complaint of Employment Discrimination Against the U.S. Department of Commerce, and attachments. March 22, 2007. (Admin. File, 35 pages)

Exhibit 2     Memorandum for Chief, LAN Technology Support Office, from Roy P. Castro, Chief, Equal Employment Opportunity Office, Subject: Retention of Records for Complaint Filed by Anthony W. Perry. April 3, 2007. (Admin. File, 2 pages)

Exhibit 3     Memorandum for Suzan J. Aramaki, Director, Office of Civil Rights, Department of Commerce, from Castro, Subject: Discrimination Complaint filed by Anthony Perry, and attachments. April 3, 2007. (Admin. File, 20 pages)

Exhibit 4     Acknowledgement of Discrimination Complaint Letter to Perry from Susan E. Thomas, Chief, Program Implementation Division, Office of Civil Rights. April 10, 2007. (Admin File, 3 pages)

Exhibit 5     Final Agency Decision – Procedural, and attachments. April 17, 2007. (Admin. File, 15 pages)

Exhibit 6     Appeal Letter to Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), Washington, DC. May 3, 2007. (Admin. File, 2 pages)

Exhibit 7     EEOC Letter acknowledging receipt of appeal, and attachment. May 11, 2007. (Admin. File, 3 pages)

Exhibit 8     Notice of Partial Acceptance For Investigation, and attachments. May 30, 2007. (Admin. File, 28 pages)

U.S. DEPARTMENT OF COMMERCE
OFFICE OF THE SECRETARY
OFFICE OF CIVIL RIGHTS
WASHINGTON, DC 20230-0001

REPORT OF INVESTIGATION

## COMPLAINT IDENTIFICATION

**Complainant's Name:**

Anthony Perry

**Job Title, Series and Grade:**

Computer Specialist (GS-2210-14)

**Name of Organizational Unit and Address:**

Business Planning Staff
LAN Technology Support Office
Office of the Associate Director for Information Technology
Bureau of the Census
U.S. Department of Commerce
Washington, D. C. 20233

**Complaint Date:**

June 19, 2007

**Complaint Number:**

07-63-00145

**Nature of Action, Decision or Condition Giving Rise to the Complaint:**

Complainant, a Computer Specialist, GS-2210-14 with the LAN Technology Support Office, Bureau of the Census, alleges that due to his race (African American), Age (DOB: January 29, 1956), and in reprisal for his prior EEO activity:

1.    In April 2007, Thomas Meerholz, Acting Chief, LAN Technology Support Office, appointed Dale Reed as the permanent Branch Chief of the Customer Assistance Branch (Business Planning Staff), thereby preventing him from applying and competing for the job;

2

*37*

2.   Mr. Meerholz excluded him from the rotation of Acting Chief, LAN Technology Support Office from April 30 to May 25, 2007; and

3.   Mr. Meerholz denied him an opportunity to serve as Acting Chief, Systems Architecture Branch on April 29, 2007.

**Requested Relief:**

1.   Consideration for the vacant position of Assistant Division Chief for the Systems LAN Technology Support Office;

2.   consideration for the position of Chief, LAN Technology Support Office; and

3.   compensatory damages.

U.S. DEPARTMENT OF COMMERCE
OFFICE OF THE SECRETARY
OFFICE OF CIVIL RIGHTS, HCHB 6012
WASHINGTON, D.C. 20230

REPORT OF INVESTIGATION

I.      COMPLAINT IDENTIFICATION

Complainant's Name:

Anthony W. Perry

Job Title, Series and Grade:

Computer Specialist, GS-2210-14

Name of Organizational Unit and Address:

LAN Technology Support Office (LSTO)
Office of the Associate Director for Information Technology
U.S. Census Bureau
U.S. Department of Commerce
Suitland, Maryland

Complaint Reference Date:

March 6, 2008

Complaint Number:

08-63-00072

II      DESCRIPTION OF INVESTIGATION

Investigator and Contractor:

Russell L. Valentine, Jr.
International Civil Rights Investigations and Settlements Project
23679 Calabasas Road,
 Box Number 128
Calabasas, California 91302

2

39

<u>Date of Assignment</u>:

April 22, 2008

<u>Place of Investigation</u>:

Suitland, Maryland

III.    **ISSUES IN COMPLAINT**

<u>Nature of action, decision or condition giving rise to the Complaint</u>:

Complainant, a Computer Specialist, GS-2210-14/7, with the LAN
Technology Support Office, U.S. Census Bureau, alleges that due to his
race (Black/African-American), age 52; (DOB: January 29, 1956) and in
retaliation for his prior EEO activity (Complaint Numbers 07-63-00080
and 07-63-00145):

1. Since February 2007, Meerholz has refused to assign him to office
accommodations equivalent to other GS-14 Supervisory IT Specialists.

2. On November 30, 2007, he received an overall Level 3 performance
evaluation for his FY-07 performance evaluation resulting in his receiving a
lesser bonus amount.

3. On December 26, 2007, he learned that he was not selected for the
position of Supervisory IT Specialist, GS-2210-15, Census-M-ALD,
advertised under Vacancy Announcement No. LTSO-2007-0013.

4. On December 26, 2007, he learned that he was not selected for the
position of Supervisory IT Specialist, GS-2210-15, Census-M-ALD,
advertised under Vacancy Announcement No. LTSO-2007-15.

5. Meerholz excludes him from serving as Acting Chief and refuses to
provide him opportunities to act or temporarily occupy vacant positions of
authority in the LAN Technology Support Office.  He cites the following
examples:
   a. Effective December 23, 2007, Theresa Toole was appointed as
      Acting Chief, Systems Architecture Branch.
   b. During the period December 20, 2007 through January 4, 2008,
      Jason Schaufele was detailed to the Customer Assistance Branch.
   c. During the period December 21-23, 2007, Dale Reed, Catherine Le
      and Eugene Hellams served as Acting Chief.

3

4 ⁸

6. On May 29, 2008, he learned that the position of Chief, LAN Technology Support Office, was filled without being advertised, thus preventing him from competing for the position.

## IV.   REQUESTED RELIEF:

- Return Ms. Musselman to the now vacant position of ADC, Customer Service or Chief, Desktop Management Branch, and place Complainant in the position of Chief, LTSO at the grade of GS-15/7 or GS-15 plus at least 3 steps above the grade of Ms. Musselman and/or Mr. Schaufele at the time of settlement of this case.
- Alternatively, create the position of a Supervisory Information Technology Specialist at the grade GS-15/7 in the IT Directorate and place Complainant in this position.
- Upon application, place Complainant in the next DOC Senior Executive Service (SES) Candidate Development Program and/or any other executive leadership/management development training chosen by Complainant.
- Alternatively, with Complainant's concurrence, place him in the next vacant Information Technology Directorate Division Chief position at the grade of GS-15/7 or at least 3 steps higher than Ms. Musselman or Mr. Schaufele Complainant.
- Instruct LTSO and IT Directorate managers to use merit system principles, affirmative action and diversity guidelines, and restrict their ability to fill vacant leadership and authority positions non-competitively when qualified black or other employees are available, thereby giving all qualified personnel an equitable opportunity to act in leadership vacancies before positions are filled.
- Office accommodations equivalent to those which LTSO and IT Directorate GS-14 Supervisory IT Specialists had in February 2007.
- All discriminatory and retaliatory actions taken against Complainant ended immediately.
- Back pay with interest from the earliest date the positions of Assistant Division Chief, Customer Services and Assistant Division Chief, Systems Architecture were filled or could have been filled in 2003 at the grade and step Complainant could have achieved had he the opportunity to compete for either of those positions.
- Reinstatement of all sick and annual leave taken in relation to Complainant's pursuit of solutions for the discriminatory and retaliatory actions taken against him.
- All expenses incurred in relation to Complainant's pursuit of solutions for the discriminatory and retaliatory actions taken against him.

4

**U. S. DEPARTMENT OF COMMERCE**
**OFFICE OF THE SECRETARY**
**OFFICE OF CIVIL RIGHTS, HCHB-6010**
**WASHINGTON, D. C. 20230**

**REPORT OF INVESTIGATION**

I.    **COMPLAINT INDENTIFICATION**

Complainant's Name:
Anthony W. Perry

Job Title, Series, and Grade:
Information Technology (IT) Specialist, GS-2210-14/8

Name of Organization Unit and Address:
Business Planning Branch
LAN Technology Support Office (LTSO)
Information Technology Directorate
U.S. Census Bureau
U.S. Department of Commerce
Suitland, MD

Complaint Reference Date:
November 20, 2009

Complaint Number:
09-63-01027

II.    **DESCRIPTION OF INVESTIGATION**

Investigator and Contractor:
Felipa C. Coleman
ICRIS, LLC
23679 Calabasas Road
Box Number 128
Calabasas, California 91302

Date of Assignment:
January 19, 2010

Place of Investigation:
Suitland, MD

**EXHIBIT 1 Pg. JA204**

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 179 of 424
USCA Case #14-1155      Document #1537564      Filed: 02/13/2015      Page 206 of 596

III.    ISSUE IN COMPLAINT

    A. <u>Nature of action, decision or condition giving rise to the Complaint:</u>

Complainant, an Information Technology Specialist, GS-2210-14/8, with the LAN
Technology Support Office, U.S. Census Bureau, alleges that due to his race (black),
age (DOB: January 29, 1959) and in retaliation for his prior EEO activity:

    1. On September 2, 2009, he learned that Patricia Musselman, Chief, LTSO,
       non-competitively placed another employee in the position of Assistant
       Division Chief for Customer Service, depriving him of an opportunity to
       compete for the position; and
    2. On September 16, 2009, Musselman told him that she was denying his
       request to apply for admittance to the Harvard Senior Executive Forum.

    B. <u>Requested Relief:</u>

- Immediate appointment to a position equal to the GS-15 position for which he
  was denied competitive opportunity.
- Back-pay and front-pay in the amount he would have earned from the time the
  position was filled until he is appointed to a similar position.
- Compensatory damages in the amount of $225,000.
- Training in the Clinger-Cohen competencies for skills related to IT Specialists
  and program and project management.
- Permission to apply for competitive admittance to the Harvard Senior Executive
  Forum or other executive core qualifications training of his choice

IV.    **EXHIBITS**

Exhibit 1:        Formal Complaint of Discrimination dated November 20, 2009.
               [Admin File]

Exhibit 2:        Letter dated December 3, 2009 from Susan E. Thomas, Chief Program
               Implementation Division, Office of Civil Rights, U.S. Department of
               Commerce to Complainant's representative, acknowledging receipt of
               complaint. [Admin File]

Exhibit 3:        Memorandum dated December 9, 2009 from Roy P. Castro, Chief,
               Equal Employment Opportunity Office (EEOO), U.S. Census Bureau
               to Suzan J. Aramaki, Directory OCR with enclosures as stated
               including the EEO Counselor's Report dated December 3, 2009 and its
               stated attachments. [Admin File]

Exhibit 4:        Letter of December 22, 2009 from Ms. Thomas to Complainant's
               Representative, accepting complaint for investigation. [Admin File]

43

U.S. Department of Commerce
Office of the Secretary
Office of Civil Rights, Room 6012 HCHB
Washington, D.C. 20230

## REPORT OF INVESTIGATION

### COMPLAINT IDENTIFICATION

#### Complainant's Name:

Anthony Perry

#### Job Title, Series and Grade:

Information Technology Specialist, GS-2210-14

#### Name of Organizational Unit and Address:

Business Planning Staff
LAN Technology Support Office
U.S. Census Bureau Headquarters
U.S Department of Commerce
Washington, DC  20233

#### Complaint Date:

March 29, 2010

#### Complaint Number:

10-63-00197

#### Nature of Action, Decision or Condition Giving Rise to the Complaint:

Complainant, an Information Technology Specialist, GS-2210-14/8, with the LAN Technology
Support Office, U.S. Census Bureau, alleges that because of his race (Black), age (DOB:
January 29, 1959) and in retaliation for his prior EEO activity, in November 2009, he was given
an unfair performance evaluation and an unfair performance award.

#### Requested Relief:

Revised performance rating and award to include work he performed while in the Executive

2

44

Leadership Development Program (ELDP).

## DESCRIPTION OF INVESTIGATION

### Investigator/Contractor:

Joseph Deasel
Susan Grimes Associates, Inc.
Washington, DC 20007

### Dates of Investigation:

May 25, 2010 through July 2, 2010

3

45

| | |
|---|---|
| **From:** | Anthony W Perry/LTSO/HQ/BOC |
| **To:** | Dale Richard Reed/LTSO/HQ/BOC@BOC, Patricia Trainor Musselman/LTSO/HQ/BOC@BOC, Brian E McGrath/DIR/HQ/BOC@BOC |
| **Cc:** | Dale Richard Reed/LTSO/HQ/BOC@BOC, Anthony W Perry/LTSO/HQ/BOC@BOC |
| **Date:** | Monday, April 18, 2011 01:54PM |
| **Subject:** | Re: Please come to my office today at 1:30 for work assignments |
| History: | ⊹ This message has been replied to. |

My request for reassignment was responded to with a demand to come to Dale's office for work assignments.  I met with him.  I am willing to take whatever work the organization needs done to a reassignment in the IT Division.

For a long time it has been devastating and unhealthy to continue working in this environment and I am requesting I be moved out of this IT Division.

Dale Richard Reed---04/18/2011 11:26:36 AM---Dale R. Reed Chief, Business Planning Staff

| | |
|---|---|
| From: | Dale Richard Reed/LTSO/HQ/BOC |
| To: | Anthony W Perry/LTSO/HQ/BOC@BOC |
| Cc: | Dale Richard Reed/LTSO/HQ/BOC@BOC |
| Date: | 04/18/2011 11:26 AM |
| Subject: | Please come to my office today at 1:30 for work assignments |

Dale R. Reed
Chief, Business Planning Staff
LAN Technology Support Office (LTSO)
(301) 763-5080 (p)
(301) 763-4628 (f)

Page 1 of 1

EXHIBIT 1 Pg. JA209
Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 183 of 424
USCA Case #14-1155      Document #1537564      Filed: 02/13/2015      Page 211 of 596

| From: | Anthony W Perry/LTSO/HQ/BOC |
|---|---|
| To: | Brian E McGrath/DIR/HQ/BOC@BOC, Patricia Trainor Musselman/LTSO/HQ/BOC@BOC, Dale Richard Reed/LTSO/HQ/BOC@BOC |
| Cc: | Anthony W Perry/LTSO/HQ/BOC@BOC |
| Date: | Monday, April 18, 2011 10:44AM |
| Subject: | Another Request for Reassignment From Under Reed and Musselman |

I have made several requests for a reassignment into a different IT directorate out of LTSO and from under those who participated in the intentional discrimination and destruction of my career to give preference to those now in the leadership positions.

This is another request for a reassignment out from under the current LTSO leadership into another IT directorate or office.

FAX Attach 14-P

2

**From:** Anthony W Perry/LTSO/HQ/BOC
**To:** Brian E McGrath/DIR/HQ/BOC@BOC
**Cc:** Anthony W Perry/LTSO/HQ/BOC@BOC

**Date:** Thursday, July 15, 2010 08:28AM
**Subject:** Fw: Request for transfer

Brian,

I was told to identify a position I was interested which I did in the email below.  I was hoping you would respond to this request as well as my request for you to reconsider my recent training request denied by Musselman. Per your request, I went through the process.   I believe allowing those, who have been placed into leadership positions and have not needed to train in some areas nor believe they have to exercise power over people without guidance result in unfairness and inequity.   In my opinion, only more of the same will result.

I believe I continue to be treated disparately by LTSO management and not given the same opportunities given to others. My training needs are different from many in IT since I have made the sacrifice to continue training over the years. Attempts to mediate what I believe to be disparate and an attempt to prevent me from future opportunities. Others are training without the so-called Division Human Capital Management Plan. Why are my training requests being denied?

Sincerely,

Tony
----- Forwarded by Anthony W Perry/LTSO/HQ/BOC on 07/15/2010 08:15 AM -----

Anthony W Perry/LTSO/HQ/BOC
**From:**
Brian E McGrath/DIR/HQ/BOC@BOC
**To:**
**Cc:** Anthony W Perry/LTSO/HQ/BOC@BOC
05/21/2010 08:30 AM
**Date:**
Fw: Request for transfer
**Subject:**

Brian,

I have several interests and skills to do them.   I would like to talk with you about the position of Special Assistant to the ADIT and CIO. My qualifications for such a position are: CIO Certification, MS Information Technology, MBA, BBA, BA, and other short course training.

I look forward to a discussion with you about moving out from under Mussleman, an environment I still consider hostile and retaliatory.

Tony

FAX Attach 16-P1

| From: | Anthony W Perry/LTSO/HQ/BOC |
|---|---|
| To: | Dale Richard Reed/LTSO/HQ/BOC@BOC, "Patricia Musselman" <patricia.trainor.musselman@census.gov> |
| Cc: | Brian E McGrath/DIR/HQ/BOC@BOC, "Anthony Perry" <anthony.w.perry@census.gov> |

| Date: | Sunday, April 04, 2010 09:02PM |
|---|---|
| Subject: | Revisit Prior Request to be Transfered out of LTSO |

History:      ⇨ This message has been forwarded.

Dale,

I have made several requests to be moved out of LTSO. I would like to revisit this discussion tomorrow.

Tony

FAX Attach 25-PI

Note: see time of email with copy to management official

4

**From:**   Anthony W Perry/LTSO/HQ/BOC
**To:**     "Brian McGrath" <brian.e.mcgrath@census.gov>, "Anthony Perry"
            <anthony.w.perry@census.gov>

**Date:**   Sunday, January 31, 2010 02:52AM
**Subject:**

Brian,
I should have had at least one opprtunity for leadership since 2004, minimally. Hopefully with
your and Bob's help going forward, I will get the complete management and leadership
opportunity required to be able to reapply to the next SESCDP class in 18 months... My goal for
senior management is undeterred especially when others have been given the opportunities..

Finally, the assignment I am working on to consolidate IT Div. Chief responses is alright as a
start to getting back into the IT Diectorate level operations after 3 plus years explicitly removed.
It was done to give others "more recent management experience" and the justification to
promote them instead of me..

TP

FAX Attach 30 - P1

5

**From:**  Anthony W Perry/LTSO/HQ/BOC
**To:**  Dale Richard Reed/LTSO/HQ/BOC@BOC
**Cc:**  Brian E McGrath/DIR/HQ/BOC@BOC, Dale Richard Reed/LTSO/HQ/BOC@BOC, Patricia
Trainor Musselman/LTSO/HQ/BOC@BOC, Anthony W Perry/LTSO/HQ/BOC@BOC

**Date:**  Wednesday, January 06, 2010 03:59PM
**Subject:**  Re: Starting the 2nd Quarter of FY2010 and Not a Single Assignment Has Been Given...

It is lamentable and disgusting that you and the division chief have chosen to continue what has
been done to me for the last 8 years by past management.  I'm disputing ratings for the third
consecutive year while both of you skip to the bank to cash your bonuses! Because that is what
the ratings and evaluations are about. How much those of you placed in the positions you have
non-competitively can pocket and what self promotion comes out of it for you.  For doing what!
What innovation? What major project? What change for the best? There is disparity in positions
of leadership and authority. You have been given the goals and objectives and the work this
organization needs done.  Place me in the position I was removed from and and everyone else
and lets start over.   Assign it. Don't ask me to pick up the pieces that I didn't drop.  Let me do
to each of you what was done to me and see how you like or how you function...Write up the
assignments you plan to assign to me. You have my resume. The work should be commensurate
with my skill and training.   That is how they fill jobs around here. At least that is what they say
in the interviews.

   Dale Richard Reed---01/06/2010 03:38:21 PM---Hi Tony: It is lamentable on many levels, that
you chose this course of action rather than come to m

         Dale Richard Reed/LTSO/HQ/BOC
   From:
         Anthony W Perry/LTSO/HQ/BOC@BOC
   To:
         Anthony W Perry/LTSO/HQ/BOC@BOC, Brian E McGrath/DIR/HQ/BOC@BOC,
   Cc:   Patricia Trainor Musselman/LTSO/HQ/BOC@BOC, Dale Richard
         Reed/LTSO/HQ/BOC@BOC
         01/06/2010 03:38 PM
   Date:
         Re: Starting the 2nd Quarter of FY2010 and Not a Single Assignment Has Been
   Subject: Given...

Hi Tony:

It is lamentable on many levels, that you chose this course of action rather than come to me
personally to discuss your concerns; partly because there are substantial gaps in some of your
statements. I believe you will agree with me that face-to-face discussion and active participation
by all parties are paramount factors in resolving issues; and for that, my door is and always has
been open to you. My suggestion is that we follow that paradigm.

Let's get together tomorrow to begin the dialog and set a more detailed action plan. To that end,
I would like more detail on the work you are performing for the Director. What is the scope,
deliverables, and schedule for this work? In addition, how much time has the Director allocated
for you on this task? We can discuss this issue as well tomorrow.

Please drop by and let's set up a time to move forward.

Dale

Dale R. Reed
Chief, Business Planning Staff
LAN Technology Support Office (LTSO)
(301) 763-5080 (p)
(301) 763-4628 (f)

Anthony W Perry---01/05/2010 12:01:28 PM---Dale, January starts the 2nd quarter of the rating year.  You have failed to give me an assignment

| | |
|---|---|
| From: | Anthony W Perry/LTSO/HQ/BOC |
| To: | Dale Richard Reed/LTSO/HQ/BOC@BOC |
| Cc: | Brian E McGrath/DIR/HQ/BOC@BOC, Patricia Trainor Musselman/LTSO/HQ/BOC@BOC, Anthony W Perry/LTSO/HQ/BOC@BOC |
| Date: | 01/05/2010 12:01 PM |
| Subject: | Starting the 2nd Quarter of FY2010 and Not a Single Assignment Has Been Given... |

Dale,

January starts the 2nd quarter of the rating year.   You have failed to give me an assignment three months into the rating period. This repeats the pattern of the three past years in which you then you proceed to rate me as marginally successful.

I expect that you are planning assignments for me that are commensurate with my skill and abilities. Please plan to put them in writing in order that the assignment is clear and I need not guess what the expectations are.

The only assignment I have to date is a special project assigned by the director. As busy as he is he has scheduled time to present his project expectations to the team working on them in regular meetings. I expect that you as my supervisor will do the same soon.

Brian, if there is no work to be done in LTSO I am again asking to be reassigned to work on some of the initiatives that are going on elsewhere in the IT Directorate.

Thanks,

Tony

From:   Anthony W Perry/LTSO/HQ/BOC
To:     Brian E McGrath/DIR/HQ/BOC@BOC, "Anthony Perry" <anthony.w.perry@census.gov>

Date:   Sunday, December 13, 2009 10:15AM
Subject: Moving Forward Again

Brian:
Dale has provided the SESCDP recommendation. Can you explain why an appeal was necessary
to apply to a competitive government training program? I still find it unconscionable that an
employee with an MBA from a top tier school (17 when I attended) cannot be rated on "business
acumen!" Give me a break. You should be concerned that a non-competitively picked branch
chief and a non-competitively picked division/office chief are struggling with leadership as are
several of the other non-competitively picked 13s and 14s, and possibly 15s. Reed and
Musselman's acts point to continuing discriminatory acts against me and their beholding to Tom
because he put them there and are attempts to confirm me as subordinate in capability and to
justify his dispicable acts.

As you know I am on a team the director is putting together. I have asked repeatedly for a
reversal of the SF-50 personnel actions Meerholz took that barred me from supervisory
participation in IT.   You and IT mgrs. are having IT budget, strategic, and operational
discussions. I would like to participate in these division activities which are part of my
performance plan, which never get assigned, and the directorate activities as well!

You do not have to continue the status quo. This is your program now. I am again asking to
participate or be reassigned to a position in IT where I can participate.   Can you provide the
status of the ISSRO ITPMO vacancy. I am preparing and intend to compete vigorously for that
position.

Finally, I have lost approx. 8 years of my career with Rick and Tom and I would like the next 10
to be what the past 8 should have been.

I am requesting again to meet with you. I don't see how you meeting with me makes you liable
for prior acts that will have a legal resolution. For me to go forward and contribute in ways I have
again, I think it is essential.

Tony

FAX Attach 31 - P1

Re: Mandated Training 12/1

Anthony W Perry  to:  Richard B Birdsong, Patricia Trainor Musselman, Dale Richard Reed          12/01/2009 02:32 PM

Cc:  Brian E McGrath, Mark Emory Markovic, Anthony W Perry

Dale,

what action was taken to include me in the Supervisors List.  The last personnel action taken on my behalf was my removal  from supervisory status by Tom Meerholz without cause but for the reason to eliminate me from competing for  vacancies at the time.   This is no small matter.  I have NOT received a personnel action that reverses that personnel action taken by him which removed me from the participation in all supervisory activities at the Census Bureau and in LTSO in December of 2006.

Please provide me with the appropriate documentation or prepare the appropriate personnel action that reverses that action taken by him.   I believe HR assisted him with all of the actions he took against me and I believe could be of some help.

Tony

| Richard B Birdsong | All, New reports for mandated training (Title 13,... | 12/01/2009 01:51:45 PM |
|---|---|---|

Richard B
Birdsong/LTSO/HQ/BOC               To   LTSO Supervisors List

12/01/2009 01:51 PM               cc

                                  Subject   Mandated Training 12/1

All,

New reports for mandated training (Title 13, Title 26, and IT Security Awareness) were posted in a new directory accessible to every supervisor. The new directory is < M:\LTSO Admin\Training Mandated >. The reports dated today cover everything completed through yesterday. When in this directory, see the text file < 1-mandated-training-file-info.txt > for more information on the files and file names.

In the Title 13 report, 14 people (down from 22) are listed as incomplete, however 11 who are incomplete have a note included that explains why. LTSO set a deadline of 10/30/09 for completing the Title 13 training.

In the IT security awareness report, 16 people (down from 36) are listed as incomplete, however 11 who are incomplete have a note included that explains why. LTSO set a deadline of 11/30/09 for completing the IT security awareness training.

In the Title 26 report, the one person who is incomplete has a note included that explains why. Only 58 people identified last year as taking Title 26 training have taken the training this year. However, LTSO set a goal of having all staff, not just those who took it last year, complete Title 26 training by 12/31/09.

If you need to add a note to any of the reports explaining why the person has not taken the training, I can help you.

Thanks,
Ben

F// Attach 33 - P1

P

EXHIBIT 1 Pg. JA217

Case 1:17-cv-01932-TSC   Document 30-4  Filed 11/19/18   Page 191 of 424
USCA Case #14-1155     Document #1537564       Filed: 02/13/2015     Page 219 of 596

Anthony W
Perry/CSO/HQ/BOC

12/18/2006 08:44 AM

To  Richard W Swartz/DIR/HQ/BOC@BOC

cc  Anthony W Perry/CSO/HQ/BOC@BOC

bcc

Subject  Request Rescinding of Exclusion from Sr. Staff Meeting
Immediately

Rick, while I wait for a meeting to be set up, I am requesting my exclusion from attendance to the LTSO
Sr. Staff meeting, after attending the meeting since my re-assignment to CSO in 2000, be changed
immediately.   The longer that this callous and malicious decision is allowed to go unaddressed, the easier
it will be to let stand.   This was done with the intent to subordinate, humiliate, and otherwise embarrass
me in the eyes of my peers.   It is behaviorally discriminatory with a possible racially discriminatory aspect
as well.  It is a decision that requires your review.  This cannot wait.  This is my life and my career that
has been put in jeopardy by Tom Meerholz's callousness.  My transfer out of this area is not a solution to
discriminatory, malicious, callous managerial behavior.  As I have said, I remain willing to work in THIS
office.

I understand you are busy, but this requires your attention.   Dennis (Kip) Drinkard, a GS 13 team lead,
now attends the LTSO Sr. Managers meeting.  He is not a Sr. manager but he has been invited to attend
regularly. My disagreement is not with him but in the unfair exclusion of me by Tom Meerholz from the
office Sr. management meeting.   If this decision is designed to eliminate me as an applicant for the
GS15s that will be posted in this division, it will not.  It may be with reason that I did not get a promotion to
the more than ten GS15s I applied for outside of the IT Directorate, but not getting a fair merit based
assessment for the two that will be posted in LTSO where I've worked since 2000 and the IT Directorate
that I've worked in for 20 or more years could be described and perceived as discriminatory employment
behavior as defined most recently in the No Fear training just completed by Census employees. As you
can see I am not happy.

I am available before or after work today and Wednesday to get this meeting scheduled and held.

Thanks.

TP

27

| | |
|---|---|
| From: | Anthony W Perry/LTSO/HQ/BOC |
| To: | Brian E McGrath/DIR/HQ/BOC@BOC |
| Cc: | anthony.w.perry@census.gov |

| | |
|---|---|
| Date: | Saturday, October 17, 2009 09:53PM |
| Subject: | My Request to meet and be Reassigned |

Brian,

I am recovering from knee surgery and expect to return to work during the week of Oct. 26. I am hopeful that my requests to meet with you and for reassignment options will be considered with the seriousness they were made and in light of the information I respecfully provided to you.

Regards,

Tony

FAX Attach 36—pl

**Bronze Medal Justification for**

*Anthony William Perry*

*Decennial Systems and Contracts Management Office*

This award recognizes Anthony Perry's contributions to the Census 2000 Data Capture System (DCS 2000) Project. The goal of this project was to capture data from approximately 150 million Census 2000 questionnaires in just a few months. For the first time, the Census Bureau used an outside contractor to provide the hardware/software for this system. Mr. Perry played a key role on the project during all phases, from pre-contract award through post-data capture. His efforts led to the success of DCS 2000 and ultimately to the success of the 2000 Census.

During the pre-award phase in 1995, Mr. Perry managed several important prototype and "proof-of-concept" activities to help uncover potential problems that the Census Bureau might face while implementing an automated recognition and key-from-image data capture system. He evaluated and recommended the use of RAID devices as the appropriate storage technology to ensure data quality, accessibility, recoverability, and manageability for the prototype data and consequently data captured by the DCS 2000. He also played a key role in the technical evaluation of contractors' proposals for the DCS 2000 and assisted the government's technical oversight team in the source selection process.

After contract award, Mr. Perry led several important efforts for the implementation of DCS 2000. He oversaw the work of twelve engineers, computer specialists and technicians in the observation and reporting of the DCS 2000 development progress against the requirements and the master schedule. Each month he reviewed and consolidated the information in technical monitor reports from the members of his team. These reports proved critical to identifying and resolving problems with the development of DCS 2000. Mr. Perry ensured the thorough review of all submissions of Lockheed Martin's development documentation for each of the DCS 2000 subsystems. This included system specification, design, description and component documentation.

During the early stages of DCS 2000 development, Mr. Perry initiated a series of meetings that led to the delivery of Census Bureau "dictionaries" to the contractor to enhance DCS 2000. These dictionaries or reference tables were not "off-the-shelf" products. He had to plan, organize and regularly meet with multiple end-users and subject matter personnel with an additional goal of helping those organizations understand the necessity of the dictionaries and other operational data they use to process the data from DCS 2000. The dictionaries were given to the DCS 2000 contractor which provided the tools they needed to develop a highly accurate optical character recognition subsystem.

Mr. Perry served as the government point-of-contact for all DCS 2000 Y2K test activities. He reviewed all Y2K system test plans, objectives, schedules, and results for compliance to the Department of Commerce Y2K test directives. He reviewed the contractors' draft and final reports before submission to the government oversight representative. Because of his efforts, we experienced no Y2K problems with DCS 2000.

Just prior to the start of Census 2000 data capture operations, Mr. Perry led the planning and organizing of a simultaneous pre-production operations test at the four data capture centers. This test enabled the data capture contractors to uncover some minor kinks in their systems/operations

## Bronze Medal Justification for

### *Anthony William Perry*
*Decennial Systems and Contracts Management Office*

prior to the start of data capture. Mr. Perry directed a team consisting of software and system engineers, computer specialists and both data capture contractors through all activities related to the national test of the production system and the production operations. This effort included defining the goals of the test so that the contractors could write test objectives for the activity. He developed the MS Project schedule for all the tasks required to complete the work and tracked each critical milestone closely to completion. Just as the schedule for the DCS 2000 was constrained, the planning and execution of this test was on an even shorter time-line. Mr. Perry's efforts led to the successful completion of this test, which ultimately played an important role in the success of the DCS 2000.

Lessons learned activities are key to the successful end of a project. Mr. Perry led the initial DCS 2000 lessons learned efforts. He interviewed approximately thirty DCS 2000 participants to create a knowledge base for lessons learned during the DCS 2000 Project. Insightful observations were captured from nearly all participants related to nearly all phases of the Data Capture Program Office activities, from the acquisition to the implementation of the data capture system and the data capture services operations.

As evidenced by the above narrative, Mr. Perry has made a significant contribution to the DCS 2000 Project over the past 6 years. His efforts helped to ensure that the project met all milestones, including the key milestone of completing data capture on time. His outstanding work led to the success of the project and the 2000 Census and he should be commended for his work.

June 10, 2010

**VIA Certified Mail**
U.S. Department of Commerce
14th & Constitution Avenue, N.W.
Office of Civil Rights
Room 6012, HCHB
Washington, D.C. 20230

Re: Perry v. U.S. Department of Commerce
EEO Complaint No.: 09-63-01027

On or approximately on May 15, 2010, I, Complainant Anthony W. Perry received a
copy of the Report of Investigation. Enclosed is a signed rebuttal declaration to the
testimony in the ROI.

Sincerely,

Anthony W. Perry,
Complainant

Encl.

3

**Anthony W. Perry**

**Complaint No. 09-63-01027**

**Rebuttal to the Report of Investigation**

I, Anthony W. Perry, affirm and state the following.

**<u>Prior EEO Actions</u>**

For the record I would like to state that I have worked at the Census Bureau for 27 years and I have filed 3 previous EEO actions with one, EEO Complaint No.: 07-63-00080 under appeal since May 2007 for a prohibited personnel action, removal from a position of authority and responsibility without cause and other ongoing discriminatory, disparate and retaliatory actions taken against me, EEO Complaint No.: 07-63-00145 for denial of developmental opportunities and other discriminatory action, and EEO Complaint No.: 08-63-00072, which is currently Civil Complaint No.:  8:09-cv-02672.

**<u>My Academic Qualifications and Past Performance</u>**

The ROI failed to include my academic and past performance qualifications and I wish to include relevant information as it further shows the pretext of the statements by Ms. Musselman and Mr. Reed for the discriminatory acts targeted at me.

In June or July 2009, I completed the Department of Commerce's "flagship" Executive Leadership Development Program for high performing GS/13-14 employees.  I completed the University of Maryland University College (UMUC) Executive Master of Science in Information Technology and Executive Chief Information Officer Certification in 2004; a Master of Business Administration, Univ. of Texas, Austin (MBA) in 1994; Bachelor of Business Administration in Computer and Information System Sciences, Univ. of the District of Columbia in 1986; BA in Chemistry, Univ. of Delaware in 1983, as well as many specific on the job training courses.

For the 1990 Decennial Census, I designed the subsystem and wrote the software that for the first time transferred respondent identification information used to plan the non-response follow-up activities to headquarters across the internet.  Prior to that, the respondent information was written to magnetic tape and shipped to Suitland, Maryland by courier service.  For the 2000 Census, I was the government's project manager and Assistant Contracting Officer's Technical Representative for the technical development of the $500 million plus 2000 Decennial Census Data Capture System.

I have received an individual and a group Bronze Medal.

Since 2002, I have been and continue to be subjected to disparate and discriminatory treatment and repeated denials of requests for training, developmental assignments, and promotional opportunities.  Much of this is evidence is in my prior EEO actions.

I have applied for the Deputy CIO position at the Department of Commerce for which my application was deemed qualified although another selection was made who had more direct management and leadership experience. The selections tenure was short lived as he was apparently removed from the position for reasons unknown.

## Filling of ADC for Customer Service without Advertisement or Merit Competition

It should be noted that Ms. Musselman was non-competitively placed in the position of Chief, LTSO after four months as ADC for Customer Service without.

Mr. Dale Reed, Chief Business Planning Office and my branch chief, was also non-competitively reassigned to Chief, Business Planning Office even though I was told the position was going to be competed. There have been several others. All or nearly all non-competitive promotions or non-competitive reassignments have gone exclusively to Caucasian employees.

Ms. Musselman's statement that a management decision was made to detail Mr. Markovic into the position of ADC for Customer Service and then to lateral Mr. Markovic into the position of ADC for Customer Service is pretext for the continuing use of non-competitive promotions and non-competitive lateral assignments in the Information Technology Directorate to exclude me from fair competition for promotional opportunities. Additionally, Mr. Markovic's division chief at the time of his non-competitive reassignment is said to not have agreed with the decision to remove Mr. Markovic from his then current ADC position in the SSD and reassign him to the ADC for Customer Service in the LTSO. The use of non-competitive promotions and non-competitive laterals to the extent used by the Information Technology Directorate is used to exclude fair competition on merit. Any other explanation is pretext for the use of arbitrary, discriminatory, and retaliatory selection criteria for the preference of Caucasian employees in positions of leadership and authority.

Ms Musselman questions my statement as to my qualifications being superior to Mr. Markovic and my ability to lead and supervise. My qualifications are stated for reference in this rebuttal and should have been included in the ROI since they are called into question by Ms. Musselman. Neither Ms. Musselman nor Mr. Markovic has completed comparable leadership or management training as I and any suggestion by Ms. Musselman questioning my ability to lead and supervise is pretext for the preferential treatment given to Caucasian employees using non-competitive promotions and non-competitive reassignments.

In addition to my stated qualifications, from 1996 to 1997 I was the Section Chief and in effect Branch Chief for the Electronics Section of the Technical Services Division and the Data Capture Systems Branch in the Technical Services Division of the U.S. Census Bureau leading a staff of approximately ten computer specialists, electronic technicians, and computer scientists. From 1997 to 2000, I was the government's Project Manager and Assistant Contracting Officer's Technical Representative for the design,

development, and deployment lifecycle for the $500 million plus 2000 Decennial Census Data Capture System. Mr. Markovic has no special ability or skill that more qualifies him to be placed into the position as ADC for Customer Service than I. The non-competition is the continuation of preference given to Caucasian employees and Caucasian employees only. One would expect African Americans or other qualified minority employees would also be identified for non-competitive promotions or non-competitive laterals. This method of promotion or reassignment is used nearly exclusively for Caucasian employees and never for African American employees. One need only look at the use of non-competitive promotions and non-competitive reassignments in the IT Directorate since 2003.

Neither the assignment Mr. Markovic was tasked to perform nor does Mr. Markovic required nor has any special skill requiring him to be non-competitively reassigned to the LTSO. As Mr. Markovic was already an ADC in the Systems Support Division of the IT Directorate, he could have performed and continued to perform these tasks from the position he held prior to the detail. As stated Ms. Musselman held the position for four months before she was non-competitively promoted to the Division Chief, LTSO. Her selection for ADC for Customer Support is being contested in a civil proceeding.

**Denial of Training Request to Attend the Harvard Senior Executive Forum**

Ms. Musselman states in her testimony that resources need to be considered before training can be approved. At the time of the request, neither Ms. Musselman, nor Mr. Reed stated budget resources or work needing to be completed were the reasons for the denial. Both Ms. Musselman and Mr. Reed state that I was enrolled in the Executive Leadership Development Program at the time of my request. Although technically correct, the ELDP was completed in June with only the graduation ceremony pending for October, 2009 at the time of my request to compete for a position in the Harvard SEF. Though I made several requests, I do not recall being given any assignment of significance to the organization mission from July 2009 through February of 2010. I have been repeatedly denied developmental and promotional opportunities in competition with less qualified Caucasian employees through the systematic use of non-competitive promotion and non-competitive reassignments to Caucasian employees exclusively.

Ms. Musselman's explanation for the denial of training is pretext for the continued discrimination that I have been subjected to since 2003 in the Information Technology Directorate as is evident in my prior EEO filings to further prevent me from being able to apply for or compete for promotional opportunities. If not for my continued pursuit of training and education, I would not be able to compete for promotional opportunities at all since I have been denied repeated requests for developmental and promotional opportunities and not selected for application for promotion while the criteria for selection for promotion and training in the Information Technology Directorate has been non-competitive and is arbitrary, biased and selective based on race.

Finally, there is a footnote in the ROI questioning my statement that I am classified as a Supervisory IT Specialist. I have recently become aware that my position description

was changed by the previous Chief, LTSO when he removed me from the position of Special Assistant without cause in the disguise of reorganization. It should be noted that the alleged removal without cause from a position I competed for and won on merit remains under appeal with the EEOC. I have had a supervisory code of 2 between 1997 and 1999 and supervisory code 4 every year since.


I declare all statements are true and correct as I remember them.   Dated June 11, 2010.


Anthony W. Perry

EXHIBIT 1 Pg. JA227

Case 1:17-cv-01932-TSC   Document 30-43   Filed 11/19/18   Page 200 of 424
USCA Case #14-1155       Document #1537564       Filed: 02/13/2015       Page 229 of 596

# Anthony W. Perry

5907 Croom Station Road
Upper Marlboro, MD 20772
Phone: (301) 780-7653
Email: tonywpy@aol.com

Ronda J. Brown
United States Department of Commerce
Legal Office
Bureau of the Census
4600 Silver Hill Rd., 8H048
Washington, D.C.  20230

Re:   **Perry v. Department of Commerce**
      **EEOC No. 531-2010-00351X**
      **Agency No. 09-63-01027**
      Settlement Offer

Dear Ms. Brown,

In reference to the hearing notification for the above EEO file, I am writing to discuss or propose an initial settlement to the  above referenced case or the amended case if Judge Palmer concurs with my request for amendment.

A major part of nearly every EEO action I have filed, most often after participating in administrative grievance procedure, mediation and Alternative Dispute Resolution, alleges non-selection, denial of training, continuing patterns of discriminatory behavior targeted at me, and/or disparate treatment in performance evaluations, awards, and other organizational provisions from that of similarly situated employees on the basis of race, age, continuing pattern of targeted acts against me and retaliation.  Attempts at mediation or ADR with Census managers I allege responsible have yet to yield any resolution to any of these claims.

While I have been fully qualified for each and every position filled non-competitively that I was prepared to compete for in the Information Technology Directorate and those filled competitively as well, Ms. Musselman was non-competitively promoted from ADC, Customer Service to Chief, LTSO four months after being selected for Assistant Division Chief, Customer Service, repeatedly given preferential treatment to "act" in temporary LTSO leadership vacancies while I was repeatedly denied the same; and Dale Reed was non-competitively reassigned from Branch Chief, Customer Assistance Branch to a newly created Branch Chief, Business Planning Branch in 2007, while the vital Enterprise Help Desk went nearly three years without a Branch Chief, to lead and perform much of the work I had performed as a Special Assistant to the Chief, Client Support Office from 2001 to December 2006 (before being

EXHIBIT 1 Pg. JA228
Case 1:17-cv-01932-TSC   Document 30-43   Filed 11/19/18   Page 201 of 424
USCA Case #14-1155     Document #1537564     Filed: 02/13/2015     Page 230 of 596

Page 2

removed without cause and under appeal at the EEOC), renamed LAN Technology Office as part of a 2006-2007 reorganization and he was also non-competitively reassigned to a leadership position in the Information Technology Directorate in 1996 or 1997. There are currently no less that 10 Caucasian employees that have been non-competitively placed into GS-13, 14, or 15 positions in the Information Technology Directorate, probably more, and absolutely not one single Black or African American employee.

Lastly, recently I have been scouring personnel actions taken for or against me. This past Friday, I note that on 08/1997 there is a personnel action that changes my supervisor code from supervisor code 2 (personnel record dated 07/1997 to supervisor code 4 (personnel record dated 08/1997 even though there was no change in my duties or responsibilities. That position as Project Manager for the 2000 Census Data Capture System, a position I competed for and won on merit, ended during mid-year of 2000. This particular personnel action as well as several others, removed me from being "similarly situated" as other supervisory employees then and now. That change appears to have changed my conditions of employment and I will inquire about supervisory code changes in a follow-up discovery request. I am requesting below that my supervisory code be changed back to supervisor 2, especially in light of my superior education and completion of the Commerce Executive Leadership Development Program and past experience and performance.

My opening settlement proposal is as follows:

1.   Assigned the Assistant Division Chief, Customer Services at the grade and step I would have now if I had been allowed to compete for or was promoted into the position due to my prior competition for the referenced job when Mr. Markovic was non-competitively reassigned to it.

2.   Alternatively, assigned to the position ISSRO-2010-003, Director of the Information Technology Program Management (as advertised) but filled and broadcast in a staff announcement as Assistant Division Chief, Project Management.

3.   Back-pay with interest and benefits and front-pay from the date that the position ADC, Customer Service, LTSO became vacant until settlement is reached.

4.   Immediate reassignment of a supervisory code of 2 as my supervisory category.

5.   Enrollment and government payment for a Project Management Institute certified Project Management Bootcamp and payment to sit for the Project Management Institute Project Management Professional Certification.

6.   Enrollment and government payment for the October 2010 George Washington University Senior Leader Program or the next available session that I am able to enroll.

7.   Continue Clinger-Cohen Information Technology competency training with no delay.

8.   Other senior leadership training and seminars as I identify whether for operational

Page 3

benefit or personal development.

9.    Information Technology Directorate managers and supervisors be required to take a mandatory annual EEO/Title VII training in addition to the annual EEO and No Fear training provided currently.

10.    Compensatory damages of $50,000.

This is not a final offer.  By representing myself and foregoing sick leave and annual leave used because of the alleged discrimination, continued disparate treatment, retaliation, and work on my EEO complaint, I am hopeful for a speedy resolution.

Sincerely,

Anthony W. Perry

cc:    Mary E. Palmer, Administrative Judge

EXHIBIT 1 Pg. JA230

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 203 of 424
USCA Case #14-1155     Document #1537564      Filed: 02/13/2015     Page 232 of 596

# Anthony W. Perry

5907 Croom Station Road
Upper Marlboro, MD 20772
Phone: (301) 780-7653
Email: tonywpy@aol.com

November 30, 2010

Ronda J. Brown
United States Department of Commerce
Legal Office
Bureau of the Census
4600 Silver Hill Rd., 8H048
Washington, D.C.  20230

       **Re:**   **Perry v. Department of Commerce**
              **EEOC No. 531-2010-00351X**
              **Agency No. 09-63-01027**

              **Settlement Offer for Consolidated Claims from EEOC No.**
              **531-2011-00017X/Agency No. 10-63-00197**

Dear Ms. Brown,

In reference to the Acknowledgment Order for EEOC No. 531-2011-00017X/Agency No. 10-63-00197 received approximately October 30, 2010 and the Order on Outstanding motions for EEOC No. 531-2010-00351X/Agency No. 09-63-01027, if appropriate I am writing to propose a settlement of the claims in EEOC No. 531-2011-00017X/Agency No. 10-63-00197.

My handwritten text from the CD-498, "Complaint Of Employment Discrimination Against The U.S. Department Of Commerce", answering the question to describe the action(s) or policy(cies) you believe was (were) discriminatory is as follows:

> "As a result of the Census Bureaus HRD rejection of a ADR agreement reached between me and LTSO management on the basis of retaliation for prior action, race and age, I was given an unfair performance evaluation for the third consecutive year and given a disparate performance award as a result on the same basis I was given an unfair and disparate rating systematic(ally) given to African American employees."

**Factual Information**

Level 3 ratings are awarded up to 3.0% of employee salary.
Level 4 ratings are awarded up to 6.0% of employee salary.
Level 5 ratings are awarded up to 10.0% of employee salary.

Page 2

For my 2007 rating, I was rated on elements for which no work was performed which lowered the performance rating I would have received had those elements been removed from my plan as I requested and not rated on it (them)

My 2008 grieved award rating was 355. A third party senior manager agreed with my contention that work I performed was not included in the rating and should have been and that he quality of the work I did perform warranted a revised rating. I was not fully satisfied with the revised rating because my project management element remained at level 3, although it is the performance element for which my training and strengths and past performance indicate are superior. However, I accepted the revised rating of 380 (Level 4) points out of 500. Although the rating was level 4, the award amount was 1.1%, less than one-half of the award amount given for a level 3 rating.

My 2009 grieved rating was 345. LTSO agreed to revise the rating in accordance with additional feedback received from principals I worked for or with during the Executive Leadership Development Program assignments. The revised rating would have rated Project Management at level 5 and Customer Service at level 4 resulting in a revised rating of 440 out of 500 total points.

Settlement Offer for Claims of EEOC No. 531-2011-00017X/Agency No. 10-63-00197:

1.   Revise my 2008 award amount to be commensurate with Level 4 ratings received by the approving official, Ms. Musselman and the other GS-14 Branch Chiefs in LTSO who received level 4 ratings. That is, exclude the disparity and bias and award on the merit of the rating.

2.   Revise my 2009 performance rating to 440 and revise the award amount to be commensurate with Level 4 ratings of the approving official, Ms. Musselman, or the other GS-14 Branch Chiefs who received Level 4 ratings. That is, exclude the disparity and bias and award on the merit of the rating.

3.   Interest on the awarded amounts.

Sincerely,

Anthony W. Perry

cc:   Mary E. Palmer, Administrative Judge

12

BRUCE J. TERRIS
CAROLYN SMITH PRAVLIK
KATHLEEN L. MILLIAN

LYNN E. CUNNINGHAM
Of Counsel

TERRIS, PRAVLIK & MILLIAN, LLP
1121 12TH STREET, N.W.
WASHINGTON, D.C. 20005-4632
(202) 682-2100
FAX 202-289-6795
tpminfo@tpmlaw.com

MICHAEL G. SHAW
ELISABETH J. LYONS
ALICIA C. ALCORN
ZENIA SANCHEZ FUENTES
MICHELLE WEAVER
JANICE GORIN
ALEXANDER R. KARAM
JANE M. LIU*

*Not admitted D.C. Bar

June 8, 2009

**VIA E-MAIL AND FIRST-CLASS MAIL**
Susan E. Thomas
Chief, Program Implementation Division
Office of Civil Rights, Room 6012
United States Department of Commerce
Washington, D.C. 20230

Ronda Brown
Office of General Counsel

Barbara Toy
Office of Civil Rights
Client Services and Resolution Division

Re: *Perry v. Gutierrez*,
EEO Complaint No. 08-63-00072

Dear Ms. Thomas, Ms. Brown, and Ms. Toy:

On February 27, 2009, we sent a settlement letter to Susan Thomas of the Department of Commerce (hereafter "the Agency"). The letter discussed the issues related to settlement and included an opening settlement proposal with five specific provisions. On March 10, 2009, Ronda Brown provided a very general oral counter proposal to Michael Shaw. Mr. Shaw rejected the counter-proposal, but requested a meeting so that a potential settlement could be discussed in person. Ms. Brown checked on whether the Agency would agree to a meeting and called Mr. Shaw back to say that a meeting could be arranged and that the agency wanted to do it through the formal ADR process, with the mediator to come from outside of the Agency. Mr. Shaw stated that there was a timeliness issue because of expected openings in GS-15 positions that could resolve the most important remedy that Mr. Perry seeks in his EEO complaint.

The mediation was held on June 3. The mediator had the representatives sign a form that, *inter alia*, stated:

I agree to enter into this mediation in good faith. I will sincerely attempt to resolve this dispute, agree to cooperate with the mediator assigned to this case, and give serious consideration to all suggestions made regarding development of a realistic solution to the problem(s).

F/9   P1

13

Susan E. Thomas, Ronda Brown, and Barbara Toy
June 8, 2009
Page 2

We write to state that the agency representatives showed a complete lack of good faith in their conduct during the mediation. Nevertheless, Mr. Perry still desires a chance to meet to discuss settlement with a different set of Agency representatives.

The Agency had two representatives at the meeting. The legal representative was Ingrid Falanga. She was totally unprepared for the mediation. She had never seen our settlement proposal and, apparently, did not even know that one existed. When shown the settlement letter, Ms. Falanga was unwilling to discuss the five proposed provisions in the letter. All that she would say was that Mr. Perry had already been given some training and supervision opportunities. She offered not a single suggestion as to what other relief the Agency would offer for purposes of settlement. Thus, she was unwilling to enter into any negotiation at all about settlement.

Patricia Musselman was a completely inappropriate representative since she had directly benefitted from the non-selections of Mr. Perry which are at the heart of Mr. Perry's complaint. We had previously stated that she would be inappropriate, but the Agency refused to provide a substitute. Since, in any mediation, it is up to the parties to name their own representatives, we had no recourse. During the mediation, Ms. Falanga stated that Ms. Musselman was the only representative who could have been there since it would be out of the question to have either of the next two persons above Ms. Musselman (the CIO and the head of the Agency). In our experience, in situations like that, a staff member of the higher officials would be designated to represent the agency at the mediation and to have the necessary authority for negotiating a settlement.

In any event, it became clear during the mediation that Ms. Musselman had no authority to negotiate the provisions of a settlement. It is unclear as to what the Agency saw as the purpose for having Ms. Musselman there.

Ms. Falanga stated that a settlement at the Agency can never include a promotion or placement in a position. The Agency could not include in any settlement a promotion because promotions have to be competitive. However, based on the experience of our firm, other federal agencies agree to promotions to settle EEO cases under appropriate circumstances. We request that the Agency provide a legal determination as to whether a promotion to a GS-15 position can be a part of a settlement and whether the Agency has ever settled EEO complaints by giving such promotions.

The Agency's actions were clearly in bad faith. We encourage you to consult the mediators at the mediation (Angela Corley (arosec47@hotmail.com) and Joyce Corley). They did their best to determine whether a good-faith negotiation could be conducted. It became as clear to them as to us that this was impossible. As a result, the mediation of the Shared Neutrals program, through which the mediation was conducted, simply wasted their time. Mr. Perry's attorneys spent hours of time preparing for, traveling to, and attending the mediation. Mr. Perry has to pay our fees for this time out of his own pocket. That is in contrast to the time spent by Ms. Falanga and Ms. Musselman, whose time is a part of their work. We submit that the Agency's actions relating to the mediation further show the unfairness of the Agency's treatment of Mr. Perry.

F 19  P 2

2·14

Susan E. Thomas, Ronda Brown, and Barbara Toy
June 8, 2009
Page 3

Please respond to Bruce Terris at the address above or at bterris@tpmlaw.com.

Sincerely,

/s/ Michael G. Shaw

Bruce J. Terris
Michael G. Shaw
*Counsel for Anthony W. Perry*

F19   P3

Z 15

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WASHINGTON REGIONAL OFFICE

|  |  |  |
|---|---|---|
| **ANTHONY PERRY** | § | |
| Appellant, | § | **MSPB Docket Number** |
| | § | **DC-0752-12-0486-I-1 &** |
| **v.** | § | **DC-0752-12-0487-I-1** |
| | § | |
| **DEPARTMENT OF COMMERCE,** | § | |
| Agency. | § | **DATE:  May 29, 2012** |
| | § | |

## AGENCY'S RESPONSE TO JURISDICTIONAL ORDER

The Department of Commerce, Bureau of the Census ("Agency") hereby submits the following response to the Jurisdictional Order issued by the Administrative Judge in the above-captioned matter.   As set forth below, the Board lacks jurisdiction over this matter because Anthony Perry ("Appellant") agreed to his suspension and his subsequent resignation/retirement in a voluntary settlement agreement ("Agreement") between the parties.   Accordingly, the Agency requests that the Administrative Judge dismiss Appellant's appeal.

## I.   BACKGROUND

1.   On June 7, 2011, the Agency proposed Appellant's removal from the Federal service for 81 separate acts of misconduct, including 62 specifications of receiving pay for time not worked (for a total of nearly ***$9,000*** in unearned pay) and 19 specifications of failing to follow supervisory directives.   (Appellant's Response to Administrative Judge's Jurisdictional Order ("Appellant's Response"), Tab 1).

2.   On August 22, 2011, the Agency and Appellant voluntarily entered into the Agreement to resolve a number of issues related to Appellant's employment, including his proposed removal

1

and three pending complaints of discrimination.   (See Settlement Agreement attached to Appellant's appeal).

3.      At the time of the Agreement, Appellant was represented by the President of American Federation of Government Employees, Local 2782, Johnny Zuagar.  (Agency Response at Tab 4a).

4.      In exchange for agreeing not to immediately remove Appellant from his position with the Agency and other consideration, Appellant, on August 16, 2011, agreed inter alia to:

- Retire voluntarily by not later than September 4, 2012.  If Appellant did not retire by the date, he alternatively agreed to resign by that date.  (Agreement at 2(a) and (b)).

- Not apply for, or accept, any positions with the Agency following the effective date of the Agreement.  (Agreement at 2(c)).

- Serve a suspension for thirty (30) calendar days in lieu of the previously-issued notice of proposed removal.  (Agreement at 2(e)).

- Accept a reassignment to a position with no loss in pay or grade.[1]  (Agreement at 2(f)).

5.      Pursuant to this agreement, on August 26, 2011, the Agency issued to Appellant a 30-day suspension based on the June 7, 2011 proposal.  (Appellant's Response, Tab 3).  Appellant served the suspension on various dates between August 27, 2011 and October 6, 2011.  (Id.)

6.      On September 23, 2011, Appellant e-mailed Brian McGrath, the Agency's Chief Information Officer and a signatory of the Agreement, and thanked him for allowing him to stay on until the following September.  (Appellant's Response at Tab 1).

---

[1] The Board does not possibly have jurisdiction over a reassignment that does not resolute in a loss or pay or grade.

2

7.      On March 29, 2012, Appellant submitted an "Application for Voluntary Early Retirement ("VERA") and/or Voluntary Separation Incentive Program ("VSIP")." (Agency Response at Tab 4b).

8.      In this application, Appellant acknowledges that he shall be committed to a **voluntary** retirement and that he shall be entitled to at least $25,000. (Id.)   The Agency accepted Appellant's voluntary retirement on April 2, 2012. (Id.)

9.      Appellant filed the instant appeal(s) on April 25, 2012.

10.     On May 3, 2012, Appellant waived his right to a hearing over his claims.

## II.   ARGUMENT

Appellant bears the burden of establishing the Board's jurisdiction over his appeal.   5 C.F.R. § 1201.56(a)(2)(ii).   As Appellant has waived his right to a hearing, Appellant must do more than just merely set forth a non-frivolous allegation of jurisdiction; he must establish based on the written record that the 30-day suspension and retirement he agreed to were somehow involuntary and that the Board therefore has jurisdiction over the appeal.   This he cannot possibly do.[2]

An employee initiated action is presumed to be voluntary and the Board does not have jurisdiction over the voluntary actions.   Soler-Minardo v. Dep't of Defense, 92 M.S.P.R. 100, 103 (2002).   The "employee initiated action" does not mean that the change must be suggested in the first instance by the employee.   Id at 105 quoting Gaudette v. Dep't of Transportation, 832 F.2d 1256, 1258 (Fed.Cir. 1987).   Rather, the phrase indicates that an employee must voluntarily accept an agency's proposal.   Id.   See also Pawlowski v. Dep't of Veterans Affairs, 96 M.S.P.R.

---

[2] This argument addresses the "Order on Jurisdiction" and the "Order on Jurisdiction over Matters Previously Covered by a Settlement Agreement."

3

353 (2004)(demotion accepted in last chance agreement in lieu of a proposed removal considered a voluntary action).

Here, Appellant "voluntarily" agreed to both the 30-day suspension and his voluntary retirement in the Agreement.  (Agreement at 1).  As Appellant agreed to the suspension and his retirement in the Agreement, the burden lies with Appellant to establish that his acceptance of the Agreement was involuntary and thus within the Board's jurisdiction.  Soler-Minardo v. Dep't of Defense, 92 M.S.P.R. at 105.  A party challenging a settlement agreement bears a heavy burden of showing a basis to invalidate it.  Pawlowski v. Dep't of Veterans Affairs, 96 M.S.P.R. at 357.

Appellant was clearly faced with what he considered to be two unpleasant alternatives: removal on the one hand or a suspension followed ultimately by retirement on the other.  However, an employee's decision is not rendered involuntary merely because he or she must choose between unpleasant alternatives.  Id.  Instead, to demonstrate that he was coerced into signing the Agreement, Appellant must present evidence that he involuntarily accepted the terms of another, that the circumstances permitted no other alternative, and that the circumstances resulted from another's coercive acts.  Soler-Minardo v. Dep't of Defense, 92 M.S.P.R. at 104.

Nothing in Appellant's Response allows him to carry his heavy burden.  At the end of the day, Appellant argues little more than that he was forced to choose between removal from the Agency and accepting the Agreement.  However, as noted above, the mere fact that an employee is faced with two unpleasant alternatives (in this case, suspension/retirement and possible removal) does not render the Agreement invalid.  See Bahrke v. U.S.P.S., 98 M.S.P.R. 513 (2005)(employee could not show that he was coerced into signing a last chance agreement under duress even after the agency representative told him he would be removed if he did not sign that

4

agreement). Thus, while Appellant claims that he has significant debt and that his daughter is ill, those factors do not allow him to show that his acceptance of the settlement was coerced. Again, while he may have been faced with two unpleasant alternatives and their attendant consequences, the presence of difficult circumstances is not enough to allow Appellant to demonstrate that he was coerced into accepting the Agreement.

In a vain attempt to carry his heavy burden of demonstrating that he was coerced into signing the Agreement, Appellant baldly claims that the Agency "knowingly misrepresented" the charges against him. While Appellant can theoretically show that his acceptance of the Agreement was not voluntary where the Agency knows or should have known it could not substantiate the removal, the Agency is presumed to have reasonable grounds for taking a threatened action and Appellant bears the burden of overcoming that presumption. Schultz v. U.S. Navy, 810 F.2d 1133, 1136 (Fed. Cir. 1987). Appellant has provided no evidence that the Agency "knowingly misrepresented" the charges against him and Appellant's mere speculation is not enough to overcome this presumption. Clearly, 91 counts of misconduct resulting in the payment of $9,000 to Appellant which he did not earn provides a reasonable basis for the Agency to remove Appellant from the Federal service. See Luther v. Dep't of Commerce, 107 M.S.P.R. 616 (2008)(removal appropriate penalty for a GS-14 employee who committed approximately 60 acts of misconduct, including 8 acts of receiving pay for time not worked); Cronk v. U.S.P.S., 98 M.S.P.R. 124 (2005)(removal upheld for employee based on one instance of receiving pay for time not worked and one instance of proffering false statements).

While Appellant may disagree with the charges and the Agency's proposed penalty, Appellant must do more than rebut the Agency's proposed action; he must show that the Agency knew or should have known that the proposed action was not sustainable. See Garland v. Dep't

of the Air Force, 44 M.S.P.R. 537, 541 (1990)(appellant must do more than just rebut the agency's charges to demonstrate coercion).   Indeed, in accordance with Garland, this appeal cannot serve as a vehicle for him to challenge the Agency's proposed removal.

Appellant has not set forth any "evidence" that would allow him to establish that the Agency "knew or should have known" that his removal was not sustainable.  Instead, Appellant only submits his word that the Agency "knowingly misrepresented" the charges against him. Appellant's bald assertion is not enough to satisfy his burden of establishing by a preponderance of the evidence that the employee-initiated actions at issue in this case are anything other than voluntary.

Appellant also claims that he was denied a reasonable accommodation.  To the extent that this possibly bears on the issue of the voluntariness of the Agreement, Appellant has provided no evidence that he ever actually requested a reasonable accommodation, much less that he ever submitted the medical documentation that he claims he submitted to the Agency.  In any event, Appellant's claim that he was denied a reasonable accommodation is directly contradicted by his claim that the Agency "accommodated" his alleged medical condition. (Appellant's Response at Paragraph 15).  Thus, the Appellant has not shown that he actually submitted a request for a reasonable accommodation.  Even if he did request a reasonable accommodation, Appellant himself indicates that the Agency accommodated him.  Either way, any claim the Agreement is invalid based on an alleged failure to accommodate Appellant must be rejected.

If anything, the circumstances of the Agreement demonstrate that the Agreement was freely and voluntarily entered into by Appellant.  First, the Agreement itself states that the parties "voluntarily enter" into the Agreement.  Moreover, as noted above, Appellant was represented throughout the course of the negotiations by his duly-authorized representative, the President of

6

the local employees' union.  Finally, the Agreement itself provides Appellant with 21 days to consider the terms of the Agreement prior to signature.  See Garland v. Dep't of the Air Force, 44 M.S.P.R. 537 (employee had ample time to consider retirement factor in finding that retirement was voluntary).  Compare Soler-Minardo v. Dep't of Defense, 92 M.S.P.R. at 104 (decision can be considered involuntary if employee did not have sufficient time to reflect on her alternative course of actions before being required to make a decision).  While Appellant claims that an "application of the reasonable person standard would suggest a decision is involuntary if the person cannot reconsider the decision thereafter," (Appellant's Response at Paragraph 12), Appellant had *three weeks* to consider the terms of the Agreement and its impact.  Indeed, after considering and signing the Agreement, Appellant sua sponte thanked the Agency for allowing him to stay on board for up to a year.  Appellant's initiation of contact with Mr. McGrath and his expression of gratitude clearly demonstrate that the Agency did not coerce Appellant into signing the Agreement.  After all, a party to an agreement who thanks the other party to the agreement is clearly not upset about that agreement.  If Appellant had truly been coerced into signing the Agreement, he would not have sent an email thanking the Agency for its terms.  Under these circumstances, Appellant could not possibly show that he was coerced into signing the Agreement.

Moreover, Appellant could not possibly show that his retirement was involuntary given his acceptance of a buy-out from the Agency.  In this regard, Appellant had until September 2012 to retire or resign.  Appellant elected to retire in March 2012 when he was offered at least $25,000 to immediately retire from the Agency.  Appellant cannot possibly establish that his retirement was somehow involuntary after taking $25,000 from the Agency to retire.  It simply

7

makes no sense for Appellant to claim that the Agency coerced him into accepting a $25,000 retirement incentive payment.[3]

It appears that Appellant is simply suffering from a classic case of "buyer's remorse." However, he had ample opportunity to consider the terms of the Agreement and decide whether to accept the Agreement prior to signature. There is no provision of the Agreement or the law that allows Appellant to change his mind after receiving the benefit of the bargain. While Appellant may not have liked the Agreement, he still voluntarily chose to sign the Agreement and must live with its terms. Appellant's distaste for the Agreement that he voluntarily entered into provides no basis for invalidating the Agreement. It would be incredibly unfair for Appellant to receive the benefit of the bargain and then be permitted to turn around and challenge the Agreement.[4]

## III. CONCLUSION

For the reasons set forth above, the Agency requests that the Administrative Judge dismiss Appellant's appeal given the voluntary nature of his suspension and retirement.

Respectfully Submitted,

Adam Chandler
Agency Representative

---

[3] The Agency notes that if Appellant persists with this appeal and somehow manages to convince the Board that his entirely voluntary retirement was somehow involuntary, he will not be eligible to return to any branch of the Federal government until he repays the $25,000 incentive payment. The Agency further notes that if the Agreement was somehow vitiated, Appellant would still be facing a removal from the Federal service upon return to duty.

[4] The Administrative Judge has also requested that the parties address whether the filing of a prior complaint of discrimination would bar the appeal. At this time, the Agency is not aware of any complaints of discrimination filed by Appellant prior to the filing of this appeal concerning the issues raised in the appeal. Although it appears that Appellant has filed something with the Board, it appears that Appellant submitted that filing after filing the appeal.

8

Anthony W. Perry

      Appellant

    v.

Department of Commerce

      Agency

MSPB Docket Number: DC-0752-12-0487-I-1

        DC-0752-12-0486-I-1

June 1, 2012

### Response To Agency Response File

The agency submits response stating I submitted an appeal to the EEO Office of Federal Operations. The agency also received a copy of the appeal dated June 8, 2012 before reading the administrative judge's May 7, 2012 Order stating that an appellant cannot have an action before both EEO and MSPB. The Agency did not include the date in its response so that if there is a conflict the judge could advise, decide or inform appellant without error.

The agency is also aware that coercion as it would like to define it is not the only proof of involuntariness. If the Agency had not presented a fraudulent, unlawful, misrepresentation and misinformation of the facts in its proposed removal, my involuntary retirement and involuntary suspension both constructive actions (constructive discharge and constructive suspension) would not be presented to the administrative judge for adjudication.

Further, it is the nexus of the EEOC consolidated ongoing race, age, retaliation, disparate treatment, and hostile work environment action that the agency was unable to defend pending a decision on opposition to summary judgment to dismiss and what I believed to be ongoing settlement discussions/options in good faith by the agency. Yet the agency management official states with clarity his joy that my termination and suspension without due process provided him and the Agency the opportunity to settle more than 10 years of lost salary, pain, suffering, and other financial hardship with my involuntary retirement and forfeiture of my right to fair adjudication of my claims on the merits.

The action I have asked be adjudicated are appealable actions, (involuntary retirement and 30-day suspension without a hearing and the terms and conditions dictated by the Agency) intertwined with disability discrimination and failure to accommodate and ongoing race and age discrimination, disparate treatment, and an overtly hostile working environment that the management official forced me to endure though I made repeated requests to be transferred out of the situation. Upon a misconduct charge, the management official and the Agency had no obstacle to including a transfer in its EEO

devised settlement agreement. In addition to the law that supports my claim, one can apply the reasonable person standard to every aspect of what is being asked to be adjudicated.

This was a cruel and heartless act of retaliation and reprisal, even charging 2 minutes if time away from my desk in one of the specifications although the Agency and the Management Official was aware of the enormous amount of time as shown on the time stamps of some of the attachments that I put into my craft that I never received pay for. Even acknowledgements to the email contact with supervisors and the Management Official are dismissed as never having happened. The attachments prove differently.

Sincerely

Anthony W. Perry

# EXHIBIT 1 Pg. JA249

## NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013-8960

**Complainant Information:** (Please Print or Type)

Complainant's name (Last, First, M.I.): Perry Anthony W

Home/mailing address: 5907 Croom Station Road

City, State, ZIP Code: Upper Marlboro MD 20772

Daytime Telephone # (with area code): (301) 780-7653

E-mail address (if any):

**Attorney/Representative Information (if any):**

Attorney name:

Non-Attorney Representative name:

Address:

City, State, ZIP Code:

Telephone number (if applicable):

E-mail address (if any):

**General Information:**

Name of the agency being charged with discrimination: Department of Commerce — Census Bureau

Identify the Agency's complaint number: EEOC # 531-2010-00351X / 531-2011-00017X (Agency # 09-63-01027, 10-63-00197, 11-63-0008C, 07-63-00080, 07-63-00145, 10-63-02671

Location of the duty station or local facility in which the complaint arose: Suitland, Maryland

Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint?
✓ Yes; Date Received 9/12/2011 (Remember to attach a copy)
___ No
___ This appeal alleges a breach of settlement agreement

Has a complaint been filed on this same matter with the EEOC, another agency, or through any other administrative or collective bargaining procedures?
___ No
✓ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) EEOC # 531-2010-00351X, 531-2011-00017X, 0120111784, 0120111034
  EEOC#                              EEOC#

Has a civil action (lawsuit) been filed in connection with this complaint?
✓ No
___ Yes (Attach a copy of the civil action filed)

**NOTICE:** Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

Signature of complainant or complainant's representative: Anthony W Perry

Date: 5/8/2012

EEOC Form 573 REV 1/01

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

| | | |
|---|---|---|
| ANTHONY PERRY | § | |
| Appellant, | § | MSPB Docket Number |
| | § | DC-0752-12-0486-I-1 & |
| v. | § | DC-0752-12-0487-I-1 |
| | § | |
| DEPARTMENT OF COMMERCE, | § | |
| Agency. | § | DATE:  JUNE 15, 2012 |
| | § | |

## AGENCY'S RESPONSE TO APPELLANT'S MOTION TO COMPEL & APPELLANT'S "SECOND RESPONSE TO AGENCY RESPONSE FILE: NONRESPONSIVE TO ACKNOWLEDGEMENT ORDER 4-30-2012"

The Department of Commerce ("Agency"), hereby responds to Anthony Perry's ("Appellant") Motion to Compel and Appellant's "Second Response to Agency Response File: Nonresponsive to Acknowledgment Order 4-30-2012." ("Appellant's Second Response"). The Agency requests that the Administrative Judge deny Appellant's Motions for the simple reason that the record in this matter is closed.

On May 7, 2012, the Administrative Judge, after Appellant withdrew his hearing request, informed the parties that the record in the case would close on June 1, 2012. During the Close of Record Conference, Appellant indicated that he in fact did wish to have a hearing on the issue of the voluntariness of his retirement and his acceptance of a 30-day suspension in the Settlement Agreement at issue. However, that same day, he again withdrew his request for a hearing. Thus, the record in this matter is closed. Consequently, there is no reason for the Administrative Judge to even consider Appellant's motions. After all, given that the record is closed, Appellant can

1

simply do nothing with any documents he obtains through his motions. Simply put, Appellant's motions are moot.

In any event, with respect to Appellant's Motion to Compel, none of the documents requested in this case possibly bear on the one issue in this matter: the voluntariness of Appellant's acceptance of the Settlement Agreement at issue in the case. Instead, Appellant requests documents related to the badge scans of other employees and the names of employees who were required to sign and sign out of their station. None of these items could possibly help Appellant prove that he was somehow coerced into signing the Settlement Agreement. Indeed, it is difficult to discern how the requested documents would even potentially bear on the notice of proposed removal as they do not relate in any way to his misconduct. Consequently, the documents requested would not lead to the discovery of admissible evidence and the Agency requests that the Administrative Judge deny Appellant's Motion to Compel in its entirety.

With respect to Appellant's Second Response, the Agency did comply with the Board's requirement to submit an appropriate response to the appeal, contrary to Appellant's baseless assertions. In this regard, the Agency submitted a response with the 4 Tabs required by the Administrative Judge. Moreover, the Acknowledgement Order required the Agency to submit documents that are "relevant and material" to the appeal. While Appellant may disagree with the Agency as to which documents are "relevant and material," the Agency, not Appellant, determines which documents it wishes to submit on its behalf at that stage of the proceeding. Given that the sole issue in the appeal is the voluntariness of the Settlement Agreement, the Agency submitted the documents that it determined were "relevant and material" to the issue of voluntariness. Thus, the Agency has complied with the Acknowledgement Order.

For the reasons, the Agency requests that the Administrative Judge deny Appellant's Motions.[1]

Respectfully Submitted,

Adam Chandler
Agency Representative

_____

[1] Appellant also submitted an "Opposition to the Removal of Any Document Submitted With My Response File including Attachments." Again, as the record in the case has closed, this issue is moot.

3

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## WASHINGTON REGIONAL OFFICE

| | | |
|---|---|---|
| ANTHONY PERRY | § | |
| Appellant, | § | MSPB Docket Number |
| | § | DC-0752-12-0486-I-1 & |
| v. | § | DC-0752-12-0487-I-1 |
| | § | |
| DEPARTMENT OF COMMERCE, | § | |
| Agency. | § | DATE: June __, 2012 |
| | § | |

### ORDER DENYING APPELLANT'S MOTIONS

After reviewing Appellant's Motion to Compel, a document submitted by Appellant entitled "Second Response to Agency Response File: Nonresponsive to Acknowledgment Order 4-30-2012" and the Agency's responses thereto, I deny all requests set forth in those documents and deny Appellant's Motion(s) for the reasons set forth therein.

FOR THE BOARD:

Daniel Madden Turbitt
Administrative Judge

4

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WASHINGTON REGIONAL OFFICE

ANTHONY W. PERRY,

          Appellant,

    v.

DEPARTMENT OF COMMERCE,

          Agency.

DOCKET NUMBER
DC-0752-12-0486-I-1[*]

DATE: July 30, 2012

Anthony W. Perry, Upper Marlboro, Maryland, pro se.

Adam Chandler, Esquire, Washington, D.C., for the agency.

**BEFORE**
Daniel Madden Turbitt
Administrative Judge

## INITIAL DECISION

On April 25, 2012, Anthony W. Perry filed an appeal with the Board, challenging his 30-day suspension and alleging that his retirement from the Department of Commerce was involuntary. For the reasons below, this appeal is DISMISSED for lack of jurisdiction.

---

[*] This docket number pertains to the appellant's appeal of his 30-day suspension. His companion appeal, pertaining to his claim of involuntary retirement, is docketed at DC-0752-12-0487-I-1.

Background

The appellant was employed at the agency as an Information Technology Specialist, GS-2210-14/08.  By letter dated June 7, 2011, Assistant Division Chief Daren J. Gutschow notified the appellant of his proposed removal, based on the appellant's alleged receipt of pay for time not worked and failure to follow supervisory directives that required him to use the workplace attendance log. Appeal File (AF), Tab 14, Subtab 1 (at 1-12).  The parties reached settlement of that proposed termination action at the Equal Employment Opportunity Commission (EEOC) and executed a settlement agreement on August 22, 2011. *Id.* (at 14-20).  The terms of the settlement agreement provided, in pertinent part, that in lieu of removal, the appellant would serve a 30-day suspension and voluntarily retire (or, failing that, resign) no later than September 4, 2012.  *See id.* (at 15-18).  Assuming the appellant did not engage in any misconduct between that time and his retirement, the agency agreed that it would also expunge his record.  *Id.* (at 18).  On August 26, 2011, the agency issued a decision letter that mitigated the appellant's proposed removal to a 30-day suspension.  AF, Tab 14, Subtab 3 (at 1).

The appellant filed the instant appeal with the Board on April 25, 2012, averring that he "was coerced to sign the EEOC Settlement Agreement forcing [him] to involuntary [sic] retire . . . and [serve] a 30-day suspension."  AF, Tab 1 (MSPB Form 185-2, Answer to Question 6).  He also claimed that the agency discriminated against him on the basis of his race, age, and disability, and that the employment actions were reprisal for his prior EEO activity.  *Id.*

The appellant has failed to prove by preponderant evidence that the Board has jurisdiction over this appeal.

The jurisdiction of the Board is not plenary in nature; rather, it is limited to actions designated as appealable to the Board under any law, rule or regulation. 5 U.S.C. § 7701(a); *see also Martinez v. Merit Systems Protection Board*,

126 F.3d 1480, 1482 (Fed. Cir. 1997).  The Board's jurisdiction is determined at the time the appeal is filed.  *Gillespie v. Department of Defense*, 90 M.S.P.R. 327, ¶ 7 (2001); *Castro v. U. S. Postal Service*, 51 M.S.P.R. 530, 532 (1991). The appellant has the burden of proving by preponderant evidence that the Board has jurisdiction over his appeal.  *See* 5 C.F.R. § 1201.56(a)(2)(i).  Preponderance of the evidence is defined by regulation as that degree of relevant evidence which a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.56(c)(2).

Based on the record before me, I find that this appeal is not within the Board's jurisdiction.  First, to the extent the appellant argues that the agency has breached the settlement agreement, that is an enforcement issue that the appellant must pursue through the EEOC.  This Board has authority to enforce the terms of a settlement agreement where the agreement has been accepted into the record of a Board appeal.  *See, e.g.*, *Wobschall v. Department of the Air Force*, 43 M.S.P.R. 521, 523 (1990); *Kinney v. Department of the Interior*, 30 M.S.P.R. 170, 171-72 (1986).  Here, however, the settlement agreement was not reached during the course of an appeal to the Board, and, therefore, was not made part of a Board record.  *See Wobschall*, 43 M.S.P.R. at 523 (the Board has no authority to enforce settlement agreement reached during grievance).   Thus, the Board has no authority to enforce the terms of this settlement agreement, and if the appellant seeks enforcement of the agreement, he must pursue it through the EEOC (through the agency's Office of Civil Rights), as stated in part 7 of the agreement. *See* AF, Tab 14, Subtab 1 (at 18-19).

Second, the Board lacks jurisdiction over this appeal because by signing the EEOC settlement agreement, the appellant waived his appeal rights in the instant matter.  Part 1 of the settlement agreement states that "[b]y this Agreement, the parties resolve all disputes between them concerning the

Complainant's employment with the Agency, regardless of the forum, in existence on the effective date of this Agreement."  AF, Tab 14, Subtab 1 (at 15).

With regard to the appellant's 30-day suspension, I also find that the Board lacks jurisdiction because the appellant agreed to the suspension voluntarily.  The settlement agreement itself, which was signed by the appellant, states that it was "voluntarily enter[ed] into."  AF, Tab 14, Subtab 1 (at 15).  The appellant, however, claims that the agency "misrepresent[ed] the information" during the settlement process and "used . . . the threat of termination to secure [his] signature involuntarily."  AF, Tab 14 (at 1).  He also alleges that he was coerced into accepting the agency's settlement terms because his other option was to accept the possibility of a removal.  *See id.*  However, the appellant has provided no evidence that tends to show misrepresentation or coercion, and, in fact, the record shows that during the settlement process his interests were represented by Johnny T. Zuagar, the president of the appellant's union.  *See* AF, Tab 14, Subtab 1 (at 20), Subtab 3 (at 1); Tab 15, Subtab 4a.  The appellant's belief that he had to choose between two unappealing options (possible removal and the settlement terms) does not amount to coercion on the part of the agency, nor does it vitiate the voluntariness of the settlement agreement.  *See, e.g.*, *McCorcle v. Department of Agriculture*, 98 M.S.P.R. 363, 371 (2005); *see also Smitka v. U.S. Postal Service*, 66 M.S.P.R. 680, 687 (1995) (the mere fact that an employee is faced with unpleasant alternatives does not render his choice of one of those alternatives involuntary), *aff'd*, 78 F.3d 605 (Fed. Cir. 1996) (Table).  Though the appellant would have faced the possibility of removal had he decided to forego settlement, there is no evidence to suggest that the agency used the possible termination as a threat to elicit his signature on the settlement agreement.  Finally, it bears noting that in his response to the agency's letter of proposed removal, the appellant himself suggested settlement terms that included a suspension (albeit one of 14 days).  AF, Tab 14, Subtab 2 (at 5).  Because I find that the appellant voluntarily agreed to the 30-day suspension in question, the

appellant has no right to appeal the action and thus the Board does not have jurisdiction over that part of his appeal.

With regard to the appellant's claim of involuntary retirement, I likewise conclude that the Board lacks jurisdiction over the matter because, as I determined above, the appellant voluntarily entered into the settlement agreement that required him to retire. Yet, even if the Board had jurisdiction to address the appellant's retirement, there is nothing in the record to suggest that the retirement was involuntary. On the contrary, the record shows that by signing the settlement, the appellant agreed to "[r]etire voluntarily effective no later than September 4, 2012." AF, Tab 14, Subtab 1 (at 15). Moreover, on March 29, 2012, the appellant submitted an application for the Voluntary Early Retirement Authority (VERA) and Voluntary Separation Incentive Pay (VSIP) plans. AF, Tab 15, Subtab 4b. On this form, the appellant attested to the voluntary nature of his retirement and agreed, as part of VSIP, to accept a cash incentive of either $25,000 or an amount equal to the severance pay to which he would be entitled. *Id.* The fact that the appellant specifically applied for a "Voluntary Early Retirement" and stood to gain a financial benefit by retiring undercuts his argument that his retirement was involuntary. I therefore conclude, based on the record before me, that even if the Board had jurisdiction over the appellant's claim of involuntary retirement, said claim would fail on the merits.

Finally, to the extent that the appellant raises claims of reprisal for EEO activity and discrimination based on his age, race, and disability, the Board lacks jurisdiction absent an otherwise appealable action. Allegations of prohibited personnel practices under 5 U.S.C. § 2302(b) are not an independent source of Board jurisdiction. *Wren v. Department of the Army*, 2 M.S.P.R. 1, 2 (1980), *aff'd*, 681 F.2d 867, 871-73 (D.C. Cir. 1982).

## DECISION

For the reasons stated above, the appeal is DISMISSED.


FOR THE BOARD:                    _____/S/_____
                                 Daniel Madden Turbitt
                                 Administrative Judge


## NOTICE TO APPELLANT

This initial decision will become final on __September 3, 2012__, unless a petition for review is filed by that date or the Board reopens the case on its own motion.  This is an important date because it is usually the last day on which you can file a petition for review with the Board.  However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision.  If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first.  You must establish the date on which you or your representative received it.  The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals for the Federal Circuit.  The paragraphs that follow tell you how and when to file with the Board or the federal court.  These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.  Your petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing.  A petition for review submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

    If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record.  Your petition must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first.  If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim.  The date of filing by mail is determined by the postmark date.  The date of filing by fax or by electronic filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

## JUDICIAL REVIEW

If you are dissatisfied with the Board's final decision, you may file a petition with:

<div align="center">

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC 20439

</div>

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be <u>received</u> by the court no later than 60 calendar days after the date this initial decision becomes final.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, <u>http://www.mspb.gov.</u> Additional information is available at the court's website, <u>www.cafc.uscourts.gov</u>. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and <u>Forms</u> 5, 6, and 11.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

Anthony W. Perry

      Appellant

  v.

Department of Commerce

      Agency



MSPB Docket Nos.:    DC-0752-12-0486-I-1

## PETITION FOR REVIEW OF INITIAL DECISION

1

The Appellant respectfully petitions the U.S. Merit Systems Protection Board (hereafter MSPB) to review the initial decisions issued in Docket Number: DC-0752-12-0486-I-1, due to (1) errors of facts and law made by the administrative judge.  In addition, (2) the administrative judge failed to address material and relevant issues, and (3) made several critical misstatements regarding facts related to the Appellant's claims, despite material and relevant evidence and supplemental documentation in the record that clearly contradicted his version of the facts. Finally (4) the administrative judge abused his discretion and improperly exhibited bias in favor of the agency.

As a result, the initial decisions in the above identified cases should be reversed because the Appellant clearly established that the MSPB has jurisdiction and as a result a favorable decision on the merits.

**Errors of Facts and Law**

2

Retirement and 30-day suspension is involuntary as a result of the Proposed Removal on July 7, 2011,  the adverse actions imposed in the Agency drafted EEOC Settlement Agreement, and Deciding Official's Decision dated  July 7, 2011, August 22, 2011 and August 26, 2011 respectfully are subject to Appeal before the MSPB (TAB 1 Subtab 1-2; Tab 2 Subtab 1; Tab 3 Subtab 1). (Dumas v. MSPB).

3

The Administrative Judge failed to hold the Agency accountable in the law with respect to the Agency's requirement to inform Appellant of his MSPB appeal rights in either document imposing adverse actions served on the Appellant in accordance with the law and is in violation of 5 USC 7513(d,e), 5 USC 7701, 5 USC 7702, 5 CFR 752 and 5 CFR 1201.21. This is a material matter of fact and law and thus should be grounds alone for an affirmative decision on jurisdiction. The Agency's fraud, extortion, misinformation, misrepresentation of facts allowed the Agency to coerce Appellant into an agreement to which he otherwise would not have agreed .

It is insufficient for an Agency to just make charges of misconduct. It must be able to prove them in an unbiased and fair judicial manner (Arnett v Kennedy).

To further the harm, the Administrative Judge failed to compel the Agency to comply with 5 USC 7513(e) and the instant Acknowledgement Order. The Agency's failure to inform Appellant of his MSPB appeal rights facilitated the Agency's coercion and harmful procedural errors. Instead, the Agency drafted August 22, 2011 EEO settlement agreement was "cloaked" in a non-disclosure statement to conceal the fraud, extortion, deception, misrepresentations, misinformation under the threat of termination it used to exact the forfeiture of pending prior EEO claims that were already before an EEOC Administrative Judge in the Baltimore Field Office awaiting her decision on an opposition to the Agency's motion to dismiss claims of age and race discrimination, force my retirement not later than September 4, 2012, suspend me for 30-days without pay, remove me from a Supervisory IT Specialist position, and threaten to terminate me at its sole discretion for misconduct in the future, conduct it had not proven was misconduct and cannot prove.

The Administrative Judge failed to make the nexus between the adverse actions and failure to accommodate Appellants disability (Tab 4 Subtab 1-19), continuing race and age discrimination, and retaliation and reprisal against the Appellant for the pending EEOC claims which were coerced to be forfeited in the fraudulent August 22, 2011 agreement along with the adverse actions of involuntary retirement and involuntary 30-day suspension. (The law is clear that once a mixed case (i.e., one involving an appealable action and a discrimination issue) is appealed to the MSPB, the board is required to decide both issues within 120 days. 5 U.S.C. Sec. 7702(a)(1); 5 C.F.R. Sec. 1201.156; Ballentine v. Merit Systems Protection Board, 738 F.2d 1244 (Fed.Cir.1984). Where an agency forces an employee to choose between resignation and an unsubstantiated adverse action, its doing so is deemed coercion and an adverse action within the board's jurisdiction. See Schultz v. United States Navy, 810 F.2d 1133 (Fed.Cir.1987). (Cruz v. Department of the Navy)).

The AJ failed to make and address the nexus of the July 6, 2011 email Appellant sent to the Director of the Census Bureau complaining of continued race and age discrimination in the

Information Technology Directorate and the Agency's July 7, 2011 Proposed Removal served on Appellant (Tab 1 Subtab 4).

The AJ failed to draw a nexus that the same Management Official initiating these instant adverse actions was also the Management Official and Management Representative consulting with Appellant on settling the pending EEO claims that were before the EEOC AJ in the Baltimore Field Office prior to Appellant being served with the Proposed Removal.

The Agency drafted EEOC document was not carried out before the EEOC or in accordance with EEOC Settlement guidelines, rule, and law and did not provide a notice of appeal rights in accordance with the law. The Agency Management Official and Management Representative drafted this document solely at the Agency to force the forfeiture of the pending EEOC claims in the Baltimore Field Office in a blatant violation of PL-102-174 No FEAR Act of 2002, continuing race and age discrimination and is intertwined with the adverse actions in the instant case taken by the Agency against Appellant.

5 USC 7501 defines suspension as "the placing of an employee, for disciplinary reasons, in a temporary status without duties and pay. The AJ misstates the facts and makes an error in rule and law, and disregards material evidence stating in his initial decision that I was voluntarily suspended in contradiction to the definition of suspension in 5 USC 7501.

The Administrative Judge misstates another fact in this case and fails to make a ruling on the basis of law. The AJ states the August 26, 2011 decision by the Deciding Official was a mitigation of the removal action the Agency took against me. Mitigation is defined as an action to make less severe, serious or painful. The Agency did not provide any document to Appellant stating that the 30-day suspension was a mitigation of any adverse action the Agency took or threatened to take against me. The suspension was an adverse action appealable to the MSPB documented in the August 22, 2011 agreement and the Deciding Official's decision document for which the Agency failed to inform Appellant of his appeal rights in any of the noted documents in accordance with the law (5 USC 7513(d)) and 5 USC 7701). The suspension occurred after being coerced to sign the Agency EEO settlement (Schultz v. U.S. Navy). Appellant would have appealed 30-day suspension and involuntary retirement had he been informed of his right to an MSPB appeal.

Failure to apply Bates v. Department of Justice, 70 M.S.P.R. 659, 666 (1996) for prima facia case of documented retaliation and reprisal for past EEO complaints that is intertwined with the Proposed Removal, the coerced August 22, 2011 EEO agreement and the nexus with those pending EEOC complaints in the Baltimore Field Office and the email to the Director, Bureau of the Census, complaining about ongoing race and age discrimination in the Information Technology Directorate (TAB 1, 4, pg. 22; Tab 6 Subtab 7-11; Tab 8 Subtab 3-4).

**Critical Misstatements of Facts Despite Material, Relevant, and Supplemental Documents**

The Agency drafted EEOC document was not carried out before the EEOC or in accordance with EEOC Settlement guidelines, rule, and law. The Agency Management Official and Management Representative drafted this document solely at the Agency to force the forfeiture of the pending EEOC claims in the Baltimore Field Office. This is a blatant violation of PL-102-174 No FEAR Act of 2002 and is intertwined with the adverse actions taken by the Agency against Appellant.

The AJ commits a misstatement of fact stating that the appellant is arguing that the agency breached a settlement agreement. The AJ repeatedly misstates that Appellant is claiming a breach of agreement. Appellant does not claim that the Agency breached the fraudulent settlement agreement.

Appellant's claims are established in the Appeal file and the Appellant's Supplement to the Close of Record Conference and partly restated here: The claims are that the agency fraudulently charged me with misconduct and took adverse actions and drafted its own EEO settlement document on August 22, 2011 in which it coerced and exacted my retirement or resignation to be no later than September 4, 2012 and a 30-day suspension intertwined with disability discrimination, continued race and age discrimination and that the agreement is fraudulent, uses misinformation, deception, misrepresentation of facts in charges it knew it could not substantiate or sustain under the threat of termination and is thus invalid and should be vitiated in its entirety. The Agency also coerced me to sign a retirement or resignation statement on August 16, 2011 as stated in the August 22, 2011 settlement agreement while the Agency intentionally failed to inform Appellant of his MSPB appeal rights in violation of 5 USC 7513(e).

The Administrative Judge makes a misstatement of fact in stating that the Agency drafted August 22, 2011 EEO Settlement Agreement was reached before the EEOC. The Agency has not stated it nor has Appellant. The agreement is an Agency drafted document solely by the Agency and at the Agency using fraudulent charges from the Proposed Removal it knew it could not sustain in a fair and unbiased judiciary under the threat of termination and coerced my acceptance of an involuntary retirement and 30-day suspension, prohibited personnel practice removing me from a Supervisory IT Specialist position and stated the terms and conditions of my continuing employment while failing to inform Appellant of his MSPB appeal rights. The Administrative Judge has no information that Appellant waived his MSPB right of appeal. This is a material misstatement, and error in fact and in law and should have caused the AJ to rule for jurisdiction and thus for the Appellant on the merits.

4

This adverse action was taken to coerce the forfeiture of prior and pending EEOC claims before an Administrative Judge at the EEOC Baltimore Field Office at the time Appellant was served the July 7, 2011 Proposed Removal.  It is material that the proposed removal was authored and served on Appellant by an employee who was not and had never been the Appellant's supervisor of record.

**AJ Made Error in Ruling on Jurisdiction**

The dispositive issue is whether Complainant has made a "non-frivolous allegation" of involuntariness. In deciding this threshold question the presiding official must look at the allegations and at the counter-allegations of the agency, all as presented in the documentary record.  All that was required at this stage before the AJ was that a non-frivolous allegation be made: that is, did Complainant allege facts which if proven could make a prima facie case of involuntariness? Burgess v. Merit Systems Protection Board, 758 F.2d 641, 643 (Fed.Cir.1985); cf. Stokes v. Federal Aviation Administration, 761 F.2d 682, 685-86 (Fed.Cir.1985). Such an allegation can be disposed of summarily on a documentary record in appropriate cases. See Manning v. Merit Systems Protection Board, 742 F.2d 1424 (Fed.Cir.1984).  If the alleged facts are sufficient to support a prima facie case of involuntariness, the issue cannot be summarily determined adversely; the petitioner is entitled to an evidentiary hearing on the issue, as discussed in Manning, 742 F.2d at 1428: (Dumas v. MSPB)

The AJ states that my retirement was employee initiated. Retirement was not employee initiated but was dictated by the August 22, 2011 Agency drafted EEO "Settlement" document the Agency coerced my to sign under the threat of immediate termination on the basis of fraudulent charges, misinformation, misrepresentation of facts on the basis of charges it could not sustain and further stating that there were no appeal rights.  Most critical the Agency intentionally did not inform Appellant of his MSPB appeal rights in accordance with 5 USC 7513(e) and other laws already stated.

By email I requested to discuss with the Deciding Official continuing my employment with the Agency after September 4, 2012.  In the meeting on March 30, 2012,  she stated that it had been decided and revoking my retirement would not be reconsidered" (IRF Tab 2, Subtab 2). The Administrative Judge failed to consider this material evidence which the Agency did not refute and which makes clear Appellant's retirement, suspension, and agreement coded in its August 22, 2011 settlement document was involuntary in its entirety.

With freedom of choice as the guiding principle, it has been held that the element of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action, see, e.g., McGucken v. United States, 407 F.2d 1349, 1351, 187 Ct.Cl. 284 (Ct.Cl.), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); (2) an employee unsuccessfully tries to withdraw his resignation before its effective date, see Cunningham v. United States, 423 F.2d

1379, 1384-85, 191 Ct.Cl. 471 (Ct.Cl.1970); (3) an employee submits a resignation under time pressure, see Perlman, 490 F.2d at 932-33; or (4) an employee fails to understand the situation due to mental incompetence, see Manzi v. United States, 198 Ct.Cl. 489, 492 (1972). Several other cases have also indicated that a resignation will be held involuntary if obtained by agency misrepresentation or deception. See Taylor v. United States, 591 F.2d 688, 692, 219 Ct.Cl. 86 (Ct.Cl.1979); Christie v. United States, 518 F.2d 584, 588, 207 Ct.Cl. 333 (Ct.Cl.1975). (Scharf v. Department of the Air Force)(IRF Tab 2 Subtab 2).

The AJ made a material error in law by not ruling in favor of jurisdiction as the Agency intentionally failed to inform me of my MSPB appeal rights in violation of the Federal Personnel Manual Ch. 752 which entitles the employee the right to appeal adverse actions to the MSPB, in accordance with 5 USC 7513 and 5 USC 7701.   The Agency withheld information and gave misinformation with regard to my due process rights and MSPB appeal rights.

The agency limited my choice between termination on the one hand and a 30-day suspension on the other hand, retirement no later than Sept. 4, 2012, removal from my Supervisory IT Specialist position, forfeiture of pending EEO claims already before an EEOC Administrative Judge, and forbid to work for any Commerce Agency on the other hand.  A federal employee who is unaware of the proper procedures to follow, due to an employer's failure to inform employee sufficiently of their rights and remedies, may not be prejudiced by the employer's failure to comply with these requirements. See Broussard v. United States Postal Service, 674 F.2d 1103, 1111 (5th Cir.1982); McCormack v. United States, 204 Ct.Cl. 371, 378 (1974). (Gonzalez v Dept. of Transportation)

The law requires that a choice between two alternatives, however unpleasant, must be understood by the employee and that such a decision be freely made. In the instant case, the agency was responsible for Appellants lack of an informed choice because it failed to inform Appellant of his MSPB appeal rights.  A decision made "with blinders on", based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process. Cf. Shubinsky v. United States, 488 F.2d 1003, 1006, 203 Ct.Cl. 199, 204 (1973) (Government's lack of notice and withholding of information concerning plaintiff's right to appeal the instant adverse actions entitles plaintiff to adjudication on the merits). (Covington v Dept. of Health and Human Services; Gonzalez v Dept of Transportation)  The government has not submitted any evidence supporting its charges of misconduct and as a matter of law and the record, the Administrative Judge should have ruled in favor of jurisdiction and by default for the Appellant on the merits.

A resignation is not voluntary where an agency imposes the terms of an employee's resignation, the employee's circumstances permit no alternative but to accept, and those circumstances were the result of improper acts of the agency. See Edgerton v. Merit Systems Protection Board, 768 F.2d 1314, 1317 (Fed.Cir.1985); Scharf v. Department of the Air Force, 710 F.2d

1572, 1574 (Fed.Cir.1983); Taylor v. United States, 219 Ct.Cl. 86, 591 F.2d 688, 691 (1979). (Schultz v. U.S. Navy)

The terms of the Appellants retirement and suspension and continued employment with the Agency were dictated by the Agency's August 22, 2011 EEO settlement document drafted at the Agency by the Management Official and the Management Official's Representative both of whom were working on solving Appellants prior pending EEOC claims.

**AJ Abuse of Discretion and Bias in Favor of the Agency**

Agency failed to inform Appellant of his MSPB appeal rights for imposition of adverse actions of involuntary retirement and 30-day suspension without pay . This was an intentional omission by the Agency to exact and agreement using fraud, extortion, misinformation, deception, and misrepresentation of facts dictating the terms and conditions of Appellants employment under the threat of termination to coerce an agreement.  The AJ abused his discretion and show bias in favor of the Agency by not compelling the agency to comply with the law and in accordance with 5 USC 7713(3), 5 USC 7701, 5 USC 7702, and 5 CFR 1201.21.

a. At the time of the adverse action, I had a 12 year-old daughter in private school undergoing extensive orthodontic reconstruction and I was nursing degenerative osteoarthritis in my hips and lower back primarily which my supervisor's and management was aware but in other joints as well making it difficult to sit, stand, or lie down for long periods of time and sometimes requiring a cane to walk (Physician and therapist medical documents available in the Disability Program Office and Appeal File Tab4 Subtab 1-19 (AF) with no intention to retire before normal retirement age; approx. 29 years of federal service; and pending EEOC actions.

b. In 2009, I graduated from the Department of Commerce's Executive Leadership Program and write-up for one of two Bronze Medals received (AF Tab 8Subtab 1).

c. March 31, 20011 email communication from Agency Management Representative Ronda J. Brown that she had communicated my settlement proposal for pending consolidated EEOC actions before the EEOC AJ to the Management Official Brian E. McGrath, Associate Director for Information Technology and Chief Information Officer who is the same Management Official who authorized and initiated this removal and suspension action used to coerce the forfeiture of the EEOC claims that were pending before the EEOC AJ at the Baltimore Field Office at the time I was served the Proposed Removal (AF Tab 6, Subtab 4, pg. 21).

d. April 5, 2011 Appellant certified letter to the EEOC "Preparation for Settlement Discussion" (Settlement Discussion pg 1-3).

e. On May 19, 2011 Appellant certified letter to EEOC "Motion in objection to agency motion to dismiss" pending EEOC claims disputing and documenting every material fact when these instant adverse actions were served on Appellant.(AF Tab 6, Subtab 1, pg. 1)

f. On July 6, 2011, in a continuing dialogue with the Census Bureau Director, Appellant sent an email to the Director complaining about continuing race and age discrimination against Appellant and other African American employees in the Information Technology Directorate (AF Tab 1, Subtab 4, pg. 22).

g. On July 7, 2011 Darren Gutschow, an Agency employee that was NOT and had never been my supervisor of record on June 7, 2011 served me with a Proposed Removal (AF Tab 1, Subtab 1, pg. 1). He was totally and completely unaware of informal accommodations that had been made by past and current supervisors.

h. Medical Records and formal Request for a Reasonable Accommodation and approval on file with the Disability Program Office before Appellant received the Agency drafted EEO document or the Deciding Official's decision (AF Tab 4 Subtab 1-19 and Supporting Documents pg 3-4)).

i. I stated in my response to the Deciding Official that my supervisor of record Dale Reed stated that he did not know what a Reasonable Accommodation was and the Agency did not dispute this fact in the record (Tab 2 Subta1).

j. On July 22, 2011, I responded to the Deciding Official prior to Appellant being able to collect evidence and investigate the charges fully due to time constraints imposed on Appellant and the threat of termination and therefore applied the reasonable person standard and relied on Agency statements in reference to this matter (AF Tab 2, Subtab 1, pg. 1).

k. On August 22, 2011 while waiting for the Deciding Official's reply to Appellant's response as defined by the June 7, 2011 Proposed Removal, the Agency served on me what it called an EEOC Settlement Agreement dated August 22, 2011 which explicitly dictated the terms and conditions of the Appellant's continued employment with the Agency and required a 30-day suspension, retirement no later than Sept. 4, 2012, reassignment into a Non-Supervisory IT Specialist position, forbade to ever work for the Department of Commerce, and the forfeiture of prior pending EEOC claims before an EEOC AJ in the Baltimore EEOC Field Office prior to the Deciding Official's decision and in direct contradiction to the procedure stated in the Proposed Removal (AF Tab 1, Subtab 2, pg. 14) and therefore committed a harmful procedural error. It contained no information on MSPB right of appeal the adverse actions.

l. On August 26, 2011, the Deciding Official issued a decision upholding the charges but decided on a 30-day suspension without considering my informal flexible work schedule accommodation by supervisor, 30 minute legal daily break and supervisor approved daily one hour lunch break (IRF Tab 5, Subtab 1-20) and other documents in possession

EXHIBIT 1 Pg. JA275

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 239 of 424
USCA Case #14-1155      Document #1537564      Filed: 02/13/2015      Page 277 of 596

of the Agency), the Douglas Factors if the alleged conduct occurred, and my osteoarthritis disability known and accommodated by my supervisors since 2007. The flexible work schedule allowed me to make up time taken to manage the continuous arthritis pain which made me unable to sit or stand for long periods. Appellant's Response File shows more than 158 hours worked outside of the official 7:30 am to 5:00 pm schedule and communications to the management official initiating this removal and my supervisors while working after hours and at home without pay (Tab 5 Subtab 1-20) or when I would be away from the office.

m. At the time I was served with the proposed removal, I was waiting for an explanation from my supervisor as to why and who was requiring GS-14 Supervisory IT employees to start signing in. As a GS-14 Supervisory employee who frequently was delegated acting supervisory authority, I was waiting for a response to my question.

In the Agency's response to the Jurisdictional Order, the Agency stated that Appellant was guilty of misconduct but then argues I voluntarily retired but refused, unable or unwilling to provide the documents required by 5 USC 7513(d).

The AJ states in effect that my taking of the $25,000 that was available proves that I retired voluntarily. This was no financial gain and the Agency should be held to repay the money because of the fraud it exacted to end my career. The AJ fails to rule on the material facts, violations of law and the Agency's non-compliance to the law and the impact it had on Appellants actions subsequent to the Agency's coerced August 22, 2011 EEO settlement document.

Without being informed of my appeal rights to the MSPB, I was coerced in the instant case to agree to retire and suspended for 30-days WITHOUT pay on charges the Agency could not sustain (which is why it took this action while denying my appeal rights and cloaked the August 22, 2011 agreement in a non-disclosure statement) with a 12 year-old child undergoing extensive orthodontic care and in private school, my own disability and planned total hip replacement (Tab 4 Subtab 1-9), and other necessities of life. I had no intention of retiring before age 62.

The AJ failed to render an adverse ruling based on the record of the Management Official, Brian McGrath, the Management Representative Ronda J. Brown, and others proposed removal of Appellant without compliance to the law, use of fraud, extortion, misinformation, misrepresentations, and deception using charges it did not perform due process and cannot sustain before the judiciary under threat of termination to coerce me into a fraudulent agreement and retaliation in violation of PL 102-174 No FEAR Act of 2002 for my prior and pending EEOC claims. I didn't have any plans to retire before age 62.

A resignation (or retirement) is not voluntary where an agency imposes the terms of an employee's resignation (or retirement), the employee's circumstances permit no alternative but to accept, and those circumstances were the result of improper acts of the agency. If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency (termination and suspension) is purely coercive. Cosby v. United States, 189 Ct.Cl. 528, 417 F.2d 1345, 1355 (1969); Autera v. United States, 182 Ct.Cl. 495, 389vf.2d 815, 817(1968); Rich v. Mitchell, 273 F.2d 78, 79 (D>C. Cir. 1950), cert. denied, 368 U.S. 854, 82 S.Ct. 91, 7 L.Ed.2d 52(1961).

In this instant case, the Agency's failure to inform Appellant of his appeal rights in conjunction with unsubstantiated charges of misconduct and the threat of termination, it follows that Appellants retirement and suspension were involuntary.

The Administrative Judge's notation about Union Representation is immaterial to the Agency's obligation in the law to inform an employee of their MSPB appeal rights when subjecting employee to an adverse action as defined by FPM Chapter 752, 5 USC 7513(e), and other law.

It should be noted, Appellant was a GS-14 Supervisory IT Specialist and not in the bargaining unit at the time the Agency fraudulently proposed to remove him from the federal service.

In the Agency drafted August 22, 2011 EEOC settlement document, page 1, item 2 states "...his decision to retire is both voluntary and irrevocable. An employee's decision to retire cannot be voluntary and irrevocable. This is an adverse action and the Agency did not include MSPB appeal rights in or with this document it coerced Appellant to sign.

At the time of the August 22, 2011 and August 26, 2011 adverse actions imposed on Appellant, the Appellant was negotiating a settlement and awaiting an EEOC Administrative Judge's decision on the below prior pending consolidated EEOC complaints, EEOC Case Nos. 531-2010-00351X; EEOC Docket Nos. 0120111784 & 0120111034; Agency Complaint Nos. 09-63-01027, 10-63-00197, 11-63-00080, 07-63-00080, 07-63-00145 & 10-63-02671 (TAB 6 SUBTAB 1 pg. 1, SUBTAB 7-10 pg. 34-44), in the Baltimore Field Office.

Conclusion

For the reasons in law, fact and evidence provided in this Petition for Review, I request the Board to rule in favor of jurisdiction and for the Appellant on the merits.

I request that the August 22, 2011 Agency drafted EEO Settlement document which was not executed before the EEOC be vitiated in its entirety as it was exacted in violation of the law with the Agency failing to inform Appellant of his MSPB appeal rights for the adverse actions. Had the Agency informed Appellant that he could appeal the adverse actions it deceived and

coerced me in accepting, I would have never agreed to the fraud, retaliation and reprisal, and continuing racial and age discrimination as was pending at the EEOC when the Agency proposed to remove me from federal service. The reasonable person standard would suggest that Appellant would have filed a complaint as had been done prior, not withdraw complaints pending adjudication on merit as was the Baltimore EEOC case file.

I request that the August 22, 2011 Agency drafted EEO Settlement document be vitiated in its entirety as it was exacted on the basis of fraud, extortion, misinformation, misrepresentation of the facts using the threat of termination without cause and for charges the Agency knew it could not substantiate or sustain in a fair adjudication to specifically exact an agreement to forfeit prior EEOC claims pending adjudication by an EEOC Administrative Judge in the Baltimore EEOC Field Office, coerce my retirement, 30-day suspension and at the time of the Agency's Proposed Removal, Appellant was waiting on a decision on his opposition to the Agency's Motion to Dismiss the case.

Additionally, the Management Official and the Management Official's Representative who were responsible for settlement of the prior Baltimore EEOC file, is the same Management Official and Management's Representative who initiated the Proposed Removal and the adverse actions defined in the fraudulently exacted August 22, 2011 Agency drafted EEO document.

The law is clear that once a mixed case (i.e., one involving an appealable action and a discrimination issue) is appealed to the MSPB, the board is required to decide both issues within 120 days. 5 U.S.C. Sec. 7702(a)(1); 5 C.F.R. Sec. 1201.156; Ballentine v. Merit Systems Protection Board, 738 F.2d 1244 (Fed.Cir.1984).

I request the adverse actions and the agreement coerced by the agency be vitiated in their entirety.

The Agency's failure to comply with the law, orders of the Administrative Judge and in good faith to resolve this and prior disputes, prevents it from further adjudicating this case.

To determine whether a resignation or retirement is voluntary, a court must examine "the surrounding circumstances to test the ability of the employee to exercise free choice." Perlman v. United States, 490 F.2d 928, 933, 203 Ct.Cl. 397 (Ct.Cl.1974). Involuntary retirements are adverse actions. See 5 U.S.C. Sec. 7703(c)(1) (Supp. V 1981), amended by the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, Sec. 144, 96 Stat. 25, 45. (Scharf v. Department of the Air Force).

Where an agency forces an employee to choose between resignation and an unsubstantiated adverse action, its doing so is deemed coercion and an adverse action within the board's

jurisdiction. See Schultz v. United States Navy, 810 F.2d 1133 (Fed.Cir.1987). (Cruz v. Department of the Navy)).

With freedom of choice as the guiding principle, it has been held that the element of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action, see, e.g., McGucken v. United States, 407 F.2d 1349, 1351, 187 Ct.Cl. 284 (Ct.Cl.), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); (2) an employee unsuccessfully tries to withdraw his resignation before its effective date, see Cunningham v. United States, 423 F.2d 1379, 1384-85, 191 Ct.Cl. 471 (Ct.Cl.1970); (3) an employee submits a resignation under time pressure, see Perlman, 490 F.2d at 932-33; or (4) an employee fails to understand the situation due to mental incompetence, see Manzi v. United States, 198 Ct.Cl. 489, 492 (1972). Several other cases have also indicated that a resignation will be held involuntary if obtained by agency misrepresentation or deception. See Taylor v. United States, 591 F.2d 688, 692, 219 Ct.Cl. 86 (Ct.Cl.1979); Christie v. United States, 518 F.2d 584, 588, 207 Ct.Cl. 333 (Ct.Cl.1975).(Scharf v. Department of the Navy))  (IRF Tab 2 Subtab 2)

Sincerely,

Anthony W. Perry

# Reason for Retirement

The Office of Personnel Management requests you provide a reason for your retirement. To comply with this request, please select one of the following reasons. The reason you provide may be used in determining eligibility for unemployment benefits.

Name: _Anthony W. Perry_
(Please Print)

Date of Retirement: _04 / 03 / 2012_
(Effective at midnight)

Reason (check one):

☐ To Obtain Retirement Benefits

☒ Other (specify below)

_For personal reasons_

_____

_____

_____

_____

_____

Signature and Date

This document will be retained on the permanent side of the Official Personnel Folder.

PFR Tab 1

EXHIBIT 1 Pg. JA281

Case 1:17-cv-01932-TSC Document 30-4 Filed 11/19/18 Page 244 of 424
USCA Case #14-1155 Document #1537564 Filed: 02/13/2015 Page 283 of 596
Page 1 of 1

**From:** tonywpy@aol.com
**To:** adam.a.chandler@census.gov, tonywpy@aol.com

**Date:** Friday, May 11, 2012 01:30PM
**Subject:** Re: MSPB Appeal

History: ⊕ This message has been replied to.


Mr. Chandler: I object to your proposed motion to stay the agency submission of the Agency Response File required by the April 30, 2012 Acknowledgement Order.

Also, this communication is also a discovery request for:

1. All daily badge scans, including every scan during the workday for Dale Richard Reed, my supervisor of record prior, during, and shortly after the matter appealed and Donna Brooks everyday over the same period time period (2010-2011)my badge scans were noted in the proposal to remove me from federal service.

2. Badge scans of all other IT Directorate employees by race, age and grade for everyday over the same time period (2010-2011) my badge scans were noted in the proposal to remove me from federal service.

3. The names, grade, and race of all supervisory coded (2 or 4) employees required to sign in and out anytime they were away from their desk for everyday over the same time period my badge scans were noted in the proposal to remove me from federal service.

Thank you,

Anthony W. Perry
Appellant
Sent from my Verizon Wireless BlackBerry

**From:** adam.a.chandler@census.gov
**Date:** Thu, 10 May 2012 13:10:02 -0400
**To:** <tonywpy@aol.com>
**Subject:** MSPB Appeal

Mr. Perry: I am the Agency Representative in your MSPB appeals. I intend to file a motion to stay the submission of the Agency Response File required by the April 30, 2012 Acknowledgement Order pending the resolution of the jurisdictional matters identified by the Administrative Judge in his May 7 Orders. Under 5 C.F.R. 1201.55, I am required to attempt to contact you to obtain your position on the motion I intend to file prior to its filing.

Please let me know your position on this motion by 3 p.m. tomorrow. If I do not hear from you by that time, I will file my motion and inform the Administrative Judge that I unsuccessfully attempted to obtain your position on the position. If you provide your position on the motion to me prior to 3 p.m. tomorrow, I will include your position in my motion, as required.

Sincerely,
Adam Chandler
Agency Representative

PFR Tab2

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

| | | |
|---|---|---|
| ANTHONY PERRY | § | |
| Appellant, | § | MSPB Docket Number |
| | § | DC-0752-12-0486-I-1 & |
| v. | § | DC-0752-12-0487-I-1[1] |
| | § | |
| DEPARTMENT OF COMMERCE, | § | |
| Agency. | § | DATE: September 20, 2012 |
| | § | |

## AGENCY'S RESPONSE TO PETITION FOR REVIEW

The Department of Commerce, Bureau of the Census ("Agency") hereby submits the following response to the Petition for Review filed by Anthony Perry ("Appellant") in the above-captioned matter. Appellant has set forth no compelling reason that the Board should set aside the initial decision issued by the Administrative Judge, finding that the Board lacked jurisdiction over Appellant's appeal. Specifically, Appellant has failed to set forth any evidence that would possibly allow him to establish that his 30-day suspension and retirement, which he voluntarily agreed to in a settlement with the Agency, were somehow involuntary. Thus, the Agency requests that the Board deny the Petition for Review.

## I.    BACKGROUND

1.    On June 7, 2011, the Agency proposed Appellant's removal from the Federal service for 81 separate acts of misconduct, including 62 specifications of receiving pay for time not worked (for a total of nearly *$9,000* in unearned pay) and 19 specifications of failing to follow

---

[1] As the Administrative Judge issued only a consolidated Initial Decision in the above-captioned matter and Appellant submitted identical Petitions for Review in both of the cases, the Agency will submit only one Response to the Petition for Review.

supervisory directives. (Appellant's Response to Administrative Judge's Jurisdictional Order ("Appellant's Response"), Tab 1).

2.    On August 22, 2011, the Agency and Appellant voluntarily entered into a Settlement Agreement ("Agreement") to resolve a number of issues related to Appellant's employment, including his proposed removal and three pending complaints of discrimination. (See Settlement Agreement attached to Appellant's appeal).

3.    At the time of the Agreement, Appellant was represented by the President of American Federation of Government Employees, Local 2782, Johnny Zuagar. (Agency Response at Tab 4a).

4.    In exchange for agreeing not to immediately remove Appellant from his position with the Agency and other consideration, Appellant, on August 16, 2011, agreed inter alia to:

- Retire voluntarily by not later than September 4, 2012. If Appellant did not retire by the date, he alternatively agreed to resign by that date. (Agreement at 2(a) and (b)).

- Not apply for, or accept, any positions with the Agency following the effective date of the Agreement. (Agreement at 2(c)).

- Serve a suspension for thirty (30) calendar days in lieu of the previously-issued notice of proposed removal. (Agreement at 2(e)).

- Accept a reassignment to a position with no loss in pay or grade.[2] (Agreement at 2(f)).

- Withdraw three pending complaints of discrimination. (Agreement at 2(g)).

- Waive his right to complain about any action taken pursuant to the terms of the Agreement. (Agreement at 2(h)).

---

[2] The Board does not possibly have jurisdiction over a reassignment that does not result in a loss or pay or grade.

2

5.    Pursuant to this agreement, on August 26, 2011, the Agency issued to Appellant a 30-day suspension based on the June 7, 2011 proposal. (Appellant's Response, Tab 3). Appellant served the suspension on various dates between August 27, 2011 and October 6, 2011. (Id.)

6.    On September 23, 2011, Appellant e-mailed Brian McGrath, the Agency's Chief Information Officer and a signatory of the Agreement, and thanked him for allowing him to stay on until the following September. (Appellant's Response at Tab 1).

7.    On March 29, 2012, Appellant submitted an "Application for Voluntary Early Retirement ("VERA") and/or Voluntary Separation Incentive Program ("VSIP")." (Agency Response at Tab 4b).

8.    In this application, Appellant acknowledges that he shall be committed to a **voluntary** retirement and that he shall be entitled to at least $25,000. (Id.) The Agency accepted Appellant's application for voluntary retirement on April 2, 2012. (Id.)

9.    Appellant filed the instant appeal(s) on April 25, 2012.

10.   On July 30, 2012, the Administrative Judge, after providing both parties with the opportunity to provide argument as to the Board's jurisdiction over this matter, issued an Initial Decision ("ID") dismissing Appellant's appeal for lack of jurisdiction.[3] In the ID, the Administrative Judge further found that Appellant's retirement and suspension were completely voluntary. (ID at 4-5). In this regard, the Administrative Judge found that Appellant had failed to present any evidence that tends to show misrepresentation and coercion and that Appellant was represented in the negotiations over the Agreement by the Union President. (Id.) Moreover, the Administrative Judge noted that Appellant's belief that he had 2 unappealing options

---

[3] The Administrative Judge found that the Board lacked jurisdiction to enforce the terms of the Agreement, to the extent that Appellant was advancing an argument that the Agency had breached the terms of the Agreement, as the Agreement was not reached in the course of a Board appeal nor ever made a part of the record in a Board proceeding. (ID at 3). However, Appellant specifically states in his Petition for Review that he is not claiming that the Agency breached the Agreement. (Petition for Review at 4).

3

(removal from the Agency or acceptance of the Agreement) does not vitiate the voluntariness of the Agreement. (Id.) Finally, with respect to Appellant's retirement, the Administrative Judge found that Appellant's application for voluntary retirement and receipt of a $25,000 retirement incentive payment undercuts his argument that his retirement was involuntary. (Id. at 5).

## II.    STANDARD OF REVIEW

The Board, after providing the other parties with an opportunity to respond, may grant a petition for review when it is established that new and material evidence is available that, despite due diligence, was not available when the record closed or the decision of the judge is based on an erroneous interpretation of statute or regulation. 5 C.F.R. § 1201.115(d).

## III.   ARGUMENT[4]

Appellant bears the burden of establishing the Board's jurisdiction over his appeal. 5 C.F.R. § 1201.56(a)(2)(ii). Here, Appellant voluntarily agreed to both the 30-day suspension and his voluntary retirement in the Agreement. (Agreement at 1). As Appellant agreed to the suspension and his retirement in the Agreement, the burden lies with Appellant to establish that his acceptance of the Agreement was involuntary and thus within the Board's jurisdiction. Soler-Minardo v. Dep't of Defense, 92 M.S.P.R. 100, 105 (2002). A party challenging a settlement agreement bears a heavy burden of showing a basis to invalidate it. Pawlowski v. Dep't of Veterans Affairs, 96 M.S.P.R. 353, 357 (2004). While Appellant's rambling narrative is difficult to decipher, Appellant seems to claim that the Agreement is invalid due to coercion and/or misrepresentation. Appellant cannot possibly meet his heavy burden of establishing that the Agreement was involuntary.

---

[4] Any appeal concerning the 30-day suspension is untimely, as Appellant served that suspension in 2011 but did not file the instant appeal until April 2012.

4

First, Appellant baldly claims that the Agency used "fraudulent charges" that it knew "it could not sustain." (Petition for Review at 4). The Agency is presumed to have reasonable grounds for taking a threatened action and Appellant bears the burden of overcoming that presumption. Schultz v. U.S. Navy, 810 F.2d 1133, 1136 (Fed. Cir. 1987). Appellant has provided no evidence that the Agency used "fraudulent charges" against him and Appellant's mere speculation is not enough to overcome this presumption. In this regard, to demonstrate coercion, Appellant must do more than rebut the Agency's proposed action; he must show that the Agency knew or should have known that the proposed action was not sustainable. See Garland v. Dep't of the Air Force, 44 M.S.P.R. 537, 541 (1990)(appellant must do more than just rebut the agency's charges to demonstrate coercion). Clearly, 91 counts of misconduct resulting in the payment of $9,000 to Appellant which he did not earn provides a reasonable basis for the Agency to remove Appellant from the Federal service. See Luther v. Dep't of Commerce, 107 M.S.P.R. 616 (2008)(removal appropriate penalty for a GS-14 employee who committed approximately 60 acts of misconduct, including 8 acts of receiving pay for time not worked); Cronk v. U.S.P.S., 98 M.S.P.R. 124 (2005)(removal upheld for employee based on one instance of receiving pay for time not worked and one instance of proffering false statements).

Similarly, Appellant claims that the Administrative Judge erred when he found that Appellant's retirement was "employee initiated," apparently because Appellant claims that the Agency "dictated" the terms of the Agreement. Appellant completely misunderstands the meaning of the term "employee initiated." The term "employee initiated action" does not mean that the change must be suggested in the first instance by the employee. Soler-Minardo v. Dep't of Defense, 92 M.S.P.R. at 105. Rather, the phrase indicates that an employee must voluntarily accept an agency's proposal. Id. See also Pawlowski v. Dep't of Veterans Affairs, 96 M.S.P.R.

353 (2004)(demotion accepted in last chance agreement in lieu of a proposed removal considered a voluntary action). Any employee initiated action is presumed to be voluntary and the Board does not have jurisdiction over the voluntary actions. Soler-Minardo v. Dep't of Defense, 92 M.S.P.R. at 103. Thus, even if the Agreement were initially proposed by the Agency, Appellant's voluntary acceptance of the Agreement robs the Board of jurisdiction over actions taken pursuant to the Agreement.

Moreover, Appellant's claim that the Agency "limited his choice" to 2 unenviable choices does not provide a basis for the Board to invalidate the Agreement. Appellant was clearly faced with what he considered to be two unpleasant alternatives: removal on the one hand or a suspension followed ultimately by retirement on the other. However, an employee's decision is not rendered involuntary merely because he or she must choose between unpleasant alternatives. Id. Instead, to demonstrate that he was coerced into signing the Agreement, Appellant must present evidence that he involuntarily accepted the terms of another, that the circumstances permitted no other alternative, and that the circumstances resulted from another's coercive acts. Soler-Minardo v. Dep't of Defense, 92 M.S.P.R. at 104.

Nothing in Appellant's Response allows him to carry his heavy burden. At the end of the day, Appellant argues little more than that he was forced to choose between removal from the Agency and accepting the Agreement. However, as noted above, the mere fact that an employee is faced with two unpleasant alternatives (in this case, suspension/retirement and possible removal) does not render the Agreement invalid. See Bahrke v. U.S.P.S., 98 M.S.P.R. 513 (2005)(employee could not show that he was coerced into signing a last chance agreement under duress even after the agency representative told him he would be removed if he did not sign that agreement). Again, while he may have been faced with two unpleasant alternatives and their

6

attendant consequences, the presence of difficult circumstances is not enough to allow Appellant to demonstrate that he was coerced into accepting the Agreement.

Finally, Appellant nonsensically claims at various points through his Petition for Review that he was coerced by the Agency into signing the Agreement because the Agency failed to inform Appellant of his rights to appeal the agreed-upon suspension and the 30-day suspension. Given that these actions were taken after the Agreement was signed, Appellant could not possibly show how these actions coerced him into signing the Agreement. Appellant's argument simply makes no sense.

In any event, the very thrust of the Agreement was that Appellant waived any right to complain about the suspension and the retirement, amongst other things. See Agreement at 2(h). Indeed, the Agreement specifically states that Appellant waived his right to complain about "any action taken pursuant to any provision of Paragraph 2," which includes the agreed upon suspension and retirement. The Agency would simply have no reason to inform Appellant of a non-existent right to appeal a voluntary action that he had in fact waived.

Thus, Appellant has set forth no basis for the Board to grant his appeal. If anything, the circumstances of the Agreement demonstrate that the Agreement was freely and voluntarily entered into by Appellant. First, the Agreement itself states that the parties "voluntarily enter" into the Agreement. Moreover, as noted above, Appellant was represented throughout the course of the negotiations by his duly-authorized representative, the President of the local employees' union. Finally, the Agreement itself provides Appellant with 21 days to consider the terms of the Agreement prior to signature. See Garland v. Dep't of the Air Force, 44 M.S.P.R. 537 (employee had ample time to consider retirement factor in finding that retirement was voluntary). Compare Soler-Minardo v. Dep't of Defense, 92 M.S.P.R. at 104 (decision can be considered

involuntary if employee did not have sufficient time to reflect on her alternative course of actions before being required to make a decision). Appellant apparently considered the Agreement, signed it and then sua sponte thanked the Agency for allowing him to stay on board for up to a year. If Appellant had truly been coerced into signing the Agreement, he would not have sent an email thanking the Agency for its terms. Under these circumstances, Appellant could not possibly show that he was coerced into signing the Agreement.

Moreover, Appellant could not possibly show that his retirement was involuntary given his acceptance of a buy-out from the Agency. In this regard, Appellant had until September 2012 to retire or resign. Appellant elected to retire in March 2012 when he was offered at least $25,000 to immediately retire from the Agency. Appellant cannot possibly establish that his retirement was somehow involuntary after taking $25,000 from the Agency to retire. It simply makes no sense for Appellant to claim that the Agency coerced him into accepting a $25,000 retirement incentive payment.

It appears that Appellant is simply suffering from a classic case of "buyer's remorse." However, he had ample opportunity to consider the terms of the Agreement and decide whether to accept the Agreement prior to signature. There is no provision of the Agreement or the law that allows Appellant to change his mind after receiving the benefit of the bargain. While Appellant may not have liked the Agreement, he still voluntarily chose to sign the Agreement and must live with its terms. Appellant's distaste for the Agreement that he voluntarily entered into provides no basis for invalidating the Agreement. It would be incredibly unfair for Appellant to receive the benefit of the bargain and then be permitted to turn around and challenge the Agreement.[5]

_____

[5]Appellant also claims that the Administrative Judge abused his discretion and exhibited bias towards the Agency. In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of

## III.   CONCLUSION

For the reasons set forth above, the Agency requests that the Board deny the Petition for Review in its entirety given the voluntary nature of Appellant's suspension and retirement.

Respectfully Submitted,

Adam Chandler
Agency Representative

---

honesty and integrity that accompanies administrative adjudicators. Oliver v. Dep't of Transportation, 1 M.S.P.R. 382, 386 (1980). Further, an administrative judge's conduct during the course of a Board proceeding will warrant a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." Bieber v. Department of the Army, 287 F.3d 1358, 1362-63 (Fed.Cir.2002) (quoting Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). Moreover, mere disagreement with the Administrative Judge's findings is not sufficient to show bias. Diggs v. Dep't of Housing and Urban Development, 114 M.S.P.R. 464, 468 (2010). In this case, Appellant's argument in this regard appears to be nothing more than such a disagreement with the Administrative Judge's ultimate ruling.

9

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ANTHONY W. PERRY,
        Appellant,

     v.

DEPARTMENT OF COMMERCE,
        Agency.

DOCKET NUMBERS
DC-0752-12-0486-I-1
DC-0752-12-0487-I-1 [1]

DATE: June 12, 2013


# THIS ORDER IS NONPRECEDENTIAL [2]

<u>Anthony W. Perry</u>, Upper Marlboro, Maryland, pro se.

<u>Adam Chandler</u>, Esquire, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member


### REMAND ORDER

The appellant has filed petitions for review in these cases asking us to reconsider the initial decisions issued by the administrative judge, which

---

[1] The records in these matters are virtually identical. Thus, unless we expressly indicate otherwise, all citations herein are to the record in DC-0752-12-0486-I-1.

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

dismissed the appellant's appeals for lack of jurisdiction due to a settlement agreement entered into before the U.S. Equal Employment Opportunity Commission (EEOC).    For the reasons discussed below, we GRANT the appellant's petitions for review, JOIN the two appeals, and REMAND these cases to the Washington Regional Office for further adjudication in accordance with this Order.[3]

## BACKGROUND

On June 7, 2011, the agency proposed the appellant's removal from his GS-14 Information Technology Specialist position for "Receipt of Pay for Time not Worked" and "Failure to Follow Supervisory Directive."   Initial Appeal File, MSPB Docket No. DC-0752-12-0486-I-1 (IAF-0486), Tab 14, Subtab 1 at 1-12. Between August 16, 2011 and August 22, 2011, the appellant, his representative, and several agency officials, executed a settlement agreement resolving several of the appellant's EEO complaints, which was then submitted to the EEOC administrative judge on August 22, 2011.[4]   *Id.* at 14-20.

The settlement agreement stated that the parties entered into it "voluntarily" to "resolve all disputes between them concerning [the appellant's] employment with the Agency, regardless of the forum, in existence on the effective date of th[e] Agreement."   *Id.* at 15.   As part of the agreement, the parties agreed that the appellant would "[s]erve a suspension for thirty (30)

---

[3] Except as otherwise noted in this decision, we have applied the Board's regulations that became effective November 13, 2012.  We note, however, that the petition for review in this case was filed before that date.  Even if we considered the petition under the previous version of the Board's regulations, the outcome would be the same.

[4]   The appellant incorrectly contends that "the Administrative Judge makes a misstatement of fact in stating that the . . . EEO Settlement Agreement was reached before the EEOC."  Petition for Review File, MSPB Docket No. DC-0752-12-0486-I-1 (PFR File-0486), Tab 1 at 4.  The settlement agreement bore an EEOC caption and, once fully executed, was submitted to the EEOC administrative judge.  IAF-0486, Tab 14, Subtab 1 at 14-15.

calendar days in lieu of the removal proposed on June 7, 2011."[5] *Id.* at 16. Further, the appellant agreed to "[r]etire voluntarily effective no later than September 4, 2012." *Id*. at 15.

Consistent with the settlement agreement, on August 26, 2011, the agency issued a decision on the proposed removal, finding that "the reason for the proposed removal [wa]s fully supported by the evidence" but that a "lesser penalty" of a 30 calendar day suspension would be sufficient to "deter such misconduct in the future." *Id*., Subtab 3 at 1-2. Then, on March 29, 2012, the appellant submitted an application for "voluntary early retirement," which the agency approved on April 2, 2012. IAF-0486, Tab 15 at 12.

On April 25, 2012, the appellant filed an appeal with the Board, challenging his alleged involuntary retirement and suspension for more than 14 days. IAF-0486, Tab 1 at 6, ¶ 20; Initial Appeal File, MSPB Docket No. DC-0752-12-0487-I-1 (IAF-0487), Tab 1 at 5, ¶ 20. The administrative judge then docketed the involuntary retirement appeal as MSPB Docket No. DC-0752-12-0487-I-1 and the adverse action (30-day suspension) appeal as MSPB Docket No. DC-0752-12-0486-I-1. *See* IAF-0486, Tab 28 at 1 n.*; *see also* IAF-0487, Tab 28 at 1 n. *. In response to the administrative judge's Orders regarding Board jurisdiction, the appellant filed identical submissions in each appeal, contending that he was "forced to sign [the settlement agreement] under the threat of termination [,] as the agency used misinformation, misrepresentation of the information, coercion, and the threat of termination to secure [his] signature involuntarily." IAF-0486, Tab 14 at 1; IAF-0487, Tab 14 at 1. He further stated

---

[5] We disagree with the appellant's claim that the agency "did not provide any document to [him] stating that the 30-day suspension was a mitigation of any adverse action [it] took or threatened to take against [him]." PFR File-0486, Tab 1 at 3. The EEO settlement agreement plainly stated that "[i]n consideration," the agency would not remove the appellant based upon the charges outlined in the proposal to remove and would issue a decision on the proposal to remove, suspending the appellant for 30 days. IAF-0486, Tab 14, Subtab 1 at 17.

that the agency "committ[ed] a procedural error because [he] was not informed that all suspensions greater than 14-days are appealable as an adverse action and that [he] had appeal rights."  IAF-0486, Tab 14 at 1; IAF-0487, Tab 14 at 1.  He also alleged that he was coerced because the agency "knew it could not sustain" the charges brought against him.  IAF-0486, Tab 14 at 2; IAF-0487, Tab 14 at 2.

The administrative judge subsequently issued his initial decisions dismissing the appeals for lack of jurisdiction, without holding a hearing, finding that the appellant had validly waived his appeal rights via the EEOC settlement agreement.  IAF-0486, Tab 28, Initial Decision (ID); IAF-0487, Tab 28.  Thus, he found that the appellant could not appeal his 30-day suspension, and that the appellant's retirement was not involuntary, because he voluntarily agreed to these actions pursuant to the settlement agreement.  IAF-0486, Tab 28, Initial Decision (ID) at 4-5; IAF-0487, Tab 28 at 4-5.

In his petition for review, the appellant argues that he was entitled to an evidentiary hearing on the issue of jurisdiction because he made a non-frivolous allegation of involuntariness.[6]  PFR File-0486, Tab 1 at 5.  He cites to *Schultz v. United States Navy*, 810 F.2d 1133 (Fed. Cir. 1987), claiming that the agency "knew it could not substantiate or sustain" the charges against him.  *Id*. at 2-4, 11-12.  Further, he alleges that he entered into the settlement agreement because

---

[6] The appellant alleges that the administrative judge abused his discretion and exhibited bias in favor of the agency.  PFR File-0486, Tab 1 at 7-10.  An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  We see no such evidence in the record.

The appellant also seems to suggest that he was coerced into signing the settlement agreement because his alternative was removal.  *See* PFR File-0486, Tab 1 at 6, 10.  To the extent the appellant is making this argument, it must fail.  An appellant's choice between unpleasant alternatives, including the threat of removal, is insufficient to set forth a nonfrivolous allegation of involuntariness.  *Lee v. Office of Personnel Management*, 23 M.S.P.R. 403, 406 (1984).

the agency provided him with "misinformation with regard to [his] due process rights and MSPB appeal rights" and "stat[ed] that there were no appeal rights." *Id*. at 5-6.

## ANALYSIS

<u>The appellant's claim that the agency knew it could not substantiate his proposed removal does not constitute a nonfrivolous allegation of coercion.</u>

Regarding the appellant's claim that the agency knew its actions against him could not be sustained, the Board has held that an appellant may show coercion by demonstrating that the agency believed its proposed adverse action could not be substantiated, or that there was no arguable basis for the proposed action. *Bahrke v. U.S. Postal Service*, 98 M.S.P.R. 513, ¶ 12 (2005); *see Schultz*, 810 F.2d at 1136 (a threatened action is "purely coercive" if "the agency knew that the reason for the threatened [action] could not be substantiated").

There is no evidence that such circumstances are present here.  Charge 1 of the proposed removal related to the appellant's alleged receipt of pay for time not worked on several dates between October 2010 and May 2011.  IAF-0486, Tab 14, Subtab 1 at 1-10.  In his written reply, the appellant admitted to his ongoing absences from the workplace, though he attempted to explain them, noting that he took "extended lunch periods;" took breaks to walk, stretch, or "reclin[e] in [his] car" due to his medical condition; and, spent time in his car working on his EEO cases.  *Id*., Subtab 2 at 2.  Further, he conceded that several of the specifications noted in Charge 1 were attributable to "failed communications between [him] and [his] supervisor," including the appellant forgetting to complete leave requests and/or "correct time and attendance for leave taken."  *Id*. at 2-3.  Charge 2 concerned the appellant's alleged failure, on several dates between April 2011 and May 2011, to follow his supervisor's directive to sign in and out on the attendance log.  *Id*., Subtab 1 at 10-11.  The appellant's written reply indicated that, despite being aware of this directive, the appellant did not begin signing in

and out until his supervisor responded to his requests for an explanation "regarding th[is] change in procedure," sometime after he received the June 7, 2011 proposed removal notice. *Id.*, Subtab 2 at 3. Based on the appellant's own statements, there appears to have been at least some basis for the proposed discipline.

<u>The appellant made a non-frivolous allegation of involuntariness.</u>

An appellant may establish that the Board has jurisdiction over an action taken pursuant to the terms of a settlement agreement wherein he agreed to waive his appeal rights if he can establish that the agreement was invalid due to misrepresentation by the agency.[7]   *Simmons v. Small Business Administration*, <u>115 M.S.P.R. 647</u>, ¶ 11 (2011). A showing that a reasonable person would have been misled by the agency's statements is sufficient to show misrepresentation. *Hazelton v. Department of Veterans Affairs*, <u>112 M.S.P.R. 357</u>, ¶ 11 (2009).

The appellant alleged that he was coerced into signing the settlement agreement under "threat of termination at the Agency's sole discretion." IAF-0486, Tab 14 at 1. He further alleged that the agency provided him with "misinformation," "misrepresent[ed]" information, and did not inform him "that [he] had appeal rights."[8]   *Id.* The appellant's allegations can be fairly interpreted

---

[7] We discern no basis in this matter to distinguish between settlement agreements entered into before the Board and agreements entered into in other forums. *Swink v. U.S. Postal Service*, <u>111 M.S.P.R. 620</u>, ¶ 9 (2009), *aff'd*, 372 F. App'x 90 (Fed. Cir. 2010) ("[T]he Board will review the terms of a settlement agreement and the surrounding circumstances to determine if it retains jurisdiction over an appeal of an action that was settled in another procedural avenue.").

[8] To the extent the appellant alleges that the agency was required to notify him of his appeal rights before he signed the settlement agreement, this is incorrect. An agency is not obligated to notify an employee of his Board appeal rights until it "issues a decision notice . . . on a matter that is appealable to the Board." <u>5 C.F.R. § 1201.21</u>; *Gingrich v. U.S. Postal Service*, <u>67 M.S.P.R. 583</u>, 587 (1995) (stating that an agency is obligated to notify an employee of his Board appeal rights when it takes an appealable action).

to mean that the agency advised him that his only alternative to termination was to accept the terms of the settlement agreement and indicated that he would not otherwise have appeal rights.  Indeed, on review, the appellant reiterates that the agency provided him with "misinformation with regard to [his] due process rights and MSPB appeal rights" and "stat[ed] that there were no appeal rights."  PFR File-0486, Tab 1 at 5-6; *see* IAF-0486, Tab 14 at 1.  We therefore find that the appellant made a nonfrivolous allegation of involuntariness sufficient to warrant a jurisdictional hearing.  If the appellant is able to prove his allegation that the agency provided him with misinformation upon which he detrimentally relied in signing the settlement agreement (namely, that he would not otherwise have appeal rights), this would demonstrate that he did not enter into the agreement voluntarily.  *See Gutierrez v. U.S. Postal Service*, 90 M.S.P.R. 604, ¶ 9 (2002) (finding that the appellant's allegation that the agency incorrectly "told him that, if he did not resign and the agency followed through with its proposal to remove him, he would not have appeal rights with regard to the removal action" constituted a "nonfrivolous allegation that his resignation was involuntary").

We remand these cases for a jurisdictional hearing.

As stated previously, the administrative judge dismissed the appellant's appeals for lack of jurisdiction without holding a hearing.  ID.  However, where an appellant makes a nonfrivolous allegation that the Board has jurisdiction over an appeal, he is entitled to a jurisdictional hearing.  *Ferdon v. U.S. Postal Service*, 60 M.S.P.R. 325, 329 (1994).  Nonfrivolous allegations of Board jurisdiction are allegations of fact which, if proven, could establish a prima facie case that the Board has jurisdiction over the matter at issue.  *Id*.  While an appellant may waive his right to a hearing, the waiver must be clear, unequivocal, informed, and decisive.  *Oneisom v. Department of the Air Force*, 102 M.S.P.R. 386, ¶ 6 n.2 (2006).  We have already determined that the appellant's claim of misrepresentation constitutes a nonfrivolous allegation of Board jurisdiction.

Further, as discussed below, we find that the appellant did not waive his right to a jurisdictional hearing.

In his initial appeal form, the appellant requested a hearing.  IAF-0486, Tab 1 at 3.  However, on May 3, 2012, the appellant submitted a letter to the administrative judge waiving his right to a hearing.  *Id*., Tab 4 at 1.  On May 7, 2012, the administrative judge issued an Order scheduling a close of record conference, which he believed would be "beneficial," given that "the appellant waived his right to a hearing and stated that he preferred to have a decision based on the written record."  *Id*., Tab 6 at 1.  On June 1, 2012, in a letter providing his contact information for the close of record conference, the appellant stated that he believed he had a right to a jurisdictional hearing although he waived his right to a hearing on the merits and requested that the administrative judge clarify this issue during the close of record conference.  *Id*., Tab 17 at 1.

The administrative judge then held a conference with the parties on June 4, 2012.  *Id*., Tab 26.  During the conference, the appellant asked that his hearing request be reinstated only as to the issue of jurisdiction and the administrative judge then clarified the difference between the issues of jurisdiction and the merits.  *Id*. at 3.  Subsequently, apparently because he understood the administrative judge's explanation to mean that a "hearing on the issue of jurisdiction is one and the same as the hearing on the merits of the case" and that he could not have a "hearing on jurisdiction alone,"[9]  the appellant sent a letter to the administrative judge on June 4, 2012, declining a hearing on jurisdiction.  *Id*., Tab 20 at 1, Tab 25 at 1.

---

[9] The administrative judge contends that this is "not an accurate reflection of what [he] said."  He explained that "although the issues of jurisdiction and the merits are different . . . [he] would not bifurcate the hearing on just the question of whether the appellant raised nonfrivolous allegations concerning jurisdiction."  IAF-0486, Tab 26 at 3 n.2.  Rather, "if [he] deemed it appropriate to go forward with a hearing, [he] would listen to testimonial evidence on all matters (the jurisdictional issues as well as the merits)."  *Id*.

On June 18, 2012, in his response to the agency's opposition to various motions he filed, the appellant again stated that he withdrew his request for a hearing based on this understanding, reiterated his prior request for a "hearing on the issue of jurisdiction only," and requested that the administrative judge "provide the documentary evidence that precludes the appellant from the right of a hearing on the issue of jurisdiction alone." *Id*., Tab 25 at 1.  On June 26, 2012, the administrative judge issued his summary of the June 4, 2012 conference, granting the appellant's request to waive the hearing. *Id*., Tab 26 at 3.  The administrative judge's summary of the conference afforded the parties the opportunity to make an oral objection, or motion to supplement, by a date certain if they disagreed with the summary. *Id*. at 5.  The appellant timely submitted a motion to supplement stating, in relevant part, "other cases make it clear that the issue of jurisdiction are separate issues as you state and that the appellant has the right to a hearing on the matter of jurisdiction alone, which is what I am seeking." *Id*., Tab 27 at 5.

In sum, we find that the appellant did not waive his right to a hearing.  The pleadings and communications in the record reflect that the appellant repeatedly stated that he wished to have a jurisdictional hearing. *See generally* IAF-0486, Tabs 17, 20, 25-27.  Further, the appellant timely objected to the administrative judge's summary of the June 4, 2012 conference, again stating that he was seeking a jurisdictional hearing.  IAF-0486, Tab 27 at 5.  Thus, the administrative judge erred in proceeding to dismiss the appeals on jurisdictional grounds without a hearing.  ID.

We remand these cases for a jurisdictional hearing, so that the appellant may have an opportunity to explain, and present evidence in support of, the above-noted nonfrivolous allegation.[10]

---

[10] The appellant argues that the administrative judge should have considered his argument that the proposed removal action was motivated by discrimination and retaliation under Title VII.  PFR File-0486, Tab 1 at 2-3.  However, the Board may

## ORDER

For the reasons discussed above, we REMAND this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                    _____

                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.

---

consider a claim of discrimination under Title VII only after a finding of jurisdiction is made.  *Cruz v. Department of the Navy*, 934 F.2d 1240, 1245 (Fed. Cir. 1991) (en banc) ("The Board has not been granted jurisdiction over Title VII claims . . . unaccompanied by an appealable action over which the Board does have jurisdiction."); *see Schmittling v. Department of the Army*, 219 F.3d 1332, 1336-37 (Fed. Cir. 2000) (the Board must first address the matter of jurisdiction before proceeding to the merits of the appeal).

Mr Perry:  If you are asking for my position on your proposed motion, I will provide you with the courtesy of a response.

My response is that I have already requested that both parties be allowed to conduct discovery on the limited issue that the Board remanded to the Administrative Judge.  To the extent that you are asking the AJ to allow you to conduct discovery on issues beyond the issues remanded to him, the Agency would object.  With respect to any of your specific requests laid out below, generally, objections would be made at the time that the requests are propounded to the Agency.  However, as none of your requests seem to bear upon the issue of the voluntariness of the settlement agreement, the Agency again objects to your request to attempt to conduct discovery on issues that are no longer a part of this case.

Adam Chandler


-----tonywpy@aol.com wrote: -----
To: adam.a.chandler@census.gov, tonywpy@aol.com
From: tonywpy@aol.com
Date: 06/28/2013 10:06AM
Subject:  (Untitled)

Mr. Chandler,

This is to inform you that I intend to file a motion for:

1.  discovery of all meetings held by the Deciding Official and all of the meeting notes, correspondence and other notations and communications of the Deciding Official used to reach the final decision in the proposed removal.

2.  discovery of personnel policy that provided the authority to Darren Gutschow to propose my removal from the federal service.

3.  discovery of the agency policy that provides the authority and to whom does it provide the authority to use of badge scans to impose any penalty on federal employees.

4.  discovery of all IT badge scans and corresponding leave requests for all  GS-12, GS-13, GS-14, and GS-15 and higher for the same period for which the badge scans for Anthony Perry were extracted.

5.  Dale R. Reed's staff of record 2 years prior and for 1 year after the coerced retirement of Anthony Perry.


Sincerely,


Anthony Perry

Index E

1.   Non-selection History and Non-competitive Promotion  pgs E1-E22

| Anthony W Perry/CSO/HQ/BOC | To | Carol M Van Horn/DIR/HQ/BOC@BOC |
|---|---|---|
| 04/14/2003 12:05 PM | cc | Anthony W Perry/CSO/HQ/BOC@BOC |
| | bcc | |
| | Subject | Interview for ADC for Geographic Program Management |

History:   ⤷ This message has been forwarded.

Carol,

I want to thank you for interviewing me for the position of Assistant Division Chief for Geographic Program Management. I hope you would agree that I have continued to prepare myself for senior level management here at the Bureau of Census.

I have given additional thought to your question I did not answer about an innovative solution I used to solve a problem. I would suggest that as the Client Support Office Change Agent and lead for the Organizational Assessment Action Planning Team, I had to get division employees over whom I exercised no management control to constructively participate in this six-week effort. Additionally, I was a relatively new employee to the division at the time. The goal of the effort was to provide management feedback about the organizational strengths and challenges from the employee's perspective and make recommendations to address those challenges.

The major hurdle was to figure out how to get constructive participation from relatively disinterested personnel. There was resistance among many employees to participate. Often quoted were statements like, "we have seen this before and nothing was done", "here we go again", or "why are we wasting our time with this, no one is going to do anything about it". To accomplish the goal, I encouraged several informal leaders in the rank and file to participate, expecting that their participation would interest others to participate or that they would suggest to others reluctant to participate that they ought to give it a try because of my stated commitment to do everything in my power to get management to address their concerns. The strategy paid off. The team effort resulted in a very solid action plan. Management action was taken or explanations provided for each of the concerns that received consensus from the group.

Thanks again for the interview and whatever your decision, I look forward to your decision.

Tony

E1



Glenda Craney
<glenda.j.craney@census.go
v>

04/28/2003 03:11 PM

To   Anthony.W.Perry@census.gov
cc   glenda.j.craney@census.gov
bcc
Subject   CEN-03-1016-KK

MEMO: Anthony Perry
FROM: Kathleen Koral

Thank you for your application for the Vacancy Announcement Number:
CEN-03-1016-MK

Position Title: Program Manager
Series-Grade:0340-15

You were determined to be qualified for this vacancy, however you were
not selected in competition with other candidates.

We appreciate your interest in applying for this vacancy.  Please do not
hesitate to apply for future vacancies for which you are qualified.

E2

Anthony W
Perry/CSO/HQ/BOC

06/17/2004 09:24 AM

To   Richard W Swartz/DIR/HQ/BOC@BOC

cc   Anthony W Perry/CSO/HQ/BOC@BOC

bcc

Subject

Rick,

Thank your for the interview.  It was as an opportunity to express my continued preparation to assume increasing responsibility and leadership at Census.  As you know, my preparation has included a plethora of training, formal and informal.  I have spent the last 10 or more years specifically preparing for senior management responsibility.  As I stated, I think employees are the most valuable asset that a manager has.  Without them working for you and not against you, it is difficult or impossible to deliver.

In July, I will graduate from the Federal Government's CIO Certificate Program at the University of Maryland.  Next summer, I expect to receive an Executive Master of Science in Information Technology, also from the University of Maryland.

I believe the combination of technical and business training places me in an advantageous position and in a position that will allow me to contribute to the mission of the IT Directorate in specific and possibly Program Area IT positions as well.  I know I am ready and that it is time.

Thanks again for taking the time to talk with me about the job in SSD.   Looking forward, please keep me in mind as other opportunities come available in  IT related areas at the Bureau where your recommendation might be valuable.

Sincerely,

Tony

E3

Rose M Keller/HRD/HQ/BOC          To   Anthony.W.Perry@census.gov
06/25/2004 12:49 PM               cc
                                  bcc
                          Subject CEN-04-2097-AYM

History:          This message has been forwarded.

Memo to:    Perry Anthony

From:       Alice Y. Macklin
            Human Resources Specialist

Thank you for your application for the Vacancy Announcement Number: CEN-04-2097-AYM
Position Title: Supervisory Information Technology Specialist (Systems Analysis)
Series-Grade: GS-2210-15

You were determined to be qualified for this vacancy, however you were not selected in
competition with other candidates.

We appreciate your interest in applying for this vacancy.  Please do not hesitate to apply for
future vacancies for which you are qualified.

E4

Arnold A
Jackson/DMD/HQ/BOC
11/02/2004 10:54 AM

To   Anthony W Perry/CSO/HQ/BOC@BOC

cc

bcc

Subject   Re: FYI

You should press Rick on this.

----------------------------

Sent from my BlackBerry Wireless Handheld
   Anthony W Perry

**From:** Anthony W Perry
**Sent:** 11/02/2004 09:37 AM
**To:** Arnold A Jackson/DMD/HQ/BOC@BOC
**Subject:** FYI

Mr. Jackson, I interviewed w/ Bea Parker yesterday.  The interview went well.  However, she stated their
were 9 highly qualified applicants so I don't expect to get the call realistically.     Below, I sent this
message to Rick because Tom Meerholz is in the process of reorganizing CSO.   There will be 3 GS-15s
created and several more branch chief positions.    I am only interestsed in one of the 3 ADC positions.
Rick told me to come by and see him when interview for Munsey's old job.     This is my follow through
with him.

There is one ADC job opportunity he is requesting that I really highly qualify for.  I want it and will pursue it
vigorously.
Please touch basis w/ Rick sometime in the next couple of months.  Note that Meerholz does not like his
managers discussing his plans external to his organization so discretion is in order on my part and yours.
I know you understand.

Thanks,

Tony
------ Forwarded by Anthony W Perry/CSO/HQ/BOC on 11/02/2004 09:29 AM -----

Anthony W Perry
11/02/2004 08:47 AM

To:  Richard W Swartz/DIR/HQ/BOC@BOC
cc:
Subject:  Request For Half Hour Meeting w/ You

Rick,

Sometime within the next 3 weeks, I would like to talk with you per my interview in your office several
months ago.  You suggested I come see you and would like to follow up on that.  The topic is one that was
mentioned in our meeting.

Could you put me on your schedule for sometime during the week of Nov. 15-19.

Thanks,

Tony

E5

301-763-9629

This E-Mail is Proprietary

Rose M Keller



**Rose M Keller**
11/04/2004 08:17 AM

To:  Alice Y Macklin/HRD/HQ/BOC@BOC
cc:
Subject:  Re: CEN-04-2178-AYM

FYI

----- Forwarded by Rose M Keller/HRD/HQ/BOC on 11/04/2004 08:16 AM -----

**Anthony W Perry**
11/04/2004 08:13 AM

To:  Rose Keller <rose.m.keller@census.gov>
cc:
Subject:  Re: CEN-04-2178-AYM

Ms. Keller, who can provide the name of the selected person?

Thanks.
Rose Keller <rose.m.keller@census.gov>



**Rose Keller
<rose.m.keller@census.
gov>**
11/03/2004 04:15 PM

To:  Anthony.W.Perry@census.gov
cc:
Subject:  CEN-04-2178-AYM

Memo to:        Anthony Perry

From:           Alice Y. Macklin
                Human Resources Specialist

Thank you for your application for Vacancy Announcement Number:
CEN-04-2178-AYM
Position Title:    Supervisory Information Technology (Sys Analysis)
Series-Grade:      GS-2210-15

You were determined to be qualified for this vacancy, however you were
not selected in competition with other candidates.

We appreciate your interest in applying for this vacancy.  Please do not
hesitate to apply for future vacancies for which you are qualified.

E6



Alice Y
Macklin/HRD/HQ/BOC
11/04/2004 10:15 AM

To  Anthony W Perry/CSO/HQ/BOC@BOC

cc

bcc

Subject  Re: CEN-04-2178-AYM

Hello again:

Not trying to tow a hard line here but the placement has not been made official.  Once that is done a message will go out.

Thanks.


Alice Y. Macklin
Human Resources Specialist
Department of Commerce
Bureau of the Census
301-763-9629

This E-Mail is Proprietary

Anthony W Perry

Anthony W Perry
11/04/2004 09:03 AM

To: Alice Y Macklin/HRD/HQ/BOC@BOC
cc:
Subject: Re: CEN-04-2178-AYM

I thought non selected persons could request the name of the selected person.   I can wait for the announcement if that is not the case.

Thanks.
Alice Y Macklin



Alice Y Macklin
11/04/2004 08:22 AM

To: Anthony.W.Perry@census.gov
cc:
Subject: Re: CEN-04-2178-AYM

Good morning Mr. Perry:

Can you please tell me the purpose of your question?  The selectee will be announced within the Branch at the appropriate time.  HR does not normally give that information out.

Please advise.

Thanks.


Alice Y. Macklin
Human Resources Specialist
Department of Commerce
Bureau of the Census

E7



### U.S. DEPARTMENT OF COMMERCE
# COMMERCE OPPORTUNITIES ON-LINE

## Application Status, History, and Supporting Documents

**COOL will shut down December 22, 2004.**
**Applicants will not be able to access COOL after December 22, 2004.**
Applicants are advised to print any vacancy announcements, resume, job application and supporting documents they would like to keep for their personal records before the December 22, 2004 shutdown date. All applicant information will be retained by the Human Resources office as appropriate.
***Click here for help on this screen.***

Return to Applicant Main Menu | Log Out of COOL

| Application | Position |
|---|---|
| 10/07/2004 **VIEW** **Submitted** Your Merit application has been referred to the selecting official. Action complete - selection made. | CEN-04-2178-AYM (closed) Supervisory Information Technology Specialist (S Analysis) |
| 08/02/2004 **VIEW** **Submitted** | MBDA-04-219.-TS (closed) Chief Information Officer |
| 05/19/2004 **VIEW** **Submitted** Your Merit application has been referred to the selecting official. Action complete - selection made. | CEN-04-2097-AYM (closed) Supervisory Information Technology Specialist (S Analysis) |
| 01/30/2004 **VIEW** **Submitted** Your Merit application has been referred to the selecting official. Action complete - selection made. | CEN-04-2006-CH (closed) Supervisory Information Technology Specialist (S Analysis) |
| 01/23/2004 **VIEW** **Incomplete** Action complete - selection made. | CEN-04-1006-KK (closed) Program Manager |
| 09/12/2003 **VIEW** **Submitted** Your Merit application has been referred to the selecting official. Action complete - selection made. | CEN-03-1149-KK (closed) Program Manager |
| 06/10/2003 **VIEW** **Submitted** Action complete - selection made. | CEN-03-2035-CH (closed) Supervisory Information Technology Specialist (S Analysis) |

| | |
|---|---|
| 04/22/2003 **VIEW** <br> **Withdrawn** <br> Action complete - selection made. | CEN-03-2021-SB (closed) <br> Financial Systems Officer |
| 04/22/2003 **VIEW** <br> **Withdrawn** <br> Action complete - selection made. | CEN-03-2023-SB (closed) <br> Supervisory Budget Analyst |
| 04/22/2003 **VIEW** <br> **Submitted** <br> Your Merit application has been marked 'Not Eligible'. <br> Action complete - selection made. | CEN-03-2022-SB (closed) <br> Supervisory Budget Analyst |
| 03/26/2003 **VIEW** <br> **Submitted** <br> Your Merit application has been referred to the <br> selecting official. <br> Action complete - selection made. | CEN-03-1016-KK (closed) <br> Program Manager |
| 05/15/2002 **VIEW** <br> **Submitted** <br> Your Merit application has been referred to the <br> selecting official. <br> Action complete - selection made. | CEN-02-4020 (closed) <br> Supervisory Information Technology Specialist (S) <br> Analysis) |
| 02/08/2002 **VIEW** <br> **Submitted** <br> Action complete - selection made. | CEN-01-3099 (closed) <br> Supervisory Computer Specialist (Systems Analys |
| 07/10/2001 **VIEW** <br> **Submitted** <br> Action complete - selection made. | CEN-01-4018 (closed) <br> Computer Specialist (Systems Analysis) |
| 07/03/2001 **VIEW** <br> **Submitted** <br> Action complete - selection made. | CEN-01-4021 (closed) <br> Supervisory Computer Specialist (Programming & <br> Analysis) |
| 07/03/2001 **VIEW** <br> **Submitted** <br> Your Merit application has been referred to the <br> selecting official. <br> Action complete - selection made. | CEN-01-4020 (closed) <br> Computer Specialist (Systems Analysis) |
| 07/03/2001 **VIEW** <br> Submitted <br> Your Merit application has been referred to the <br> selecting official. <br> Action complete - selection made. | CEN-01-4019 (closed) <br> Computer Specialist (Systems Analysis) |
| 03/22/2001 **VIEW** <br> **Submitted** <br> Your Merit application has been referred to the <br> selecting official. <br> Action complete - selection made. | CEN-01-1025 (closed) <br> Computer Specialist |
| 03/21/2001 **VIEW** <br> Submitted | CEN-01-1024 (closed) |

E9

| | |
|---|---|
| Your Merit application has been referred to the selecting official.<br>Action complete - selection made. | Computer Specialist |
| 03/21/2001 **VIEW**<br>**Submitted**<br>Your Merit application has been referred to the selecting official.<br>Action complete - selection made. | CEN-01-1022 (closed)<br>Program Manager |
| 02/26/2001 **VIEW**<br>**Submitted**<br>Your Merit application has been referred to the selecting official.<br>Action complete - selection made. | CEN-01-3026 (closed)<br>Computer Specialist (Systems Analyst) |
| 10/13/2000 **VIEW**<br>**Submitted**<br>Action complete - selection made. | CEN-00-3057 (closed)<br>Supervisory Computer Specialist (Systems Analys |
| 10/13/2000 **VIEW**<br>**Submitted**<br>Action complete - selection made. | CEN-00-3056 (closed)<br>Supervisory Computer Specialist (Systems Analys |

### Supporting Documents:

Note: If you have faxed in supporting documents, yet don't see them below, please allow two business d
time of your fax. Not all vacancy announcements require supporting documents. Please review the
announcement for all requirements. You must use the "**COOL FAX Cover Sheet for Supporting Do**
whenever you fax in documents.

*You currently do not have any supporting documents.*

If you need help on your use of Commerce Opportunities On-Line, you can contact the COOL Help Desk by phone at 1-80(
by e-mail at the COOL_HELP@DOC.GOV address. The help desk is available MONDAY - FRIDAY, 8:00 AM to 4:00 1
Time). You may call and leave a voice mail message at all other times. Voice mail messages and e-mails will be responded
possible.

Commerce Opportunities On-Line Privacy Statement
This site is maintained by the Department of Commerce, Office of Human Resources Management.
http://ohrm.doc.gov
COOL_HELP@DOC.GOV

**COOL will shut down December 22, 2004.**
**Applicants will not be able to access COOL after December 22, 2004.**
**Applicants are advised to print any vacancy announcements, resume, job application**
**and supporting documents they would like to keep for their personal records before**
**the December 22, 2004 shutdown date. All applicant information will be retained**
**by the Human Resources office as appropriate.**

Press "Ctrl-P" to Print
Press "Ctrl-C" to Copy Selected Text
Press "Ctrl-V" to Paste at Cursor

E10

Anthony W
Perry/CSO/HQ/BOC

05/23/2005 02:13 PM

To  Richard W Swartz/DIR/HQ/BOC@BOC

cc

bcc

Subject  Interview

Thanks again for taking the time to interview me for the TCO Division Chief vacancy.   Per our discussion,
I will put together a short power point presentation on organizational behavior along with references used.
The notes pages will contain the detail to the bullets in the presentation.   In the meantime, take a look at
this presentation on leadership from the CIO section and material in the Executive Master of Information
Technology Program.

 

CCA CIO Core Competencies.doc  Shackleton's Way Leadership Presentation.ppt

E11

Anthony W
Perry/CSO/HQ/BOC

07/22/2005 10:46 AM

To   Richard W Swartz/DIR/HQ/BOC@BOC

cc

bcc

Subject   Hope The Off-Site Was Useful

Rick, per our several conversations in the recent path, I remain interested in working and contributing at
the next mgmt. level at the BOC.

Hopefully, that opportunity will become available in the not to distant future.

Tony.

| | | |
|---|---|---|
| Anthony W Perry/CSO/HQ/BOC | To | Arnold A Jackson/DMD/HQ/BOC@BOC, Richard W Swartz/DIR/HQ/BOC@BOC |
| 03/27/2006 02:41 PM | cc | Anthony W Perry/CSO/HQ/BOC@BOC |
| | bcc | |
| | Subject | Received Call |

History:       🗈  This message has been forwarded.

Gentlemen, I received a call last week stating my non-selection for the FDCA position.  The grapevine states that Rob Soper was chosen, an interesting choice in itself, for a position that I had to be highly qualified for having done that work in the not so distant past.  That raises the number to approximately thirteen or so Information Technolgoy grade 15s since 2001 that I've applied for here that someonelse has been selected.  I am very dissappointed.

Tony

E13



susan.m.howery@census.gov

04/03/2006 11:49 AM

To  anthony.w.perry@census.gov

cc

bcc

Subject  DSCMO-2006-0019-M-KK

Dear ANTHONY PERRY

Thank you for your application for Vacancy Announcement Number:
DSCMO-2006-0019
Position Title: Program Manager-GG-0340-15, CENSUS-M-KK
Series-Grade: GS-0340-15

You were determined to be qualified for this vacancy, however you were not
selected in competition with other candidates.

We appreciate your interest in applying for this vacancy.  Please do not
hesitate to apply for future vacancies for which you are qualified.


Sincerely,
Kathleen Koral,
U.S. Census Bureau
U.S. Department of Commerce

E14

| | | |
|---|---|---|
| Anthony W Perry/CSO/HQ/BOC | To | tonywpy@aol.com, Anthony W Perry/CSO/HQ/BOC |
| 12/12/2006 08:19 AM | cc | Anthony W Perry/CSO/HQ/BOC@BOC |
| | bcc | Anthony W Perry/CSO/HQ/BOC |
| | Subject | |

Rick,

I am distraught that my request to discuss with you what I perceive to me to be life and career altering events by decisions made by Tom Meerholz upon the reorganization of CSO has remained open without a meeting scheduled. As a longterm employee in IT, fully trained and compliant with Clinger-Cohen competencies among others , I have been subordinated to a newly arrived employee to LTSO by way of reorganization. And you should know I have been disinvited to LTSO Sr. Staff meetings to boot. That is not a big deal as such. After nearly two years of receiving little or no-value assignments, my first meeting with my new branch chief I was given no less than four or five major tasks/projects. Tom stated to me that he didn't feel he could give me more than one assignment at a time and in my first meeting with the new Branch Chief I get five.

I have been again denied training on the premise that I have had my fair share of training here. As if my training on 3Com EtherSeries network software and other topics prepares me to do the jobs of today dealing with Grid, Nano, and Qubic computing, Artificial Intellience, Biometric and other Security processes. Rick I have spent more than $100,000 of my own money to educate myself. The government offers job related training benefits to its employees. I dont see the problem. Others are being quietly trained to "catch" for their lack of training and then they are going to be leapfrogged past me a longterm directorate employee fully trained, anxious to train and even more anxious to implement such training. What is playing out is a travesty and I would have never thought knowing you from the past that you would allow this kind of management in an organization you headed. Even with this, I am ready and willing to work in this organization at the GS 15 level in THIS organization.

Please schedule a meeting to discuss this as soon as is possible. The longer I am kept out of the Sr Staff environment the easier it will be to let what is happening to me stand.

E15



"Cohen, Michael"
<mCohen3@doc.gov>

01/08/2008 03:33 PM

To   "Cohen, Michael" <mCohen3@doc.gov>

cc

bcc

Subject   ELDP-4 Interviews

History:          This message has been forwarded.

Congratulations!  After a careful review and validation panel, your application was selected to interview for the ELDP-4 program.  In addition, you will have an opportunity to participate in the **ELDP Assessment Process which will be held on February 12 and 13 in room 6800 of the HCHB (additional information will be forthcoming).  Please keep this time open so you can attend the one half day Assessment Process (the 3rd and final stage of the selection process).**

The following is the interview schedule. If you are a field personnel, please provide a phone number in which we can conduct a conference call.  Field personnel must attend the assessment process in person. There are no exceptions.  If you must travel in on a specific day we can set aside a specific day for you.

Please look for your last name below to determine your time, date and room number for the interviews. Email addresses have been placed in the BCC line of this email in order to preserve privacy.

Please note that all rooms are located in the main Commerce Building (HCHB) located at 14th and Constitution Avenues, N.W.  The HCHB is easy access from the Metro Federal Triangle Station.  Simply exit the station, follow signs to the Ronald Reagan Building food court – enter the double doors at Subway Subs, and continue toward the cafeteria.  Room B831A is the first small room next to the elevators just prior to entering the hallway with the cafeteria and the credit union.  Please bring your badge to gain entry to the building.  We will not have staff available to escort individuals into the building.

There is nothing specific you need to do to prepare.  However, please note that the ELDP program, like all of our leadership programs, is based on 5 ELDP competencies.  As a reminder, these competencies are human resources, decisiveness, creativity and innovation, conflict management and influencing/negotiating.

If you have conflicts on the schedule below, please let me know as soon as possible so that I may make adjustments.

Wenesday, January 16 – Room B831A

9-10 am -- Feng
10-11 am – Barnes
11-12 noon – Ribarsky
1-2 pm – Grant
2-3 pm – Perry
3-4 pm – Rill

Please see my contact information below if you have any questions or issues.  This is a high priority and therefore I attempt to keep in constant contact with you throughout the upcoming process. You may also email me at my alternate email address noted below which I review at home in the evenings. So if you have an emergency the night before, please do not hesitate to email me at this address.  Also, in the event of snow, we will follow the OPM guidelines.  If the government is closed or there is a delayed opening, then interviews will be cancelled for closure days or for the time the work hours are delayed.

I look forward to seeing you at the interviews.

E16

E17

# Blacks in Government, Suitland Federal Center Chapter

<div align="right">

Street Address
Apartment Number
City, State/Province  ZIP / Postal Code
Phone: (111) 123-1234
Email: yourname@yourisp.com

</div>

July 2, 2008

Honorable William Clay
Chairman, House Oversight Committee for Census and etc.
Street Address
Apartment Number
City, State/Province  Zip/Postal Code

**Re:     Abusive Violation of Merit Promotion Principles through the Repetitive Use of Non-competitive Promotions**

Dear Congressman William,

We, a group of black employees of the Census Bureau and members of the Suitland Federal Center Chapter of Blacks in Government, are being prevented from competing for merit promotions at an alarming rate and will be negatively impacted and excluded from positions of leadership and authority for another generation at least.  In place of fair and open competition for merit and competitive positions, some Census managers have resorted to a near exclusive use of non-competitive assignment of white employees to leadership positions at Census.  In enough cases to be concerned, several of these employees being non-competitive promoted have only high school degrees and would be unable to be hired off the street into these professional Information Technology 2210 positions.  The lack of the math and statistic requirements would prevent them from making the certification list.

As we followed the hearings held before your committee earlier this year about the so called lack of qualified blacks for senior management at the Bureau, we watch college degreed black employees from the likes of Old Dominion, Duke, North Carolina A&T, Maryland, Delaware, Texas, to name a few, repeatedly bypassed for promotion and assignments in favor of former secretaries and administrative persons and several high school graduates given critical assignments related to information technology, including systems analysis, design, deployment, and project management.

Also, we have followed over the years events such as the investigations into the lost and stolen laptops and other IT equipment, the management failures of FDCA, and budget and planning failures, so too should the mismanagement of a major portion of the Bureau's  human capital pool, black employees, relegated to 2nd and 3rd tier project and task support personnel.  Again, I am speaking of college educated black employees with fifteen or more years of experience and institutional knowledge relegated to no more than administrative support roles at Census.  We also allege that this plight is primarily due to the discriminatory hiring and promotion practices of white Census managers and we are voiceless in our ability to address except for the drawn out and expensive EEO process.

We need action now.  We need these issues addressed now.  The use of personnel loopholes to fill these professional positions with non-professional employees damages qualified employees and damages the Bureau's ability to perform its mission in accordance with executive directives.  We would like to contact you to discuss further what can be done to assure Census Bureau managers abide by affirmative action guidelines and merit system principles including fair and open competition for professional positions.

E18

Very truly yours,

*(sign name here)*

Blacks in Government,
Suitland Federal Center Chapter

Type enclosure information here (optional)

E|9

Anthony W
Perry/CSO/HQ/BOC
07/11/2007 12:02 PM

To    Anthony W Perry/CSO/HQ/BOC@BOC
cc
bcc
Subject  Fw: Deputy Chief Information Officer,
OS-CIO-011-2006-DHP

----- Forwarded by Anthony W Perry/CSO/HQ/BOC on 07/11/2007 12:02 PM -----

Anthony W
Perry/CSO/HQ/BOC
09/12/2006 05:07 PM

To    DHowellParker@DOC.GOV
cc    tonywpy@aol.com, Anthony W Perry/CSO/HQ/BOC@BOC
Subject  Deputy Chief Information Officer, OS-CIO-011-2006-DHP

Ms. Parker,

see attached technical qualifications and ECQs for job announcement for Deputy Chief Information
Officer,
OS-CIO-011-2006-DHP.   Also, I was concerned about the format of the resume if sent as an attachment.
Therefore, my resume was submitted on-line.  The submission confirmation is below.

Thanks,

Tony Perry

APerryTechnicalQualifications.doc   Aperry ECQ.doc

----- Forwarded by Anthony W Perry/CSO/HQ/BOC on 09/12/2006 04:59 PM -----



"USAJOBS"
<route@fedjobs.gov>
09/12/2006 02:43 PM

To    <anthony.w.perry@census.gov>
cc
Subject  Important Application Information

```
This message is to confirm that your resume has been sent to the employer you
requested.  Please read the vacancy announcement carefully.  Submitting your
resume may not be the only step in the application process. Make sure you
complete any on-line assessment questions, if applicable, and send all the
required   supplemental documentation.  Following are some details for your
records.  Remember, we also keep an online record for you within your USAJOBS
account (https://my.usajobs.opm.gov/manageapps.asp).

Thank you for using USAJOBS, and good luck in your job search!

Date of Submission: 9/12/2006
```

E2C

Job Title: Deputy Chief Information Officer
Agency Name: Department Of Commerce
Duty Location: Washington, District of Columbia
Title of Resume: AWPerry08-29

E-21

October 20, 2006

Dear Applicant

Subject: U.S. Department of Commerce – Senior Executive Service Non Selection
Deputy Chief Information Officer Position

This letter is to update you regarding the status of the Senior Executive Service, Deputy Chief Information Officer Position, Announcement Number OS-CIO-011-2006-DHP, Office of the Chief Information Officer, Office of the Secretary.

This highly visible senior executive leadership position resulted in attracting a voluminous and extremely high caliber of candidates, with exceptional managerial and technical qualifications.

You were considered for this Deputy Chief Information Officer position, however, Mr. John W. McManus was selected to fill the position after an extremely competitive process.

We thank you for your interest in the position of Deputy Chief Information Officer and encourage you to apply for other senior executive employment opportunities with the Department.

Sincerely yours,

/s/ *Denise Howell Parker*
Denise Howell Parker
Human Resources Specialist

E22

Index F

1.  Repetitive Unfair Performance Evaluations To Create Fraudulent Failure To Perform Pending
    Before the EEOC at the Time  of Fraudulent Misconduct Charge and Unlawful Non-disclosure
    Agreement Causing Disposal in Violation of EEOC Policy Guidance  pgs F1-F23

Anthony W
Perry/CSO/HQ/BOC

11/14/2007 09:49 AM

To    Alphonso R Danner/HRD/HQ/BOC@BOC

cc    Anthony W Perry/CSO/HQ/BOC@BOC

bcc

Subject    Fw: Formal Request For Reconsideration of Rating

Per our conversation, this was the email I sent to both my rating official and authorizing official.  Before sending, I verbally requested that my rating official reconsider the evaluation because some of the work I performed was inadequately acconted for in my evaluation.  After approximately three days, I sent the formal request to the authorizing official.

Thanks.

----- Forwarded by Anthony W Perry/CSO/HQ/BOC on 11/14/2007 09:45 AM -----

Anthony W
Perry/CSO/HQ/BOC

11/07/2007 11:20 AM

To    Thomas J Meerholz/CSO/HQ/BOC@BOC

cc    Dale Richard Reed/CSO/HQ/BOC@BOC, Anthony W
       Perry/CSO/HQ/BOC@BOC

Subject    Formal Request For Reconsideration of Rating

As I understand the HR regulation regarding the subject of this email and which must be requested within 5 working days of the performance evaluation, I believe,  I am requesting a formal reconsideration of the rating I received on Monday.  I made the request to my supervisor but I understand a formal request must be made to the authorizing official.

Tony Perry

F1

Anthony W
Perry/CSO/HQ/BOC

11/20/2007 09:22 AM

To    Dale Richard Reed/CSO/HQ/BOC@BOC

cc    Anthony W Perry/CSO/HQ/BOC@BOC

bcc

Subject   Per My Request for Formal Reconsideration of Evaluation

2nd Element reconsideration:

Mr. Perry performed the quarterly request and submission of the Activity-Based Cost data with unusually good performance.  He consistently requested the information timely and voluntarily sent periodic requests or reminders for data prior to date due. On a quarterly basis, he consolidated the submission of the eight Branch Chiefs while verifying and validating each branch's submitted data.  Submissions sent forward were accurate, thorough and reliable.  Knowledge and skill applied to this element are clearly above average.  The work submitted by Mr. Perry rarely if ever required revision or corrections from the receiving organization.  When notified by Branch Chiefs that their submission might be delayed because of other workplace demands, Mr. Perry often completed their submissions for them to meet data call deadline.  Exceptions for meeting due date for submission has only happened when causes were outside of Mr. Perry's control.  Mr. Perry understands and has communicated the value and importance of ABC data requests, completes the assignment regularly without assistance or guidance from supervisor and has worked successfully with co-workers to complete requests.  There is never a need for supervisory intervention except to remind other employees of the importance of submitting data requests in a timely fashion.  Mr. Perry has looked to ease the reporting burden of this task by suggesting automating the ABC data collection where feasible.

F2

Anthony W
Perry/CSO/HQ/BOC

11/26/2007 10:38 AM

To   Alphonso R Danner/HRD/HQ/BOC@BOC

cc   Anthony W Perry/CSO/HQ/BOC@BOC

bcc

Subject   Re: Fw: Formal Request For Reconsideration of Rating

For the record,

Mr. Reed reconsidered my evaluation and accepted my identification of the level of work and my recommendation for reconsideration. Although, the request for formal reconsideration is supposed to be addressed by the authorizing official, I will accept Mr. Reed's revised rating this time.

I have additional comments that I would like to put in writing .

Thanks,

Tony
Alphonso R Danner/HRD/HQ/BOC



Alphonso R
Danner/HRD/HQ/BOC

11/26/2007 09:07 AM

To   Anthony W Perry/CSO/HQ/BOC@BOC

cc

Subject   Re: Fw: Formal Request For Reconsideration of Rating

Thanks Anthony!!!

I will forward this to Felecia Newman who handles performance for her records and keep a copy on file in my records.  Let me know if you have any other questions or concerns.

Thanks,

Alphonso R. Danner
Human Resources Specialist
Employee Relations Branch, Human Resources Division
U.S. Census Bureau
4600 Silver Hill Road, HQ-2K040B
Suitland, MD  20746
Phone: (301) 763-3715     Fax: (301) 763-7455

Confidentiality Notice: The information contained in this email and any of its attachments may be privileged and confidential.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this email is strictly prohibited.  If you received this email in error please notify the sender and permanently delete it immediately.  You should not copy, retain or use its contents for any purpose, nor disclose it to any other person.  Thank you.

Anthony W Perry/CSO/HQ/BOC

F 3

**U.S. DEPARTMENT OF COMMERCE**
**OFFICE OF THE SECRETARY**
**OFFICE OF CIVIL RIGHTS, HCHB 6012**
**WASHINGTON, D.C. 20230**

**REPORT OF INVESTIGATION**

I.  **COMPLAINT IDENTIFICATION**

**Complainant's Name:**

Anthony W. Perry

**Job Title, Series and Grade:**

Computer Specialist, GS-2210-14

**Name of Organizational Unit and Address:**

LAN Technology Support Office (LSTO)
Office of the Associate Director for Information Technology
U.S. Census Bureau
U.S. Department of Commerce
Suitland, Maryland

**Complaint Reference Date:**

March 6, 2008

**Complaint Number:**

08-63-00072

II  **DESCRIPTION OF INVESTIGATION**

**Investigator and Contractor:**

Russell L. Valentine, Jr.
International Civil Rights Investigations and Settlements Project
23679 Calabasas Road,
Box Number 128
Calabasas, California 91302

2

F4

**Date of Assignment**:

April 22, 2008

**Place of Investigation**:

Suitland, Maryland

III.   **ISSUES IN COMPLAINT**

**Nature of action, decision or condition giving rise to the Complaint:**

Complainant, a Computer Specialist, GS-2210-14/7, with the LAN Technology Support Office, U.S. Census Bureau, alleges that due to his race (Black/African-American), age 52; (DOB: January 29, 1956) and in retaliation for his prior EEO activity (Complaint Numbers 07-63-00080 and 07-63-00145):

1. Since February 2007, Meerholz has refused to assign him to office accommodations equivalent to other GS-14 Supervisory IT Specialists.

2. On November 30, 2007, he received an overall Level 3 performance evaluation for his FY-07 performance evaluation resulting in his receiving a lesser bonus amount.

3. On December 26, 2007, he learned that he was not selected for the position of Supervisory IT Specialist, GS-2210-15, Census-M-ALD, advertised under Vacancy Announcement No. LTSO-2007-0013.

4. On December 26, 2007, he learned that he was not selected for the position of Supervisory IT Specialist, GS-2210-15, Census-M-ALD, advertised under Vacancy Announcement No. LTSO-2007-15.

5. Meerholz excludes him from serving as Acting Chief and refuses to provide him opportunities to act or temporarily occupy vacant positions of authority in the LAN Technology Support Office.  He cites the following examples:
   a. Effective December 23, 2007, Theresa Toole was appointed as Acting Chief, Systems Architecture Branch.
   b. During the period December 20, 2007 through January 4, 2008, Jason Schaufele was detailed to the Customer Assistance Branch.
   c. During the period December 21-23, 2007, Dale Reed, Catherine Le and Eugene Hellams served as Acting Chief.

3

6. On May 29, 2008, he learned that the position of Chief, LAN Technology Support Office, was filled without being advertised, thus preventing him from competing for the position.

## IV.   REQUESTED RELIEF:

- Return Ms. Musselman to the now vacant position of ADC, Customer Service or Chief, Desktop Management Branch, and place Complainant in the position of Chief, LTSO at the grade of GS-15/7 or GS-15 plus at least 3 steps above the grade of Ms. Musselman and/or Mr. Schaufele at the time of settlement of this case.
- Alternatively, create the position of a Supervisory Information Technology Specialist at the grade GS-15/7 in the IT Directorate and place Complainant in this position.
- Upon application, place Complainant in the next DOC Senior Executive Service (SES) Candidate Development Program and/or any other executive leadership/management development training chosen by Complainant.
- Alternatively, with Complainant's concurrence, place him in the next vacant Information Technology Directorate Division Chief position at the grade of GS-15/ 7 or at least 3 steps higher than Ms. Musselman or Mr. Schaufele Complainant.
- Instruct LTSO and IT Directorate managers to use merit system principles, affirmative action and diversity guidelines, and restrict their ability to fill vacant leadership and authority positions non-competitively when qualified black or other employees are available, thereby giving all qualified personnel an equitable opportunity to act in leadership vacancies before positions are filled.
- Office accommodations equivalent to those which LTSO and IT Directorate GS-14 Supervisory IT Specialists had in February 2007.
- All discriminatory and retaliatory actions taken against Complainant ended immediately.
- Back pay with interest from the earliest date the positions of Assistant Division Chief, Customer Services and Assistant Division Chief, Systems Architecture were filled or could have been filled in 2003 at the grade and step Complainant could have achieved had he the opportunity to compete for either of those positions.
- Reinstatement of all sick and annual leave taken in relation to Complainant's pursuit of solutions for the discriminatory and retaliatory actions taken against him.
- All expenses incurred in relation to Complainant's pursuit of solutions for the discriminatory and retaliatory actions taken against him.

4

# DECLARATION OF ANTHONY WILLIAM PERRY

Anthony W. Perry

    v.

                                          Agency Case No. 09-63-01027

U.S. Department of Commerce

    I, Anthony W. Perry, GS 2210-14/8 Supervisory, IT Specialist, in the Business Planning Branch, Local Area Network (LAN), Technology Support Office, (LTSO), Information Technology Directorate, US Bureau of Census, US Department of Commerce, pursuant to 28 U.S.C. § 1746, hereby declare: I understand that this is the issue accepted for investigation:

**Complainant, an Information Technology Specialist, GS-2210-14/8, with the LAN Technology Support Office, US Census Bureau, alleges that due to his race (Black), age 53 (DOB: January 29, 1959) and in retaliation for his prior EEO activity:**

1. **On September 2, 2009, he learned that Patricia Musselman, Chief, LTSO, non-competitively placed another employee in the position of Assistant Division Chief for Customer Service, depriving him of an opportunity to compete for the position; and**
2. **On September 16, 2009, Musselman told him that she was denying his request to apply for admittance to the Harvard Senior Executive forum.**

For the purpose of this declaration, I confirm that my race is Black, my age at the time of the instant complaint was 53 (DOB: January 29, 1959), and that I have engaged in prior EEO activity: Agency Case Nos.: 08-63-00072, filed on March 6, 2008; 07-63-00145 filed 0n June 19, 2007; and 07-63-00080 filed on March 23, 2007). In one of these complaints, the Agency issued a Final Agency Decision; one is under appeal; and the third is before the District Court in the State of Maryland. For the record, I have been at the Bureau of Census for the last 27 years, mostly with the Information Technology Directorate, and have served in my current position since November 2006. My first level

F7

supervisor is Dale Richard Reed, Chief, Business Planning Branch and my second level supervisor is Patricia Musselman, Chief, LAN Tech Support Office.

I was denied the opportunity to compete and be selected for the position of GS-15 Assistant Division Chief (ADC), Technology Support Office. (ADC, LTSO). This position was not announced formally under the Agency's Merit Promotion process; instead, Ms. Musselman reached outside the organization and non-competitively selected a younger white male (Mark Markovic); thus denying me the opportunity to compete and/or be selected for the position. I believe the Information Technology Directorate uses this method of filling positions to avoid having to select Black or other minority employees for leadership positions. For example, the position now held by Ms. Musselman was not filled via the Merit Promotion Process; she was non-competitively reassigned to the position of Chief, Technology Support Office, and she in turn, went outside the organization to non-competitively fill the ADC LTSO position.

It should be noted that the LTSO ADC position in question was announced competitively in 2007, that I applied for the position at that time, and was determined to be one of the three top contenders; however, Ms. Musselman was selected. Then in 2008, when the position of Chief, Technology Support Office became vacant, she was non-competitively placed in that position thus creating another vacancy which Ms. Musselman filled in early 2009 without using the merit promotion process. At the time of this selection, I was away on a long-term training assignment for an entire year at the time; however, I was going into the office occasionally to take care of administrative business. On Wednesday, September 2, 2009, during a meeting with Ms. Musselman, I asked her if the position which she had vacated when she was reassigned to her new position was going to be posted; she responded that it was not and that she had already reassigned Mark Markovic to that position. When I asked her why the position had not been posted she responded that she did not wish to discuss the matter further. I think there is something wrong with the system being used to fill positions in the Information Technology Directorate which excludes

Page 2 of 4

Blacks and other minorities who are qualified to compete for promotions. Spcifically, I believe I am more than qualified to successfully perform the duties of the instant position; both from an academic and experience perspective; having worked in this field for 27 years. Academically, I earned a Bachelor of Science in Chemistry; Bachelor of Arts in Information Systems Science and a Masters in Business Administration from the University of Austin; as well as an Executive Master of Information Technology and a Chief Information Officer Certificate from the University of Maryland, University College. I believe that Ms. Musselman reached out and selected someone from another organization to keep me from getting the job.

In addition to being denied the opportunity to compete for the ADO LTSO position, Ms. Musselman denied me the opportunity to submit a training request to attend the Harvard Senior Executive Forum. On July 16, 2009 I informed Mr. Reed, my first level supervisor, of my interest in being considered for participation in this forum. A full justification and description of this training was provided. This was followed with various emails to Mr. Reed inquiring about the status of my request; he, in turn, forwarded my messages to my second level supervisor. On September 16, 2009, Ms. Musselman called me into a meeting where she informed me that she was denying my request. At this meeting, instead of discussing the overall benefits to the organization from my participation, she asked me how the training I had taken in the past contributed to the organization. She failed to indicate a reason for denying my request. When I asked her specifically for a written justification for her denying me the training, she refused to do so.

For the record, Ms. Musselman is fully aware of my prior EEO activity and I believe that the reason for denying me the opportunity to compete for the position of ADO LTSO and her refusal of my request to submit a training request for attendance at the Harvard Senior Executive Forum were in retaliation for my utilizing the EEO process.

Page **3** of 4

As relief for this discrimination, I wish immediate appointment a position equal to the GS-15 position that

Mark Markovic was non-competitively reassigned to. I also seek compensatory damages in the form

of remuneration for the amount I would have earned from the time the position was filled until I am

appointed to an equal position. Additionally, I am requesting $225,000 in Compensatory Damages as

well as training on the Clinger-Cohn competencies for skills related to IT Specialists.

 

I have read the above statement consisting of **four** pages. I declare under the penalties of perjury that my statement is true, correct and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____            Executed on: _____
Name

F/0

Anthony Perry                                            Case No.
              v.
United States Department of Commerce                     10-63-00197

I, Anthony Perry, Information Technology Specialist, GS-2210-14, LAN Technology Support Office, United States Census Bureau, United States Department of Commerce, hereby solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator J.F. Deasel, to pursue my complaint of discrimination against the United States Census Bureau.

For the record I am black, 54 years old (1/29/59), and a prior EEO Complainant.

I believe I was discriminated against on the basis of my race, age, and in reprisal for my past EEO activity when I received what I felt was an unfair performance rating and performance award for FY 2009. I do not believe my supervisor, Dale Reed, considered all of my accomplishments during the year when he issued my final performance rating. It should be noted that this is not the first time I disagreed with my supervisor's performance rating. Over the last 3-6 or so years the Information Technology Directorate has established a pattern of issuing to me and the majority of all other African American employees lower tier performance ratings and performance awards that are not indicative of my or their true performance or performance capability. This pattern of low ratings may seem unimportant at first glance until they become used to justify other personnel actions such hiring others for promotional opportunities, as an example.

In February 2008, I began an 18 month training program called the Department of Commerce Executive Leadership Development Program. The purpose of the program is

Affiant's Initials

what the title entails, developing future executive leadership within the Department of Commerce. The program is a competitive program accepting the top 30 candidates Commerce-wide. The first time I applied for the program I was not accepted. After I inquired about the possibility of Thomas Meerholz (management official and my current supervisor at the time) playing games with the selection process, I applied a second time and was subsequently accepted. Questions about my qualifications and the qualifications of others selected for acceptance to the leadership program may be available from the Department, agency or bureau for comparison of the candidates accepted to the program both years. Upon completion of the program, I was voted as the class representative by my classmates which included the responsibility to give a 3-5 minute speech on the benefit to me of this leadership development program.

While working in the program I would report to my job at the Census Bureau and subsequently went to the Hoover Building of the Department of Commerce to work on various projects and assignments that was part of the leadership program.

For the first 14-15 months of the program my work exclusively involved projects related to the program. During the last three months of the program I again started working back at the Census Bureau performing my normal duties as an IT Specialist. However, I was still expected to complete the final requirements of the Leadership Development Program.

Thus, beginning on April 2009, I was reporting on a daily basis to my old job. For roughly the last six months of the rating period, I was available to work on any project or assignment given to me by Mr. Reed.

F12

Page 2 of 4 pages
Pleading Number : 2013024672     Submission date : 2013-07-08 23:59:47     Confirmation Number: 9498065     page 38 of 50

Affiant's Initials

In all honesty I received very little work from Mr. Reed during the last six months of the rating period, though I notified him of my availability and inquired about work needing to be accomplished by the organization. I did accomplish and complete whatever he asked me to do. However, it would be fair to say that all of my major accomplishments were performed while I was working in the Executive Leadership Program.

While working in the Executive Leadership Program I was detailed to the Minority Business Development Agency. The subject matter expert I was assigned to work with gave me a lot of positive feedback about my performance, especially in the area of leadership.

I believe Mr. Reed should have solicited feedback from management in the Executive Leadership Development Program regarding the work I performed while assigned to the program. In fact, it is my understanding that Mr. Reed received an e-mail from Human Resources informing him that the work I performed on the developmental assignment while in the Executive Leadership Program should be considered in assessing my performance.

To my knowledge Mr. Reed never solicited any feedback about my performance while I worked in the Executive Leadership Program. In fact, Mr. Reed felt it was my responsibility to obtain feedback about my performance.

The rating I received for FY 2009, 345 points, was one of the lowest ratings I ever received. When Mr. Reed issued to me my rating he gave no reason for the rating. Therefore I have no idea what he based my rating on since he had given me virtually no work to do.

F13

5 Ann

Page 3 of 4 pages                                             Affiant's Initials _____

I believe the other employees in the Executive Leadership Program received higher ratings than me. I believe all received level four or higher ratings. Therefore, I believe Mr. Reed considered my race, age, and reprisal for past EEO activity in assessing my performance.

As corrective action I am seeking a revised rating for FY 2009 to reflect the leadership and project management activities I performed while on my developmental assignment and the appropriate performance award.

My attempt to settle this complaint prior to filing this EEO action were rejected by the Information Technology Directorate management of Mr. Reed and Ms. Musselman for no stated reason.

I have read the above statement, consisting of 4 pages, and I declare under penalty of perjury that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____
Signature

Page 4 of 4 pages
Pleading Number : 2013024672      Submission date : 2013-07-08 23:59:47      Confirmation Number: 9498065      page 40 of 50

Affiant's Initials

7 / 16 / 2010
_____
Date

_____
Investigator's Signature

F15

5 of
Page 5 of 4 pages
Pleading Number : 2013024672          Submission date : 2013-07-08 23:59:47          Confirmation Number: 9498065          page 41 of 50

Affiant's Initials

**Performance Eval Writeup for Dale**

Anthony W Perry   to: Dale Richard Reed                                    11/04/2009 10:36 AM
Cc: Anthony Perry

History:      This message has been forwarded.

   

_ Congratulationsl.pdf   Re_ Fw_ ITA Strategic Communica.pdf

In the developmental assignment and the action learning assignment, each more than 120 days long, I was required to use project management techniques and communicate with the sponsor stakeholders throughout each.

For the developmental assignment, which resulted in a critical deliverable, the organization's annual report to Congress about activities related to the mission of the ONABD, I created the project schedule and milestone schedule that included biweekly document reviews of the report drafts with the goal of acquiring senior management and Secretary of Commerce level approval in order to complete the final report by December 15, 2008.  In the final phase, I provided comments to the final document editor for organizational specific document requirements.

For the Action Learning Assignment, each team member was required to lead the project for two weeks and act as assistant to the project leader to deliver a Strategic Communications Plan.  During my leadership term and since it was at the beginning of the project, I created the project work plan and schedule, the milestone schedule, the workbreakdown structure, and a standard data collection tool that was used by all team members during each person's data collection and assessment activities for the project.  Below are comments from the project sponsor and see attached pdfs:

Hi ELDP Team,

Congratulations on your graduation from the Department's Executive Leadership Development Program!  I was able to sit in on part of the graduation ceremony this morning, including Tony's remarks (great speech, by the way) and am very proud and honored to have had the opportunity to work with you over the past several months on the communications project.  I hope you found the program rewarding and that you're out celebrating all your accomplishments.

I know Mary Trupo, ITA's new Public Affairs Director, has a copy of your work and plans to incorporate it in to a communications plan for ITA, so kudos again!

I hope we can continue to stay in touch!

Best regards,
Tu-Trang


**Customer Service**

Both projects required extensive collaboration, consultation, and interaction with the customer starting with identification of need and defining the requirements to biweekly meetings to update sponsor on the progress of the project.  Each project required a delicate management of the customer expectations guided by the organization culture and values, some which are different from the Census Bureau.  I had to navigate a very sensitive position in interacting with ITA management and senior employees being from outside that agency.  I could not go in projecting an attitude that I knew what it is they wanted but went in with the openness and an attitude of inquiry as to what it was that was needed.

Performance Evaluation: Anthony W. Perry

Duty Station: US Department of Commerce/MBDA
1401 Constitution Avenue NW
Room 5071
Washington, DC 20230

Assignment: Office of Native American Business Development, Trade Promotion,
and Tourism

Dates: September 2008-January 2009

Area One: Leadership                                                          Rating: 4

Comments: This area was difficult to evaluate as a 5 <u>only</u> because there were limited
opportunities to assess Mr. Perry in this area. He had no staff. He had few resources to use.
However, in all areas where I was able to observe his interaction with management, with
other employees out side of our area, and with the other members of our small agency, I
saw that he had developed an excellent rapport. We met with industry leaders and the
political leadership with the task of trying to gain their support for the Office of Native
American Business Development, Trade Promotion, and Tourism.

In those situations, I observed that Mr. Perry clearly demonstrates those characteristics that
many "leaders" poses. He spoke clearly and influentially about our mission. He understood
that many federal agencies and industry leaders were confused and uncertain about the role
of the Native Americans in business. He provided opportunities for all sides to express their
views. His sincere and intelligent approach when working with these groups was needed as
we progressed in our tasks.

As a final activity, we were able to convince the White House Intergovernmental Office with
our Commerce support to make a first visit to Oklahoma to meet with Indian leaders. Mr.
Perry worked with the White House and our leadership to convince and direct this very
successful activity to a good conclusion. It would not have happened without his hard,
intelligent behind the scenes work. He took the initiative and worked hard to insure the
success of this project.

Mr. Perry has a clearly defined code of ethics and understood where the office needed to go
and was willing to put in the time to make sure it happened. And it did. He helped change
the perspective of numerous federal officials and industry about Native American
businesses. To assist in changing others minds about issues is leadership that is valued.

Area Two: Project Management                                                 Rating: 5

Comments: Anthony W. Perry is a man for all projects. He has a developed many
competencies in this area that I found to be remarkable. One of our tasks was to write the
draft of a report to Congress. The report was overdue by 7 years. It had been ignored. The
request resurfaced after all those years and was suddenly a very "high" priority.

Kay Bills
202-550-9801                                                                 F17

As we all know, a report to Congress has many fathers but only one mother. That mother was the Office of Native American Business Development, Trade Promotion and Tourism. Mr. Perry came in to put some much needed structure to the project and get it cleared by the many, many officials who censor and rewrite everything.

The report had only two elements. One was to report on what the agencies (all federal agencies) had provided to support the Native Americans in the three areas of business development, promotion of international trade, and tourism activities. Unfortunately, the project had no recognized authority to query other agencies or staff or resources to draw on for the report. It was a challenge for Mr. Perry to work thorough these many logistics of space and authority. He did not falter in his    steps toward getting the authority and resources to do the project.

The second element to report was to identify barriers to Native American business development and make recommendations to Congress on legislation that could be enacted.

Into this lion's den, Anthony W. Perry came.

The bottom line is that the report did get finished and approved. That only happened because of the project management competencies demonstrated daily by Mr. Perry. There were hundreds of items and many individuals to bring together for the report. None had been done before.

Mr. Perry demonstrated ability to track and record and bring order to the chaos of the office. He gained the trust of the management to get the project cleared by the entire legal department and the Commerce Secretary.

One of the key elements stressed in the report was the unique sovereignty status of the tribes. As many things later evolved, the new administration used part of that work to define a new executive order addressing that very issue.

Summary:
Mr. Perry can be very proud of the work he did on behalf of the many Indian Nations. Perhaps, you can now see why I hold him in high esteem and believe his outstanding work on this project should be recognized in his ratings.

Kay Bills
Office of Native American Business Development, Trade Promotion, and Tourism
2005-2009

Kay Bills
202-550-9801

F18

*Pre-decisional Draft*                    *USG Use Only*                    *12/23/09*

Tony,

As per your request on December 17, 2009, with regard to me providing feedback as to your involvement in our Action Learning Project (ALP), please see the below write up of our work that I included in my end of program report. You could also attach a copy of our final report and presentation so that your supervisors can see the substance of our work product and explain what ITA leadership has since done with our project. It may also be worth pointing out to your supervisors that in addition to your critical involvement to our ALP team, you were also selected as our commencement speaker at the ELDP graduation.

All the best, Paul Morris

**Action Learning Assignment**

ITA works with American business to promote free and fair trade and as a result, communication, both within the bureau and to external stakeholders, is vital. Since communication is critical to a bureau focused on strengthening the U.S. economy through trade, a team of ELDP participants requested OPA's Acting Director Tu-Trang Phan and Acting Deputy Director Tim Truman to sponsor a study which would examine current ITA communications tools and mechanisms. The team was composed of eight participants with varied and diverse backgrounds from Commerce's fourth ELDP class. Michael Cook and Anthony Perry are employed by Census; Mr. Cook works in the Communications Directorate, while Mr. Perry's expertise is in information technology and project management. The rest of the team works in ITA: Paul Morris (Import Administration, Office of Trade Remedy Compliance); Xiaobing Feng (U.S. Commercial Service, Advocacy Center). The remaining four participants work in the Manufacturing and Services Division: Ellen Bohon (Office of Energy and the Environment), Pamela Green (Office of Financial Service Industries), Kit Rudd (Office of Transportation and Machinery) and Gerry Zapiain (Office of Health and Consumer Goods).

The team's work consisted of two parts: an assessment of current communications methods, and recommendations in the form of a strategic communications plan for ITA that served as a means for more efficient and effective outreach to American companies, increasing ITA's profile as a valuable resource to increase international trade which will preserve and create American jobs. The outcome of this Action Learning Assignment was a comprehensive strategic communications plan that enhanced coordination and communication across the four ITA units, as well as promoted ITA as *one*, unified organization to external stakeholders, especially the American business community. As a result of this project, the team was able to successfully contribute to ITA's future health and overall prosperity, while also enhancing our own individual skills and professional development through this Action Learning Assignment.

Tony:

While I feel uncomfortable "rating" your performance, what I can say is that it was great to work with you. You displayed the core ELDP competencies we were supposed to be working on:

1. Creativity and innovation: you came up with the matrix and the action plan we followed to develop a strategic communications plan for the International Trade Administration (ITA), something ITA has never had.

2. Conflict Management: You played the role of peacekeeper when strong differences of opinion arose, and you tried to find a middle ground so that we could get to consensus. When some members of the group were not carrying their weight, you recommended that they be paired with others who took a more hands-on approach.

3. Decisiveness: Your sound judgment helped us make well-informed decisions and your input coming from a sister bureau within Commerce helped us decide what policy recommendations we should make for ITA's plan

4. Influencing/Negotiating: With the group of 8 of us all at the GS-13 or 14 level it was sometimes difficult to be persuasive and gain cooperation, rather than just taking charge or just not participating. You always tried to keep us on track, making sure along the way that we had everyone's buy-in.

In some ways this was the hardest part of the ELDP program, because our success depended on each of us doing our part. But I think we managed it, and earned the thanks of the Acting Director for ITA's Office of Public Affairs. Your efforts helped make our work a success, and it was a pleasure to work with you.

Best wishes,
Pam Green

BRUCE J. TERRIS
CAROLYN SMITH PRAVLIK
KATHLEEN L. MILLIAN

LYNN E. CUNNINGHAM
Of Counsel

TERRIS, PRAVLIK & MILLIAN, LLP
1121 12TH STREET, N.W.
WASHINGTON, D.C. 20005-4632
(202) 682-2100
FAX 202-289-6795
tpm info@tpmlaw.com

MICHAEL G. SHAW
ELISABETH J. LYONS
ALICIA C. ALCORN
ZENIA SANCHEZ FUENTES
MICHELLE WEAVER
JANICE GORIN
ALEXANDER R. KARAM
JANE M. LIU*

*Not admitted D.C. Bar

June 8, 2009

VIA E-MAIL AND FIRST-CLASS MAIL
Susan E. Thomas
Chief, Program Implementation Division
Office of Civil Rights, Room 6012
United States Department of Commerce
Washington, D.C. 20230

Ronda Brown
Office of General Counsel

Barbara Toy
Office of Civil Rights
Client Services and Resolution Division

Re: *Perry v. Gutierrez,*
   EEO Complaint No. 08-63-00072

Dear Ms. Thomas, Ms. Brown, and Ms. Toy:

On February 27, 2009, we sent a settlement letter to Susan Thomas of the Department of Commerce (hereafter "the Agency"). The letter discussed the issues related to settlement and included an opening settlement proposal with five specific provisions. On March 10, 2009, Ronda Brown provided a very general oral counter proposal to Michael Shaw. Mr. Shaw rejected the counter-proposal, but requested a meeting so that a potential settlement could be discussed in person. Ms. Brown checked on whether the Agency would agree to a meeting and called Mr. Shaw back to say that a meeting could be arranged and that the agency wanted to do it through the formal ADR process, with the mediator to come from outside of the Agency. Mr. Shaw stated that there was a timeliness issue because of expected openings in GS-15 positions that could resolve the most important remedy that Mr. Perry seeks in his EEO complaint.

The mediation was held on June 3. The mediator had the representatives sign a form that, *inter alia,* stated:

I agree to enter into this mediation in good faith. I will sincerely attempt to resolve this dispute, agree to cooperate with the mediator assigned to this case, and give serious consideration to all suggestions made regarding development of a realistic solution to the problem(s).

*F21*

Susan E. Thomas, Ronda Brown, and Barbara Toy
June 8, 2009
Page 2

We write to state that the agency representatives showed a complete lack of good faith in their conduct during the mediation. Nevertheless, Mr. Perry still desires a chance to meet to discuss settlement with a different set of Agency representatives.

The Agency had two representatives at the meeting. The legal representative was Ingrid Falanga. She was totally unprepared for the mediation. She had never seen our settlement proposal and, apparently, did not even know that one existed. When shown the settlement letter, Ms. Falanga was unwilling to discuss the five proposed provisions in the letter. All that she would say was that Mr. Perry had already been given some training and supervision opportunities. She offered not a single suggestion as to what other relief the Agency would offer for purposes of settlement. Thus, she was unwilling to enter into any negotiation at all about settlement.

Patricia Musselman was a completely inappropriate representative since she had directly benefitted from the non-selections of Mr. Perry which are at the heart of Mr. Perry's complaint. We had previously stated that she would be inappropriate, but the Agency refused to provide a substitute. Since, in any mediation, it is up to the parties to name their own representatives, we had no recourse. During the mediation, Ms. Falanga stated that Ms. Musselman was the only representative who could have been there since it would be out of the question to have either of the next two persons above Ms. Musselman (the CIO and the head of the Agency). In our experience, in situations like that, a staff member of the higher officials would be designated to represent the agency at the mediation and to have the necessary authority for negotiating a settlement.

In any event, it became clear during the mediation that Ms. Musselman had no authority to negotiate the provisions of a settlement. It is unclear as to what the Agency saw as the purpose for having Ms. Musselman there.

Ms. Falanga stated that a settlement at the Agency can never include a promotion or placement in a position. The Agency could not include in any settlement a promotion because promotions have to be competitive. However, based on the experience of our firm, other federal agencies agree to promotions to settle EEO cases under appropriate circumstances. We request that the Agency provide a legal determination as to whether a promotion to a GS-15 position can be a part of a settlement and whether the Agency has ever settled EEO complaints by giving such promotions.

The Agency's actions were clearly in bad faith. We encourage you to consult the mediators at the mediation (Angela Corley (arosec47@hotmail.com) and Joyce Corley). They did their best to determine whether a good-faith negotiation could be conducted. It became as clear to them as to us that this was impossible. As a result, the mediation of the Shared Neutrals program, through which the mediation was conducted, simply wasted their time. Mr. Perry's attorneys spent hours of time preparing for, traveling to, and attending the mediation. Mr. Perry has to pay our fees for this time out of his own pocket. That is in contrast to the time spent by Ms. Falanga and Ms. Musselman, whose time is a part of their work. We submit that the Agency's actions relating to the mediation further show the unfairness of the Agency's treatment of Mr. Perry.

Susan E. Thomas, Ronda Brown, and Barbara Toy
June 8, 2009
Page 3

Please respond to Bruce Terris at the address above or at bterris@tpmlaw.com.

Sincerely,

/s/ Michael G. Shaw

Bruce J. Terris
Michael G. Shaw
*Counsel for Anthony W. Perry*

Anthony W. Perry

        Appellant

    v.

Department of Commerce

        Agency


MSPB Docket No.:      DC-0752-12-0486-B1 and DC-0752-12-0487-B1

**List of Facts**

1. By Title VII laws and EEOC policy, the Agency drafted August 22, 2011 nondisclosure and waiver of Title VII Rights agreement is unlawful, void and unenforceable as against public policy, violates annual appropriations law, and is in violation of EEOC Policy Guidance on Non-waivable Rights. see Equal Employment Opportunity Commission enforced statutes (Enforcement Guidance, EEOC Notice No. 915.002 (April 10, 1997), available at http://www.eeoc.gov/policy/docs/waiver.html.  This EEOC policy rules that these type of nondisclosure agreement are per se retaliation and discrimination and violate anti-retaliation statutes in Title VII and other discrimination laws.

2. The template of the August 22, 2011 nondisclosure agreement coerced on Appellant is nearly identical to the template used to coerce IG employees into nondisclosure agreements at the Department of Commerce, Office of Inspector General.

3. In U.S. Office of Special Counsel Ex Rel John Does 1-4 v. Department of Commerce, Office of Inspector General has used the same type of nondisclosure agreement in fact 1 (exhibit) to prevent employees from making protected disclosures and appear designed to hide the existence, nature, and terms of the unlawful agreement from OSC, among other entities.  Appellant is intended to be subjected to the same effect as the unlawful nondisclosure agreement served on Appellant in the instant case is a "copycat" unlawful nondisclosure agreement.

4. Instead of using fraudulent performance evaluations to execute and coerce the unlawful nondisclosure agreement on Appellant as was done at Commerce IG because Appellant contested each of approximately five six unfair performance evaluations since 2004 and pending before the EEOC at the time of the "unlawful scheme" (as described by OSC v Department of Commerce IG), the Agency pulled Appellant's badge scans and charged Appellant with misconduct of getting paid for time not worked to coerce Appellant into the same kind of unlawful nondisclosure agreement used at the Department of

1

Commerce, Office of the IG, even though Agency was aware of Appellant's disability related accommodations provided by his supervisors since 2007.

5. Appellant has a bona fide disability and underwent a total hip replacement on February 27, 2012.

6. Appellant produced email records he sent to first and second line supervisors and the Management Official, Brian E. McGrath, providing status on assignments that showed more than three times the number of hours supervisor allowed Appellant to work without pay or overtime pay than the hours the Agency claimed Appellant was paid for and did not work.

7. Smokers, fitness center users and runners are allowed unlimited time away from their work areas and outside of the building daily without penalty or threat of termination. The Agency refused to respond to a lawful discovery request asking for daily IT employee badge scans over the same period Appellant's electronic building badge scans were pulled and used to take adverse actions against Appellant.

8. In March, April and May, 2011, Appellant was in the process of negotiating a settlement of pending race and age discrimination, retaliation, hostile work environment, repeated unfair performance evaluations, unfair performance awards, non-selection and failure to promote among other prohibited personnel practices claims before the EEOC Baltimore Field Office and awaiting a decision on Appellant's Opposition to the Agency's Motion to Dismiss Complaint Nos.  531-201000351X / Agency Complaint Nos. 09-63-01027, 10-63-00197 & 11-63-00080, EEOC Docket No0120111784 / Agency Case No. 10-63-02671.

9. On July 6, 2011, in a continuing dialogue with the Census Bureau Director, Appellant sent an email to the Director complaining about continuing race and age discrimination against Appellant and other African American employees in the Information Technology Directorate (IAF Tab 1, Subtab 4, pg. 22) which is a nexus to the Agency removal action.

10. On July 7, 2011 Darren Gutschow, an Agency employee who was NOT nor had ever been supervisor of Appellant, authored and had served on me by Stacy Chalmers, HRD, a Proposal to Remove (IAF Tab 1, Subtab 1, pg. 1) and is the basis for wrongful coercion into the nondisclosure agreement dated August 22, 2011.  Gutschow was totally and completely unaware of informal accommodations that had been made by past and current supervisor Dale R. Reed.

11. This removal action is, and as is documented in EEOC Policy Guidance on Non-waivable Rights and OSC position in OSC Ex Rel John Does v Commerce IG, retaliation and continued discrimination and one of several continuing prohibited personnel practices documented in the nondisclosure agreement by the Agency motivated by race, age, gender and disability discrimination, complaints of non-selection, failure to promote,

2

hostile work environment and failure to reassign out of a hostile work environment, retaliation and reprisal for prior pending EEOC/EEO complaints.

12. Census Bureau management officials wrongfully coerced Appellant into entering into the August 22, 2011 unlawful nondisclosure agreement that restrained Appellant from making protected disclosures and causing Appellant to withdraw MA-11-2619 dated 5/24/2011 a pending claim of prohibited personnel practices before the OSC or to Congress, the media and the EEOC, waive non-waivable rights in violation of law and EEOC policy, be constructively discharged, constructively suspended, and reassignment into a non-supervisory position and otherwise dictated the complete terms and conditions of the Appellant's continued employment with the U.S. Census Bureau.

13. The August 22, 2011 nondisclosure agreement constitutes a significant change in Appellant's working conditions (U.S. Office of Special Counsel Ex Rel. John Does 1-4 v. Department of Commerce, Office of Inspector General, November 26, 2012) and is a prohibited personnel practice in violation of 5 U.S.C. 2302.

14. The August 22, 2011 nondisclosure agreement interfered with Appellant's protected right to file a charge, or participate in any manner in an investigation, hearing, or proceeding under the laws enforced by EEOC and violates EEOC Policy Guidance on Non-Waivable Rights.  The nondisclosure agreement coerced the Appellant to waive non-waivable rights and otherwise withdraw EEOC complaints already pending before the EEOC Baltimore Field Office in violation of EEOC Policy Guidance on Non-Waivable Rights of Title VII of the Civil Rights Act, Rehabilitation Act, Americans with Disability Act, and the Age Discrimination in Employment Act.  The nondisclosure agreement states Complainant agrees to: "withdraw EEOC Case No. 531-201000351X / Agency Complaint Nos. 09-63-01027, 10-63-00197 & 11-63-00080, EEOC Docket No0120111784 / Agency Case No. 10-63-02671 with no rights to raise these issues again… and that Complainant agrees to waive, release, and forever discharge the Agency, its officers, agents, employees, and representatives (in their official and/or personal capacities) from any claims, demands, or causes of action, which Complainant has or may have, arising from his employment, including issues raised in (above stated EEOC/Agency claims)…and further states "Complainant waives any and all rights and claims arising from Complainant's employment under the Aged Discrimination in Employment Act…, the Rehabilitation Act…, and/or Title VII of the Civil Rights Act…; and further states "this release includes but is not limited to a release of any right to administrative, judicial, or congressional relief, or any other type of relief, or any claim to back pay, attorneys' fees and costs, or other type of compensation…"

15. Nondisclosure or "gag" agreement that waive race, age, or other Title VII rights is deemed per se retaliation under 5 U.S.C. 2302 (b8) and/ or (b9) and as discussed in "Enforcement Guidance on non-waivable employee rights under Equal Employment

3

Opportunity Commission enforced statutes (Enforcement Guidance, EEOC Notice No. 915.002 (April 10, 1997), available at http://www.eeoc.gov/policy/docs/waiver.html.

16. EEOC maintains that this type of nondisclosure agreement is void and unenforceable as against public policy in EEOC Notice 915.002 (April 10, 1997) (EEOC v. Astra U.S.A., 94 F.3d 738, 744-45 (1st Cir 1996))

17. EEOC Administrative Judge erred and failed to rule in accordance with the Title VII anti-discrimination laws and EEOC Enforcement Guidance, EEOC No. 915.002 on Agency's unlawful nondisclosure and waiver of civil rights agreement

18. The Agency Representative and Attorney Adam Chandler committed a prohibited personnel practice by threatening to take a prohibited personnel action and retaliation against Appellant when he included in the footnote of the Agency's response to the Acknowledgement Order stating that if the Appellant was successful in having the nondisclosure agreement vitiated that Appellant would be facing removal from the federal service upon return.

19. This type of nondisclosure agreement is unenforceable and violates annual appropriations laws if it does not contain express language to inform employees that the agreement's restrictions do not supersede, conflict with, or otherwise alter an employee's rights under section 2302 (b)(8) and 7211 of title 5 U.S.C., P.L. 112-74 and 112-75

20. The instant unlawful nondisclosure agreement is retaliation against Appellant for protected activity in the form of prior and current EEOC and Agency EEO race, disability, gender and age discrimination, retaliation and reprisal, failure to promote, failure to reassign, failure to accommodate, repeated unfair performance evaluations and awards, and hostile work environment among other claims.

21. The nondisclosure agreement prevented employee from exercising Title VII rights and contains strict confidentiality provisions providing that "this agreement shall not be used, cited, or relied upon by any party in connection with any other judicial or administrative procedure".  Additionally, the nondisclosure agreement further states that " the parties agree to keep the nature and terms of this Agreement confidential. The terms of the Agreement may not be disclosed to any person or entity beyond the persons signing below, except to Complainant's spouse as applicable, as required by law, as necessary to implement the terms of the Agreement, or as ordered by a court or administrative body of competent jurisdiction.

22. The June 7, 2011 Proposal to Remove, the August 22, 2011 nondisclosure agreement and the Deciding Official's decision is based on fraud, coercion, duress, misinformation and misrepresentation of the facts and is a prohibited personnel practice and per se retaliation which threatened to terminate Appellant in exchange for forfeiture of pending EEOC claims, ending employment with the Agency, never working for the

4

Agency again, and cleansing of employee file by using unsubstantiated charges of receiving pay for time not worked in exchange for the Agency dictated retirement, 30-day suspension, reassignment, and prohibition from working at any Commerce Agency. The charge of failing to follow supervisory directive is the result of retaliation and reprisal and is the result of a continuing prohibited personnel practice which removed Appellant from the position of Special Assistant to the GS-15 Division Chief, LTSO in November 2006 and placed him under GS-14 Dale Reed, Branch Chief and who intensely pursued creating a hostile work environment as documented in the prior pending EEOC/EEO claims giving unfair evaluations and denying useful training that was provided to others.

23. The Agency nondisclosure settlement agreement is invalid and void and unenforceable as against public policy in accordance with EEOC Policy Guidance on waivers and OSC brief in John Does 1-4 v Department of Commerce Office of Inspector General and must be vitiated in its entirety and Appellant returned to status quo ante.

24. The constructive suspension is the result of harmful procedural error and failure to consider the Douglas Factors if indeed misconduct occurred, prohibited personnel action, retaliation and race, age, and disability discrimination with the Agency rescinding accommodations it had made prior for Appellant's disabling condition.   Appellant was awaiting a decision on pending race and age discrimination, prohibited personnel practices and intentional retaliatory discrimination among other complaints before the EEOC Baltimore Field Office in EEOC/Agency Complaint Nos. 531-2010-00351X; EEOC Docket Nos. 09-63-01027, 10-63-00197, 11-63-00080, 07-63-00080, 07-63-00145 and 10-63-02671.

25. The Management Official and Management Representative initiating and directing the June 7, 2011 Proposal to Remove Appellant from the federal service and the unlawful nondisclosure agreement are the same agency officials that were in negotiations with Appellant to "settle" EEOC/Agency Complaint Nos. identified in the August 22, 2011 unlawful nondisclosure agreement.

26. Between 1997 and 2003, the Agency discriminated on the basis of race and age, disparate treatment with disparate impact and committed a prohibited personnel practice by changing Appellant's Supervisory Code 2 status to Supervisor Code 4 to prevent Appellant from competing fairly for planned GS-15 vacancies that provided advantage to Patricia Musselman and Jason Schaufele for GS-15 positions in 2007 and created a substantial change in the terms and conditions of Appellant's employment. These positions were available in August 2002 (IAF) and held vacant until Ms. Musselman and Mr. Schaufele reached the age of 40.  This change allowed the Agency Office of Civil Rights to rule that Appellant was not similarly situated than two barely 40 year-old Caucasian employees with no significant accomplishments and entry level

5

academic credentials.  Appellant was approximately 46 years old at the time the positions were initially created and vacant. (see evidence in Appellant's Opposition to Agency Motion for Summary to Dismiss without a Hearing (IAF)

27. In November 2001, Appellant competed on merit and was competitively promoted to the position of GS-14 Special Assistant to the Division Chief, LTSO.

28. In 2006 under the disguise of a division reorganization and without cause, Appellant was removed from the position of Special Assistant to the Division Chief, LTSO (Division Chief is a supervisory GS-15) and reassigned as an Information Technology Specialist reporting to Dale R. Reed, GS-14 Branch Chief Business Planning Branch creating a substantial change in the terms and conditions of Appellant's employment which continued to the time of the instant adverse actions and discrimination (ROI 08-63-00080 and other EEO ROIs referenced in the initial appeal file and petition for review exhibit Agency response letter to EEOC.

29. March 31, 20011 email communication from Agency Management Representative Ronda J. Brown that she had communicated my settlement proposal for pending consolidated EEOC actions in Item 1 above before the EEOC AJ to the Management Official Brian E. McGrath, Associate Director for Information Technology and Chief Information Officer who is the same Management Official who authorized and initiated this constructive removal and suspension action used to coerce the forfeiture of the EEOC claims that were pending before the EEOC AJ at the Baltimore Field Office at the time I was served the Proposed Removal (IAF Tab 6, Subtab 4, pg. 21).

30. April 5, 2011 Appellant certified letter to the EEOC "Preparation for Settlement Discussion" of pending EEOC claims (IAF Settlement Discussion pg 1-3).

31. On May 19, 2011 Appellant certified letter to EEOC "Motion in objection to agency motion to dismiss" pending EEOC claims in Item 1 disputing and documenting every material fact including discovery facts of prima facie race and age discrimination, prohibited personnel practices and retaliation when these instant adverse actions and discrimination were served on Appellant.(IAF Tab 6, Subtab 1, pg. 1)

32. Medical Records and formal Request for a Reasonable Accommodation and pending approval on file with the agency Disability Program Office prior to Appellant receiving the Agency drafted unlawful nondisclosure settlement document or the Deciding Official's decision (AF Tab 4 Subtab 1-19 and Supporting Documents pg 3-4)).

33. Appellant's supervisor of record, Dale Reed stated that he did not know what a formal Reasonable Accommodation was and the Agency did not dispute this fact in the record (IAF Tab 2 Subta1).

34. On July 22, 2011, Appellant responded to the Deciding Official prior to Appellant being able to collect evidence and investigate the charges fully due to time constraints imposed on Appellant, duress and the threat of termination and therefore applied the

6

reasonable person standard and completely and totally relied on every Agency statement in reference to this matter (IAF Tab 2, Subtab 1, pg. 1).

35. On August 22, 2011 while waiting for the Deciding Official's reply to Appellant's response to the charges as the procedure was defined by the June 7, 2011 Proposed Removal, the Agency served on Appellant an unlawful EEOC "Nondisclosure" Settlement Agreement, which included a nondisclosure restriction and an unlawful waiver of current and future Title VII rights, Age Discrimination claims, and Disability claims in violation of EEOC Policy Guidance on Non-waivable Rights and which explicitly dictated the terms and conditions of the Appellant's continued employment with the Agency and required a 30-day suspension, retirement no later than Sept. 4, 2012, reassignment into a Non-Supervisory IT Specialist position, forbade to ever work for the Department of Commerce, and the forfeiture of prior pending EEOC claims already before an EEOC AJ in the Baltimore EEOC Field Office prior to the Deciding Official's decision and in direct contradiction to the Agency procedure stated in the Proposed Removal (IAF Tab 1, Subtab 2, pg. 14).

36. Each stated action in the unlawful nondisclosure agreement is a prohibited personnel practice, per se retaliation and continued discrimination on the basis already stated in this and prior EEO/EEOC complaints.

37. On August 26, 2011, the Deciding Official issued a decision upholding the charges but decided on a 30-day suspension without considering Appellant's disability claim and pending approval by the Agency Disability Program Office, the informal flexible work schedule accommodation by supervisor, 30 minute legal daily break and supervisor approved daily one hour lunch break (IRF Tab 5, Subtab 1-20) and other documents in possession of the Agency), the Douglas Factors if the alleged conduct occurred. (Tab 5 Subtab 1-20).  The Deciding Official's decision document does not include any analysis of the facts in accordance with the Douglas Factors nor any other rule, regulation, statue or guideline and therefore her decision is in total disregard for Appellant's disability and prior accommodations that had been made by supervisor of record, Dale Reed.

38. The Agency failed to comply with the Acknowledgement Order requiring the submission of all evidence related to the charges including the Deciding Official's notes and basis for upholding the charges.

39. The Agency has failed to reply to lawful discovery requests that would show the extent of the discriminatory and retaliatory animus toward Appellant used to give lesser qualified Caucasian employees promotion to GS-15 and employment preferences not on merit.

40. Documents provided by Appellant in the Initial Appeal File show more than 158 hours of time Appellant worked for which he was not paid as Appellant had been allowed a flexible work schedule primarily because of his documented disability.  The Agency

7

EXHIBIT 1 Pg. JA371

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 318 of 424
USCA Case #14-1155     Document #1537564     Filed: 02/13/2015     Page 373 of 596

wrongfully withdrew an accommodation that had been provided to Appellant for at least the prior four years.  Appellant had worked thousands of hours over his career for which he was not paid and took two years of leave without pay.  It is nonsensical employee was looking to make personal gain from a few hours by requesting flexible work schedule of which the Management Official, Deciding Official and Darren Gutschow was not aware but took adverse actions just the same.

41. All time and attendance had been approved by Appellant's first and second line supervisors.

42. At the time I was served with the proposed removal, Appellant was waiting for an explanation from his supervisor Dale R. Reed as to why and who was requiring GS-14 Supervisory IT employees to start signing in.  As a prior GS-14 Supervisory employee (not sure because of the unauthorized changes in Appellant's supervisory code and prohibited personnel practices that were pending before the EEOC) who frequently was delegated acting supervisory authority, I was waiting for a response to my question. Appellant had never been required to sign in during his entire career to the best of recollection.  My placement under Patricia Musselman and Dale Reed were prohibited personnel practices as I was removed from the position of Special Assistant to the Division Chief, LTSO (GS-15 supervisor) and reassigned under GS-14 Musselman and then GS-14 Reed that was pending adjudication before the EEOC when the Agency served me the subject unlawful EEOC nondisclosure agreement on August 22, 2011.

43. The Agency Management Official repeatedly ignored my requests to be reassigned out of the LTSO as both my supervisor Dale Reed and Division Chief Patricia Musselman had been named Responsible Management Officials in the EEOC claims pending in the Baltimore Field Office and had continued to create a hostile working environment that started with Thomas Meerholz.  Both Ms. Musselman and Mr. Reed were non-competitively placed into the supervisory positions for which I was denied the opportunity to compete in violation of merit system principles and are prohibited personnel practices.

44. Agency repeatedly denied effective education and training in violation of 5 U.S.C 2301(7) since 2003, 2006, and 2010 when it denied Project Management Institute (PMI) Project Management training certification and other training for Appellant while providing Microsoft and PMI certification training for other IT Directorate employees.

45. Agency management and supervisor Dale Reed repeatedly gave Appellant intentionally unfair performance evaluations as far back as 2004 and even after completing two 120-day detail assignments as part of Appellant's 18-month Executive Leadership Development training in 2009 and are prohibited personnel practices with a basis in race and age discrimination as shown in statistics in Appellant's Opposition to Agency

8

Motion for Summary Judgment to Dismiss the prior pending EEOC claims caused to be waived and dissolved by the unlawful nondisclosure agreement.

46. John Cunningham and Agency Human Resources Division management unilaterally rejected a signed and legally approved Alternative Dispute Resolution agreement to revise Appellants 2009 or 2010 performance rating in yet another prohibited personnel practice denying rightfully earned performance reward.

## Argument

Unlawful Nondisclosure Agreement

The Agency constructively discharged Appellant from the federal service, constructively suspended me for 30-days and took other prohibited personnel actions against Appellant stating his terms and conditions for continued federal employment by way of an August 22, 2011 invalid and unlawful nondisclosure agreement as defined by EEOC Policy Guidance on Non-waivable Rights and the brief before MSPB of OSC Ex. Rel John Does (1-4) v. Department of Commerce, Office of the Inspector General.  Appellant totally relied on Agency charges, information and documented text in the nondisclosure agreement.  These Agency actions are in violation of 5 U.S.C. 2302 (b)(1)(A)(B)(C)(D), (b)(2)(A)(B), (b)(4), (b)(8)(i), (b)(9), (b)(10), (b)(12), and (b)(13).  The prima facie case for race, age, and gender discrimination in the IT Directorate is described in Appellant's Opposition to Agency Motion for Summary Judgment without a Hearing using statistics gathered from EEO discovery and are part of this action as the Agency coerced appellant to unlawfully waive un-waivable rights.

The Agency intentionally deceived appellant as to the validity of the nondisclosure agreement and the charges of receipt of pay for time not worked.  Agency committed disability discrimination by withdrawing accommodations that had been provided to Appellant for approximately three years prior starting in approximately 2007 and in violation of 42 U.S.C 12112(a), (b)(5)(A)(. Appellant was fully able to perform assignments given with the accommodations that had been provided and the formal accommodations that had been requested prior to any decision by Agency management officials in the instant case (Jessie B. Crutch v. United States Postal Service, (May 222, 2013).  In the instant case, Brian McGrath and Agency senior management directed Darren Gutschow, an employee who was not Appellant's supervisor, to propose my removal from the federal in total disregard for Appellant's disabling condition, the medical records of which were available in the Disability Program Office(IAF) and therefore intentionally failed to provide Appellant minimum due process (Pledger v. Department of the Navy, 50 M.S.P.R. 325, 330-31 (1991).  This action is in violation of 5 U.S.C. 2302 (b)(1)(D) and specifically the Rehabilitation Act of 1973 and the ADA Amendments Act of

9

2008 (ADAAA), as well as 2302 (b)(1)(A)(B), (b)(2)(A)(B), (b)(4), (b)(8)(i), (b)(9), and (b)(12) constituting continued race and age discrimination, retaliation and reprisal, non-selection, failure to promote, non-competitive promotions of younger less experienced Caucasian employees, and the desire to dissolve prior and pending EEOC claims in the Baltimore Field Office as stated in email response to Appellant from Management official Brian E. McGrath (IAF) stating his pleasure with the dissolution of those pending claims before the EEOC.

The reasonable person standard seems to allow one to conclude that if Appellant was guilty of misconduct, the charges of misconduct would have been filed against Appellant and defended on their merit.  Time and attendance records the Agency used starting in 2010 up through 2011 (see June 7, 2011 Proposal to Remove (IAF)) had already been approved and certified by first and second line supervisors and neither approached Appellant to discuss what might appear to be a discrepancy to someone who was not Appellant's supervisor.  Darren Gutschow committed a prohibited personnel practice and discriminated against Appellant on the basis of a known and visibly obvious disability as Appellant at times had to use a cane to walk in his proposal to remove appellant from the federal service which intended to wrongfully coerce employee to enter into the nondisclosure agreement dated August 22, 2011.  The Agency chose to use coercion, duress, deceit, misinformation and misrepresentation into an agreement for unsubstantiated charges that caused Appellant to waive Title VII and other anti-discrimination rights and then hide the agreement by nondisclosure is invalid, involuntary, unlawful, and the result of fraud and is unenforceable and void as against public policy (Enforcement Guidance, EEOC No. 915.002); (Sargent v Department of Health and Human Services, 229 F.3d 1088, 1091 (Fed Cir. 2000); Potter v. Department of Veterans Affairs, 111 M.S.P.R. 374, (2009); Candelaria v. U.S. Postal Service, 31 M.S.P.R 412, 413 (1986).

Appellant's supervisory personnel was aware of Appellant's prior verbally approved flexible work schedule which was an accommodation for his disability.

As in Scharf v. U.S. Air Force,  "with freedom of choice as the guiding principle, it has been held that the element of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action, see, e.g., McGucken v. United States, 407 F.2d 1349, 1351, 187 Ct.Cl. 284 (Ct.Cl.), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); (2) an employee unsuccessfully tries to withdraw his resignation before its effective date, see Cunningham v. United States, 423 F.2d 1379, 1384-85, 191 Ct.Cl. 471 (Ct.Cl.1970); (3) an employee submits a resignation under time pressure, see Perlman, 490 F.2d at 932-33; or (4) an employee fails to understand the situation due to mental incompetence, see Manzi v. United States, 198 Ct.Cl. 489, 492 (1972). Several other cases have also indicated that a resignation will be held involuntary if obtained by agency misrepresentation or deception. See Taylor v. United

10

States, 591 F.2d 688, 692, 219 Ct.Cl. 86 (Ct.Cl.1979); Christie v. United States, 518 F.2d 584, 588, 207 Ct.Cl. 333 (Ct.Cl.1975).

An employee is not required to show an intent to deceive on the part of the agency in order for his retirement to be held involuntary. Rather, it is sufficient if the employee shows that a reasonable person would have been misled by the agency's statements.  We have in the past applied an objective test in situations involving duress or coercion, see Christie, 518 F.2d at 587. We believe that an objective test is equally applicable to situations involving misrepresentations or deception. Applying this test, the court will neither inquire into the subjective perceptions of the employee, see Taylor, 591 F.2d at 692, nor the subjective intentions of the agency

In McGucken v. United States, supra, this court declared that in determining whether an employee's resignation was submitted under duress, the three elements necessary to show duress are (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party.  In addition, the Agency benefited from its manufactured duress as it extracted the forfeiture of pending EEOC claims and Appellant's retirement and constructive removal from the federal service from its coercion into an unlawful nondisclosure agreement. The acts on the part of the Agency created the duress under which Appellant was forced to accept its proposed action.  No other alternative was available.  As in Fruhauf, "duress involves a step beyond mere illegality and implies that a person has been unlawfully constrained or compelled by another to perform an act under circumstances which prevent the exercise of free will (Fruhauf Southwest Garment Co v. United States).

The Appellant involuntarily accepted all of the terms and conditions of the Agency as is stated in the unlawful nondisclosure agreement dated August 22, 2011, and provided no other alternative to Appellant, and the circumstances were the result of ongoing coercive acts of the Agency.  (SAtaats v. U.S. Postal Service, 99 F.3d 1120, 1124 (Fed Cir. 1996).  Already stated and pending appeal were the repeated unfair performance evaluations of supervisor Dale Reed and the unilateral rejection of a legally approved Alternative Dispute Resolution settlement for the 2009 performance evaluation challenge by Human Resources manager John Cunningham; repeated denial of critical technical training going back to 2003 and continuing into 2010 with a denial of Project Management Bootcamp offered to other employees in 2010 and denied Appellant although Appellant originally requested the same training in 2003 from Thomas Meerholz, Chief LTSO.  These particular training denials were intended to make Appellant less able to compete for GS-15 positions in the Agency and violates 5 U.S.C.

In Perlman v. United States, "whether an action is voluntary or involuntary is determined not by the form of the action, but by the circumstances that produced it.  [Federal Personnel Manual

11

Supp. 752-1, subchapter S1-2a(1).]  This court has consistently examined the surrounding circumstances to test the ability of the employee to exercise free choice. We have held, for instance, that the doctrine of exhaustion of administrative remedies has no application when the agency involved had defaulted in its obligation toward the employee by not informing him of his rights or in affirmatively misleading him to believe that he had no rights. See Ainsworth v. United States, 180 Ct.Cl. 166, 172 (1967), and the recent decision in Manzi v. United States, 198 Ct.Cl. 489, 495 (1972)."

In Shultz v. U.S. Navy, "if an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive. Cosby v. United States, 189 Ct.Cl. 528, 417 F.2d 1345, 1355 (1969); Autera v. United States, 182 Ct.Cl. 495, 389 F.2d 815, 817 (1968); Rich v. Mitchell, 273 F.2d 78, 79 (D.C.Cir.1959), cert. denied, 368 U.S. 854 , 82 S.Ct. 91, 7 L.Ed.2d 52 (1961)".

The Agency had email communications from Appellant at times outside of the time periods identified by the specifications in its possession and was aware of Appellant's disability and prior accommodations and flexible work schedule.  Additionally, the Agency had orchestrated the hostile environment having placed Appellant under Dale Reed in repeated prohibited personnel actions moving me from reporting to a GS-15 Division Chief in 2006 to GS-14 Reed without cause.  This prohibited practice and the other stated discriminatory actions was before the EEOC Baltimore Field Office at the time the Agency charged Appellant with misconduct and coerced him to enter an unlawful nondisclosure agreement which by law and policy is invalid.

The nondisclosure agreement contains other deception, misrepresentations, and misinformation.

Retaliation

Prima facie case for retaliation is made in prior pending EEOC / Agency actions.  In this instant case, proof of retaliatory animus by the Agency toward Appellant is shown with clarity.

There is a non-mistakable nexus that exists between prior pending EEO and EEOC complaints and the June 6, 2011 letter to the Director of the U.S. Census Bureau complaining of continued race and age discrimination, retaliation, reprisal, non-selection and failure to promote.

The Agency wanted those pending EEOC / Agency actions disposed of as is stated in an email response to Appellant from the Management Official orchestrating Appellant's constructive removal from the federal service.  In that email response the Management Official stated his pleasure with the disposal of Appellant's pending EEOC / Agency EEO complaints (IAF).

12

Responsible Management Officials

The following are the management officials responsible for intentional retaliatory discrimination this evil and egregious discriminatory and retaliatory acts it took with malice and reckless disregard for Appellant's federally protected rights including Title VII Rights that had been violated for nearly ten years and was on appeal before AJ Mary Palmer at the EEOC Baltimore Field Office before she dismissed the pending claims in violation of EEOC Enforcement Guidance on Non-waivable Rights.  The management officials being held accountable in their personal and professional capacities are:

1. Thomas Meerholz, former Division Chief removed Appellant from Special Assistant to the Division Chief, repeated denial of training, race and age discrimination, retaliation and other prohibited personnel practices documented in prior pending EEOC claims dissolved/waived by the unlawful nondisclosure agreement acted with the most egregious malice and reckless disregard for Appellant's protected rights.
2. Thomas Messenbourg, Deputy Director and Chief Operating Officer for malice and reckless disregard
3. Brian E. McGrath, Associate Director for Information Technology/CIO and Management Official, orchestrated and signatory to unlawful nondisclosure agreement acting with egregious malice and reckless disregard for Appellant's protected rights.
4. Darren Gutschow, authored proposal to remove and prohibited personnel practice acting with malice and reckless disregard for Appellant's protected rights.
5. Ted Johnson, signatory to unlawful nondisclosure agreement and prohibited personnel practice acting with reckless disregard for Appellant's protected rights.
6. Ronda J. Brown, Attorney and Management Representative, signatory of unlawful nondisclosure agreement acting with egregious malice and reckless disregard for Appellant's protected rights
7. Adam Chandler, Attorney and Agency Rep. (for threatening termination of Appellant upon return in Agency response to Acknowledgement Order if vitiation of agreement is successful, a prohibited personnel practice with malice and reckless disregard for Appellant's protected rights.
8. John Cunningham, Human Resources Branch Chief for extreme malice and reckless disregard of Appellant's protected rights
9. Brian DiGiacomo, signatory to unlawful nondisclosure agreement acting with reckless disregard for Appellant's protected rights.
10. Roy Castro, signatory to unlawful nondisclosure agreement and acting with malice and reckless disregard for Appellant's protected rights.
11. Benjamin Felder, negotiated the coerced settlement with Appellant's representative acting with disregard for Appellant's protected rights.
12. Stacy Chalmers, attempted to coerce Terryne Murphy, Deciding Official to terminate Appellant knowing the charged misconduct was fraudulent and acting with egregious malice and reckless disregard for Appellant's protected rights.

13

13. Patricia Musselman, 2nd line supervisor and prior named RMO, failed to inform Appellant that accommodations previously provided to Appellant were no longer being provided and acting with malice and reckless disregard for Appellant's protected rights.

14. Dale R. Reed, 1st line supervisor and prior named RMO, failed to inform Appellant that accommodations previously provided were no longer being provided and acting with egregious malice and reckless disregard for Appellant's protected rights.

Compensatory and Punitive Damages

All allowable damages are sought in this instant action as the Appellant was voluntarily negotiating a bona fide settlement agreement on the prior pending EEOC/Agency claims "disposed" of as a result of the Agency's preference to pursue an unlawful nondisclosure agreement subject of the instant case that is invalid, unlawful and void as unenforceable against public policy.

Actual compensatory damages to include future compensatory damages, TSP contributions, taxes levied for TSP distribution, guaranteed student loan capitalized interest, 2nd mortgage/line of credit, personal loan, boat loan default, and non-pecuniary damages are sought in this matter.

Appellant requests retroactive promotion to GS-15 Supervisory Information Technology Specialist at the division chief level to 2003 or 2004, back pay, front pay, loss awards, revised awards for unfair performance evaluations, loss of future earning capability, credit standing, debt created as a direct result of Agency discriminatory and retaliatory actions, emotional pain and suffering, stress, depression, loss of career status and standing, mental anguish, loss of enjoyment of life, humiliation, withdrawal from longtime social and community involvement and fraternal activities, legal fees, and any other allowable damages for the nearly ten (10) years of intentional discriminatory actions targeted at me to prevent me from opportunities freely provided to younger Caucasian workers as a matter of operational procedure (see IAF, Non-competitive promotions and Acting Branch and Division Chief assignments denied Appellant), change of supervisory code and removal from Special Assistant to the Division Chief in 2006 which facilitated the ongoing discriminatory and retaliatory environment in which Appellant was confined.

No amount of money or corrective action taken ten years later can fix the loss suffered already and future losses that will be incurred by Appellant as the ten years are gone for good. Appellant went to college to be able to earn a living and take care of his family. The work record of Appellant is flawless and is submitted as an exhibit to the petition for review. Agency management prohibited my right to property and on the basis of bigotry, evil, malice, the objective to promote any Caucasian instead of a highly qualified black man and with reckless

14

disregard colluded to deny my right to employment and thus my property rights when management officials terminated my federal employment. With two relevant Masters degrees and two relevant Bachelor degrees, I prepared and had ambition to compete for Senior Executive Service unlike the high school graduate that is a senior executive at the Census Bureau. It is unlikely that goal will be realized because of Agency intentional, institutional and systematic discrimination done with malice and reckless disregard for Appellant's protected civil rights.

The Agency's unlawful nondisclosure agreement deemed an "abomination" and an "unlawful scheme" by the Office of Special Counsel in the brief OSC Ex Rel John Does 1-4 v Department of Commerce Office of Inspector General and a violation of EEOC Policy Guidance on Non-waivable Rights is knowingly by the Agency an act of malice and reckless disregard and indifference to Appellant's federally protected Title VII Civil Rights and the deliberate retaliatory threat to Appellant by the Agency Representative Adam Chandler in his response to the Initial Appeal Acknowledgement Order. This is a continuation of the reckless discriminatory and retaliatory environment I have been forced to work in (covert discrimination with the change in Appellant's supervisory code) and overtly since 2003 prior to my first EEO complaint in 2007. It has continued every since, terminating in the instant invalid, unenforceable, fraudulent and unlawful nondisclosure agreement perpetrated by the Agency and its designated Management Official Brian E. McGrath.

This particular agreement commits two egregious violations, one being the violation of Title VII laws requiring the waiver of non-waivable rights and the nondisclosure agreement itself used to hide prohibited personnel practices. The Agency misrepresented the facts by stating Appellant waived his Title VII rights by signing the agreement while also stating that Appellant had no right of appeal if the Agency terminated Appellant's employment.

Per Enforcement Guidance EEOC Notice No. 915.002 and the brief OSC Ex Rel John Does1-4 v. Department of Commerce, the unlawful nondisclosure agreement is invalid, unlawful, void and unenforceable as against public policy and therefore Appellant must be placed in status quo ante with a stay against any personnel action evolving from any circumstance remotely related to the proposal to remove Appellant from the federal service and the resultant August 2011 nondisclosure agreement. And therefore, the prior pending EEOC and Agency cases "disposed" and claims of race, age, and disability discrimination and other protected rights unlawfully "waived" by the nondisclosure agreement is declared void and must be adjudicated on the merit of the claims by the MSPB and/or in consultation with the EEOC and which remain appealable to the EEOC.

15

Sincerely,

/signed/

Anthony W. Perry

16

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
WASHINGTON REGIONAL OFFICE

| | | |
|---|---|---|
| ANTHONY PERRY | § | |
| Appellant, | § | MSPB Docket Number |
| | § | DC-0752-12-0486-B-1 & |
| v. | § | DC-0752-12-0487-B-1 |
| | § | |
| DEPARTMENT OF COMMERCE, | § | |
| Agency. | § | DATE:  August 1, 2013 |
| | § | |

## AGENCY'S PREHEARING SUBMISSIONS

I.    INTRODUCTION

Pursuant to the Order and Notice of Hearing and Prehearing Conference dated June 19,

2013, the United States Department of Commerce (Agency) files its Prehearing Submissions in

the above-captioned Appeal.

II.   STATEMENT OF FACTS

Following Appellant's receipt of a Notice of Proposed Removal on or about June 7, 2011,

Appellant approached the Deciding Official, Terryne Murphy (then-Deputy Chief Information

Officer, Bureau of the Census) on June 15, 2011, and offered to withdraw several pending

complaints of discrimination he had pending in front of the Equal Employment Opportunity

Commission ("EEOC") in Baltimore, Maryland, accept a demotion to a GS-13 level and

indicated that he was willing to make "any concession to remain employed until September

2012." Appellant followed up that meeting with an e-mail to Ms. Murphy in which he stated:

> I am willing to pay a price Terryne.  I think there are alternatives that can communicate
> the seriousness.  I have never had performance or conduct issues here, ever.  Please allow
> me to repay the debt, be punished, and stay until May 30, 2012 and walk out of here with
> dignity.

On June 30, 2011, Appellant presented a written reply to the charges against him. In this reply, Appellant again proposed a settlement to Ms. Murphy.

On or about July 25, 2011, the Agency, through Benjamin Felder, Chief of the Census Bureau's Labor Relations Branch, presented a settlement offer to Johnny Zuagar, President of the American Federation of Government Employees, Local 2782. The settlement offer contained the following material terms:

- Appellant must retire/resign no later than May 30, 2012
- Appellant must not apply for or accept any future positions with the Census Bureau
- Appellant must not engage in any future misconduct
- Appellant must accept a 60-day suspension
- Appellant must accept a reassignment
- Appellant must accept a demotion to a non-supervisory GS-13 position
- Appellant must withdraw all pending complaints/cases against the Agency
- Appellant agrees not to file a claim against the Agency concerning this matter.

At no point did any Agency official inform Appellant that he would not have any right to appeal any subsequent removal, in the event that he did not enter into an agreement with the Agency. Ultimately, on August 16, 2011, Appellant (with Mr. Zuagar also signing as his representative) signed an agreement (Settlement Agreement) with the Agency in which he agreed to the following:

- A retirement/resignation date of September 4, 2012
- Waiver of his ability to apply for or accept any positions with the Agency at any point in time beginning with the effective date of the Settlement Agreement
- His removal if he engaged in any future acts of misconduct
- A suspension of up to 30 days
- A reassignment to a non-supervisory GS-14 position (no demotion)
- Withdrawal of 3 pending complaints of discrimination pending in front of the Equal Employment Opportunity Commission
- A waiver of his right to complain about any aspect of his employment, including actions taken pursuant to the Settlement Agreement

Appellant subsequently served the agreed-upon suspension[1], was reassigned to another GS-14 position and retired on his own accord prior to September 4, 2012.

III.   STATEMENT OF THE ISSUES

Does the Board have jurisdiction over the appeal because the Agency provided Appellant "with misinformation upon which he detrimentally relied in signing the settlement agreement (namely, that he would not otherwise have appeal rights)?" (Remand Order at 7).[2]

IV.   AGREED UPON MATERIAL FACTS

The parties have not agreed upon any material facts. However, the Agency believes that these facts are not disputed:

1.      On or about June 7, 2011, the Agency proposed Appellant's removal from his position and from the Federal service.

2.      On or about August 22, 2011, the Agency and Appellant entered into a Settlement Agreement to resolve a number of issues, related to Appellant's employment, including his proposed removal and three pending complaints of discrimination.

3.      In exchange for the Agency agreeing not to remove him pursuant to the June 7, 2011 Notice of Proposed Removal, Appellant agreed inter alia to: retire not later than September 4, 2012; serve a suspension for 30 calendar days and accept a reassignment to a position within the Agency at not loss of grade or pay.

---

[1] To the extent that Appellant is arguing that the Agency improperly failed to inform him of a right to appeal the 30-day suspension, the Settlement Agreement provides for the waiver of his rights to appeal the 30-day suspension (and his retirement). Consequently, the Agency had no obligation to provide him with his appeal rights with respect to the agreed upon suspension and retirement/resignation. Clark v. U.S.P.S., 989 F.2d 1164 (Fed. Cir. 1993). Furthermore, the Board has already determined that the Agency had no obligation to inform him of his appeal rights in the Notice of Proposed Removal. Remand Order at FN 8.

[2] The Agency objects to any attempt by Appellant to set forth facts and argument on any issues unrelated to the sole issue remanded by the Board. Moreover, Appellant should not be permitted to raise arguments concerning the validity of the Settlement Agreement that he did not previously present to the Board. See 5 C.F.R. § 1201.114(b). To the extent that the Administrative Judge expands the issues beyond the issues remanded by the Administrative Judge, the Agency reserves the right to present evidence, witnesses and argument on any such issues.

3

4.      On or about August 26, 2011, Appellant began serving a 30-day suspension pursuant to

the Settlement Agreement.

5.      Appellant subsequently retired from the Agency prior to September 4, 2012.

V.      AGENCY'S WITNESSES

    1.      Benjamin Felder
            Chief, Labor Relations Branch
            U.S. Census Bureau
            Suitland, MD

Mr. Felder represented the Agency in settlement negotiations over the Settlement

Agreement.  He will testify as to the circumstances surrounding the negotiation of the Settlement

Agreement.

    2.      Johnny T. Zuagar
            President, American Federation of Government Employees, Local 2782
            U.S. Census Bureau
            Suitland, MD

Mr. Zuagar represented Appellant in settlement negotiations over the Settlement

Agreement.  He will testify as to the circumstances surrounding the negotiation of the Settlement

Agreement.

    3.      Terryne Murphy
            Chief Immigration Officer
            U.S. Department of Justice, Executive Office for Immigration Review
            Falls Church, VA
            Formerly: Deputy Chief Information Officer; U.S. Census Bureau

Ms. Murphy received Appellant's written reply and various communications from

Appellant after he received the Notice of Proposed Removal.  She will testify as to her

conversations with Appellant after his receipt of the Notice of Proposed Removal, including at

least one conversation during which Appellant offered to accept a demotion and withdraw his

4

pending complaints of discrimination in exchange for the Agency allowing him to remain

employed until September 2012.

    4.    Brian McGrath
           Chief Information Officer
           U.S. Census Bureau
           Suitland, MD

Mr. McGrath will testify that he did not discuss the Settlement Agreement with Appellant

or Mr. Zuagar during the negotiation of the Settlement Agreement.

    5.    Stacy Chalmers
           Chief, Employee Relations Branch
           U.S. Census Bureau
           Suitland, MD

Ms. Chalmers will testify as to her role in the negotiation of the Settlement Agreement.

    6.    Appellant

Appellant will testify as to the circumstances surrounding the signing of the Settlement

Agreement.

## VI.   AGENCY'S INDEX OF EXHIBITS

In addition to the previously submitted documents that the Administrative Judge has

already indicated are in the record, the Agency proffers the following exhibits:

1- Memorandum for the Record and accompanying email (June 15, 2011)

2- Appellant's Response to the June 7, 2011 Proposal to Remove (June 30, 2011)

3- E-mail RE: AP Settlement (July 26, 2011)

The Agency reserves the right to introduce any exhibits offered by Appellant, and to

introduce additional exhibits for the purposes of impeachment or rebuttal.

Respectfully submitted,

Adam Chandler
Agency Representative

6

| From: | Terryne F Murphy/ISSRO/HQ/BOC |
|---|---|
| To: | Stacy Chalmers/HRD/HQ/BOC@BOC |

| Date: | Wednesday, June 15, 2011 04:36PM |
|---|---|
| Subject: | Updates |

History: 🔷 This message has been replied to and forwarded.

---

Hi Stacy, I know you are unavailable today, but I wanted to let you know that Anthony Perry stopped by my office early this morning. Attached is a Memorandum For Record capturing the content of the conversation. I received an email from him following the meeting but am unable to forward it. I can show it to you here when I see you tomorrow. Please let me know if you have questions.


Warm regards,
Terryne

------------------------------------

Terryne F. Murphy
Chief, ISSRO
U.S. Census Bureau
301.763.6845 (Office)


Attachments:

Memorandum For Record.docx



Memorandum For Record

Subject: Anthony Perry Meeting, 15 June 2011, between 0730 and 0800

1. Anthony Perry stopped by my office to thank me for the extension and to inform me that he is willing to make any concession to remain employed until September 2012. This will be the time that he is eligible to retire at 30 years.

2. He offered the following:
   a. Removal of the EEO case in Baltimore
   b. Demotion to GS-13
   c. Payback of benefits gained, approximately $9,000, noted in the proposal to remove him
   d. No further complaints of any kind until retirement

3. He requested to be moved from Dale Reed.

4. He admitted that he is at fault for not being at his desk.

5. He stated that he will not fight the specifications in the proposal for removal. He did explain that he was on site and "out walking" – something he does because of his arthritic hip.

6. He asserted that he received no progressive punishment for not being at his desk.

7. If he is allowed to remain in employment, he will "do what he is told" and make no more "waves" for the Census Bureau.

8. He stated that he has 29 years of service next month.

9. He stated that he regrets getting himself in this position.

10. He stated that now he is thinking about his family. He stated that he has a daughter eleven years old and doesn't know what he's going to do if he is removed. He is 56 or 57 years old.

11. He seemed in my opinion visibly nervous and very upset.

12. He asked for compassion.

13. He stated that the union is representing him and want to "go through a long, drawn out process".

14. He thanked me again for taking the time to see him this morning and shook my hand when I extended it.

15. I thanked him for coming by.

16. I stated that I have read the proposal and that it is a very serious offense and a very serious recommendation.

17. I stated that I am the deciding official and have not made a decision yet.

18. I thanked him again for explaining his position and sharing his thoughts.

19. This is the sum total of the conversation as I recall it. It is now 0820.

Terryne F Murphy

Chief, ISSRO

EXHIBIT

1 - p2

tabbies

To:     Terryne Murphy, Chief ISSRO

From:   Anthony W. Perry, IT Specialist

CC:     Johnny Zuagar, President AFGE Local

Date:   6/30/2011

Re:     Response to the June 7, 2011 Proposal to Remove

---

Ms. Murphy,

Attached is my response to the June 7, 2011 Proposal to Remove me from Federal Service. Also included are confidential medical documents and reference materials that might be of assistance to you as you consider your decision.

Sincerely,

*Anthony W Perry*

Anthony W. Perry

EXHIBIT

2 - p.1

Response to June 7, 2011 Proposal to Remove

I.       **Response to Specifications**

A. Receipt of Pay for Time Not Worked: Specifications 1-4, 6-9, 11-15, 17-20, 22-27, 29-30, 33-62 are due to my walking, stretching, and exercise outside of the building to manage my osteoarthritic left hip and hip joint, degenerative osteoarthritis in my lower left back (L1 and L2), and my left knee and joint. The disability prevents me from prolonged sitting. My supervisor has been aware of my health issues since 2007 and told me to "do what I needed to do" when I told him I needed to walk and stretch for relief of my knee and then later my hip and back several years ago. I believed that to be an informal accommodation for my problem. I was never told that the informal accommodation had changed.

My supervisor and I passed each other on numerous occasions and many times entering and exiting the building, him to smoke and me to walk or otherwise stretch my hip, groin and back. No conditions or constraints or guidelines were placed on me by my supervisor on what I could or could not do at the workplace to manage my disability.

I did not know nor was I told that I could request a reasonable accommodation from the Disability Program Office which would have provided the guidelines for how to manage my injuries. After receipt of the "proposal to remove", I asked my supervisor about the accommodations program. He told me he was unaware of the Reasonable Accommodations Program. I have applied for the accommodation since receipt of the proposal.

I was not told that walking outside of the building creates a different accountability than walking inside otherwise I would have complied with those guidelines or walked inside the building. Exhibit A is part of my medical records and show my disabilities and measures advised to manage the pain and discomfort. The specifications show about 50 hours of walking and stretching outside of the building over the period from October 2010 through April 2011. The Disability Program Office has additional medical documentation.

B. Specifications 1-3, 13, 36-40, 42, 46, 50-51, 52, 56, 60, and 62 are due to a combination of walking and extended lunch periods. The walking time is discussed in the specifications above. When going out for lunch, sometimes I took an hour for lunch. The specifications show about 20 hours of extended lunchtime over the period from October 2010 through April 2011. General Bureau accepted practice is one hour for lunch and two 15 minute breaks per day. This time was not accounted for in the specifications.

Some of the extended time taken outside of the building was also to deal with the emotional and physical stress of at least six years of EEO struggles with the agency. I attempted to represent myself and I would work on aspects of those actions in my car.

C. Specifications 3, 5, 9-10, 14, 16, 21, 24-25, 28, 31, 34, 41, 51, and 55, is the remaining general category. My supervisor was aware when I was out of the office on leave or leaving the workplace for the hours stated in these specifications. Some of these hours were spent reclining in my car to help relieve back and hip pain. In a recent conversation with my supervisor he said and I agreed that these times when leave was not recorded are due to failed communications between me and my supervisor in the leave request process, change in work schedule (worked

EXHIBIT
2 - p2

on days leave was taken and on leave days I worked), not remembering to complete request afterwards, or not remembering to correct time and attendance for leave taken. No personal gain was ever intended. Approximately 50 hours of time are accounted for in these specifications.

### D. Missed Meetings

I attended all meetings that I was physically and emotionally able to attend. I was not emotionally or physically prepared to resume attendance when re-invited as I had been frequently out of the office sick during some of that time. My supervisor never objected or took any action against me for not attending and I believe modified expectations accordingly.

### E. Reason 2: Failure to Sign-in

After the initial request to sign-in, I requested an explanation from my supervisor regarding the change in procedure from the prior three years when no sign-in was required. My supervisor refused to provide any feedback nor did he pursue this matter in any manner with me until after I received the "proposal to remove". I inquired of my supervisor again and at that time he stated a purpose for the changed procedure after which I started to sign the log provided.

### II.        Douglas Factors

Eight of the twelve Douglas Factors are included for reference. They provide considerations that should be taken into account when deciding whether any action should be taken and the determination of what is the appropriate penalty. The factors that I believe are most relevant are:

- The employee's past disciplinary record;

- The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

- The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties

- Consistency of penalty with those imposed upon other employees for the same or similar offenses;

- The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

- Potential for employee's rehabilitation;

- Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems; mental impairment; harassment; or bad faith, malice or provocation on the part of others involved in the matter;

2



• The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

III.      Mitigating Circumstances and General Considerations

A. I have a total of **29 plus years of exemplary service. Not a single performance or conduct issue prior** to this action. I have received an individual and group bronze medal award, and was the project manager for the 2000 Census Data Capture System. However, for the last 6 years I have been involved in an intense EEO struggle with the Census Bureau IT Management staff as well as facing serious health issues. These two situations have had a tremendous impact on my finances, family, overall quality of life, and normal tour of duty expectations at work.

B. The charged conduct is near totally due to my disability and the management of the continuous pain and discomfort. As a result of my disability (degenerative osteoarthritis) and emotional health issues, I walk daily at work and home and there were times when I was and am physically unable to come to work. My supervisor was aware of this and made informal accommodations. **My medical condition was not taken into account when arriving at the penalty proposed and should have been entitled to "*considerable weight as a mitigating factor*"** (See Exhibit B. Request for Reasonable Accommodations; additional medical records are available in the Disability Program Office).

During the time in question in this proposal, **my supervisor certified my time and attendance records and did not raise with me that there was a discrepancy.** There was never an attempt by me for personal gain from any of these incidents.

C. Long periods during the day outside of the lunch hour or part of it were doctor appointments or trying to relieve pain. I did not leave the worksite for reasons other than lunch and approved leave (verbal or written) and doctor appointments for me or my child. The leave request process was flexible. That is why on occasion some specifications show me returning. I wouldn't have returned if personal gain was being sought. **My supervisor was notified when I left the workplace during working hours or when I was not able to come to work.**

D. The intention of punishment is to correct behavior.

E. The Agency failed to notify me that my supervisor's prior accommodations for me were no longer going to be provided. Had I known, I would have pursued the accommodations provided by the Disability Office.

F. It is an established and accepted practice of granting employees one hour for lunch and two 15 minute breaks per day. I was charged with overextended lunch without a warning that the previously condoned activity of taking an hour for lunch is no longer condoned never giving me an opportunity to conform to the new rule.

G. There was no clarity of notice provided to me that I was violating any rules or no corrective action had been taken against me about any conduct in the proposal.

EXHIBIT
2 - p4

An environment has been created in which I am suspicious and hypersensitive to any of my supervisor's action directed at me or purported to be to my benefit because of my years of EEO struggles.

## V. Summary

In light of this response to the "proposal to remove", I believe an alternative corrective punishment is appropriate and repayment for time the agency deems is warranted . I have tried to present with clarity that my disability or other related illness, which I didn't talk about or make a big deal about because of the personal nature of the matter, is the reason for nearly all of the time I am charged with being away from my desk. The other time is attributable to extra time taken around the lunch hour during the period of October 2010 and April 2011.

Since 2007 my supervisor has been aware of my degenerative disability and the impact it had and has on my performance and attendance. Additionally, my supervisor never once brought to my attention or took an intermediate or corrective disciplinary action against me in relation to any of the specifications and therefore I was never given a chance to correct my behavior.

Considering the above and the following considerations:

1. my 29 plus years of exemplary service
2. clean disciplinary record prior to this event
3. this incident will have a minimal impact on my ability to perform going forward
4. the lack of any corrective supervisory action against me communicating that I was committing any offense
5. I have been signing in as my supervisor explained the reason for it after I received the proposal and I have continued to work on the storage consolidation team
6. I have since been reassigned work tasks that I am willing to work through with my supervisor
7. Unusual job tensions caused by years of EEO struggle.
8. The Agency proposed sanctions is excessive.

## VI. Settlement Offer

I would like to propose a settlement with the agency that would allow me a clean start to focus on my work, my health and my family. I would like to propose:

1. The Agency withdraw the proposed dismissal

2. Employee will agree to the following:

   a. Accept a 14-day suspension without pay
   b. Repay the portion of hours the Agency deems warranted for not being at my desk
   c. Follow the Reasonable Accommodations guidelines when approved


EXHIBIT
2 - p5



*Confidential:...x

Anthony W Perry
IT012HQLNM/HQ/BOC

**Inbox (3497)**
Drafts
Sent
Follow Up
All Documents
**Junk (4)**
Trash

Views

**Folders**

Archive

Tools

Other Mail

New      Reply      Reply To All      Forward      Share

**\*Confidential: Reasonable Accommodation (RA) Request Follow-Up (A.**
Randall G Murbach
To: Anthony W Perry
Cc: randall.g.murbach@census.gov

Morning Mr. Perry,

I have reviewed your CD-575 document and the accommodation you
are seeking is "frequent walking and stretching advised by physician
and therapist". However, we are lacking details on this request.

The medical documents you have provided from 2006 through 2009
are illegible (can't read whoever wrote the notes) and do not provide
any walking or stretching advisement.

With that in mind, we need two things from you:

1) Supplement to CD-575 with details on what "frequent walking and
stretching advised by physician and therapist". Is there a specific
walking/stretching schedule to follow during the work week?

2) Have your doctor complete the "request for medical information"
form (attached). The information on this form must match what it
outlined in your CD-575/supplement about "frequent walking and
stretching advised by physician and therapist". *Note: The*
*response/writing must be legible.*
*(See attached file: Census Bureau_Reasonable Accommodation_Request for Medical*
*Information_01-2011.pdf)*
If you have any questions, let me know.

Thanks,

**Randy Murbach**
Reasonable Accommodations Coordinator
HRD - Disability and Diversity Program Office (DDPO)
U.S. Census Bureau

Office/VP: 301-830-8473
Fax: 301-763-9895
E-mail: randall.g.murbach@census.gov
www.census.gov
Intranet: http://www.hrd.census.gov/hrd/emp/disability/ra.htm

Connect with us:

Attachments: (Click the filename to launch)

Census Bureau_Reasonable Accommodation_Request for Medical Information_01-2011.pdf

EXHIBIT
2-p7

| | |
|---|---|
| **From:** | Anthony W Perry/LTSO/HQ/BOC |
| **To:** | Terryne F Murphy/ISSRO/HQ/BOC@BOC |
| **Cc:** | Anthony W Perry/LTSO/HQ/BOC@BOC |

| | |
|---|---|
| **Date:** | Wednesday, June 22, 2011 08:53AM |
| **Subject:** | Pending Matter |

Terryne,

I sincerely hope the graduation and everything around it will be a memorable occasion for you, your son and the rest of the family for years to come. Congratulations. I am the oldest of seven male kids of a single mother so I do remember my mother's joy at my graduation. I am the only one to go to college.

I am concerned about the potential outcome of my situation and am asking for compassion in your decision. In my entire life I have lived with and given compassion to unfortunate persons like senior citizens, homeless men, and disadvantaged kids because that is me.

Also, I live with the hope that as I have given compassion to others in need, that someone will step forward and give me compassion in my time of need. This is that time. As you know, I have an eleven year old six grader with hopes and dreams of being someone. She believes her daddy makes that possible by being a good and kind hardworking person. She is also undergoing expensive orthodontic care that I will be unable to pay for if I am terminated.

I am willing to pay a price Terryne. I think there are alternatives that can communicate the seriousness. I have never had performance or conduct issues here, ever. Please allow me to repay the debt, be punished, and stay until May 30, 2012 and walk out of here with dignity.

I believe Chrissy Milliken would accept me in her branch to continue to work on the storage consolidation project. I would also be willing to report to you as necessary to assure you I was meeting the conditions of an agreement.

We should have the documents ready soon, probably around mid-week.

Thank you for allowing me to communicate with you.

Tony Perry

EXHIBIT

2 - 47

| | |
|---|---|
| **From:** | Benjamin T Felder/HRD/HQ/BOC |
| **To:** | Ronda J Brown/POL/HQ/BOC@BOC |
| **Cc:** | Terryne F Murphy/ISSRO/HQ/BOC@BOC, Stacy Chalmers/HRD/HQ/BOC@BOC |

| | |
|---|---|
| **Date:** | Tuesday, July 26, 2011 07:37AM |
| **Subject:** | AP Settlement |

FYI – I presented the proposed terms for settlement to Johnny Zuagar yesterday. He advised that he would talk to AP and get back to me. Hopefully, I will know something or have a counter-offer by the end of this week. I will let you know as soon as I have something. These were the terms offered:

1. Agree to retire/resign by NLT May 30, 2011. (nonnegotiable)
2. Agree not to apply for or accept any future positions with the BOC. (nonnegotiable)
3. Agree not to engage an any further misconduct. (nonnegotiable)
4. Accept a 60-day suspension.
5. Accept a reassignment to an already identified area.
6. Accept a demotion to a non-supervisory GS-13 position.
7. Withdraw all pending complaints/cases against the Agency. (nonnegotiable)
8. Agree not to file a claim against the Agency concerning this matter. (nonnegotiable)

EXHIBIT
3

**Appellant Witness List**

| Name | Reason Required To Appear as Witness |
|---|---|
| 1. Brian McGrath | Management Official initiating removal action and concurred and signed the unlawful nondisclosure agreement disposing of pending EEOC claims while negotiating the settlement of pending EEOC claims in the Baltimore Field Office. Mr. McGrath told in a 2011 meeting set up by his secretary and prior to the proposal to remove that I would regret not pursuing employment outside of the Bureau.  He had sent several emails concerning job vacancies outside of the Census Bureau where he noted that I had stated to him that I wasn't interested in leaving the Census Bureau.  He stated that I would regret not leaving the IT Directorate in a meeting schedule with me by his secretary.  Email soliciting my leaving the Agency is part of initial appeal file. |
| 2. Thomas Messenbourg | Census Bureau Deputy Director, Chief Operating Official and the Management Official who coordinated and approved the charges and method to execute my involuntary/constructive discharge of Appellant from the Agency to conceal prior prohibited personnel practices he coordinated and approved that injured Appellant.  All Human Resources employees report to Mr. Messenbourg and this action could only have occurred if he approved the action and the process by which the constructive termination would occur. |
| 3. Terryne Murphy | Deciding Official was being coerced to terminate Appellant by the Management Official and Human Resources Officials. Under oath and penalty of perjury she will testify as to the Bureau Officials who attempted to coerce her to terminate appellant and why she sustained the charges and suspended Appellant and provided no basis or justification for the decision in accordance with the Douglas Factors if she independently concluded misconduct had occurred. |
| 4. Darren Gutschow | He is not my supervisor but authored the Proposal to Remove Appellant from the Federal Service under the direction of Management Official Brian McGrath, Associate Director for Information Technology and CIO.  He has knowledge of the circumstances and purpose of the Proposal to remove |
| 5. Stacy Chalmers | Attempted to coerce the Deciding Official to terminate appellant.  She was directed by HR Officials Benjamin Felder and Division Chief John Cunningham. |
| 6. Benjamin Felder | Negotiated the nondisclosure agreement based on fraudulent misconduct charges with Johnny Zuagar |
| 7. John Cunningham | Human Resources official directing Stacy Chalmers and Benjamin Felder to attempt to coerce the Deciding Official to terminate appellant. |
| 8. Ronda J. Brown | Management Official Representative that was supposed to be negotiating the settlement of the pending EEOC claims that were disposed of as a result of the fraudulent misconduct |

| | charges and the Agency's nondisclosure settlement document. |
|---|---|
| 9.  Johnny Zuagar | Union President and Representative who attempted to negotiate the Appellant's response to the Deciding Official which was rejected out of hand and was told Appellant would be terminated if the proposed settlement agreement was not accepted. |
| 10. Frank Silberstein, Initial Union Representative | Initial Union Representative told Appellant he believed Appellants job was not at risk and later told Appellant that the Agency intended terminate Appellant regardless of Appellant's explanation or documentary evidence of a disability.. |
| 11. Dale Richard Reed, 1st Line Supervisor, Branch Chief BPS | Appellant's First line Supervisor as a result of a prohibited personnel practice and RMO that was pending before the EEOC at the time of the charges and nondisclosure agreement.  Was aware of Appellant's disability and provided an informal accommodation for Appellant (was available prior to the date of his appointment as Supervisor, Business Planning Staff) that he subsequently withdrew.  Mr. Reed told me that he was told not to tell me the reason that I was the only supervisory employee in the entire Information Technology Directorate that was being required to sign in and out.  Mr. Reed was obligated to direct me to aobtain a formal accommodations if it was going to be required in the future to work the flexible work schedule I had worked for many years prior to the proposal to remove Appellant from the federal service. |
| 12. Patricia Musselman, Division Chief LTSO | Division Chief, Second Line Supervisor, LAN Technology Support Office as a result of two prohibited personnel actions pending before the EEOC.  She was aware of Appellant's disability and informal accommodations that she subsequently approve Mr. Reeds withdrawal of the accommodations that had been in place for several years.  Did not inform Appellant of any changes required to Appellant's work schedule.  Patricia Musselman was aware of the scheme to have me terminated and by omission or commission failed to act by not communicating to Appellant's informal accommodations had changed and were being used to execute an adverse action.  Ms. Musselman was obligated to direct me to aobtain a formal accommodations if it was going to be required in the future to work the flexible work schedule I had worked for many years prior to the proposal to remove Appellant from the federal service. |

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

| | | |
|---|---|---|
| ANTHONY W. PERRY, | ) | DOCKET NUMBERS: |
| Appellant | ) | DC-0752-12-0486-B-1 |
| | ) | DC-0752-12-0487-B-1 |
| | ) | |
| vs. | ) | **REVIEW BOARD** |
| | ) | |
| | ) | |
| DEPARTMENT OF COMMERCE, | ) | DATE: January 26, 2014 |
| Agency | | |

## Petition For Review

Appellant timely submits a Petition for the Review of the Administrative Judge's decision, denying Appellate Jurisdiction before the Board.

On December 23, 2013, the Administrative Judge erroneously denied jurisdiction of the Appellant's claims before the Board, to include a forced retirement (constructive retirement/discharge) and forced suspension (constructive suspension).

Appellant's complaint is intertwined with disability discrimination, along with other prohibited personnel practices. The prohibited personnel practices include fraudulent charges of misconduct, coercion, retaliation, reprisal, retribution, misinformation, misrepresentation of facts and the use of an unlawful Non-Disclosure agreement to conceal the constructive actions and to conceal other prohibited practices.

## Appellant's Argument

Appellant's initial claims states that the adverse actions are intertwined with disability discrimination, due to the Agency rescinding of prior provided accommodations (IAF Tab 4). Appellant suffered ongoing race, gender and age discrimination, along with retaliation, retribution and reprisal. This is by definition a mixed case appeal.

1

Judge Turbitt's decision is not in accordance with the law, policy, and guidance or documentary evidence provided by the Appellant. The Judge repeatedly denied the admission of material and relevant information toward the coercion of Appellant into an unlawful nondisclosure agreement. The decision contains erroneous findings of fact and is based in favor of the Agency, and contains erroneous interpretation and erroneous application of the law, statute, policy guidance and regulation. Judge Turbitt's failure to utilize Appellant's documentary records is flawed, is a continuation of a process to violate Appellant's *Due Process*, and is in disregard of Appellant's uncontested evidence. There is no evidence of cause for the adverse actions taken by the Agency.

A distinct timeline of evidenced documentation provides *Procedural Errors, Coercion, Prohibited Personnel Practices and Misrepresentation,* which are in clear contradiction of the process in the proposed removal (IAF Tab 1 at 1). The timeline provides a revelation of prohibited personnel practice, along with the Administrative Judge's abuse of discretion.

    a. 2007 Informal disability accommodation provided by supervisors of record, Patricia Musselman and Dale Reed.

    b. On May 19, 2011, Appellant certified Motion in Opposition to the Agency Motion to Dismiss" pending EEOC claims (IAF Tab 6 at 1).
    **No other communication between the Agency and Appellant occurred, concerning the pending claims until after the Agency's Non-Disclosure agreement was served on Appellant. There is no evidence provided in the record of any communication and it clearly contradicts Judge Turbitt's assertion of Ronda Brown's active settlement discussions with Appellant.**

    c. June 6, 2011 email to Census Bureau Director reporting ongoing discrimination with regard to promotion, performance reviews, and awards.

    d. June 7, 2011 Proposal to Remove by an employee who was NOT Appellant's supervisor states in part ... [Deciding Official will decide based on Appellant's response...there is no reference to an EEOC agreement or any other agreement as part of the proposed removal].

    e. June 9, 2011/June 13, 2011 submission of formal disability accommodation and medical records dating back to 2007 up to 2011 submitted to Agency Disability Program Office. Total hip replacement February 27, 2012 (IAF Tab 4).

    f. June 21, 2011 Dale Reed notified by Disability Program Office that an employee, in his group, submitted a reasonable accommodations request (IAF Tab at 17, 18 and 19).

2

g. June 26, email from HR employee Ben Felder to Johnny Zuagar dictating Appellant's retirement, suspension, reassignment, forfeit of pending EEOC claims, and forbid to work at Commerce. **This action was without Appellant's knowledge and wasn't witnessed by the Appellant until Agency submitted it with Remand documents** (Agency Remand File, Exhibit 3)

h. August 22, 2011, Appellant was served a Non-Disclosure settlement agreement with the basis of the agreement being in lieu of termination for misconduct *without* a decision on Appellant's response to the charges.
**The Agency violated the procedure stated in the *Proposal to Remove*,** (Tab 1 at 1).
The violation of the Proposal violates Appellant's *Right to Due Process*. Furthermore, the Non-Disclosure Agreement is invalid.
The Appellant involuntarily accepted the terms and conditions of the Agency's adverse actions as stated in the Non-Disclosure agreement dated August 22, 2011 and Agency remand (Remand Exhibit 3). **Appellant's representative provided no assistance or no alternative to Appellant, pending Appellant's required signature on the Non-Disclosure agreement. Appellant's representative clearly communicated, if the Non-Disclosure agreement was not signed or if the Appellant went to the EEO office, Appellant will be terminated.**
No alternative was provided to the Appellant and the Agency's actions are deemed coercive. (SAtaats v. U.S. Postal Service, 99 F.3d 1120, 1124 (Fed Cir. 1996).

i. August 26, 2011, Deciding Official issued decision stating, "She substantiated the charges but a lesser penalty of suspension was appropriate." (Tab 3 at 1) (Deciding Official verbally admitted to assisting with drafting the Non-Disclosure agreement) and withheld decision until the Non-Disclosure agreement was signed.

j. Reasonable Accommodations were approved November 9, 2011.

**New evidence attached** are Notification of Personnel Action-SF-50 (not submitted by Agency and acquired via FOIA by Appellant) and supervisor certified Time and Attendance Sheets for the period of the charge of receiving pay for time not worked. The official personnel actions show agency imposed adverse actions in accordance with the August 22, 2011 nondisclosure agreement.

3

Appellant's Remand Exhibits are titled "Supervisor Code, Work Performance and Responsibilities", "John Does v. Dept of Commerce/EEOC Guidance and Relevant Docs", and Exhibit E and F.

### Perceived Bias, Failure to Address, and Denial of Discovery

Judge Turbitt provided an umbrella for the Agency to argue their case, while utilizing his discretion to undermine the law.

*Example:* In the telephonic conference, Judge Turbitt asked the Agency Representative "What files do you want removed from Mr. Perry's file?"   The Agency's Attorney replied, "The medical records Judge."

**A.** Judge Turbitt failed to address the August 22, 2011 Non-Disclosure agreement (IAF Tab 1 at 2), is from the same template used by the Commerce IG in Office of Special Counsel REL John Does (1-4) v. Commerce IG and should not have been ruled valid.

The agreement template utilized, *coerced* Appellant into the agreement without recourse. The litany of actions and coercive tactics used, clearly denied the Appellant's rights to report prohibited personnel practices to the OSC, equal protection under the law, due process, and property rights and are in violation of *5 USC 2302 (b)(8), (b)9), (b)(10), (b)(12), and (b)(13).*

The evidentiary documents submitted by Appellant did not offer to settle or waive claims pending before the EEOC and no consideration was received for the coerced and dictated forfeiture of non-waivable Title VII Rights (Agency Remand File Exhibit 3). Therefore, the statement of Judge Turbitt's interpretation of Appellant's submitted evidence is a clear misrepresentation of the facts and of the documentation on record.

**B.** Judge Turbitt failed to address, the Agency did not substantiate the charges against Appellant, which lead to the Appellant's suspension and removal. The Agency's charges were the basis for imposition of the Non-Disclosure agreement. Therefore, the Agency failed to meet its obligation, under the law, to have had reasonable grounds for the proposed removal. On this basis, the threatened removal was purely coercive (Schultz v. U.S. Navy)

**C.** The decision rendered by Judge Turbitt, failed to address the Agency committed harmful procedural errors and prohibited personnel practice. The Agency decision to terminate, suspend, and dispose of Appellant's pending claims before the EEOC Baltimore Field Office and impose a Appellant via a nondisclosure agreement, are considered prohibited personnel practices and a violation of EEOC Enforcement Guidance on Non-waivable Rights

4

(Agency Remand Exhibit 3)and thus 5 U.S.C. 2302 (b)(1)(A)(B)(C)(D), (b)(2)(A)(B), (b)(4), (b)(8)(i), (b)(9), (b)(10), (b)(12), and (b)(13).

**D.** The Judge failed to sanction the Agency, in accordance with 5 USC 1241.43, for failing to comply with the Acknowledgement Order (IAF Acknowledgement Order). Judge Turbitt provided leniency to the Agency, although the Agency failed to submit the documents required by the Acknowledgement Order.

The Order, critical to Discovery, required the submission of charging documents, current & past misconduct, other causes for action against Appellant, and all related notes.

Judge Turbitt denied discovery of the Deciding Official's notes, emails, or any communications about the proposed removal and how she came to her decision to sustain charges with no evidence of misconduct provided to Appellant or his representative (Remand File Denied Motion).

Because the discovery requests were denied, Appellant was not afforded access to material, relevant and direct evidence, key to the overall decision of Appellant's constructive retirement and constructive suspension. Also, this is a clear violation of Appellant's due process rights to confront and respond to evidence of the charges.

**E.** The Judge failed to address the collusion in Deciding Official's decision and the Non-Disclosure agreement. The Deciding Official admitted in hearing of assisting with drafting, required Appellant's suspension, retirement, reassignment out of supervisory ranks, forfeiture of pending EEOC claims at Baltimore Field Office, and forbid to ever work for Commerce.

Appellant was also denied witness request of Appellant's first and second line supervisors, Dale Reed and Patricia Musselman who were responsible for Appellant's time and attendance.

The denied discovery, along with denying the Appellant's witness request, directly denies Appellant's right to confront pertinent evidence, along with Agency accusers and due process rights guaranteed by the Constitution.

**F.** There was a failure address the actions of Darren Gutschow, an employee who was not the Appellant's supervisor. Darren Gutschow proposed Appellant's removal (Tab 1) which was acted upon by the Agency. This action is not only a violation of 5 USC 2301 (2), (4), (5), (6), (8)(A), and (9), it is also a prohibited personnel practice, a violation of the FPM and 5 USC 2302 (b)(2), (b)(8), (b)(9), (b)(10), and (b)(12). Mr. Gutschow had no knowledge of supervisor provided accommodations for Appellant.

The Judge also failed to then rule the Agency withdrew Appellant's prior accommodations for his disabling condition, the medical records of which were available in the Disability Program

5

EXHIBIT 1 Pg. JA507

Office and therefore intentionally failed to provide Appellant minimum due process and in violation of 5 U.S.C. 2302 (b)(1)(D) and specifically the Rehabilitation Act of 1973 and the ADA Amendments Act of 2008 (ADAAA) (Tab 1 at 1; Tab 4) (Pledger v. Department of the Navy, 50 M.S.P.R. 325, 330-31 (1991)).

The charged times for misconduct were certified by supervisors of record, Dale Reed and Patricia Musselman, and were justified to the Agency in IAF Tab 4 and 5. *The Agency did not contest these facts.* Therefore, the Agency's harmful procedural error allowed the management official to serve Appellant a Non-Disclosure agreement imposing adverse actions and prohibited personnel practices prior to the Deciding Official rendering a decision on Appellant's response to the charges of misconduct .

Discovery request were denied for material recording clock information of other IT employees. The requested information would show that accommodations are provided for other employees, who have not been charged for misconduct. This information includes employees who smoke, run, jog, disabled, etc.

The Agency used recording clock information to charge Appellant with misconduct but failed to extract recording clock information outside of regularly schedule times. Appellant was allowed a flexible work schedule and informal accommodations by first and second line supervisor which the management officials were made aware (IAF Tab 5).

Judge Turbitt failed to address the restriction *against* the use of a recording clocks in Executive Agencies in Washington D.C. except at the Bureau of Engraving and Printing which is a violation of 5 USC 28  6106 through 6123.

Overall, the Agency submitted no evidence of misconduct.
The Agency committed fraud, harmful procedural error, coercion, misrepresentation and prohibited personnel practices to secure a Non-Disclosure agreement and prevent Appellant from filing a complaint with OSC and EEOC in violation of 5 USC (b)(8), (A)(i), (ii), (B)(i), (ii), (b)(9), (b)(10), (b)(12), and (b)(13).

### More Rules of Law and Evidence Ignored

**1.** Judge Turbitt failed to address that Appellant's flexible work schedule was due to a prior approved informal accommodation for Appellant's documented and well known disability (Tab 4 and Tab 5) and therefore the Agency rescinded an accommodation that had been prior provided without informing Appellant and providing minimum due process (Crutch v U.S. Postal Service, 2013 MSPB 38).

6

**2.** Judge Turbitt failed to protect Appellant from an arbitrary action that required only Appellant, with 29 years of supervisory experience and pending discrimination & prohibited personnel practices claims, to start signing in April 2011. Although the sign in discontinued shortly thereafter, Appellant was never required to sign in throughout his professional career. The Agency tactics were harassing and in violation of 5 USC 2301 (2), (8), and (9); 5 USC 2302 (b)(8), (9), (b)(10), (b)(12).

**3.** The OSC has since been notified of the Deciding Official's interference with Appellant's right to approach the OSC and Congressional representative, along with prior prohibited personnel practices. The Deciding Official communicated to Appellant, to inform her of any other actions Appellant had pending or intended to file. Appellant withdrew OSC complaint after being coerced into the Non-Disclosure agreement, a violation of 5 USC 2302 (b)(8), (b)(9), and (b)(10), (b)(12) and (b)(13) for fear of further retaliatory action.

**4.** Judge Turbitt failed to acknowledge Appellant's FSLA classification was exempt and therefore flexible work time is common and charges of misconduct for prior approved time and attendance was discriminatory, retaliatory, retribution, and abuse of power. In fact, Appellant has worked several thousand hours without pay over his 29 year career.

## Illegality of Non-Disclosure Agreement & More Prohibited Personnel Practices

The timeline of events submitted by Appellant in this matter is critical to showing coercion of Appellant into the unlawful Non-Disclosure agreement.

The Agency Attorney stipulated to the fact, the Agency drafted agreement it called an EEOC Settlement Agreement, contains a Non-Disclosure clause (IAF Tab 1 at 2 pg 4).

**The Non-Disclosure agreement contains a waiver of Title VII Rights (Tab 1 at 2 pg 3).**
Title VII Rights are non-waivable in this type of Non-Disclosure agreement, according to EEOC Enforcement Guidance on non-waivable employee rights under EEOC enforced statutes (Appellant Remand Exhibit: John Does v. Dept of Commerce/EEOC Guidance and Relevant Docs, pg 24).
Non-Disclosure agreements must comply with 5 USC 2302 (b)(13). The Non-Disclosure agreement, in the Appellant's case, is a prohibited personnel practice and was utilized to accomplish the Agency's overall mission, to "dispose" of Appellant's pending EEOC file in the Baltimore Field Office and to terminate the Appellant for exercising his Title VII Rights.

     **A.** Immediately after charging Appellant with misconduct, the Management Official Brian McGrath presented Appellant with a Non-Disclosure agreement. The agreement required

7

suspension, retirement or resignation, reassignment, and forbid to work at Commerce. The agreement submitted to the Appellant, under the threat of termination is a violation of 5 USC 2302 (b)(8), (b)(9), (b)(12) and (b)(13).

**B.** Appellant's Non-Disclosure agreement constitutes as a "**Gag Agreement/Order**" and forbids employee from communicating directly with Congress and is a prohibited personnel practice per 5 USC 2302 (b)(12) and (b)(13). The "Gag" agreement has been deemed void and unenforceable, and against public policy (EEOC v. Astra USA., 94 F.3d 738, 744-745 (1st Cir 1996).Id at 744; EEOC v. Morgan Stanley & Co., Inc., 2002 WL 31108179(S.D.N.Y. 2002); DEC v. Lipson, 1997 WL 801712 (N.D.Ill. 1997); cf. Fomby-Denson v Dept of the Army, 247 F.3d 1366, 1368 (Fed. Cir.2001). Also, the agreement violates the *Lloyd-LaFollete Act of 1912 and the WPEA*.

**C.** Due to the surrounding circumstances involved around Appellant, the Non-Disclosure agreement is considered retaliation and discrimination in accordance with EEOC Enforcement Guidance on non-waivable employee rights under EEOC enforced statues, EEOC Notice No. 915.002, a prohibited personnel practice and a violation of 5 USC 2302 (b)(1), (b)(8), (b)(9), (b)(10) and (b)(12) (IAF Tab 1 at 2 pg 3), Tab 6; Appellant Remand Exhibit John Does v. Commerce/EEOC etc).

**D.** The Non-Disclosure agreement is missing the required clause, which states: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive Order…" and "The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling."

Agency Representative Adam Chandler, stated in the Agency's Response to the Initial Appeal Acknowledgement Order, the Appellant would be facing removal from federal service if he was successful in vitiating the unlawful agreement (Agency Initial Response File Exhibit 1, May 21, 2012, pg.8 of 13).

This is a perceived threat, which is a prohibited personnel practice in violation of 5 USC (b)(8)(A), (B), (b)(9), (b)(12) and should be passed to OSC for further investigation. This goes to the depth of the disregard for employee protected and guaranteed rights, discriminatory animus and disregard for the law.

**E.** The Agency's *copycat* Non-Disclosure agreement deemed an "abomination" and an "unlawful scheme" by the Office of Special Counsel in the OSC stay Request, OSC Ex Rel John Does 1-4 v Department of Commerce Office of Inspector General. This a direct violation of EEOC Policy Guidance on Non-waivable Rights and prohibited personnel practices under 5 USC

8

2302 (b)(8), (b)(9), (b)(10), (b)(12), and (b)(13) and an act of malice and a reckless disregard for the law and a violation of Appellant's federally protected Title VII Civil Rights and the deliberate retaliation and per se discrimination Per Enforcement Guidance EEOC Notice No. 915.002 (at www.eeoc.gov) (Exhibit John Does v Dept of Commerce/EEOC Guidance).

**F.** The Non-Disclosure agreement violates annual appropriations law restricting communications with the Office of Special Counsel and Congress since 1988 appropriations law prohibits federal agencies from using any funds appropriated by Congress to implement or enforce any Non-Disclosure agreement absent statement informing employee's right under 5 USC 2302 (b)(8); 7211 of title 5, USC; and 5 USC 2302 (b)(13).

## Harmful Procedural Errors

**1.** The Agency refused to submit into the documentary record, which stated: *Deciding Official would decide Appellant's situation and made no mention of the inclusion of a Non-Disclosure agreement.* Pending a decision from the Deciding Official, the Agency served Appellant a Non-Disclosure settlement agreement in direct violation of the Agency procedure stated in the removal document.

**2.** Prior accommodations for Appellant's disability were made by Appellant's supervisor. An email response from the Management Official, professed his gratitude for the "**disposal**" of Appellant's pending EEOC claims in this adverse action (Tab 1 at 3).
EEOC claims should be voluntarily settled or adjudicated before the EEOC and Title VII Rights are nonwaivable rights. This adverse action is also in violation of EEOC Policy Guidance on non-waivable rights, i.e. Title VII Rights. Coercion by imposition of a Non-Disclosure agreement is not voluntary and is a prohibited personnel practice in violation of 5 USC 2302(b)(8), (b)(9) and (b)(12).

**3.** The Agency Deciding Official's, Terryne Murphy, admitted in the hearing that she assisted with the drafting of the Non-Disclosure agreement. Ms. Murphy assisted in committing a harmful procedural error withholding her decision on Appellant's response to charged misconduct until a nondisclosure agreement was secured. Ms. Murphy's participation in the process and procedure is in contradiction to the procedure stated in the removal document (Tab 1 at 1), which is a clear violation of Appellant's Constitutional Right to Due Process.

## Important Facts of Law

9

Absent the evidence and substantiation charges, The Judge failed to rule the Agency should not prevail on the charges of misconduct and the Agency decision secured by use of prohibited personnel practices should not be sustained.  The Agency's decision to suspend employee and coerce employee to retire should not be sustained, due to the agreement was secured by duress, with coercion, along with utilizing prohibited personnel practices and gross Agency procedural errors.

The Judge failed to rule Appellant was coerced into the Non-Disclosure agreement which is a prohibited personnel practice as in OSC Ex Rel John Does(1-4) v. Commerce, the Board has jurisdiction in this matter and the Appellant also prevails on the merit (Shultz v. U.S. Navy, Covington, Dumas, and Fruhauf,).  The terms and conditions of employment were dictated making Appellant's retirement and suspension adverse actions with no cause of action submitted or sustained by the Agency (Agency Remand Exhibit 3).

The Judge failed to conclude a **nexus** between the July 7, 2011 Proposal to Remove and the July 6, 2011 email to Census Director complaining of continued discriminatory actions against Appellant (IAF Tab 1 at 4);  the nexus to Appellant's disability as Appellant submitted evidence of long term documented disability as Appellant underwent total left hip replacement of February 27, 2012 (Tab 4 at 16-19); and the **nexus** to Appellant's pending EEOC claims in the Baltimore Field Office awaiting a decision on Appellants May 19, 2011 Motion in Opposition of the Agency's Motion to Dismiss (Tab 6 at 1).

The Judge grossly misstates fact that there was negotiation to forfeit complaints as evidence clearly shows Appellant waiting on a decision from the EEOC.  Appellant's flexible work schedule accommodations had no impact on Appellant's performance and thus no cause for action.

-In *Shultz v. U.S. Navy*, "if an employee can show that the Agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the Agency is purely coercive. Cosby v. United States, 189 Ct.Cl. 528, 417 F.2d 1345, 1355 (1969); Autera v. United States, 182 Ct.Cl. 495, 389 F.2d 815, 817 (1968); Rich v. Mitchell, 273 F.2d 78, 79 (D.C.Cir.1959), cert. denied, 368 U.S. 854 , 82 S.Ct. 91, 7 L.Ed.2d 52 (1961)".

-In *Scharf v. U.S. Air Force*, "with freedom of choice as the guiding principle, it has been held that the element of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action, see, e.g., McGucken v. United States, 407 F.2d 1349, 1351, 187 Ct.Cl. 284 (Ct.Cl.), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); (2) an employee unsuccessfully tries to withdraw his resignation before its effective date, see Cunningham v. United States, 423 F.2d 1379, 1384-85, 191 Ct.Cl. 471 (Ct.Cl.1970); (3) an employee submits a resignation under time pressure, see Perlman, 490 F.2d at 932-33; or (4) an

10

employee fails to understand the situation due to mental incompetence, see Manzi v. United States, 198 Ct.Cl. 489, 492 (1972). See Taylor v. United States, 591 F.2d 688, 692, 219 Ct.Cl. 86 (Ct.Cl.1979); Christie v. United States, 518 F.2d 584, 588, 207 Ct.Cl. 333 (Ct.Cl.1975).

-In Perlman v. United States, "whether an action is voluntary or involuntary is determined not by the form of the action, but by the circumstances that produced it. [Federal Personnel Manual Supp. 752-1, subchapter S1-2a(1).] See Ainsworth v. United States, 180 Ct.Cl. 166, 172 (1967), and the recent decision in Manzi v. United States, 198 Ct.Cl. 489, 495 (1972)."

-In McGucken v. United States, supra, in determining whether an employee's resignation was submitted under duress, the three elements necessary to show duress are (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party.

-In Fruehauf, "duress involves a step beyond mere illegality and implies that a person has been unlawfully constrained or compelled by another to perform an act under circumstances which prevent the exercise of free will (Fruehauf Southwest Garment Co v. United States).  The Non-Disclosure agreement, the Agency's Exhibit 3, and Union President's testimony show that constraint.

## Conclusion

Due to close proximity time of events shown in the timeline and the documentary evidence, it reasonably implies a causal relationship between all allegations the Appellant asserts. Therefore, the agreement given to Appellant under duress created by Agency actions, the Agency's procedural errors, along with the actions & inactions of Judge Turbitt for redress, and the use of a nondisclosure agreement and other prohibited personnel coerced Appellant into an unlawful agreement and denied Appellant his right to "Due Process" which undermines the entire Merit system.  Appellant should prevail on jurisdiction and thus on the merits.

## Damages

Appellant seeks all allowable damages, including consequential damages.
Damages to include reinstatement, back pay, benefits, actual and future compensatory damages; to include pecuniary and nonpecuniary damages.

11

Respectfully,

/signed/

Anthony W. Perry

12

Standard Form 50
Rev. 101
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) PERRY, ANTHONY W | | | | | 2. Social Security Number | 3. Date of Birth 01/29/36 | | 4. Effective Date 08/27/11 |
|---|---|---|---|---|---|---|---|---|

**FIRST ACTION** | | | | **SECOND ACTION** |

| 5-A. Code 450 | 5-B. Nature of Action SUSPENSION NTE 09/04/11 | | | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|---|---|
| 5-C. Code VAC | 5-D. Legal Authority 5 USC 7502 | | | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | | | 6-E. Code | 6-F. Legal Authority |

7. FROM: Position Title and Number
ITSPEC (SYSANALYSIS)

0005    G03301

| 8. Pay Plan GS | 9. Occ. Code 2210 | 10. Grade/Level 14 | 11. Step/Rate 08 | 12. Total Salary 129,758.00 | 13. Pay Basis PA |
|---|---|---|---|---|---|

| 12A. Basic Pay 104,458.00 | 12B. Locality Adj. 25,300.00 | 12C. Adj. Basic Pay 129,758.00 | 12D. Other Pay .00 |
|---|---|---|---|

14. Name and Location of Position's Organization
BUREAU OF THE CENSUS
DEPUTY DIRECTOR
ASSOC DIR INFO TECH&CH FIN OFC
LAN TECHNOLOGY SUPPORT OFFICE

15. TO: Position Title and Number

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|

| 18A. Basic Pay | 18B. Locality Adj. .00 | 18C. Adj. Basic Pay .00 | 18D. Other Pay .00 |
|---|---|---|---|

22. Name and Location of Position's Organization

CM 631112002500010000   PP 18 2011

**EMPLOYEE DATA**

| 23. Veterans Preference 1 | 1 - None 2 - 5-Point | 3 - 10-Point/Disability 4 - 10-Point/Compensable | 5 - 10-Point/Other 6 - 10-Point/Compensable/30% | 24. Tenure 1 | 0 - None 1 - Permanent | 2 - Conditional 3 - Indefinite | 25. Agency Use | 26. Veterans Preference for RIF  YES  X NO |
|---|---|---|---|---|---|---|---|---|

| 27. FEGLI YS | BASIC-5X ADDITIONAL-5X FAMILY | | 28. Annuitant Indicator 9   NOT APPLICABLE | | 29. Pay Rate Determinant 0 |
|---|---|---|---|---|---|

| 30. Retirement Plan C | FICA & CIVIL SERVICE | 31. Service Comp. Date (Leave) 08/18/82 | 32. Work Schedule F   FULL TIME | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|

**POSITION DATA**

| 34. Position Occupied 1 | 1 - Competitive Service 2 - Excepted Service | 3 - SES General 4 - SES Career Reserved | 35. FLSA Category E | 5 - Exempt N - Nonexempt | 36. Appropriation Code | 37. Bargaining Unit Status 8888 |
|---|---|---|---|---|---|---|

| 38. Duty Station Code 24-1520-033 | 39. Duty Station (City – County – State or Overseas Location) SUITLAND  PRINCE GEORGES  MD |
|---|---|

| 40. Agency Data | 41. | 42. | 43. | 44. A012990 |
|---|---|---|---|---|

45. Remarks
REASON FOR SUSPENSION: FOR RECEIPT OF PAY FOR TIME NOT WORKED AND FAILURE
TO FOLLOW SUPERVISORY DIRECTIVE.
FORWARDING ADDRESS= 5907 CROOM STATION RD , UPPER MARLBORO, MD 20772.
SERVICE CREDIT FOR RETIREMENT, REDUCTION-IN-FORCE, AND LEAVE ACCRUAL
PURPOSES CONTINUES FOR UP TO A MAXIMUM OF SIX MONTHS OF NONPAY STATUS
TIME PER CALENDAR YEAR.

| 46. Employing Department or Agency DEPARTMENT OF COMMERCE | | | 50. Signature/Authentication and Title of Approving Official E/S BY: TED A. JOHNSON |
|---|---|---|---|
| 47. Agency Code CM 63 | 48. Personnel Office ID 1798 | 49. Approval Date 08/25/11 | ACTING HUMAN RESOURCES DIRECTOR |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) PERRY, ANTHONY W | | | | | 2. Social Security Number | 3. Date of Birth 01/29/56 | 4. Effective Date 09/05/11 |
|---|---|---|---|---|---|---|---|

| FIRST ACTION | | | | SECOND ACTION | | | |
|---|---|---|---|---|---|---|---|
| 5-A. Code 292 | 5-B. Nature of Action RTD | | | 6-A. Code | | 6-B. Nature of Action | |
| 5-C. Code CGM | 5-D. Legal Authority 5 USC 552A(E)5 | | | 6-C. Code | | 6-D. Legal Authority | |
| 5-E. Code | 5-F. Legal Authority | | | 6-E. Code | | 6-F. Legal Authority | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number ITSPEC (SYSANALYSIS) 0005    G03301 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan GS | 17. Occ. Code 2210 | 18. Grade/Level 14 | 19. Step/Rate 08 | 20. Total Salary/Award 129,758.00 | 21. Pay Basis PA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12A. Basic Pay .00 | 12B. Locality Adj. .00 | 12C. Adj. Basic Pay | 12D. Other Pay .00 | | | 20A. Basic Pay 104,458.00 | 20B. Locality Adj. 25,300.00 | 20C. Adj. Basic Pay 129,758.00 | 20D. Other Pay .00 | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization BUREAU OF THE CENSUS DEPUTY DIRECTOR ASSOC DIR INFO TECH&CR FIN OFC LAN TECHNOLOGY SUPPORT OFFICE CM 63111200ZS00010000   PP 18 2011 |
|---|---|

## EMPLOYEE DATA

| 23. Veterans Preference 1-None  2-5-Point  3-10-Point/Disability  4-10-Point/Compensable  5-10-Point/Other  6-10-Point/Compensable/30% | 24. Tenure 0-None  2-Conditional  1-Permanent  3-Indefinite | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 | 1 | | YES   X NO |

| 27. FEGLI Y5   BASIC-5X ADDITIONAL-5X FAMILY | 28. Annuitant Indicator 9   NOT APPLICABLE | 29. Pay Rate Determinant 0 |
|---|---|---|

| 30. Retirement Plan C   FICA & CIVIL SERVICE | 31. Service Comp. Date (Leave) 08/18/82 | 32. Work Schedule F   FULL TIME | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|

## POSITION DATA

| 34. Position Occupied 1-Competitive Service  3-SES General  2-Excepted Service  4-SES Career Reserved | 35. FLSA Category E   E-Exempt  N-Nonexempt | 36. Appropriation Code | 37. Bargaining Unit Status 8888 |
|---|---|---|---|
| 1 | | | |

| 38. Duty Station Code 24-1520-033 | 39. Duty Station (City - County - State or Overseas Location) SUITLAND   PRINCE GEORGES MD |
|---|---|

| 40. Agency Data | 41. | 42. | 43. | 44. A012990 |
|---|---|---|---|---|

45. Remarks

$2

| 46. Employing Department or Agency DEPARTMENT OF COMMERCE | | | 50. Signature/Authentication and Title of Approving Official E/S BY: TED A. JOHNSON |
|---|---|---|---|
| 47. Agency Code CM 63 | 48. Personnel Office ID 1798 | 49. Approval Date 09/03/11 | ACTING HUMAN RESOURCES DIRECTOR |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 68
Rev. 291
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) PERRY, ANTHONY W | 2. Social Security Number | 3. Date of Birth 01/29/56 | 4. Effective Date 09/18/11 |
|---|---|---|---|

## FIRST ACTION | ## SECOND ACTION

| 5-A. Code 450 | 5-B. Nature of Action SUSPENSION NTE 09/18/11 | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 5-C. Code VAC | 5-D. Legal Authority 5 USC 7502 | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number ITSPEC (SYSANALYSIS) 0005 G03301 | 15. TO: Position Title and Number |
|---|---|

| 8. Pay Plan GS | 9. Occ. Code 2210 | 10. Grade/Level 14 | 11. Step/Rate 08 | 12. Total Salary 129,758.00 | 13. Pay Basis PA | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12A. Basic Pay 104,458.00 | 12B. Locality Adj. 25,300.00 | 12C. Adj. Basic Pay 129,758.00 | 12D. Other Pay .00 | | | 20A. Basic Pay | 20B. Locality Adj. .00 | 20C. Adj. Basic Pay | 20D. Other Pay .00 | | |

| 14. Name and Location of Position's Organization BUREAU OF THE CENSUS DEPUTY DIRECTOR ASSOC DIR INFO TECH&CH FIN OFC LAN TECHNOLOGY SUPPORT OFFICE | 22. Name and Location of Position's Organization CM 631112002500010000  PP 18 2011 |
|---|---|

## EMPLOYEE DATA

| 23. Veterans Preference 1 | 24. Tenure 1 | 25. Agency Use | 26. Veterans Preference for RIF YES [X] NO |
|---|---|---|---|
| 27. FEGLI Y5  BASIC-5X ADDITIONAL-5X FAMILY | 28. Annuitant Indicator 9  NOT APPLICABLE | | 29. Pay Rate Determinant 0 |
| 30. Retirement Plan C  FICA & CIVIL SERVICE | 31. Service Comp. Date (Leave) 08/18/82 | 32. Work Schedule F  FULL TIME | 33. Part-Time Hours Per Biweekly Pay Period |

## POSITION DATA

| 34. Position Occupied 1 | 35. FLSA Category E | 36. Appropriation Code | 37. Bargaining Unit Status 8888 |
|---|---|---|---|
| 38. Duty Station Code 24-1520-033 | 39. Duty Station (City-County-State or Overseas Location) SUITLAND  PRINCE GEORGES  MD | | |
| 40. Agency Data | 41. | 42. | 43. | 44. A012990 |

45. Remarks
REASON FOR SUSPENSION: FOR RECEIPT OF PAY FOR TIME NOT WORKED AND FAILURE TO FOLLOW SUPERVISORY DIRECTIVE.
FORWARDING ADDRESS=5907 CROOM STATION RD . UPER MARLBORO, MD 20772.
SERVICE CREDIT FOR RETIREMENT, REDUCTION-IN-FORCE, AND LEAVE ACCRUAL PURPOSES CONTINUES FOR UP TO A MAXIMUM OF SIX MONTHS OF NONPAY STATUS TIME PER CALENDAR YEAR.

83

| 46. Employing Department or Agency DEPARTMENT OF COMMERCE | 50. Signature/Authentication and Title of Approving Official E/S BY: TED A. JOHNSON |
|---|---|
| 47. Agency Code CM 63 | 48. Personnel Office ID 1798 | 49. Approval Date 09/08/11 | ACTING HUMAN RESOURCES DIRECTOR |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ANTHONY W | | 01/29/56 | 09/19/11 |

### FIRST ACTION

### SECOND ACTION

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 292 | RTD | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| CGM | 5 USC 552A(E)5 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | | | | | 15. TO: Position Title and Number |
|---|---|---|---|---|---|
| | | | | | ITSPEC (SYSANALYSIS) |
| | | | | | 0005   G03301 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | GS | 2210 | 14 | 08 | 129,758.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| .00 | .00 | | .00 | 104,458.00 | 25,300.00 | 129,758.00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF THE CENSUS |
| | DEPUTY DIRECTOR |
| | ASSOC DIR INFO TECH&CH FIN OFC |
| | LAN TECHNOLOGY SUPPORT OFFICE |
| | |
| | CM 63111200250001000   PP 19 2011 |

### EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF | |
|---|---|---|---|---|---|---|
| 1 | 1 – None       3 – 10-Point/Disab Dty      5 – 10-Point/Other<br>2 – 5-Point      4 – 10-Point/Compensable      6 – 10-Point/Compensable/30% | 1 | 0 – None       2 – Conditional<br>1 – Permanent      3 – Indefinite | | YES | X  NO |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| Y5 | BASIC-5X ADDITIONAL-5X FAMILY | 9 | NOT APPLICABLE | 0 |

| 30. Retirement Plan | | 31. Service Comp. Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|---|
| C | FICA & CIVIL SERVICE | 08/18/82 | F | FULL TIME | |

### POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 1 | 1 – Competitive Service    3 – SES Career<br>2 – Excepted Service    4 – SES Career Reserved | E   E – Exempt<br>N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 24-1520-033 | SUITLAND   PRINCE GEORGES MD |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | A012990 |

45. Remarks

B4

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF COMMERCE | E/S BY: TED A. JOHNSON |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | ACTING HUMAN RESOURCES DIRECTOR |
|---|---|---|---|
| CM 63 | 1798 | 09/17/11 | |

5–Part 50–316

Editions Prior to 7/91 Are Not Usable After 6/20/93
NSN 7540–01–333–6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ANTHONY W | | 01/29/56 | 09/24/11 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 4SO | SUSPENSION NTE 10/05/11 | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| VAC | 5 USC 7502 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

### SECOND ACTION

| 7. FROM: Position Title and Number | | | | | | 15. TO: Position Title and Number | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

ITSPEC (SYSANALYSIS)

0005    G03301

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19.Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 2210 | 14 | 08 | 129,758.00 | PA | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 104,458.00 | 25,300.00 | 129,758.00 | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| BUREAU OF THE CENSUS<br>DEPUTY DIRECTOR<br>ASSOC DIR INFO TECH&CH FIN OFC<br>LAN TECHNOLOGY SUPPORT OFFICE | CM 63111200250001000   PP 19 2011 |

### EMPLOYEE DATA

| 23. Veterans Preference | | | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 – None<br>2 – 5-Point | 3 – 10-Point/Disability<br>4 – 10-Point/Compensable | 5 – 10-Point/Other<br>6 – 10-Point/Compensable/30% | | I | 0 – None   1 – Conditional<br>1 – Permanent   3 – Indefinite | | YES   X   NO |

| 27. FEGLI | 28. Annuitant Indicator | 30. Pay Rate Determinant |
|---|---|---|
| Y5   BASIC-5X ADDITIONAL-5X FAMILY | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| C   FICA & CIVIL SERVICE | 08/18/82 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 1 | 1 – Competitive Service   3 – SES General<br>2 – Excepted Service   4 – SES Career Reserved | E   E – Exempt<br>N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 24-1520-033 | SUITLAND   PRINCE GEORGES   MD |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | A012990 |

### 45. Remarks

REASON FOR SUSPENSION: FOR RECEIPT OF PAY FOR TIME NOT WORKED AND FAILURE
TO FOLLOW SUPERVISORY DIRECTIVE.
FORWARDING ADDRESS=5907 CROOM STATION RD , UPPER MARLBORO, MD 20772.
SERVICE CREDIT FOR RETIREMENT, REDUCTION-IN-FORCE, AND LEAVE ACCRUAL
PURPOSES CONTINUES FOR UP TO A MAXIMUM OF SIX MONTHS OF NONPAY STATUS
TIME PER CALENDAR YEAR.

B5

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF COMMERCE | E/S BY: TED A. JOHNSON |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | ACTING HUMAN RESOURCES DIRECTOR |
| CM 63 | 1798 | 09/22/11 | |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 52
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | | | | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|---|---|---|---|
| PERRY, ANTHONY W | | | | | | | 01/29/56 | 09/25/11 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 721 | REASSIGNMENT | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| N2M | REG 335 102 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| ITSPEC (SYS/ANALYSIS) | ITSPEC (SYS/ANALYSIS) |
| 0005   G03391 | 0037   G03283 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | GS | 2210 | 14 | 08 | 129,758.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| .00 | .00 | | .00 | 104,458.00 | 25,300.00 | 129,758.00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF THE CENSUS<br>DEPUTY DIRECTOR<br>ASSOC DIR INFO TECH&CH FIN OFC<br>LAN TECHNOLOGY SUPPORT OFFICE<br><br>CM 631112002S00010000  PP 20 2011 |

### EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|
| 1<br>1 = None<br>2 = 5-Point | 3 = 10-Point/Disability<br>4 = 10-Point/Compensable<br>5 = 10-Point/Other<br>6 = 10-Point/Compensable/30% | 1<br>1 = None<br>4 = Permanent<br>2 = Conditional<br>3 = Indefinite | | YES   X   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| Y5   BASIC-5X ADDITIONAL-5X FAMILY | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| C   FICA & CIVIL SERVICE | 09/18/82 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1<br>1 = Competitive Service<br>2 = Excepted Service | 3 = SES General<br>4 = SES Career Reserved | E<br>E = Exempt<br>N = Nonexempt | | 3512 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 24-1520-033 | SUITLAND PRINCE GEORGES MD |

| 40. Agency Data | 41. | 42. | 43. | 44.<br>A012990 |
|---|---|---|---|---|

45. Remarks

POSITION IS AT THE FULL PERFORMANCE LEVEL OR BAND.

$\mathcal{B}6$

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF COMMERCE | E/S BY: TED A. JOHNSON |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | ACTING HUMAN RESOURCES DIRECTOR |
| CM 63 | 1798 | 09/23/11 | |

| 5-Part 50-316 | Editions Prior to 7/91 Are Not Usable After 6/30/93<br>NSN 7540-01-333-6238 |
|---|---|

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ANTHONY W | | 01/29/56 | 10/06/11 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 292 | RTD | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| CGM | 5 USC 552A(E)5 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | ITSPEC (SYSANALYSIS) |
| | 0027    G03283 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | GS | 2210 | 14 | 08 | 129,758.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| .00 | .00 | | .00 | 104,458.00 | 25,300.00 | 129,758.00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF THE CENSUS |
| | DEPUTY DIRECTOR |
| | ASSOC DIR INFO TECH&CH FIN OFC |
| | LAN TECHNOLOGY SUPPORT OFFICE |
| | CM 631112002500010000   PP 20 2011 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| 1 | 1 – None | 3 – 10-Point/Disability | 5 – 10-Point/Other | 1 | 0 – None | 2 – Conditional | | | YES | X | NO |
| | 2 – 5-Point | 4 – 10-Point/Compensable | 6 – 10-Point/Compensable/30% | | 1 – Permanent | 3 – Indefinite | | |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| Y5 | BASIC-5X ADDITIONAL-5X FAMILY | 9 | NOT APPLICABLE | 0 |

| 30. Retirement Plan | | 31. Service Comp. Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|---|
| C | FICA & CIVIL SERVICE | 08/18/82 | F | FULL TIME | |

## POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|---|
| 1 | 1 – Competitive Service | 2 – SES Career | E | E – Exempt | | 3812 |
| | 1 – Excepted Service | 4 – SES Career Reserved | | N – Nonexempt | | |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 14-1520-033 | SUITLAND   PRINCE GEORGES  MD |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | A012990 |

45. Remarks

β7

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF COMMERCE | E/S BY: TED A. JOHNSON |
| | ACTING HUMAN RESOURCES DIRECTOR |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| CM 63 | 1798 | 10/04/11 | |

5–Part 50–316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

Standard Form 55
Rev. 3/11
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ANTHONY W | | 01/29/56 | 10/09/11 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code **721** | 5-B. Nature of Action **REASSIGNMENT** | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code **N2M** | 5-D. Legal Authority **REG 335 102** | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | | | | | 15. TO: Position Title and Number | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ITSPEC (SYSANALYSIS) | | | | | ITSPEC (SYSANALYSIS) | | | | | |
| 0027    G03283 | | | | | 002A    G03283 | | | | | |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | GS | 2210 | 14 | 08 | 129,758.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| .00 | | | .00 | 104,458.00 | 25,300.00 | 129,758.00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF THE CENSUS |
| | DEPUTY DIRECTOR |
| | ASSOC DIR INFO TECH&CH FIN OFC |
| | LAN TECHNOLOGY SUPPORT OFFICE |
| | CM 631112002500010000  PF 21 2011 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| 1 — None  3 — 10-Point/Disability  5 — 10-Point/Other | | | 0 — None  2 — Conditional | | | |
| 2 — 5-Point  4 — 10-Point/Compensable  6 — 10-Point/Compensable/30% | | | 1 — Permanent  3 — Indefinite | | | YES  X  NO |
| **1** | | | **I** | | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| YS    BASIC-5X ADDITIONAL-5X FAMILY | 9    NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| C    FICA & CIVIL SERVICE | 08/18/82 | F    FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 — Competitive Service  3 — SES General | E    E — Exempt | | 3812 |
| 2 — Excepted Service  4 — SES Career Reserved | N — Nonexempt | | |
| **I** | | | |

| 38. Duty Station Code | 39. Duty Station (City — County — State or Overseas Location) |
|---|---|
| 24-1520-033 | SUITLAND  PRINCE GEORGES  MD |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | A012990 |

45. Remarks

POSITION IS AT THE FULL PERFORMANCE LEVEL OR BAND.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF COMMERCE | E/S BY: TED A. JOHNSON |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | ACTING HUMAN RESOURCES DIRECTOR |
|---|---|---|---|
| CM 63 | 1798 | 10/07/11 | |

5–Part 50–316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| PERRY, ANTHONY W | | | 01/29/56 | 03/25/12 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code **393** | 5-B. Nature of Action **REG WRI** | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code **Q7M** | 5-D. Legal Authority **REG 531.404** | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | ITSPEC (SYSANALYSIS) |
| | 0028      G03283 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 08 | | 129,758.00 | PA | GS | 2210 | 14 | 09 | 133,264.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 104,458.00 | 25,300.00 | 129,758.00 | .00 | 107,281.00 | 25,983.00 | 133,264.00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF THE CENSUS |
| | DEPUTY DIRECTOR |
| | ASSOC DIR INFO TECH&CH FIN OFC |
| | LAN TECHNOLOGY SUPPORT OFFICE |
| | CM 631112002500010000   PP 07 2012 |

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 — 1 = None 2 = 5-Point 3 = 10-Point/Disability 4 = 10-Point/Compensable 5 = 10-Point/Other 6 = 10-Point/Compensable/30% | 1 — 0 = None 1 = Permanent 2 = Conditional 3 = Indefinite | | YES   X NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| Y5   BASIC-5X ADDITIONAL-5X FAMILY | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| C   FICA & CIVIL SERVICE | 08/18/82 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 — 1 = Competitive Service 2 = Excepted Service 3 = SES General 4 = SES Career Reserved | E — E = Exempt N = Nonexempt | | 3812 |

| 38. Duty Station Code | 39. Duty Station (City — County — State or Overseas Location) |
|---|---|
| 24-1520-033 | SUITLAND  PRINCE GEORGES  MD |

| 40. Agency Data | 41. | 42. | 43. | 44. A012990 |
|---|---|---|---|---|

45. Remarks

WORK PERFORMANCE IS AT AN ACCEPTABLE LEVEL OF COMPETENCE.

B9

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF COMMERCE | E/S BY: TED A. JOHNSON |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | ACTING HUMAN RESOURCES DIRECTOR |
|---|---|---|---|
| CM 63 | 7798 | 03/24/12 | |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 6

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ANTHONY W | | 01/29/56 | 04/02/12 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 303 | RETIREMENT-SPECIAL OPTION | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| V3P | 5 U.S.C. 8336(D)(2) | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| AZM | OPM VERA 2012 029 | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| ITSPEC (SYSANALYSIS) | |
| 0028   G03283 | |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 2210 | 14 | 09 | 133,264.00 | PA | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 107,281.00 | 25,983.00 | 133,264.00 | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| BUREAU OF THE CENSUS | |
| DEPUTY DIRECTOR | |
| ASSOC DIR INFO TECH&CH FIN OFC | |
| LAN TECHNOLOGY SUPPORT OFFICE | 5A |
| | CM 63111200250001000   PP 07 2012 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|---|
| 1 | 1 – None   3 – 10-Point/Disability   5 – 10-Point/Other   2 – 5-Point   4 – 10-Point/Compensable   6 – 10-Point/Compensable/30% | | | 1 | 0 – None   1 – Conditional   1 – Permanent   3 – Indefinite | | YES   X   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| Y5   BASIC+5X ADDITIONAL+5X FAMILY | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| C   FICA & CIVIL SERVICE | 08/18/82 | F   FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 – Competitive Service   3 – SES General   2 – Excepted Service   4 – SES Career Reserved | E   E – Exempt   N – Nonexempt | | 3812 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 24-1520-033 | SUITLAND   PRINCE GEORGES MD |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | A012990 |

45. Remarks

FORWARDING ADDRESS= 5907 CROOM STATION RD, UPPER MARLBORO, MD 20772.
LUMP-SUM PAYMENT TO BE MADE FOR ANY UNUSED ANNUAL LEAVE.
REASON FOR RETIREMENT: PERSONAL REASONS.
TRANSFER FEHB ENROLLMENT TO OPM.
SF-8 FURNISHED.
BASIC LIFE INSURANCE: ELECTED NO REDUCTION.
ADDITIONAL OPTIONAL INSURANCE: ELIGIBLE TO CONTINUE: COVERAGE BEGAN
4/23/2000; LOWEST MULTIPLE DURING LAST FIVE YEARS 5 ; ELECTED NO REDUCTIO
N.
FAMILY OPTIONAL INSURANCE: ELIGIBLE TO CONTINUE: COVERAGE BEGAN
04/23/2000 LOWEST MULTIPLE DURING LAST 5 YEARS 5; ELECTED NO REDUCTION.
IF YOU ARE REEMPLOYED ANYWHERE WITHIN THE FEDERAL GOVERNMENT, INCLUDING
EMPLOYMENT IN NON-APPROPRIATED FUND INSTRUMENTALITIES OR WITH AN AGENCY
* REMARKS TO BE CONTINUED ON NEXT FORM *

B10

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF COMMERCE | /ES/ BY: TED A. JOHNSON |
| 47. Agency Code   48. Personnel Office ID   49. Approval Date | ACTING HUMAN RESOURCES DIRECTOR |
| CM 63   1798   03/23/12 | |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 52
Rev. 921
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| PERRY, ANTHONY W | | /1 | 01/19/56 | 04/03/12 |

| **FIRST ACTION** | | **SECOND ACTION** | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 303 | RETIREMENT-SPECIAL OPTION | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| V3P | 5 U.S.C. 8336(D)(Z) | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| AZM | OPM VERA 2012 029 | | |

7. FROM: Position Title and Number
ITSPEC (SYSANALYSIS)

0028    G03283

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19.Step/Rate | 23. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 2210 | 14 | 09 | 133,264.00 | PA | | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 107,281.00 | 25,983.00 | 133,264.00 | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| BUREAU OF THE CENSUS<br>DEPUTY DIRECTOR<br>ASSOC DIR INFO TECH&CH FIN OFC<br>LAN TECHNOLOGY SUPPORT OFFICE | 5A<br>CM 631112002500010060   PP 07 2012 |

## EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF | |
|---|---|---|---|---|---|---|
| 1 | 1 – None  3 – 10-Point/Disability  5 – 10-Point/Other<br>2 – 5-Point  4 – 10-Point/Compensable  6 – 10-Point/Compensable/32% | 1 | 0 – None  1 – Permanent  3 – Conditional<br>2 – Indefinite | | YES | X | NO |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| Y5 | BASIC-5X ADDITIONAL-5X FAMILY | 9 | NOT APPLICABLE | 0 |

| 30. Retirement Plan | | 31. Service Comp. Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours Per |
|---|---|---|---|---|---|
| C | FICA & CIVIL SERVICE | 08/18/82 | F | FULL TIME | Biweekly Pay Period |

## POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 1 | 1 – Competitive Service  3 – SES General<br>2 – Excepted Service  4 – SES Career Reserved | E | E – Exempt<br>N – Nonexempt | | 3812 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 24-1520-033 | SUITLAND  PRINCE GEORGES  MD |

| 40. Agency Data | 41. | 42. | 43. | 44.<br>A012990 |
|---|---|---|---|---|

45. Remarks

* CONTINUATION OF REMARKS *
OF THE US THROUGH A PERSONAL SERVICES CONTRACT, OR OTHER DIRECT CONTRACT
WITHIN 5 YEARS OF SEPARATING WITH AN INCENTIVE PAYMENT YOU MUST REPAY T
HE  FULL AMOUNT OF YOUR VOLUNTARY SEPARATION INCENTIVE PAYMENT (VSIP).
THE OPM VSIP AUTHORITY NUMBER IS 2012-017. THE OPM VERA AUTHORITY NUM
BER  IS 2012-029.

B11

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF COMMERCE | E/S BY: TED A. JOHNSON |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | ACTING HUMAN RESOURCES DIRECTOR |
| CM 63 | 1798 | 03/23/12 | |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

**EXHIBIT 1 Pg. JA526**

Case 1:17-cv-01932-TSC  Document 30-4  Filed 11/19/18  Page 368 of 424
USCA Case #14-1155    Document #1537564    Filed: 02/13/2015    Page 528 of 596

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) PERRY, ANTHONY W | | | 2. Social Security Number | 3. Date of Birth 01/29/56 | 4. Effective Date 04/03/12 |
|---|---|---|---|---|---|

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code 825 | 5-B. Nature of Action SEPARATION INCENTIVE | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code ZAA | 5-D. Legal Authority PUBLIC LAW 107-296 | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number ITSPEC (SYSANALYSIS) 0018     G03183 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 12. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award 25,000.00 | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12A. Basic Pay | | 12B. Locality Adj. .00 | | 12C. Adj. Basic Pay | 12D. Other Pay .00 | 20A. Basic Pay | | 20B. Locality Adj. .00 | | 20C. Adj. Basic Pay | 20D. Other Pay .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization BUREAU OF THE CENSUS DEPUTY DIRECTOR ASSOC DIR INFO TECH&CH FIN OFC LAN TECHNOLOGY SUPPORT OFFICE CM 63111200250001000   FF 07 2012 |
|---|---|

### EMPLOYEE DATA

| 23. Veterans Preference I | 1 = None     3 = 10-Point/Disability     5 = 10-Point/Other 2 = 5-Point    4 = 10-Point/Compensable     6 = 10-Point/Compensable 30% | | 24. Tenure 1 | 0 = None     2 = Conditional 1 = Permanent  3 = Indefinite | 25. Agency Use | 26. Veterans Preference for RIF YES  X  NO |
|---|---|---|---|---|---|---|
| 27. FEGLI Y5 | BASIC-5X ADDITIONAL-5X FAMILY | | 28. Annuitant Indicator 9   NOT APPLICABLE | | | 29. Pay Rate Determinant 0 |
| 30. Retirement Plan C | FICA & CIVIL SERVICE | 31. Service Comp. Date (Leave) 08/18/82 | 32. Work Schedule F   FULL TIME | | | 33. Part-Time Hours Per Biweekly Pay Period |

### POSITION DATA

| 34. Position Occupied 1 | 1 = Competitive Service   3 = SES General 2 = Excepted Service   4 = SES Career Reserved | 35. FLSA Category E | E = Exempt N = Nonexempt | 36. Appropriation Code | | 37. Bargaining Unit Status 3512 |
|---|---|---|---|---|---|---|
| 38. Duty Station Code 24-1520-033 | | 39. Duty Station (City – County – State or Overseas Location) SUITLAND  PRINCE GEORGES  MD | | | | |

| 40. Agency Data | 41. | 42. | 43. | 44. A012990 |
|---|---|---|---|---|

45. Remarks

SALARY BLOCK CONTAINS SEPARATION INCENTIVE AMOUNT

812

| 46. Employing Department or Agency DEPARTMENT OF COMMERCE | | | 50. Signature/Authentication and Title of Approving Official E/S BY: TED A. JOHNSON ACTING HUMAN RESOURCES DIRECTOR |
|---|---|---|---|
| 47. Agency Code CM 63 | 48. Personnel Office ID 1798 | 49. Approval Date 03/24/12 | |

5–Part 50–316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

Standard Form 50-B
Rev. 7/91
U.S.Office of Personnel Management
FPM Supp. 296-33, Subch. 4

**NOTIFICATION OF PERSONNEL ACTION**

Exception to SF 50-B
approved by GSA/IRMS 2-87

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ANTHONY W | | 01/29/56 | 11/10/96 |

FIRST ACTION | SECOND ACTION

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 885 | PERFORMANCE AWARD | | |

| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
|---|---|---|---|
| V4R | 5 USC 4505A | | |

| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
|---|---|---|---|
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | SUPVY COMPR SCNTST |
| | 0001    CB0896 |

| 8. Pay Plan | 9. Occ Code | 10.Grade/Level | 11.Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18.Grade/Level | 19.Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,645.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF THE CENSUS |
| | COMPUTER SERVICES DIVISION |
| | DATA CAPTURE SUPPORT BRANCH |

EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1  1=None  2=5 Point.  3=10 Point/Disability  4=10 Point/Compensable  5=10 Point/Other  6=10 Point/Compensable/30% | 1  0=None  1=Permanent  2=Conditional  3=Indefinite | | YES  [X] NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C  BASIC | 9  NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31 Service Comp Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| C  FICA & CIVIL SERVICE | 06/18/82 | F  FULL TIME | |

POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1  1=Competitive Service  2=Excepted Service  3=SES General  4=SES Career Reserved | E  E=Exempt  N=Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City-County-State or Overseas Location) |
|---|---|
| 24-1520-033 | SUITLAND  PRINCE GEORGES  MD |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | A012990 |

45. Remarks

PERFORMANCE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

B13

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF COMMERCE | *(signature)* |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| CM 63 | 1798 | 11/09/96 | MARILIA A. MATOS<br>PERSONNEL OFFICER |

5-Part  50-318

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

CM 63211600000000000000
PP 23 1*1996*BATCH 17980001 000-68 200-68 AG/EO 63-1798
Pleading Number : 2014008445         Submission date : 2014-01-26 22:28:41    Confirmation Number: 795511777    page 28 of 47
Pleading Number : 2014008776         Submission date : 2014-01-27 16:37:05    Confirmation Number: 629680935    page 16 of 19

Standard Form 50-B
Rav. 7/91
U.S.Office of Personnel Management
FPM Supp. 296-33, Subch. 4

**NOTIFICATION OF PERSONNEL ACTION**

Exception to SF 50-B
approved by GSA/IRMS 2-87

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| PERRY, ANTHONY W | | | 01/29/56 | 08/12/01 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action | | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|---|
| 713 | CHG TO LOWER GRADE | | | |
| 5-C. Code | 5-D. Legal Authority | | 6-C. Code | 6-D. Legal Authority |
| N2M | REG 335.102 | | | |
| 5-E. Code | 5-F. Legal Authority | | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | | | | | | 15. TO: Position Title and Number | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| COMPR SCNTST | | | | | | SUPV COMPR SCNTST | | | | |
| 0001 | CB2123 | | | | | 0001 | CB0896 | | | |

| 8. Pay Plan | 9. Occ. Code | 10.Grade/Level | 11.Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18.Grade/Level | 19.Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GG | | 14 | 04 | 82,168.00 | PA | GS | 1550 | 13 | 8 | 77965.00 | PA |
| 12A. Basic Pay | | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | | 20A. Basic Pay | | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay | |
| 74,542.00 | | 7,626.00 | 82,168.00 | .00 | | 74265.00 | | 3700.00 | 77965.00 | .00 | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| BUREAU OF THE CENSUS<br>DEPUTY DIRECTOR<br>ASSOC DIR FOR DECENNIAL CENSUS<br>DEC SYSTEMS & CONT MGMT OFF | BUREAU OF THE CENSUS<br>DEPUTY DIRECTOR<br>ASSOC DIR FOR INFORMATION TECH<br>COMPUTER SERVICES DIVISION<br><br>CH 631112002100000000      PP 16 2001 |

**EMPLOYEE DATA**

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| 1 | 1=None 3=10 Point/Disability 5=10 Point/Other<br>2=5 Point 4=10 Point/Compensable 6=10 Point/Compensable/30% | | 1 | 0=None 2=Conditional<br>1=Permanent 3=Indefinite | | YES  ☒ NO |
| 27. FEGLI | | | 28. Annuitant Indicator | | | 29. Pay Rate Determinant |
| Y5 | BASIC-5X ADDITIONAL-5X FAMILY | | 9 | NOT APPLICABLE | | 6 |
| 30. Retirement Plan | | 31 Service Comp Date (Leave) | 32. Work Schedule | | | 33. Part-Time Hours Per Biweekly Pay Period |
| C | FICA & CIVIL SERVICE | 08/18/82 | F | FULL TIME | | |

**POSITION DATA**

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 1 | 1=Competitive Service 3=SES General<br>2=Excepted Service 4=SES Career Reserved | E | E=Exempt<br>N=Nonexempt | | 8888 |
| 38. Duty Station Code | | 39. Duty Station (City-County-State or Overseas Location) | | |
| 24-1520-033 | | SUITLAND    PRINCE GEORGES    MD | | |
| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
| | | | | A012990 |

| 45. Remarks |
|---|
| POSITION IS AT THE FULL PERFORMANCE LEVEL.<br>THIS ACTION RETURNS YOU TO YOUR PERMANENT POSITION OF RECORD.  IF<br>YOU ARE TEMPORARILY PROMOTED IMMEDIATELY FOLLOWING THIS ACTION,<br>  YOU WILL RECEIVE A  SEPARATE SF-50, NOTIFICATION OF PERSONNEL ACTION,<br>  ADVISING YOU OF THE SUBSEQUENT PROMOTION. |

B14



| 46. Employing Department or Agency | | | 50. Signature/Authentication and Title of Approving Official |
|---|---|---|---|
| DEPARTMENT OF COMMERCE | | | *Tyra Dent Smith* |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | TYRA DENT SMITH |
| CM 63 | 1798 | 08/09/01 | CHIEF, HUMAN RESOURCES DIVISION |

5-Part  50-316                                                          Editions Prior to 7/01 Are Not Usable After 6/30/03
                   2 - OPF Copy - Long-Term Record - DO NOT DESTROY                    NSN 7540-01-333-6238

CM 631112002100000000      PP 16 1*2001*BATCH 17985828 000-00 203-08 AG/EO 63-1798

Standard Form 50-B
Rev. 7/91
U.S.Office of Personnel Management
FPM Supp. 296-33, Subch. 4

**NOT·   CATION OF PERSONNEL   :TION**

Exception to SF 50-B
approved by GSA/IRMS 2-67

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| PERRY, ANTHONY W | | 01/29/56 | 08/12/01 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code  5-D. Nature of Action | | 6-A. Code  6-D. Nature of Action | |
| 702    PROMOTION | | | |
| 5-C. Code  5-D. Legal Authority | | 6-C. Code  6-D. Legal Authority | |
| N3M    REG 335.102 COMP | | | |
| 5-E. Code  5-F. Legal Authority | | 6-E. Code  6-F. Legal Authority | |

| 7. FROM: Position Title and Number | | | | | | | | 15. TO: Position Title and Number | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SUPVY COMPR SCNTST | | | | | | | | COMPR SPECLST (SYS ANALS) | | | | | | |
| 0001      CE0896 | | | | | | | | 0016      G01726 | | | | | | |

| 8. Pay Plan | 9. Occ Code | 10.Grade/Level | 11.Step/Rate | 12. Total Salary | | 13. Pay Basis | 16. Pay Plan | 17. Occ Code | 18.Grade/Level | 19.Step/Rate | 20. Total Salary/Award | | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1550 | 13 | 08 | 77,965.00 | | PA | GS | 0334 | 14 | 04 | 82,168.00 | | PA |
| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | | | | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay | | | |
| 74,265.00 | 3,700.00 | 77,965.00 | | .00 | | | 74,542.00 | 7,626.00 | 82,168.00 | | .00 | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| BUREAU OF THE CENSUS<br>DEPUTY DIRECTOR<br>ASSOC DIR FOR INFORMATION TECH<br>COMPUTER SERVICES DIVISION | BUREAU OF THE CENSUS<br>DEPUTY DIRECTOR<br>ASSOC DIR FOR INFORMATION TECH<br>CLIENT SUPPORT OFFICE<br><br>CM 631112002500000000     PP 16 2001 |

| EMPLOYEE DATA | | | | |
|---|---|---|---|---|
| 23. Veterans Preference | | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
| 1 | 1-None  3-10 Point/Disability  5-10 Point/Other<br>2-5 Point.  4-10 Point/Compensable  6-10 Point/Compensable/30% | | 1  0-None  2-Conditional<br>1-Permanent  3-Indefinite | | YES  ☒ NO |
| 27. FEGLI | | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
| Y5    BASIC-5X ADDITIONAL-5X FAMILY | | | 9    NOT APPLICABLE | | 0 |
| 30. Retirement Plan | 31 Service Comp Date (Leave) | 32. Work Schedule | | | 33. Part-Time Hours Per Biweekly Pay Period |
| C    FICA & CIVIL SERVICE | 08/18/82 | F    FULL TIME | | | |

| POSITION DATA | | | | |
|---|---|---|---|---|
| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | | 37. Bargaining Unit Status |
| 1  1-Competitive Service  3-SES General<br>2-Excepted Service  4-SES Career Reserved | E  6-Exempt<br>N-Nonexempt | | | 8888 |
| 38. Duty Station Code | 39. Duty Station (City-County-State or Overseas Location) | | | |
| 24-1520-033 | SUITLAND   PRINCE GEORGES   MD | | | |
| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
| | | | | A012990 |

45. Remarks

THIS WAIVER REQUEST WAS APPROVED BY THE BUREAU'S COMMITTEE
DATED 08/07/01
POSITION IS AT THE FULL PERFORMANCE LEVEL.
SELECTED FROM    CEN-01-3026   DATED   03/05/01

B15



| 46. Employing Department or Agency | | | 50. Signature/Authentication and Title of Approving Official |
|---|---|---|---|
| DEPARTMENT OF COMMERCE | | | *Tyra Dent Smith* |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | TYRA DENT SMITH |
| CM 63 | 1798 | 08/10/01 | CHIEF, HUMAN RESOURCES DIVISION |
| 5-Part   50-316 | | | Editions Prior to 7/91 Are Not Usable After 6/30/93<br>NSN 7540-01-333-6239 |

2 - OFF Copy - Long-Term Record - DO NOT DESTROY

CM 631112002500000000    PP 16 1*2001*BATCH 17985830 000-00 201-04 AG/EO 63-1798

webTA: Certified T&A Summary

Page 1 of 1

| Name: | ANTHONY W PERRY | | | Pay Period: | 20 : Sep 26, 2010 to Oct 9, 2010 |
| Time Card Type: | Regular | | | Leave Year | 2010 |
| Time In Pay: 80:00 | | Other Time: 0:00 | | Dollar Transactions: $0.00 | Days In Pay: 10 |

**Work Time**

| Transaction | PP | Stk | Account | Sep 26 27 S M | 28 29 T W | 30 T | 1 F | 2 S | Oct 3 4 S M | 5 T | 6 W | 7 T | 8 F | 9 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Time In | 7:30 | | 7:30 | | | 10:30 7:00 | 7:30 | 7:30 | 7:30 | | | | |
| | | | Time Out | 15:00 | | 11:30 | | | 12:30 5:00 | 14:30 | 5:00 | 11:30 | | | | |
| Regular Base Pay | | 013600000000000000 WORK 6135 | 9 | | 4 | | 13 | 2 | 9 | 4 | 7 | 4 | | 26 | 39 |
| | | | Work Time Total | 9 | | 4 | | 13 | 2 | 9 | 4 | 7 | 4 | | 26 | 39 |

**Leave and Other Time**

| | | | Absence Start | | | | | | | | | 11:30 2:00 | | | |
| | | | Absence End | | | | | | | | | 5:00 5:00 | | | |
| Annual Leave | | 010100000000000000 | | 8 | 0 | 8 | | 27 | | | | | | 27 |
| Sick Leave | | LEAVE/HOLIDAY | | | | | | | 7 | | 5 | 2 | | 14 | 14 |
| | | | Leave and Other Time Total | 8 | 9 | 8 | | 27 | | 7 | | 5 | 2 | | 14 | 42 |
| | | | Daily Total | 8 | 9 | 8 | 5 | 4 | 40 | | 9 | 9 | 8 | 9 | 4 | 40 | 80 |

**Remarks To Payroll**
Oct 4, sick leave 7:30-10:30 and 12:30-5:00

| Type | Status | Date | Supervisor | Sep 26 27 S M | 28 29 T W | 30 T | 1 F | 2 S | Oct 3 4 S M | 5 T | 6 W | 7 T | 8 F | 9 S |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Leave Requests** | | | | | | | | | | | | | | |
| Admin/Excused Absence | Pending | | | | 9 | 9 | 9 | | | | | | | |
| Sick Leave | Pending | | | | | | | | | 7 | | 5 | 2 | |
| **Premium Pay Requests** | | | | | | | | | | | | | | |
| | | | | (No Premium Pay Requests submitted) | | | | | | | | | | |

**T&A Profile**

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | 7:30-5:30TH-TH AND 7:30-11:30TF |
| Alternative Schedule | Variable Workweek |
| Agency | CEN5 |
| State | MD |
| Town | 1520 |
| Unit | 35 |
| Timekeeper | 87 |
| New Contact Point | Yes |
| Retain Data | TCs and Accounts |
| Account Data Code | Manual Entry |
| Service Computation Date | Aug 10 1993 |
| Annual Leave Category | 8 Indpp |
| Personal Leave Ceiling | 240:00 |
| Supervisor | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | 112:30 | 8:00 | 175:30 | 77:00 | 98:30 |
| Sick | 289:45 | 4:00 | 292:45 | 14:00 | 278:45 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | | | 146:30 |
| Maximum Available Sick | | | | | 302:45 |
| Use or Lose Leave | | | | | |

**Remarks**

Your signature certifies that all reported time was worked and approved according to law and regulation.

**Validated By :** Tieshia Saunders
**Validation Date :** Oct 12 2010 3:49 PM

**Certified By :** CATHERINE LE
**Certification Date :** Oct 12 2010 3:50 PM

The complete T&A status history is displayed below. It may contain events that happened since the certification shown above took place.

**Status History**

| Timestamp | Status | Name | Message |
|---|---|---|---|
| Oct 25 2010 04:00 PM | Built | SYSTEM | Built In Build ID 5111532. |
| Oct 25 2010 07:42 AM | Supervisor Certified | REED, DALE (REED0002) | |
| Oct 13 2010 07:24 PM | Timekeeper Validated | HARNON, SYLVIA (HARN0907) | |
| Oct 13 2010 02:24 PM | Historical Correction Record | HARNON, SYLVIA (HARN0907) | |
| Oct 12 2010 10:19 PM | Built | SYSTEM | Built In Build ID 5111474. |
| ===> Oct 12 2010 03:51 PM | Supervisor Certified | LE, CATHERINE (LE00001) | |
| Oct 12 2010 03:49 PM | Timekeeper Validated | SAUNDERS, TIESHIA (SAUN0316) | |
| Oct 12 2010 03:49 PM | Validation Reset By Edit | SAUNDERS, TIESHIA (SAUN0316) | |
| Oct 12 2010 10:16 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Oct 12 2010 10:16 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Sep 27 2010 08:44 PM | New Record Created | SYSTEM | Created during Build ID 5111455 for pay period 20. |

A1

webTA: Certified T&A Summary                                                    Page 1 of 1

| Name: | ANTHONY W PERRY | | | | | | | | | | | Pay Period: | 11 : Oct 10, 2010 to Oct 23, 2010 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Card Type: | Regular | | | | | | | | | | | Leave Year: | 2010 | | | | | | | |
| Time in Pay: 00:00 | | | Other Time: 0:00 | | | | | | | | | | Dollar Transactions: $0.00 | | | | | Days in Pay: 10 | | |

**Work Time**

| Transaction | Prk | Sfx | Account | Oct 10 11 12 13 14 15 16 S M T W T F S | Wk 1 Total | Oct 17 18 19 20 21 22 23 S M T W T F S | Wk 2 Total |
|---|---|---|---|---|---|---|---|
| | | | | Time In / Time Out | | | |
| Regular Base Pay | | | 013600000000000000 WORK 0136 | 9 9 9 9 4 | 40 | 9 9 9 9 | 37 | 67 |
| | | | Work Time Total | 9 9 9 9 4 | 40 | 9 9 9 9 | 37 | 67 |

**Leave and Other Time**

| | | | Absence Start / Absence End | | | | | |
|---|---|---|---|---|---|---|---|---|
| Annual Leave | | | 010100000000000000 | | | | 4 | 4 | 4 |
| Sick Leave | | | LEAVE/HOLIDAY | | | 9 | | 9 | 9 |
| | | | Leave and Other Time Total | | | 9 | 4 | 13 | 12 |
| | | | Daily Total | 9 9 9 9 4 | 40 | 9 9 9 9 4 | 40 | 80 |

| Type | Status | Date | Supervisor | Oct 10 11 12 13 14 15 16 S M T W T F S | Oct 17 18 19 20 21 22 23 S M T W T F S |
|---|---|---|---|---|---|
| **Leave Requests** | | | | | |
| Sick Leave | Approved | 19-OCT-10 | DALE R. REED (REED0002) | | 9 |
| Annual Leave | Approved | 19-OCT-10 | DALE R. REED (REED0002) | | 4 |
| **Premium Pay Requests** | | | | (No Premium Pay Requests submitted) | |

| T&A Profile | | | Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|---|---|
| Pay Plan | General Schedule (reg) | Annual | 98:30 | 0:00 | 106:30 | 4:00 | 102:30 |
| Tour of Duty | Full Time | Sick | 272:45 | 4:00 | 282:45 | 9:00 | 273:45 |
| Daily Hours | 80 | **Leave Year Projection** | | | | |
| Work Week | 7:30-5:30M-TH AND 7:30-11:30F | Maximum Available Annual | | 142:30 | | |
| Alternative Schedule | Variable Workweek | Maximum Available Sick | | 293:45 | | |
| Agency | CENS | Use or Lose Leave | | — | | |
| State | MD | | | | | |
| Town | 1526 | | | | | |
| Unit | 25 | | | | | |
| Timekeeper | 07 | | | | | |
| Return Data | TCs and Accounts | | | | | |
| Account Data Code | Manual Entry | | | | | |
| Service Computation Date | Aug 18 1982 | | | | | |
| Annual Leave Category | 8 hr/pp | | | | | |
| Personal Leave Ceiling | 240:00 | | | | | |
| Supervisor | | | | | | |

Remarks:

Your signature certifies that all reported time was worked and approved according to law and regulation.

Affirmed By: ANTHONY PERRY
Affirmation Date: Oct 19 2010 1:01 PM

Certified By : DALE REED
Certification Date : Oct 25 2010 7:42 AM

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

**Status History**

| Timestamp | Status | Name | Message |
|---|---|---|---|
| Oct 25 2010 07:10 PM | Built | SYSTEM | Built in Build ID SLL1531. |
| ===> Oct 25 2010 07:42 AM | Supervisor Certified | REED, DALE (REED0002) | |
| Oct 19 2010 01:01 PM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Oct 19 2010 01:01 PM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Oct 12 2010 10:19 PM | New Record Created | SYSTEM | Created during Build ID SLL1474 for pay period 21. |

**webTA: Certified T&A Summary**                                         Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | 22 : Oct 24, 2010 to Nov 6, 2010 |
|---|---|---|---|
| Time Card Type: | Regular | Leave Year: | 2010 |
| Time In Pay: 00:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |

## Work Time

| Transaction | Pfx | Sfx | Account | Oct 24 M | 25 T | 26 W | 27 T | 28/29/30 F S | Wk 1 | Oct 31 S | Nov 1 M | 2 T | 3 W | 4 T | 5 F | 6 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Time In | | | | | | | | | | | | | | |
| | | | | Time Out | | | | | | | | | | | | | | |
| Regular Base Pay | | | 013600000000000000 WORK 0135 | 4:30 | 9 | 9 | 9 | 4 | 35:30 | | 8 | 9 | 9 | 3 | | | 30 | 65:30 |
| | | | Work Time Total | 4:30 | 9 | 9 | 9 | 4 | 35:30 | | | 9 | 9 | 9 | 3 | | 30 | 65:30 |

## Leave and Other Time

| | | | | Absence Start | | | | | | | | | | | | | | |
| | | | | Absence End | | | | | | | | | | | | | | |
| Annual Leave | | | 010100000000000000 | | | | | | | | 9 | | | 1 | 1 | | 10 | 10 |
| Sick Leave | | | LEAVE/HOLIDAY | 4:30 | | | | | 4:30 | | | | | | | | | 4:30 |
| | | | Leave and Other Time Total | 4:30 | | | | | 4:30 | | 9 | | | 1 | | | 10 | 14:30 |
| | | | Daily Total | 9 | 9 | 9 | 9 | 4 | 40 | | 9 | 9 | 9 | 4 | | | 40 | 80 |

| Type | Status | Date | Supervisor | Oct 24 M | 25 T | 26 W | 27 T | 28 T | 29 F | 30 S | Oct 31 S | Nov 1 M | 2 T | 3 W | 4 T | 5 F | 6 S |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Leave Requests** | | | | | | | | | | | | | | | | | |
| Sick Leave | Approved | 03-NOV-10 | DALE R. REED (REED0002 ) | 4:30 | | | | | | | | | | | | | |
| Annual Leave | Approved | 03-NOV-10 | DALE R. REED (REED0002 ) | | | | | | | | | | 9 | | 1 | | |
| **Premium Pay Requests** | | | | | | | (No Premium Pay Requests submitted) | | | | | | | | | |

| T&A Profile | | Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|---|---|
| Pay Plan | General Schedule (reg) | Annual | 129:30 | 8:00 | 137:30 | 10:00 | 127:30 |
| Tour of Duty | Full Time | Sick | 273:45 | 4:00 | 277:45 | 4:30 | 273:15 |
| Duty Hours | 80 | | | | | | |
| Work Week | 7:30-5:30M-TH AND 7:30-11:30F | **Leave Year Projection** | | | | | |
| Alternative Schedule | Variable Workweek | Maximum Available Annual | | | 159:30 | | |
| Agency | CERS | Maximum Available Sick | | | 289:15 | | |
| State | MD | Use or Lose Leave | | | -- | | |
| Team | 1520 | | | | | | |
| Unit | 25 | | | | | | |
| Timekeeper | 07 | | | | | | |
| Roads Data | TOs and Accounts | | | | | | |
| Account Data Code | Manual Entry | | | | | | |
| Service Computation Date | Aug 15 1932 | | | | | | |
| Annual Leave Category | 8 hr/pp | | | | | | |
| Personal Leave Ceiling | 240:00 | | | | | | |
| Supervisor | | | | | | | |

Remarks:

Your signature certifies that all reported time was worked and approved according to law and regulation.

**Affirmed By:** ANTHONY PERRY
**Affirmation Date:** Nov 03 2010 9:35 AM

**Certified By :** PATRICIA MUSSELMAN
**Certification Date :** Nov 08 2010 10:30 AM

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

| **Status History** | | | | |
|---|---|---|---|---|
| Timestamp | Status | Name | Message | |
| Nov 08 2010 07:14 PM | Build | SYSTEM | Built in Build ID S111544. | |
| Nov 08 2010 10:30 AM | Supervisor Certified | MUSSELMAN, PATRICIA (MUSSE001) | | |
| Nov 03 2010 09:35 AM | Employee Allasted | PERRY, ANTHONY (PERRY001) | | |
| Nov 03 2010 09:35 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | | |
| Oct 25 2010 07:18 PM | New Record Created | SYSTEM | Created during Build ID S111532 for pay period 22 | |

A3

EXHIBIT 1 Pg. JA533

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 375 of 424
USCA Case #14-1155      Document #1537564      Filed: 02/13/2015      Page 535 of 596

webTA: Certified T&A Summary

| Name: | ANTHONY W PERRY | | | | Pay Period: | | | 23 : Nov 7, 2010 to Nov 20, 2010 | | | | |
| Time Card Type: | Regular | | | | Leave Year: | | | 2010 | | | | |
| Time In Pay: 80:00 | | | Other Time: 0:00 | | Dollar Transactions: $0.00 | | | | | Days In Pay: 10 | | |

| Transaction | Per | Site | Account | Nov 7 | 8 | 9 | 10 | 11 | 12 | 13 | Nov 14 | 15 | 16 | 17 | 18 | 19 | 20 | Wk 1 | Wk 2 | Total |

**Work Time**

| Regular Base Pay | | | 013600000000000 WORK 0136 | | 9 | 9 | 9 | | 5 | | 32 | 6 | 9 | 9 | 5 | 4 | | | 30 | 62 |
| | | | Work Time Total | 9 | 9 | 9 | 9 | | 5 | | 32 | 6 | 9 | 9 | 5 | 4 | | | 30 | 62 |

**Leave and Other Time**

| | | | Absence Start | | | | | | | | | | 1:00 | | | | | |
| | | | Absence End | | | | | | | | | | 5:00 | | | | | |
| Sick Leave | | | 010100000048000000 | | | | | | | | | | | 4 | | | 4 | 4 |
| Federal Holiday | | | LEAVE/HOLIDAY | | | | 8 | | | 8 | | | | | | | | 8 | 8 |
| Annual Leave | | | 013600000000000 WORK 0138 | | | | | | | | | 3 | 3 | | | | | 6 | 6 |
| | | | Leave and Other Time Total | | | | 8 | | 8 | | 3 | 3 | 4 | 7 | | | 10 | 18 |
| | | | Daily Total | 9 | 9 | 9 | 9 | 8 | | 40 | 9 | 9 | 9 | 9 | 4 | | 40 | 80 |

| Type | Status | Date | Supervisor | Nov 7 | 8 | 9 | 10 | 11 | 12 | 13 | Nov 14 | 15 | 16 | 17 | 18 | 19 | 20 | |

**Leave Requests**

| Annual Leave | Approved | 10-NOV-10 | DALE R. REED (REED0003) | | | | | | | | | -3 | | 2:30 | | |
| Sick Leave | Approved | 19-NOV-10 | DALE R. REED (REED0003) | | | | | | | | | | | 4 - | | |

**Premium Pay Requests**

(No Premium Pay Requests submitted)

| **T&A Profile** | |
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | 7:30-5:30M-TH AND 7:30-11:30F |
| Alternative Schedule | Variable Workweek |
| Agency | CBIS |
| State | ND |
| Team | 1500 |
| Unit | 25 |
| Timekeeper | 67 |
| Retain Data | ITD and Accounts |
| Account Data Code | Manual Entry |
| Service Computation Date | Aug 18 1982 |
| Annual Leave Category | 8 hr/pp |
| Personal Leave Ceiling | 240:00 |
| Supervisor | |

| **Leave Data** | Fwd | Accr. | Avail | Used | Bal |
| Annual | 127:30 | 8:00 | 135:30 | 6:00 | 129:30 |
| Sick | 273:15 | 4:00 | 277:15 | 4:00 | 273:15 |
| Other | | | | | 6:00 |

| **Leave Year Projection** | |
| Maximum Available Annual | 153:30 |
| Maximum Available Sick | 285:15 |
| Use or Lose Leave | -- |

Remarks

Your signature certifies that all reported time was worked and approved according to law and regulation.

**Affirmed By:** ANTHONY PERRY
**Affirmation Date:** Nov 19 2010 8:30 AM

**Certified By. :** DALE REED
**Certification Date :** Nov 22 2010 10:42 AM

The complete T&A status history is displayed below. It may contain events that happened since the certification shown above took place.

| **Status History** | | | |
| Timestamp | Status | Name | Message |
| Nov 22 2010 07:35 PM | Built | SYSTEM | Built in Build ID 5111975. |
| Nov 22 2010 10:43 AM | Supervisor Certified | REED, DALE (REED0003) | |
| Nov 19 2010 08:30 AM | Employee Affirmed | PERRY, ANTHONY (PERRY001) | |
| Nov 19 2010 08:30 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Nov 19 2010 08:13 AM | Validation Reset By Edit | PERRY, ANTHONY (PERRY001) | |
| Nov 18 2010 09:47 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Nov 18 2010 09:47 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Nov 18 2010 09:34 AM | Validation Reset By Edit | PERRY, ANTHONY (PERRY001) | |
| Nov 18 2010 09:24 AM | Timekeeper Validated | SOKELL, LEON (SOKEL301) | |
| Nov 18 2010 09:23 AM | Validation Reset By Edit | SOKELL, LEON (SOKEL301) | |
| Nov 18 2010 10:29 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Nov 18 2010 10:29 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Nov 08 2010 07:14 PM | New Record Created | SYSTEM | Created during Build ID 5111564 for pay period 23. |

A4

webTA: Certified T&A Summary

Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | 24 : Nov 21, 2010 to Dec 4, 2010 |
| Time Card Type: | Regular | Leave Year: | 2010 |
| Time In Pay: 0:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |

| Transaction | PP | S/K | Account | Nov 21 22 23 24 25 26 27 S M T W T F S Wk 1 | Nov Dec 28 29 30 1 2 3 4 S M T W T F S Wk 2 | Total |
|---|---|---|---|---|---|---|

**Work Time**

| | | Time In | 7:30 | | |
| | | Time Out | 16:00 | | |
| Regular Base Pay | 0101:00000000000 LEAVE/HOLIDAY | | 8 | 8 | | 8 |
| Regular Base Pay | 0134U000000100000 WORK 0136 | 2:30 | 2:30 | 8 9 9 8 4 | 40 | 42:30 |
| | Work Time Total | 2:30 | 8 | 10:30 | 8 9 9 8 4 | 40 | 50:30 |

**Leave and Other Time**

| | | Absence Start | | | |
| | | Absence End | | | |
| Annual Leave | 0136000000000000 WORK 0136 | 4:30 9 9 | 5 | 27:30 | | | 27:30 |
| Sick Leave | | 2 | | 2 | | | 2 |
| | Leave and Other Time Total | 8:30 9 9 | 5 | 29:30 | | | 29:30 |
| | Daily Total | 9 9 9 8 5 | 40 | 9 9 9 8 4 | 40 | 80 |

| Type | Status | Date | Supervisor | Nov 21 22 23 24 25 26 27 S M T W T F S | Nov Dec 28 29 30 1 2 3 4 S M T W T F S |
|---|---|---|---|---|---|
| **Leave Requests** | | | | | |
| Annual Leave | Approved | 22-NOV-10 | DALE R. REED (REED0002) | 5 9 9 4 | |
| Sick Leave | Approved | 22-NOV-10 | DALE R. REED (REED0002) | 2 | |
| **Premium Pay Requests** | | | | (No Premium Pay Requests submitted) | |

| T&A Profile | | | Leave Data | Fwd | Accr | Avai | Used | Bal |
|---|---|---|---|---|---|---|---|---|
| Pay Plan | General Schedule (reg) | | Annual | 179:00 | 29:00 | 137:30 | 27:30 | 110:00 |
| Tour of Duty | Full Time | | Sick | 273:15 | 4:00 | 277:15 | 2:00 | 275:15 |
| Duty Hours | 80 | | **Leave Year Projection** | | | | | |
| Work Week | 7:30-5:30M-TH AND 7:30-11:30F | | Maximum Available Annual | | 126:00 | | | |
| Alternative Schedule | Variable Workweek | | Maximum Available Sick | | 283:15 | | | |
| Agency | CERIS | | Use or Lose Leave | | ** | | | |
| State | MD | | | | | | | |
| Town | 1570 | | | | | | | |
| Unit | 55 | | | | | | | |
| Timekeeper | 20 | | | | | | | |
| Accptn Data | TTC: and Accounts | | | | | | | |
| Account Data Code | Manual Entry | | | | | | | |
| Service Computation Date | Aug 18 1902 | | | | | | | |
| Annual Leave Category | 8 hr/pp | | | | | | | |
| Personal Leave Ceiling | 240:00 | | | | | | | |
| Supervisor | | | | | | | | |
| Remarks: | | | | | | | | |

Your signature certifies that all reported time was worked and approved according to law and regulation.

**Validated By : SYLVIA HARMON**
**Validation Date : Dec 02 2010 2:00 PM**

**Certified By : DALE REED**
**Certification Date : Dec 03 2010 9:25 AM**

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

**Status History**

| Timestamp | Status | Name | Message |
|---|---|---|---|
| Dec 04 2010 11:41 PM | Built | SYSTEM | Built in Build ID 5111535. |
| Dec 03 2010 09:26 AM | Supervisor Certified | REED, DALE (REED0002) | |
| Dec 02 2010 02:00 PM | Timekeeper Validated | HARMON, SYLVIA (HARM0007) | |
| Dec 02 2010 07:00 PM | Validation Reset By Edit | HARMON, SYLVIA (HARM0007) | |
| Nov 30 2010 03:06 PM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Nov 30 2010 03:06 PM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Nov 22 2010 07:35 PM | New Record Created | SYSTEM | Created during Build ID 5111575 for pay period 24. |

A5

**webTA: Certified T&A Summary**                                                     Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | 25 ( Dec 5, 2010 to Dec 10, 2010 |
|---|---|---|---|
| Time Card Type: | Regular | Leave Year: | 2010 |
| Time In Pay: 00:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |

| Transaction | PN | S/N | Account | Dec 5 6 7 8 9 10 11 S M T W T F S | Wk 1 | Dec 12 13 14 15 16 17 18 S M T W T F S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | |
| | | | Time In / Time Out | | | | | |
| Regular Base Pay | | | 013G0000000000000 WORK 0136 | 9 4 4 7 4 | 28 | 9 3 0 4:30 4 | 28:30 | 56:30 |
| | | | Work Time Total | 9 4 4 7 4 | 28 | 9 3 0 4:30 4 | 28:30 | 56:30 |
| **Leave and Other Time** | | | | | | | | |
| | | | Absence Start / Absence End | | | | | |
| Annual Leave | | | 013G0000000000000 WORK 0136 | | | 4:30 | 4:30 | 4:30 |
| Sick Leave | | | | 5 5 2 | 12 | 7 | 7 | 19 |
| | | | Leave and Other Time Total | 5 5 2 | 12 | 7 4:30 | 11:30 | 23:30 |
| | | | Daily Total | 9 9 9 9 4 | 40 | 9 9 9 9 4 | 40 | 80 |

| Type | Status | Date | Supervisor | Dec 5 6 7 8 9 10 11 S M T W T F S | Dec 12 13 14 15 16 17 18 S M T W T F S |
|---|---|---|---|---|---|
| **Leave Requests** | | | | | |
| Sick Leave | Approved | 15-DEC-10 | DALE R. REED (REED0002) | 5 5 2 | 7 |
| Annual Leave | Approved | 17-DEC-10 | DALE R. REED (REED0002) | | 4:30 |
| **Premium Pay Requests** | | | | (No Premium Pay Requests submitted) | |

| T&A Profile | | | Leave Data | Fwd | Accr | Avall | Used | Bal |
|---|---|---|---|---|---|---|---|---|
| Pay Plan | General Schedule (reg) | | Annual | 119:00 | 0:00 | 118:00 | 4:30 | 113:30 |
| Tour of Duty | Full Time | | Sick | 375:15 | 4:00 | 279:15 | 19:00 | 260:15 |
| Daily Hours | 80 | | **Leave Year Projection** | | | | | |
| Work Week | 9:30-5:30M-TH AND 7:30-11:30F | | Maximum Available Annual | | 121:30 | | | |
| Alternative Schedule | Variable Workweek | | Maximum Available Sick | | 264:15 | | | |
| Agency | CENS | | Use or Lose Leave | | -- | | | |
| State | MD | | | | | | | |
| Team | 1520 | | | | | | | |
| Unit | 25' | | | | | | | |
| Timekeeper | 07 | | | | | | | |
| Relate Data | TCs and Accounts | | | | | | | |
| Account Daily Code | Manual Entry | | | | | | | |
| Service Computation Date | Aug 18 1902 | | | | | | | |
| Annual Leave Category | 6 hr/pp | | | | | | | |
| Personal Leave Ceiling | 240:00 | | | | | | | |

Supervisor

Remarks:

Your signature certifies that all reported time was worked and approved according to law and regulation.

Affirmed By: ANTHONY PERRY
Affirmation Date: Dec 17 2010 9:32 AM

Certified By : DALE REED
Certification Date : Dec 20 2010 12:39 PM

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

| **Status History** | | | |
|---|---|---|---|
| Timestamp | Status | Name | Message |
| Dec 20 2010 03:03 PM | Built | SYSTEM | Built in Build ID S111642. |
| Dec 20 2010 12:39 PM | Supervisor Certified | REED, DALE (REED0002) | |
| Dec 17 2010 09:32 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Dec 17 2010 09:32 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Dec 17 2010 09:10 AM | Validation Reset By Edit | PERRY, ANTHONY (PERRY001) | |
| Dec 14 2010 09:34 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Dec 14 2010 09:34 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Dec 04 2010 11:41 PM | New Record Created | SYSTEM | Created during Build ID S111595 for pay period 25. |

A6

webTA: Certified T&A Summary

Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | 26 ) Dec 19, 2010 to Jan 1, 2011 |
|---|---|---|---|
| Time Card Type: | Regular | Leave Year: | 2010 |
| Time In Pay: 00:00 | Other Time: 0:00 | Dollar Transactions: 00.00 | Days In Pay: 0 |

| Transaction | pos | Stk | Account | Dec 19,20,21,22,23,24,25 S,M,T,W,T,F,S Wk1 | Dec/Jan 26,27,28,29,30,31,1 S,M,T,W,T,F,S Wk2 | Total |
|---|---|---|---|---|---|---|
| **Work Time** | | | | | | |
| | | | Time In / Time Out | | | |
| Regular Base Pay | | | 013520000000000 WORK 0126 | 4 | 4 | 2 | | 10 | | | | | 10 |
| | | | Work Time Total | 4 | 4 | 2 | | 10 | | | | | 10 |
| **Leave and Other Time** | | | | | | |
| | | | Absence Start / Absence End | | | |
| Annual Leave | | | 010019088000000 | | | | 5 | | 5 | 9 9 9 | 1 | | 28 | 33 |
| Sick Leave | | | LEAVE/HOLIDAY | 5 9 | | | | 14 | | | | | 14 |
| Federal Holiday | | | | | | 8 | | 8 | | | 8 | | 8 | 16 |
| Admin/Excused Absence | | | 013600000000000 WORK 0136 | | 5 2 | | | 7 | | | | | 7 |
| | | | Leave and Other Time Total | 5 9 5 2 8 | 34 | 9 9 9 | 8 | 36 | 70 |
| | | | Daily Total | 9 9 9 8 | 44 | 9 9 9 | 8 | 36 | 80 |

**Remarks To Payroll**
12-22-2010 (EEOC response)

| Type | Status | Date | Supervisor | Dec 19,20,21,22,23,24,25 S,M,T,W,T,F,S | Dec/Jan 26,27,28,29,30,31,1 S,M,T,W,T,F,S | Rqst Total |
|---|---|---|---|---|---|---|
| **Leave Requests** | | | | | | |
| Annual Leave | Approved 15-DEC-10 DALE R. REED [REE00007] | | | | 4 | | | 9 9 9 | 1 | |
| Admin/Excused Absence | Approved 23-DEC-10 DALE R. REED [REE00002] | | | | 5 | | | | |
| **Premium Pay Requests** | | | | | (No Premium Pay Requests submitted) | |

| T&A Profile | | | Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|---|---|---|
| Pay Plan | General Schedule (reg) | | Annual | 113:30 8:00 121:30 33:00 88:30 |
| Tour of Duty | Full Time | | Sick | 250:15 4:00 264:15 14:00 250:15 |
| Duty Hours | 80 | | Other | | | 23:00 |
| Work Week | 7:30-5:30M-TH AND 7:30-11:30F | | **Leave Year Projection** | |
| Alternative Schedule | Variable Workweek | | Maximum Available Annual | 88:30 |
| Agency | CBHS | | Maximum Available Sick | 250:15 |
| State | MD | | Use or Lose Leave | — |
| Town | 1520 | | | |
| Unit | 25 | | | |
| Timekeeper | 07 | | | |
| Roll!h Data | TCA and Accounts | | | |
| Account Data Code | Manual Entry | | | |
| Service Computation Date | Aug 18 1993 | | | |
| Annual Leave Category | 3 hrs/pp | | | |
| Personal Leave Ceiling | 240:00 | | | |
| Supervisor | | | | |
| Remarks | | | | |

Your signature certifies that all reported time was worked and approved according to law and regulation.

Validated By : VIRGINIA NICHOLSON
Validation Date : Dec 30 2010 11:30 AM

Certified By : DALE REED
Certification Date : Jan 03 2011 1:46 PM

This complete T&A status history is displayed below. It may contain events that happened since the certification shown above took place.

| **Status History** | | | |
|---|---|---|---|
| Timestamp | Status | Name | Message |
| Jan 03 2011 08:19 PM | Built | SYSTEM | Built in Build ID 5111053. |
| ====> Jan 03 2011 01:47 PM | Supervisor Certified | REED, DALE [REE00007] | |
| Dec 30 2010 11:30 AM | Timekeeper Validated | NICHOLSON, VIRGINIA [NICH0011] | |
| Dec 30 2010 11:30 AM | Validation Reset by Emp | NICHOLSON, VIRGINIA [NICH0011] | |
| Dec 28 2010 06:46 PM | Timekeeper Validated | COKILL, LEON [COKEL901] | |
| Dec 28 2010 06:46 PM | Validation Reset by Emp | COKILL, LEON [COKEL901] | |
| Dec 28 2010 02:22 PM | Timekeeper Validated | NICHOLSON, VIRGINIA [NICH0011] | |
| Dec 28 2010 02:18 PM | Validation Reset by Emp | NICHOLSON, VIRGINIA [NICH0011] | |
| Dec 22 2010 09:59 AM | Employee Attested | PERRY, ANTHONY [PERRY001] | |
| Dec 22 2010 09:59 AM | Employee Validated | PERRY, ANTHONY [PERRY001] | |
| Dec 20 2010 03:05 PM | New Record Created | SYSTEM | Created during Build ID 5111642 for pay period 26.] |

*A7*

webTA: Certified T&A Summary                                    Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | 01 : Jan 2, 2011 to Jan 15, 2011 | |
|---|---|---|---|---|
| Time Card Type: | Regular | Leave Year: | 2011 | |
| Time in Pay: 80:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | | Days in Pay: 10 |

| Transaction | Prj | Stk | Account | 2 3 4 5 6 7 8<br>S H T W T F S Wk 1 | 9 10 11 12 13 14 15<br>S H T W T F S Wk 2 | Total |
|---|---|---|---|---|---|---|
| **Work Time** | | | | | | |
| | | | Time In<br>Thru Out | | | |
| Regular Base Pay | | | 0135000000000000<br>WORK 0135 | 6 4 | 2 | 12 | 9 | | | | 9 | 21 |
| | | | **Work Time Total** | 6 4 | 2 | 12 | 9 | | | | 9 | 21 |
| **Leave and Other Time** | | | | | | |
| | | | Absence Start<br>Absence End | 1:00<br>4:30 | | | |
| Sick Leave | | | 0181000000000000<br>LEAVE/HOLIDAY | 3 5 9 9 | 26 | | 9 4 | 13 | 39 |
| Annual Leave | | | 0135000000000000 | 2 | 2 | | | | 2 |
| Admin/Excused Absence | | | 0135000000000000<br>WORK 0135 | | | 9 9 | 18 | 18 |
| | | | **Leave and Other Time Total** | 3 5 9 9 2 | 28 | 9 9 9 4 | 31 | 59 |
| | | | **Daily Total** | 9 9 9 9 4 | 40 | 9 9 9 9 4 | 40 | 80 |

| Remarks To Payroll |
|---|
| OK 01/12/11 Admin judge ordered EEO conference, Prep on 01/11/11 |

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | 7:30-5:30M-TH AND 7:30-14:30F |
| Alternative Schedule | Variable Workweek |
| Agency | CINS |
| State | MD |
| Town | 1520 |
| Unit | 25 |
| Timekeeper | 07 |
| Basin Code | TCs and Accounts |
| Account Data Code | Manual Entry |
| Service Computation Date | Aug 10 1982 |
| Annual Leave Category | 8 hr/bu |
| Personal Leave Ceiling | 1540:00 |
| Supervisor | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | 82:30 | 8:00 | 96:30 | 2:00 | 94:30 |
| Sick | 250:15 | 4:00 | 254:15 | 39:00 | 215:15 |
| Other | | | | | 18:00 |

| Leave Year Projection | |
|---|---|
| Maximum Available Annual | 294:30 |
| Maximum Available Sick | 319:15 |
| Use or Lose Leave | 54:30 |

Remarks:
Your signature certifies that all reported time was worked and approved according to law and regulation.

**Validated By : SYLVIA HARMON**
**Validation Date : Jan 14 2011 8:30 AM**

**Certified By : DALE REED**
**Certification Date : Jan 18 2011 12:47 PM**

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

| Status History | | | |
|---|---|---|---|
| Timestamp | Status | Name | Message |
| Jan 18 2011 10:54 PM | Built | SYSTEM | Built in Batch ID 5111667. |
| Jan 18 2011 12:47 PM | Supervisor Certified | REED, DALE (REED0002) | |
| Jan 14 2011 08:30 AM | Timekeeper Validated | HARMON, SYLVIA (HARM0007) | |
| Jan 14 2011 08:30 AM | Validation Reset By Edit | HARMON, SYLVIA (HARM0007) | |
| Jan 07 2011 11:06 AM | Employee Allocated | PERRY, ANTHONY (PERRY001) | |
| Jan 07 2011 11:06 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Jan 07 2011 11:00 AM | Validation Reset By Edit | PERRY, ANTHONY (PERRY001) | |
| Jan 04 2011 12:30 PM | Timekeeper Validated | HARMON, SYLVIA (HARM0007) | |
| Jan 03 2011 08:19 PM | New Record Created | SYSTEM | Created during Build ID 5111663 for pay period PL |

webTA: Certified T&A Summary

Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | 02 : Jan 16, 2011 to Jan 29, 2011 |
| Time Card Type: | Regular | Leave Year: | 2011 |
| Time in Pay: 80:00 | | Other Time: 0:00 | Other Transactions : $0.00 | | Days in Pay: 10 |

## Work Time

| Transaction | Pls | Sfx | Account | Jan 16 17 18 19 20 21 22 S M T W T F S Wk 1 | Jan 23 24 25 26 27 28 29 S M T W T F S Wk 2 | Total |
|---|---|---|---|---|---|---|
| | | | Time In | | | |
| | | | Time Out | | | |
| Regular Base Pay | | | 0136000000000000 WORK 0136 | 7 4 11 7 | 7 | 18 |
| | | | Work Time Total | 7 4 11 7 | 7 | 18 |

## Leave and Other Time

| | | | Absence Start | 7:00 0:00 | 7:00 10:00 | |
| | | | Absence End | | | |
| Sick Leave | | | 0101000000000000 LEAVE/HOLIDAT | 9 9 | 18 7 14 | 11 2* |
| Federal Holiday | | | | 8 | 8 | 8 |
| Annual Leave | | | | 1 | 1 2 | 2 2 |
| Admin/Excused Absence | | | 0136000000000000 WORK 0136 | 3 | 2 9 | 15 20 |
| Hazardous Weather | | | | | 2 | 2 2 |
| | | | Leave and Other Time Total | 9 2 9 9 | 29 9 3 9 9 4 | 33 62 |
| | | | Daily Total | 9 9 9 9 4 | 40 9 9 9 9 4 | 40 80 |

| Type | Status | Date | Supervisor | Jan 16 17 18 19 20 21 22 23 24 25 26 27 28 29 S M T W T F S S M T W T F S |
|---|---|---|---|---|
| **Leave Requests** | | | | |
| Sick Leave | Approved | 31-JAN-11 | DALE R. REED (REED0002) | 9 9 |
| Admin/Excused Absence | Approved | 31-JAN-11 | DALE R. REED (REED0002) | 9 |
| **Premium Pay Requests** | | | | [No Premium Pay Requests submitted] |

| T&A Profile | | | Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|---|---|---|
| Pay Plan | General Schedule (reg) | | Annual | 94:30 | 8:00 | 102:30 | 3:00 | 99:30 |
| Tour of Duty | Full Time | | Sick | 215:15 | 4:00 | 219:15 | 29:00 | 190:15 |
| Duty Hours | 80 | | Other | | | | 36:00 | |
| Work Week | 7:18-5:30M-TH AND 7:30-11:30F | | **Leave Year Projection** | | | | | |
| Alternative Schedule | Variable Workweek | | Maximum Available Annual | | | 291:30 | | |
| Agency | CEMS | | Maximum Available Sick | | | 286:15 | | |
| State | MD | | Use or Lose Leave | | | 51:30 | | |
| Town | 1520 | | | | | | | |
| Unit | 15 | | | | | | | |
| Timekeeper | 07 | | | | | | | |
| Retain Data | TCs and Accounts | | | | | | | |
| Account Data Code | Manual Entry | | | | | | | |
| Service Computation Date | Aug 18 1962 | | | | | | | |
| Annual Leave Category | 0 hr/pp | | | | | | | |
| Personal Leave Ceiling | 240:00 | | | | | | | |
| Supervisor | | | | | | | | |
| Remarks | | | | | | | | |

Your signature certifies that all reported time was worked and approved according to law and regulation.

**Affirmed By:** ANTHONY PERRY
**Affirmation Date:** Jan 31 2011 10:23 AM

**Certified By :** DALE REED
**Certification Date :** Feb 01 2011 6:54 AM

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

| Status History | | | |
|---|---|---|---|
| Timestamp | Status | Name | Message |
| Feb 01 2011 02:03 PM | Built | SYSTEM | Built in Build 10 SL11706. |
| Feb 01 2011 06:54 AM | Supervisor Certified | REED, DALE (REED0002) | |
| Jan 31 2011 10:23 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Jan 31 2011 10:23 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Jan 31 2011 10:23 AM | Validation Reset By Edit | PERRY, ANTHONY (PERRY001) | |
| Jan 28 2011 11:41 AM | Timekeeper Validated | MARMON, SYLVIA (MARM0007) | |
| Jan 28 2011 11:40 AM | Validation Reset By Edit | MARMON, SYLVIA (MARM0007) | |
| Jan 25 2011 01:50 PM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Jan 25 2011 01:50 PM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Jan 18 2011 10:54 PM | New Record Created | SYSTEM | Created during Build 10 SL11607 for pay period 02. |

A9

Pleading Number : 2014008445     Submission date : 2014-01-26 22:28:41     Confirmation Number: 795511777

webTA: Certified T&A Summary

Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | 03 : Jan 30, 2011 to Feb 12, 2011 |
| Time Card Type: | Regular | Leave Year: | 2011 |
| Time in Pay: 80:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days in Pay: 10 |

**Work Time**

**Leave and Other Time**

**Leave Requests**

**Premium Pay Requests**

(No Premium Pay Requests authorized)

| T&A Profile | |
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | 7:30-5:15M-TH AND 7:30-11:30F |
| Alternative Schedule | Variable Workweek |
| Agency | CFWS |
| State | IND |
| Town | 1530 |
| Unit | 25 |
| Timekeeper | 107 |
| Retain Data | TCI and Accounts |
| Account Data Code | Manual Entry |
| Service Computation Date | Aug 18 1982 |
| Annual Leave Category | 8 hr/pp |
| Personal Leave Ceiling | 240:00 |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
| Annual | 99:30 | 0:00 | 107:30 | 4:00 | 103:30 |
| Sick | 190:15 | 4:00 | 194:15 | 42:00 | 152:15 |
| Other | | | | 14:00 | |

| Leave Year Projection | |
| Maximum Available Annual | 207:30 |
| Maximum Available Sick | 244:15 |
| Use or Lose Leave | 47:00 |

Remarks:

Your signature certifies that all reported time was worked and approved according to law and regulation.

Validated By : SYLVIA HARMON
Validation Date : Feb 14 2011 12:03 PM

Certified By : DALE REED
Certification Date : Feb 14 2011 12:05 PM

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

**Status History**

| Timestamp | Status | Name | Message |
| Feb 14 2011 07:43 PM | Build | SYSTEM | Built in Build ID 5111745. |
| ==> Feb 14 2011 12:05 PM | Supervisor Certified | REED, DALE (REED0002) | |
| Feb 14 2011 12:03 PM | Timekeeper Validated | HARMON, SYLVIA (HARMON007) | |
| Feb 14 2011 12:03 PM | Validation Reset By Edit | HARMON, SYLVIA (HARMON007) | |
| Feb 14 2011 06:10 AM | Timekeeper Validated | HARMON, SYLVIA (HARMON007) | |
| Feb 10 2011 12:20 PM | Validation Reset By Edit | PERRY, ANTHONY (PERRY001) | |
| Feb 02 2011 10:05 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Feb 02 2011 10:05 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Feb 01 2011 09:08 PM | New Record Created | SYSTEM | Created during Build ID 5111706 for pay period 03. |

A10

## webTA: Certified T&A Summary

Page 1 of 1

| Name: | ANTHONY W PERRY | | Pay Period: | 04 : Feb 13, 2011 to Feb 26, 2011 |
| Time Card Type: | Regular | | Leave Year: | 2011 |

| Time In Pay: 86:00 | | | | Other Time: 0:00 | | | | | Other Transactions: 80.00 | | | | | | | | | | | | Days In Pay: 10 | |

| | | | | | Feb | | | | | | | | Feb | | | | | | | |
| Transaction | PN | SN | Account | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | | | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |

### Work Time

| | | | | Time In | | | | | | | | | 1:00 | | | | | | | |
| | | | | Time Out | | | | | | | | | 15:00 | | | | | | | |
| Regular Base Pay | | | 0156000000000000 WORK 0136 | 9 | | | 4 | 13 | | | | 4 | | 4 | 8 | 21 |
| | | | | Work Time Total | 9 | | | 4 | 13 | | | | 4 | | 4 | 8 | 21 |

### Leave and Other Time

| | | | | Absence Start | | | | | | | | | | | | | | | | |
| | | | | Absence End | | | | | | | | | | | | | | | | |
| Annual Leave | | | 0165100000000000 | | | | | | | | | 1 | 1 | 9 | | 10 | 10 |
| Sick Leave | | | LEAVE/HOLIDAY | | 9 | 9 | 9 | | 27 | | | 1 | 5 | 9 | | 14 | 41 |
| Federal Holiday | | | 0101000000260000 Holiday Leave | | | | | | | 8 | | | | | | 8 | 8 |
| | | | | Leave and Other Time Total | | 9 | 9 | 9 | | 27 | 9 | 9 | 5 | 9 | | 32 | 59 |
| | | | | Daily Total | 9 | 9 | 9 | 9 | 4 | 40 | 9 | 9 | 9 | 9 | 4 | 40 | 80 |

| T&A Profile | | | Leave Data | Fwd | Accr | Avail | Used | Bal |
| Pay Plan | General Schedule (reg) | | Annual | 161:20 | 18:00 | 115:30 | 18:00 | 161:30 |
| Tour of Duty | Full Time | | Sick | 152:15 | 4:00 | 158:15 | 41:00 | 115:15 |
| Duty Hours | 80 | | Other | | | | 18:00 | |
| Work Week | 7:30-5:30M-TH AND 7:30-11:30F | | | | | | | |
| Alternative Schedule | Variable Workweek | | Leave Year Projection | | | | | |
| Agency | CENS | | Maximum Available Annual | | | 277:30 | | |
| State | MD | | Maximum Available Sick | | | 202:15 | | |
| Town | 1520 | | Use or Lose Leave | | | 37:30 | | |
| Unit | 25 | | | | | | | |
| Timekeeper | 07 | | | | | | | |
| Retain Data | TCS and Accounts | | | | | | | |
| Account Data Code | Manual Entry | | | | | | | |
| Service Computation Date | Aug 18 1992 | | | | | | | |
| Annual Leave Category | 8 hr/pp | | | | | | | |
| Personal Leave Ceiling | 240:00 | | | | | | | |
| Supervisor | | | | | | | | |
| Remarks: | | | | | | | | |

Your signature certifies that all reported time was worked and approved according to law and regulation.

**Validated By :** SYLVIA HARMON
**Validation Date :** Feb 24 2011 11:31 AM

**Certified By :** DALE REED
**Certification Date :** Feb 28 2011 2:01 PM

The complete T&A status history is displayed below. It may contain events that happened since the certification shown above took place.

### Status History

| Timestamp | Source | Name | Message |
| Mar 01 2011 11:20 AM | BuR | SYSTEM | Built in Build ID 5{11767. |
| Mar 01 2011 06:53 AM | Supervisor Certified | REED, DALE (REED0002) | |
| Mar 01 2011 06:47 AM | Timekeeper Validated | HARMON, SYLVIA (HARM0007) | |
| Mar 01 2011 06:47 AM | Historical Correction Record | HARMON, SYLVIA (HARM0007) | |
| Feb 28 2011 07:34 PM | BuR | SYSTEM | Built in Build ID 5{11766. |
| Feb 28 2011 02:01 PM | Supervisor Certified | REED, DALE (REED0002) | |
| Feb 24 2011 11:31 AM | Timekeeper Validated | HARMON, SYLVIA (HARM0007) | |
| Feb 14 2011 07:43 PM | New Record Created | SYSTEM | Created during Build ID 5{11745 for pay period 04. |

All

webTA: Certified T&A Summary                                                    Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | 08 : Feb 27, 2011 to Mar 12, 2011 |
| Time Card Type: | Regular | Leave Year: | 2011 |
| Time in Pay: 80:00 | Other Time: 0:00 | Dollar Transactions: 86.00 | Days in Pay: 10 |

### Work Time

| Transaction | PP: | St: | Account | Feb 27 28 S M | Mar 1 T | 2 W | 3 T | 4 F | 5 S | Wk 1 | 6 S | 7 M | 8 T | 9 W | 10 T | 11 F | 12 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Time In | 1:00 | 9:00 | 9:00 | | | | | 1:00 | 9:00 | 5:30 | | | | | |
| | | | | Time Out | 2:00 | 5:00 | 12:00 | | | | | 5:00 | 7:00 | 5:00 | | | | | |
| Regular Base Pay | | | 013600000000000 WORK 0136 | | 2 | 7:30 | 3 | | 12:30 | | 4 | 4:30 | | 4 | | 12:30 | 25 |
| | | | Work Time Total | | 2 | 17:30 | 3 | | 12:30 | | 4 | 4:30 | | 14 | | 12:30 | 25 |

### Leave and Other Time

| | | | Absence Start | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | |
| Annual Leave | | | 0101000000750000 Holiday Leave | | | | | 1 | | 1 | | | 3 | 3 | | 12 | 13 |
| Sick Leave | | | 0101000000000000 LEAVE/HOLIDAY | 9 | 7 | 1:30 | | | 17:30 | 9 | | 1:30 | | | 10:30 | 18 |
| Admin/Excused Absence | | | | | 9 | | | | 9 | | 5 | | | | 5 | 14 |
| | | | Leave and Other Time Total | 9 | 7 | 9 1:30 | 4 | | 17:30 | 9 | 5 | 4:30 | 9 | | 27:30 | 55 |
| | | | Daily Total | 9 | 9 | 9 | 9 | 4 | | 40 | 9 | 9 | 9 | 9 | 4 | 40 | 80 |

### T&A Profile

| | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | 7:30-5:30/M-TH AND 7:30-11:30/F |
| Alternative Schedule | Variable Workweek |
| Agency | CC075 |
| State | DD |
| Town | 1520 |
| Unit | 28 |
| Timekeeper | 67 |
| Retain Date | TCs and Accruals |
| Account Data Code | Manual Entry |
| Service Computation Date | Aug 18 1980 |
| Annual Leave Category | 0 hr/pp |
| Personnel Leave Ceiling | 240:00 |
| Supervisor | |
| Remarks | |

### Leave Data

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | 101:19 | 8:00 | 109:30 | 13:00 | 96:30 |
| Sick | 111:15 | 4:00 | 115:15 | 28:00 | 87:15 |
| Other | | | | 14:00 | |

### Leave Year Projection

| | |
|---|---|
| Maximum Available Annual | 264:30 |
| Maximum Available Sick | 171:15 |
| Use or Lose Leave | 34:30 |

Your signature certifies that all reported time was worked and approved according to law and regulation.

**Validated By : SYLVIA HARMON**
**Validation Date : Mar 15 2011 12:38 PM**

**Certified By : DALE REED**
**Certification Date : Mar 15 2011 12:39 PM**

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

### Status History

| Timestamp | Status | Name | Message |
|---|---|---|---|
| Mar 15 2011 03:01 PM | Built | SYSTEM | Built in Build ID S111788. |
| Mar 15 2011 12:39 PM | Supervisor Certified | REED, DALE (REED0002) | |
| Mar 15 2011 12:38 PM | Timekeeper Validated | HARMON, SYLVIA (HARM0007) | |
| Mar 15 2011 12:38 AM | Validation Reset By E002 | HARMON, SYLVIA (HARM0007) | |
| Mar 15 2011 12:36 AM | Certification Rejected | REED, DALE (REED0002) | annual leave for march 18 |
| Mar 11 2011 09:37 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Mar 11 2011 09:37 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Mar 11 2011 07:37 AM | Validation Reset By E02 | PERRY, ANTHONY (PERRY001) | |
| Mar 09 2011 10:21 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Mar 09 2011 10:21 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Mar 09 2011 10:21 AM | Validation Reset By E02 | PERRY, ANTHONY (PERRY001) | |
| Mar 08 2011 02:10 PM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Mar 08 2011 02:10 PM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Mar 08 2011 01:40 PM | Validation Reset By E02 | PERRY, ANTHONY (PERRY001) | |
| Mar 08 2011 12:12 PM | Timekeeper Validated | HARMON, SYLVIA (HARM0007) | |
| Feb 28 2011 07:34 PM | New Record Created | SYSTEM | Created during Build ID S111766 for pay period 05. |

A12

EXHIBIT 1 Pg. JA542

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 384 of 424
USCA Case #14-1155      Document #1537564      Filed: 02/13/2015      Page 544 of 596

webTA: Certified T&A Summary

Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | DS : Mar 13, 2011 to Mar 26, 2011 |
| Time Card Type: | Regular | Leave Year: | 2011 |
| Time In Pay: 80:00 | Other Time: 0:00 | Dollar Transaction: $0.00 | Days In Pay: 10 |

| Transaction | Prir | Stx | Account | Mar 13 14 15 16 17 18 19 / S M T W T F S | Wk 1 | Mar 20 21 22 23 24 25 26 / S M T W T F S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | |
| | | | Time In | 8:30 | 8:00 | | 7:30 12:00 | | |
| | | | Time Out | 2:30 | 1:00 | | 5:00 5:00 | | |
| Regular Base Pay | | | 0136000000000000 WORK 0136 | 6 6 | 4 | 18 | 9 6 4 | 18 | 37 |
| | | | Work Time Total | 9 6 | 4 | 19 | 9 5 4 | 18 | 37 |
| **Leave and Other Time** | | | | | | | | |
| | | | Absence Start | | | | | | |
| | | | Absence End | | | | | | |
| Sick Leave | | | 0101000000000000 | 3 6 9 | 21 | 10 8 | | 18 | 39 |
| Admin/Excused Absence, | | | LEAVE/HOLIDAY | | | 1 | 4 | 4 | 4 |
| | | | Leave and Other Time Total | 3 6 9 | 21 | 10 8 | 4 | 72 | 43 |
| | | | Daily Total | 9 9 9 9 4 | 40 | 9 5 9 0 4 | 40 | 80 |

Remarks To Payroll
3/22 2 HRS DENTAL

| Type | Status | Date | Supervisor | Mar 13 14 15 16 17 18 19 / S M T W T F S | Mar 20 21 22 23 24 25 26 / S M T W T F S |
|---|---|---|---|---|---|
| **Leave Requests** | | | | | |
| Sick Leave | Pending | | | 3 9 9 | 9 9 |
| Admin/Excused Absence | Pending | | | 1 | 4 |
| **Premium Pay Requests** | | | (No Premium Pay Requests submitted) | | |

| T&A Profile | | | Leave Date | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|---|---|---|
| Pay Plan | General Schedule (reg) | | Annual | 96:38 | 8:00 | 104:30 | -- | 104:30 |
| Year of Duty | Full Time | | Sick | 87:15 | 4:00 | 91:15 | 39:00 | 52:15 |
| Duty Hours | 80 | | Other | | | | 14:00 | |
| Work Week | 7:30-5:30/4-TH AND 7:30-11:30F | | **Leave Year Projection** | | | | | |
| Alternative Schedule | Variable Workweek | | Maximum Available Annual | | | | 264:00 | |
| Agency | CCHS | | Maximum Available Sick | | | | 132:15 | |
| State | HO | | Use or Lose Leave | | | | 24:30 | |
| Town | 1570 | | | | | | | |
| Unit | 25 | | | | | | | |
| Timekeeper | 07 | | | | | | | |
| Return Data | TCir and Accounts | | | | | | | |
| Account Data Code | Manual Entry | | | | | | | |
| Service Computation Date | Aug 18 1982 | | | | | | | |
| Annual Leave Category | 8 hr/pp | | | | | | | |
| Personal Leave Ceiling | 240:00 | | | | | | | |
| Supervisor | | | | | | | | |
| Remarks: | | | | | | | | |

Your signature certifies that all reported time was worked and approved according to law and regulation.

Affirmed By: ANTHONY PERRY
Affirmation Date: Mar 28 2011 10:22 AM

Certified By : MARK MARKOVIC
Certification Date : Mar 31 2011 10:22 AM

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

| Status History | | | |
|---|---|---|---|
| Timestamp | Status | Name | Message |
| Mar 31 2011 11:00 AM | Built | SYSTEM | Built to Build ID 5111988. |
| Mar 31 2011 10:22 AM | Supervisor Certified | MARKOVIC, MARK (MARK0001) | |
| Mar 30 2011 03:41 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Mar 30 2011 60:41 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Mar 28 2011 10:22 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Mar 28 2011 10:22 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Mar 25 2011 10:21 AM | Validation Reset By Edit | PERRY, ANTHONY (PERRY001) | |
| Mar 25 2011 01:29 PM | Certification Rejected | RESO, DALE (RESD0002) | Incorrect entries for leave |
| Mar 23 2011 12:10 PM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Mar 23 2011 12:10 PM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Mar 15 2011 03:01 PM | Raw Record Created | SYSTEM | Created during Build ID 5111738 for pay period 06. |

AB

## webTA: Certified T&A Summary

Page 1 of 1

| Name: | ANTHONY W PERRY | Pay Period: | 07 : Mar 27, 2011 to Apr 9, 2011 | |
|---|---|---|---|---|
| Time Card Type: | Regular | Leave Year: | 2011 | |
| Time In Pay: 90:00 | Other Time: 0:00 | | Odtlr Transactions: $0.00 | Days In Pay: 10 |

### Work Time

| Transaction | Pfx | Sfx | Account | Mar 27 S | 28 M | 29 T | 30 W | 31 T | Apr 1 F | 2 S | Wk 1 | 3 S | 4 M | 5 T | 6 W | 7 T | 8 F | 9 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Time In | 7:30 | | 7:30 | 7:30 | 7:30 | | | | | | 8:30 | | | | | | |
| | | | Time Out | 17:00 | | 15:00 | 4:00 | 11:30 | | | | | | 2:00 | | | | | | |
| Regular Base Pay | | | 013600200000000 WORK 0125 | 4:30 | | 9 | 8 | 4 | | | 25:30 | | 5 | | | | | | 5 | 30:30 |
| | | | Work Time Total | 4:30 | | 9 | 8 | 4 | | | 25:30 | | 6 | | | | | | 6 | 30:30 |

### Leave and Other Time

| | | | Absence Start | 12:30 | 1:30 | | 4:00 | | | | | 7:30 | | 7:30 | | | | | | |
| | | | Absence End | 5:00 | 5:00 | | 5:00 | | | | | 5:00 | | 5:00 | | | | | | |
| Annual Leave | | | 010100000000000000 | 4:30 | 9 | | 1 | | | | 14:30 | | | 9 | 9 | 4 | | 22 | 06:10 |
| Sick Leave | | | LEAVE/HOLIDAY | | | | | | | | | 8 | 4 | | 1 | | | 13 | 13 |
| | | | Leave and Other Time Total | 4:30 | 9 | | 1 | | | | 14:30 | 9 | 4 | 9 | 9 | 4 | | 35 | 49:30 |
| | | | Daily Total | 9 | 9 | 9 | 9 | 4 | | | 40 | 9 | 9 | 9 | 9 | 4 | | 40 | 00 |

### Remarks To Payroll
4-5 (daughter)

| T&A Profile | | | Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|---|---|---|
| Pay Plan | General Schedule (reg) | | Annual | 101:30 | 8:09 | 112:30 | 36:30 | 76:00 |
| Tour of Duty | Full Time | | Sick | 81:15 | 4:00 | 85:16 | 12:00 | 42:16 |
| Duty Hours | 80 | | **Leave Year Projection** | | | | | |
| Work Week | 7:30-5:30M-TH AND 7:30-11:30F | | Maximum Available Annual | | | 228:00 | | |
| Alternative Schedule | Variable Workweek | | Maximum Available Sick | | | 119:15 | | |
| Agency | CBPS | | Use or Lose Leave | | | — | | |
| State | MD | | | | | | | |
| Town | 6510 | | | | | | | |
| Unit | 25 | | | | | | | |
| Timekeeper | 07 | | | | | | | |
| Record Data | TCs and Accounts | | | | | | | |
| Account Data Code | Manual Entry | | | | | | | |
| Service Computation Date | Aug 16 1982 | | | | | | | |
| Annual Leave Category | 8 hr/pp | | | | | | | |
| Personal Leave Ceiling | 240:00 | | | | | | | |
| Supervisor | | | | | | | | |
| Remarks | | | | | | | | |

Your signature certifies that all reported time was worked and approved according to law and regulation.

**Validated By :** SYLVIA HARMON
**Validation Date :** Apr 06 2011 2:48 PM

**Certified By :** DALE REED
**Certification Date :** Apr 06 2011 2:49 PM

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

### Status History

| Timestamp | Status | Name | Message |
|---|---|---|---|
| Apr 07 2011 12:41 PM | Built | SYSTEM | Built in Build ID S111620. |
| Apr 06 2011 02:49 PM | Supervisor Certified | REED, DALE (RLSD8007) | |
| Apr 06 2011 02:48 PM | Timekeeper Validated | HARMON, SYLVIA (LAAH0007) | |
| Apr 06 2011 02:47 PM | Validation Reset By | HARMON, SYLVIA (LAAH0007) | |
| Apr 05 2011 10:29 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Apr 05 2011 10:29 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Apr 05 2011 10:29 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Apr 05 2011 10:29 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Apr 05 2011 10:23 AM | Validation Reset By Edit | PERRY, ANTHONY (PERRY001) | |
| Mar 31 2011 02:18 PM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Mar 31 2011 02:18 PM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Mar 31 2011 11:00 AM | New Record Created | SYSTEM | Created during Build ID S111000 for pay period 07. |

webTA: Certified T&A Summary

Page 1 of 1

| | | |
|---|---|---|
| Name: | ANTHONY W PERRY | Pay Period: 09 : Apr 10, 2011 to Apr 23, 2011 |
| Time Card Type: | Regular | Leave Year: 2011 |

Time in Pay: 80:00    Other Time: 9:00    Dollar Transactions: $0.00    Days in Pay: 10

## Work Time

| Transaction | Prj | Stk Account | Apr 10 11 12 13 14 15 16 S N T W T F S | Apr 17 18 19 20 21 22 23 Wk 1 S M T W T F S Wk 2 | Total |
|---|---|---|---|---|---|
| | | | Time In | 7:30 1:00 7:30 | 9:30 7:30 7:30 7:30 | |
| | | | Time Out | 12:30 5:00 11:30 | 12:00 5:00 5:00 5:00 | |
| Regular Base Pay | | 01360000000000000 WORK 0136 | 5 4 4 13 | 4:30 9 9 6 28:30 41:30 | |
| | | | Work Time Total | 5 4 4 13 | 4:30 9 9 6 28:30 42:30 | |

## Leave and Other Time

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | Absence Start | 12:30 7:00 | 7:00 | 2:00 7:00 |
| | | | Absence End | 4:30 12:00 | 9:30 | 5:00 11:30 |
| Annual Leave | | 01010000000000000 LEAVE/HOLIDAY | | | 3 4 | 7 3 |
| Sick Leave | | | 9 4 5 18 | 4:30 | 4:30 22:30 |
| Admin/Excused Absence | | | 9 9 | | | 0 |
| | | Leave and Other Time Total | 9 9 4 5 27 | 4:30 | 3 4 11:30 38:30 |
| | | Daily Total | 9 8 8 9 4 40 | 9 9 9 9 4 40 80 |

## Remarks To Payroll

4/12 negotiation/EEOC issues; ALA/25 and add'l clk hrs 4/12 3:30-4:30

| Type | Status | Date | Supervisor | Apr 10 11 12 13 14 15 16 17 S N T W T F S M | Apr 18 19 20 21 22 23 T W T F S |
|---|---|---|---|---|---|
| Sick Leave | Pending | | | 9 4 5 | 4:30 |
| Annual Leave Approved 25-APR-11 | DALE R. REED (REED0002) | | | | 3 4 |

Premium Pay Requests

(No Premium Pay Requests submitted)

| T&A Profile | | | Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|---|---|---|
| Pay Plan | General Schedule (GS) | | Annual | 76:00 | 8:00 | 84:00 | 7:00 | 77:00 |
| Tour of Duty | Full Time | | Sick | 43:15 | 4:00 | 47:15 | 23:30 | 24:45 |
| Duty Hours | 80 | | Other | | | | 7:00 | |
| Work Week | 7:30-5:30M-TH AND 7:30-11:30F | | Leave Year Projection | | | | | |
| Alternative Schedule | Variable Workweek | | Maximum Available Annual | | | 221:00 | | |
| Agency | CENS | | Maximum Available Sick | | | 98:45 | | |
| State | MD | | Use or Lose Leave | | | — | | |
| Town | 1520 | | | | | | | |
| Unit | 25 | | | | | | | |
| Timekeeper | 07 | | | | | | | |
| Retain Data | TCs and Accounts | | | | | | | |
| Account Data Code | Manual Entry | | | | | | | |
| Service Computation Date | Aug 18 1982 | | | | | | | |
| Annual Leave Category | 8 hr/pp | | | | | | | |
| Personal Leave Ceiling | 240:00 | | | | | | | |
| Supervisor | | | | | | | | |
| Remarks | | | | | | | | |

Your signature certifies that all reported time was worked and approved according to law and regulation.

Affirmed By: ANTHONY PERRY
Affirmation Date: Apr 21 2011 10:22 AM

Certified By : DALE REED
Certification Date : Apr 25 2011 2:28 PM

The complete T&A status history is displayed below; it may contain events that happened since the certification shown above took place.

## Status History

| Timestamp | Status | Name | Message |
|---|---|---|---|
| Apr 25 2011 07:10 PM | Built | SYSTEM | Built in Build ID 5111184L |
| Apr 25 2011 02:27 PM | Supervisor Certified | REED, DALE (REED0002) | |
| Apr 21 2011 10:22 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Apr 21 2011 10:22 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Apr 20 2011 02:10 PM | Timekeeper Validated | HARMON, SYLVIA (HARMON007) | |
| Apr 20 2011 02:17 PM | Validation Reset By EER | HARMON, SYLVIA (HARMON007) | |
| Apr 20 2011 01:45 PM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Apr 20 2011 01:45 PM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Apr 20 2011 01:45 PM | Validation Reset By EER | PERRY, ANTHONY (PERRY001) | |
| Apr 18 2011 12:44 PM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Apr 18 2011 12:44 PM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Apr 18 2011 00:52 AM | Validation Reset By EER | PERRY, ANTHONY (PERRY001) | |
| Apr 13 2011 11:01 AM | Employee Attested | PERRY, ANTHONY (PERRY001) | |
| Apr 13 2011 11:01 AM | Employee Validated | PERRY, ANTHONY (PERRY001) | |
| Apr 07 2011 02:41 PM | New Record Created | SYSTEM | Created during Build ID 5111820 for pay period 08 |

A15

**UNITED STATES DEPARTMENT OF COMMERCE**
**Office of the General Counsel**
Washington, D.C. 20230

February 20, 2014

Merit Systems Protection Board
Clerk of the Board
1615 M Street, NW,
Washington, DC 20419
BY FAX: (202) 653-7130

RE:    Anthony W. Perry v. Department of Commerce
       MSPB Docket Numbers: DC-0752-12-0486-B-1
                            DC-0752-12-0487-B-1

To Whom It May Concern:

Attached you will find the Agency's opposition to Appellant's petition for review of initial
decision in the above-captioned appeals.

The Agency attempted to use the Board's e-file system to file the pleading today, but the Board's
e-file system is experiencing website outages and is currently unavailable due to maintenance
and upgrade. *See* attached.

I certify that this pleading is being served on this date to Appellant by e-mail at
tonywpy@aol.com and to the Clerk of the Board at the facsimile number set forth above.

Respectfully,

David J. Spence
Department of Commerce
Office of General Counsel
Tel: 301-763-2918

1

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

|  |  |
|---|---|
| ANTHONY PERRY, | ) |
| Appellant, | ) |
| v. | ) |
| DEPARTMENT OF COMMERCE, | ) |
| Agency. | ) |

MSPB Docket Nos. DC-0752-11-0486-B-1
DC-0752-11-0487-B-1

Date: February 20, 2014

## AGENCY'S OPPOSITION TO APPELLANT'S PETITION FOR REVIEW OF INITIAL DECISION

### I.   INTRODUCTION

The United States Department of Commerce (Agency) respectfully submits this opposition to Appellant's Petition for Review of Initial Decision (Appellant's PFR). Appellant's PFR has not identified new and material evidence that, despite due diligence, was not available when the Administrative Judge (AJ) issued his Initial Decision (ID). Additionally, Appellant's PFR has not established that the AJ's decision was based on an erroneous interpretation of statute or regulation. Therefore, Appellant's PFR should be denied.

### II.   FACTS

1. On June 7, 2011, the Agency proposed Appellant's removal from the Federal service based on Appellant's receipt of pay for time not worked (62 specifications) and failure to follow supervisory directives (15 specifications). Appeal File (AF), Tab 11; AF, Tab 14, Subtab 1 (at 1-12).[1]

---

[1] The records in these matters are nearly identical. Thus, unless otherwise noted, all citiations herein are to the record in DC-0752-12-0486-I-I and DC-0752-12-0486-B-I.

1

2. Appellant orally replied to the proposed removal and on June 30, 2011, he and his designated representative, Johnny T. Zuagar, the President of the American Federation of Government Employees, Local 2782, submitted a written response to the proposal letter. AF, Tab 8.

3. The last section of Appellant's written response contained a settlement offer, in which he suggested that he would serve a 14-day suspension in lieu of a removal and would repay the Agency "for the portion of hours" the Agency deemed warranted for when he was absent but was paid. *Id.* at 4.

4. On July 25, 2011, Benjamin Felder, the Chief of the Agency's Labor Relations Branch, presented a written settlement counter-offer to Mr. Zuagar.

5. The counter-offer contained the following material terms:

   - Retire/resign no later than May 30, 2012.

   - Not apply for or accept any future positions with the Census Bureau.

   - Not engage in any future misconduct.

   - Accept a 60-day suspension.

   - Accept a reassignment.

   - Accept a demotion to a non-supervisory GS-13 position.

   - Withdraw all pending complaints/cases against the Agency

   - Not file a claim against the Agency concerning this matter.

6. Between August 16, 2011 and August 22, 2011, Appellant, his representative, and several Agency officials, negotiated and ultimately executed a settlement agreement resolving several of Appellant's EEO complaints, which was then submitted to the EEOC AJ on August 22, 2011. AF, Tab 14, Subtab 1 (at 14-20).

7. The settlement agreement's terms provided that in lieu of removal, Appellant would serve a 30-day suspension and voluntarily retire (or, failing that, voluntarily resign) no later than September 4, 2012. *Id.* (at 15-18). The agreement also agreed that, assuming Appellant did not engage in any misconduct between the times when he settled and until he retired or resigned, his disciplinary record would be expunged. *Id.* (at 18).

8. More specifically, provision 1 of the agreement states:

   The parties ... voluntarily enter into this Settlement Agreement ... to resolve all existing matters concerning Complainant's employment with the Agency ... By this Agreement, the parties resolve all disputes between them concerning Complainant's employment with the Agency, regardless of the forum, in existence on the effective date of this Agreement.

   Under provision 2 of the agreement, Appellant agreed to:

   a. Retire voluntarily effective no later than September 4, 2012. Complainant acknowledges that by entering into this Agreement his decision to retire is both voluntary and irrevocable.

   b. Voluntarily resign from his employment with the Agency, effective September 4, 2012, in the event Complainant has not retired by ... September 4, 2012 ...

   c. ...[V]oluntarily waive all appeal rights he has and not to litigate in any forum, judicial or administrative, any claims arising from a removal ...

   d. Refrain form engaging in any acts of misconduct from the effective dated of this Agreement until his retirement or resignation, which will be no later than September 4, 2012 ...

3

e. Serve a suspension for thirty (30) calendar days in lieu of the removal proposed on June 7, 2011, for receipt for time not worked and failure to follow supervisory directive. The suspension will ... begin [ ] [on] Saturday, August 27, 2011.

f. Accept, at the Agency's sole discretion, a reassignment from the effective date of this Agreement until his retirement or resignation, which will be no later than September 4, 2012 ...

g. ...

h. WAIVER. Waiver, release, and forever discharge the Agency, its officers, agents, employees, and representatives ... from any claims, demands, or causes of action, which Complainant has or my have, arising from this employment, including issues related [to – a listing of several formal EEO complainants]. Complainant specifically waives any and all rights and claims arising out of the issues raised in the above-cited formal complaints of discrimination and/or [any] related ... action. Complainant waives any and all rights and claims arising from Complainant's employment under the Age Discrimination in Employment Act ..., the Rehabilitation Act ..., and/or Title VII of the Civil Rights Act ..., as applicable. This release includes but is not limited to a release of any right to administrative, judicial, or congressional relief, or any other type of relief, or of any claim to back pay, attorneys' fees and costs, or other type of compensation, except what is specifically set forth [elsewhere in the settlement agreement]. However, by entering into this

4

Agreement, Complainant does not waive rights or claims that may arise after the effective date of the Agreement.

*Id.*

9. According to provision 8 of the agreement, Appellant stated that he had read and understood "the entire agreement," "especially the provisions relating to the withdrawal of the formal compliant(s), thereby foreclosing further litigation on the matters raised in the formal complaint(s), and the waiver set forth in Paragraph 2." Appellant also agreed that he "signed this agreement voluntarily and was in no way coerced." *Id.*

10. On August 26, 2011, consistent with the settlement agreement, the Agency issued a decision letter that mitigated Appellant's proposed removal to a 30-day suspension. The Agency, in its decision letter, determined that "the reason for the proposed removal [was] fully supported by the evidence" but that a "lesser penalty" of a 30-calendar day suspension would suffice to "deter such misconduct in the future." AF, Tab 12; AF,Tab 14, Subtab 3 (at 1).3

11. On March 29, 2012, Appellant signed and submitted a retirement application , in which he checked the boxes that stated he wished to apply for separation under the following conditions: "Voluntary Early Retirement," and "VISP."[2] The Agency approved Appellant's early retirement application on April 2, 2012. AF, Tab 15, , Exhibit 4b, at 12.

12. On April 25, 2012, Appellant appealed to the Board, asserting that he "was coerced to sign the EEOC Settlement Agreement forcing [him] to involuntary [sic] retire … and [serve] a 30-day suspension." AF, Tab 1 (MSPB Form 185-2, Answer to Question 6).

---

[2] VSIP stands for "Voluntary Separation Incentive Program," which means Appellant was entitled to receive a cash incentive of $25,000, or a severance pay amount when he retired. AF, Tab 15, Exhibit 4b at 12.

5

He argued that an Agency management official, a Human Resources official, and the Agency's attorney made him sign the agreement by threatening that if he did not, he would be removed. *Id.* (MSPB Form 185-4A, Continuation Sheet, Answer to Question 1). He also claimed that the Agency discriminated against him on the basis of his race, age, and disability and that the employment actions were done in reprisal for his prior EEO activity. AF, Tabs 1-2. The Board docketed the appeal of the alleged involuntary retirement as MSPB Docket No. DC-0752-12-0487-I-1, and the appeal challenging the 30-day suspension penalty as MSPB Docket No. DC-0752-12-0486-I-1.

13. In response to the AJ's Orders regarding Board jurisdiction, Appellant contended that he was "forced to sign [the settlement agreement] under the threat of termination[,] as the Agency used misinformation, misrepresentation of the information, coercion, and the threat of termination to secure [his] signature involuntarily." AF, Tab 14 at 1. He further stated that the Agency "committ[ed] a procedural error because [he] was not informed that all suspensions greater than 14-days are appealable as an adverse action and that [he] had appeal rights."[3] *Id.* He also alleged that he was coerced into settling because the Agency "knew it could not sustain" the charges brought against him. *Id.*

14. On July 30, 2012, the AJ issued two initial decisions, dismissing both appeals for lack of jurisdiction.[4]

15. On September 6, 2012, Appellant filed petitions for review of the AJ decisions with the Board. For the first time on petition for review, Appellant claimed that the Agency

---

[3] To the extent that Appellant is asserting that the Agency improperly failed to inform him of a right to appeal the 30-day suspension, the settlement agreement provides that he waived his right to challenge that action (and his retirement). Therefore, the AJ found that the Agency had no obligation to provide Appellant with appeal rights concerning actions he agreed to serve pursuant to a settlement. *Clark v. U.S. Postal Service*, 989 F.2d 1164 (Fed. Cir. 1993).
[4] *See Perry v. Department of Commerce*, MSPB Docket Nos. DC-0752-12-0486-I-1 and DC-0752-12-0487-I-1 (Initial Decisions, July 30, 2012).

6

informed him that he would not be able to appeal his removal to the Board if he refused
to sign the EEOC settlement agreement.

16. On June 12, 2013, the Board granted Appellant's petitions for review, joined the two
    appeals, and remanded them to the Washington Regional Office for further adjudication,
    including a jurisdictional hearing.[5]

17. The Board, in its Remand Order, held that Appellant made a non-frivolous allegation of
    involuntariness, inasmuch as the Agency supposedly coerced him into settling based on
    misrepresentations that his only alternative to being removed was to accept the terms of
    the settlement and that, if he refused to sign the agreement, then he would relinquish his
    appeal rights. **Id.** at 6-7. Therefore, the Board remanded the appeal for a jurisdictional
    hearing on these issues.[6]

18. On December 23, 2013, after testimony at a hearing on remand, the Administrative
    Judge, issued an Initial Decision ("ID") dismissing Appellant's appeal for lack of
    jurisdiction.[7] In the ID, the Administrative Judge found that Appellant entered into a
    valid, enforceable agreement and concluded that Appellant voluntarily agreed to serve a
    30-day suspension and then retire pursuant to that agreement, and that he knowingly
    agreed to waive his appeal rights as part of that settlement. ID at 15. In this regard, the
    Administrative Judge found that Appellant had failed to meet his burden of proving that

---

[5] *See Perry v. Department of Commerce*, MSPB Docket Nos. DC-0752-12-0486-B-1 and DC-0752-12-0487-B-1 (Remand Order, June 12, 2013).
[6] The Board also ruled in its Remand Order that Appellant failed to raise a non-frivolous allegation that he was coerced into settling based on his argument that the Agency knew it could not substantiate the charges contained in the proposal letter. *See Perry v. Department of Commerce*, MSPB Docket Nos. DC-0752-12-0486-B-1 and DC-0752-12-0487-B-1 (Remand Order, June 12, 2013) at 5-6. As a result of the Board's holding, that issue was not properly before the AJ.
[7] The Administrative Judge found that because the parties entered into a settlement agreement and Appellant chose to settle the matter by agreeing to a lesser discipline and retirement, those courses of action are presumptively voluntary and therefore divest the Board of jurisdiction over the underlying matter. Swink v. U.S. Postal Service, 111 M.S.P.R. 620, 9 (2009). ID at 15.

the Agency engaged in bad faith, fraud, coercion, or misrepresentation before he signed the settlement agreement. *Id.* The AJ also found that just because Appellant "was faced with an inherently unpleasant situation or his choice [was] limited to two unpleasant alternatives" did not make his choice involuntary. *Id.* Similarly, the AJ found that even though Appellant was presented with a difficult choice when he had to sign the settlement agreement, neither the choice itself nor the circumstances under which it was made were the result of any improper Agency actions. *Id.* Moreover, the AJ noted that noting in the settlement agreement expressly preserved Appellant's right to appeal the removal action to the Board. *Id.* at 16. Finally, to the extent Appellant raised claims of reprisal for EEO activity and discrimination based on his age, race, and disability, the AJ found the Board lacks jurisdiction absent and an otherwise appealable action. *Id.*

19. On January 26, 2013, Appellant filed a Petition for Review with the Board.

## III.   STANDARD OF REVIEW

The Board, after providing the other parties with an opportunity to respond, may grant a petition for review when it is established that new and material evidence is available that, despite due diligence, was not available when the record closed or the decision of the judge is based on an erroneous interpretation of statute or regulation. 5 C.F.R. § 1201.115(d).

## IV.   LEGAL ARGUMENT

### A. APPELLANT'S FILING DOES NOT MEET THE CRITERIA FOR A PFR

Appellant's PFR must be denied because it does not meet the criteria specified in the Board's regulations. Under the applicable regulations and Board precedent, a PFR may be granted when it is establishes that: (1) new and material evidence is available that, despite due diligence, was not available when the record closed; or (2) the decision of the judge is based on

8

an erroneous interpretation of statute or regulation. *See* 5 C.F.R. § 1201.115(d); *see also Niemi v. Dep't of the Interior*, 114 M.S.P.R. 143, 145 (June 10, 2010). Appellant's PFR does not meet these criteria.

### 1. **Appellant has not established that new and material evidence is available, that despite due diligence, was not available when the AJ issued his initial decision.**

Appellant's PFR has not presented any new and material evidence that, despite due diligence, was not available to him when the Administrative Judge issued his Initial Decision. To show that evidence is new and material, the Appellant must satisfy a two-prong test. First, new evidence is evidence that was not, and could not have been, obtained by the Appellant, with due diligence, before the Administrative Judge closed the record. *See Wilson v. Dept. of Justice*, 58 M.S.P.R. 96 (1993) (If the evidence existed, but in a different form before the close of the record, it is not new). *Madrid v. Dept. of Interior*, 37 M.S.P.R. 418 (1988) (If discovery could have been used to obtain the information, it is not new). A party seeking to submit a document or other evidence that is not in the record must show that the proffered information, not just the document itself, was unavailable despite due diligence. To demonstrate due diligence, the moving party must offer a reasonable explanation as to why the additional evidence could not have been discovered earlier. *See Grassell v. Dept. of Transp.*, 40 M.S.P.R. 554, 564 (1989). The second prong of the test for admission of new evidence is that it must be material. Material evidence, as a standard, requires more than a showing of bare relevance. In *Callahan v. OPM*, 6 M.S.P.R. 332, 334 (1981), citing *Powell v. Dept. of Interior*, 2 M.S.P.R. 513 (1980) (The Board has previously defined "material evidence" as that which is "directly relevant to and probative of the charges," and is "of a material and controlling character such as would change the substantial equities between the parties,"…).

Appellant's PFR contains nothing more than a duplicative and rambling narrative that
seems to claim the charges related to the 30-day suspension and retirement cannot be sustained
by the Agency due to his alleged new evidence. Appellant's PFR also alleges that Appellant's
complaint is intertwined with disability discrimination, along with prohibited personnel
practices: fraudulent charges of misconduct, coercion, retaliation, reprisal, retribution,
misinformation, misrepresentation of facts and the use of an unlawful non-disclosure agreement
to conceal the constructive actions and to conceal other prohibited practices. None of these
allegations represents *a new or material fact* regarding the issue of jurisdiction that was not
available to Appellant prior to close of the record in this matter. Even if the Board considers
Appellant's evidentiary submission as new, the proposed evidence is immaterial to the issue of
whether Appellant voluntarily entered into the settlement agreement and does not warrant a
different outcome from that of the initial decision. *See Russo v. Veterans Administration*, 3
M.S.P.R. 345, 349 (1980) (the Board will not grant a petition for review based on new evidence
absent a showing that it is of sufficient weight to warrant an outcome different from that of the
initial decision).

Moreover, Appellant's initial appeal contains virtually identical information and
allegations. Compare PFR with AF Tab 1. The only additional information submitted by
Appellant with his PFR are copies of his SF-50 and Time and Attendance Summaries for the
period when he received pay for time not work. PFR attachments. While it is appears that
Appellant is attempting to demonstrate that he worked the periods in which the Agency charged
him with receipt of pay for time not work, the fact remains that Appellant has failed to
demonstrate that these documents represent "new and material evidence" that was unavailable to
him at the time he filed his initial appeal. The documents submitted on petition for review were

10

02/20/2014   06:20   3017636238   **EXHIBIT L Legal A562**   Filed 11/19/18   Page 398 of 424   PAGE   13/20
Case 1:17-cv-01932-TSC   Document 30-45   Filed 11/19/18   Page 398 of 424

USCA Case #14-1155        Document #1537564        Filed: 02/13/2015        Page 564 of 596

generated before the issuance of the initial decision. PFR attachments. These documents are

neither new nor do they relate to the outcome below since they do not go to the jurisdictional

issue of the appeal. 5 C.F.R. § 1201.115; *Avansino v. U.S. Postal Service,* 3 MSPB 308, 3

M.S.P.R. 211, 214 (1980) (the Board will not consider evidence submitted for the first time with

the petition for review absent a showing that it was unavailable before the record was closed

despite the party's due diligence).  Furthermore, Appellant's PFR does not even *argue* that it

presents any "significant new evidence" on the jurisdictional issue, which would warrant

granting his PFR. *See, e.g., Dellinger v. Dep't of Veterans Affairs,* 2010 MSPB LEXIS 6100

(October 20, 2010) (denying PFR of Administrative Judge's Initial Decision because it did not

present "significant new evidence" that was not available for consideration earlier).

      Thus, because Appellant's PFR does not present any significant new and material

evidence, or in fact, *any new evidence at all,* that, despite due diligence, was not available to him

when the Administrative Judge issued his Initial Decision, Appellant's PFR should be denied.

   2.  **Appellant has not established that the AJ's decision was based on an erroneous
       interpretation of statute or regulation.**

      Appellant has not established, as he must, that the decision of the Administrative Judge

was based on an erroneous interpretation of statute or regulation. *See* 5 C.F.R. § 1201.115(d);

*see also Niemi v. Dep't of the Interior,* 114 M.S.P.R. 143, 145 (June 10, 2010). Appellant's PFR

is merely a recitation of facts, unsupported allegations, and Appellant's disagreement with the

Administrative Judge's factual findings and conclusions of law. However, mere disagreement is

not sufficient to show legal error. *See e.g., Niemi v. Dep't of the Interior, supra; Cirella v. Dep't
of the Treasury,* 108 M.S.P.R. 474 at *15, *aff'd,* 296 F. App'x 63 (Fed. Cir. 2008). Therefore,

because Appellant does not demonstrate that the Administrative Judge's Initial Decision was

based on an erroneous interpretation of statute or regulation, there is no basis for the Board to
grant his PFR.

### *(a) AJ Properly Concluded Appellant Voluntarily Entered Into The Settlement Agreement Without Fraud, Coercion, And/Or Misrepresentation*

Despite Appellant's arguments at hearing and within his PFR, the Administrative Judge
made credibility determinations, and, citing Hillen factors, he found the Agency's witnesses
testimony to be more credible than that of Appellant. ID at 13; *See* Hillen v. Department of the
Army, 35 M.S.P.R. 453, 458 (1987). The Administrative Judge particularly noted that the
assertions made by Appellant, who argued that the settlement agreement was coerced, differed in
material respects from the testimony of every witness at the hearing, including that of his own
union representative. ID at 13; *See* Haebe v. Department of Justice, 288 F.3d 1288, 1301 (Fed.
Cir. 2002) (the Board must defer to an administrative judge's credibility determinations when
they are based, explicitly or implicitly, on the observation of the demeanor of witnesses
testifying at a hearing); Hillen, 35 M.S.P.R. at 458 (in resolving credibility issues, the
administrative judge considers such factors as the witness's bias, or lack of bias, and the
witness's demeanor). The Administrative Judge found that these witnesses credibly testified that
the agreement was freely reached by the parties, that no fraud, coercion or misrepresentation
occurred, and that Appellant understood the terms and conditions of the settlement.

After considering the documentary and testimonial evidence and the applicable statutes
and regulations, the Administrative Judge properly concluded that there was sufficient evidence
to show that the parties entered into a valid, enforceable settlement agreement. ID at 12.
Specifically, the Administrative Judge correctly noted that a party challenging the validity of a
settlement agreement bears a heavy burden of showing a basis for invalidating it. *Bynum v.
Department of Veterans Affairs*, 77 M.S.P.R. 662, 665 (1998). *Id.* After analyzing the evidence

in the record, the Administrative Judge then went on to properly conclude that Appellant failed to meet this heavy burden and he did not establish that the settlement agreement was invalid due to fraud, coercion, or misrepresentation. *Id.*

Appellant appears to attempt to challenge this conclusion by pointing out that the timeline of events and alleged illegality of non-disclosure agreement. PFR at p. 7. However, as the Administrative Judge noted, this argument is unpersuasive because the assertions made by Appellant, who argued that the settlement was coerced, differed in material respects from the testimony of every witness at the hearing, including that of his own union representative. ID at 13. Further, the Administrative Judge determined Appellant's statements were not corroborated by another person on the most significant points. Appellant's assertions of the Agency's impropriety were "self-serving and ring hollow." *Id.* Additionally as noted above, this argument is unavailing for Appellant because it is not based on new and material evidence that was unavailable at the time the Administrative Judge issued his initial decision.

The Administrative Judge also properly concluded that, based on the testimonial evidence and settlement agreement, Appellant's removal was mitigated to a 30-day suspension and later, a voluntary retirement. *Id.* at 12. Specifically the agreement notes that Appellant read and understood the terms of the settlement, that he entered into it willingly and knowingly, and that he agreed to waive his right to challenge the possible removal action. *Id* at 13. If Appellant really did not comprehend or felt pressured into entering the agreement, then he always had the choice to delay signing it even longer or refusing to sign it altogether. *See Candelaria v. U.S. Postal Service*, 31 M.S.P.R 412, 413 (1986) (to establish that a settlement was fraudulent as a result of coercion or duress, a party must prove that he involuntarily accepted the other party's terms, that circumstances were the result of the other party's coercive acts). The Administrative

13

Judge found that the clear, straightforward language contained in the settlement agreement also contradicted Appellant's assertions of fraud, coercion, and confusion. Once again, the Administrative Judge correctly found the hearing testimony of the witnesses to be far more credible than Appellant's sworn and unsworn statements. ID at 14.

Appellant does appear to challenge this conclusion also by stating he was coerced into the non-disclosure agreement which is a prohibited personnel practice. PFR at p. 10. Once again, as the Administrative Judge noted, this argument is unpersuasive because it is undisputed that the Agency provided Appellant with a significant amount of time in which he could contemplate whether or not he wanted to enter into the agreement. ID at 13. Such a lengthy time to consider a settlement agreement cannot be deemed coercive. *Frizzell v. Department of Air Force*, 53 M.S.P.R. 413 (1992) (employee's allegation that Agency did not afford him sufficient time to review settlement did not warrant setting aside that agreement, where record reflected that settlement was the result of negotiations which took place with employee's active participation over a 30-day period.) *Id.* at 15.

Nothing in Appellant's PFR allows him to carry his heavy burden. Appellant argues little more than that he was forced to choose between removal from the Agency and accepting the Agreement. However, as the Administrative Judge noted in his initial decision, the mere fact that an employee is faced with two unpleasant alternatives (in this case, suspension/retirement and possible removal) does not make his choice involuntary. *Parrot v. Merit Systems Protection Board*, 519 F.3d 1328, 1334-35 (Fed. Cir. 2008) (citing *Covington v. Department of Health and Human Services*, 750 F.2d 937, 942 (Fed. Cir. 1984)). *See Bahrke v. U.S.P.S.*, 98 M.S.P.R. 513 (2005)(employee could not show that he was coerced into signing a last chance agreement under duress even after the Agency representative told him he would be removed if he did not sign that

agreement). The Administrative Judge properly found that even though Appellant was presented
with a difficult choice when he signed the settlement agreement, neither the choice itself nor the
circumstances under which it was made were the result of any improper Agency actions. ID at
15.

Appellant's PFR is merely Appellant's disagreement with the Administrative Judge's
factual findings and conclusions of law and as noted above, the Board will not grant a PFR
where Appellant demonstrates nothing more than mere disagreement with the factual findings
and legal conclusions of the administrative judge. *See Weaver v. Dep't of the Navy,* 2 M.S.P.R.
129, 133-34 (1980), *review denied,* 669 F.2d 613 (9th Cir. 1982) (mere disagreement with the
Administrative Judge's findings and credibility determinations insufficient to establish errors in
the Administrative Judge's conclusions); *Keller v. Dep't of the Army,* 113 M.S.P.R. 557 at p.6
(April 29, 2010); *Hudson v. OPM,* 114 M.S.P.R. 669 at p.6 (Sept. 23, 2010).

### *(b) AJ Properly Refused to Address Appellant's Claims Regarding Merit Principles*

Appellant appears to allege that the Administrative Judge erred in not addressing or
rendering a decision on his allegations that the Agency's action(s) violated the Merit Principles.
*See* PFR at p. 4-5. However, Appellant's position is not supported by law.

As an initial matter, Board precedent is clear that Appellant is only entitled to a decision
on the merits of his claim(s) if it is found that jurisdiction before the Board is proper. *See e.g.,
Jasper v. Dep't of Justice,* 2010 MSPB LEXIS 5529 (Sept. 21, 2010)(finding that without a
finding of proper Board jurisdiction, the Board is without authority to address the merits of
appellant's claims); *Berry v. United States Postal Service,* 2010 MSPB LEXIS 6008 (October 14,
2010)(same); *Davison v. Dep't of Veterans Affairs,* 2010 MSPB LEXIS 2605 (June 16,
2010)(same). The Administrative Judge, after considering all of the evidence in this matter,

correctly determined that jurisdiction was not proper because Appellant knowingly and voluntarily entered into a settlement agreement. Therefore, contrary to Appellant's assertions, he is not "entitled" to a decision on the merits of his claims because he is not entitled to bring his action before the Board.

Additionally, the mere fact that Appellant alleged violation of the Merit Principles is irrelevant for the purposes of determining Board jurisdiction. As the Administrative Judge properly noted, such claims do not constitute an independent source of Board jurisdiction and therefore the Board has no authority to consider them unless raised in conjunction with otherwise appealable actions. ID at16. *See Wein v. Department of the Navy,* 37 M.S.P.R. 379, 381 (1988). Therefore, absent an independent source of Board jurisdiction, the Board has no authority to consider claims related to violations of the Merit Assignment Principles. *Id.* Because the Administrative Judge properly determined that Appellant had not suffered an appealable removal, and there was no independent source of Board jurisdiction, the Administrative Judge had no authority or obligation to consider Appellant's claims of violations of the Merit Assignment Principles.

**V.  CONCLUSION**

As demonstrated above, because Appellant's PFR has not identified new and material evidence that, despite due diligence, was not available when the Administrative Judge issued his Initial Decision, and because he has not established that the Administrative Judge's decision was based on an erroneous interpretation of statute or regulation, Appellant's PFR should be denied.

Respectfully Submitted,

16

David J. Spence
Agency Representative

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of February 2014, the *Agency's Opposition to Appellant's Petition For Review of Initial Decision* was served on the following in the manner indicated:

By Facsimile:

Merit Systems Protection Board
Clerk of the Board
FAX: (202) 653-7130

By E-mail:

Anthony Perry
Appellant
E-mail: tonywpy@aol.com

David J. Spence
Agency Representative

18

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## WASHINGTON REGIONAL OFFICE

_____

| | | |
|---|---|---|
| ANTHONY W. PERRY, | ) | DOCKET NUMBERS: |
| Appellant | ) | DC-0752-12-0486-B-1 |
| | ) | DC-0752-12-0487-B-1 |
| | ) | |
| vs. | ) | **REVIEW BOARD** |
| | ) | |
| | ) | |
| DEPARTMENT OF COMMERCE, | ) | DATE: March 1, 2014 |
| Agency | | |

_____

## Response to Agency Opposition to Petition For Review

Appellant timely submits a Response to the Agency's Opposition to Appellant's Petition for Review of the Administrative Judge's decision, denying Appellant Jurisdiction before the Board.

The Agency's opposition to Appellant's PFR is without merit.

**Legal Standards Governing Petitions for Review**

The legal standard for a Petition for Review is codified in 5 C.F.R. 1201.115, including 5 C.F.R. 1201.115(e) notwithstanding the above provisions in this section, the Board reserves the authority to consider any issue in an appeal before it.  In part, the legal standard for review provides that an agency's decision may not be sustained by the Board if the appellant:

(A) shows harmful error in the application of the agency's procedures in arriving at such decision;

(B) shows that the decision was based on any prohibited personnel practice described in 5 U.S.C. 2302(b); or

(C) shows that the decision was not in accordance with law.

The Agency's basis for the adverse actions identified in the complaint and codified in the Proposal to Remove and the nondisclosure agreement before the Board are the Agency's **charges of misconduct**.  The Administrative Judge failed to rule that the Agency has **not**

1

*produced any evidence of misconduct nor has the Agency sustained any charges of misconduct* and the threat of termination without un-sustained evidence was fraudulent, fraudulent misrepresentation of the facts, misinformation and purely coercive and cannot prevail in the law.  The Judge erroneously ruled the suspension and forced retirement are not within the Board's jurisdiction.

The Administrative Judge failed to rule in favor of Appellant and against the Agency in law that it committed prohibited personnel practices and gross harmful procedural error in securing adverse actions against Appellant by use of the nondisclosure agreement and deciding to suspend and force Appellant to retire.   He failed to rule the nondisclosure document deprived Appellant of his Constitutional guarantee of equal protection under the law, due process, and his right to property and therefore was not in accordance with the law.

Additionally, the nondisclosure agreement is invalid because Appellant did not receive any consideration from the Agency in the settlement.  The settlement was not voluntary as exhibited in Agency Remand Exhibit 3.  The Agency provided nothing by suspending me and forcing me to retire.  It has shown no cause of action in the first place.

The Judge failed to rule the agreement was coerced under duress as the Appellant has shown and further shown below in the law.

Since the pending EEOC claims also contained prior violations of the ADEA, it failed to include the appropriate waiver in accordance with the OWBPA.

The Judge failed to rule no "valuable" consideration for the complainant was given in exchange for the waiver.

The Judge failed to rule no advisement to consult with an attorney was provided

1.  **New and Material Evidence**

The Administrative Judge failed to rule that the Agency unlawfully withheld SF-50 and Certified Time and Attendance documents among other documents required in accordance with 5 USC 1241.43 related to Appellant's adverse action claims and the intertwined with disability discrimination and retaliation.

Below is the correct extraction of the email the Agency's representative, from Ben Felder, refers to in his opposition to the PFR.  It is critical to note that the terms and conditions of Appellant's employment and the adverse actions were involuntary, dictated and coerced upon Appellant and then executed a prohibited personnel practice wrapping it in the unlawful nondisclosure agreement denying Appellant the right of his due process to confront the evidence on the merit of the charges.  The Judge failed to rule documentary evidence provided by Appellant proves no misconduct has ever occurred and that the Agency can't prevail because

2

it provided no evidence of misconduct nor the policy or guidelines which were violated nor the charges.  Appellant provided the charging document and the evidence that refutes the charges.

At the hearing, Union President Johnny Zuagar stated that Appellant had never seen the document nor would I have ever seen it, according to him.  If the Agency had not submitted Exhibit 3 into the Agency Remand File, I would have never known the information below.  There is no discussion or evidence about actual misconduct except to justify the adverse action in the nondisclosure agreement and in the removal document to coerce Appellant into the unlawful agreement.  Yet the Administrative Judge refused to allow discovery of the Deciding Official's, Terryne Murphy, emails, correspondence, and notes related to how she reached her decision on the charges of misconduct.

**Benjamin T Felder/HRD/HQ/BOC**
**Ronda J Brown/POL/HQ/BOC@BOC**
**Terryne F Murphy/ISSRO/HQ/BOC@BOC, Stacy Chalmers/HRD/HQ/BOC@BOC**
Tuesday, July 26, 2011 07:37AM
AP Settlement
FYI - I presented the proposed terms for settlement to Johnny Zuagar yesterday. He advised that he would talk to
AP and get back to me. Hopefully, I will know something or have a counter-offer by the end of this week. I will let
you know as soon as I have something. These were the terms offered:
1. Agree to retire/resign by NLT May 30, 2011. (nonnegotiable)
2. Agree not to apply for or accept any future positions with the BOC. (nonnegotiable)
3. Agree not to engage an any further misconduct. (nonnegotiable)
4. Accept a 60-day suspension.
5. Accept a reassignment to an already identified area.
6. Accept a demotion to a non-supervisory GS-13 position.
7. Withdraw all pending complaints/cases against the Agency.
8. Agree not to file a claim against the Agency concerning this matter. (nonnegotiable)

I respectfully point the Board to item 5 above and to Initial Appeal File Tab 7 for one of several direct evidence of retaliation, reprisal and retribution as Appellant had been requesting reassignment since at least 2009 as the Judge failed to note in his commentary and decision. The reassignment in item 5 is a prohibited personnel practice in violation of 5 USC 2302 as it removed Appellant's supervisory classification imposing significant changes in Appellant's working conditions as had other changes that were pending in OSC-MA-2619 withdrawn when Ms. Murphy notified me to inform her of any other pending actions I might have.

It was clear to Appellant to withdraw else risk whatever action the Agency would take without Appellant's ability to address as the nondisclosure agreement stated the Agency would take whatever action it wanted if additional misconduct occurred.  Since no misconduct had occurred, Appellant to the statement to mean it would terminate Appellant for whatever reason it decided including if it thought Appellant would file a complaint, report to the OSC, Congress, or the Whitehouse.  I have done each since retirement.

3

The Judge wrongfully denied material and relevant witness testimony from supervisors Dale Reed and Patricia Musselman and from Darren Gutschow, an employee who was not Appellant's supervisor but who proposed Appellant's removal from the federal service.

The Agency's opposition to the PFR is without merit as these documents procured by FOIA were received after the August 7, 2013 closing of the Appeal File.  The Judge was required to compel the Agency to submit these documents as they are material to the charges.

The Judge failed to rule in law the Agency submitted no charging documents, evidence, the Deciding Official's notes and records or the nondisclosure agreement as was required by 5 USC 1241.43.  Appellant provided documentary evidence in the record while the Agency argued Appellant voluntarily suspended himself and voluntarily retired.

The SF-50 show adverse action and the Certified Time and Attendance Records show work times were approved by supervisor Dale Reed, Patricia Musselman or designee.  The Judge failed to rule Darren Gutschow's (employee who was not Appellant's supervisor) proposal to remove Appellant from the Federal Service is a prohibited personnel practice in violation of 5 USC 2302, DAO on Discipline and a violation of the Federal Personnel Manual.

The Judge also failed to rule the Agency failed to sustain charges of misconduct because the Agency refused to submit workplace policies or guidelines relevant to the adverse action in effect at the time of the adverse action and therefore has not sustained charges of misconduct.

The Judge failed to infer from the evidence that the purpose of the charges were to retaliate and punish Appellant for prior pending EEOC claims, for complaining to the Census Bureau Director about ongoing discrimination, pending Office of Special Counsel claim, and to inflict as much pain on Appellant as possible.

The Judge failed to address in his decision that in the hearing, the Agency Union President stated with clarity that the Agency was going to terminate Appellant if he did not sign the agreement even never having produced evidence of misconduct when requested by Appellant,

And that in the hearing, the Deciding Official admitted committing a harmful procedural error in contradiction to the procedure stated in the Proposal to Remove which stated she would decide on the basis of Appellant's response.

Appellant's explanation of his conduct and offer to be suspended for 14 days was to end the simultaneous trauma of his progressive disability and of the false accusations of the misconduct of stealing money from the government and proposed removal and was not an admission of any guilt as the evidence show.  The Agency then went further in an egregious and retaliatory

4

act with the nondisclosure agreement in order to hide there was no evidence of charged misconduct.

### 2. Administrative Judge's Erroneous interpretation of statute or regulation

The Administrative Judge failed to rule in accordance with the law that Agency management Brian McGrath, Ronda Brown, Darren Gutschow, Terryne Murphy, and Agency signatories imposing the unlawful nondisclosure agreement committed fraud and/or misrepresentations, prohibited personnel practices and harmful procedural error charging Appellant with misconduct.  There is no evidence in the record or in possession of the Agency of misconduct.

*Fraud is the intentional perversion of truth and use of deceit, a trick or some dishonest means to deprive another of his/her/its money, property or a legal right.*

*Extrinsic fraud occurs when deceit is employed to keep someone from exercising a right, such as a fair trial, by hiding evidence or misleading the opposing party in a lawsuit.*

*Fraudulent misrepresentation occurs if (1) a representation was made; (2) that was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth; (4) that it was made with the intention that the plaintiff rely on it; (5) that the plaintiff did rely on it; and (6) that the plaintiff suffered damages as a result.*

-In *Shultz v. U.S. Navy*, "if an employee can show that the Agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the Agency is purely coercive. Cosby v. United States, 189 Ct.Cl. 528, 417 F.2d 1345, 1355 (1969); Autera v. United States, 182 Ct.Cl. 495, 389 F.2d 815, 817 (1968); Rich v. Mitchell, 273 F.2d 78, 79 (D.C.Cir.1959), cert. denied, 368 U.S. 854 , 82 S.Ct. 91, 7 L.Ed.2d 52 (1961)".

The Administrative Judge failed to rule evidence of Appellant's flexible work schedule and disability was in possession of Agency at the time of misconduct charges and failed to acknowledge undisputed evidence in the record that Appellant's placement under GS-14 Patricia Musselman and then GS-14 Dale Reed in 2007-2008 was a prohibited personnel practice awaiting investigation at the OSC (OSC MA-2619).   Appellant had reported to a GS-15 Division Chief since 1995.

-In *Scharf v. U.S. Air Force*,  "with freedom of choice as the guiding principle, it has been held that the element of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action, see, e.g., McGucken v. United States, 407 F.2d 1349, 1351, 187 Ct.Cl. 284 (Ct.Cl.), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); (2) an employee unsuccessfully tries to withdraw his resignation before its effective date, see Cunningham v. United States, 423 F.2d 1379, 1384-85, 191 Ct.Cl. 471 (Ct.Cl.1970); (3) an

5

employee submits a resignation under time pressure, see Perlman, 490 F.2d at 932-33; or (4) an employee fails to understand the situation due to mental incompetence, see Manzi v. United States, 198 Ct.Cl. 489, 492 (1972). See Taylor v. United States, 591 F.2d 688, 692, 219 Ct.Cl. 86 (Ct.Cl.1979); Christie v. United States, 518 F.2d 584, 588, 207 Ct.Cl. 333 (Ct.Cl.1975).

-*In Perlman v. United States*, "whether an action is voluntary or involuntary is determined not by the form of the action, but by the circumstances that produced it. [Federal Personnel Manual Supp. 752-1, subchapter S1-2a(1).] See Ainsworth v. United States, 180 Ct.Cl. 166, 172 (1967), and the recent decision in Manzi v. United States, 198 Ct.Cl. 489, 495 (1972)."

-*In McGucken v. United States*, supra, in determining whether an employee's resignation was submitted under duress, the three elements necessary to show duress are (1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party.

-*In Fruehauf*, "duress involves a step beyond mere illegality and implies that a person has been unlawfully constrained or compelled by another to perform an act under circumstances which prevent the exercise of free will (Fruehauf Southwest Garment Co v. United States).

-*In Covington v. Department of Health and Human Services and Shutltz v. U.S. Navy*, "...the board's jurisdiction and the merits of an alleged involuntary separation are inextricably intertwined. Dumas v. Merit Systems Protection Board, 789 F.2d 892, 894 (Fed.Cir.1986). Thus, if it is established that a resignation is involuntary, the board not only has jurisdiction, but also the employee wins on the merits and is entitled to reinstatement. See Covington v. Department of Health and Human Services, 750 F.2d 937, 943 (Fed.Cir.1984)., ". "A resignation is not voluntary where an agency imposes the terms of an employee's resignation, the employee's circumstances permit no alternative but to accept, and those circumstances were the result of improper acts of the agency. See Edgerton v. Merit Systems Protection Board, 768 F.2d 1314, 1317 (Fed.Cir.1985); Scharf v. Department of the Air Force, 710 F.2d 1572, 1574 (Fed.Cir.1983); Taylor v. United States, 219 Ct.Cl. 86, 591 F.2d 688, 691 (1979).

...where an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act. **On the other hand**, inherent in that proposition is that the agency has reasonable grounds for threatening to take a adverse action. If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive. Cosby v. United States, 189 Ct.Cl. 528, 417 F.2d 1345, 1355 (1969); Autera v. United States, 182 Ct.Cl. 495, 389 F.2d 815, 817 (1968); Rich v. Mitchell, 273 F.2d 78, 79 (D.C.Cir.1959), cert. denied, 368 U.S. 854, 82 S.Ct. 91, 7 L.Ed.2d 52 (1961).

The Appellant claimed in the PFR that the non-disclosure agreement, the Agency's Remand Exhibit 3 (which the Agency unlawfully withheld from the Initial Appeal requirement by 5 USC

6

EXHIBIT 1 Pg. JA579

Case 1:17-cv-01932-TSC   Document 30-4   Filed 11/19/18   Page 412 of 424
USCA Case #14-1155      Document #1537564      Filed: 02/13/2015      Page 581 of 596

1241.43) showing suspension, retirement or resignation, forfeiture of pending EEOC claims as **non-negotiable**, Appellant's hours worked outside of regular schedule with supervisory approval (IAF Tab 5) and Union President's testimony that the Agency was going to terminate Appellant if he did not sign the agreement without evidence show that constraint.  The nondisclosure agreement violated Appellant's right to due process and is a violation of 5 USC2302 (b)(8), (b)(9), (b)(10), (b)(12) and (b)(13), minimally.  The Judge failed to rule in accordance to the law on this matter.

The Judge failed to rule in accordance with the law, 5 USC 2302 (b)(13) that it is a prohibited personnel practice to "implement or enforce any nondisclosure policy, form, or agreement, if such policy, form, or agreement does not contain the following statement: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling.".

The Administrative Judge's ruling violates EEOC Notice Number 915.002, "Enforcement Guidance on non-waivable employee rights under Equal Opportunity Commission (EEOC) enforced statutes."

Volume II of the EEOC Compliance Manual states: An employer may not interfere with the protected right of an employee to file a charge, testify, assist, or participate in any manner in an investigation, hearing, or proceeding under Title VII of the Civil Rights Act of 1964 (Title VII), 42 **U.S.C.** § 2000e et seq., the Americans with Disabilities Act (ADA), 42 **U.S.C.** § 12101 et seq., the Age Discrimination in Employment Act (ADEA), 29 U. S. C. § 621 et seq., or the Equal Pay Act (EPA), 29 **U.S.C.** § 206(d). These employee rights are non-waivable under the federal civil rights laws.

###### (a)  Coercion to Enter Unlawful Nondisclosure Agreement

The documentary evidence and the relevant law in this case and testimony by Union President and Terryne Murphy at the hearing dispute the Judge's conclusion of voluntary entry into the settlement agreement.

Appellant's PFR addresses the Agency's violations of 5 USC 2302 and the commission of harmful procedural errors and the Judge's failure to rule accordingly.

In all of the paragraphs below, the PFR states that Administrative Judge failed to rule that the Agency decisions and nondisclosure agreement were secured by prohibited personnel practices described in 5 U.S.C. 2302(b), Merit System Principles in 5 USC 2301, harmful procedural error,

7

not in accordance with the law in violation of equal protection, due process, and property rights, statute and regulations.

Requiring a federal employee to enter into a nondisclosure agreement that forbids the employee to exercise his statutory rights or fulfill his ethical duty to make protected disclosures constitutes a prohibited personnel practice under 5 U.S.C. 2302(b)(1), (b)(8), (b)(9), (b)(12), and (b)(13).

The Judge failed to infer OSC charges in OSC-MA-2619 were withdrawn because of Ms. Murphy's intervention is stated in the record and remains undisputed by the Agency.

An employee's right to petition Congress is protected under the Lloyd-LaFollette Act of 1912, 5 U.S.C. 7211. "Gag rules" that forbid federal employees from communicating directly with Congress, on pain of dismissal, were explicitly cited by several legislators as the reason for enacting the Lloyd-LaFollette Act. *Bush v. Lucas,* 462 U. 367, 382-84 & nn.19-24 (1983). The nondisclosure agreement on its face violate the Lloyd-LaFollette Act, and thereby 5 U.S.C. 2302(b)(l2).

The Administrative Judge poses commentary and argument even complimenting Appellant on his intelligence and then proceeds to attack Appellant's credibility to the benefit of the Agency in the "catch all" credibility proposition he thinks the Agency can use to prevail before the Board.   I am aware he no longer has the title of Administrative Judge.

For a credibility assessment of Appellant, I respectfully request the Board review Appellant's exhibits, accomplishments, pursuit of and repeated denial of promotional opportunities and statement of having worked thousands of hours without pay over Appellant's career.

The case before the MSPB is not about credibility.  If it is, Judge Turbitt asking Agency lawyer in the telephonic conference about the documents the Agency wanted removed from Appellant's file is most incredible.

The Judge's refusal to compel and the Agency's failure to comply with the law in 5 USC 1241.43 goes to credibility.  The Judge confers credibility on Agency employees committing documented prohibited personnel practices including disability discrimination .

The Judge and the Agency further misstates and misrepresents the facts that the 30 day suspension was a mitigation of any other action.  A suspension greater than 14 days is an adverse action.  There is no evidence for cause of action in the record submitted by Agency.

In MSPB Stay granted in OSC EX REL John Does (1-4) v. Department of Commerce IG and a near identical nondisclosure agreement, some Commerce employees signed that agreement as well because in the OSC brief it stated that the employees were coerced into the agreement.

As in *Perlman v. United States*, "whether an action is voluntary or involuntary is determined not by the form of the action, but by the circumstances that produced it.  [Federal Personnel

8

Manual Supp. 752-1, subchapter S1-2a(1).]  See Ainsworth v. United States, 180 Ct.Cl. 166, 172 (1967), and the recent decision in Manzi v. United States, 198 Ct.Cl. 489, 495 (1972)."

Appellant was served a removal proposal which described the procedure that would occur. Appellant responded as required.  Shortly thereafter, the Agency management presented Appellant with the nondisclosure agreement and communicated to Appellant by way of the Union President Johnny Zuagar, which he testified to at the hearing, that the Agency was going to terminate Appellant if he did not sign the agreement.

It cannot be that the Agency using identical tactics in securing the nondisclosure agreement, the Commerce IG employees can be considered coerced into a near identical nondisclosure agreement and Appellant voluntarily entered a "copycat" coercive agreement but with an added egregious intention to permanent inflict Appellant with grief, despair and impoverishment.

### (b) AJ Improperly Failed to Render a Decision on the Merits

Appellant made the case that where the adverse actions are intertwined with the cause of action, the board's jurisdiction and the merits of an alleged involuntary separation are inextricably intertwined. Dumas v. Merit Systems Protection Board, 789 F.2d 892, 894 (Fed.Cir.1986). Thus, if it is established that a resignation is involuntary, the board not only has jurisdiction, but also the employee wins on the merits and is entitled to reinstatement. See Covington v. Department of Health and Human Services, 750 F.2d 937, 943 (Fed.Cir.1984).

Further in Covington, It is established that erroneous advice by the agency can rebut the presumption of voluntariness, and that such evidence must be considered. Covington, supra.

## Conclusion

The Agency's opposition to Appellant's Petition for Review is without merit and therefore per the Petition For Review, Appellant should prevail on jurisdiction and thus on the merits in the instant case and should receive maximum allowable damages and prohibited personnel practices passed on to OSC for corrective action and disciplinary action.


Respectfully,

/signed/

Anthony W. Perry

9

### UNITED STATES OF AMERICA
### MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ANTHONY W. PERRY, | DOCKET NUMBERS |
| Appellant, | DC-0752-12-0486-B-1 |
| | DC-0752-12-0487-B-1 |
| v. | |
| DEPARTMENT OF COMMERCE, | |
| Agency. | DATE: August 6, 2014 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Anthony W. Perry, Upper Marlboro, Maryland, pro se.

Tyree P. Ayers, Esquire, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed for lack of jurisdiction his suspension and involuntary retirement appeals because of a settlement agreement entered into before the U.S. Equal Employment Opportunity Commission (EEOC). Generally, we grant petitions

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

¶2    In August 2011, the appellant and the agency entered into a settlement agreement before the EEOC wherein the appellant agreed, inter alia, to voluntarily resign or retire no later than September 4, 2012, to serve a 30-day suspension which the agency would issue in lieu of effectuating a removal action it proposed in June 2011, and to waive his Board appeal rights with respect to the aforementioned actions.   MSPB Docket No. DC-0752-12-0486-I-1 (0486-I), Initial Appeal File (IAF), Tab 14, Subtab 1 at 15-20.  After he served the 30-day suspension and retired pursuant to the settlement agreement, the appellant filed an appeal with the Board regarding the 30-day suspension and his retirement, which he alleged was involuntary.  0486-I, IAF, Tab 1 at 6, ¶ 20; MSPB Docket No. DC-0752-12-0487-I-1 (0487-I), IAF, Tab 1 at 5, ¶ 20.

¶3    The administrative judge docketed the suspension and involuntary retirement claims as two separate appeals and later dismissed both appeals

without a hearing,[2] finding that the Board lacked jurisdiction because the appellant validly waived his Board appeal rights in the August 2011 settlement agreement.   0486-I, Initial Decision (July 30, 2012); 0487-I, Initial Decision (July 30, 2012).

¶4        The appellant then filed petitions for review of the aforementioned initial decisions.  0486-I, PFR File, Tab 1; 0487-I, PFR File, Tab 1.  The Board joined the two appeals and granted the appellant's petitions for review.  0486-I, Remand Order (June 12, 2013).  The Board found that the appellant's claim, that the agency coerced him into signing the settlement agreement by misinforming him that he would not have Board appeal rights if it effectuated his removal, constituted a nonfrivolous allegation of involuntariness entitling him to a jurisdictional hearing.  Remand Order at 6-7.  Thus, the Board remanded the appeals for a jurisdictional hearing, so that the appellant would have an opportunity to explain, and present evidence in support of, that nonfrivolous allegation.  Remand Order at 9.  The appellant raised several other claims of coercion—i.e., that the agency coerced him into signing the settlement agreement by threatening to remove him, by proposing adverse action that was discriminatory and that it knew it could not sustain, and by failing to inform him of his Board appeal rights—all of which the Board considered and rejected. Remand Order.

¶5        On remand, the administrative judge conducted a hearing, at which the appellant declined to testify.  MSPB Docket Nos. DC-0752-12-0486-B-1 and DC-0752-12-0487-B-1 (0486-B), Remand File (RF), Tab 26, Hearing Compact Disc (HCD), Track 4; *see* 0486-B, RF, Tab 28, Remand Initial Decision (RID). The administrative judge thereafter issued an initial decision, again dismissing

---

[2] The administrative judge concluded that the appellant waived his right to a hearing, in part because of conflicting statements the appellant made, but we ultimately concluded that the appellant did not waive his right to a hearing.  *See* 0486-I, Remand Order (June 12, 2013).

the appeals for lack of jurisdiction based on the August 2011 settlement agreement. The appellant then filed the instant petition for review, again arguing that he did not voluntarily enter into the settlement agreement. 0486-B, Remand Petition for Review (RPFR) File, Tab 12.

¶6        As an initial matter, the appellant seeks to invalidate the settlement agreement by arguing that: (1) the settlement agreement is invalid because it contains a nondisclosure provision, purportedly restricts his ability to communicate with Congress and the Office of Special counsel, and required him to waive his "non-waivable" rights under Title VII; (2) he did not receive any consideration under the settlement agreement for waiving his rights under Title VII; (3) he signed the settlement agreement under duress because the agency presented him with the agreement immediately after proposing his removal; (4) the agency coerced him into signing the settlement agreement by proposing an action which it knew it could not sustain; and (5) the deciding official intentionally withheld her decision on the proposed removal, which mitigated the proposed removal to a 30-day suspension, in order to coerce the appellant into signing the settlement agreement. *Id.* We will not consider these arguments because they all exceed the scope of the Board's remand order, some have already been raised before the Board and rejected, and some are being raised for the first time.[3] *See Zelenka v. Office of Personnel Management*, 110 M.S.P.R. 205, ¶ 15 n.3 (2008) (refusing to address an appellant's arguments which exceeded the

---

[3] On July 23, 2014, the appellant filed a request to submit evidence which he contends is new and material. 0486-B, RPFR File, Tab 17 at 3. Specifically, he seeks to submit a letter by the U.S. House of Representative's Committee on Science, Space, and Technology, as well as a report of investigation regarding the agency's Inspector General's alleged failure to remove two employees who coerced other employees into signing a nondisclosure agreement. *Id.* He also states that the Inspector General is, as a result, under investigation for retaliation and questionable hiring practices. *Id.* The appellant's request is DENIED. As previously stated, the appellant's claims regarding the validity of the settlement agreement are outside the scope of our remand order. Further, as explained in more detail below, the merits of his appeal are not before us because we do not have jurisdiction in this matter.

scope of the issues to be addressed on remand), *rev'd on other grounds*, No. 2009-3065 (Fed. Cir. 2010); *see also Sanchez v. Department of Justice*, 14 M.S.P.R. 79, 82 (1982) (the presiding official properly limited the scope of the hearing to those issues discussed in remand order, where the appellant was granted a fair opportunity on his initial appeal to present the issues he attempted to litigate at the remand hearing); *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

¶7        On remand, the appellant again alleged that the agency misled him by stating that he would have no right of appeal if the agency removed him.  0486-B, RF, Tab 20 at 18.  However, he presented no evidence regarding this issue, which was the sole issue to be addressed on remand, and does not raise any such argument on review.  The evidence in the record contradicts the appellant's claim that the agency misled him with respect to his potential appeal rights.  The agency attorney who assisted in negotiating and drafting the settlement agreement,[4] a management official who represented the agency during negotiations, and the appellant's union representative who assisted the appellant during negotiations, all testified that: (1) they did not advise the appellant that he would not have appeal rights if he failed to sign the settlement agreement and the agency removed him; and (2) they were not aware of anyone at the agency who so informed the appellant.  HCD, Track 3.  The appellant's union representative testified that he informed the appellant that he (the appellant) could choose not to

---

[4] The administrative judge noted in the initial decision that, according to the agency's attorney, the parties continued discussing settlement even after they reached an impasse before an EEOC settlement judge in or around April 2011.  RID at 8; *see* 0486-I, IAF, Tab 5.  The appellant argues that no additional communication occurred until after the agency provided him with the proposed settlement agreement.  0486-B, RPFR File, Tab 12 at 5, 13.  Assuming arguendo that the administrative judge misstated these facts, such an error would be irrelevant to the question of whether the agency provided the appellant with misinformation regarding his potential appeal rights.

sign the terms of the settlement agreement, "take[ ] the punishment" the agency selected, and then file a union grievance or an appeal with the Board. *Id.* Further, the union representative testified that he believed the appellant "knew exactly what he was signing." *Id.* We also note that, according to the union representative, he and the appellant jointly devised retirement as a possible settlement term, and this term was later proposed to the agency.[5] *Id.* The union representative's testimony is consistent with contemporaneous notes of the deciding official regarding a conversation she had with the appellant after the agency proposed his removal, wherein he stated that he was "willing to make any concession to remain employed until September 2012," when he would be "eligible to retire at 30 years." 0486-B, RF, Tab 21 at 12.

¶8      The administrative judge found the aforementioned witnesses' testimony credible, noting that: (1) all of the witnesses corroborated each other's testimony on every major point and their testimony was consistent in all material respects with the documentary evidence of record; (2) the witnesses' testimony at the hearing was straightforward, genuine and believable, and their demeanor gave no indication of dissembling; and (3) the appellant offered no plausible reason why these witnesses would fabricate their testimony.  RID at 13.  We must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing, and may overturn such determinations only when there are "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002).  We discern no basis to disturb the administrative judge's credibility determinations in this case.  Based on the

---

[5] The appellant claims that he was unaware that the agency proposed settlement terms to his representative, that his representative did not provide him with any assistance, and that his representative did not propose any alternatives and informed him that he would be removed if he did not sign the settlement agreement.  0486-B, RPFR File, Tab 12 at 6.  None of these arguments are relevant to the limited jurisdictional issue in this appeal.

foregoing, we find that the appellant has failed to establish that he detrimentally relied on misinformation regarding his potential appeal rights when entering into the settlement agreement and, therefore, that we lack jurisdiction over his appeal because the appellant validly waived his appeal rights therein.

¶9      The appellant alleges that the administrative judge committed several errors in adjudicating his appeal on remand, including: (1) failing to consider whether the agency proved its charges; (2) denying him discovery of documents from the deciding official regarding the proposed removal and her decision to sustain the charges, as well as other documents relating to "current & past misconduct" and "other causes for action against" him, and information regarding other employees' time and attendance; (3) denying his request for two witnesses—his first- and second-line supervisors—to testify regarding his time and attendance; and (4) exhibiting bias in favor of the agency and abusing his discretion by not sanctioning the agency for its failure to comply with the acknowledgement order and considering the agency's request to remove medical documentation from the record.  0486-B, RPFR File, Tab 12 at 5, 7-9.

¶10      The merits of the agency's charges are not at issue in this appeal because the appellant has not established the Board's jurisdiction over it.  *See Evans v. Department of Veterans Affairs*, 119 M.S.P.R. 257, ¶ 5 (2013) (the Board must first resolve the threshold issue of jurisdiction before proceeding to the merits of an appeal).  We therefore find that the administrative judge acted properly in not reaching, and in denying the appellant's discovery requests which all relate to, the merits of the agency's charges.[6]  Regarding the appellant's request to call his

---

[6] We also agree with the administrative judge that the appellant failed to comply with the Board's procedures regarding discovery, and that his discovery requests could therefore have been denied on that basis.  *See* 0486-B, RF, Tab 25 at 3.  In particular, the appellant submitted his discovery requests directly to the administrative judge, rather than to the agency.  *See* 0486-B, RF, Tab 8 at 3-4, Tab 14 at 3; *see also* 5 C.F.R. § 1201.71 (discovery requests and responses thereto are not to be filed in the first instance with the Board).

first- and second-line supervisors as witnesses, we note that the administrative judge did not deny this request, but rather, the appellant withdrew it. 0486-B, RF, Tab 22 at 5, Tab 25 at 2; *see* HCD, Track 1 (the appellant did not object to the prehearing conference summary, insofar as it stated that he withdrew his request for his first- and second-line supervisors to testify). In any event, testimony regarding the appellant's time and attendance is irrelevant as it relates to the merits of the agency's charges, so we discern no error or harm.[7] As to the appellant's assertion that the administrative judge was biased, he has not overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *See Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). The administrative judge stated below that he did not suggest to the agency's representative that he would delete any information from the appellant's pleadings and, moreover, "grant[ed] the appellant's motion to not delete any documents he submitted." 0486-I, IAF, Tab 26 at 3; *see* 0486-I, IAF, Tab 21 (the appellant's opposition to the agency's alleged request to have "all of the medical documents removed from [his] response file"). Further, even if the agency failed to submit documentation relating to the merits of its charges, the appellant has not suffered any harm because such information does not relate to the threshold issue of jurisdiction in this matter, and the administrative judge's decision not to sanction the agency for failing to produce irrelevant evidence does not establish bias.

---

[7] The appellant attaches evidence which he contends is new and was previously unavailable because he received it via a Freedom of Information Act request. 0486-B, RPFR File, Tab 12 at 6. Specifically, he submits time and attendance records for the time period when he was charged with receiving pay for time not worked in the proposal notice, and Standard Form 50s documenting his suspension, reassignment, and retirement pursuant to the settlement agreement, as well as various performance awards he has received. *Id.* at 6, 17-46. These documents are not material, as they have no bearing on the Board's jurisdiction over this appeal. *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980) (alleged new evidence must be of sufficient weight to warrant an outcome different from that in the initial decision).

¶11      The appellant raises claims of discrimination on various bases under Title VII. 0486-B, RPFR File, Tab 12 at 4-5, 10, 13. As explained in our remand order, wherein we specifically addressed the appellant's claim that the proposed removal action was motivated by discriminatory animus, the Board may consider Title VII discrimination claims only after a finding of jurisdiction is made. 0486-I, PFR File, Tab 9 at 9-10 n.10; *see Cruz v. Department of the Navy*, 934 F.2d 1240, 1245 (Fed. Cir. 1991) (en banc). To the extent that the appellant is attempting to raise an affirmative defense, we clarify that the Board has no authority to consider affirmative defenses where it cannot hear an appeal on its merits because it lacks jurisdiction to do so. *See Martin v. Department of Defense*, 70 M.S.P.R. 653, 657 (1996). Moreover, contrary to the appellant's contention that he is entitled to mixed appeal rights, his appeal is not a mixed case because we lack jurisdiction over it. 0486-B, RPFR File, Tab 12 at 4; *see Conforto v. Merit Systems Protection Board*, 713 F.3d 1111, 1118 (Fed. Cir. 2013) (a case is mixed only if the Board has jurisdiction to decide the employee's appeal from the adverse action at issue); *see also Cunningham v. Department of the Army*, 119 M.S.P.R. 147, ¶¶ 8, 13-14 (2013) (providing notice of non-mixed appeal rights because although the appellant alleged that her termination was based on disability discrimination, she did not have the right to appeal her termination to the Board because she failed to make a nonfrivolous allegation of jurisdiction).

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* <u>5 U.S.C. § 7703</u>(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, <u>931 F.2d 1544</u> (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (<u>5 U.S.C. § 7703</u>) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, <u>http://www.mspb.gov/appeals/uscode/htm</u>. Additional information is available at the court's website, <u>www.cafc.uscourts.gov</u>. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and <u>Forms</u> 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at <u>http://www.mspb.gov/probono</u> for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:           _____

                         William D. Spencer
                         Clerk of the Board

Washington, D.C.