Exhibit 2 pg. 1

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Overview:**

One of the biggest challenges facing Federal sector managers and supervisors is taking swift action to manage employees who are not meeting performance expectations and not contributing to agency goals.  Managers and supervisors may not be making full use of the many options to deal with employees with performance or conduct issues. Managers and supervisors may take actions against employees, up to and including removal from Federal employment, for job performance deficiencies and/or misconduct.

This guidance provides agency human resources offices, managers, and supervisors with a broad overview of the different tools that can be used to manage employees' job performance and address unacceptable performance or misconduct.  This overview of authorities under title 5, United States Code, is not meant to be a comprehensive guide that addresses every possible incident of misconduct or performance problems as each situation will vary depending on the facts involved.  Also, individual agencies may have unique statutory authorities and guidelines for addressing misconduct or performance problems.  However, it does highlight the tools generally available to Executive Branch managers and supervisors for addressing misconduct or performance problems.  You should consult with your human resources office to determine which tools are applicable to your agency.

This guidance addresses both members of the Senior Executive Service (SES) and non-SES Federal employees.  For employees who are covered by bargaining units, negotiated agreements with the applicable labor unions may contain time limits or other procedures that should be followed when taking action regarding bargaining unit employees, but these procedures must be consistent with the requirements of Title 5, United States Code.

**Actions That Can Be Taken to Avoid Performance or Conduct Issues:**

The best way for managers and supervisors to handle performance and conduct issues is to take action to avoid performance problems or conduct issues before they occur.  Such preventive actions include, but are not limited to:

- ***Communicate clear performance standards and expectations to employees.***  If your employees do not understand what is expected, it will be very hard, if not impossible, for them to meet those expectations.  Providing clear expectations does not necessarily require you to lay out precisely written, detailed instructions on every performance component but should provide expectations with enough clarity and specificity so that employees understand their responsibilities and can be held accountable for them.  Generally, the question you should ask in drafting performance standards:  "Would a reasonable person understand what was expected?"

- ***Provide regular and consistent feedback on performance.***  Such feedback, both positive and corrective, whether given in regularly scheduled meetings or in unscheduled discussions, is crucial to ensuring that expectations are understood.

1

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

Consistent feedback lessens the likelihood that an employee will be surprised if it becomes necessary to take formal steps to resolve unacceptable performance. Always look for opportunities to confirm that your employees understand what is expected.

- ***Reward and recognize good performance, informally and formally.*** Recognizing good performance is simply another way to clarify and reinforce expectations. Recognizing good performance boosts morale and also increases the likelihood that good performance will continue.

- ***Make full use of the probationary period for employees.*** Performance problems often first show up during the initial period of Government employment. This period is designed to provide an opportunity for managers and supervisors to address such problems in an expedient manner. Furthermore, removing probationary employees based on conduct and performance issues is less cumbersome as they are not entitled to most of the procedures and appeal rights granted to employees who have completed probationary/trial periods. More information on the probationary or trial period is discussed in more detail later in this guide.

- ***Set the desired example by the manager's or supervisor's own conduct.*** Employees often follow the lead of their managers and supervisors. Demonstrating leadership through clear communication, taking initiative and being inclusive can set the tone for an office.

- ***Maintain a good work atmosphere.*** Creating inclusive work environments where the workforce is fully engaged can be a critical enabler of organizational success and performance.

- ***Assure that employees conform to any applicable standards of conduct.*** Public service is a public trust. To ensure that every citizen can have complete confidence in the integrity of the Federal Government, Federal employees are expected to adhere to certain principles of ethical conduct.[1] Additionally, Federal employees are expected to conform to standards of conduct established by Government-wide and agency policies.[2]

- **Maintain effective lines of communication with the Human Resources Office and Agency Legal Office.** While managers and supervisors are ultimately responsible for addressing performance and misconduct problems, they are not expected to be subject matter experts on application of the tools discussed in this guidance. The Human Resources Office and Agency Legal Office are available to advise, assist and guide managers and supervisors through the available processes for addressing performance and conduct issues.

---

[1] *See* 5 C.F.R. Part 2635.
[2] *See* 5 C.F.R. Part 735.

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Addressing Performance or Conduct Issues of Non-SES Employees during the Probationary Period:**

Employees newly hired into the Federal Government and into a competitive service position are generally required to serve a 1-year probationary period.[3]  The probationary period is an important management tool to evaluate the conduct and performance of an employee and should be treated as the last step in the hiring process.  Appropriate actions taken within the probationary period are the best way to avoid long-term problems.

