# Exhibit 4 Pg. 1

*The U.S. Equal Employment Opportunity Commission*

---

EEOC NOTICE
Number 915.002
Date 4/10/97


1.  SUBJECT:  Enforcement Guidance on non-waivable employee rights under
Equal Employment Opportunity Commission (EEOC) enforced statutes.

2.  PURPOSE:  This enforcement guidance sets forth the EEOC's position
that an employer may not interfere with the protected right of employees
to file a charge or participate in any manner in an investigation,
hearing, or proceeding under the laws enforced by EEOC.1

3.  EFFECTIVE DATE:  Upon issuance.

4.  EXPIRATION DATE:  As an exception to EEOC Order 205.001, Appendix B,
Attachment 4, Section a(5), this Notice will remain in effect until
rescinded or superseded.

5.  ORIGINATOR:  ADEA Division, Office of Legal Counsel.

6.  INSTRUCTIONS:  File after the last Enforcement Guidance in the 800
series of Volume II of the EEOC Compliance Manual.

7.  SUBJECT MATTER:

I.  General Statement

    An employer may not interfere with the protected right of an employee
to file a charge, testify, assist, or participate in any manner in an
investigation, hearing, or proceeding under Title VII of the Civil Rights
Act of 1964 (Title VII), 42 U.S.C. � 2000e et seq., the Americans with
Disabilities Act (ADA), 42 U.S.C. � 12101 et seq., the Age Discrimination
in Employment Act (ADEA), 29 U.S.C. � 621 et seq., or the Equal Pay Act
(EPA), 29 U.S.C. � 206(d).  These employee rights are non-waivable under
the federal civil rights laws.

    This position is built on two cornerstones: (a) interference with
these protected rights is contrary to public policy; and (b) the
anti-retaliation provisions of the civil rights statutes prohibit such
conduct.2

    II.  Background

    Some employers attempt to limit an individual's right to file a
charge or participate in an EEOC proceeding by requiring him or her to
sign an agreement in which s/he relinquishes these statutory rights.  Such
language may appear in contracts requiring the use of alternative dispute
resolution procedures (such as mediation or arbitration), waiver
agreements,3 employee handbooks, employee benefits plans, and
"non-compete" agreements.  Notwithstanding the format or context of the
agreement in which such language might appear, promises not to file a
charge or participate in an EEOC proceeding are null and void as a matter
of public policy.  Agreements extracting such promises from employees may
also amount to separate and discrete violations of the anti-retaliation

# Exhibit 4  Pg. 2

provisions of the civil rights statutes.

III.  Analysis

     A.  Public Policy.  EEOC acts to vindicate the public interest
in the eradication of employment discrimination.  "[T]he EEOC is not
merely a proxy for the victims of discrimination ....  Although [it] can
secure specific relief, such as hiring or reinstatement ..., on behalf of
discrimination victims, the agency is guided by 'the overriding public
interest in equal employment opportunity ... asserted through direct
Federal enforcement.'"  General Telephone Co. v. EEOC, 446 U.S. 318, 326
(1980) (quoting 118 Cong. Rec. 4941 (1972)).  A strong public policy
prohibits interference with governmental law enforcement activities.
Agreements that prevent employees from cooperating with EEOC during
enforcement proceedings interfere with enforcement activities because they
deprive the Commission of important testimony and evidence needed to
determine whether a violation has occurred.  Furthermore, insofar as such
agreements make it more difficult for the Commission to prosecute past
violations, an atmosphere is created that tends to foster future
violations of the law.  See Brooklyn Savings Bank v. O'Neil, 324 U.S. 697,
710 (1945);  EEOC v. Astra USA, Inc., 94 F.3d, 738, 742 (1st Cir. 1996).

     In EEOC v. Astra USA, Inc., the employer obtained settlement
agreements from a number of employees which, inter alia, prohibited them
from assisting the Commission in investigating any sexual harassment
charges against the employer.  The district court granted the Commission's
request for a preliminary injunction prohibiting Astra from entering into
or enforcing the provisions of the settlement agreements barring employees
from assisting the Commission during the investigation of any charges.  94
F.3d at 742.

