## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANTHONY PERRY,            )
                                 )
              Plaintiff,       )
                                 )
              v.               )         Civil Action No. 17-1932 (TSC)
                                 )
WILBUR ROSS,             )
*United States Secretary of Commerce*,   )
                                 )
              Defendant.     )
_____ )

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS CROSS-MOTION AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

After unsuccessful mediation, *see* ECF No. 17, on May 3, 2018, the Court ordered the parties to brief whether it should affirm the decision of the Merit System Protection Board ("MSPB") dismissing Plaintiff Anthony Perry's appeal for lack of jurisdiction. The MSPB did so because Mr. Perry voluntarily entered into an agreement with the United States Department of Commerce ("the agency") in which he settled pending Equal Employment Opportunity cases, agreed to resign from the agency and waived his right to pursue the instant claims on appeal. On November 19, 2018, he filed a Motion for Summary Judgment in response to the Court's Order. *See* ECF No. 30.  Based on the arguments herein, Defendant respectfully requests that the Court deny such motion and grant Defendant's Cross-Motion for Summary Judgment.

## BACKGROUND

Mr. Perry commenced employment with the government in approximately July 1983.  *See* Exhibit ("Ex. 1"), MSPB Form 185-1, Appeal Form—Appellant and Agency Information, at 1. At the time of his termination, he had been serving as a GS-14, Supervisory Information Technology Specialist for the Bureau of the Census, United States Department of Commerce

("agency").  *See* Ex. 1, MSPB Form 185-1, Appeal Form—Appellant and Agency Information, at 1; Ex. 2, Complaint Response, at 1-2.  Around 2007, Mr. Perry began to suffer from osteoarthritis.  *See* Ex. 3, Response to Proposal to Remove, at 2.  To alleviate his condition, he began to walk and stretch while at work.  *Id.*  He informed his supervisor of his need to walk and stretch but did not request a formal accommodation until June 2011, which was granted in November 2011.  *See id.*; Ex. 4, Notice of Approval of Request for Accommodation, at 1.

Between 2007 and 2011, Mr. Perry filed six Equal Employment Opportunity ("EEO") complaints that were consolidated into three EEO Commission ("EEOC") complaints.  *See* Ex. 5, MSPB Form 185-2, Appeal of Agency Personnel Action or Decision (Non-retirement), at 3; Ex. 6, Settlement Agreement, at 1. He alleged the agency denied him the ability to compete for promotions, denied him requests for training, provided unfair performance evaluations and subjected him to a hostile work environment.  *See* Ex. 5, MSPB Form 185-2, Appeal of Agency Personnel Action or Decision (Non-retirement), at 3-4; Ex. 7, MSPB Form 185-4A, Claims of Mistakes in Procedures or Violations of Law, at 3; Ex. 8, Motion in Opposition for Summary Judgment Without Hearing, at 1-2.  As of May 2011, each complaint was pending.  Ex. 8, Motion in Opposition for Summary Judgment Without Hearing, at 1-2.

On April 13, 2011, Mr. Perry's supervisor informed his entire staff, including Mr. Perry, that as of April 18, 2011, they would be required to sign the attendance log every work day.  *See* Ex. 9, Proposed Removal, at 10.  Mr. Perry failed to sign for his first 15 work days after April 18 even though his supervisor reiterated the directive when it was clear he was failing to comply.  *Id.* at 10-11.  Mr. Perry's rationale for refusing to do so was that his supervisor did not give him an explanation for why the log was required. *See* Ex. 3, Response to Proposal to Remove, at 3.

On June 7, 2011, the agency proposed to remove Mr. Perry from his position.  *See* Ex. 9, Proposed Removal, at 1. The agency alleged that Mr. Perry's time and attendance reports and badge trace monitor reports showed that between October 5, 2010, and April 21, 2011, he was absent at times where his time and attendance said that he was working on 62 separate occasions. *Id*. at 1-10. As a result, he was paid for approximately 133 hours and 35 minutes he had not worked, which equated to approximately $8,965. *Id*. at 11. The proposal was also based on his refusal to use the attendance log on 15 separate occasions. *Id*. at 10-11.

