IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| ANTHONY W. PERRY, Pro se<br>5907 Croom Station Rd.<br>Upper Marlboro, MD 20772<br>(301) 928-2305 | :<br>:<br>:<br>:<br>: |
| Plaintiff, | :<br>: |
| | :Civil Action No: 17-cv-1932 (TSC) |
| v. | :<br>: |
| WILBUR ROSS, SECRETARY<br>U.S. DEPARTMENT OF COMMERCE<br>1401 Constitution Ave., N.W.<br>Washington, D.C. 20230, | :  **RECEIVED**<br>:<br>:  APR − 3 2019<br>:<br>:  Clerk, U.S. District and<br>Bankruptcy Courts |
| et al. | :<br>: |
| Defendants. | : |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S CROSS

MOTION FOR SUMMARY JUDGMENT

Plaintiff submits this memorandum in opposition to defendant's cross motion

for summary judgment and motion to dismiss with prejudice. The government

argues pre-Perry v. MSPB precedent, other than the 1978 CSRA and Kloeckner v.

Solis, is controlling of the issues is this case. (Defendant's Memo of Points and

Authorities in Support of Cross Motion, Footnote 1 pg. 7.).

The Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 et seq.,

"establishes the framework for evaluating personnel actions taken against federal

employees." *Kloeckner v. Solis*, 568 U.S. 41, 44, 133 S. Ct. 596, 184 L.Ed.2d 433

1

(2012).   This instant case is a case of discrimination  involving both civil-service claims and discrimination claims and are subject to review in the district court to preserve federal employees' statutory "right" to "trial de novo" of their discrimination claims.  5 U.S.C. §§ 7702(a)(1); 7702(e)(3); 7703(b)(2), (c).   Hence, as applicable here the CSRA gives this court appellate judicial review de novo.  By statute, this court owes no deference to the decision or credibility determinations made by a tribunal (noting that an employee need not go the MSPB at all and each case before the district court should handled in the same manner).

If the law does not treat the label that an Article III court places on its action as conclusive, see e.g., Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 646 (1988), there is no basis in the applicable statutory text of the CSRA for this court to treat the label that an *administrative agency* places on its action as conclusive.  Since administrative decisions such as this are subject to judicial review, the proper forum for judicial review of a "mixed case" is the district court.  Additionally, "the voluntariness of petitioner's settlement agreement is not remotely a "jurisdictional" issue." *Perry v. MSPB*, U.S. Dkt. 16-399, Rep. Br. for Pet. pg. 21.  It is the validity of the settlement agreement that is at the heart of the civil service dispute on the merits of this complaint.  And because Plaintiff was working in accordance to a supervisor approved schedule, there was no basis for the charges of misconduct.  MSPB failed to follow statutory guidelines on handling this type of case.

"Complex jurisdictional tests complicate a case, ... as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims."

2

*Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Perry v. MSPB,* U.S. Dkt. 16-399, Pet. for Writ of Cert pg. 3  The correct forum for judicial review of an MSPB decision turns on "the nature of an employee's claim," not the basis for the MSPB's decision. *Elgin*, 132 S. Ct. at 2134. (*id.*).

This court should deny Defendant's cross motion for summary judgment and motion for dismissal with prejudice as a matter of law and grant Plaintiff's motion for summary judgment or proceed with the de novo review of the constructive civil service issues pursuant to the 1978 Civil Service Reform Act, Kloeckner v. Solis and Perry v. MSPB and subsequently proceed to trial de novo on the underlying discrimination claims in accordance with the applicable provisions of the federal anti-discrimination laws in this "case of discrimination", otherwise called a mixed-case.

Respectfully submitted,

Anthony W. Perry

3

TABLE OF CONTENTS

MEMORANDUM IN OPPOSITION TO CROSS MOTION FOR SUMMARY

   JUDGMENT


TABLE OF AUTHORITIES AND CASES


OTHER ATHOURITIES

I.     INTRODUCTION

II.    LEGAL STANDARD OF REVIEW

III.   ARGUMENT

   A. Mixed-Cases Dismissed At MSPB For Lack Of Jurisdiction Receive Judicial

       Review In The District Court

   B. Nonfrivolous Allegations In A Mixed Case Satisfy Jurisdictional

       Requirements

IV.   CONCLUSION

# TABLE OF AUTHORITIES

## CASES

*Barnes v. Small,*
    840 F.2d 972 (D.C. Cir. 1988)............................................................10

*Bell v. Hood,*
    327 U.S. 678 (1946)................................................................13, 14

*Boyd v. Dep't of Transp.,*
    21 Fed. App'x 906 (Fed. Cir. 2001)...............................................11, 22

*Burlington No. & Santa Fe. Railway Co. v. White,*
    548 U.S. 53  (2006)...............................................................23

*Conforto v. MSPB,*
    713 F.3d (Fed. Cir. 2013)...............................................................3

*Covington v. Dep't of Health & Human Servs.,*
    750 F.2d 937 (Fed. Cir. 1984)......................................................17, 20

*Crane v. Dep't of the Air Force,*
    240 Fed. App'x 415 (Fed. Cir. 2007) ...........................................25

*Elgin v. Department of the Treasury,*
    132 S. Ct. at 2126 (2012)...............................................................3

*El Rio Santa Cruz Neighborhood Health Ctr. v.*
    *U.S. Dep't of Health & Human Servs.,*
    396 F.3d 1265 (D.C. Cir. 2005) ...............................................17

*Fassett v. U.S. Postal Serv.,*
    85 M.S.P.R. 677 (MSPB 2000).................................................12, 17, 22

*Garcia v. Dep't of Homeland Sec.,*
    437 F.3d 1322 (Fed. Cir. 2006).................................................17, 20, 22

*\*Kloeckner v. Solis,*
    133 S.Ct. 596 (2012)................................................1, 2, 3, 9, 10, 12 16

*Hertz Corp. v. Friend,*
    559 U.S. 77, 94 (2010)...............................................................3

*Middleton v. Dep't of Defense,*
    185 F.3d 1374 (Fed. Cir. 1999)..........................................................17, 20, 23

*Morall v. Drug Enforcement Admin.,*
    412 F.3d 165 (D.C. Cir. 2005)......................................................14, 17

*National Railroad Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002)...........................................................................23

*Perry v. MSPB.,*
    137 S. Ct. 1975 (2017).....................1, 2, 3, 7, 9, 10, 12, 14, 14, 16, 22, 28

*Powell v. Dep't of Defense,*
    158 F.3d 597 (D.C. Cir. 1998).......................................................22

*Schultz v. U.S. Navy,*
    810 F.2d 1133 (Fed. Cir. 1987)...............................11, 12, 17, 20, 22

*Shoaf v. Dep't of Agric.,*
    260 F.3d 1336 (Fed. Cir. 2001)...................................... 14, 22, 23

*Whitmore v. Dep't of Labor,*
    No. 11-3084 (Fed. Cir (2012)................................................27

**Statutes and Rules**

5 U.S.C. § 7512 ........................................................... 6, 11, 13, 15

5 U.S.C. § 7513 ........................................................... .6, 13, 15, 20, 26, 27

5 U.S.C. § 7702.........................................2, 3, 4, 7, 9, 10, 12, 16, 26, 28

5 U.S.C. § 7703 ........................................................2, 3, 4, 7, 8, 10, 16, 28

**Other Authorities**

Brief for Petitioner,
    *Perry v. MSPB*, 582 U.S. Dkt. 16-399 137 S. Ct. 1975 (2017).......7, 8, 21, 22, 23
Petition for Writ of Certiorari,
    *Perry v. MSPB*, 582 U.S. Dkt. 16-399, 137 S. Ct. 1975 (2017)..............14, 15, 16
Reply Brief for Petitioner,
    *Perry v. MSPB*, 582 U.S. Dkt. 16-399, 137 S. Ct. 1975 (2017)...................2, 21

Reply Brief in Opposition,

    *Perry v. MSPB*, 582 U.S. Dkt. 16-399, 137 S. Ct. 1975 (2017).

## I.    Introduction

This Court ordered a briefing on the issue of sustaining the MSPB ruling of lack of jurisdiction also stating that "at this juncture" the Court "will not entertain arguments on the underlying discrimination. *See Other Authorities.* In the ruling in Perry v. MSPB, the Supreme Court brought coherence and clarity to the statutory regime governing judicial review of federal employees' employment related disputes." Here, as in *Kloeckner*, the Civil Service Reform Act answers the question "in crystalline fashion," 133 S. Ct. at 604: cases involving both civil-service claims and discrimination claims are subject to review in district court to preserve federal employees' statutory "right" to "trial de novo" of their discrimination claims. 5 U.S.C. §§ 7702(a)(1); 7702(e)(3); 7703(b), (2), (c), without any deference to any evidentiary or credibility determinations made by the MSPB. 42 U.S.C 1981a(a)(1); Chandler v. Roudebush, 425 U.S. 840, 845-46, 849, 864 (1976) (holding that Congress gave federal employees the same rights as private-sector employees to try their discrimination claims in district court). "... This is, of course, a paradigm mixed case: Perry alleges serious personnel actions (suspension and forced retirement) caused in whole or in part by prohibited discrimination." *Perry v. MSPB*, S. Ct. 137 1975 (2017). See *Kloeckner v. Solis*, 568 U.S., at 47, <u>133 S.Ct. 596.</u>

There is no question that the MSPB has jurisdiction over appeals in which employees contend that a settlement implicating a major personnel action was involuntary. See, e.g. *Conforto*, 713 F.3d at 1120 ("The employee in such cases may

claim that he was forced to resign or retire in part or in whole because of
discrimination by the agency ..."); *Perry v. MSPB*, U.S. Dkt. 16-399, Pet. for Writ of
Cert. pg. 14).   Material evidence from the hearing on the only issue allowed of
misrepresentation, Johnny Zuagar, the Union President stated in the affirmative
when asked two specific questions. "Did you tell [Plaintiff] that the agency told you
that they would terminate [him] immediately if [he] went to EEO? Mr. Zuagar
answered "yes". "Did you tell [Plaintiff] that the Agency told you that they would
terminate [him] if [he] did not agree to the settlement". Mr. Zuagar answered "yes".
Under threat of immediate termination and suffering from a disabled hip, an eleven
year old daughter and wife, Plaintiff in the twilight of his federal employment was
coerced and extorted into a fraudulent, invalid and prohibited agreement into
suspension and retirement for unsubstantiated charges of misconduct.

