IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| ANTHONY W. PERRY, Pro se<br>5907 Croom Station Rd.<br>Upper Marlboro, MD  20772<br>(301) 928-2305 | :<br>:<br>:<br>:<br>: |
| Plaintiff, | :<br>: |
| v. | :Civil Action No: 17-cv-1932 (TSC)<br>:<br>: |
| WILBUR ROSS, SECRETARY<br>U.S. DEPARTMENT OF COMMERCE<br>1401 Constitution Ave., N.W.<br>Washington, D.C.  20230, | :<br>:<br>:<br>:<br>: |
| et al. | :<br>: |
| Defendants. | :<br>: |

**PLAINTIFF'S STATEMENT OF FACTS IN GENUINE DISPUTE IN SUPPORT**

**OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS MOTION FOR**

**SUMMARY JUDGMENT AND DISMISAL OF THIS COMPLAINT WITH**

**PREJUDICE**

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7, I, Plaintiff Anthony W. Perry respectfully file this statement of facts in genuine dispute in support of plaintiff's opposition to defendant's cross motion for summary judgment and motion to dismiss with summary judgment.  Dismissal of plaintiff's claims before discovery is disfavored by the courts.  By standing order of the court, defendant has not filed an answer to this complaint.

RECEIVED

APR 0 4 2019

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

This mixed case appeal, a case of discrimination, is remanded for further proceedings consistent with the court's opinion in Perry v. MSPB, S. Ct. 137 1975 (2017), Kloeckner v. Solis, S. Ct. 133 568 (2012), the 1978 Civil Service Reform Act, and applicable anti-discrimination statutes.

The defendant has asked the court to apply "pre-Perry" precedent, other than the 1978 CSRA and Kloeckner, to render a decision in the instant case. That cannot be right. The court should deny defendant's cross motion and motion for dismissal with prejudice and grant plaintiff's motion for summary judgment and reinstatement as a matter of law and on the facts and proceed with plaintiff's trial de novo on his disability claims. If the court denies plaintiff's motion for summary judgment, it should proceed directly to a review of the administrative record for a decision on the civil service issue after which it should proceed with a trial de novo on the discrimination issues pursuant to the applicable sections of the 1978 CSRA.

## Plaintiff's Statement Of Facts In Genuine Dispute

1.  It is the validity of the settlement that is at the center of the dispute on the merits of the instant complaint.  (Perry v. MSPB, S. Ct. 133 1986 (2017).

2.  At the MSPB hearing on the issue of misrepresentation, the Deciding Official Terryne Murphy testified that she assisted with the drafting of the NDA. (Document 30-4 Exhibit 1 Pg. 349 at E).

3.  I have been acknowledged and awarded for my superior federal service. (Document 30-4 Exhibit 1 pgs. 193-194).

4.  My additional significant qualifications are identified here.  (Document 30-4 Exhibit 1 pg. 196 at "My Academic Qualifications; Am. Cmpl. ¶¶ 31, 32, 33, 34, 35).

5.  Out of the 30 Department-wide employees selected for the 2009 18-month Executive Leadership Development class (ELDP), I was voted by my peers the honor to represent the class with a speech at the graduation ceremony in the Commerce Auditorium.  (Document 30-4 Exhibit 1 pg. 303 at ¶ 4).

6.  Before any settlement negotiations ever took place, the Census Bureau was notified in my response to the Proposal to Remove me from the federal service that I was working in accordance to a schedule approved by my supervisor.  See (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 );  (Document 30-4 Exhibit 1 pg. 46 at I); (Am. Cmpl. ¶¶ 83, 84, 85):

> • *31 of the hours Perry was charged with not working were attributable to his supervisor's policy to have one-hour lunches, and therefore constituted "legally allowable break-time every employee receives." Document 30-4 Exhibit 1 pgs. 26-27 at 14, 15; see Document 30-4 Exhibit 1 pg. 103 (email*

*from supervisor noting that lunch break is "one hour"); cf. Document 30-4 Exhibit 1 pg. 31 at "Background" (proposed removal noting that agency believed Perry's schedule included "a 30-minute non-paid lunch period mid-day").*

• *Perry did substantial work from home outside normal working hours. See Document 30-4 Exhibit 1 pg. 104 (email referring to "at least 40 hours working on" a project "at home"); Document 30-4 Exhibit 1 pgs. 105-137 (emails showing Perry working after normal office hours). Indeed, Perry calculated "more than 158 hours worked outside of the official 7:30 am to 5:00 pm schedule," Document 30-4 Exhibit 1 pgs. 238-239 at l., which alone would surpass the 133 hours and 35 minutes the agency claimed he did not work, Document 30-4 Exhibit 1 pg. 41 at "Considerations".*

7.  All Federal employees are allowed two 15-minute daily breaks and are legally allowed "rest period" every employee receives." (OPM Federal Personnel Manual; Census Bureau Employee Handbook).

