# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:17–cv–01932–TSC
### *Internal Use Only*

PERRY v. ROSS
Assigned to: Judge Tanya S. Chutkan
 Case in other court:  USCA DC, 14–01155
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 09/20/2017
Date Terminated: 09/30/2022
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Petitioner**

**ANTHONY PERRY**                    represented by    **ANTHONY PERRY**
5907 Croom Station Road
Upper Marlboro, MD 20772
3019282305
PRO SE

**James Adam Kraehenbuehl**
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
(202) 237–2727
Fax: 202–237–6131
Email: JKraehenbuehl@BSFLLP.com
*TERMINATED: 05/03/2018*

**Michael J. Gottlieb**
WILLKIE FARR & GALLAGHER, LLP
1875 K Street, NW
Washington, DC 20006
(202) 303–1442
Fax: (202) 303–2442
Email: mgottlieb@willkie.com
*TERMINATED: 05/03/2018*

**Ross P. McSweeney**
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW
Suite 1200
Washington, DC 20006
202–861–6625
Email: rmcsweeney@groom.com
*TERMINATED: 05/03/2018*

V.

**Defendant**

**WILBUR L. ROSS, JR.**
*United States Secretary of Commerce*

represented by **Derek S. Hammond**
DOJ–USAO
601 D Street, N.W.
Washington, DC 20530
(202) 252–2511
Email: derek.hammond@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–2511
Fax: (202) 252–2599
Email: alexander.d.shoaibi@usdoj.gov
*TERMINATED: 07/20/2018*

**Marsha Wellknown Yee**
DOJ–USAO
Civil Division
601 D Street, NW
Washington, DC 20530
(202) 252–2539
Fax: (202) 252–2599
Email: marsha.yee@usdoj.gov
*TERMINATED: 10/15/2018*

**Matthew Evan Kahn**
U.S. DEPARTMENT OF JUSTICE
Fraud Section
1400 New York Ave. NW
Washington, DC 20005
(202) 305–1648
Email: Matthew.Kahn2@usdoj.gov
*TERMINATED: 01/09/2020*

**Defendant**

**MERIT SYSTEMS PROTECTION
BOARD**

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**BRIAN DIGIACOMO**                    represented by    **Derek S. Hammond**
*Professional and Individual Capacity,*                (See above for address)
*United States Department of Commerce*                *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Alexander Daniel Shoaibi**
                                                      (See above for address)
                                                      *TERMINATED: 07/20/2018*

                                                      **Matthew Evan Kahn**
                                                      (See above for address)
                                                      *TERMINATED: 01/09/2020*

**Defendant**

**JOHN GUENTHER**                      represented by    **Derek S. Hammond**
*Professional and Individual Capacity,*                (See above for address)
*Legal Office, United States Department*              *LEAD ATTORNEY*
*of Commerce*                                          *ATTORNEY TO BE NOTICED*

                                                      **Alexander Daniel Shoaibi**
                                                      (See above for address)
                                                      *TERMINATED: 07/20/2018*

                                                      **Matthew Evan Kahn**
                                                      (See above for address)
                                                      *TERMINATED: 01/09/2020*

**Defendant**

**BARBARA FREDERICKS**                 represented by    **Derek S. Hammond**
*Professional and Individual Capacity,*                (See above for address)
*Legal Office, United States Department*              *LEAD ATTORNEY*
*of Commerce*                                          *ATTORNEY TO BE NOTICED*

                                                      **Alexander Daniel Shoaibi**
                                                      (See above for address)
                                                      *TERMINATED: 07/20/2018*

                                                      **Matthew Evan Kahn**
                                                      (See above for address)
                                                      *TERMINATED: 01/09/2020*

**Defendant**

**UNITED STATES OF AMERICA**           represented by    **Derek S. Hammond**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Alexander Daniel Shoaibi**
                                                      (See above for address)

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**RONDA J. BROWN**                          represented by   **Derek S. Hammond**
*Professional and Individual Capacity,*                      (See above for address)
*Legal Office, United States Department*                     *LEAD ATTORNEY*
*of Commerce*                                                *ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**ADAM CHANDLER**                           represented by   **Derek S. Hammond**
*Professional and Individual Capacity,*                      (See above for address)
*Legal Office, United States Department*                     *LEAD ATTORNEY*
*of Commerce*                                                *ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**DAVID J. SPENCE**                          represented by   **Derek S. Hammond**
*Professional and Individual Capacity,*                      (See above for address)
*Legal Office, United States Department*                     *LEAD ATTORNEY*
*of Commerce*                                                *ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

represented by

**DEBORAH MIRON**
*Professional and Individual Capacity,*
*Chief Administrative Judge, Merit*
*Systems Protection Board*

**Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**DANIEL TURBITT**                     represented by   **Derek S. Hammond**
*Professional and Individual Capacity,*                 (See above for address)
*Administrative Judge, Merit Systems*                   *LEAD ATTORNEY*
*Protection Board*                                      *ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**ROBERT M. GROVES**                   represented by   **Derek S. Hammond**
*Professional and Individual Capacity,*                 (See above for address)
*Former Director BOC, Georgetown*                       *LEAD ATTORNEY*
*University*                                            *ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**THOMAS MESENBOURG**                  represented by   **Derek S. Hammond**
*Professional and Individual Capacity,*                 (See above for address)
*Deputy Director(ret) United States*                    *LEAD ATTORNEY*
*Department of Commerce*                                *ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**BRIAN E. MCGRATH**
*Professional and Individual Capacity,*
*Management Official, Department of*
*Justice Programs*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**TERRYNE F. MURPHY**
*Professional and Individual Capacity,*
*Deciding Official, Department of Justice*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**THOMAS MEERHOLZ**
*Professional and Individual Capacity,*
*Former Chief LTSO, United States*
*Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**DARREN GUTSCHOW**
*Professional and Individual Capacity,*
*United States Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**ROY CASTRO**
*Professional and Individual Capacity,*
*Civil Rights Office, United States*
*Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**TYRA DENT SMITH**
*Professional and Individual Capacity,*
*Census, Human Resources, United States*
*Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**JOHN CUNNINGHAM**
*Professional and Individual Capacity,*
*Human Resources*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**TED JOHNSON**
*Professional and Individual Capacity,*
*Census, Human Resources, United States*
*Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**BENJAMIN FELDER**
*Professional and Individual Capacity,*
*Human Resources, United States*
*Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**STACY CHALMERS**
*Professional and Individual Capacity,*
*Human Resources, United States*
*Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**JOHNNY ZUAGAR**
*Professional and Individual Capacity,*
*AFGE President, United States*
*Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)

*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**DALE R. REED**
*Professional and Individual Capacity,*
*Supervisor LTSO, United States*
*Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

**Defendant**

**PATRICIA MUSSELMAN**
*Professional and Individual Capacity,*
*Division Chief LTSO, United States*
*Department of Commerce*

represented by **Derek S. Hammond**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Daniel Shoaibi**
(See above for address)
*TERMINATED: 07/20/2018*

**Matthew Evan Kahn**
(See above for address)
*TERMINATED: 01/09/2020*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/20/2017 | 1 | | CASE TRANSFERRED IN from the USCA for District of Columbia Circuit. Case Number 14–1155 filed by ANTHONY PERRY. (Attachments: # 1 PETITION FOR REVIEW)(zrdj) (Entered: 09/21/2017) |
| 09/22/2017 | 2 | | ORDER: Status Conference set for 10/13/17 at 11:15 am in Courtroom 2. Joint Status Report and proposed order due 10/10/17 (See order for further details). The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722 and Stephen William Fung, Merit Systems Protection Board, Office of the General Counsel, 1615 M Street, N.W., Washington, D.C. 20419–0002. Signed by Judge Tanya S. Chutkan on 9/22/17. (DJS) (Entered: 09/22/2017) |
| 09/26/2017 | | | Set/Reset Deadlines/Hearings: Joint Status Report and Proposed Briefing Schedule due by 10/10/2017; A Status Conference is set for 10/13/2017 at 11:15 AM in Courtroom 2 before Judge Tanya S. Chutkan. (jth) (Entered: 09/26/2017) |

| 10/10/2017 | [3] | | NOTICE of Appearance by Alexander Daniel Shoaibi on behalf of WILBUR ROSS (Shoaibi, Alexander) (Entered: 10/10/2017) |
|---|---|---|---|
| 10/10/2017 | [4] | | STATUS REPORT by WILBUR ROSS. (Shoaibi, Alexander) (Entered: 10/10/2017) |
| 10/10/2017 | [5] | | Joint STATUS REPORT by ANTHONY PERRY. (td) (Entered: 10/11/2017) |
| 10/13/2017 | [6] | | ORDER: Advising pro se Plaintiff of his obligation to follow the FRCP, Local Rules and orders of the court. Failure to adhere to these rules or orders may result in dismissal of this action. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722 (See order for further details) Signed by Judge Tanya S. Chutkan on 10/13/17. (DJS) (Entered: 10/13/2017) |
| 10/13/2017 | | | MINUTE ORDER: Plaintiff may file an amended complaint by November 13, 2017. Plaintiff is hereby advised that, pursuant to Local Civil Rule 5.1(d), all pleadings shall be double–spaced using 12 point font. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 10/13/17. (DJS) (Entered: 10/13/2017) |
| 10/13/2017 | | | Minute Entry: Status Conference held on 10/13/2017 before Judge Tanya S. Chutkan: Case will refer to Magistrate Judge for mediation purposes. Scheduling Order forthcoming. (Court Reporter Bryan Wayne) (tb) (Entered: 10/15/2017) |
| 10/15/2017 | | | Set/Reset Deadlines: Amended Complaint due by 11/13/2017. (tb) (Entered: 10/15/2017) |
| 10/17/2017 | | | MINUTE ORDER REFERRING CASE to Magistrate Judge for Mediation.. Signed by Judge Tanya S. Chutkan on 10/16/17. (tb) Modified on 10/17/2017 (tb). (Entered: 10/17/2017) |
| 10/17/2017 | | | CASE RANDOMLY REFERRED to Magistrate Judge Deborah A. Robinson for Mediation. (sth) (Entered: 10/17/2017) |
| 11/13/2017 | [7] | | AMENDED COMPLAINT against WILBUR ROSS, MERIT SYSTEMS PROTECTION BOARD, BRIAN DIGIACOMO, JOHN GUENTHER, BARBARA FREDERICKS, UNITED STATES OF AMERICA, RONDA J. BROWN, ADAM CHANDLER, DAVID J. SPENCE, DEBORAH MIRON, DANIEL TURBITT, ROBERT M. GROVES, THOMAS MESENBOURG, BRIAN E. MCGRATH, TERRYNE F. MURPHY, THOMAS MEERHOLZ, DARREN GUTSCHOW, ROY CASTRO, TYRA DENT SMITH, JOHN CUNNINGHAM, TED JOHNSON, BENJAMIN FELDER, STACY CHALMERS, JOHNNY ZUAGAR, DALE R. REED, PATRICIA MUSSELMAN filed by ANTHONY PERRY.(td) (Entered: 11/15/2017) |
| 11/17/2017 | | | Set/Reset Hearings: A Settlement Conference is set for 1/8/2018 at 2:30 PM in Chambers before Magistrate Judge Deborah A. Robinson. (lcdar3) (Entered: 11/17/2017) |
| 12/04/2017 | [8] | | NOTICE of Appearance by Ross P. McSweeney on behalf of ANTHONY PERRY (McSweeney, Ross) (Entered: 12/04/2017) |
| 12/04/2017 | [9] | | |