Employees may be terminated from employment during the probationary period for pre-employment reasons or for unacceptable performance or conduct.[4]  When removal is based on pre-employment issues, the employee is given advance notice, an opportunity to provide an explanation of the events related to pre-employment issues and an agency decision.[5]  When the basis for termination is unacceptable performance or conduct, advance notice of the intent to terminate is not required.  However, the employee must be informed in writing of the reason for the summary termination.  In either case, probationary employees have limited appeal rights, and also have Equal Employment Opportunity (EEO) rights to challenge an action that is believed to have been taken for a discriminatory reason.  An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

Effective use of the probationary period is an ideal way to avoid long-term problems.  The U.S. Government Accountability Office (GAO) has concluded there are benefits of using automated notifications to notify supervisors that an individual's probationary period is ending and that the supervisor needs to make an affirmative decision or otherwise take appropriate action.[6]  OPM agrees automated and timely notifications to supervisors can be a useful tool for agencies regarding probationary periods and should be used to the extent they are appropriate and available.[7]

**Addressing Performance or Conduct Issues of Supervisory Employees during the Supervisory Probationary Period (Non-SES):**

Employees initially appointed to supervisory positions are required to serve a probationary period prescribed by the agency.[8]  The purpose of the supervisory probationary period is to provide the agency an opportunity to assess the supervisory

---

[3] There are other circumstances in which an employee would be required to serve a probationary period. Your Human Resources Office can help you determine if an employee is on a probationary period.
[4] *See* 5 C.F.R. §§ 315.803 and 804.
[5] *See* 5 C.F.R. § 315.805.
[6] GAO-15-191, Improved Supervision and Better Use of Probationary Periods Are Needed to Address Substandard Employee Performance, February 2015.
[7] All Shared Service Centers have confirmed to OPM that their existing HR systems already contain the functionality to automatically notify supervisors of the end of the individual's probationary period for appropriate management action.  It is each agency's decision whether to utilize this functionality.
[8] *See* 5 C.F.R. Part 315, Subpart I.

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

performance (not technical ability or program knowledge) of the new supervisor.  At the end of the probationary period, the agency determines whether to retain that individual as a supervisor or to return the individual to a non-supervisory position.

Agencies should monitor the performance of their probationary supervisors and provide them training, coaching, and feedback.  Use of the supervisory probationary period to identify ineffective supervisors is critical to organizational performance because of the great impact supervisors have on the performance of the workforce. Therefore, agencies need to hold managers accountable for using the supervisory probationary period wisely as the final step in the selection process.

**Addressing Performance of Non-SES Employees after the Probationary Period:**

Communication is the key to addressing issues early and taking appropriate action when necessary.  Allowing a job performance issue to fester simply compounds the issue and makes it more difficult to address.

**Managing Employee Performance[9]:**

To effectively manage employee performance, supervisors should:

- Encourage employee participation in the performance planning process;
- Issue a performance plan outlining the critical and any non-critical job element(s) and performance standards against which his or her actual job performance will be appraised;
- Discuss performance expectations so employees understand their job duties and how they should be performed;
- Continually monitor performance, conduct at least one formal progress review, and provide ongoing feedback throughout the rating cycle;
- Periodically review performance standards and revise them as necessary to ensure that standards are attainable, accurate, and effectively communicate performance expectations; and
- Communicate with employees when deficiencies are first noted.  Do not wait until the end of the rating cycle to address concerns.[10]

---

[9] If bargaining unit employees are involved, supervisors should consult with labor relations staff when drafting and issuing performance standards; conducting performance meetings; and issuing final ratings to determine whether any labor relations obligations exist with the local union(s).

[10] There is a variety of useful, cost-free training courses available to supervisors and managers on HR University (HRU.gov) that can assist on a wide range of employee performance management issues.  For example, an online course entitled "Addressing and Resolving Poor Performance" can be found at: http://www.hru.gov/course_catalog.aspx?cid=161&mgr=false.

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Addressing Unacceptable Job Performance:**

If an employee's job performance becomes unacceptable under a critical job element, supervisors should promptly address this matter with the employee.  There are two formal procedures a supervisor may use in resolving unacceptable performance:  Chapter 43 and Chapter 75 of Title 5 of the U.S. Code.

At the earliest opportunity, the supervisor should work with the Human Resources Office Employee Relations staff to determine the appropriate procedure for resolving the poor performance and whether placing the employee on a Performance Improvement Plan (PIP) under 5 U.S.C. Chapter 43, a specific measurable action plan, is appropriate. [11]

The Employee Relations staff will also guide the supervisor on the specific regulatory requirements of the process and assist in providing a good foundation from the onset.  If a PIP is appropriate, the supervisor should work with the Employee Relations staff to draft the PIP and determine how long the PIP will last; its duration will generally depend on the duties and responsibilities of the employee's position and the nature of the unacceptable performance.  A PIP should include the following:

- The critical job element(s) being performed unacceptably;
- Examples of the employee's unacceptable performance under each critical element (not required but recommended);
- An explanation of the minimally acceptable level of performance required;
- An explanation of what the employee must do to demonstrate acceptable performance;
- Specific tools and support to be provided to help the employee improve during this period as required under 5 CFR 432.104;
- How long the PIP will remain in effect; and
- Consequences of failure to improve performance to an acceptable level.

The PIP notice may also advise the employee if he or she believes a personal problem is contributing to performance deficiencies, he or she may contact an Employee Assistance Program counselor.  If the employee believes a medical condition is contributing to performance deficiencies, he or she may submit documentation for consideration.

During the PIP opportunity period, the supervisor should document assignments and instructions provided to the employee.  Additionally, the supervisor should document assistance provided to the employee as well as monitor the employee's performance to determine if it rises to an acceptable level.

---

[11] Unlike removals initiated under 5 U.S.C. Chapter 43, Performance Improvement Plans (PIPs) are not required prior to initiating an action under 5 U.S.C. Chapter 75.