     The First Circuit affirmed the injunction.  Invoking important public
policy concerns, the court pointed out that Congress "entrusted the
Commission with significant enforcement responsibilities in respect to
Title VII."  EEOC v. Astra USA, 94 F.3d at 744.  It cited EEOC v. Shell
Oil Co., 466 U.S. 54, 69 (1984), for the bedrock principle that the
Commission's ability to investigate charges of systemic discrimination
must not be impaired.  Turning to the agreements in controversy, the court
concluded that "clearly, if victims of or witnesses to [employment
discrimination] are unable to approach the EEOC or even to answer its
questions, the investigatory powers that Congress conferred would be
sharply curtailed and the efficacy of investigations would be severely
hampered ....  The EEOC acts not only on behalf of private parties but
also 'to vindicate the public interest in preventing employment
discrimination.'"  Id., citing General Telephone Co. v. EEOC, 446 U.S. at
326.  The First Circuit reasoned that "[p]ublic policy ... clearly favors
the free flow of information between victims of [employment
discrimination] and the agency entrusted with righting the wrongs
inflicted upon them."  94 F.3d at 745.  Thus, "any agreement that
materially interferes with communication between an employee and the
Commission sows the seeds of harm to the public interest." Id. at 744.
See also EEOC v. U.S. Steel Corp., 671 F. Supp. 351, 357-59 (W.D. Pa.
1987) (invalidating as contrary to public policy retirement plan provision
that conditioned higher benefits on retiree's promise not to assist in
EEOC investigations).

     A strong public policy interest also prohibits interference with the
right to file a charge with EEOC.4 The primary purpose of a charge of
discrimination filed with EEOC is to "place the EEOC on notice that
someone ... believes that an employer has violated [one of the

**Exhibit 4 Pg. 3**

anti-discrimination statutes]."  EEOC v. Shell Oil Co., 466 U.S.  at 68;
see also EEOC v. Cosmair, Inc., 821 F.2d 1085, 1089 (5th Cir.
1987)(primary purpose of a charge under ADEA "is not to seek recovery from
the employer but rather to inform the EEOC of possible discrimination").
This notice to the EEOC serves to trigger law enforcement proceedings by
the EEOC that include an investigation and, if there is a finding of
discrimination, may include conciliation and litigation.  Thus, every
charge filed with the EEOC carries two potential claims for relief:  the
charging party's claim for individual relief, and the EEOC's claim "to
vindicate the public interest in preventing employment discrimination."
General Telephone Co. v. EEOC, 446 U.S. at 326.


     Courts have consistently recognized that individuals possess a
non-waivable right to file charges with the EEOC.  See Gilmer v.
Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991)(individual who signs
an agreement to submit an employment discrimination claim to arbitration
remains free to file a charge with EEOC); EEOC v. Cosmair, Inc., 821 F.2d
at 1090 (invalidating former employee's promise not to file a charge with
EEOC because it "could impede EEOC enforcement of the civil rights laws"
and is void as against public policy);  EEOC v. U.S. Steel Corp., 671 F.
Supp. at 357-59 (invalidating as contrary to public policy retirement plan
provision that conditioned higher benefits on retiree's promise not to
file charges with EEOC).


     Congress reaffirmed the public policy against interference with EEOC
enforcement efforts, including the right to file a charge, by including
the following explicit language in the waiver provisions of the Older
Workers Benefit Protection Act of 1990 (OWBPA), amending the ADEA:  "No
waiver may be used to justify interfering with the protected right of an
employee to file a charge or participate in an investigation or proceeding
conducted by the Commission."  29 U.S.C. � 626(f)(4) (ADEA).  The
legislative history states that this statutory provision is intended "as a
clear statement of support for the principle that the elimination of age
discrimination in the workplace is a matter of public as well as private
interest."  Moreover, "[n]o waiver agreement may be permitted to interfere
with the achievement of that goal. This position is consistent with the
holding and reasoning of EEOC v. Cosmair, Inc., 821 F.2d 1085 (5th Cir.
1987)."  S. Rep. No. 263, 101st Cong., 2d Session 35; Legislative History
of OWBPA, Part 1 p.354.  See also EEOC v. Johnson & Higgins, Inc., 91 F.3d
1529 (2d Cir. 1996) (In light of the strong public interest in eradicating
age discrimination, EEOC authority to enforce the ADEA cannot be altered
by a waiver of the rights of a private party).  These principles apply
equally to all of the statutes enforced by the EEOC.