On June 15, 2011, Mr. Perry met with Terryne Murphy, the deciding official on his proposed removal.  *See* Ex. 10, Memorandum for Record.  During the meeting, Mr. Perry admitted fault for not being at his desk and stated he would contest the specifications in the proposal.  *Id.* He also stated he would agree to a settlement where, if he were allowed to work till he was eligible to retire at 30 years, he would pay back approximately $9,000 and terminate his complaint.  *Id.* On June 22, 2012, he sent an e-mail to Ms. Murphy asking if he could stay with the agency till May 30, 2012, at which point he would "walk out of [the agency] with dignity."  *See* Ex. 11, Plaintiff's Email to Terryne Murphy.

On June 30, 2011, Mr. Perry, along with his designated representative, Johnny Zuagar, who served as President of Mr. Perry's union, submitted his written reply to the charges.  *See* Ex. 3, Response to Proposal to Remove, at 1. Instead of contesting each of the factual specifications, he attempted to provide justifications for each specification. *Id.* at 2-3. The primary reason he was away from his desk for the majority of the specifications was that he was walking outside to stretch. *Id.* He stated he believed he could engage in such activity based on an "informal accommodation" agreement with his supervisor but conceded he did not have a formal reasonable accommodation. *Id*. For many specifications, he spent time outside to deal with stress from his pending EEO claims.

*Id*. For at least 15 specifications, he stated the problem stemmed from a series of miscommunications with his supervisor or mistakes he made in the leave request process. *Id*. Notably, at the end of his response, Mr. Perry proposed a settlement with the agency wherein he would accept a 14 day suspension in lieu of removal. *Id*. at 5.

On July 25, 2011, Mr. Perry's representative, Johnny Zuagar, received a counter-offer.  *See* Ex. 12, MSPB Initial Decision (Dec. 23, 2013), at 2. Mr. Perry and his representative thereafter engaged in settlement discussions that resulted in a global settlement of his pending complaints. *Id*. at 3, 9. The agreement called for Mr. Perry to accept a 30-day suspension in lieu of removal, retire no later than September 4, 2012, and withdraw his pending complaints, among other things. *See* Ex. 6, Settlement Agreement, at 1-2.

Notably, under Paragraph 2c, Mr. Perry agreed to "voluntarily waive all appeal rights he has and not to litigate in any forum, judicial or administrative, any claims arising from a removal." *See* Ex. 6, Settlement Agreement, at 2; *id*. at 3, Paragraph 2h. Moreover, Mr. Perry indicated that he had read and understood the "entire agreement … especially the provisions relating to the withdrawal of the formal complaint(s), thereby foreclosing further litigation on the matters raised in the formal complaint(s), and the waiver set forth in Paragraph 2." *Id.* at 5, Paragraph 8. Additionally, the agreement stated that he had 21 days to consider its terms and, significantly, he indicated "signed th[e] Agreement voluntarily and *was in no way coerced*." *Id.* (emphasis added).

On August 22, 2011, the settlement agreement was submitted to the EEOC administrative judge before whom Mr. Perry's complaints were pending.  *See* Ex. 13, Submission of Settlement Agreement to EEOC.  On August 26, 2011, the agency issued its decision on the proposed removal. *See* Ex. 14, Proposed Removal Decision. Pursuant to the settlement agreement, it mitigated the removal to a 30-day suspension. *Id.* at 1-2. On March 29, 2012, Mr. Perry applied for voluntary

early retirement from the agency, which was approved by the agency on April 2, 2012. *See* Ex. 15, Application for Voluntary Early Retirement and/or Voluntary Separation Incentive Program.  In exchange for retiring, he received $25,000 dollars. *Id*.; Ex. 16, Notice of Personnel Action. Thereafter, despite the agreement in which Mr. Perry had voluntarily agreed to waive his claims, he filed a series of appeals at the MSPB, which were all dismissed for lack of jurisdiction and which will be discussed in more detail below.[1]

## STANDARD OF REVIEW

### 1) Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and thus affect the outcome of the action.  *Celotex*, 477 U.S. at 322.

The court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id*. at 252.  To prevail, the moving party must show that the nonmoving party "fail[ed] to make a

---

[1] After losing at the MSPB, Mr. Perry petitioned for review in the D.C. Circuit. *See Perry v. MSPB*, 829 F.3d 760, 763 (D.C. Cir. 2016).  By the time that the D.C. Circuit had heard the arguments, the parties agreed that it lacked jurisdiction, but disagreed as to the proper forum for review. *Id.* The D.C. Circuit held the Federal Circuit had jurisdiction and transferred his case. 829 F.3d at 763. The Supreme Court reversed and remanded, holding that the District Court was the proper forum. *Perry v. MSPB*, 137 S. Ct. 1975, 1979, 1988 (2017).