Federal employees have constitutional rights with regard to their federal
employment and the removal from which is for cause only.   Prior to any agreement
and under threat of immediate termination, the Agency threatened to terminate my
federal employment and then interfered with my right to file a discrimination and
retaliation claim to contest the adverse actions.

This is a case of discrimination involving agency actions appealable to the
MSPB which include unresolved discrimination and retaliation claims under Title
VII of the Civil Rights Act of 1964; Rehabilitation Act of 1973, 29 U.S.C. 794; the
Age Discrimination in Employment Act of 1967, 29 U.S.C. 631, 633a, pursuant to 5
U.S.C §§ 7702(a)(1)(a), 7702(a)(1)(B)(i), 7702(a)(1)(B)(iii), 7702(a)(1)(B)(iv), 7703

4

(c)(1)(C); prohibited personnel practices in violations of 5 U.S.C 2302(b); other adverse actions not covered by Title VII; hostile work environment and harassment; negligence; statutory and constitutional violations by MSPB and U.S. Dep't of Commerce.

The government issued an incomplete audio of the hearing before the MSPB. The testimony of the Deciding Official Terryne F. Murphy is not on the MSPB hearing audio. The court must address this discrepancy for the intent this was meant to have on this proceeding. A Deciding Official has a statutory responsibility of her decision in regards to a federal employee facing dismissal. This is no trivial matter. Not only was her agency communications about my termination withheld from the administrative tribunal, now her testimony has been deleted from the hearing audio submitted to Plaintiff which has been filed with the Court.

II.    **Legal Standard of Review**

    a. **Summary Judgment Standard Of Review**

The Court shall grant summary judgment where there is no disputed genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Celotext Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The mere existence of a factual dispute does not preclude summary judgment; "the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. 242, 247-48 (1986). The movant must rely on record materials to demonstrate the absence of any genuinely disputed issues of material fact. Fed R. Civ. P. 56(a). Celotex Corp., 477

U.S. 324. The nonmoving party's response must present his own evidence beyond the pleadings to demonstrate specific facts showing that there is a genuine issue for trial. Celotex Corp., 477 U.S. 324. A fact is material if, under applicable law, it could affect the outcome of the case. Anderson, 477 U.S. 247-48. A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Doe v. Dep't of Treasury, 706 F. Supp. 2d 1,5 (D.D.C. 2009); Anderson, 477 U.S. 247-48.

To avoid summary judgment, the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his position. Anderson, 477 U.S. at 252. The non-moving party must "designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. The nonmoving party's opposition "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." Laningham v. U.S. Navy, 813 F.2d 1236, 1241-42 (D.C. Cir. 1987).

### b. District Court Judicial Review of Mixed Cases Is De Novo

Federal employees have rights under federal civil service laws pursuant to the Civil Service Reform Act of 1978, 5 U.S.C § 1101 et seq., for review of serious personnel actions relevant here defined by 5 U.S.C §§7512(1), (2) and 7513(d) and under federal anti-discrimination laws in regards to "[all] personnel actions, affecting employees or applicants for employment." 42 U.S.C. § 2000e-16(a), (c) (Title VII, ADEA, and Rehabilitation Act). Perry v. MSPB, U.S. Dkt. 16-399, Br. for Pet. pgs. 12-16.

A plaintiff may bring a mixed case before the MSPB or he may bypass the MSPB altogether and bring a mixed case directly to district court pursuant to 5 U.S.C. §§ 7702, 7702(e) and 7703(b)(2).   Once in district court whether directly from the agency EEO or on appeal from the MSPB, the district court reviews the issues in the case de novo pursuant to the applicable CSRA sections above.

In the instant case, I was "affected by an action which [I] may appeal to the [MSPB]," 5 U.S.C § 7702(a)(1)(A), because I challenged the voluntariness of the nondisclosure settlement agreement in which I was coerced to release claims challenging my suspension, removal, and pending EEOC claims over which the MSPB exercised jurisdiction twice.  In the first instance the MSPB ruled that I voluntarily entered the nondisclosure agreement.  In the second instance the MSPB ruled agency did not misrepresent my appeal rights.  "The fact that the MSPB ultimately rejected [my] claim of involuntariness on the merits did not retroactively divest the MSPB of jurisdiction." *Perry v. MSPB*, U.S. Dkt. 16-399, Br. for Pet. pg. 21.

Congress did not need to specify that the statutory requirements for a "mixed case" satisfy the employee's allegations, just as Congress did not need to specify that the requirements for federal court jurisdiction are satisfied by a plaintiff's allegations.  See 28 U.S.C § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); id. 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

$75,000 ... and is between ... citizens of different states."). *Perry v. MSPB,* 582 U.S. Dkt. 16-399, Br. for Pet. pgs.22-23.

The validity of the settlement is at the heart of the dispute on the merits with respect to both my civil-service and discrimination claims, as well as having been working for years prior to removal notice in accordance to a supervisor approved accommodation schedule and having filed prior discrimination claims. The MSPB does not have the last word on its own jurisdiction. Rather, its jurisdictional determinations-like any of its other determinations-are subject to judicial review in the Federal Circuit in pure civil-service cases, but in district court in pure discrimination cases and mixed cases. See 5 U.S.C. §§ 7703(b)(1)(A), (b)(2).

Statutorily, it is consistent for the provision of district court review to review mixed cases appealed from the agency administrative process or the MSPB administrative process under the same standard, de novo. That standard allows for the preservation of her discrimination claims. There is no language in the statute that directs anything different for cases of discrimination that also include a civil service claim.

In civil litigation, a release is not jurisdictional but an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading. See Fed. Rule Civ. Proc. 8(c)(1) (listing among affirmative defenses "release" and "waiver"); *Newton v. Rumery,* 480 U.S. 386, 391, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987). (*Perry v. MSPB*, S. Ct. 137 1986, Footnote 9 (2017). In an abuse of discretion and violation of statutory law, the Board improperly disregarded

8

section 7702(a)(1) of the Civil Service Reform Act which laid out procedures for handling the instant case.

III.   **Argument**

   A.  **Mixed-Cases Dismissed For Lack Of Jurisdiction By The MSPB Receive Judicial Review On The Merits In The District Court**

The MSPB administrative judge in this case made two decisions on the merits in the instant case.  *Perry v. MSPB*, S. Ct. 137 1975 (2017).  This is, of course, a "paradigm mixed case ...".  *Perry v. MSPB*, S. Ct. 137, Footnote 5.   This is also a case of Constitutional violations by the MSPB and the Agency of Plaintiff's due process, prior restraint, equal protection, property rights, and harmful procedural error; retaliation and discrimination for prior pending discrimination and protected speech, a hostile work environment, harassment, prohibited personnel practices and other torts.

The government claims "pre-Perry" law governs the instant case and the legal issues therein or within.  (Defendant's Cross Motion for Summary Judgment, Footnote 2 pgs. 6-7).   The pre-Perry precedents applicable in the instant case are the 1978 CSRA and *Kloeckner v. Solis, S. Ct 133 596 (2012)*.   The government's statement is a concession on the applicable law and the facts in the instant case and this court should deny defendant's cross motion for summary judgment and motion for dismissal with prejudice and grant plaintiff's opposition to the cross motion, plaintiff's motion for summary judgment and reinstatement and proceed with trial

9

de novo of plaintiff's claims of discrimination, retaliation, hostile work environment and other claims in his amended complaint.

When MSPB "types" its dismissal of a mixed case as "jurisdictional", the court said, review authority lies in district court. S. Ct. 137 1975 (2017). "The MSPB's resolution of a challenge to the voluntariness of a settlement cannot retroactively strip the Board of jurisdiction to address that very issue." *Perry v, MSPB*, 582 U.S. Dkt. 16-399, Pet. for Writ of Cert. pg 15. "... an adjudicatory body does not lack jurisdiction to address a claim simply because the claim may fail on the merits." (*id.*) See, e.g. Bell v. Hood, 327 U.S. 678, 682 (1946). "... the merits of petitioner's allegation that he was subjected to a major adverse employment action because the settlement was involuntary do not involve the MSPB's jurisdiction ...". (*id.*) See, e.g. Reed Elsevier, 559 U.S. at 160-63. "... because MSPB has jurisdiction to decide whether a settlement was voluntary, a case challenging the voluntariness of a settlement implicating a major adverse employment action qualifies as "an action which the employee or applicant may appeal to the [MSPB]" 5 U.S.C. § 7702(a)(1(A), ... regardless of the MSPB's resolution of that question on the merits." (id., pg 16).

The MSPB ALJ denied material and relevant witnesses and evidence in the administrative proceeding before it. My supervisor of record Dale R. Reed, my 2nd line supervisor Patricia Musselman and the author of the proposed removal, Daren Gutshow were denied from testifying. (Document 30-4, Exhibit 1: pg. 349 at E, pgs. 343-344, pg. 409 ¶ 1, pg. 421 ¶ 9).

Cases of discrimination subject to the provisions of 5 U.S.C. § 7702 should be filed in district court, pursuant to the enforcement provisions of the various applicable antidiscrimination statutes. 5 U.S.C. § 7703(b)(2). Kloeckner v. Solis, 133 S. Ct. at 602, 607. The Board's regulations are the same. C.F.R. § 1201.157. "Federal employees, . . . , have a right to pursue claims of discrimination in violation of federal law in federal district court. . . . See § 7703(c) (preserving "right to have the facts subject to trial de novo by the reviewing court" in any "case of discrimination" brought under § 7703(b)(2). (*Perry v. MSPB*, 582 U.S. 8 (2017), S. Ct. 137 1975 (2017). In the district court, I can seek review of the Board's decision and pursue the "underlying" discrimination claims. (Barnes v. Small,, F.2d, 978-79 (D.C. Cir. 1988) (describing district court review in mixed cases appealed from the Board).