8.  Since approximately 2007, I had worked under a disability accommodation provided by my supervisor Dale Reed. That schedule allowed me to make up missed time or complete outstanding projects after hours. (Document 30-4, Exhibit 1: pg. 26 at 14, 15; pg. 27 at 17, 18; pg. 28 at 20; pgs. 23-27; pgs. 45-49; pgs. 103-107; pgs. 110-113; pgs. 115-117; pgs. 121, 126, 128; pgs. 130-132; pgs. 135-137; pgs. 54-102).

9.  The charges for pay for work not performed does not account for the time I exited the building on days I worked after 5:00 pm. (Document 30-4, Exhibit 1: pg. 26 at 14, 15; pg. 27 at 17, 18; pg. 28 at 20; pgs. 23-27; pgs. 45-49; pgs. 103-107; pgs. 110-113; pgs. 115-117; pgs. 121, 126, 128; pgs. 130-132; pgs. 135-137; pgs. 31-42).

10. There is no testimony or documents in the entire record that Agency Officials objected to my supervisor approved work schedule prior to June 7, 2011. (Document 30-4, Exhibit 1: pgs. 3-424).

4

11. On June 7, 2011 Darren Gutschow, an employee who was not my supervisor, authored and had me served with a proposal to remove me from the federal service that included the threat of immediate termination. (Document 30-4, Exhibit 1: pgs. 31-44, pg. 346 at d).

12. On July 26, 2011, nearly one month before a decision by the Deciding Official, the Agency Human Resources Division had prepared to take adverse personnel actions against me. (Document 30-4, Exhibit 1: pg. 342).

> *From:*  *Benjamin T Felder/HRD/HQ/BOC*
> *To:*  *Ronda J Brown/POL/HQ/BOC@BOC*
> *Cc:*  *Terryne F Murphy/ISSRO/HQ/BOC@BOC, Stacy Chalmers/HRD/HQ/BOC@BOC*
>
> *Date:*  *Tuesday, July 26, 2011 07:37AM*
> *Subject:*  *AP Settlement*
>
> *FYI - I presented the proposed terms for settlement to Johnny Zuagar yesterday. He advised that he would talk to AP and get back to me. Hopefully, I will know something or have a counter-offer by the end of this week. I will let you know as soon as I have something. These were the terms offered:*
>
> *1. Agree to retire/resign by NLT May 30, 2011. (nonnegotiable)*
> *2. Agree not to apply for or accept any future positions with the BOC. (nonnegotiable)*
> *3. Agree not to engage in any further misconduct. (nonnegotiable)*
> *4. Accept a 60-day suspension.*
> *5. Accept a reassignment to an already identified area.*
> *6. Accept a demotion to a non-supervisory GS-13 position.*
> *7. Withdraw all pending complaints/cases against the Agency. (nonnegotiable)*
> *8. Agree not to file a claim against the Agency concerning this matter. (nonnegotiable)*

13. Johnny Zuagar testified at the MSPB hearing that he told me the agency was going to terminate me immediately if I contested the charges or went to the EEOC.

(Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/DC120486B1_2018-09-19_DC_120486B1_8_07_13-3.MP3 at 44:20-46:00).

14. The procedure imposed on me by the NDA gag/agreement is not in accordance to procedure stated in the Notice of Removal.  (Document 30-4, Exhibit 1: pgs. 31-43).

15. The Removal Notice, the July 26, 2011 HR email, the nondisclosure gag document and personnel action within it, and the Deciding Official's decision document are materially adverse personnel actions.  (Document 30-4, Exhibit 1: pgs. 31-43; pgs.52-53; pgs. 357-361 Box 45; 5 U.S.C. §§ 7512 & 7513(d)).

16. The NDA included the clause 2(b), " ... in the event Complainant has not retired by the close of business, September 4, 2012, Complaint will do this by completing Part E of the Standard Form 52 attached to this agreement and submitting this completed form to the Agency at the same time that he submits this Agreement with his signatures.  Complainant agrees that the reason given for his resignation will not be adverse or hostile to the Agency", thus imposing my resignation or retirement based on still unsubstantiated charges of misconduct and prior to a decision to my response of charges of misconduct.  (Document 30-4, Exhibit 1: pgs. 17-18);  (Document 30-6, Exhibit 3 pgs. 22-25 at 3a, b., c.; pgs. 26-27).