| | | | |
|---|---|---|---|
| | | | MOTION for Leave to File Exhibits D and E by ANTHONY PERRY (Attachments: # 1 Exhibit)(td) (Entered: 12/06/2017) |
| 12/04/2017 | 10 | | MOTION for Leave to Proceed in forma pauperis by ANTHONY PERRY (td) (Entered: 12/06/2017) |
| 12/05/2017 | | | MINUTE ORDER REFERRING CASE for Mediation: This case shall be reassigned to Judge Harvey for the purpose of mediation. Signed by Judge Tanya S. Chutkan on 12/5/17.(DJS) (Entered: 12/05/2017) |
| 12/05/2017 | | | Case Directly Reassigned to Magistrate Judge G. Michael Harvey for Mediation. Magistrate Judge Deborah A. Robinson is no longer assigned to the case. (zsth) (Entered: 12/08/2017) |
| 12/11/2017 | 11 | | MEDIATION STANDING ORDER. Signed by Magistrate Judge G. Michael Harvey on 12/11/2017. (lcgmh2) (Entered: 12/11/2017) |
| 12/22/2017 | 12 | | LEAVE TO FILE DENIED– Plaintiff's Request to Submit Exhibits A,B, and C Prior to Amended Complaint. "LEAVE TO FILE DENIED without Prejudice" This document is unavailable as the Court denied its filing.. Signed by Judge Tanya S. Chutkan on 12/22/17. (td) (Entered: 12/29/2017) |
| 01/05/2018 | | | Set/Reset Hearings: Settlement Conference set for 3/13/2018 at 10:00 AM in Courtroom 6 before Magistrate Judge G. Michael Harvey. (lcgmh2) (Entered: 01/05/2018) |
| 01/09/2018 | 13 | | Consent MOTION for Extension of Time to *Respond to Amended Complaint* by RONDA J. BROWN, ROY CASTRO, STACY CHALMERS, ADAM CHANDLER, JOHN CUNNINGHAM, TYRA DENT SMITH, BRIAN DIGIACOMO, BENJAMIN FELDER, BARBARA FREDERICKS, ROBERT M. GROVES, JOHN GUENTHER, DARREN GUTSCHOW, TED JOHNSON, BRIAN E. MCGRATH, THOMAS MEERHOLZ, MERIT SYSTEMS PROTECTION BOARD, THOMAS MESENBOURG, DEBORAH MIRON, TERRYNE F. MURPHY, PATRICIA MUSSELMAN, DALE R. REED, WILBUR ROSS, DAVID J. SPENCE, DANIEL TURBITT, UNITED STATES OF AMERICA, JOHNNY ZUAGAR (Shoaibi, Alexander) (Entered: 01/09/2018) |
| 01/16/2018 | | | MINUTE ORDER: In light of the parties' mediation efforts, all deadlines in this action are hereby STAYED until further order of the court, except that the parties shall file a joint status report and proposed order by 4/1/18. Signed by Judge Tanya S. Chutkan on 1/16/18. (DJS) (Entered: 01/16/2018) |
| 01/17/2018 | | | Set/Reset Deadlines: Joint Status Report due by 4/1/2018. (tb) (Entered: 01/17/2018) |
| 02/12/2018 | 14 | | NOTICE of Appearance by Michael J. Gottlieb on behalf of ANTHONY PERRY (Gottlieb, Michael) (Entered: 02/12/2018) |
| 03/08/2018 | | | Set/Reset Hearings: Settlement Conference set for 4/18/2018 at 10:00 AM in Courtroom 6 before Magistrate Judge G. Michael Harvey. (lcgmh2) (Entered: 03/08/2018) |
| 03/15/2018 | 15 | | NOTICE of Appearance by James Adam Kraehenbuehl on behalf of ANTHONY PERRY (Kraehenbuehl, James) (Entered: 03/15/2018) |

| 03/30/2018 | 16 | | Joint STATUS REPORT by ANTHONY PERRY. (td) (Entered: 04/02/2018) |
|---|---|---|---|
| 04/03/2018 | | | MINUTE ORDER: By 5/1/18 the parties shall file a Joint Status Report of no more than two pages. Until such time as the pro bono mediation attorneys withdraw from representing Mr. Perry, he shall refrain from any further filings. Instead, all communications with the court shall be made through pro bono counsel. THE CLERK OF THE COURT SHALL MAIL A COPY OF THIS ORDER TO: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 4/3/18. (DJS) (Entered: 04/03/2018) |
| 04/03/2018 | | | Set/Reset Deadlines: Status Report due by 5/1/2018. (jl) (Entered: 04/04/2018) |
| 04/18/2018 | | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: Settlement Conference held on 4/18/2018. (lcgmh2) (Entered: 04/18/2018) |
| 05/01/2018 | 17 | | Joint STATUS REPORT by RONDA J. BROWN, ROY CASTRO, STACY CHALMERS, ADAM CHANDLER, JOHN CUNNINGHAM, TYRA DENT SMITH, BRIAN DIGIACOMO, BENJAMIN FELDER, BARBARA FREDERICKS, ROBERT M. GROVES, JOHN GUENTHER, DARREN GUTSCHOW, TED JOHNSON, BRIAN E. MCGRATH, THOMAS MEERHOLZ, MERIT SYSTEMS PROTECTION BOARD, THOMAS MESENBOURG, DEBORAH MIRON, TERRYNE F. MURPHY, PATRICIA MUSSELMAN, ANTHONY PERRY, DALE R. REED, WILBUR ROSS, DAVID J. SPENCE, DANIEL TURBITT, UNITED STATES OF AMERICA, JOHNNY ZUAGAR. (Shoaibi, Alexander) (Entered: 05/01/2018) |
| 05/02/2018 | | | MINUTE ORDER: Inasmuch as the court appointed the law firm of BOIES, SCHILLER & FLEXNER LLP (BSF) to represent the plaintiff for the purposes of mediation and mediation has concluded, BSF may file a motion to withdraw by May 7, 2018. The CLERK OF THE COURT SHALL MAIL A COPY OF THIS ORDER TO: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 5/2/18. (DJS) (Entered: 05/02/2018) |
| 05/02/2018 | 18 | | MOTION to Withdraw as Attorney by ANTHONY PERRY (Kraehenbuehl, James) (Entered: 05/02/2018) |
| 05/03/2018 | | | NOTICE OF ERROR re 18 Motion to Withdraw as Attorney; emailed to JKraehenbuehl@BSFLLP.com, cc'd 7 associated attorneys −− The PDF file you docketed contained errors: 1. Please file a Notice of Proposed Order and link it to the motion the order relates to. (ztth, ) (Entered: 05/03/2018) |
| 05/03/2018 | 19 | | NOTICE of Proposed Order by ANTHONY PERRY re 18 MOTION to Withdraw as Attorney (Kraehenbuehl, James) (Entered: 05/03/2018) |
| 05/03/2018 | | | MINUTE ORDER: Granting 18 Motion to Withdraw as Attorney for Plaintiff. Attorneys Ross P. McSweeney; Michael J. Gottlieb and James Adam Kraehenbuehl terminated. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 5/3/18. (DJS) (Entered: 05/03/2018) |
| 05/03/2018 | | | MINUTE ORDER: Having considered the parties' joint status report 17 , it is hereby ordered that the parties shall meet and confer and file a SINGLE |

| | | | |
|---|---|---|---|
| | | | JOINTLY proposed briefing schedule on the issue of whether the MSPB's decision dismissing Plaintiff's appeal for lack of jurisdiction should be affirmed by this court. The court will not accept separate submissions, but to the extent the parties disagree on the proposed schedule, they shall set forth their positions in the joint filing. At this juncture, the court will not accept briefing or argument on the issue of whether the court should require that the Defendant respond to Plaintiff's Amended Complaint. Plaintiff's Motion 9 for Leave to File Exhibits D and E is hereby granted. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 5/3/18. (DJS) (Entered: 05/03/2018) |
| 05/03/2018 | 20 | | NOTICE of filing of Exhibits D and E by ANTHONY PERRY (ztd) (Entered: 05/04/2018) |
| 05/08/2018 | | | MINUTE ORDER: The parties' SINGLE JOINTLY proposed briefing schedule (see 5/3/18 Minute Order) is due 5/25/18. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 5/8/18. (DJS) (Entered: 05/08/2018) |
| 05/09/2018 | | | Set/Reset Deadlines: Joint Proposed Briefing Schedule due by 5/25/2018. (tb) (Entered: 05/09/2018) |
| 05/22/2018 | 21 | | ORDER denying 10 Plaintiff's Motion for Leave to Proceed in forma pauperis. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 5/22/18. (DJS) (Entered: 05/22/2018) |
| 06/11/2018 | 22 | | Consent MOTION for Extension of Time to *File Joint Proposed Briefing Schedule* by RONDA J. BROWN, ROY CASTRO, STACY CHALMERS, ADAM CHANDLER, JOHN CUNNINGHAM, TYRA DENT SMITH, BRIAN DIGIACOMO, BENJAMIN FELDER, BARBARA FREDERICKS, ROBERT M. GROVES, JOHN GUENTHER, DARREN GUTSCHOW, TED JOHNSON, BRIAN E. MCGRATH, THOMAS MEERHOLZ, MERIT SYSTEMS PROTECTION BOARD, THOMAS MESENBOURG, DEBORAH MIRON, TERRYNE F. MURPHY, PATRICIA MUSSELMAN, DALE R. REED, WILBUR ROSS, DAVID J. SPENCE, DANIEL TURBITT, UNITED STATES OF AMERICA, JOHNNY ZUAGAR (Attachments: # 1 Exhibit Joint Proposed Briefing Schedule)(Shoaibi, Alexander) (Entered: 06/11/2018) |
| 06/11/2018 | | | MINUTE ORDER: Granting in part and denying in part 22 Motion for Extension of Deadlines and Motion for Briefing Schedule. The motion is hereby GRANTED with respect to extension of the due date for the proposed schedule. The motion is hereby DENIED with respect to the proposed briefing schedule. The parties shall file another jointly proposed schedule (and proposed order) by June 15, 2018 that does not contemplate submission of simultaneous cross briefs. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 6/11/18. (DJS) (Entered: 06/11/2018) |
| 06/12/2018 | | | Set/Reset Deadlines: Proposed Briefing Schedule due by 6/15/2018. (tb) (Entered: 06/12/2018) |
| 06/15/2018 | 23 | | |