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Taking a Performance-Based Action under 5 U.S.C. Chapter 43:**

If an employee's job performance does not improve to an acceptable level at the conclusion of the PIP, the supervisor, in consultation with the employee relations staff as appropriate, should promptly determine the action to take. The supervisor's options include reassigning the employee, or proposing the employee's demotion or removal. Reassignment to a position at the same wage grade is a management right distinct from adverse and performance-based actions and can be accomplished with a simple notification and personnel action.

If a supervisor intends to reassign a bargaining unit employee, they should confirm with employee relations staff if there are collective bargaining obligations prior to informing the employee of the reassignment. Performance-based reductions in grade and removal actions can be appealed to the U.S. Merit Systems Protection Board (MSPB). If the employee belongs to a bargaining unit and the reduction in grade or removal falls within the coverage of a negotiated grievance procedure, the employee may file an appeal or grievance, but not both.[12]

In addition, an employee who believes a performance-based action was taken for a discriminatory reason may either file an EEO complaint or raise a prohibited personnel practice as an affirmative defense in an MSPB appeal. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

If the employee is being demoted or removed from the Federal service under 5 CFR Part 432, the following steps must be followed:

1. Issue a written proposed notice at least 30 calendar days prior to the proposed effective date of demotion or removal from Federal employment. This notice will state the regulation under which the action is being taken, specify critical element(s) failed, provide specific examples of unacceptable performance, discuss the performance improvement plan, and inform the employee of his or her rights;

2. The employee may be represented by an attorney, union office, or another person authorized by the employee and permitted by 5 C.F.R. § 432.105(a)(4)(iii). ;[13]

3. The employee may review the material relied on in support of the proposed action;

4. The employee may submit medical documentation if he or she believes a medical condition has contributed to the unacceptable performance;[14] and

---

[12] *See 5 U.S.C. § 7121(g)(2).*

[13] An agency may disallow as an employee's representative an individual whose activities as a representative would cause a conflict of interest or position or an employee whose release from his or her official position would give rise to unreasonable costs to the Government or whose priority work assignments preclude his or her release from official duties. *See 5 C.F.R. § 432.105(a)(4)(iii).*

[14] *See 5 C.F.R. § 432.105(a)(4)(iv).*

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

5. After the proposal notice has been issued and the 30-day advance notice period ends, a deciding official (a person higher in the chain of command than the proposing official in accordance with the agency's delegations of authority) reviews the proposal notice, supporting evidence, and considers any response provided by the employee and/or the employee's representative in order to reach a final decision.  A final written decision to demote or remove an employee must inform the employee of any appeal or grievance rights he or she may have.

6. The agency will maintain copies of the notice of proposed action, the employee's written reply, a summary of the employee's oral reply, if any, the decision notice, and any supporting material.

**Other Considerations:**

- If the individual requests a reasonable accommodation related to a disability that they assert is necessary in order to permit them to attain acceptable performance, the agency must assess the appropriateness of the request and provide reasonable accommodation as required by law.  This would apply to any stage of the process prior to final action being taken, including if a PIP has already been issued. If an accommodation is deemed reasonable and necessary, the agency should give the employee an opportunity to demonstrate acceptable performance with the accommodation before it continues the PIP, if the PIP is ongoing at the time the employee informs the agency of his or her disability, or takes further action, if final action has not yet been completed.  It should be noted, however, that the agency is not required to modify the essential functions of a position based on a request for a reasonable accommodation and further, is permitted to hold disabled employees with reasonable accommodation to the same standards for performance as non-disabled employees with regard to the essential functions of their position.  Most agencies have a reasonable accommodation manager who can provide guidance concerning how to pursue these steps.

- Upon successfully completing a PIP, an employee must maintain an acceptable level of performance in the same critical job element(s) for 1 year beginning with the date on which the PIP began.  If the employee does not, he or she may be removed or demoted for unacceptable performance.

**Taking an Adverse Action for Performance under 5 U.S.C. Chapter 75:**

Supervisors and managers may also address unacceptable performance through an adverse action under Chapter 75 instead of a Chapter 43 performance-based action.[15] Unlike Chapter 43 actions, Chapter 75 actions do not have many of the formal requirements such as notice that the employee's performance deficiency is based on a critical element and an opportunity to improve period.  The requirements for Chapter 75 actions, are described under "Addressing Non-SES Employee Misconduct" below.[16]

---

[15] _See_, _e.g._, <u>Lovshin v. Dep't of the Navy</u>, 767 F.2d 826 (Fed. Cir. 1985).
[16] _See Fairall v. Dep't of Veterans Affairs_, 844 F.2d 775 (Fed. Cir. 1987).

Exhibit 2 pg. 8

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

To assist you in determining the best approach for you and your agency, we are providing a side-by-side comparison highlighting the differences between addressing unacceptable performance under Chapter 43 versus Chapter 75.  Each approach has unique requirements.  While addressing unacceptable performance under Chapter 75 is generally viewed as a more streamlined  approach, the facts of each case and the nature and strength of your evidence will be determining factors in deciding under which authority to take your action.