     B.  Prohibitions Against Retaliation.  Congress enacted
provisions barring retaliation in each of the statutes enforced by the
Commission in large part to ensure that employees remain free to report
suspected violations to the government.  See Veprinsky v. Fluor Daniel,
Inc., 87 F.3d 881, 889 (7th Cir. 1996) ("Given the instrumental role
individual employees play in the statutory scheme, the protection of those
individuals from retaliatory acts by the employer 'is essential to
accomplish the purpose of Title VII.'") (quoting EEOC v. Pacific Press
Pub. Ass=n, 676 F.2d 1272, 1281 (9th Cir. 1982)); Garcia v. Lawn, 805 F.2d
1400, 1405 (9th Cir. 1986) (retaliation "is likely to cause irreparable
harm to the public interest in enforcing the law by deterring others from
filing charges").  Cf. NLRB v. Scrivener, 405 U.S. 117, 121-22 (1972) ("
'Congress has made it clear that it wishes all persons with information
about [unlawful practices] to be completely free from coercion against

11/6/2018     Enforcement Guidance on Non-Waivable Employee Rights Under Equal Employment Opportunity Commission (EEOC) enforced statutes.

Case 1:17-cv-01032-TSC Document 30-7 Filed 11/19/18 Page 5 of 7

Exhibit 4 Pg. 4

reporting them to the [government.]' ... This complete freedom is
necessary ... 'to prevent the [government's] channels of information from
being dried up by employer intimidation of prospective complainants and
witnesses.'") (construing anti-retaliation provisions of the National
Labor Relations Act).

     Agreements that attempt to bar individuals from filing a charge or
assisting in a Commission investigation run afoul of the anti-retaliation
provisions because they impose a penalty upon those who are entitled to
engage in protected activity under one or more of the statutes enforced by
the Commission.  By their very existence, such agreements have a chilling
effect on the willingness and ability of individuals to come forward with
information that may be of critical import to the Commission as it seeks
to advance the public interest in the elimination of unlawful employment
discrimination. See, e.g., EEOC v. Board of Governors, 957 F.2d 424 (7th
Cir.), cert. denied, 506 U.S. 906 (1992) (unlawful retaliation for a
collective bargaining agreement to allow the termination of an
administrative grievance proceeding upon the filing of a charge with
EEOC);  EEOC v. Cosmair, Inc., 821 F.2d at 1089 (impermissible retaliation
arises when payments to which one is otherwise entitled are stopped merely
because a charge is filed with EEOC); EEOC v. U.S. Steel Corp., 671
F.Supp. at 358 (retaliation under �4 (d) of the ADEA results when an
employer revokes enhanced pension benefits for persons who file charges or
otherwise participate in EEOC proceedings)5. Cf. Connecticut Light &
Power v. Secretary of Labor, 85 F.3d 89 (2d Cir. 1996) (construing the
anti-retaliation provisions of the Energy Reorganization Act of 1974 and
finding a violation where an agreement sought to prevent an individual
from reporting unlawful conduct to the government).

     C.  The Commission=s Position is Consistent with the Public
Interest in the Voluntary Settlement of Employment Discrimination
Disputes.  The Commission supports efforts by employers and employees to
resolve employment discrimination disputes voluntarily.  In particular, on
April 25, 1995, the Commission announced that it "supports efforts by
employers to develop voluntary internal ADR programs to address workplace
discrimination disputes, because the interests of employers and employees
will be served by the development of fair, credible, internal ADR programs
that resolve discrimination disputes satisfactorily."6 Nothing in this
enforcement guidance diminishes Commission support for post-dispute
agreements entered into knowingly and voluntarily to settle claims of
discrimination or utilize alternative dispute resolution mechanisms.  Nor
does the guidance create any Asubstantial disincentive to settlement.@ See
EEOC v. Astra USA, 94 F.3d at 744.

     In this regard, the Commission notes that even though an
individual who has signed a waiver agreement or otherwise settled a claim
subsequently files a charge with the Commission based on the same claim,
the employer will be shielded against any further recovery by the charging
party provided the waiver agreement or settlement is valid under
applicable law.  This is true whether the EEOC or the private individual
brings a subsequent action.  See EEOC v. Astra USA, Inc., 94 F.3d at 744
(injunction prohibiting covenants preventing employees from assisting EEOC
does nothing at all to promote further litigation between Astra and the
settling employees or to disturb the finality of the negotiated
settlement);  EEOC v. Cosmair, Inc., 821 F. 2d at 1091 (although an
employee cannot waive the right to file a charge with EEOC, he can waive
the right to recover in his own lawsuit as well as the right to recover in
a lawsuit brought by the EEOC on his behalf);  EEOC v. U.S. Steel Corp,
671 F. Supp. at 358 (where provision in a waiver agreement preventing
employees from assisting EEOC is enjoined, employer may still assert the

**Exhibit 4 Pg. 5**

waiver as a bar to recovery on a claim of age discrimination brought by or on behalf of an individual who signed a valid waiver involving that claim).