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence, a moving party may succeed on summary judgment.  *Id*.

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations ... with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (citation omitted), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  For the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."  *Greene*, 164 F.3d at 675.

### 2)  MSPB Jurisdiction

MSPB decisions must be affirmed unless: (1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained without following the procedures required by law; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *see also Forest v. MSPB*, 47 F.3d 409, 410 (Fed. Cir. 1995). Determinations of jurisdiction are reviewed *de novo*. *Forest*, 47 F.3d at 410; *Vesser v. OPM*, 29 F.3d 600, 603 (Fed. Cir. 1994). Findings of fact underlying the decision are reviewed for substantial evidence. *Bolton v. MSPB*, 154 F.3d 1313, 1316 (Fed. Cir. 1998). An appellant has the burden of proving jurisdiction by a preponderance of the evidence. 5 C.F.R. § 1201.56(a)(2)(i). The MSPB does not have jurisdiction over appeal of a voluntary action. *Garcia v. DHS*, 437 F.3d 1322, 1328-29 (Fed. Cir. 2006). A voluntary adverse action, however, will be found to be involuntary if it resulted from "duress, coercion, or misinformation provided by the agency." *Ragland v. Dep't of the Army*, 84 M.S.P.R. 58, 62 (1999).[2]

---

[2] Before the Supreme Court's decision in *Perry*, the Federal Circuit Court of Appeals was the forum to which mixed-cases (those with alleged discriminatory and nondiscriminatory conduct) were appealed when dismissed on jurisdictional grounds by the MSPB. 137 S. Ct. 1975 (2017).

## ARGUMENT

This Court should deny Mr. Perry's motion because he raises no genuine issue of material fact as to whether the MSPB correctly dismissed his appeal for lack of jurisdiction, which it did.[3]

1) **The MSPB Properly Found That It Lacked Jurisdiction Because Substantial Record Evidence Showed Mr. Perry Voluntarily Accepted His Suspension And Resignation.**

On April 25, 2012, Mr. Perry appealed his suspension and retirement to the MSPB. *See* Ex. 1, MSPB Form 185-1, Appeal Form—Appellant and Agency Information. He alleged that both were involuntary actions because the agency had forced him to sign the settlement agreement. *See* Ex. 5, MSPB Form 185-2, Appeal of Agency Personnel Action or Decision (Non-retirement), at 3. Because the suspension and retirement appeared to be voluntary actions stemming from a settlement agreement, and therefore outside the Board's jurisdiction, the MSPB administrative judge ("AJ") ordered Mr. Perry to submit evidence showing the subject actions were involuntary. *See* Ex. 17, MSPB Order on Jurisdiction and Proof Requirements Over Involuntary Actions, at 1. After considering briefing by the parties, the AJ dismissed the matter for lack of jurisdiction. *See*

---

Since pre-*Perry* precedent from the Federal Circuit governed the jurisdictional determination here, such precedent governs the question of whether the MSPB properly dismissed Mr. Perry's appeal.

[3] On May 3, 2018, the Court entered a Minute Order in which it ordered the parties to submit a briefing schedule on whether the MSPB's decision to dismiss Mr. Perry's appeal for lack of jurisdiction should be affirmed and stated that, at this juncture, the Court would not accept briefing on whether the Court should require Defendant to respond to Mr. Perry's Amended Complaint. Mr. Perry, however, "believes the Court has not prevented [him] from addressing those 'active' discrimination claims he was pursuing at the time his termination was proposed." *See* ECF No. 30, Pl's Mot. at 10. Because the Court's Order requires briefing only on the threshold issue of whether the MSPB's decision to dismiss Mr. Perry's appeal for lack of jurisdiction should be affirmed, Defendant has only briefed that particular issue, one which Mr. Perry seems to have not addressed. Indeed, although he argues the Board erroneously denied him a jurisdictional hearing on a claim, which will be discussed *infra* at 10-11, nowhere does Mr. Perry appear to analyze the basis for MSPB's jurisdictional decision after conducting a hearing on the one claim at issue on remand. Defendant respectfully reserves the right to address Mr. Perry's other arguments should the action not be dismissed for lack of jurisdiction or if the Court otherwise orders Defendant to do so.