The Board's analysis of its own jurisdiction often overlaps with the merits of the employee's claim that a personnel action was coerced by discrimination or otherwise involuntary. (Boyd v, Dep't of Transportation, 21 21 Fed. App'x 906, 909 (Fed. Cir. 2001) (reviewing Board jurisdictional decision that turned on whether allegations of hostile work environment were non-frivolous). "The MSPB exercised jurisdiction over the instant case twice and rendered two decisions." (Anthony W. Perry v. Department of Commerce, Dkt. No. MSPB-DC- 0752-12-0486-B-1). That the MSPB rejected [my] claim of involuntariness on the merits "did not retroactively divest the MSPB of jurisdiction to render that decision." *Perry vs. MSPB*, 582 U.S. Dkt. 16-399 Pet. Br. at 21. It "is not what the MSPB determined about

appealability; it is instead the nature of an employee's claim that [I] had been "affected by an action [appealable] to the [MSPB]" (here, suspension for more than 14 days and involuntary removal, see §7512(1), (2)).  *Perry vs. MSPB*, 582 U.S. 9-17, S. Ct. 137 1975 (2017).

If "an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive." *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987). That rule applies with equal force to personnel actions taken pursuant to a settlement agreement.  Thus, the Board will consider a settlement involuntary if the agency "knew or should have known" that the proposed personnel action precipitating the settlement "could not be substantiated." *Fassett v. U.S. Postal Serv.*, 85 M.S.P.R. 677, 680 (MSPB 2000) (setting aside settlement where the "agency should have known that the appellant's removal based on this charge could not be substantiated").  With the coerced settlement set aside, the Board could have exercised jurisdiction over the relevant employment action.

MSPB's jurisdiction and the merits of an alleged involuntary separation are "inextricably intertwined."  Schultz v. United States Navy, 810 F.2d 133, 1136 (Fed. Cir. 1987).  If it is established that a resignation or retirement is involuntary, the MSPB not only has jurisdiction, "but also the employee wins on the merits and is entitled to reinstatement."  Schultz, 810 F.2d at 1136.  "Because the MSPB indisputably had and exercised jurisdiction over the instant case, the suggestion that this is not a case that [I] could "appeal to the [MSPB]," was rejected by

*Kloeckner*. 5 U.S.C. § 7702(a)(1)(A)   *See* 133 S. Ct. at 604;   *Perry v. MSPB*, 582 U.S.  Dkt. 16-399, Pet. Br. at 20-21.

I made a non-frivolous allegation that I was coerced into an unlawful nondisclosure gag/agreement requiring a 30-day suspension and early retirement on false charges of misconduct and due in part to disability discrimination, race and age discrimination, retaliation, and later gender discrimination.   I also charge that the Census Bureau engaged in misrepresentation of the charges, engaged in fraud and extortion, conspiracy, subjected me to a hostile work environment and other intentional torts against me in order to justify its adverse actions and imposition of the nondisclosure gag/agreement.   I also claim the Agency's use of a nondisclosure agreement to hide its inability to prove the charges of misconduct  and prevent me from filing a complaint while executing constructive personnel actions denied me statutory rights, due process, is a prohibited personnel action and is retaliation continuing a hostile work environment.   The MSPB violated administrative law in failing to hold a hearing on the issue of coercion, exhibited bias in failing to consider the totality of the evidence, violated administrative and constitutional law of due process and equal protection.   5 U.S.C. §§ 7512(1),(2) and 7513(d).   A hearing is a procedure required by law.

Approximately around 2007, I worked in accordance to my supervisor approved schedule and accommodation to which no one objected.  (Am. Cmpl. ¶¶ 74, 80-81, 83-84 ).   I explained that to the Agency and to the MSPB in my response to the Notice of Removal and my appeal.  (Document 30-4, Exhibit 1: pgs. 7-8, pg. 46 at

1).  Here, the agency knew or should have known the basis for the removal was unsubstantiated and therefore my 30-day suspension and early retirement was the result of improper actions by the agency.

"A party [may] establish jurisdiction at the outset of a case by means of a non-frivolous assertion of jurisdictional elements,'" Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U. S. 527, 537 (1995).  See *Perry v. MSPB*, U.S. 582 Dkt. 16-399, Pet Br. for Cert at 21–22.  See also Bell v. Hood, 327 U. S. 678, 682–683 (1946) (To invoke federal-question jurisdiction, allegations in a complaint must simply be more than "insubstantial or frivolous," and "[i]f the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.").  *Perry v. MSPB*, 582 U.S. at 10, S. Ct. 137 1975 (2017).

"Whether a complainant's allegations succeed or fail on the merits has nothing to do with the adjudicator's jurisdiction over those allegations." *Perry v. MSPB*, 582 U.S. Dkt. 16-399, Pet. Br. at 24; *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *Bell v. Hood*, 327 U.S. 678, 682 (1946).  *Perry v. MSPB*, 582 U.S. at 17, 137 S. Ct 1975 (2017).

"[I]n determining whether an alleged act of coercion caused an employee's involuntary retirement, a court need not limit itself to any particular timeframe." (Terban v. Dep't of Energy, 216 F.3d 1021, 1024 (Fed. Cir. 2000) (emphasis added). ("the most probative evidence of involuntariness "will usually be evidence in which there is a relatively short period of time between the employer's alleged coercive

act[s] and the employee's retirement." Id.  Neither does an employee need to prove that he was coerced into the constructive actions.  He needs only show that he relied on the agency's actions and deceptions that led him to believe he had no alternative. That is clear in this case.  But, failure of the MSPB to consider the totality of the evidence in the instant case and deny material witnesses and evidence is an abuse of discretion and violation of due process.    See Terban v. Dept of Energy, 216 F.3d 1021, 1024 (Fed.Cir. 2000).   Morall v. Drug Enforcement Admin., ("Because the [AJ] failed to consider the totality of the circumstances surrounding  Shoaf's resignation, we vacate and remand.")   Shoaf v. Dep't of Agriculture, 260 F.3d 1336 (Fed. Cir 2001).

An agency may take an action covered by 5 U.S.C. 7513(a) against an employee only for such cause as will promote the efficiency of the service.  It must explain the efficiencies for which the actions were taken.  Failure to do so is a violation of due process.  An appeal and a hearing on adverse personnel actions defined by 5 U.S.C. 7512(1), (2) is a procedure required by law and failure to provide for such is a violation of my constitutional right to due process.  5 U.S.C. 7513(d). The agency avoided the legal requirements for the constructive suspension, termination and the remaining adverse actions through the imposition of an illegal nondisclosure gag/agreement.  (5 U.S.C § 7513(d); 5 U.S.C. §2302(b)(13)).

## B. Nonfrivolous Allegations Satisfy Jurisdictional Requirements

Working in accordance to a supervisory approved schedule allowing walks or breaks away from an employee's desk is not misconduct.   Just like walking or

jogging outside of the facility is not misconduct.    Time and date stamped email communications from plaintiff show that I was in fact working in accordance to an alternate schedule different from the  7:30a.m.to 5:00p.m schedule which included some hours outside of 7:30am to 5:00pm.  The government's contention that "the MSPB properly declined to order a jurisdictional hearing on Mr. Perry's claim that the agency knew it could not substantiate his proposed removal because such claim did not constitute a nonfrivolous allegation of coercion" and that the court should affirm MSPB's jurisdictional dismissal and dismiss this case has no basis in fact or law.

Further, the government's position is not supported by the 1978 Civil Service Reform Act, answered in *Kloeckner* "in crystalline fashion," 133 S. Ct. at 604: cases involving both civil-service claims and discrimination claims are subject to review in district court to preserve federal employees' statutory "right" to "trial de novo" of their discrimination claims.  5 U.S.C. § 7702(a)(1); 7702(e)(3); 7703 (b), (c).

The appeal the petitioner brought before the MSPB was a mixed case", a "[c]ase of discrimination subject to the provisions" of the CSRA, 5 U.S.C. § 7703(b)(2).  *Kloeckner v. Solis*, 133 S. Ct 604 (2012);  Perry v. MSPB, 137 S. Ct. 1975 (2017).

It doesn't matter what the MSPB decides about a "mixed case", i.e., a "[case] of discrimination subject to the provisions" of the CSRA, 5 U.S.C. § 7703(b)(2) receives judicial review in the district court.

Coercion can take on a number of forms.  In fact, to have a legitimate claim of coercion, plaintiff need not prove coercion at all but only show he relied on the governments statements and actions in the constructive action.   Before any agreement, I explained in the response to the proposed removal that I was working in accordance to a supervisor approved schedule for years without objection.  (Defendant's Cross Motion Ex. 3). My supervisors approved my time and attendance records.

It is also settled law that actions "approved in advance" by a federal employee's "supervisor" cannot be "relied upon by the agency in its decision to remove" an employee.  Hite v. U.S. Postal Serv., 168 F. App'x 436, 437 (Fed. Cir. 2006);  See Morall v. Drug Enforcement Admin., 412 F.3d 165, 167 (D.C. Cir. 2005) (agency "decision cannot withstand review, because it fails to consider contradictory record evidence where such evidence is precisely on point").  El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Human Servs., 396 F.3d 1265, 1278 (D.C. Cir. 2005)  (finding agency action arbitrary and capricious in failing to address relevant evidence before it).

The Agency charges, threats and communication were clear that I had no alternative but to resign or retire.  Testimony by Union President Johnny Zuagar before the MSBP on the issue of misrepresentation stated the same.  The agency was told that I was working in accordance to a schedule approved by supervisor and thus there was no basis for the charges of misconduct.  The right to a hearing on non· frivolous allegations of jurisdiction is a "procedure required by law." *Garcia*,

17

437 F.3d at 1345; *see also Covington v. Dep't of Health & Human Servs.*, 750 F.2d 937, 943 (Fed. Cir. 1984). The Federal Circuit has, in the past, reviewed the Board's decision not to hold such a hearing for abuse of discretion. *See Middleton*, 185 F.3d at 1380.

The imposition of the nondisclosure "settlement agreement requiring a 30-day suspension, early retirement and other personnel actions was coerced, and thus involuntary," because "the agency threatened to take a future disciplinary action that it knew or should have known could not be substantiated." Schultz, 810 F.2d at 1136; Fassett v. U.S. Postal Serv., 85 M.S.P.R 677, 680 (MSPB 2000). Non-frivolous claims of coercion entitle an employee to a jurisdictional hearing. The right to a hearing arises after an employee makes a nonfrivolous allegation of the involuntariness of a retirement or resignation. See Gratehouse v. United States, 512 F.2d 1104, 1108 (Ct. Cl. 1975).