17. At all times after the proposed removal, I worked under the threat of immediate termination pursuant to clause 2(d), stating " ... If the Agency determines in its sole discretion that Complainant has engaged in any acts of

misconduct during the time period established in this paragraph, Complainant will be subject to immediate removal without any right to reply. ...". (Document 30-4, Exhibit 1: pg. 18 at d).

18. Tyra D. Smith approved a unilateral change to my supervisory status creating a change in the terms and conditions of my employment. (5 U.S.C. 2302 (b); (Document 30-4, Exhibit 1: pgs. 369-371 Box 7, 15, 45).

19. This instant complaint is also a complaint of prohibited personnel practices including "taking or failing to take any other personnel action that would violate any law, rule, or regulation implementing or directly concerning merit system principles." (5 U.S.C §§ 2302 (b)(1) (A),(B),(C),(D); 5 U.S.C. 2302 (b)(8), (b)(9)(A)(i) and (ii), (b)(12), (b)(13); (Document 30-4, Exhibit 1: pg. 14); (Document 30-6, Exhibit 3 pgs. 25-29 at D, E); (Whitmore v. Dep't of Labor, Fed. Cir. 2011-3084 (2012).

20. Each item here in 5 U.S.C. §§ 2302(a)(A)(iii), iv, ix, xi, xii is a personnel action. (5 U.S.C § 2302).

21. I repeatedly requested the management official Brian McGrath to reassign me into another work area. (Document 30-4, Exhibit 1: pgs. 182-188, 192).

22. As part of the NDA, I was "reassigned to the position of Information Technology Specialist, GS-14, with no supervisory status, title or duties", as a punitive act, under the Deciding Official Terryne Murphy. (Document 30-4, Exhibit 1: pg. 19 at 3.c).

23. Thomas Meerholz, Patricia Musselman, and Dale Reed repeatedly engaged in discriminatory, hostile and retaliatory actions against me that were pending on June 7, 2011.  (Document 30-4, Exhibit 1: pgs. 138-154, 170-181, 292-302, 308-310).

24. The Agency unilaterally rejected an agreement reached during the Alternative Dispute Resolution Process stating only that it disagreed with the agreement that was reached during the negotiations.  (Document 30-4, Exhibit 1: pg. 167).

25. Courts have consistently recognized that individuals possess a non-waivable right to file charges with the EEOC. (Document 30-6  Exhibit 3: pg. 27); (Document 30-7 Exhibit 4 pgs. 4-5).

26. I attempted to withdraw my retirement before the effective date which was rejected by Terryne Murphy.  (Document 30-4, Exhibit 1: pg. 50).

27. A constructive suspension or removal for "the efficiency of the service" is a violation of due process if the adverse actions taken are not compliant with 5 U.S.C. 7513(d) and the Agency cannot prove the efficiencies for which the action was taken. (Anthony W. Perry v. MSPB, D.C. Cir. Dkt. 14-1155 Resp. Oral Arg., electronic submission filename DCCircuitAppealOralArgument/DCCircuit_PERRYvMSPB14-1155 at 29:35 - 31:48); 5 U.S.C. § 7513(d)).

28. The Deciding Officials decision does not provide the specific efficiencies for which the constructive actions were taken. (Document 30-4, Exhibit 1: pgs. 52-53; 5 U.S.C § 7513(d).)

29. This NDA violates basic contract law and is a prohibited personnel practice. (Am. Cmpl. ¶ 55); (5 U.S.C. § 2302(b)(9)(A)(ii) and (b)(12) and (b)(13)).

30. Agreements that attempt to bar individuals from filing a charge or assisting in a Commission investigation run afoul of the anti-retaliation provisions because they impose a penalty upon those who are entitled to engage in protected activity under one or more of the statutes enforced by the Commission. (Document 30-6, Exhibit 3: pg. 24 at c); (Document 30-7, Exhibit 4: pg. 3 ¶ 4; pg. 4 at B).

31. No consideration was received by me above and beyond what I was entitled for the purposes of entering into the Agency NDA. (Document 30-4, Exhibit 1: pgs. 16-22).

32. I had completed nearly 30 years of government service with an honorable and "clean disciplinary record". (Document 30-4, Exhibit 1: pg. 49 at V. 1, 2; pgs. 193-194).

33. In footnote 3 of the Agency's Response To Jurisdictional Order, Attorney Adam Chandler threatens the below personnel action "that if the Agreement was somehow vitiated, Appellant would still be facing a removal from the Federal service upon return to duty. This is a threatened personnel action and a prohibited personnel practice. (Document 30-4, Exhibit 1: pg. 215 footnote 3); 5 U.S.C. 2302(b) (8), (9)(A)(ii)).