| | | | |
|---|---|---|---|
| | | | JOINT STATUS REPORT by RONDA J. BROWN, ROY CASTRO, STACY CHALMERS, ADAM CHANDLER, JOHN CUNNINGHAM, TYRA DENT SMITH, BRIAN DIGIACOMO, BENJAMIN FELDER, BARBARA FREDERICKS, ROBERT M. GROVES, JOHN GUENTHER, DARREN GUTSCHOW, TED JOHNSON, BRIAN E. MCGRATH, THOMAS MEERHOLZ, MERIT SYSTEMS PROTECTION BOARD, THOMAS MESENBOURG, DEBORAH MIRON, TERRYNE F. MURPHY, PATRICIA MUSSELMAN, ANTHONY PERRY, DALE R. REED, WILBUR ROSS, DAVID J. SPENCE, DANIEL TURBITT, UNITED STATES OF AMERICA, JOHNNY ZUAGAR. (Attachment: # 1 Text of Proposed Order) (tth) (Entered: 06/18/2018) |
| 06/20/2018 | 24 | | SCHEDULING ORDER: Plaintiff shall file his brief by October 15, 2018. Defendant shall file a response by November 16, 2018. Plaintiff shall file a reply by November 30, 2018. Sur–reply briefs will not be permitted absent leave of court. Any failure by the Plaintiff to adhere to the court's Local Rules, the Federal Rules of Civil Procedure, or any orders of this court may result in rulings adverse to the Plaintiff and/or dismissal of this action. (See order for further details). The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722 Signed by Judge Tanya S. Chutkan on 6/20/18. (DJS) (Entered: 06/20/2018) |
| 06/21/2018 | | | Set/Reset Deadlines: Brief due by 10/15/2018. Response due by 11/16/2018. Reply due by 11/30/2018. (tb) (Entered: 06/21/2018) |
| 07/20/2018 | 25 | | NOTICE OF SUBSTITUTION OF COUNSEL by Marsha Wellknown Yee on behalf of WILBUR ROSS Substituting for attorney Alexander Shoaibi (Yee, Marsha) (Entered: 07/20/2018) |
| 10/11/2018 | 26 | | STICKENED FROM THE RECORD PURSUANT TO MINUTE ORDER FILED ON 10/23/18..... MOTION for Summary Judgment by ANTHONY PERRY (ztd) Modified on 10/23/2018 (tb). (Entered: 10/15/2018) |
| 10/15/2018 | 27 | | NOTICE OF SUBSTITUTION OF COUNSEL by Matthew Evan Kahn on behalf of All Defendants Substituting for attorney Marsha Yee (Kahn, Matthew) (Entered: 10/15/2018) |
| 10/23/2018 | | | MINUTE ORDER Plaintiff's Motion for Summary Judgment is hereby STRICKEN because the citations in Plaintiff's supporting statement of facts and brief contain numerous references to documents filed before other tribunals, to which this court has no access (for example: JA195–99; and DC120486B_1_2018_09–19_8_07_13–1MP! at 45:30–46:20). Accordingly, by November 19, 2018, Plaintiff shall refile his summary judgment motion and supporting documents. Each exhibit shall be numbered sequentially, with a cover sheet for each exhibit that contains only the exhibit number. Plaintiff is hereby advised that he may deliver his entire submission (including exhibits) to the Clerk's office in an electronic format. However, Plaintiff is also advised to consult with the Clerk's office prior to preparing any electronic submission for information on the requirements relating to such submissions. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 10/23/18. (DJS) (Entered: 10/23/2018) |
| 10/23/2018 | | | |

| | | | |
|---|---|---|---|
| | | | Set/Reset Deadlines: Summary Judgment motion due by 11/19/2018. (tb) (Entered: 10/23/2018) |
| 11/01/2018 | 28 | | MOTION for Leave to Re−File Summary Judgment Documents by ANTHONY PERRY (ztd) (Entered: 11/05/2018) |
| 11/06/2018 | 29 | | ERRATA to Plaintiff's Brief in support of Plaintiff's Motion for Summary Judgment by ANTHONY PERRY. "LEAVE TO FILE GRANTED" by Judge Tanya Chutkan on 11/6/2018. (td) Modified on 11/8/2018 (znmw). (Entered: 11/07/2018) |
| 11/19/2018 | 30 | | MOTION for Summary Judgment by ANTHONY PERRY (Attachments: # 1 Text of Proposed Order, # 2 Statement of Facts, # 3 Memorandum in Support, # 4 Exhibit 1 Evidence, # 5 Exhibit 2 Managing Federal Employees Performance Issues, # 6 Exhibit 3 OSC PPPL Investigations, # 7 Exhibit 4 Enforcement Guidance, # 8 Exhibit 5 OSC Complaints, # 9 Exhibit 6 EEOC, # 10 Exhibit 7 DrexelAdmit5yrProgram, # 11 Exhibit Notice of Submission of MSPB and D.C. Circuit Court Audio Files)(ztd); (AUDIO CD SUBMITTED TO CHAMBERS) Modified on 11/20/2018 (ztd). (Entered: 11/20/2018) |
| 11/25/2018 | | | MINUTE ORDER finding as moot 28 Motion for Leave to File Documents electronically. Plaintiff's Motion, Memorandum Opinion and Exhibits have been docketed at ECF No. 30. Defendant shall file its Combined Response/Cross Motion by 12/221/18. Plaintiff's Combined Reply/Response due 1/11/19. Defendant's Reply due 2/1/19. The Clerk of the Court shall mail a copy of this order to the Plaintiff at his address of record. Signed by Judge Tanya S. Chutkan on 11/25/18. (DJS) (Entered: 11/25/2018) |
| 11/26/2018 | | | Set/Reset Deadlines: Cross Motion due by 12/21/2018. Response to Cross Motion due by 1/11/2019. Reply to Cross Motions due by 2/1/2019. Response to Motion for Summary Judgment due by 12/21/2018. Reply to Motion for Summary Judgment due by 1/11/2019. (tb) (Entered: 11/26/2018) |
| 12/21/2018 | 31 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 30 MOTION for Summary Judgment by UNITED STATES OF AMERICA (Kahn, Matthew) (Entered: 12/21/2018) |
| 12/21/2018 | | | MINUTE ORDER: Granting 31 Unopposed Motion for Extension of Deadlines. Defendant's Cross Motion/Response due by January 22, 2019. Plaintiff's Response to Cross Motion/Reply due by February 11, 2019. Defendant's Reply due by March 1, 2019. Signed by Judge Tanya S. Chutkan on 12/21/18. (DJS) (Entered: 12/21/2018) |
| 12/21/2018 | | | Set/Reset Deadlines: Cross Motion due by 1/22/2019. Response to Cross Motion due by 2/11/2019. Reply to Cross Motion due by 3/1/2019. Response to Motion for Summary Judgment due by 1/22/2019. Reply to Motion for Summary Judgment due by 2/11/2019. (tb) (Entered: 12/21/2018) |
| 01/22/2019 | 32 | | MOTION to Stay , MOTION for Extension of Time to *in Light of Lapse of Appropriations* by WILBUR ROSS (Attachments: # 1 Text of Proposed Order)(Hudak, Brian) (Entered: 01/22/2019) |
| 01/28/2019 | 33 | | MOTION for Extension of Time to File Response/Reply as to 32 MOTION to Stay MOTION for Extension of Time to *in Light of Lapse of Appropriations* by ANTHONY PERRY (ztd) (Entered: 01/29/2019) |

| 01/30/2019 | | | MINUTE ORDER finding as moot 32 Motion to Stay; granting in part and denying in part 33 Plaintiff's Motion regarding extension of briefing dates. Defendant shall file its response by March 8, 2019. Plaintiff's combined reply/response due March 22, 2019. Defendant's Reply due April 5, 2019. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 1/30/19. (DJS) (Entered: 01/30/2019) |
|---|---|---|---|
| 02/07/2019 | | | Set/Reset Deadlines: Response to Cross Motion due by 3/8/2019. Reply to Cross Motion due by 3/22/2019. Reply due by 4/5/2019. Reply to Motion for Summary Judgment due by 3/22/2019. (tb) Modified on 2/12/2019 (tb). (Entered: 02/07/2019) |
| 03/07/2019 | 34 | | Memorandum in opposition to re 30 MOTION for Summary Judgment filed by WILBUR ROSS. (Attachments: # 1 Table of Contents, # 2 Table of Authorities, # 3 Memorandum in Support, # 4 Statement of Facts, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Text of Proposed Order, # 26 Certificate of Service)(Kahn, Matthew) (Entered: 03/07/2019) |
| 03/07/2019 | 35 | | Cross MOTION for Summary Judgment by WILBUR ROSS (Attachments: # 1 Table of Contents, # 2 Table of Authorities, # 3 Memorandum in Support, # 4 Statement of Facts, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5, # 10 Exhibit 6, # 11 Exhibit 7, # 12 Exhibit 8, # 13 Exhibit 9, # 14 Exhibit 10, # 15 Exhibit 11, # 16 Exhibit 12, # 17 Exhibit 13, # 18 Exhibit 14, # 19 Exhibit 15, # 20 Exhibit 16, # 21 Exhibit 17, # 22 Exhibit 18, # 23 Exhibit 19, # 24 Exhibit 20, # 25 Text of Proposed Order, # 26 Certificate of Service)(Kahn, Matthew) (Entered: 03/07/2019) |
| 03/13/2019 | 36 | | MOTION for Extension of Time to File Response/Reply as to 35 Cross MOTION for Summary Judgment by ANTHONY PERRY (ztd) (Entered: 03/14/2019) |
| 03/14/2019 | | | MINUTE ORDER: Granting 36 Plaintiff's Unopposed Motion for Extension of Deadlines. Plaintiff's response due 4/5/19. Defendant's Reply due 4/19/19. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 3/14/19. (DJS) (Entered: 03/14/2019) |
| 03/15/2019 | | | Set/Reset Deadlines: Response due by 4/5/2019. Reply due by 4/19/2019. (tb) (Entered: 03/15/2019) |
| 04/04/2019 | 37 | | Memorandum in opposition to re 35 Cross MOTION for Summary Judgment filed by ANTHONY PERRY. (Attachments: # 1 Text of Proposed Order)(ztd) (Entered: 04/04/2019) |
| 04/04/2019 | 38 | | MOTION for Leave to File by ANTHONY PERRY (Attachments: # 1 Memorandum in Support, # 2 Memorandum in Support Revised)(ztd) (Entered: 04/05/2019) |
| 04/05/2019 | 39 | | AFFIDAVIT re 37 Memorandum in Opposition by ANTHONY PERRY. (ztd) (Entered: 04/08/2019) |