Exhibit 2 pg. 9

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES
# OR MISCONDUCT

|  | **Chapter 43** | **Chapter 75** |
|---|---|---|
| **Critical Element** | Agency *must* prove the performance deficiency is in a critical element. | Agency is *not* required to prove the performance deficiency is in a critical element. |
| **Establishment of Performance Expectations** | When the employee's performance in one or more critical elements is unacceptable, the employee will: (1) be notified of the deficiency; (2) be offered the agency's assistance to improve; and (3) be warned that continued poor performance could lead to a change to lower grade or removal. (This is commonly referred to as the PIP, an abbreviation for both performance improvement plan and also for performance improvement period.) | The extent to which an employee is on notice of the agency's expectations is a factor in determining the appropriateness of the penalty. Also, an agency cannot require that an employee perform better than the standards that have been communicated to the employee. |
| **Decline Following Improvement** | If the employee's performance improves during the PIP, and remains acceptable for 1 year, a new PIP is necessary before taking an action *under this chapter*. | A PIP is not required. |
| **Efficiency of the Service** | Agency is *not* required to prove that the personnel action will promote the efficiency of the service. | Agency *must* prove that the personnel action will promote the efficiency of the service. |
| **Burden of Proof** | Action must be supported by *substantial evidence*: that a reasonable person might find the evidence supports the agency's findings regarding the poor performance, even though other reasonable persons might disagree. | Action must be supported by a *preponderance of the evidence*: that a reasonable person would find the evidence makes it more likely than not that the agency's findings regarding the poor performance are correct. |
| **Advance Notice** | The agency must provide a notice of proposed action 30 days before any action can be taken, and must provide the employee with a reasonable opportunity to reply before a decision is made on the proposal. | |

9

Exhibit 2 pg. 10

## MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES
## OR MISCONDUCT

| | **Chapter 43** | **Chapter 75** |
|---|---|---|
| **Content of Advance Notice** | The notice must state the specific instances of unacceptable performance that are the basis for the action *and also the critical performance element involved.* | The notice must state the specific instances of poor performance that are the basis for the action. |
| **Deciding or Concurring Official** | A person higher in the chain of command than the person who proposed the action must concur. | The deciding official does not have to be a person higher in the chain of command than the person who proposed the action. |
| **Agency Decision** | Agency must issue a final decision within an additional 30 days of the expiration of the 30 days advance notice period. | Agency is under no particular time constraint, other than there cannot be a delay so extensive that it constitutes an error that harms the employee. |
| **Penalty Mitigation** | Once the agency meets the requirements to take an action, the MSPB cannot reduce the agency's penalty. | After finding that the agency meets the requirements to take a Chapter 75 action, the MSPB may reduce the agency's penalty. |
| ***Douglas* Factors** | The *Douglas* factors are not used. | The agency must consider the relevant *Douglas* factors when reaching a decision on the appropriate penalty. |
| **Time Limits** | Time limited to performance deficiencies occurring within the 1 year prior to the proposal notice. | No time limit for inclusion of "incident/charges." |
| **Affirmative Defenses** | The agency action will not be sustained if the employee was harmed by the agency's failure to follow procedures, if the agency decision was reached as a result of the commission of a prohibited personnel practice, or if the decision is otherwise not in accordance with the law. | |

Exhibit 2 pg. 11

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Addressing Non-SES Employee Misconduct:**

Managers are responsible for notifying their employees about the rules of behavior in the organization, including written guidance, policies or laws.  It is imperative that Federal agencies manage their workforces effectively, which involves the effective use of discipline when addressing employee misconduct.

Generally, the objective of discipline is to correct deficiencies in employee conduct and performance, not to punish the employee.  Discipline can deter misconduct and correct situations interfering with the efficiency of civil service.  Documenting misconduct is also imperative to support any conduct-based action and in the event that progressive discipline is initiated based on repeated misconduct.  Conduct-based actions are important tools designed to aid supervisors in maintaining an efficient and orderly work environment.  Further, misconduct should be addressed when deficiencies are first noted, when, for example, an employee refuses or fails to comply with a rule, regulation or law within the workplace.  Determining the appropriate course of action is ultimately management's responsibility.  Lastly, managers should consult with employee relations staff for help in navigating technical or complex laws, regulations, and collective bargaining agreements and when considering available options.

Managers should take discipline that is reasonable and proportionate to the misconduct.  One of the most difficult determinations for managers is selecting the penalty.  Several factors come into play in determining an appropriate penalty.  Penalties should be reasonably consistent with the discipline applied to similarly situated employees.  In other words, where the charges and the circumstances surrounding the charged behavior are substantially similar for two employees, and there are no considerations that would warrant treating them differently, the penalties should be comparable.  The supervisor should also weigh any relevant aggravating and mitigating factors that may be relevant such as the nature and severity of the offense, the employee's disciplinary record and years of service, the employee's potential for rehabilitation, and applicable agency penalty guidelines.  These factors are part of the 12 *Douglas* factors to be taken into consideration whenever a disciplinary action is contemplated.[17]

Penalties for misconduct range from lesser disciplinary actions such as oral and written reprimands, letters of warning, letters of counseling, and  suspensions (14 calendar days or less) to more severe adverse actions such as suspensions (more than 14 calendar days or indefinite suspensions under certain defined circumstances), involuntary reductions in grade or pay, and removals.  Effective lesser disciplinary measures are usually covered under agency policies, may be grievable depending on the agency's administrative or negotiated grievance processes, and may be issued with fewer procedural requirements.  However, penalties for more severe adverse actions have certain statutory and regulatory procedural requirements that agencies must follow.