However, while a private agreement can eliminate an individual's right to personal recovery, it cannot interfere with EEOC=s right to enforce Title VII, the EPA, the ADA, or the ADEA by seeking relief that will benefit the public and any victims of an employer's unlawful practices who have not validly waived their claims. See EEOC v. Harris Chernin, Inc., 10 F.3d 1286, 1291-92 (7th Cir. 1993); EEOC v. United Parcel Serv., 860 F.2d 372, 374 (10th Cir. 1988); EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539, 1542-43 (9th Cir. 1987); New Orleans S.S. Ass'n v. EEOC, 680 F.2d 23, 25 (5th Cir. 1982); EEOC v. McLean Trucking Co., 525 F.2d 1007, 1010 (6th Cir. 1975). Enforcement actions for the purpose of advancing the public interest in the elimination of employment discrimination are squarely within the EEOC's authority "to vindicate rights belonging to the United States as sovereign." Goodyear Aerospace Corp., 813 F.2d at 1543 (citation omitted).

IV. Conclusion

For the reasons set forth and discussed above, an employer may not interfere with an individual=s protected right under Title VII, the EPA, the ADA, or the ADEA to file a charge, testify, assist, or participate in any manner in an EEOC investigation, hearing, or proceeding.

V. Charge Processing Instructions

1. Investigators should take and process charges in conformity with priority charge processing procedures regardless whether the charging party has signed a waiver of his or her right to file a charge.

2. If a charging party has been required to relinquish his or her right to file a charge or participate in a commission investigation, hearing, or proceeding, a cause determination should be issued.


4-11-97                    /s/
_____       _____
Date                       Gilbert F. Casellas
                           Chairman


1. Although the enforcement guidance addresses this issue primarily in the context of the private sector, the principles and considerations discussed herein are equally applicable to the federal sector.

2. Title VII, for example, provides that:

it shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

# Exhibit 4 Pg. 6

42 U.S.C. � 2000e-3.  In Robinson v. Shell Oil Company, 117 S. Ct. 843 (1997), the Supreme Court held that this section extends protection to former employees.  Comparable anti-retaliation provisions appear at 29 U.S.C. � 623 (d) (ADEA);  29 U.S.C. � 215 (a) (3) (EPA); and 42 U.S.C. � 12203 (a) and (b) (ADA).

3.  "Waiver agreement" refers to the type of agreement described in section 7(f) of the ADEA (permitting knowing and voluntary waiver of an individual=s right to recovery under the Act).  29 U.S.C. � 626(f).  Although the ADEA is the only EEOC-enforced statute containing specific language authorizing the use of knowing and voluntary waiver agreements, such agreements are widely used with respect to rights protected under other statutes enforced by the Commission.

4.  The Commission relies on charges not only as its principal source of information regarding unlawful conduct, but also, in the case of Title VII and the ADA, as a statutory prerequisite for its investigations and proceedings.  42 U.S.C. � 2000e-5(b); 42 U.S.C. � 12117(a) (ADA section incorporating Title VII procedures).  Under the ADEA and EPA, the Commission is empowered to investigate without a charge.  29 U.S.C. � 626(a) (ADEA) and 29 U.S.C. � 211 of the Fair Labor Standards Act (FLSA).

5.  A longstanding Commission interpretive regulation under the ADEA provides that "[c]lauses in employee benefit plans which state that litigation or participation in any manner in a formal proceeding by an employee will result in the forfeiture of his rights are unlawful insofar as they may be applied to those who seek redress under the Act.  This is by reason of section 4 (d) which provides that it is unlawful for an employer ... to discriminate against any individual because such individual 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act.'" 29 C.F.R. � 1625.10(d)(5).

6.  See Daily Lab. Rep. (BNA), No. 80 (April 26, 1995).

---

*This page was last modified on July 6, 2000.*

 [Return to Home Page](#)