Ex. 18, MSPB Initial Decision (Jul. 30, 2012), at 1. Among other things, the AJ held Mr. Perry waived his right to an appeal in the settlement agreement and did not prove coercion. *Id.* at 3-4. Mr. Perry then appealed to the MSPB Board. *See* Ex. 19, MSPB Remand Order (Jun. 12, 2013). The Board, however, remanded to the AJ after finding he was entitled to a jurisdictional hearing on his claim that the agency coerced him into settling by misrepresenting that his only alternative to removal was to do so and, if he refused, he would relinquish his appeal rights. *Id.* at 6-9.

On remand, the MSPB AJ held a jurisdictional hearing in order to allow Mr. Perry to attempt to prove the agency misrepresented his appeal rights prior to executing the agreement. *See* Ex. 12, MSPB Initial Decision (Dec. 23, 2013). Mr. Perry declined to offer testimony. *Id.* at 7-12. After receiving testimony from five witnesses, including Mr. Perry's representative, the AJ found

> [t]he assertions made by [Mr. Perry], who argued that the settlement agreement was coerced, differed in material respects from the testimony of every witness at the hearing, including that of his own union representative. I find these witnesses credibly testified that the agreement was freely reached by the parties, that no fraud, coercion or misrepresentation occurred, and that [Mr. Perry] understood the terms and conditions of the settlement, including the waiver provision and that he freely agreed to a reduced penalty and retirement pursuant to the agreement.

*Id.* at 13. Consequently, the AJ again dismissed Mr. Perry's appeal for lack of jurisdiction. *Id.* at 15. Mr. Perry then appealed the decision to the Board, which affirmed the AJ's decision. *See* Ex. 20, MSPB Final Order (Aug. 6. 2014).

Here, substantial evidence supports the MSPB's findings that Mr. Perry's suspension and resignation had been voluntary based upon his settlement agreement. Ex. 6, Settlement Agreement. On August 22, 2011, Mr. Perry agreed to settle his claims against the agency in exchange for: (1) a 30-day suspension in lieu of removal; and (2) his voluntary retirement by September 4, 2012. *Id.* at 1-2. The agreement itself, which Mr. Perry signed, states it was "voluntarily" entered into. *Id.* at 5. Further, during the settlement process, the president of his union represented his interests.

*See* Ex. 12, MSPB Initial Decision (Dec. 23, 2013), at 3, 9 (noting that a Labor Relations Officer testified he had "extensive" settlement discussions with Mr. Perry and his union representative). As such, Mr. Perry's strategic decision to accept a suspension in lieu of removal and resign was nothing other than a negotiated, calculated and freely bargained choice.

Ample evidence additionally shows the suspension and retirement arose from Mr. Perry's own voluntary actions separate and apart from his decision to enter into a settlement agreement. In his response to the agency's proposed removal, Mr. Perry had actually suggested on his own that he be allowed to settle his pending claims in exchange for a 14 day suspension.  *See* Ex. 3, Response to Proposal to Remove, at 5.  As to his retirement, during his jurisdictional hearing, Mr. Perry's representative testified that the idea to retire was their idea and not the agency's idea. *See* Ex. 12, MSPB Initial Decision (Dec. 23, 2013), at 10 (stating that "Zuagar explained that it was the union, and not management, that recommended having [Mr. Perry] retire pursuant to a settlement and so it was not something management forced upon [Mr. Perry], as he claimed"). Moreover, the deciding official on the removal provided evidence showing that Mr. Perry informed her he would be willing to retire provided she let him work till he was eligible to retire at 30 years. *See* Ex. 10, Memorandum for Record. And Mr. Perry had even submitted an application in which he attested to the voluntary nature of his retirement and agreed to accept a cash incentive of either $25,000 or an amount equal to the severance pay to which he would be entitled. *See* Ex. 15, Application for Voluntary Early Retirement and/or Voluntary Separation Incentive Program.

Thus, substantial evidence supported MSPB's finding that Mr. Perry voluntarily accepted his suspension and his resignation as a settlement, taking both actions outside MSPB's jurisdiction. Because Mr. Perry fails to raise a genuine issue as to such finding, the MSPB should be affirmed and Mr. Perry's case should be dismissed for lack of jurisdiction.