The Agency did not submit contradictory evidence at any time contradicting my assertion and evidence that I was working in accordance to a flexible schedule approved by my supervisor Dale Reed, primarily to accommodate my disability. *See* support of allegation, including documents and claims indicating the following: (Document 30-4, Exhibit 1 Page 45-49); (Am. Cmpl. ¶¶ 83, 84, 85):

> • *31 of the hours Perry was charged with not working were attributable to his supervisor's policy to have one-hour lunches, and therefore constituted "legally allowable break-time every employee receives."* Document 30-4, Exhibit 1 Page *26-27 at 14, 15; see* Document 30-4, Exhibit 1 Page *103* (*email from supervisor noting that lunch break is "one hour"); cf.* Document 30-4, Exhibit 1 Page *31 at "Background"* (*proposed removal noting that agency believed Perry's schedule included "a 30-minute non-paid lunch period mid-day"*).

*• Perry did substantial work from home outside normal working hours. See
Document 30-4, Exhibit 1 Page104 (email referring to "at least 40 hours
working on" a project "at home" for the Management Official in the instant
case);* Document 30-4, Exhibit 1 Page *105-137 (emails showing Perry
working after normal office hours). Indeed, Perry calculated "more than 158
hours worked outside of the official 7:30 am to 5:00 pm schedule," Document
30-4, Exhibit 1 Page 238-239 at 1., which alone would surpass the 133 hours
and 35 minutes the agency claimed he did not work,* Document 30-4, *Exhibit
1 Page 41 at "Considerations".*

Additionally, two 15-minute daily legally allowable "rest-breaks" every

federal employee receives are not accounted.   As an initial cursory review,

approximately 62 or so hours out of 133 hours charged for receiving pay for time not

worked are accounted for by supervisor/legally allowed break-time.   More than 40

hours spent at home working on a project directly for the Management Official in

the instant case, Brian McGrath.  (Document 30-4, Exhibit 1: pg. 104,  pgs. 111-

112).   Mr. McGrath testifies that he received emails from me at all times of the day

and night.  That was because I was working and updating him on assignments for

which he had a status interest.  (Anthony W. Perry vs. Dep't of Commerce, MSPB

Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename

MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3

at 45.300 46:20).  So Brian McGrath, the Management Official initiating my

removal from the federal government, knew I was working outside of the 7:30a –

5:00p schedule and could directed me to get a formal accommodation,  asked my

supervisor Dale Reed as to why or he could have asked me initiated a removal

action for charges he knew were not true.  What I did or did not do was not

misconduct.  My supervisor, Dale Reed knew.  My second line supervisor, Patricia

Musselman knew.  Brian McGrath knew.  Knowing that I worked after 5:00pm as the email communications show, management did not include my entry nor exit times from the building after 5:00pm, on the weekends or on my day off.

Within months of my 2009 graduation from the Commerce Executive Leadership Development Program and completing the Information Technology Change Management Project for Brian McGrath, the agency was retrieving my building security access control logs.  (Document 30-4, Exhibit: 1 pgs. 116-125, pgs. 303-307).    Below, additional evidence show the constructive suspension and removal was an egregious retaliatory act for having made EEOC complaints that I was attempting to negotiate a settlement that the agency was clearly resisting to settle.  Brian McGrath was the Management Official.  (Document 30-4, Exhibit 1: pgs. 158-168, pg. 206).

Like *Schultz*, the "agency knew or should have known" that its "charge . . . was no longer a viable basis" for the adverse action.  (Schultz v. United States Navy, 810 F.2d at 1137).    My supervisor was notified of the application for an accommodation from the Disability Program Office June 13, 2011, prior to any agreement. (Document 30-4, Exhibit 1: pg. 101). I was subsequently approved for a formal disability accommodation.  (Document 30-4, Exhibit 1: pg. 102).

In 2005 my supervisor Reed authorized me to attend GSA CIO-University seminars during work hours.  (Am. Cmpl. § 32).  Starting in 2009 I attended some ELDP leadership seminars during work hours with supervisor's knowledge and approval.  (Am. Cmpl. ¶ 35).    Before any settlement discussions, negotiations or

agreement ever took place, the Agency knew or should have known that its Notice of Proposed Removal was unsubstantiated and thus unjustified. (Document 30-4, Exhibit 1: pg. 7 at 5-13). As a result, the Settlement Agreement imposed materially adverse personnel actions which were coerced and appealable to the Board.

The Board denied my right to a hearing without addressing documentary evidence and the primary allegation that supervisor authorized an alternative work schedule. Garcia, 437 F.3d at 1345; Covington v. Dep't of Health & Human Servs., 750 F.2d 937, 943 (Fed. Cir. 1984); 5 U.S.C 7513(d). The Board's failure to hold a hearing is an abuse of discretion. See Middleton, 185 F.3d at 1380.

On July 26, 2011, before a decision by the Deciding Official pursuant to the procedure in the notice of removal, in particular reference to my response to the removal proposal, Agency HR employee Benjamin Felder delivered the below email dictating nonnegotiable terms and conditions of my continued employment with the Census Bureau and which appears to have formed the foundation of the August 22, 2011 NDA. (Document 30-4, Exhibit 1 pg. 342).

> *From:*  *Benjamin T Felder/HRD/HQ/BOC*
> *To:*  *Ronda J Brown/POL/HQ/BOC@BOC*
> *Cc:*  *Terryne F Murphy/ISSRO/HQ/BOC@BOC, Stacy*
> *Chalmers/HRD/HQ/BOC@BOC*
>
> *Date:*  *Tuesday, July 26, 2011 07:37AM*
> *Subject:*  *AP Settlement*
>
> *FYI - I presented the proposed terms for settlement to Johnny Zuagar yesterday. He advised that he would talk to AP and get back to me. Hopefully, I will know something or have a counter-offer by the end of this week. I will let you know as soon as I have something. These were the terms offered:*
>
> *1. Agree to retire/resign by NLT May 30, 2011. (nonnegotiable)*

21

*2. Agree not to apply for or accept any future positions with the BOC.*
*(nonnegotiable)*
*3. Agree not to engage in any further misconduct. (nonnegotiable)*
*4. Accept a 60-day suspension.*
*5. Accept a reassignment to an already identified area.*
*6. Accept a demotion to a non-supervisory GS-13 position.*
*7. Withdraw all pending complaints/cases against the Agency.*
*(nonnegotiable)*
*8. Agree not to file a claim against the Agency concerning this matter.*
*(nonnegotiable)*

The MSPB transcription of this Human Resources email is incorrect.

(Document 35-16, Ex. 16 Page 3). It purposely left out the critical "nonnegotiable"

designation of some of the adverse actions. This email is coercive and a prohibited

personnel practice and is the foundation for the adverse personnel actions in the

unlawful nondisclosure settlement document.   At that point, there had been no

decision communicated to me by the Deciding Official to my response to the charges.

The law here on voluntariness is clear.  By showing that the agency threatened to

take a future disciplinary action that it knew or should have known could not be

substantiated, then a resulting settlement agreement is coerced and thus

involuntary. (Schultz v. U.S. Navy, 810 F2.d at 1136; Fassett v. U.S. Postal Serv.,

85 M.S.P.R. 677, 680 (MSPN 2000)).  I therefore had a right to a hearing on the

merits. Garcia v. Dep't of Homeland Sec., 437 F.3d at 1344. The Board's analysis of

its own jurisdiction  often overlaps with the merits of a claim that a personnel

action was coerced by discrimination or otherwise involuntary.   see Boyd v. Dep't of

Transp., 21 Fed Appx 906, 909 (Fed Cir. 2001) (reviewing Board jurisdictional

decision that turned on whether allegations of hostile work environment were non-

frivolous); Powell v. Dep't of Defense, 158 F.3d at 599 (noting that "evidence of

voluntariness or constructive termination [may be] more closely 'related to the merits of a discrimination claim. (Perry v. MSPB, Dkt. 14-1155 D.C. Cir (2015), Perry v. MSPB, 582 U.S. Dkt. 16-399, Pet. Br. at 34-35).

A "facially voluntary action by the employee may actually be involuntary", if coerced by the agency. *Garcia*, 437 F.3d at 1324. ("For example, although a resignation is ostensibly a voluntary separation from employment, it is possible that an employee can be coerced into resigning by actions of the employing agency.") Shoaf v. Dep't of Agric., 260 F.3d 1336, 1340-41 (Fed. Circ. 2001).

The Board failed to consider my allegations and evidence about the basis for the threatened removal or the documentary evidence and allegations of a supervisor authorized work schedule. (Document 30-4, Exhibit 1: pgs. 258-259). See Shoaf v. Dep't of Agric., 260 F.3d at 1342-43 (Board "abused its discretion" by failing to consider "the totality of the circumstances in determining whether [petitioner's] resignation was involuntary"); Middleton v. Dep't of Defense, 185 F.3d 1374, 1380 (Fed. Cir. 1999) (Board must "view[] as a whole" "[a]ll relevant non-frivolous allegations" in determining whether a jurisdictional hearing is warranted), and failure to do so is a clear violation of administrative law.

the personnel actions therein, and the delay in the Deciding Official's decision until after imposition of a NDA are egregious coercive acts, extortion and "materially" adverse personnel employment actions that violate my due process, continues the hostile work environment and retaliation for my prior complaints.

Burlington Northern & Santa Fe Railway v. White, 583, 53 (2006); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

In Shultz, the petitioner submitted to the agency a bona fide request for an accommodation due to illness. 810 F.2d at 1134-35. The agency denied her request, threatened her with "disciplinary action up to removal" in light of her "unauthorized absence status," and forced her to choose between returning to work immediately or voluntarily resigning. *Id.* at 1135. The petitioner resigned. *Id.* She appealed to the Board, but the Board held that it lacked jurisdiction over her "voluntary" resignation. *Id.*

The Court of Appeals reversed. In light of the supporting documentation the petitioner had provided, the court found that "the agency acted coercively in denying her leave request and forcing a retroactive resignation." *Id.* at 1136. "That the agency official may not have been "personally aware" of the full details of petitioner's situation and request at the time did not matter, since the agency's position became untenable once petitioner provided the necessary supporting documentation." *Id.* In short, the "agency knew or should have known" that its "charge . . . was no longer a viable basis" for the adverse action. *Id.* at 1137.