Respectfully submitted,

Anthony W. Perry, Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

ANTHONY W. PERRY, Pro se :
5907 Croom Station Rd. :
Upper Marlboro, MD  20772 :
(301) 928-2305 :
:
Plaintiff, :
:Civil Action No: 17-cv-1932 (TSC)
v. :
:
WILBUR ROSS, SECRETARY :
U.S. DEPARTMENT OF COMMERCE :
1401 Constitution Ave., N.W. :
Washington, D.C.  20230, :
:
et al. :
:
Defendants. :

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED

## MATERIAL FACTS

Pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7, Plaintiff files this response to defendant's statement of undisputed material facts in support of plaintiff's opposition to defendant's cross motion for summary judgment and motion for dismissal with prejudice.


RECEIVED
APR 0 4 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**Response to Defendant's Response to Plaintiff's Statement of Material Facts**

Plaintiff agrees with Defendant and accepts as undisputed paragraphs numbered: 1-10, 18,20, 22-24, 26-32, 34-35, 37, 41, 51-53, 55-63, 66-69, 71-72, 76-77, 79 accepted as undisputed.

Defendant did not cite the evidentiary record, present affidavits or other legal artifacts to support his dispute of plaintiff's material facts paragraph numbered: 11-17,19, 21, 25, 33, 36, 38-40, 42-50, 54, 64-65, 70, 73-75, 78 are disputed by defendant. As a result, plaintiff asks the court to accept each of plaintiff's material facts disputed by defendant as admitted.

Plaintiff's statement of facts in genuine dispute in support of plaintiff's opposition to defendant's cross motion for summary judgment and dismissal with prejudice is submitted with his memorandum in opposition.

Respectfully submitted,

Anthony W. Perry

**Plaintiff's Response To Defendant's Statement of Undisputed Material Facts**

Plaintiff hereby responds to Defendant's statement of undisputed material facts.

1. Mr. Perry began his employment with the government in approximately July 1983. *See* Exhibit ("Ex. 1"), MSPB Form 185-1, Appeal Form—Appellant and Agency Information, at 1.

**Plaintiff's Response: Disputed.** Plaintiff began his employment with the government in June of 1974 as a co-operative education biological aid at the Beltsville Agricultural Research Center. Office of Personnel Management Official Personnel File.

2. At the time of his termination, he had been serving as a GS-14, Supervisory Information Technology Specialist for the Bureau of the Census, United States Department of Commerce ("agency"). *See* Ex. 1, MSPB Form 185-1, Appeal Form—Appellant and Agency Information, at 1; Ex. 2, Complaint Response, at 1-2.

**Plaintiff's Response: Disputed.** At the time of my termination, I was serving as a GS-14 IT Specialist. See Document 30-4, Exhibit 1 Page 171 at 1.

3. Around 2007, Mr. Perry began to suffer from osteoarthritis. *See* Ex. 3, Response to Proposal to Remove, at 2.

**Plaintiff's Response: Admit in part.** See Document 30-4, Exhibit 1 Page 54-102.

4. To alleviate his condition, Mr. Berry began to walk and stretch while at work. *See* Ex. 3, Response to Proposal to Remove, at 2.

**Plaintiff's Response: Admit in part.** I also received physical therapy and

3

chiropractic treatment.  See Document 30-4, Exhibit 1 Page 54-102.

5.  Mr. Perry informed his supervisor of his need to walk and stretch but did not request a formal accommodation until June 2011, which was granted in November 2011. *See id.*; Ex. 4, Notice of Approval of Request for Accommodation, at 1.  **Plaintiff's Response: Admit in part.**  Supervisor Dale Reed approved an accommodation and flexible work schedule but did not advise me to get a formal disability accommodation. My supervisor Dale Reed was notified June 21, 2011 that I had requested a formal disability accommodation on June 13, 2011.  See Document 30-4, Exhibit 1 Page 101-102.  (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

6.  Between 2007 and 2011, Mr. Perry filed six Equal Employment Opportunity ("EEO") complaints that were consolidated into three EEO Commission ("EEOC") complaints. *See* Ex. 5, MSPB Form 185-2, Appeal of Agency Personnel Action or Decision (Non-retirement), at 3; Ex. 6, Settlement Agreement, at 1.

**Plaintiff's Response:  Disputed in part.**  Between 2007 and 2011 I filed seven EEO Commission complaints six of which were consolidated into three EEOC complaints.  See Defendant's Cross Motion Ex. 8.

7.  In his complaints, Mr. Perry alleged the agency denied him the ability to compete for promotions, denied him requests for training, provided unfair performance evaluations and subjected him to a hostile work environment. *See* Ex. 5, MSPB Form 185-2, Appeal of Agency Personnel Action or Decision (Non-

4

retirement), at 3-4; Ex. 7, MSPB Form 185-4A, Claims of Mistakes in Procedures or Violations of Law, at 3; Ex. 8, Motion in Opposition for Summary Judgment Without Hearing, at 1-2.