| 04/19/2019 | 40 | | REPLY to opposition to motion re 35 Cross MOTION for Summary Judgment filed by RONDA J. BROWN, ROY CASTRO, STACY CHALMERS, ADAM CHANDLER, JOHN CUNNINGHAM, TYRA DENT SMITH, BRIAN DIGIACOMO, BENJAMIN FELDER, BARBARA FREDERICKS, ROBERT M. GROVES, JOHN GUENTHER, DARREN GUTSCHOW, TED JOHNSON, BRIAN E. MCGRATH, THOMAS MEERHOLZ, MERIT SYSTEMS PROTECTION BOARD, THOMAS MESENBOURG, DEBORAH MIRON, TERRYNE F. MURPHY, PATRICIA MUSSELMAN, ANTHONY PERRY, DALE R. REED, WILBUR ROSS, DAVID J. SPENCE, DANIEL TURBITT, UNITED STATES OF AMERICA, JOHNNY ZUAGAR. (Kahn, Matthew) (Entered: 04/19/2019) |
|---|---|---|---|
| 05/03/2019 | | | MINUTE ORDER: Briefing is hereby closed on all pending motions. Accordingly, the court hereby orders that—until the parties are notified to the contrary—no further filings will be permitted, absent leave of court and for good cause shown. THE PARTIES' FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN SANCTIONS. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 5/3/19. (DJS) (Entered: 05/03/2019) |
| 10/01/2019 | | | MINUTE ORDER: Plaintiff's Motion 38 for Leave to File a Revised Reply/Response is hereby GRANTED. The Clerk of the Court shall docket ECF No. 38 −2 separately as Plaintiff's Summary Judgment Reply/Response. It is further ordered that the Plaintiff shall deliver to the Clerk's Office by October 18, 2019 a replacement CD containing the audio files referenced in Attachment 11 to Plaintiff's Motion for Summary Judgment. ECF No. 30 −11. The CD previously delivered to the Court has been damaged. The Clerk of the Court shall mail a copy of this order to: ANTHONY PERRY, 5907 Croom Station Road, Upper Marlboro, MD 207722. Signed by Judge Tanya S. Chutkan on 10/1/19. (DJS) (Entered: 10/01/2019) |
| 10/01/2019 | 41 | | Memorandum in opposition to re 35 Cross MOTION for Summary Judgment filed by ANTHONY PERRY. (ztd) (Entered: 10/03/2019) |
| 10/01/2019 | 43 | | Plaintiff's Statement of Facts/Response to Defendants' Statement of Facts filed by ANTHONY PERRY. (zjm) (Entered: 09/29/2022) |
| 10/03/2019 | | | Set/Reset Deadlines: Plaintiff's Replacement CD (as referenced in the Minute Order filed 10/1/2019) due by 10/18/2019. (zjd) (Entered: 10/03/2019) |
| 01/09/2020 | 42 | | NOTICE OF SUBSTITUTION OF COUNSEL by Derek S. Hammond on behalf of All Defendants Substituting for attorney Matthew Kahn (Hammond, Derek) (Entered: 01/09/2020) |
| 09/30/2022 | 44 | | MEMORANDUM AND OPINION re Plaintiff's Motion for Summary Judgment 30 ; Defendant's Motion for Summary Judgment 35 . Signed by Judge Tanya S. Chutkan on 9/30/22. (DJS) (Entered: 09/30/2022) |
| 09/30/2022 | 45 | | ORDER Denying 30 Plaintiff's Motion for Summary Judgment; Granting 35 Defendant's Motion for Summary Judgment. This action is hereby DISMISSED with prejudice. This is a final appealable order. The Clerk of the Court shall mail a copy of this order and Memorandum Opinion to Plaintiff at his address of record. Signed by Judge Tanya S. Chutkan on 9/30/22. (DJS) (Entered: 09/30/2022) |

| 10/26/2022 | 46 | | NOTICE of Proposed Motion for Permanent Injunction and Injunctive Relief Against Dismissal by ANTHONY PERRY. "LEAVE TO FILE GRANTING plaintiff with leave to file a Notice of Proposed Motion for Permanent Injunction and Injunctive Relief" by Judge Tanya S. Chutkan on 10/26/2022 (zjm) (Entered: 10/27/2022) |
| --- | --- | --- | --- |
| 11/21/2022 | 47 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 45 Order on Motion for Summary Judgment, 44 Memorandum & Opinion by ANTHONY PERRY. Fee Status: No Fee Paid. Parties have been notified. (zjm) (Entered: 11/29/2022) |

# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA
**333 Constitution Avenue, NW**
**Washington, DC 20001-2866**
**Phone: 202-216-7000 | Facsimile: 202-219-8530**

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

NOV 2 1 2022

RECEIVED

Plaintiff: Anthony W. Perry

vs.

Civil Action No. 1:17-cv-01932 (TSC)

Docket D.C. Circuit 22-5284

Defendant: Wilbur Ross (Sec. of Comm.) et al

## CIVIL NOTICE OF APPEAL

Notice is hereby given this ___21___ day of ___Nov.___ 20__22__, that

_____

hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the

judgment of this court entered on the ___30___ day of ___Sept.___, 20__22__, in

favor of ___Defendant Wilbur Ross (Secretary of Commerce) et. al.___

against said ___Plaintiff Anthony W. Perry___

Attorney/Pro Se Party Signature: _Anthony W Perry_

Name: Plaintiff Anthony W. Perry

Address: 5907 Croom Station Rd

Croom Station Road

Upper Marlboro, MD 20772

Telephone: ( 301 ) 928-2305

(Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure a notice of appeal in a civil action must be filed within 30 days after the date of entry of judgment or 60 days if the United States or officer or agency is a party)

USCA Form 13
Rev. June 2017

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ANTHONY PERRY**,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>**WILBUR ROSS**  )<br>*United States Secretary of Commerce*,  )<br><br>Defendant.  ) | Civil Action No. 17-cv-1932 (TSC) |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, Defendant's Motion for Summary Judgment, ECF No. 35, is hereby GRANTED and Plaintiff's Motion for Summary Judgment, ECF No. 30, is hereby DENIED.

This action is hereby DISMISSED with prejudice. This is a final appealable order.

The Clerk of the Court shall mail a copy of this order and Memorandum Opinion to Plaintiff at his address of record.

Date: September 30, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ) | |
| **ANTHONY PERRY**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 17-cv-1932 (TSC) |
| ) | |
| ) | |
| **WILBUR ROSS** ) | |
| *United States Secretary of Commerce*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Despite his diligent efforts in pursuing this employment action, *pro se* plaintiff Anthony Perry has been unsuccessful in having his discrimination claims adjudicated in prior administrative or judicial fora. Unfortunately for Perry, this court will not reach his discrimination claims either, but instead will affirm the Merit Systems Protection Board's (MSPB or "Board") decision dismissing his claims for lack of jurisdiction.

## I.  BACKGROUND

### A.  Factual Background

Perry was a Supervisory Information Technology Specialist with the U.S. Census Bureau ("Bureau")[1] when he retired in 2012 after thirty years of service. ECF No. 30-3, Pls. Br. at 5. Starting in 2007, he filed six Equal Employment Opportunity ("EEO") complaints (alleging age,

---

[1]   The Census Bureau is an agency within the Department of Commerce.

gender, race and retaliation), which were still pending in the spring of 2011. ECF No. 35-4, Defs. SOF, ¶¶ 6, 8.

On April 13, 2011, Perry's supervisor informed his staff that, effective April 18, they were required to sign a daily attendance log. *Id.* ¶ 9; Pls. Br. at 6. On four occasions, Perry failed to comply with the sign-in requirement. ECF No. 35-13, Removal Notice at 10; Pls. Br. at 6. On April 26, the supervisor "again informed [Perry] of his directive regarding the requirement to sign-in/out on the attendance log," but Perry failed to comply eleven more times. ECF No. 35-13, Removal Notice at 10–11.

On June 7, 2011, Information Technology Assistant Division Chief Daren Gutschow sent Perry a memorandum proposing to terminate him because he had received pay for time he had not worked. ECF No. 35-13, Removal Notice. The Bureau's identification badge monitoring reports indicated that from October 2010 through April 2011, Perry's time and attendance records showed he was absent sixty-two times when he should have been working. *Id*. at 10. The Bureau also recommended removing him because of his initial refusal to sign the daily attendance log. *Id*. at 10–11.

Perry subsequently met with IT Chief Terryne Murphy, the deciding official, on several occasions. ECF No. 43, Pls Resp. to Defs. SOF ¶¶ 16–17; ECF No. 35-14. After one of those meetings, Murphy drafted a file memorandum indicating that Perry had proposed, *inter alia*, that he repay the money he was allegedly paid for the time he was not working, and that he be allowed to continue his employment through September 2012, when he would be eligible to retire with thirty years of service. ECF No. 35-14. Although Perry challenges this account, claiming that he indicated he would contest the removal and had no plans to resign or retire, his June 22, 2011 post-meeting email to Murphy suggests otherwise. ECF No. 43, Pls Resp. to Defs.

SOF ¶ 17, 19; ECF No. 35-15.  While he did not admit fault, Perry's email stated: "Please allow me to repay the debt, be punished, and stay until May 30, 2012 and walk out of here with dignity."  ECF No. 35-15.

One week later, in a June 30 email copied to his union representative, Perry formally responded to the removal notice.  ECF No. 35-7.  He explained that some of his absences were due to an "informal accommodation" with his supervisor, who allowed Perry to walk, stretch and exercise outside the building in an effort to manage his osteoarthritic hip and degenerative osteoarthritis in his lower back and knee joint.  *Id*. ¶ I(A); Pls. Br. at 5.  Perry claimed his supervisor had not placed any constraints on this arrangement and Perry had not been informed that the arrangement had ceased.  ECF No. 35-7, ¶ I(A).  He also indicated that he had not been told that walking outside the building created "different accountability" issues than walking inside the building and had he been so informed, he could have formally requested accommodations through the agency disability program.[2]  *Id*.  Perry also explained that in some instances he had taken extended lunch breaks, as was the "accepted practice" at the Census Bureau.  *Id*. ¶ I(B).

In his email, Perry further explained that some of his missed time was due to "failed communications between me and my supervisor in the leave request process, change in work schedule (worked on days leave was taken and on leave days I worked), not remembering to complete request afterwards, or not remembering to correct time and attendance for leave taken."  *Id*. ¶ I(C).  Finally, Perry admitted that "[s]ome of the extended time taken outside of the

---

[2]  After receiving the removal memorandum Perry formally applied for disability accommodations and the Bureau granted his request.  *See* Pls. Br at 7.  Perry claims that before this, he was not told he could request such accommodations, ECF No. 35-7, ¶ I(A), and he now attempts to bring a failure to accommodate claim.  But the court need not reach Perry's failure to accommodate claim because, as discussed below, his underlying discrimination claims are not actionable.

building was also to deal with the emotional and physical stress of at least six years of EEO struggles with the agency. I attempted to represent myself and I would work on aspects of those actions in my car." *Id.* ¶ I(B).

> With respect to the sign-in requirement, Perry explained:

> After the initial request to sign-in, I requested an explanation from my supervisor regarding the change in procedure from the prior three years when no sign-in was required. My supervisor refused to provide any feedback nor did he pursue this matter in any manner with me until after I received the "proposal to remove." I inquired of my supervisor again and at that time he stated a purpose for the changed procedure after which I started to sign the log provided.

*Id.* ¶ 1(E). Perry claims his supervisor explained that the Bureau instituted the new procedure to "get" Perry. Pls. Br. at 30.