---

[17] *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981).

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Suspensions of 14 Days or Less**

Certain employee misconduct can result in suspensions of 14 days or less.  A suspension of 14 days or less is a non-appealable adverse action; therefore, this action cannot be directly appealed to the MSPB.  However, the employee may grieve the action through an agency's administrative grievance procedure.  If the employee belongs to a bargaining unit and the suspension falls within the coverage of a negotiated grievance procedure, the employee may file a grievance only under that procedure.  Alternatively, the employee may file an EEO complaint challenging the disciplinary action if they allege that it was imposed on a legally prohibited basis such as age, gender or race discrimination.  An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

After the supervisor consults with employee relations staff and it is determined that a short suspension is appropriate, the following steps must take place:

1) The supervisor (or designated official where applicable) will issue a written notice of proposed suspension stating the reasons for the proposed action and informing the employee of his or her right to review the material relied upon to support the reasons for action provided in the notice;

2) The employee must be given a reasonable time, but no less than 24 hours, to submit a written and/or oral reply to the proposal letter, at the employee's discretion, and provide supporting documentation;

3) The employee may choose to have a representative.  The representative may be a union official if the employee is a member or a bargaining unit.  The employee may not choose another employee as their representative, however, if the representation will cause a conflict of interest or position, or an employee of the agency whose release from his or her official position would give rise to unreasonable costs or for whose priority work assignments preclude his or her release from official duties;[18] and

4) A deciding official (often a higher level manager than the proposing official) reviews the documentation and any reply provided by the employee, and determines whether or not the discipline is warranted and issues a decision.  In arriving at a decision, the deciding official may consider only the reasons specified in the notice of proposed action and in the employee or employee representative's answer. The decision notice will specify reasons for the decision, determine the level of discipline to be imposed after considering mitigating and aggravating factors, and advise the employee of grievance and any other applicable appeal rights.

---

[18] *See* 5 C.F.R. § 752.203(d).

Exhibit 2 pg. 13
# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Suspensions for more than 14 Days (including indefinite suspensions), Reduction in Grade or Pay, Removals from the Federal Service**

For more serious or repeated misconduct, supervisors may impose penalties that are appealable adverse actions. Suspensions for more than 14 days (including indefinite suspensions under certain defined circumstances), reductions in grade or pay and removals may be appealed to the MSPB, grieved through a collective bargaining agreement if the employee is a member of a union or, alternatively, the employee may file an EEO complaint challenging the disciplinary action if they allege that it was imposed on a legally prohibited basis such as age, gender or race discrimination. An employee may also seek corrective action with the U.S. Office of Special Counsel (OSC) if he or she believes the action was taken because of a prohibited personnel practice.

Supervisors should work with their employee relations staff and legal office when considering these actions. The following steps must take place if it is determined that an adverse action is appropriate:

1. The supervisor will issue a written notice of proposed action, which will be effective no earlier than 30 calendar days from the date of the proposal, if the action is found warranted by the deciding official. This notice will state the reasons for the proposed action and inform the employee of his or her right to review the material relied upon to support the reasons for action provided in the notice.
2. The employee must be given a reasonable time but not less than 7 days to submit a written and/or oral reply to the proposed notice, at the employee's discretion, and provide supporting documentation.
3. The employee may choose to have a representative. The representative may be a union official if the employee is a member or a bargaining unit. The employee may not choose another employee as their representative, however, if the representation will cause a conflict of interest or position, or an employee of the agency whose release from his or her official position would give rise to unreasonable costs or for whose priority work assignments preclude his or her release from official duties.[19]
4. The employee may submit medical documentation if the employee wishes for the agency to consider any medical conditions which may contribute to the misconduct or performance problem. It should be noted, however, that the agency may hold disabled employees with reasonable accommodation to the same standards of conduct as non-disabled employees;
5. A deciding official (often a higher level manager than the proposing official) reviews the proposal, supporting documentation, medical documentation if submitted, and any reply provided by the employee. In arriving at a decision, the deciding official may consider only the reasons specified in the notice of proposed action and in the employee or employee representative's answer;
6. In assessing whether the proposed adverse action based on the misconduct promotes the efficiency of the service, the deciding official determines whether the

---

[19] *See* 5 C.F.R. § 752.404(e).

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

charges are supported, and if so, whether the proposed penalty is warranted, after taking into consideration mitigating and aggravating factors, and issues a written decision letter stating the deciding official's conclusion as to the appropriate action.  The decision letter will inform the employee of any appeal or grievance rights he or she may have if discipline is taken; and

7. The agency will maintain copies of the notice of proposed action, the employee's written reply, a summary of the employee's oral reply, if any, the decision notice, and any supporting material.  The agency will furnish these documents to the MSPB, other reviewing authority, and the employee upon his or her request.