2) **The MSPB Properly Declined To Order a Jurisdictional Hearing On Mr. Perry's Claim That The Agency Knew It Could Not Substantiate His Proposed Removal Because Such Claim Did Not Constitute a Nonfrivolous Allegation Of Coercion.**

Prior to remanding the case back to the AJ to conduct a jurisdictional hearing on the foregoing issue (*i.e.*, whether the agency advised Mr. Perry that his only alternative to termination was to accept the settlement agreement after which he would not otherwise have appeal rights), the Board declined to order a jurisdictional hearing on whether the agency knew it could not substantiate his proposed removal since it did not constitute a nonfrivolous allegation of coercion. *See* Ex. 19, MSPB Remand Order (Jun. 12, 2013), at 5-6 (citing *Bahrke v. USPS*, 98 M.S.P.R. 513, ¶ 12 (2005); *Schultz v. United States Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987) (a threatened action is coercive if agency knew the reason for the threatened action could not be substantiated)). To the extent that this finding constituted a basis upon which the MSPB held it lacked jurisdiction, Defendant submits that the MSPB properly made such finding.

To establish MSPB jurisdiction over an adverse action claim, an appellant must prove jurisdiction by a preponderance of the evidence at a hearing. 5 C.F.R. § 1201.56(a)(2)(i). An appellant will be entitled to such a hearing only if he first makes a nonfrivolous allegation that his voluntary adverse action was involuntary. *Brown v. USPS*, 115 M.S.P.R. 609, 615-16 (2011). Furthermore, nonfrivolous allegations cannot be supported solely by unsubstantiated speculation. *Kahn v. DOJ*, 528 F.3d 1336, 1341 (Fed. Cir. 2008).

Here, Mr. Perry fails to raise a genuine issue of material fact that undermines MSPB's finding that he was not entitled to a jurisdictional hearing because his claim that the agency knew it could not substantiate its charges did not constitute a nonfrivolous allegation of coercion. *See* ECF No. 30, Pl's Mot. at 20-26. Although he proffers reasons as to why he believes that the agency could not substantiate its charges (*i.e.*, the agency allegedly did not submit evidence

contradicting his claim that he was working under a flexible schedule to accommodate a disability and incorrectly charged the amount of time for which he received pay while not working), *id*., he fails to address the reasons the MSPB found the agency believed its charges could be substantiated.

As the MSPB Board explained, Charge 1 of the proposed removal related to Mr. Perry's receipt of pay for time not worked and the Board emphasized how he admitted to absences and conceded several specifications were attributable to failed communications with his supervisor. *See* Ex. 19, MSPB Remand Order (Jun. 12, 2013), at 5-6. As the MSPB Board additionally noted, Charge 2 concerned his failure to follow his supervisor's directive to sign an attendance log and the Board emphasized how he did not sign it until he received an explanation from his supervisor *Id*. Based on Mr. Perry's statements, therefore, the Board found that there was at least some basis for the proposed discipline and concluded he failed to raise a nonfrivolous allegation of coercion.[4]

MSPB precedent has supported removal for far less than Mr. Perry's actions. *See, e.g., Cronk v. USPS*, 98 M.S.P.R. 124 (M.S.P.B. Jan. 3, 2005) (removal upheld for employee based on one instance of receiving pay for time not worked and one instance of proffering false statements). In light of such precedent, the record firmly demonstrates that the agency had—and knew it had— at least some basis for the proposed removal. Consequently, the MSPB Board properly declined to order a jurisdictional hearing on that issue.

---

[4] As to Charge 2 (Mr. Perry's failure to follow his supervisor's directive to sign an attendance log), Mr. Perry merely mentions that the implementation of the log was done with an improper motive; he does not address why the MSPB found a basis for the charge. *See* ECF No. 30, Pl's Mot. at 30. Furthermore, the record is otherwise replete with evidence showing the agency reasonably believed that it could substantiate the numerous charges that had supported Mr. Perry's removal. For instance, the decision on the proposed removal stated that the deciding official had found that "the reason for the proposed removal [was] fully supported by the evidence." *See* Ex. 14, Proposed Removal Decision, at 1. In response, Mr. Perry had admitted to facts supporting the charges and did not deny being absent on 62 occasions. *See* Ex. 3, Response to Proposal to Remove, at 2-3. In fact, his only defense to 62 charges of receiving pay for time not worked was an alleged informal accommodation granted by his supervisor, a defense that did not even apply to all the charges. *Id.*

## CONCLUSION

For the reasons set forth above, Defendant respectfully request that the Court affirm the jurisdictional determination of the MSPB and dismiss this case.

Dated: March 7, 2019                                     Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney
District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:_/s/ Matthew Kahn_____
Matthew Kahn
Assistant United States Attorney
555 Fourth Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 252-6718
Matthew.Kahn@usdoj.gov