I was working in accordance with a supervisor approved disability accommodation. On June 13, 2011 the agency was notified of my application for a formal disability accommodation. After my June 30, 2011 response to the charges, Union Representatives communicates that the Agency will terminate me

24

immediately if I take the matter to the EEO Office or refuse to sign.  Subsequently, I was served an NDA requiring resignation, suspension and other adverse actions.

At all times after June 7, 2011, I remained under the threat of termination and threat of immediate termination pursuant to the NDA.   (Document 30-4, Exhibit 1: pg. 31, pg. 18 at d.).  By using Mr. Gutschow, an employee who was not my supervisor, to propose my removal, the Agency's action does not have a solid or substantial basis in personnel practice or principle and is a violation of my statutory and constitutional due process, equal protection and property rights.  (M. Roskos v United States, 549 F.2d 1386 (Fed Cir. 1977).

Email documentary evidence shows my work schedule was supervisor approved and work products superior, which included after-hours work for missed time.  (Document 30-4, Exhibit 1: pgs. 23-27, pg. 46); see Document 30-4, Exhibit 1: pg. 103-104 (email from supervisor noting lunch break is "one-hour"); Document 30-4, Exhibit 1: pgs. 105-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137; cf. Document 30-4, Exhibit 1: pg. 31 (proposed removal noting that the agency believed my schedule included a "30-minute non-paid lunch period).  The Notice also shows the agency knew or should have known it charged me with misconduct for at least 62 hours of "legally allowable break-time and a minimum of 40 hours working on a project for the Management Official months before the misconduct charges were file."  Dated emails to the Management Official, my supervisors and his testimony before the MSPB, reveals that he received email messages from me "all times of the day and night".  That was because of status

updates I provided on projects he assigned to me. (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC120486B1_2018_8_07_13-1.MP3 at 57:20-1:02:10).

In Crane v. Dep't of the Air Force, 240 F. App'x 415, 418 (Fed. Cir. 2007) ("Precedent generally requires notice to an employee when previously condoned activity is no longer condoned, giving the employee the opportunity to conform to any new rules."

See also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins., 463 U.S. 29, 43 (1983) (agency's decision is arbitrary and capricious when it "entirely failed to consider an important aspect of the problem," and a "reviewing court should not attempt itself to make up for such deficiencies").  The failure of the Board to consider all relevant evidence and then to deny a hearing on my non-frivolous claim that the agency knew its adverse personnel actions were unjustified and that the Settlement Agreement was therefore coerced is an abuse of discretion, violation of administrative law; constitutional law of due process, prior restraint, property rights, equal protection; and federal employment law.  5 U.S.C. 7513(d); 5 U.S.C. 7702(b)(2).

As an initial matter with the issue below, the implementation of a sign-in procedure in April 2011 and ended in May 2011 is immaterial. The Agency has not provided a policy document related to a mandatory sign-in that all employees were subjected or communication from Dale Reed about the implementation and

discontinuance of a sign-in procedure other than the automated sign-in from scanning badges upon entering and exiting the facility. The Agency has yet to identify the efficiency for which a personnel action was taken in reference to this improper manual sign-in procedure. The Agency was required to discuss and assess with me the accommodations I required for the disability it had been informed I was suffering from. It was done with an improper motive to "run up" misconduct specifications. I repeatedly asked supervisor Reed the reason for the new sign-in procedure. (Document 30-4, Exhibit 1: pg. 25 at 10). Once my supervisor provided an explanation for the new procedure, I started to use the sign-in procedure until discontinued the following month. The explanation Dale Reed gave was, "it was to get you". Just as here, my supervisor Dale Reed method of communication was primarily verbally for all employee related matters. That is how he operated. That is how we operated. Improper motive to further antagonize considering I had filed the prior pending EEOC actions is relevant in determining whether an agency's action is of improper motive, unwarranted and arbitrary, capricious, and an abuse of discretion. It is all three and further hostility. Further, the Agency is required by 7513(d) to explain how an adverse action taken for not using a sign-in log that was not an organization-wide requirement, policy or procedure and which ended one month or so later while awaiting an explanation promotes the efficiency of the service. No explanation exists. It was to target me and this is racially disparate and retaliatory treatment.

In Whitmore, past antagonistic actions are relevant to the instant personnel actions no matter how far in the past.  (Whitmore v. Dep't of Labor, No. 11-3084 (Fed. Cir (2012)).

## IV.   CONCLUSION

From the beginning my claims have been clear.  The agency threatened to terminate me without cause and I was thus coerced into an unlawful nondisclosure agreement to prevent me from filing an EEO claim on the instant case, forced to retire, a 30-day suspension without pay, dispose of pending EEOC actions that were already before the EEOC Baltimore Field Office and suffered other adverse actions.

There is no basis in law, statute, or logic for the Government's position that the Board's jurisdictional determination is final.  *Perry v. MSPB,* 582 U.S. Dkt. 16-399, Rep. Br. for Pet. pg. 2.  The MSPB "typed" its dismissal in the instant case "jurisdictional" even though it expressly ruled on the merits of the complaint that Plaintiff (petitioner) had validly released his claims through a settlement.  But it is the settlement and coercion that are two of the key fact issues in the case upon which no hearing was held, which was required by law.

Just because the MSPB labels a dismissal jurisdictional does not mean that it is jurisdictional.  The law focuses on substance, not labels.  See *Fry v. Napoleon Comm. Schs.,* 137 S. Ct. 743, 755 (2017); *Perry v. MSPB,* 582 U.S. Dkt. 16-399, Rep. Br. for Pet. pg. 21).  I indeed had an accommodation and had emails after the 5:00pm hour honorably holding up my end of the verbal accommodation bargain with my supervisor Dale Reed to make up time I missed during the day, primarily

because of the excruciating hip and groin pain.  The Bureau was notified.  Charging a suspect with murder does not make her guilty.  The failed attempts to settle those EEO and EEOC disputes were no coincidence.  The Agency intended no settlement to be reached.

As a result, I brought a "[c]ase[] of discrimination subject to the provisions" of the CSRA, id § 7703(b)(2) and may seek review of the Board's disposition of that case in district court.  See Elgin v. Department of Treasury, 132 S. Ct. 2126, 2134 (2012).  The MSPB took jurisdiction of the instant case twice.  This court cannot then rule to sustain MSPB's ruling for lack of jurisdiction.

Therefore, as a matter of law and statute the court must deny Defendant's cross motion for summary judgment and motion to dismiss with prejudice and grant Plaintiff's motion for summary judgment and immediate reinstatement and/or proceed with de novo review of the facts on his civil service claim for a ruling and subsequently proceed to a trial de novo of Plaintiff's discrimination claims in accordance with the CSRA and applicable anti-discrimination laws.

Respectfully submitted,

Anthony W. Perry

Anthony W. Perry

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

---

ANTHONY W. PERRY, Pro se :
5907 Croom Station Rd. :
Upper Marlboro, MD 20772 :
(301) 928-2305 :
:
        Plaintiff, :
                              :Civil Action No: 17-cv-1932 (TSC)
      v. :
:
WILBUR ROSS, SECRETARY :
U.S. DEPARTMENT OF COMMERCE :
1401 Constitution Ave., N.W. :
Washington, D.C. 20230, :
:
        et al. :
:
        Defendants. :

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED

## MATERIAL FACTS

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7, Plaintiff

files this response to defendant's statement of undisputed material facts in support

of plaintiff's opposition to defendant's cross motion for summary judgment and

motion for dismissal with prejudice.

**Response to Defendant's Response to Plaintiff's Statement of Material Facts**

Plaintiff agrees with Defendant and accepts as undisputed paragraphs numbered: 1-10, 18,20, 22-24, 26-32, 34-35, 37, 41, 51-53, 55-63, 66-69, 71-72, 76-77, 79 accepted as undisputed.

Defendant did not cite the evidentiary record, present affidavits or other legal artifacts to support his dispute of plaintiff's material facts paragraph numbered: 11-17,19, 21, 25, 33, 36, 38-40, 42-50, 54, 64-65, 70, 73-75, 78 are disputed by defendant. As a result, plaintiff asks the court to accept each of plaintiff's material facts disputed by defendant as admitted.

Plaintiff's statement of facts in genuine dispute in support of plaintiff's opposition to defendant's cross motion for summary judgment and dismissal with prejudice is submitted with his memorandum in opposition.

Respectfully submitted,

Anthony W. Perry

**Plaintiff's Response To Defendant's Statement of Undisputed Material Facts**

Plaintiff hereby responds to Defendant's statement of undisputed material facts.

1. Mr. Perry began his employment with the government in approximately July 1983. *See* Exhibit ("Ex. 1"), MSPB Form 185-1, Appeal Form—Appellant and Agency Information, at 1.

**Plaintiff's Response: Disputed.** Plaintiff began his employment with the government in June of 1974 as a co-operative education biological aid at the Beltsville Agricultural Research Center. Office of Personnel Management Official Personnel File.

2. At the time of his termination, he had been serving as a GS-14, Supervisory Information Technology Specialist for the Bureau of the Census, United States Department of Commerce ("agency"). *See* Ex. 1, MSPB Form 185-1, Appeal Form—Appellant and Agency Information, at 1; Ex. 2, Complaint Response, at 1-2.

**Plaintiff's Response: Disputed.** At the time of my termination, I was serving as a GS-14 IT Specialist. See Document 30-4, Exhibit 1 Page 171 at 1.

3. Around 2007, Mr. Perry began to suffer from osteoarthritis. *See* Ex. 3, Response to Proposal to Remove, at 2.

**Plaintiff's Response: Admit in part.** See Document 30-4, Exhibit 1 Page 54-102.

4. To alleviate his condition, Mr. Berry began to walk and stretch while at work. *See* Ex. 3, Response to Proposal to Remove, at 2.

**Plaintiff's Response: Admit in part.** I also received physical therapy and

3

chiropractic treatment. See Document 30-4, Exhibit 1 Page 54-102.

5. Mr. Perry informed his supervisor of his need to walk and stretch but did not request a formal accommodation until June 2011, which was granted in November 2011. *See id.*; Ex. 4, Notice of Approval of Request for Accommodation, at 1. **Plaintiff's Response: Admit in part.** Supervisor Dale Reed approved an accommodation and flexible work schedule but did not advise me to get a formal disability accommodation. My supervisor Dale Reed was notified June 21, 2011 that I had requested a formal disability accommodation on June 13, 2011. See Document 30-4, Exhibit 1 Page 101-102. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

6. Between 2007 and 2011, Mr. Perry filed six Equal Employment Opportunity ("EEO") complaints that were consolidated into three EEO Commission ("EEOC") complaints. *See* Ex. 5, MSPB Form 185-2, Appeal of Agency Personnel Action or Decision (Non-retirement), at 3; Ex. 6, Settlement Agreement, at 1.