**Plaintiff's Response: Admit in part.** I alleged agency denied my ability to compete on merit due to discrimination by using non-competitive promotions of less qualified Caucasian employees to GS-15 and filling temporary GS-15 vacancies in the division primarily with Caucasian or less qualified employees, in addition to the agency discriminated against me on the basis or my race (Black) and age (DOB 01/29/1956) and also retaliated against me and maintained a hostile work environment for engaging in protected activity.   See Document 30-4, Exhibit 1 Pages 7, 138-154, 158-167, 169-181, 195-207.

8.   As of May 2011, each of Mr. Perry's complaints were pending. Ex. 8, Motion in Opposition for Summary Judgment Without Hearing, at 1-2.

**Plaintiff's Response: Admit in part.**   As of May 2011, my complaints were in negotiation (consideration) for a settlements in the cases.   See Document 30-4, Exhibit 1 Pages 7, 138-154, 158-167, 169-181, 195-207.

9.   On April 13, 2011, Mr. Perry's supervisor informed his entire staff, including Mr. Perry, that as of April 18, 2011, they would be required to sign the attendance log every work day. *See* Ex. 9, Proposed Removal, at 10.

**Plaintiff's Response: Disputed.**   I was working under a supervisory disability accommodation.  Dale Reed had provided me approval of a flexible accommodation and  schedule.  That email did not apply to me.  I was forced to reveal the extent of

my disability in my effort to stop the termination.  See Document 30-4, Exhibit 1:

Page 54-102;   (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs.

110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 )

10. Mr. Perry failed to sign for his first 15 work days after April 18 even though

his supervisor reiterated the directive when it was clear he was failing to comply.

*See* Ex. 9, Proposed Removal, at 10-11.

**Plaintiff's Response:  Disputed.** I was and had been working in accordance to a

supervisory approved schedule and accommodation.  That email did not concern

me.     See Document 30-4, Exhibit 1 Page 54-102;  (Document 30-4, Exhibit 1 pgs.

23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs.

130-132, pgs. 135-137 ).

11. Mr. Perry's rationale for refusing to sign the attendance log was that his

supervisor did not give him an explanation for why it was required. *See* Ex. 3,

Response to Proposal to Remove, at 3.

**Plaintiff's Response: Disputed.** I was and had been working in accordance to a

supervisory approved schedule and accommodation.  That email did not concern

me.     See Document 30-4, Exhibit 1 Page 54-102;  (Document 30-4, Exhibit 1 pgs.

23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs.

130-132, pgs. 135-137 ).

12. On June 7, 2011, the agency proposed to remove Mr. Perry from his position.

*See* Ex. 9, Proposed Removal, at 1.

**Plaintiff's Response: Disputed in part.**  On June 7, 2011, Daren Gutschow, an

employee who was not my supervisor and had never been my supervisor proposed to remove me from the federal government. See Document 35 Ex. 9, Proposed Removal, at 1.

13. In proposing to remove Mr. Perry, the agency alleged that his time and attendance reports and badge trace monitor reports showed that between October 5, 2010, and April 21, 2011, he was absent at times where his time and attendance said he was working on 62 separate occasions. *See* Ex. 9, Proposed Removal, at 1-10. **Plaintiff's Response: Disputed.** I had been working in accordance to a supervisory approved schedule and accommodation that also allowed me to make up time in the evenings after 5:00pm in the office, on my day off, weekends, and at home. I provided email work status to my supervisors as needed. The management official testified at the MSPB of receiving email from me all times of the day and night. 62 hours charged in the specifications is legal break time all employees receive. See Document 30-4, Exhibit 1 Page 103. (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/ DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 45.300 46:20); (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

14. As a result of his absences from work, Mr. Perry was paid for approximately 133 hours and 35 minutes he had not worked, which equated to approximately $8,965. *See* Ex. 9, Proposed Removal, at 11.

**Plaintiff's Response: Disputed.** I had been working in accordance to a supervisory approved schedule and accommodation that also allowed me to make up time in the evenings after 5:00pm, on my day off, weekends, and at home. I provided email work status to my supervisors as needed. The management official testified at the MSPB of receiving email from me all times of the day and night. 62 hours charged in the specifications is legal break time all employees receive. See Document 30-4 Exhibit 1 Page 103. (Anthony W. Perry vs. Dep't of Commerce, MSPB Dkt. No. DC-0752-12-0486-B-1, electronic submission of filename MSPBHearingAudioFiles/          DC120486B1_2018-09-19_DC_120486B1_8_07_13-1.MP3 at 45.300 46:20); (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

15. The proposal to remove Mr. Perry was also based on his refusal to use the attendance log on 15 separate occasions. *See* Ex. 9, Proposed Removal, at 10-11.