Finally, Perry asked the Bureau to consider several mitigating factors, including his supervisor's prior approval of breaks, the fact that he had no past performance issues, his length of service, and that he had never been offered an opportunity to correct the attendance problem before the removal notice. ECF No. 35-7, ¶ III. He proposed that, in light of these factors, he be given instead a fourteen-day suspension and ordered to reimburse the agency for the hours it claimed he was paid when he was not working; he did not mention retirement. *Id.* ¶ VI.

On July 25, 2011, the Bureau presented Perry with a written settlement proposal requiring, among other things, that Perry "resign/retire no later than" May 30, 2012—the same date on which Perry had earlier suggested he could leave "with dignity." ECF No. 35-16, 12/23/13 ALJ Opinion 2-3. Several weeks later, on August 16, 2011, Perry and his local Union President, Johnny Zuagar, signed a Settlement Agreement ("Agreement") under which Perry would dismiss his EEO claims and the Bureau would suspend him for thirty days, but maintain his employment until he retired in September 2012. ECF No. 35-10, Settlement Agreement.

In signing the Agreement, Perry acknowledged that "his decision to retire [wa]s both voluntary and irrevocable." *Id*. ¶ 2(a). Specifically, the Agreement provided that:

> Complainant further agrees to voluntarily waive all appeal rights he has and to not litigate in any forum, judicial or administrative, any claims arising from a removal
>
> . . . .
>
> Complaint specifically waives any and all rights and claims arising out of the issues raised in the above-cited formal complaints of discrimination. . . . Complainant waives any and all rights and claims arising from Complainant's employment under the [ADEA], the Older Workers' Benefit Protection Act, the Rehabilitation Act. . . and/or Title VII. . . . This release includes but is not limited to release of any right to administrative, judicial, or congressional relief, or any other type of relief . . . .
>
> . . . .
>
> By signing this Agreement, Complainant agrees that Complainant has read and understands the entire Agreement, the effect(s) of each provision, . . .and that Complainant has signed this Agreement voluntarily and was in no way coerced. Complainant shall have twenty-one (21) days from the date of receipt of this Agreement to consider it terms. Should Complainant sign this Agreement before the twenty-one (21) day time period expired, [sic] Complainant attests that Complainant's decision to accept such a shortening of this period is knowing and voluntary, and was not induced by the Agency through fraud, misrepresentation, and/or threat to withdraw or alter the terms of the Agreement.

*Id*. ¶¶ 2(c), 2(h), 8.

On March 28, 2012, five months after signing the Agreement, Perry informed the Bureau that he "need[ed] and want[ed] to stay several years past" his agreed-upon retirement date. Pls. Ex. 1, JA69. But the following day, he applied for voluntary retirement effective in September, in exchange for a $25,000 incentive payment. ECF Nos. 34-19; 34-20; Defs. SOF ¶ 37. The Bureau approved his application shortly thereafter and, less than one month later, he appealed his "involuntary" retirement to the MSPB. ECF Nos. 34-5; 34-6. Around the same time, he also sent an email to Murphy indicating a desire to "stay several years past September." Pls. Ex. 1, JA69. Perry now claims he was attempting to rescind his retirement request. *See* ECF No. 30-2, Pls. SOF ¶¶ 53-54. Nonetheless, the Bureau retired Perry as scheduled.

## B. Prior Administrative Proceedings

Challenging his retirement, Perry filed an administrative appeal in which he reasserted his EEO claims, argued that the proposed removal was in retaliation for his EEO activities, and claimed that he had signed the Agreement involuntarily. Pls. Ex. 1, JA30. As such, he argued, the Agreement's waiver provisions did not prevent him from pursuing his underlying discrimination claims nor challenging his forced retirement. *See Perry v. Merit Sys. Prot. Bd.*, ____ U.S.____, 137 S. Ct. 1975, 1982 (2017) (citation omitted). The MSPB administrative law judge (ALJ) found that Perry had voluntarily signed the Agreement and had therefore waived his right to appeal. ECF No. 35-22, 7/30/12 ALJ Opinion at 3–5. Accordingly, the ALJ dismissed the case for lack of jurisdiction, without a hearing. *Id*.

Perry appealed to the MSPB, which affirmed in part, reversed in part, and remanded the matter. *Perry v. Dep't of Commerce*, No. DC-0752-12-0486-I-1, 2013 WL 9678428, at *1 (M.S.P.B. June 12, 2013). The MSPB rejected Perry's claim that the Agreement was coercive because the Bureau knew it would have been unable to sustain the removal, finding that Perry failed to make a nonfrivolous showing on this claim. *Id*. at *2. It noted that Perry had "admitted to his ongoing absences from the workplace," although he had tried to explain them. *Id*. Further, Perry conceded that several of the charges "were attributable to 'failed communications between him and his supervisor,' including the appellant forgetting to complete leave requests and/or 'correct time and attendance for leave taken.'" *Id*. Perry admitted that "despite being aware of [his supervisors'] directive" to sign-in and out on an attendance log, he "did not begin signing in and out until his supervisor responded to his requests for an explanation regarding this change in procedure, sometime after he received the June 7, 2011 proposed removal notice." *Id*. (internal quotations omitted). Accordingly, the MSPB found that "[b]ased on the appellant's

own statements," "there appears to have been at least some basis for the proposed discipline" and affirmed the ALJ on the coercion claim.  *Id.*

The MSPB also found however, that Perry made "nonfrivolous" allegations of involuntariness on his misrepresentation claim.  *Id*. at *3–5.  Specifically, Perry alleged that the Agreement was not voluntary because the Bureau falsely advised him that he had no right to appeal the removal and that his only option was to sign the Agreement.  *Id*.  Consequently, the Board ruled that Perry was entitled to a jurisdictional hearing before the ALJ.  *Id*.

On remand, the ALJ held a hearing, at which Perry declined to testify.  12/23/13 ALJ Opinion at 7 n.6.  The ALJ instead heard testimony from, among others, Rhonda Brown, the attorney who drafted the Agreement and represented the Bureau during the EEO proceedings, Murphy, the deciding official, Benjamin Felder, the Bureau's Labor Relations Officer, and Union President Zuagar, who assisted Perry during settlement negotiations.  *Id*. at 7–10.

Zuagar testified that "it was the union, and not management, that recommended having [Perry] retire pursuant to the settlement and so it was not something management forced upon" him.  *Id*. at 10.  According to Zuagar, Perry and the union "'went over' every section of the agreement until it was 'well known' by both parties" and that both the union and Perry "thought that signing the agreement 'was the best way to go' under the circumstances."  *Id*. at 9–10 (quoting Zugar's hearing testimony).  Indeed, Zuagar "specifically recalled talking to the appellant about considering settling instead of litigating the removal action and possibly risk losing his case before the Board."  *Id*. at 10.  Zuagar said he explained to Perry his appeal rights should he decline to sign the Agreement, and that he would relinquish those rights if he signed the Agreement.  *Id*. at 12.  Finally, Zuagar testified that he did not hear anyone tell Perry that he would lose his appeal rights if he refused to sign the Agreement.  *Id*.

Page 7 of 28

Numerous Bureau representatives involved in the matter testified that the agency did not make any misrepresentations to induce Perry to sign the Agreement. *Id*. at 11. Further, according to one of these representatives, one month after the Agreement was finalized, Perry emailed the Associate Director of Information Technology and stated that he wanted to thank the Bureau for allowing him to stay for another year: "I don't know if this is appropriate . . . but [I] wanted you to know I am thankful." *Id*. at 11 (alterations in original).

The ALJ credited the witnesses' testimony and found that the Bureau had not misrepresented Perry's rights during settlement negotiations. *Id*. at 12–15. Accordingly, the ALJ ruled that Perry, whom the ALJ described as "highly educated," "literate," and "articulate," had voluntarily signed the Agreement. *Id*. at 13. Therefore, the MSPB did not have jurisdiction over his misrepresentation claim. *Id*. at 15–16. The ALJ refused to consider Perry's claim that the Agreement was coercive because the Bureau knew it could not sustain the proposed removal because the MSPB had already rejected that argument and had limited the remand solely to the issue of alleged misrepresentation. *See id*. at 7 n.5

On appeal, the MSPB first noted that it must defer to the ALJ's credibility determinations. *Perry v. Dep't of Commerce,* 2014 WL 5358308, at *3 (Aug. 6, 2014) (citing *Haebe v. Dep't of Justice,* 288 F.3d 1288, 1301 (Fed. Cir. 2002)). Consequently, the MSPB affirmed the ALJ's finding that no-one had made misrepresentations to Perry and upheld the ALJ's determination that Perry had signed the Agreement voluntarily, thereby divesting the Board of jurisdiction over Perry's misrepresentation claim. *Perry* 2014 WL 5358308, at *1–3.

Further, the MSPB refused to consider Perry's claim that the Agreement was coercive because the Bureau knew it could not sustain the removal decision and that the ALJ should have heard evidence on this issue. *Id.* at *2. The MSPB explained that the coercion claim exceeded

the scope of the remand order and Perry had not presented non-frivolous arguments supporting this claim. *Id.* Therefore, the ALJ was correct in refusing to consider the matter at the hearing. *Id.*

Finally, the MSPB refused to consider Perry's underlying discrimination claims, explaining (as it had in its remand order) that it could consider such claims only if it had jurisdiction, which it did not. *Id.* at *4 (citing *Cruz v. Dep't of the Navy,* 934 F.2d 1240, 1245 (Fed. Cir. 1991)).

## C. <u>Proceedings in Federal Court</u>

Perry sought review of the MSPB's decision in the Court of Appeals for the D.C. Circuit, which held that the Federal Circuit had jurisdiction over the appeal. *Perry v. Merit Sys. Prot. Bd.*, 829 F.3d 760 (D.C. Cir. 2016). In so doing, the D.C. Circuit rejected Perry's argument that the District Court had jurisdiction over his claims. *Id.* at 763–68. Perry appealed to the United States Supreme Court, which reversed, holding that because the matter was a "mixed-case"[3] that was dismissed by the MSPB for lack of jurisdiction, the District Court had jurisdiction. *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975 (2017); *see id.* 829 F.3d 752.

The D.C. Circuit subsequently transferred the matter to this court, which allowed Perry to file an Amended Complaint. *See* ECF No. 7; 10/13/17 Minute Entry. After the parties engaged in unsuccessful mediation, the court ordered them to propose a briefing schedule on the issue of whether the MSPB's decision dismissing Perry's appeal for lack of jurisdiction should be

---

[3] "A mixed case is an adverse personnel action [as defined by the Civil Service Reform Act (CSRA)] . . . coupled with a claim that the action was motivated by discrimination." *Frank v. Ridge*, 310 F. Supp. 2d 4, 8 (D.D.C. 2004), *aff'd sub nom. Frank v. Chertoff*, 171 F. App'x 860 (D.C. Cir. 2005) (citation omitted).

affirmed. 5/3/18 Minute Order. Both parties ultimately filed extensive summary judgment motions and submitted documentary evidence. *See* ECF Nos. 30, 35, 37, 41, 43.

Here, Perry again challenges the MSPB's finding that it had no jurisdiction over his misrepresentation claim and that he failed to present a nonfrivolous claim that the Bureau coerced him into signing the Agreement because it would have been unable to sustain his removal. He again challenges the ALJ's failure to hold a hearing on the coercion claim and attempts to litigate his discrimination claims in this court.