### Excused Absence (Administrative Leave) – to Be Used in Rare Circumstances

Excused absence (administrative leave) is an administratively authorized absence from duty without loss of pay and without charge to other paid leave and is considered part of an employee's basic workweek.  The authority to grant an excused absence derives from the inherent authority for heads of agencies to prescribe regulations for the government of their organizations.  (*See*, *e.g.*, 5 U.S.C. §§ 301-302).

OPM advises limiting the approval of excused absence.[20]  Where absences are for longer than brief periods, excused absence is generally inappropriate.  Approving officials should also ensure that the granting of excused absence is not specifically prohibited by law.

In rare circumstances, excused absence may be used for an employee while suspension or removal procedures have been proposed.  Specifically, the employee may be placed in a paid, non-duty status for the time necessary to effect the adverse action if the organization determines that the employee's continued presence on the job during the notice period may:

- Pose a threat to the employee or others;
- Result in loss or damage to Government property; or
- Jeopardize legitimate Government interests.

However, OPM strongly recommends agencies consider other options prior to use of excused absence in this scenario.  Other options include:

- Assigning the employee to duties where he or she is no longer a threat to safety, the agency mission, or Government property;
- Allowing the employee to take leave, or carrying him or her in an appropriate leave status (annual, sick, leave without pay) or absence without leave (if the employee has absented himself or herself from the worksite without requesting leave); or

---

[20] *See* OPM Fact Sheet:  Administrative Leave at:  https://www.opm.gov/policy-data-oversight/pay-leave/leave-administration/fact-sheets/administrative-leave/

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

- Curtailing the advance notice period for the proposed adverse action when the agency can invoke the "crime provisions" under Title 5, United States Code, because it has reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed and is proposing a removal or suspension.

**Addressing Performance Deficiencies in the Senior Executive Service[21]:**

**During Probation:**

An individual's initial career SES appointment becomes final only after the individual completes a 1-year probationary period.   Agencies use this period to observe and evaluate the appointee's performance.  If an agency finds the probationer's performance unacceptable, it should consider whether to take remedial action, such as specialized training or assignment to other SES duties.  If remedial action is not considered appropriate or proves unsuccessful, the agency should take steps to remove the employee from the SES. Removal is not required to be based on a final rating during a probationary period. Even if the agency uses a final rating under an SES performance appraisal system to document performance deficiencies, removal of a probationer is always done under the following procedures.[22]

An agency must provide at least a 1-day advance written notice to the probationer and make the removal effective prior to the conclusion of the probationary period.  The notice must include the following:

- The effective date of the action;
- The agency's conclusions as to the inadequacies of the probationer's performance; and
- Whether the probationer has placement rights to another position outside the SES and, if so, to what position.

Probationers who were appointed to the SES without a break in service from a civil service position held under a career or career-conditional appointment or an appointment of equivalent tenure, such as certain appointments in the excepted service, are guaranteed placement in a position at GS-15 or higher.[23] These appointees are also entitled to be placed in a position of equivalent tenure to that of the appointment held at the time of appointment to the SES. Those lacking this right may be removed from employment in the Federal service.  Removal of a probationary career SES appointee for performance reasons is not appealable to the MSPB.[24]  SES appointees have the same EEO and OSC

---

[21] Some agencies, such as the Department of Veterans Affairs, may have unique statutory authority for addressing performance and misconduct for Senior Executives.  We recommend you consult with your agency human resources or legal offices for additional information.
[22] 5 C.F.R. § 359.402.
[23] 5 U.S.C. § 3594(a); 5 C.F.R. § 359.701(a).
[24] 5 C.F.R.  §359.407.

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

rights as other employees, however, to challenge an action they believe was taken based upon illegal discrimination or a prohibited personnel practice.

**After Probation:**

Removal of a non-probationary career SES member for performance must be based on the appointee's final SES rating(s).[25]  The final SES rating is normally the annual summary rating prepared for an executive at the end of an appraisal period.  However, an agency is also authorized to end a senior executive's appraisal period at any time after the agency's minimum appraisal period is completed, if there is an adequate basis on which to appraise and rate the senior executive's performance, and prepare a rating of record using the same process required for an annual summary rating.[26]  Such a rating of record is also a final SES rating and may serve as the basis, or part of the basis, for a removal action.  If a career appointee receives one final rating of "unsatisfactory," he or she must be reassigned or transferred within the SES, or removed from the SES.  An agency **must** remove a career appointee from the SES when the appointee receives the following final ratings:

- Two ratings of "unsatisfactory" within 5 consecutive years; or
- Two less than fully successful ratings (i.e., "minimally satisfactory" or "unsatisfactory") within 3 consecutive years.

The agency must give the career member a written notice at least 30 calendar days before the effective date of removal from the SES.  This notice must include:

- The effective date of the removal;
- The basis for the removal, as documented in the annual summary performance rating(s) used to support the removal action;
- The member's right to be placed in a position outside the SES, and information about the new position, if available;
- The member's right to request an informal hearing before an official designated by the MSPB; and
- When applicable, the appointee's eligibility for immediate retirement under 5 U.S.C. §§ 8336(h) or 8414(a).

Career appointees do not have appeal rights to the MSPB for a performance-based removal action from the SES.  While the appointee may request an informal hearing with the MSPB, this request does not delay the removal from the SES.  The SES member may also initiate an EEO or OSC complaint challenging an action that is believed to have been taken based upon illegal discrimination or a prohibited personnel action.