**Plaintiff's Response: Disputed in part.** Between 2007 and 2011 I filed seven EEO Commission complaints six of which were consolidated into three EEOC complaints. See Defendant's Cross Motion Ex. 8.

7. In his complaints, Mr. Perry alleged the agency denied him the ability to compete for promotions, denied him requests for training, provided unfair performance evaluations and subjected him to a hostile work environment. *See* Ex. 5, MSPB Form 185-2, Appeal of Agency Personnel Action or Decision (Non-

retirement), at 3-4; Ex. 7, MSPB Form 185-4A, Claims of Mistakes in Procedures or Violations of Law, at 3; Ex. 8, Motion in Opposition for Summary Judgment Without Hearing, at 1-2.

**Plaintiff's Response: Admit in part.** I alleged agency denied my ability to compete on merit due to discrimination by using non-competitive promotions of less qualified Caucasian employees to GS-15 and filling temporary GS-15 vacancies in the division primarily with Caucasian or less qualified employees, in addition to the agency discriminated against me on the basis or my race (Black) and age (DOB 01/29/1956) and also retaliated against me and maintained a hostile work environment for engaging in protected activity. See Document 30-4, Exhibit 1 Pages 7, 138-154, 158-167, 169-181, 195-207.

8. As of May 2011, each of Mr. Perry's complaints were pending. Ex. 8, Motion in Opposition for Summary Judgment Without Hearing, at 1-2.

**Plaintiff's Response: Admit in part.** As of May 2011, my complaints were in negotiation (consideration) for a settlements in the cases. See Document 30-4, Exhibit 1 Pages 7, 138-154, 158-167, 169-181, 195-207.

9. On April 13, 2011, Mr. Perry's supervisor informed his entire staff, including Mr. Perry, that as of April 18, 2011, they would be required to sign the attendance log every work day. *See* Ex. 9, Proposed Removal, at 10.

**Plaintiff's Response: Disputed.** I was working under a supervisory disability accommodation. Dale Reed had provided me approval of a flexible accommodation and schedule. That email did not apply to me. I was forced to reveal the extent of

my disability in my effort to stop the termination.  See Document 30-4, Exhibit 1: Page 54-102;  (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 )

10. Mr. Perry failed to sign for his first 15 work days after April 18 even though his supervisor reiterated the directive when it was clear he was failing to comply. *See* Ex. 9, Proposed Removal, at 10-11.

**Plaintiff's Response:**  Disputed. I was and had been working in accordance to a supervisory approved schedule and accommodation.  That email did not concern me.   See Document 30-4, Exhibit 1 Page 54-102;  (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

11. Mr. Perry's rationale for refusing to sign the attendance log was that his supervisor did not give him an explanation for why it was required. *See* Ex. 3, Response to Proposal to Remove, at 3.

**Plaintiff's Response:** Disputed. I was and had been working in accordance to a supervisory approved schedule and accommodation.  That email did not concern me.   See Document 30-4, Exhibit 1 Page 54-102;  (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

12. On June 7, 2011, the agency proposed to remove Mr. Perry from his position. *See* Ex. 9, Proposed Removal, at 1.

**Plaintiff's Response:** Disputed in part.  On June 7, 2011, Daren Gutschow, an

employee who was not my supervisor and had never been my supervisor proposed to remove me from the federal government. See Document 35 Ex. 9, Proposed Removal, at 1.

13. In proposing to remove Mr. Perry, the agency alleged that his time and attendance reports and badge trace monitor reports showed that between October 5, 2010, and April 21, 2011, he was absent at times where his time and attendance said he was working on 62 separate occasions. *See* Ex. 9, Proposed Removal, at 1-10. **Plaintiff's Response: Disputed.** I had been working in accordance to a supervisory approved schedule and accommodation that also allowed me to make up time in the evenings after 5:00pm in the office, on my day off, weekends, and at home. I provided email work status to my supervisors as needed. The management official testified at the MSPB of receiving email from me all times of the day and night. 62 hours charged in the specifications is legal break time all employees receive. See Document 30-4, Exhibit 1 Page 103. (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 45.300 46:20); (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

14. As a result of his absences from work, Mr. Perry was paid for approximately 133 hours and 35 minutes he had not worked, which equated to approximately $8,965. *See* Ex. 9, Proposed Removal, at 11.

**Plaintiff's Response: Disputed.** I had been working in accordance to a supervisory approved schedule and accommodation that also allowed me to make up time in the evenings after 5:00pm, on my day off, weekends, and at home. I provided email work status to my supervisors as needed. The management official testified at the MSPB of receiving email from me all times of the day and night. 62 hours charged in the specifications is legal break time all employees receive. See Document 30-4 Exhibit 1 Page 103. (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 45.300 46:20); (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

15. The proposal to remove Mr. Perry was also based on his refusal to use the attendance log on 15 separate occasions. *See* Ex. 9, Proposed Removal, at 10-11.

**Plaintiff's Response: Disputed.** I had been working under a supervisory approved schedule and accommodation. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

16. On June 15, 2011, Mr. Perry met with Terryne Murphy, the deciding official on his proposed removal. *See* Ex. 10, Memorandum for Record.

**Plaintiff's Response: Admit in part.** I met with Murphy on several occasions. I worked in accordance to a supervisor approved schedule and accommodation. The proposal to remove was coercive. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49,

pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

17. During the meeting with Ms. Murphy, Mr. Perry admitted fault for not being absent and stated he would contest the specifications in the proposal. *See* Ex. 10, Memorandum for Record.

**Plaintiff's Response: Disputed in part.** I met with Ms Murphy on several occasions and believe I told Ms. Murphy I would contest the specifications. The proposal to remove was coercive. I worked in accordance to a supervisor approved schedule and accommodation. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

18. During the meeting with Ms. Murphy, Mr. Perry stated he would agree to a settlement where, if he were allowed to work till he was eligible to retire at 30 years, he would pay back approximately $9,000 and terminate his complaint. *See* Ex. 10, Memorandum for Record.

**Plaintiff's Response: Disputed in part.** During the meeting with Ms. Murphy I believe I stated that I would contest the specifications. I worked in accordance to a supervisor approved schedule and accommodation. The proposal to remove was coercive. I had no plans to resign or retire. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

19. On June 22, 2012, Mr. Perry sent an e-mail to Ms. Murphy asking if he

could stay with the agency till May 30, 2012, at which point he would "walk out of [the agency] with dignity." *See* Ex. 11, Plaintiff's Email to Terryne Murphy.

**Plaintiff's Response: Admit in part.** I worked in accordance to a supervisor approved schedule. The proposal to remove was coercive. I had no plans to resign or retire. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

20. On June 30, 2011, Mr. Perry, along with his designated representative, Johnny Zuagar, who served as President of Mr. Perry's union, submitted his written reply to the charges. *See* Ex. 3, Response to Proposal to Remove, at 1.

**Plaintiff's Response: Disputed.** I submitted my response to the charges to Terryne Murphy. I had no plans to resign or retire. The proposal to remove was coercive. I worked in accordance to a supervisor approved schedule and accommodation. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

21. Instead of contesting each of the factual specifications as outlined in the charges, Mr. Perry attempted to provide justifications for each specification. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response: Disputed.** I was working in accordance to my supervisor approved schedule and accommodation. The agency has not submitted contrary testimony from my supervisor stating otherwise. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs.

130-132, pgs. 135-137 ).

22. The primary reason Mr. Perry was absent for the majority of the specifications was that he was walking outside to stretch. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response:** Disputed. I worked according to my supervisory approved schedule and accommodation. More than 60 hours of the specifications is legal break time all employees receive. (Plaintiff's Memorandum in Opposition); (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

23. Mr. Perry stated he believed he could engage in such activity based on an "informal accommodation" agreement with his supervisor but conceded he did not have a formal reasonable accommodation. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response:** Disputed. I was working in accordance to a supervisor approved accommodation and schedule. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

24. For many specifications, Mr. Perry spent time outside to deal with stress from his pending EEO claims. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response:** Disputed. I spent some time outside for relief from the stress. I worked in accordance with a supervisor approved schedule. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121,

126, 128, pgs. 130-132, pgs. 135-137 ).

25. For at least 15 specifications, Mr. Perry stated the problem stemmed from a series of miscommunications with his supervisor or mistakes he made in the leave request process. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response:** Disputed. At least 62 hours of the specifications is legal break time all employees receive. I worked in accordance to a supervisor approved schedule and accommodation. (Document 30-4 Exhibit 1 Page 103 of 4240; (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

26. Notably, at the end of his response to the proposed removal, Mr. Perry proposed a settlement with the agency wherein he would accept a 14 day suspension in lieu of removal. *See* Ex. 3, Response to Proposal to Remove, at 5.

**Plaintiff's Response:** Disputed. I took the charges seriously which have yet to be substantiated. I was working in accordance to a supervisor approved schedule and accommodation which the agency disregarded. A charge is not substantiation. I offered a 14 day suspension as an amicably if it was shown that I had done something wrong to put the situation to rest. The proposal to remove was coercive. (See Defendant's Cross Motion Ex. 3 at VI.); (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

27. On July 25, 2011, Mr. Perry's representative, Johnny Zuagar, received a counter-offer to the proposed removal. *See* Ex. 12, MSPB Initial Decision (Dec. 23,

2013), at 2.

**Plaintiff's Response: Disputed.** Per the Ben Felder email dated July 26, 2011, management representative Ronda J. Brown, deciding official Terryne F. Murphy and Human Resources employee Stacy Chalmers received an email with terms and conditions of my employment that states Mr. Zuagar was informed of the Human Resources action to terminate my employment. Mr. Zuagar testified at the MSPB that the email was not shared with me. See Plaintiff's Motion for Summary Judgment, Exhibit 1 (Document 30-4) Page 342; Johnny Zuagar MSPB Hearing testimony.

28. Mr. Perry and his representative thereafter engaged in settlement discussions that resulted in a global settlement of his pending complaints. *See* Ex. 12, MSPB Initial Decision (Dec. 23, 2013), at 3, 9.