**Plaintiff's Response: Disputed.** I had been working under a supervisory approved schedule and accommodation. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

16. On June 15, 2011, Mr. Perry met with Terryne Murphy, the deciding official on his proposed removal. *See* Ex. 10, Memorandum for Record.

**Plaintiff's Response: Admit in part.** I met with Murphy on several occasions. I worked in accordance to a supervisor approved schedule and accommodation. The proposal to remove was coercive. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49,

pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

17. During the meeting with Ms. Murphy, Mr. Perry admitted fault for not being absent and stated he would contest the specifications in the proposal. *See* Ex. 10, Memorandum for Record.

**Plaintiff's Response: Disputed in part**. I met with Ms Murphy on several occasions and believe I told Ms. Murphy I would contest the specifications. The proposal to remove was coercive. I worked in accordance to a supervisor approved schedule and accommodation. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

18. During the meeting with Ms. Murphy, Mr. Perry stated he would agree to a settlement where, if he were allowed to work till he was eligible to retire at 30 years, he would pay back approximately $9,000 and terminate his complaint. *See* Ex. 10, Memorandum for Record.

**Plaintiff's Response: Disputed in part**. During the meeting with Ms. Murphy I believe I stated that I would contest the specifications. I worked in accordance to a supervisor approved schedule and accommodation. The proposal to remove was coercive. I had no plans to resign or retire. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

19. On June 22, 2012, Mr. Perry sent an e-mail to Ms. Murphy asking if he

could stay with the agency till May 30, 2012, at which point he would "walk out of [the agency] with dignity." *See* Ex. 11, Plaintiff's Email to Terryne Murphy.

**Plaintiff's Response: Admit in part.** I worked in accordance to a supervisor approved schedule. The proposal to remove was coercive. I had no plans to resign or retire. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ); (Am. Cmpl. ¶¶ 83, 84, 85).

20. On June 30, 2011, Mr. Perry, along with his designated representative, Johnny Zuagar, who served as President of Mr. Perry's union, submitted his written reply to the charges. *See* Ex. 3, Response to Proposal to Remove, at 1.

**Plaintiff's Response: Disputed.** I submitted my response to the charges to Terryne Murphy. I had no plans to resign or retire. The proposal to remove was coercive. I worked in accordance to a supervisor approved schedule and accommodation. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

21. Instead of contesting each of the factual specifications as outlined in the charges, Mr. Perry attempted to provide justifications for each specification. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response: Disputed.** I was working in accordance to my supervisor approved schedule and accommodation. The agency has not submitted contrary testimony from my supervisor stating otherwise. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs.

130-132, pgs. 135-137 ).

22. The primary reason Mr. Perry was absent for the majority of the specifications was that he was walking outside to stretch. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response: Disputed.** I worked according to my supervisory approved schedule and accommodation. More than 60 hours of the specifications is legal break time all employees receive. (Plaintiff's Memorandum in Opposition); (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

23. Mr. Perry stated he believed he could engage in such activity based on an "informal accommodation" agreement with his supervisor but conceded he did not have a formal reasonable accommodation. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response: Disputed.** I was working in accordance to a supervisor approved accommodation and schedule. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

24. For many specifications, Mr. Perry spent time outside to deal with stress from his pending EEO claims. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response: Disputed.** I spent some time outside for relief from the stress. I worked in accordance with a supervisor approved schedule. (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121,

126, 128, pgs. 130-132, pgs. 135-137 ).

25. For at least 15 specifications, Mr. Perry stated the problem stemmed from a series of miscommunications with his supervisor or mistakes he made in the leave request process. *See* Ex. 3, Response to Proposal to Remove, at 2-3.

**Plaintiff's Response: Disputed.** At least 62 hours of the specifications is legal break time all employees receive.  I worked in accordance to a supervisor approved schedule and accommodation.  (Document 30-4 Exhibit 1 Page 103 of 4240; (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

26. Notably, at the end of his response to the proposed removal, Mr. Perry proposed a settlement with the agency wherein he would accept a 14 day suspension in lieu of removal. *See* Ex. 3, Response to Proposal to Remove, at 5.

**Plaintiff's Response: Disputed.** I took the charges seriously which have yet to be substantiated. I was working in accordance to a supervisor approved schedule and accommodation which the agency disregarded. A charge is not substantiation. I offered a 14 day suspension as an amicably if it was shown that I had done something wrong to put the situation to rest. The proposal to remove was coercive. (See Defendant's Cross Motion Ex. 3 at VI.); (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

27. On July 25, 2011, Mr. Perry's representative, Johnny Zuagar, received a counter-offer to the proposed removal. *See* Ex. 12, MSPB Initial Decision (Dec. 23,

2013), at 2.