## II.    LEGAL STANDARDS

In reviewing a MSPB decision, the court decides only whether the decision is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). Whether the board had jurisdiction to adjudicate a case is a question of law, which [the district court] review[s] *de novo. Vesser v. Office of Personnel Management,* 29 F.3d 600, 603 (Fed. Cir. 1994).

*Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995) (alterations in original).[4]

## III.    ANALYSIS

### A. Employment Claims

The MSPB has "jurisdiction to hear appeals of certain enumerated adverse actions taken by an agency against a [federal] employee. The enumerated adverse actions include removals," but resignations or retirements generally lie "outside the Board's jurisdiction." *Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1332 (Fed. Cir. 2008) (citing 5 U.S.C. § 7513(d)(1); 5 C.F.R. § 1201.3(a)(2); *Garcia v. Dep't of Homeland Sec.,* 437 F.3d 1322, 1328–29 (Fed. Cir. 2006)).

---

[4] Prior to the Supreme Court's decision in *Perry*, 137 S. Ct. 1975 (2017), mixed cases dismissed by the MSPB on jurisdictional grounds were appealed to the Federal Circuit. Accordingly, Federal Circuit cases decided before *Perry* on MSPB jurisdiction have precedential value.

This is because "[a] decision to resign or retire is presumed to be voluntary." *Shoaf v. Dep't of Agr.,* 260 F.3d 1336, 1340 (Fed. Cir. 2001) (citations omitted); *Rebish v. Merit Sys. Prot. Bd.*, 601 F. App'x 944, 946 (Fed. Cir. 2015) (citation omitted).

There are several ways in which an employee can rebut this voluntariness presumption. For example, a retirement is involuntary "if obtained by agency misrepresentation or deception." *Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1574 (Fed. Cir. 1983) (citations omitted). An employee can also establish involuntariness by showing that they unwillingly "accepted the terms of the agency, that circumstances permitted no other alternative," or that retirement was "the result of coercive acts of the agency." *Edgerton v. Merit Sys. Prot. Bd.*, 768 F.2d 1314, 1317 (Fed. Cir. 1985) (citations omitted). To secure a hearing, a former employee must make a non-frivolous showing of involuntariness. *See Garcia*, 437 F.3d at 1325; *Middleton v. Dep't of Def.*, 185 F.3d 1374, 1379–80 (Fed. Cir. 1999). Absent such a showing, the employee is not entitled to a hearing because the Board does not have jurisdiction over challenges to the voluntariness of a settlement agreement. *Cruz*, 934 F.2d at 1245. And without jurisdiction over the involuntariness claim, the Board lacks jurisdiction over any underlying discrimination claims. *Id*. at 1245– 46 ("The Board has not been granted jurisdiction over Title VII claims per se, *i.e.,* over 'pure' or 'naked' Title VII claims unaccompanied by an appealable action over which the Board does have jurisdiction.").

1. Misrepresentation

Perry claims his retirement was involuntary because the Bureau made misrepresentations, upon which he relied, to force him to sign the Agreement. Specifically, he asserts that the Bureau falsely told him he had no right to challenge or appeal the removal decision and that his only option, short of termination, was to sign the Agreement. Rejecting this argument on

remand, the ALJ found that no misrepresentations had been made and therefore Perry voluntarily signed the Agreement. Accordingly, the Board lacked jurisdiction over Perry's claims.

Here, Perry's only support for his misrepresentation claim appears to be his assertion that this court "owes no deference to the decision or credibility determinations made by a prior tribunal" because he is entitled to a "trial de novo." ECF No. 41, Pls. Opposition at 2. This argument is unavailing.

While the court "may review freely the Board's conclusion that it did not have jurisdiction over [an] appeal, [the court is] bound by the AJ's factual determinations unless those findings are not supported by substantial evidence." *Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998) (citations omitted). Perry submitted sworn and unsworn statements to the ALJ, but declined to testify at the hearing. 12/23/13 ALJ Opinion at 7 n.6, 13. The ALJ heard testimony from the union president and Bureau witnesses, all of whom corroborated each other's assertion that no-one made misrepresentations to Perry. *Id*. at 7–11. Indeed, Perry's union president testified that the union, not management, raised the issue of retirement. *Id*. at 10. The union president also testified that he discussed with Perry the option of challenging the removal rather than signing the Agreement, but they both ultimately agreed that settlement was the better option because Perry might lose before the Board if he elected to challenge the removal. *Id*. at 9–10. The ALJ credited the witnesses' testimony and found that the Bureau had not mispresented Perry's appellate rights. *Id*. at 12–14.

Absent substantial evidence to the contrary (which Perry has not provided), this court is bound by the ALJ's credibility determinations. And the ALJ's credibility determinations, along with the signed Agreement, formed the bases for the ALJ and the Board's findings that Perry had not shown that he involuntarily signed the Agreement to retire due to misrepresentation. Even

applying the required *de novo* standard, there is no evidence that the Board's decision dismissing Perry's misrepresentation claim for lack of jurisdiction was arbitrary, capricious, or an abuse of discretion. A "bare allegation" of misrepresentation or coercion is not enough to set aside a settlement agreement. *See Tiburzi v. Dep't of Just.*, 269 F.3d 1346, 1355 (Fed. Cir. 2001) (upholding Board determination that employee failed to establish coercion).

2. Coercion

a. *The Bureau's Ability to Sustain the Removal: Douglas Factors*

"[W]here an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act." *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987). But, "inherent in that proposition is that the agency has reasonable grounds for threatening to take an adverse action." *Id.* "If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive." *Id.* (citations omitted).

Perry argues that the Bureau knew it would be unable to sustain its proposed removal decision and therefore the negotiations and Agreement that led to his retirement were coercive. Many of the cases he cites supporting this argument involve application of *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), in which the court explained:

> Any disciplinary action demands the exercise of responsible judgment so that an employee will not be penalized out of proportion to the character of the offense; this is particularly true of an employee who has a previous record of completely satisfactory service. An adverse action, such as suspension, should be ordered only after a responsible determination that a less severe penalty, such as admonition or reprimand, is inadequate.
>
> Agencies should give consideration to all factors involved when deciding what penalty is appropriate, including not only the gravity of the offense but such other

matters as mitigating circumstances, the frequency of the offense, and whether the action accords with justice in the particular situation.

5 M.S.P.R. at 304 (quoting 5 U.S.C. § 7513).

Although not exhaustive, some of the *Douglas* factors "generally recognized as relevant include":

(1) "[t]he nature and seriousness of the offense. . ., including whether the offense was intentional or technical or inadvertent, . . . or was frequently repeated";

(2) "the employee's past disciplinary record [and] past work record, including length of service, performance on the job, . . .";

(3) "the clarity with which the employee was on notice of any rules that where [sic] violated in committing the offense, or had been warned about the conduct in question";

(4) "potential for the employee's rehabilitation"; and

(5) "the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others."

*Id*. at 305–6. "Selection of an appropriate penalty must thus involve a responsible balancing of the relevant factors in the individual case." *Id*. at 306.

Perry appears to argue that the ALJ and Board did not undertake the proper balancing inquiry required under *Douglas* because they ignored mitigating evidence that:

- He had worked for the Bureau for close to thirty years without any disciplinary action;

- His supervisor had given him an informal accommodation for his disability that included a flexible schedule in which he took frequent breaks and made up for missed time after normal business hours, ECF No. 30-2, Pls. SOF ¶¶ 17, 19, 52, 66; Pls Br. at 5, 12, 18, 21–22, 25–30;

- He was never notified that his supervisor rescinded this agreement, ECF No. 30-2, Pls. SOF ¶ 22; ECF No. 41, Pls. Opposition Br. at 17–18; and

- Bureau employees regularly smoke and jog outside the facility, ECF No. 30-2, Pls. SOF ¶ 23.

Perry contends that had they considered all his mitigating evidence, they would have concluded that the Bureau should have proposed a penalty short of termination and therefore the Board would have been unable to sustain the proposed removal.

It is unclear whether Perry made his *Douglas* factors argument before the Board, but in its remand opinion the Board did address Perry's broader argument that the Bureau coerced Perry into signing the Agreement because it knew it could not sustain the proposed removal. *Perry*, 2013 WL 9678428, at *2. The Board found that there "appear[ed] to have been at least some basis for the proposed discipline," given Perry's admissions regarding his ongoing absences from work and his failure to complete leave requests and/or correct his attendance records, as well as his failure to sign the attendance log until after he received the removal notice. *Id*. Consequently, the Board found that Perry had not met his burden of asserting non-frivolous allegations supporting his coercion argument, and the Board did not have jurisdiction over the claim. *Id*.

In light of this finding, on remand the ALJ first noted that arguments regarding the Bureau's ability to sustain the removal were not properly before him. 12/23/13 ALJ Opinion at 7 n.5. He then found that because he was dismissing the action for lack of jurisdiction, he did not need to address Perry's *Douglas* factors argument. *Id*. at 16 n.9.

In upholding the ALJ's decision, the MSPB again noted that one of Perry's arguments was that the Bureau knew it could not sustain the proposed removal and therefore coerced Perry into signing the Agreement. *See Perry*, 2014 WL 5358308, at *2. The Board rejected this argument because it "exceed[ed] the scope of the Board's remand order." *See id*.

Perry has not shown that the Board's decision was arbitrary or capricious. "[W]here an employee is faced with the unpleasant alternative of resigning or being subjected to an adverse

action, the resulting resignation cannot be considered an involuntary retirement unless the employee shows that the agency lacked reasonable grounds for threatening to take the adverse action." *Terban v. Dep't of Energy*, 216 F.3d 1021, 1026 (Fed. Cir. 2000) (citations omitted). Perry had the burden of establishing that the proposed removal "was made without reasonable basis." *Id.* He failed to meet this burden and the Board correctly found it lacked jurisdiction over his coercion claim. Absent jurisdiction, as the ALJ pointed out, there was no reason to address the *Douglas* factors.

Even if the Board had considered the *Douglas* factors, Perry would not have prevailed. A reasonable employer could have found that Perry's length of service, lack of prior disciplinary action, and supervisor approval for breaks did not outweigh his admissions that he failed to correct his time records, spent time in his car working on his EEO claims when his badge records showed he should have been working, and repeatedly refused, despite a clear directive from his supervisor, to use the attendance log. An employer considering the *Douglas* factors might reasonably have concluded that a penalty less than removal was unwarranted given the "seriousness of the offenses," the "intentional," and "repeated' nature of his offenses, the "clarity with which" Perry "was on notice of any rules," and the "effect upon [his] supervisors' confidence in" Perry's "ability to perform assigned duties." *See Douglas,* 5 M.S.P.R. at 305–6; ECF No. 35-13, Removal Notice at 11–12.