---

[25] 5 C.F.R.  §359 Subpart E.
[26] 5 U.S.C. § 4314(b)(1)(D); 5 C.F.R. § 430.304(b).

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

All non-probationary career SES members removed for less than fully successful performance are entitled to be placed in a civil service position outside the SES.[27]  Those who were appointed to the SES without a break in service from a civil service position held under a career or career-conditional appointment or an appointment of equivalent tenure, such as certain appointments in the excepted service, are guaranteed placement in a position at GS-15 or higher under an appointment of tenure equivalent to that held immediately prior to the initial career SES appointment.  If the agency has no other available appointment authority, the agency may use the authority provided at 5 C.F.R. §  213.3202 (m)(1).

## Disciplining Career SES Members

An agency may take a disciplinary action against a career SES member only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function.  A career SES appointee removed for disciplinary reasons has no placement rights and must be removed from Federal employment.

## During Probation:

The procedures below apply to disciplinary removals of probationary career SES appointees who were not covered by 5 U.S.C. 7511 (subchapter II of chapter 75, Adverse Actions) immediately before being appointed to the Senior Executive Service.[28]

To remove a probationary career appointee for disciplinary reasons, an agency must provide at least 1 day's written notice to the probationer.  This notice must include the following:

- The effective date of removal; and
- The basis for removal including the acts of misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function.

However, if the proposed removal is based in whole or in part on conditions arising before appointment, the agency must give the appointee:

- An advance written notice stating the specific reasons;
- A reasonable opportunity to reply; and
- A written decision showing the reasons for the action and the effective date and provided at or before the time the action will be made effective.[29]

---

[27] 5 U.S.C. § 3594(b); 5 C.F.R. § 359.701(b).
[28] See 5 C.F.R. § 359.403.
[29] 5 C.F.R. § 359.404.

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES
# OR MISCONDUCT

The probationary removal is not appealable to MSPB, but the probationer may initiate an
EEO complaint challenging an action that is believed to have been taken based upon
legally prohibited discrimination or OSC if it is believed to have been taken based upon a
prohibited personnel practice.

**After Probation (and for certain probationary career and SES limited appointees):**

There are two adverse actions available for agencies when taking discipline against 1) a
non-probationary career SES appointee, 2) a probationary career SES appointee who was
covered under 5 U.S.C. § 7511 immediately before the SES appointment, and/or 3) an
SES limited term or limited emergency appointee who was covered by 5 U.S.C. § 7511
immediately before the SES appointment while serving under a career or career-
conditional or equivalent appointment in another position within the same agency.[30]  The
two adverse actions available to agencies are removal and suspensions for more than 14
days.  These actions may be appealed to the MSPB or be raised in an EEO or OSC
complaint.  An agency may not suspend an SES appointee for 14 days or less.[31]
Supervisors should work with their employee relations staff and legal office when
considering these actions.

The following steps will take place if it is determined that an appealable adverse action is
appropriate:[32]

1. The agency will issue a written notice of proposed action, which will be effective
   no earlier than 30 calendar days from the date of the proposal, if the action is
   found warranted.  This notice will state the specific reasons for the proposed
   action, such as misconduct, neglect of duty, malfeasance, or declination of a
   reassignment or transfer of function, and inform the appointee of his or her right
   to review the material relied upon to support the reasons for action provided in the
   notice;
2. The appointee may choose to have a representative but may not choose a
   representative whose representation will cause a conflict of interest or position, or
   an employee of the agency whose release from his or her official position would
   give rise to unreasonable costs or whose priority work assignments preclude his or
   her release from official duties;[33]
3. The appointee must be provided a reasonable time, but not less than 7 days to
   submit a written and/or oral reply to the proposal letter, at the appointee's
   discretion, and provide supporting documentation;
4. The appointee must be provided a reasonable period of time to submit medical
   documentation if the appointee wishes the agency to consider any medical
   conditions which may have affected the basis for the adverse action.  It should be

---

[30] See 5 U.S.C. § 7541(1); 5 C.F.R. § 359.403(a)(2); 5 C.F.R. § 752.601(c).
[31] See 5 C.F.R. § 752.601(b).
[32] 5 C.F.R. § 752 Subpart F.
[33] 5 C.F.R. § 752.604(e).

## MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES
## OR MISCONDUCT

noted, however, that the agency may hold disabled appointees with reasonable accommodation to the same standards of conduct as non-disabled appointees; [34]

5. A deciding official reviews the proposal, supporting documentation, medical documentation if submitted, and any reply provided by the appointee;

6. The deciding official determines whether the reasons for the proposed action are supported, and if so, whether the proposed penalty is warranted after taking into consideration any mitigating and aggravating factors, and issues a written decision letter stating the deciding official's conclusion as to the appropriate action.  The decision letter will provide reasons for the decision and inform the appointee of any appeal rights he or she may have if an adverse action is taken; and

7. The agency will maintain copies of the notice of proposed action, the appointee's written reply, a summary of the appointee's oral reply, if any, the decision notice, and any supporting material.  The agency will furnish these documents to the MSPB and the appointee upon request.