**Plaintiff's Response: Disputed.** This was not a voluntary agreement. The validity of the settlement and retaliation is at the heart of the dispute on the merits in this complaint. I was working in accordance to a supervisory approved schedule and accommodation. I received no consideration. The proposal and the agreement are coercive. This nondisclosure agreement is a prohibited personnel practice in violation of 5 U.S.C. § 2302 (b)(13) and EEOC Guidance 915.002 on nonwaivable rights including Age Discrimination in Employment Act, Rehabilitation, Title VII and the retaliation provisions of each. (Civil Service Reform Act of 1978, *Kloeckner v. Solis,* 568 U.S., at 50, 133 S. Ct. 596; *Perry v. MSPB*, S. Ct. 133 1986-1987 (2017); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002);

13

*Burlington Northern & Santa Fe RailwayCo. v. White*, 548 U.S. 53 (2006); *Perry v. MSPB*, 133 S. Ct. 1986 (2017).

29. The agreement called for Mr. Perry to accept a 30-day suspension in lieu of removal, retire no later than September 4, 2012, and withdraw his pending complaints, among other things. *See* Ex. 6, Settlement Agreement, at 1-2.

**Plaintiff's Response: Disputed.** This was not a voluntary agreement. The validity of the settlement and retaliation is at the heart of the dispute on the merits in this complaint.   I was working in accordance with a supervisory disability accommodation.   I received no consideration for the agency's global coercion agreement. This nondisclosure agreement is a prohibited personnel practice in violation of 5 U.S.C. § 2302 (b)(13).  The Bureau violated EEOC Guidance 915.002 on nonwaivable rights including Age Discrimination in Employment Act, Rehabilitation, Title VII and the retaliation provisions of each.    Civil Service Reform Act of 1978, 5 U.S.C. §§ 7702,  *Kloeckner v. Solis,* 568 U.S., at 50, 133 S. Ct. 596; *Perry v. MSPB*, S. Ct. 133 1986-1987 (2017); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Burlington Northern & Santa Fe RailwayCo. v. White*, 548 U.S. 53 (2006);  *Perry v. MSPB*, 133 S. Ct. 1986 (2017).

30. Under Paragraph 2c of the agreement, Mr. Perry agreed to "voluntarily waive all appeal rights he has and not to litigate in any forum, judicial or administrative, any claims arising from a removal." *See* Ex. 6, Settlement Agreement, at 2; *id.* at 3, Paragraph 2h.

**Plaintiff's Response: Disputed.** This was not a voluntary agreement.  The validity

of the agreement is at issue. A "facially voluntary action by the employee may actually be involuntary," however, if coerced by the agency. *Garcia*, 437 F.3d at 1324; *Perry v. MSPB*, 133 S. Ct. 1986 (2017).

31. Mr. Perry indicated that he had read and understood the "entire agreement … especially the provisions relating to the withdrawal of the formal complaint(s), thereby foreclosing further litigation on the matters raised in the formal complaint(s), and the waiver set forth in Paragraph 2." *See* Ex. 6, Settlement Agreement, at 5, Paragraph 8.

**Plaintiff's Response:** Disputed. This was not a voluntary agreement. The validity of the agreement is at issue. A "facially voluntary action by the employee may actually be involuntary," however, if coerced by the agency. *Garcia*, 437 F.3d at 1324; *Perry v. MSPB*, 133 S. Ct. 1986 (2017); Zuagar testimony before MSPB.

32. The agreement provided that Mr. Perry had 21 days to consider its terms and, significantly, he indicated "signed th[e] Agreement voluntarily and was in no way coerced." *See* Ex. 6, Settlement Agreement, at 5, Paragraph 8.

**Plaintiff's Response:** Disputed. The validity of the agreement is at issue and was involuntary. A "facially voluntary action by the employee may actually be involuntary," however, if coerced by the agency. *Garcia*, 437 F.3d at 1324. Zuagar testimony before MSPB; *Perry v. MSPB*, 133 S. Ct. 1986 (2017).

33. On August 22, 2011, the settlement agreement was submitted to the EEOC administrative judge before whom Mr. Perry's complaints were pending. *See* Ex. 13, Submission of Settlement Agreement to EEOC.

**Plaintiff's Response:** Admit in part. The management representative faxed the agency coerced forfeiture of EEOC claims, retirement and suspension contained in the document to the EEOC . The validity of the agreement is at issue and violates 5 U.S.C 2302 (b)(13). *Perry v. MSPB*, 133 S. Ct. 1986 (2017)

34. On August 26, 2011, the agency issued its decision on the proposed removal. *See* Ex. 14, Proposed Removal Decision.

**Plaintiff's Response:** Admit in part.   On August 26, 2011, I was informed of Deciding Official Terryne F. Murphy's decision.  It is nearly identical to the July 26, 2011 Human Resources decision email from Benjamin Felder to Terryne F. Murphy before the Deciding Official made her decision.  The agency was informed I working in accordance to a supervisor approved schedule and accommodation. (Document 30-4 Exhibit 1 Page 342). (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

35. Pursuant to the settlement agreement, the agency mitigated the removal to a 30 day suspension. *See* Ex. 14, Proposed Removal Decision, at 1-2.

**Plaintiff's Response:** Disputed.  The validity of the settlement and retaliation is at the heart of the dispute on the merits of the instant complaint. The Deciding Official assisted drafting and imposition of the nondisclosure agreement containing the mandatory retirement or resignation and completion of a coerced prior signed SF52 that was threatened to be submitted if I did not retire by Sept. 3, 2012. The Deciding Official's testimony at the MSPB that she assisted in drafting the agency

nondisclosure agreement has been removed from the MSPB provided recording of the hearing.   At all times I worked in accordance to a supervisor approved schedule and accommodation.  (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

36. On March 29, 2012, Mr. Perry applied for voluntary early retirement from the agency, which was approved by the agency on April 2, 2012. *See* Ex. 15, Application for Voluntary Early Retirement and/or Voluntary Separation Incentive Program.

**Plaintiff's Response:  Disputed.**  The validity of the settlement agreement and retaliation that coerced my retirement and suspension is at the heart of the dispute on the merits of the instant complaint and was involuntary.  The CSRA limits the Board's ability to consider "an individual's status under any retirement established by or under Federal statute []or any election made by such individual under any such system" in "determining the appealability ... of any case involving a removal." 5 U.S.C. § 7701(j). The July 26, 2011 Human Resources decision email dictated the terms and conditions of my employment.

37. In exchange for retiring, he received $25,000 dollars. *See* Ex. 15, Application for Voluntary Early Retirement and/or Voluntary Separation Incentive Program; Ex. 16, Notice of Personnel Action.

**Plaintiff's Response:  Disputed**   The validity of the settlement and retaliation is at the heart of the dispute of the merits of the instant complaint and was involuntary that coerced my retirement and suspension.   The CSRA limits the Board's ability

to consider "an individual's status under any retirement established by or under Federal statute []or any election made by such individual under any such system" in "determining the appealability ... of any case involving a removal." 5 U.S.C. 7701(j). The option was available at the time I submitted my retirement paperwork nearly a year after the settlement required my suspension and retirement.

Respectfully submitted,

Anthony W. Perry, Plaintiff

IN THEUNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

---

ANTHONY W. PERRY, Pro se      :
5907 Croom Station Rd.      :
Upper Marlboro, MD  20772      :
(301) 928-2305      :
     :
     Plaintiff,      :
     :Civil Action No: 17-cv-1932 (TSC)
     v.      :
     :
WILBUR ROSS, SECRETARY      :
U.S. DEPARTMENT OF COMMERCE      :
1401 Constitution Ave., N.W.      :
Washington, D.C.  20230,      :
     :
     et al.      :
     :
     Defendants.      :

---

## PLAINTIFF'S STATEMENT OF FACTS IN GENUINE DISPUTE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND DISMISAL OF THIS COMPLAINT WITH PREJUDICE

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7, I, Plaintiff Anthony W. Perry respectfully file this statement of facts in genuine dispute in support of plaintiff's opposition to defendant's cross motion for summary judgment and motion to dismiss with summary judgment.  Dismissal of plaintiff's claims before discovery is disfavored by the courts.  By standing order of the court, defendant has not filed an answer to this complaint.

This mixed case appeal, a case of discrimination, is remanded for further proceedings consistent with the court's opinion in Perry v. MSPB, S. Ct. 137 1975 (2017), Kloeckner v. Solis, S. Ct. 133 568 (2012), the 1978 Civil Service Reform Act, and applicable anti-discrimination statutes.

The defendant has asked the court to apply "pre-Perry" precedent, other than the 1978 CSRA and Kloeckner, to render a decision in the instant case. That cannot be right. The court should deny defendant's cross motion and motion for dismissal with prejudice and grant plaintiff's motion for summary judgment and reinstatement as a matter of law and on the facts and proceed with plaintiff's trial de novo on his disability claims. If the court denies plaintiff's motion for summary judgment, it should proceed directly to a review of the administrative record for a decision on the civil service issue after which it should proceed with a trial de novo on the discrimination issues pursuant to the applicable sections of the 1978 CSRA.

2

## Plaintiff's Statement Of Facts In Genuine Dispute

1.  It is the validity of the settlement that is at the center of the dispute on the merits of the instant complaint.  (Perry v. MSPB, S. Ct. 133 1986 (2017).

2.  At the MSPB hearing on the issue of misrepresentation, the Deciding Official Terryne Murphy testified that she assisted with the drafting of the NDA. (Document 30-4 Exhibit 1 Pg. 349 at E).

3.  I have been acknowledged and awarded for my superior federal service. (Document 30-4 Exhibit 1 pgs. 193-194).

4.  My additional significant qualifications are identified here.  (Document 30-4 Exhibit 1 pg. 196 at "My Academic Qualifications; Am. Cmpl. ¶¶ 31, 32, 33, 34, 35).

5.  Out of the 30 Department-wide employees selected for the 2009 18-month Executive Leadership Development class (ELDP), I was voted by my peers the honor to represent the class with a speech at the graduation ceremony in the Commerce Auditorium.  (Document 30-4 Exhibit 1 pg. 303 at ¶ 4).