**Plaintiff's Response: Disputed.** Per the Ben Felder email dated July 26, 2011, management representative Ronda J. Brown, deciding official Terryne F. Murphy and Human Resources employee Stacy Chalmers received an email with terms and conditions of my employment that states Mr. Zuagar was informed of the Human Resources action to terminate my employment. Mr. Zuagar testified at the MSPB that the email was not shared with me.   See Plaintiff's Motion for Summary Judgment, Exhibit 1 (Document 30-4) Page 342;  Johnny Zuagar MSPB Hearing testimony.

28. Mr.   Perry   and   his   representative   thereafter   engaged   in   settlement discussions that resulted in a global settlement of his pending complaints. *See* Ex. 12, MSPB Initial Decision (Dec. 23, 2013), at 3, 9.

**Plaintiff's Response: Disputed.** This was not a voluntary agreement. The validity of the settlement and retaliation is at the heart of the dispute on the merits in this complaint. I was working in accordance to a supervisory approved schedule and accommodation. I received no consideration. The proposal and the agreement are coercive. This nondisclosure agreement is a prohibited personnel practice in violation of 5 U.S.C. § 2302 (b)(13) and EEOC Guidance 915.002 on nonwaivable rights including Age Discrimination in Employment Act, Rehabilitation, Title VII and the retaliation provisions of each.   (Civil Service Reform Act of 1978, *Kloeckner v. Solis,* 568 U.S., at 50, 133 S. Ct. 596; *Perry v. MSPB,* S. Ct. 133 1986-1987 (2017); *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002);

*Burlington Northern & Santa Fe RailwayCo. v. White*, 548 U.S. 53 (2006); *Perry v. MSPB*, 133 S. Ct. 1986 (2017).

29. The agreement called for Mr. Perry to accept a 30-day suspension in lieu of removal, retire no later than September 4, 2012, and withdraw his pending complaints, among other things. *See* Ex. 6, Settlement Agreement, at 1-2.

**Plaintiff's Response: Disputed.** This was not a voluntary agreement. The validity of the settlement and retaliation is at the heart of the dispute on the merits in this complaint. I was working in accordance with a supervisory disability accommodation. I received no consideration for the agency's global coercion agreement. This nondisclosure agreement is a prohibited personnel practice in violation of 5 U.S.C. § 2302 (b)(13). The Bureau violated EEOC Guidance 915.002 on nonwaivable rights including Age Discrimination in Employment Act, Rehabilitation, Title VII and the retaliation provisions of each. Civil Service Reform Act of 1978, 5 U.S.C. §§ 7702, *Kloeckner v. Solis,* 568 U.S., at 50, 133 S. Ct. 596; *Perry v. MSPB,* S. Ct. 133 1986-1987 (2017); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Burlington Northern & Santa Fe RailwayCo. v. White*, 548 U.S. 53 (2006); *Perry v. MSPB*, 133 S. Ct. 1986 (2017).

30. Under Paragraph 2c of the agreement, Mr. Perry agreed to "voluntarily waive all appeal rights he has and not to litigate in any forum, judicial or administrative, any claims arising from a removal." *See* Ex. 6, Settlement Agreement, at 2; *id.* at 3, Paragraph 2h.

**Plaintiff's Response: Disputed.** This was not a voluntary agreement. The validity

of the agreement is at issue. A "facially voluntary action by the employee may actually be involuntary," however, if coerced by the agency. *Garcia*, 437 F.3d at 1324; *Perry v. MSPB*, 133 S. Ct. 1986 (2017).

31. Mr. Perry indicated that he had read and understood the "entire agreement ... especially the provisions relating to the withdrawal of the formal complaint(s), thereby foreclosing further litigation on the matters raised in the formal complaint(s), and the waiver set forth in Paragraph 2." *See* Ex. 6, Settlement Agreement, at 5, Paragraph 8.

**Plaintiff's Response:** **Disputed.** This was not a voluntary agreement. The validity of the agreement is at issue. A "facially voluntary action by the employee may actually be involuntary," however, if coerced by the agency. *Garcia*, 437 F.3d at 1324; *Perry v. MSPB*, 133 S. Ct. 1986 (2017); Zuagar testimony before MSPB.

32. The agreement provided that Mr. Perry had 21 days to consider its terms and, significantly, he indicated "signed th[e] Agreement voluntarily and was in no way coerced." *See* Ex. 6, Settlement Agreement, at 5, Paragraph 8.

**Plaintiff's Response:** **Disputed.** The validity of the agreement is at issue and was involuntary. A "facially voluntary action by the employee may actually be involuntary," however, if coerced by the agency. *Garcia*, 437 F.3d at 1324. Zuagar testimony before MSPB; *Perry v. MSPB*, 133 S. Ct. 1986 (2017).