None of the cases Perry cites in support of his *Douglas* factors argument suggest otherwise. In some of those cases the court rejected the plaintiff's removal challenge.[5] The

---

[5] *See Terban*, 216 F.3d 1021(upholding board's determination that it lacked jurisdiction over plaintiff's allegation of involuntariness where plaintiff failed to show the agency lacked a reasonable basis for converting plaintiff's prior paid leave to leave without pay); *Hite v. U.S. Postal Serv.*, 168 F. App'x 436, 437–39 (Fed. Cir. 2006) (finding that ALJ considered the relevant *Douglas* factors and his decision upholding claimant's removal was "within the bounds

other cases did not involve a plaintiff who repeatedly failed to submit correct time and attendance records, willfully disregarded valid supervisory directives and/or admitted to spending work hours engaged in personal activities.[6]

### b. The Bureau's Ability to Sustain the Removal: Efficiency of the Service

Perry claims the Bureau would have been unable to sustain his removal because it did not consider whether the removal would have promoted the "efficiency of the service." No 30-2, Pls. SOF ¶ 65; Pls. Br. at 19. "A federal employee's removal may not be sustained by the MSPB

---

of reasonableness" where claimant was not remorseful about tardiness and absenteeism, had previously been warned that further incidents might result in removal, and there was evidence the problems might continue).

[6] *See Fassett v. U.S. Postal Serv.*, No. PH-0752-96-0468-M-1, 2000 WL 534650 (M.S.P.B. Apr. 19, 2000) (finding agency would have unable to sustain removal where it had proposed removing complainant for violating an agreement based on his refusal to submit to a drug test, but the terms of the agreement did not require testing); *Crane v. Dep't of Air Force*, 240 F. App'x 415 (Fed. Cir. 2007) (remanding agency's removal decision for reconsideration of *Douglas* factors where plaintiff improperly used surplus materials for his personal business, but his supervisor and the agency had previously approved plaintiff's conduct and the agency had not told him he was violating its policies); *VanFossen v. Dep't of Hous. & Urban Dev.*, 748 F.2d 1579 (Fed. Cir. 1984) (remanding agency removal decision for consideration of mitigating factors where immediate supervisor approved claimant's improper outside employment, but neither the supervisor nor the claimant knew that agency approval was required); *Schultz*, 810 F.2d 1133 (remanding decision finding no jurisdiction where former employee claimed she was forced to retire after her physician concluded she would be "totally disabled" for her position and should immediately take a leave of absence and ultimately transfer to another position, but the agency rejected her leave and transfer requests for lack of medical certification and threatened to place her on AWOL status if she did not return to work); *Morall v. Drug Enf't Admin.*, 412 F.3d 165 (D.C. Cir. 2005) (vacating DEA's decision to revoke physician's license to dispense controlled substances after she made record-keeping errors over a short time period, had experienced major health issues and emotional stress due to personal issues, appeared to regret her conduct, there was no evidence she diverted controlled substances, the state board had not recommended revocation, and the ALJ made numerous credibility determinations recommending against revocation); *Garcia*, 437 F.3d 1322 (remanding for consideration of non-frivolous claims of involuntariness where complainant applied for involuntary reduction in grade due to alleged refusal to accommodate her disability); *Covington v. Dep't of Health & Human Servs.*, 750 F.2d 937 (Fed. Cir. 1984) (remanded for hearing where claimant alleged involuntary retirement after agency RIF in which agency misled claimant about eligibility for reassignment).

unless the agency is able to show by a preponderance of the evidence that the employee's actions adversely affected either his performance or that of other employees and that his removal would 'promote the efficiency of the service.'" *Barnes v. Small*, 840 F.2d 972, 979 (D.C. Cir. 1988) (citing 5 U.S.C. § 7513(a); 5 C.F.R. § 752.403(a)).

Perry's argument is fatally undermined by the record. In the removal memorandum, Gutschow, the deciding official, explained that he had considered Perry's twenty-six years of satisfactory performance with no disciplinary action, but, due to the "egregiousness and repetitive nature" of Perry's conduct, Gutschow concluded that any disciplinary alternatives short of removal would not be "adequate and effective." ECF No. 35-13, Removal Notice at 12. Gutschow found that Perry's conduct had caused a "loss of trust" in his "ability to reliably perform" his duties, and that Perry's conduct had "adversely impacted the Agency":

> Repeatedly accepting payment for time not worked, mispresenting your work hour commitments and failing to follow supervisory directives raises questions about your integrity and reliability.
>
> This kind of impropriety is detrimental to the image of the Census Bureau. Providing erroneous information, failing to properly request and modify your time and attendance information and failing to follow reasonable supervisory directives is unacceptable behavior for any Census Bureau employee and violates the core value of our mission. In fact, even one false representation regarding data of any kind is grounds for immediate removal from the Census Bureau. Your time and attendance practices, including your failure to follow your Branch Chief's directives to sign-in/out, call in to serious question your trustworthiness and judgment. You have been an employee since December 16, 1984, and you know, or should have known, that the Census Bureau does not tolerate such misconduct.
>
> The Census Bureau must maintain a workforce of employees who prosses unusually high standards of trust, confidentiality, integrity, and conduct.

*Id*. at 11–12.

These findings are sufficient to meet the "efficiency-of-the-service standard," which simply "requires an agency that proposes to remove an employee for misconduct to demonstrate

a sufficient nexus between the misconduct and the job performance of the employee or others to warrant removal." *Barnes*, 840 F.2d at 979–80 (cleaned up and citation omitted). Even if Perry performed at an appropriate productivity level, there is a sufficient nexus between his misconduct and the Bureau's ability to maintain order, encourage trust, and discourage insubordination to have warranted his removal. *See id*. at 980 (upholding dismissal where, *inter alia*, the plaintiff's conduct "eroded management's confidence in his judgment," even though his work did not suffer).[7]

### c. Insufficient Time to Consider the Agreement

Perry argues he was coerced into signing the Agreement because he did not have enough time to consider the settlement terms after receiving the June 7 notice of removal. Pls. Br. at 26. "Time pressure to make a retirement or resignation decision has, on occasion, provided the basis for a finding of involuntariness, but only when the agency has demanded that the employee make an immediate decision." *Middleton*, 185 F.3d at 1381 (cleaned up and citations omitted).

The record establishes that Perry had ample time to thoroughly consider the Agreement. The Bureau issued the notice of removal on June 7, 2011, and Perry met with Murphy approximately one week later, on June 15, and responded to the removal notice in writing fifteen days later, on June 30. ECF Nos. 35–7; 35–13; 35–14. A little more than three weeks later, on

---

[7] Perry also argued that the Bureau implemented the attendance log policy as a means to "get him" and that the policy served no valid purpose, particularly because it was not implemented agency-wide. Pls. Br. at 30–31. But Perry has cited no legal authority for the proposition that a federal employer who unilaterally implements a department-wide system to track time and attendance among non-union employees engages in an adverse action. And there is no evidence that the Bureau selectively enforced the policy with respect to Perry.

Perry also appears to argue that the Bureau failed to explain the policy's implementation or provide a written justification for the policy, ECF No. 41, Pls. Opposition at 27–28, but he provides no legal authority that the agency was obligated to do so.

July 25, Zuagar received the Bureau's counteroffer, which required Perry to retire. 12/23/13 ALJ Opinion at 2–3. Thus, more than seven weeks elapsed between the date Perry received the removal notice and the date he received the proposed Agreement. More importantly, the Agreement contained a provision allowing Perry twenty-one days to consider the offer. ECF No. 35-10, Settlement ¶ 8. During that time, Perry, Zuagar, and the Bureau engaged in settlement negotiations, after which Perry signed the Agreement on August 16. ECF No. 35-10, Settlement at 5; 12/23/13 ALJ Opinion at 2–3. These facts do not support Perry's argument that he had insufficient time to consider the terms of the Agreement.

This case is unlike *Middleton,* in which the court found that an employee on a Turkish military base raised non-frivolous allegations of involuntariness. 185 F.3d at 1381. In that case, the plaintiff took home a piano without obtaining approval. *Id*. at 1377. Approximately one week later, upon learning he was not authorized to take the piano, he immediately returned it and sent a letter to his boss explaining that a property clerk had told him the piano was surplus property and had given him permission to take it home. *Id*. The plaintiff heard nothing further about the matter until over three months later, when he received a notice of removal advising him that he had eleven days to leave the military installation. *Id*. at 1378. There was evidence that the plaintiff was suffering from severe health problems at the time, and he claimed he was told that if he did not retire, he would lose his health and life insurance benefits. *Id*. at 1381–82. The court found that under the circumstances, the plaintiff was entitled to a hearing on involuntariness, as leaving on such short notice would have posed a great hardship. *Id*. at 1383. The facts alleged here are not analogous.[8]

---

[8] *See also Parrott*, 519 F.3d at 1331–32, 1335 (rejecting involuntariness claim where plaintiff resigned approximately four hours after agency notified him that he could resign and avoid a negative employment reference or it would issue him a proposed removal notice).

### d. No Alternatives to Retirement: Threat of Immediate Removal and Financial Distress

Perry claims he was coerced into signing the Agreement because Zuagar told him the Bureau would terminate him immediately if he contested the charges or went to the EEOC and therefore he had no alternative but to accept the Bureau's offer.  No. 30-2, Pls. SOF ¶¶ 36, 59. This argument also is unavailing.

First, Perry did have an alternative: he could have allowed the removal to go forward and subsequently challenged the decision.  While this option may not have been ideal from his perspective, "[t]his court has repeatedly held that the imminence of a less desirable alternative does not render involuntary the choice made."  *Cruz*, 934 F.2d 1240 at 1245 (citation omitted). As the Court of Appeals has explained, "the doctrine of coercive involuntariness is a narrow one. It does not apply to a case in which an employee decides to resign or retire because he does not want to accept actions that the agency is authorized to adopt."  *Terban,* 216 F.3d at 1025 (cleaned up and citation omitted); *Roskos v. United States*, 549 F.2d 1386, 1389 (Ct. Cl. 1977) ("Of course, not every unpleasant working arrangement or distasteful set of alternatives constitutes duress or renders an otherwise voluntary act involuntary.") (citation omitted).

Perry also argues that the Bureau coerced him into signing the Agreement because challenging the removal would have placed him in an untenable financial situation given his poor health and the fact that his daughter was about to enter college.  This is insufficient to establish involuntariness.

Perry's predicament was not much different from the kind faced by employees on a regular basis.  As the Court of Appeals has noted, "every loss of employment entails financial hardship.  If that alone were sufficient to establish economic duress, no settlement involving it would ever be free from attack.  Even threatened financial disaster is not sufficient."  *Kent v.*

*Dep't of the Air Force*, 524 F. App'x 614, 617 (Fed. Cir. 2013) (cleaned up and citations omitted).

    3.  <u>Non-disclosure Provision</u>

        Perry next challenges the Agreement's non-disclosure provision (NDA) which reads:

> Non-Disclosure: The parties agree to keep the nature and terms of this Agreement confidential. The terms of the agreement may not be disclosed to any person or entity beyond the persons signing below, except to Complainant's spouse as applicable, as required by law, as necessary to implement the terms of the Agreement, or as ordered by a court or administrative body of competent jurisdiction.

ECF No. 35-10, Settlement ¶ 6. He contends that the NDA "violates basic contract law," but he cites no legal authority supporting this proposition. ECF No. 30-2, Pls. SOF ¶ 70; Pls. Br. at 13.