**Excused Absence (Administrative Leave) –  to Be Used in Rare Circumstances**

Similar to the earlier discussion on excused absence (administrative leave) for non-SES Federal employees, approval of excused absence for SES members should be limited to situations involving brief absences.  Agencies should monitor the situation and move toward longer-term actions when it is necessary, appropriate, or prudent to do so.  For additional information on using administrative leave for SES Federal employees, *supra* pp. 14.

**Reduction in Pay for Performance or Disciplinary Reasons:**

As provided in 5 C.F.R. § 534.404(j), an agency may reduce the pay of a career SES appointee during or after the probationary period by not more than 10 percent without the employee's consent only—

- If the senior executive has received a less than fully successful (i.e., "minimally satisfactory" or "unsatisfactory") annual summary rating or has otherwise failed to meet the performance requirements for a critical element; or
- As a disciplinary or adverse action resulting from conduct-related activity, including, but not limited to, misconduct, neglect of duty, or malfeasance.

The following steps will take place if it is determined that a reduction in pay is appropriate:

1. The agency will provide written notice of the reduction at least 15 days in advance of its effective date;
2. The appointee may choose to be represented;

---

[34] 5 C.F.R. § 752.604(f).

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

3. The appointee will have at least 7 days to respond to the notice orally and/or in writing and to furnish affidavits and other documentary evidence;
4. The agency will provide a written decision and specific reasons for the pay reduction at the earliest practicable date after the executive's response; and
5. The appointee will have an opportunity to request, within 7 days after that decision, reconsideration by the head of the agency, whose determination is final and not subject to further review.

**Effects of 120-Day Moratoriums:**

Effect of 120-day Moratorium on Removals of Career SES Employees

The law provides at 5 U.S.C. § 3592(b) that a non-probationary career SES member may not be involuntarily removed under that section (i.e., based upon performance):

- Within 120 days after an appointment of the head of the agency; or
- Within 120 days of appointment of a career appointee's most immediate supervisor who is a non-career appointee and has the authority to remove the career appointee. (For this purpose, a "non-career appointee" includes an SES non-career, SES limited, Schedule C and Executive Schedule appointee. "Most immediate supervisor" refers to the non-career appointee nearest to a career appointee in the supervisory chain who has authority to remove that career appointee). [35]

This moratorium does not restrict the removal of a non-probationary career SES member who receives a final rating of "unsatisfactory" under the agency's SES performance appraisal system prior to the appointment of the new agency head or non-career appointee that initiated the 120-day moratorium on removals.

This moratorium restricts removal of a probationary SES member under 5 U.S.C. § 3592 during the 120-day period, except for such a disciplinary removal that was initiated before the appointment of the new agency head or non-career appointee. Under certain circumstances, an agency may invoke an exception to enable a disciplinary removal of a probationer that was not initiated before the appointment of the new agency head or non-career appointee. [36]

Since this moratorium applies only to removals under 5 U.S.C. § 3592, it does not restrict removal of a non-probationary career appointee or a covered probationary career appointee for disciplinary reasons under chapter 75. [37]

---

[35] 5 CFR 359.503
[36] 5 C.F.R. §§359.403(a)(1); 359.406; and 359.406(c).
[37] 5 U.S.C. § 7541(1); 5 C.F.R. §§ 359.403(a)(2); 752.601(c).

Exhibit 2 pg. 21

# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

Effect of 120 day Moratorium on Reassignment of Career SES Employees

The law provides at 5 U.S.C. 3395 that a non-probationary career SES member may not be involuntarily reassigned:

- Within 120 days after an appointment of the head of the agency; or
- Within 120 days of appointment of a career appointee's most immediate supervisor who is a non-career appointee and has the authority to remove the career appointee. (For this purpose, a "non-career appointee" includes an SES non-career, SES limited, Schedule C and Executive Schedule appointee. "Most immediate supervisor" refers to the non-career appointee nearest to a career appointee in the supervisory chain who has authority to make an initial appraisal of the career appointee's performance under Chapter 43.

This moratorium does not restrict the involuntary reassignment of a non-probationary career SES member who receives a final rating of "unsatisfactory" under the agency's SES performance appraisal system prior to the appointment of the new agency head or non-career appointee that initiated the 120-day moratorium on removals, if the agency decides to reassign rather than remove the appointee.[38] This moratorium also does not restrict any disciplinary action initiated prior to such an appointment.

---

[38] 5 U.S.C. § 4314(b)(3).

Exhibit 2 pg. 22
# MANAGING FEDERAL EMPLOYEES' PERFORMANCE ISSUES OR MISCONDUCT

**Useful References for Non-SES Unacceptable Performance and Discipline**

- 5 U.S.C. § 4303, 5 C.F.R. § 432

- 5 U.S.C. §§ 7501-7514, 5 C.F.R. § 752, Subparts B and D

- 5 U.S.C. § 3321, 5 C.F.R. § 315, Subpart H

**Useful References for SES Unacceptable Performance and Discipline**

- 5 U.S.C. §§ 3592, 4311-4315, 5 C.F.R. § 359, Subparts D and E

- 5 U.S.C. §§ 7541-7543, 5 C.F.R. § 752 Subpart F

- 5 U.S.C. § 3594, 5 C.F.R. § 359, Subpart G, 5 C.F.R. § 213.3202 (m)(1)