6.  Before any settlement negotiations ever took place, the Census Bureau was notified in my response to the Proposal to Remove me from the federal service that I was working in accordance to a schedule approved by my supervisor.  See (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Document 30-4 Exhibit 1 pg. 46 at I); (Am. Cmpl. ¶¶ 83, 84, 85):

> • *31 of the hours Perry was charged with not working were attributable to his supervisor's policy to have one-hour lunches, and therefore constituted "legally allowable break-time every employee receives." Document 30-4 Exhibit 1 pgs. 26-27 at 14, 15; see Document 30-4 Exhibit 1 pg. 103 (email*

3

*from supervisor noting that lunch break is "one hour"); cf. Document 30-4 Exhibit 1 pg. 31 at "Background" (proposed removal noting that agency believed Perry's schedule included "a 30-minute non-paid lunch period mid-day").*

*• Perry did substantial work from home outside normal working hours. See Document 30-4 Exhibit 1 pg. 104 (email referring to "at least 40 hours working on" a project "at home"); Document 30-4 Exhibit 1 pgs. 105-137 (emails showing Perry working after normal office hours). Indeed, Perry calculated "more than 158 hours worked outside of the official 7:30 am to 5:00 pm schedule," Document 30-4 Exhibit 1 pgs. 238-239 at 1., which alone would surpass the 133 hours and 35 minutes the agency claimed he did not work, Document 30-4 Exhibit 1 pg. 41 at "Considerations".*

7.  All Federal employees are allowed two 15-minute daily breaks and are legally allowed "rest period" every employee receives." (OPM Federal Personnel Manual; Census Bureau Employee Handbook).

8.  Since approximately 2007, I had worked under a disability accommodation provided by my supervisor Dale Reed. That schedule allowed me to make up missed time or complete outstanding projects after hours. (Document 30-4, Exhibit 1: pg. 26 at 14, 15; pg. 27 at 17, 18; pg. 28 at 20; pgs. 23-27; pgs. 45-49; pgs. 103-107; pgs. 110-113; pgs. 115-117; pgs. 121, 126, 128; pgs. 130-132; pgs. 135-137; pgs. 54-102).

9.  The charges for pay for work not performed does not account for the time I exited the building on days I worked after 5:00 pm. (Document 30-4, Exhibit 1: pg. 26 at 14, 15; pg. 27 at 17, 18; pg. 28 at 20; pgs. 23-27; pgs. 45-49; pgs. 103-107; pgs. 110-113; pgs. 115-117; pgs. 121, 126, 128; pgs. 130-132; pgs. 135-137; pgs. 31-42).

10. There is no testimony or documents in the entire record that Agency Officials objected to my supervisor approved work schedule prior to June 7, 2011. (Document 30-4, Exhibit 1: pgs. 3-424).

4

11. On June 7, 2011 Darren Gutschow, an employee who was not my supervisor, authored and had me served with a proposal to remove me from the federal service that included the threat of immediate termination. (Document 30-4, Exhibit 1: pgs. 31-44, pg. 346 at d).

12. On July 26, 2011, nearly one month before a decision by the Deciding Official, the Agency Human Resources Division had prepared to take adverse personnel actions against me. (Document 30-4, Exhibit 1: pg. 342).

> *From:*   *Benjamin T Felder/HRD/HQ/BOC*
> *To:*   *Ronda J Brown/POL/HQ/BOC@BOC*
> *Cc:*   *Terryne F Murphy/ISSRO/HQ/BOC@BOC, Stacy Chalmers/HRD/HQ/BOC@BOC*
>
> *Date:*   *Tuesday, July 26, 2011 07:37AM*
> *Subject:*   *AP Settlement*
>
> *FYI - I presented the proposed terms for settlement to Johnny Zuagar yesterday. He advised that he would talk to AP and get back to me. Hopefully, I will know something or have a counter-offer by the end of this week. I will let you know as soon as I have something. These were the terms offered:*
>
> *1. Agree to retire/resign by NLT May 30, 2011. (nonnegotiable)*
> *2. Agree not to apply for or accept any future positions with the BOC. (nonnegotiable)*
> *3. Agree not to engage in any further misconduct. (nonnegotiable)*
> *4. Accept a 60-day suspension.*
> *5. Accept a reassignment to an already identified area.*
> *6. Accept a demotion to a non-supervisory GS-13 position.*
> *7. Withdraw all pending complaints/cases against the Agency. (nonnegotiable)*
> *8. Agree not to file a claim against the Agency concerning this matter. (nonnegotiable)*

13. Johnny Zuagar testified at the MSPB hearing that he told me the agency was going to terminate me immediately if I contested the charges or went to the EEOC.

(Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-3.MP3 at 44:20-46:00).

14. The procedure imposed on me by the NDA gag/agreement is not in accordance to procedure stated in the Notice of Removal. (Document 30-4, Exhibit 1: pgs. 31-43).

15. The Removal Notice, the July 26, 2011 HR email, the nondisclosure gag document and personnel action within it, and the Deciding Official's decision document are materially adverse personnel actions. (Document 30-4, Exhibit 1: pgs. 31-43; pgs.52-53; pgs. 357-361 Box 45; 5 U.S.C. §§ 7512 & 7513(d)).

16. The NDA included the clause 2(b), " … in the event Complainant has not retired by the close of business, September 4, 2012, Complaint will do this by completing Part E of the Standard Form 52 attached to this agreement and submitting this completed form to the Agency at the same time that he submits this Agreement with his signatures.  Complainant agrees that the reason given for his resignation will not be adverse or hostile to the Agency", thus imposing my resignation or retirement based on still unsubstantiated charges of misconduct and prior to a decision to my response of charges of misconduct. (Document 30-4, Exhibit 1: pgs. 17-18); (Document 30-6, Exhibit 3 pgs. 22-25 at 3a, b., c.; pgs. 26-27).

17. At all times after the proposed removal, I worked under the threat of immediate termination pursuant to clause 2(d), stating " … If the Agency determines in its sole discretion that Complainant has engaged in any acts of

misconduct during the time period established in this paragraph, Complainant will be subject to immediate removal without any right to reply. ...". (Document 30-4, Exhibit 1: pg. 18 at d).

18. Tyra D. Smith approved a unilateral change to my supervisory status creating a change in the terms and conditions of my employment. (5 U.S.C. 2302 (b); (Document 30-4, Exhibit 1: pgs. 369-371 Box 7, 15, 45).

19. This instant complaint is also a complaint of prohibited personnel practices including "taking or failing to take any other personnel action that would violate any law, rule, or regulation implementing or directly concerning merit system principles." (5 U.S.C §§ 2302 (b)(1) (A),(B),(C),(D); 5 U.S.C. 2302 (b)(8), (b)(9)(A)(i) and (ii), (b)(12), (b)(13); (Document 30-4, Exhibit 1: pg. 14); (Document 30-6, Exhibit 3 pgs. 25-29 at D, E); (Whitmore v. Dep't of Labor, Fed. Cir. 2011-3084 (2012).

20. Each item here in 5 U.S.C. §§ 2302(a)(A)(iii), iv, ix, xi, xii is a personnel action. (5 U.S.C § 2302).

21. I repeatedly requested the management official Brian McGrath to reassign me into another work area. (Document 30-4, Exhibit 1: pgs. 182-188, 192).

22. As part of the NDA, I was "reassigned to the position of Information Technology Specialist, GS-14, with no supervisory status, title or duties", as a punitive act, under the Deciding Official Terryne Murphy. (Document 30-4, Exhibit 1: pg. 19 at 3.c).

23. Thomas Meerholz, Patricia Musselman, and Dale Reed repeatedly engaged in discriminatory, hostile and retaliatory actions against me that were pending on June 7, 2011. (Document 30-4, Exhibit 1: pgs. 138-154, 170-181, 292-302, 308-310).

24. The Agency unilaterally rejected an agreement reached during the Alternative Dispute Resolution Process stating only that it disagreed with the agreement that was reached during the negotiations. (Document 30-4, Exhibit 1: pg. 167).

25. Courts have consistently recognized that individuals possess a non-waivable right to file charges with the EEOC. (Document 30-6 Exhibit 3: pg. 27); (Document 30-7 Exhibit 4 pgs. 4-5).

26. I attempted to withdraw my retirement before the effective date which was rejected by Terryne Murphy. (Document 30-4, Exhibit 1: pg. 50).

27. A constructive suspension or removal for "the efficiency of the service" is a violation of due process if the adverse actions taken are not compliant with 5 U.S.C. 7513(d) and the Agency cannot prove the efficiencies for which the action was taken. (Anthony W. Perry v. MSPB, D.C. Cir. Dkt. 14-1155 Resp. Oral Arg., electronic submission filename DCCircuitAppealOralArgument/DCCircuit_PERRYvMSPB14-1155 at 29:35 - 31:48); 5 U.S.C. § 7513(d)).

28. The Deciding Officials decision does not provide the specific efficiencies for which the constructive actions were taken. (Document 30-4, Exhibit 1: pgs. 52-53; 5 U.S.C § 7513(d).)

29. This NDA violates basic contract law and is a prohibited personnel practice. (Am. Cmpl. ¶ 55); (5 U.S.C. § 2302(b)(9)(A)(ii) and (b)(12) and (b)(13)).

30. Agreements that attempt to bar individuals from filing a charge or assisting in a Commission investigation run afoul of the anti-retaliation provisions because they impose a penalty upon those who are entitled to engage in protected activity under one or more of the statutes enforced by the Commission. (Document 30-6, Exhibit 3: pg. 24 at c); (Document 30-7, Exhibit 4: pg. 3 ¶ 4; pg. 4 at B).

31. No consideration was received by me above and beyond what I was entitled for the purposes of entering into the Agency NDA. (Document 30-4, Exhibit 1: pgs. 16-22).

32. I had completed nearly 30 years of government service with an honorable and "clean disciplinary record". (Document 30-4, Exhibit 1: pg. 49 at V. 1, 2; pgs. 193-194).

33. In footnote 3 of the Agency's Response To Jurisdictional Order, Attorney Adam Chandler threatens the below personnel action "that if the Agreement was somehow vitiated, Appellant would still be facing a removal from the Federal service upon return to duty. This is a threatened personnel action and a prohibited personnel practice. (Document 30-4, Exhibit 1: pg. 215 footnote 3); 5 U.S.C. 2302(b) (8), (9)(A)(ii)).

Respectfully submitted,

Anthony W. Perry, Plaintiff

9