33. On August 22, 2011, the settlement agreement was submitted to the EEOC administrative judge before whom Mr. Perry's complaints were pending. *See* Ex. 13, Submission of Settlement Agreement to EEOC.

**Plaintiff's Response:   Admit in part.** The management representative faxed the agency coerced forfeiture of EEOC claims, retirement and suspension contained in the document to the EEOC . The validity of the agreement is at issue and violates 5 U.S.C 2302 (b)(13). *Perry v. MSPB*, 133 S. Ct. 1986 (2017)

34. On August 26, 2011, the agency issued its decision on the proposed removal. *See* Ex. 14, Proposed Removal Decision.

**Plaintiff's Response:   Admit in part.**   On August 26, 2011, I was informed of Deciding Official Terryne F. Murphy's decision.  It is nearly identical to the July 26, 2011 Human Resources decision email from Benjamin Felder to Terryne F. Murphy before the Deciding Official made her decision.  The agency was informed I working in accordance to a supervisor approved schedule and accommodation. (Document 30-4 Exhibit 1 Page 342). (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

35. Pursuant to the settlement agreement, the agency mitigated the removal to a 30 day suspension.  *See* Ex. 14, Proposed Removal Decision, at 1-2.

**Plaintiff's Response: Disputed.**  The validity of the settlement and retaliation is at the heart of the dispute on the merits of the instant complaint. The Deciding Official assisted drafting and imposition of the nondisclosure agreement containing the mandatory retirement or resignation and completion of a coerced prior signed SF52 that was threatened to be submitted if I did not retire by Sept. 3, 2012. The Deciding Official's testimony at the MSPB that she assisted in drafting the agency

nondisclosure agreement has been removed from the MSPB provided recording of the hearing.   At all times I worked in accordance to a supervisor approved schedule and accommodation.  (Document 30-4, Exhibit 1 pgs. 23-27, pg. 45-49, pgs. 103-107, pgs. 110-113, pgs. 115-117, pg. 121, 126, 128, pgs. 130-132, pgs. 135-137 ).

36. On March 29, 2012, Mr. Perry applied for voluntary early retirement from the agency, which was approved by the agency on April 2, 2012. *See* Ex. 15, Application for Voluntary Early Retirement and/or Voluntary Separation Incentive Program.

**Plaintiff's Response:**  **Disputed.**   The validity of the settlement agreement and retaliation that coerced my retirement and suspension is at the heart of the dispute on the merits of the instant complaint and was involuntary.  The CSRA limits the Board's ability to consider "an individual's status under any retirement established by or under Federal statute []or any election made by such individual under any such system" in "determining the appealability ... of any case involving a removal." 5 U.S.C. § 7701(j).  The July 26, 2011 Human Resources decision email dictated the terms and conditions of my employment.

37. In exchange for retiring, he received $25,000 dollars. *See* Ex. 15, Application for Voluntary Early Retirement and/or Voluntary Separation Incentive Program; Ex. 16, Notice of Personnel Action.

**Plaintiff's Response:**  **Disputed**   The validity of the settlement and retaliation is at the heart of the dispute of the merits of the instant complaint and was involuntary that coerced my retirement and suspension.   The CSRA limits the Board's ability

to consider "an individual's status under any retirement established by or under Federal statute []or any election made by such individual under any such system" in "determining the appealability ... of any case involving a removal."  5 U.S.C. 7701(j).  The option was available at the time I submitted my retirement paperwork nearly a year after the settlement required my suspension and retirement.

Respectfully submitted,

Anthony W. Perry, Plaintiff

IN THEUNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

ANTHONY W. PERRY, Pro se          :
5907 Croom Station Rd.            :
Upper Marlboro, MD  20772         :
(301) 928-2305                    :
                                  :
        Plaintiff,                :
                                  :Civil Action No: 17-cv-1932 (TSC)
        v.                        :
                                  :
WILBUR ROSS, SECRETARY            :
U.S. DEPARTMENT OF COMMERCE       :
1401 Constitution Ave., N.W.      :
Washington, D.C.  20230,          :
                                  :
        et al.                    :
                Defendants.       :

## PROPOSED ORDER

It is **ORDERED** that Defendant's cross motion and motion for dismissal with prejudice be DENIED as a matter of law; and it is

**FURTHER ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** and it is  **FURTHER ORDERED** that this case will proceed to trial de novo of plaintiff's discrimination claims pursuant to law and statute.

It is so **Ordered** by this Court the _____ day of _____, 2019.

_____
TANYA S. CHUTKAN

United States District Judge