        Perry also contends that NDAs violate pages one through seven of the EEOC Guidance Manual 915.002, titled "Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA." Pls. Br. at 13; Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, 2002 WL 31994335. The court is unable to locate any relevant provisions on those pages, but, more importantly, Perry has not asserted a viable ADA claim, and even if he had, the Bureau is not bound by the EEOC's policy manual. *See Garcia v. Spun Steak Co.,* 998 F.2d 1480, 1489 (9th Cir. 1993) (noting that courts "are not bound by [EEOC] Guidelines") (citing *Espinoza v. Farah Mfg. Co., Inc.,* 414 U.S. 86, 94 (1973)).

        Finally, Perry argues that the NDA violates the CSRA because it does not contain certain specific language. ECF No. 30-2, Pls. SOF ¶ 70; Pls. Br. at 13. The current version of the CSRA provides that it is a "prohibited personnel practice," 5 U.S.C. §

2302(a)(1), for "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action" to

> implement or enforce any nondisclosure policy, form, or agreement, if such policy, form, or agreement . . .does not contain the following statement: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General or the Office of Special Counsel of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling."

5 U.S.C. § 2302(b)(13)(A).

Although it is undisputed that Perry's Agreement does not contain this language, his argument is inapplicable because the parties ratified the Agreement on August 22, 2011, but the CSRA provision was enacted more than a year later, on November 27, 2012. *See* Whistleblower Protection Enhancement Act of 2012 (P.L. 112–199).

4.  Procedural Challenges to the Administrative Review Process

Perry challenges various ALJ and MSPB procedural decisions. He claims he was not allowed to obtain discovery—he sought the deciding official's notes, emails, and communications about the proposed removal—nor was he allowed to present "material" witnesses and evidence during the hearings before the ALJ. Pls. Br. at 15; ECF No. 41, Pls. Opposition at 12; ECF No. 30-2, Pls. SOF ¶¶ 56–57, 60. He also sought to call his supervisors as witnesses, as well as the deciding officials, who were responsible for time and attendance. Pls. Br. at 15; ECF No. 41, Pls. Opposition at 12; ECF No. 30-2, Pls. SOF ¶¶ 56–57, 60.

The Board found that Perry failed to comply with its procedures regarding discovery.

*Perry*, 2014 WL 5358308, at *3 n.6.  It also found that Perry withdrew his request to call his supervisors as witnesses.  *Id.* at *3.  And it concluded that even if he had followed proper procedures and had not withdrawn his request to present witnesses, the proffered evidence related to the merits of Perry's claim—matters over which the MSPB had no jurisdiction.  *Id.* Perry's disagreement with the Board's decisions is not enough to establish that the decisions were arbitrary and capricious.

Perry also complains that certain portions of the audio recording of his hearing were deleted, as the audio allegedly did not contain the testimony of Murphy, the deciding official. Pls. Br. at 4, 15; ECF No. 41, Pls. Opposition at 6.  But Perry does not explain when or where that testimony should have appeared in the audio recordings he submitted to the court.  *See* Pls. Br at 4, 15; ECF No. 41, Pls. Opposition at 6.  More importantly, any testimony from Murphy relating to the merits of Perry's discrimination claims would not have been relevant, because the Board lacked jurisdiction over those claims.  And Perry does not claim—nor is there any evidence—that Murphy's purported testimony addressed the issue of voluntariness.

### 5.  Mixed Cases/Jurisdiction

As discussed above, this is a "mixed case," in that it involves "an adverse personnel action . . . coupled with a claim that the action was motivated by discrimination."  *Frank*, 310 F. Supp. 2d at 8 (citation omitted).  Because the MSPB found that the record supported the ALJ's finding that Perry voluntarily retired, the Board concluded it did not have jurisdiction over Perry's challenge to the Agreement and therefore could not consider his discrimination claims on appeal.  *Perry*, 2014 WL 5358308, at *4.  Perry challenges this finding, arguing that this court has jurisdiction to review mixed cases and, pursuant to the CSRA, "[o]nce in the district court, a mixed case should be decided on the merits."  Pls Br. at 12, 15–16; ECF No. 41, Pls. Opposition

Page 24 of 28

at 8–16.

Perry is correct that this court has jurisdiction to review mixed cases. However, he is incorrect that, once in district court, a mixed case must automatically be decided on the merits. Because the MSPB decided that it lacked jurisdiction over Perry's discrimination claims, this court's task is to decide if that decision was arbitrary and capricious—not whether the discrimination claims have merit. *See Cruz*, 934 F.2d at 1246 (finding that the EEO retaliation claim could not "be heard as a part of a case over which the Board has no jurisdiction"); *Synan v. Merit Sys. Prot. Bd.*, 765 F.2d 1099, 1101–02 (Fed. Cir. 1985) ("When an appeal has been taken to the MSPB, until the discrimination issue and the appealable action have been decided on the merits by the MSPB, an appellant is granted no rights to a trial de novo in a civil action under § 7702 or § 7703. Yet, threshold issues such as the MSPB's own jurisdiction arise continually on appeal to this court, and we have taken jurisdiction over these cases.") (quoting *Ballentine v. Merit Systems Protection Board,* 738 F.2d 1244 (Fed. Cir. 1984)). Accordingly, the court will grant the Bureau's motion for summary judgment on Perry's employment/CSRA claims. [9]

---

[9] Perry brought the following employment claims:

- Count I: Involuntary Suspension, Coercion, Duress and Imposition of Unlawful Nondisclosure Agreement

- Count II  Violation of the Rehabilitation Act and Anti-Retaliation Provision

- Count III: Violation of Title VII and Anti-Retaliation Provisions

- Count IV: Violations of 42 U.S.C. 1981 and 42 U.S.C. 1983

- Count V: Violation of the ADEA and Anti-Retaliation Provisions

- Count VI: Bias, Statutory, Administrative, and Constitutional Violations by MSPB. Statutory claims under the CSRA addressed above.

## B. **Tort Claims**

In addition to employment/CSRA claims, Perry's Amended Complaint contains the following tort-based claims:

- Count VII:      Fraud
- Count VIII:     Conspiracy to Commit Fraud
- Count IX:       Extortion
- Count X:        Conspiracy to Commit Extortion
- Count XI:       Defamation
- Count XII:      Negligent Training and Supervision
- Count XIII:     Federal Tort Claims Act
- Intentional and Negligent Infliction of Emotional Distress (no Count listed)

Perry's purported claims under the Federal Tort Claims Act (FTCA) are not actionable because those claims are based on Perry's employment with the Bureau, and therefore are encompassed by his federal employment claims, which the court has already addressed. *See Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 125–26 (D.D.C. 2016) (dismissing federal employee's tort claims relating to his employment because federal employment laws provide the exclusive remedies for such claims).

Even if Perry were not limited to pursuing his claims under the federal employment laws, he would still be unable to proceed on his fraud and defamation claims. Although the FTCA waives the federal government's sovereign immunity for some claims, fraud, deception, and defamation claims are expressly excluded. *Johnson v. Barr*, No. 1:20-CV-00982 (UNA), 2020

---

Perry withdrew his Section 1983 claim and his remaining Section 1981 is not actionable. *See Smalls v. Emanuel*, 840 F. Supp. 2d 23, 29 (D.D.C. 2012) ("In *Brown v. General Services Administration,* 425 U.S. 820, 96 S. Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court established that Title VII was the exclusive judicial remedy for claims of discrimination in the context of federal employment."); *Kizas v. Webster,* 707 F.2d 524, 542 (D.C. Cir. 1983) ("The Title VII remedy declared exclusive for federal employees in *Brown v. GSA* precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation."). Perry's remaining employment law claims are not actionable because, as noted above, he voluntarily signed the settlement agreement waiving his right to pursue such claims.

WL 2043926, at *2 (D.D.C. Apr. 28, 2020), *aff'd,* 833 F. App'x 486 (D.C. Cir. 2021) (noting

that plaintiff alleged tortious acts involving fraud and deception, and explaining that "the FTCA

expressly exempts fraud and misrepresentation from the general waiver of sovereign immunity.")

(citing 28 U.S.C. § 2680(h)) (some citations omitted); *Edmonds v. United States*, 436 F. Supp. 2d

28, 35 (D.D.C. 2006) ("[T]he FTCA exempts from its waiver of sovereign immunity any claim

'arising out of' libel or slander.") (citing 28 U.S.C. § 2680(h)).  Finally, there is no evidence that

Perry exhausted his administrative remedies with respect to any viable FTCA claims.  *Totten v.

Norton*, 421 F. Supp. 2d 115, 122–23 (D.D.C. 2006) ("Exhaustion under the FTCA occurs only

after a claimant has (1) presented a federal agency with a claim describing, with particularity, the

alleged injury and damages and (2) either received a written denial of the claim from the agency

or waited six months from the date of filing without obtaining a final agency disposition. 28

U.S.C. § 2675(a).").

### C.  Whistleblower Protection Act Claim

Perry brings a Whistleblower Protection Act (WPA) claim in Count XIV.  But there is no

indication he exhausted his administrative remedies, and therefore he cannot proceed with this

claim.  *See Brown v. Ulmer*, No. 1:21-CV-03128 (UNA), 2022 WL 226878, at *1 (D.D.C. Jan.

21, 2022) (explaining exhaustion requirements and noting that "under no circumstances does the

WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought

directly before it in the first instance.") (cleaned up) (citing *Stella v. Mineta*, 284 F.3d 135, 142

(D.C. Cir. 2002)).

### D.  Privacy Act Claim

Perry alleges that the Bureau violated the Privacy Act by sharing his personally

identifiable information with Gutschow (the Technology Division Chief), who drafted the

proposed removal, and IT Chief Murphy, the deciding official, because those individuals were not his immediate supervisors. *See* Amended Compl. ¶¶ 220–221. He also contends the Bureau used his personal information to extract badge scan information that was used as the basis for his proposed removal. *Id*. ¶ 222.

Perry has not explained the nature of the information he contends was improperly shared, nor has he cited any provision of the Privacy Act prohibiting the Bureau from sharing relevant information about his employment with supervisors responsible for deciding whether disciplinary action was warranted. Likewise, he has not cited any provision of the Privacy Act prohibiting the Bureau from monitoring his badge scans into and out of a federal workplace.

Finally, Perry's Privacy Act claims appear to be an attempt to do an "end-run" around the CSRA, which governs "adverse personnel actions." *See Lee v. Geren*, 480 F. Supp. 2d 198, 202–06 (D.D.C. 2007) (noting that employees may only proceed under the Privacy Act when the adverse employment action was caused by an inaccurate or incomplete record), *dismissed*, No. 07-5175, 2007 WL 2405691 (D.C. Cir. Aug. 2, 2007)). Thus, the court will also grant summary judgment on Perry's Privacy Act claim.

## IV.  CONCLUSION

For the reasons set forth above, the court will GRANT the Bureau's motion for summary judgment and DENY Plaintiff's summary judgment motion.

Date:  September 30, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

Page 28 of 28